## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Terraform Labs Pte. Ltd.,[1]<br><br>          Debtor. | **Chapter 11**<br><br>**Case No. 24-10070 (BLS)** |

**APPLICATION OF
DEBTOR FOR ENTRY OF AN ORDER
(I) APPROVING THE RETENTION AND APPOINTMENT OF
EPIQ CORPORATE RESTRUCTURING, LLC AS THE CLAIMS
AND NOTICING AGENT TO THE DEBTOR, EFFECTIVE AS OF
THE PETITION DATE, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "**Debtor**") hereby submits this application (the "**Application**"), pursuant to section 156(c) of title 28 of the United States Code (the "**Judicial Code**"), section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") on February 1, 2012 (the "**Claims Agent Protocol**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), appointing Epiq Corporate Restructuring, LLC ("**Epiq**") as claims and noticing agent (the "**Claims and Noticing Agent**") in the Debtor's chapter 11 case effective as of the Petition Date (as defined below). In support of the Application, the Debtor submits the *Declaration of Kate Mailloux in Support of Application of Debtor for Entry of an Order (I)*

---

[1] The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

*Approving the Retention and Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of Petition Date, and (II) Granting Related Relief* (the "**Mailloux Declaration**"), attached hereto as __**Exhibit B**__ and incorporated herein by reference. In further support of the Application, the Debtor respectfully represents:

### JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this matter pursuant to sections 157 and 1334 of the Judicial Code and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding under section 157(b) of the Judicial Code. Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to sections 1408 and 1409 of the Judicial Code.

2.        The statutory and legal predicates for the relief requested herein are section 156(c) of the Judicial Code, section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, Local Rule 2002-1(f), and the Claims Agent Protocol.

### BACKGROUND

3.        On January 21, 2024 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").  The Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

4.        The factual background regarding the Debtor, including its business operations, its capital and debt structures, and the events leading to the filing of the Chapter 11 Case, is set forth

in detail in the *Declaration of Chris Armani in Support of Chapter 11 Petition and First Day Pleadings* (the "**First Day Declaration**")[2] and fully incorporated herein by reference.

## RELIEF REQUESTED

5.     The Debtor seeks entry of the Proposed Order appointing Epiq to act as the Claims and Noticing Agent in the Debtor's Chapter 11 Case to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtor's Chapter 11 Case, effective as of the Petition Date.  The terms of Epiq's proposed retention are set forth in that certain Standard Services Agreement between Epiq and the Debtor, dated as of January 21, 2024 (the "**Engagement Agreement**"), a copy of which is attached hereto as **Exhibit C**.  Notwithstanding the terms of the Engagement Agreement, the Debtor is seeking to retain Epiq solely on the terms set forth in this Application and the Proposed Order.

6.     By separate application, the Debtor will seek authorization to retain and employ Epiq as administrative advisor in this Chapter 11 Case, pursuant to section 327(a) of the Bankruptcy Code, as the administration of this Chapter 11 Case may require Epiq to perform duties outside the scope of section 156(c) of the Judicial Code.

## EPIQ'S QUALIFICATIONS AND NEED FOR EPIQ'S SERVICES

7.     Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases.  Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including a number of recent cases filed in this District.[3]

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

[3] *See, e.g., In re Yellow Corporation, Inc.*, Case No. 23-11069 (CTG) (Bankr. D. Del. Aug. 9, 2023*); In re Nova Wildcat Shur-Line Holdings, Inc.* (a/k/a H2 Brands Group Home & Hardware), Case No. 23-10114 (CTG) (Bankr. D.

8.     The appointment of Epiq as the Claims and Noticing Agent in this Chapter 11 Case

will expedite the distribution of notices and the processing of claims, facilitate other administrative

aspects of this Chapter 11 Case, and relieve the Clerk of the administrative burden of processing

claims. The Debtor believes the appointment of Epiq as the Claims and Noticing Agent will thus

serve to maximize the value of the Debtor's estate for all stakeholders.

## SCOPE OF SERVICES PROVIDED

9.     This Application pertains only to the work to be performed by Epiq under the

Clerk's delegation of duties permitted by section 156(c) of the Judicial Code and Local Rule 2002-

1(f).  Any services to be performed by Epiq that are set forth in the Engagement Agreement but

outside of the scope of section 156(c) of the Judicial Code are not covered by this Application or

by any order granting approval hereof.  Specifically, Epiq will perform the following tasks in its

role as the Claims and Noticing Agent, as well as all quality control relating thereto (collectively,

the "**Claims and Noticing Services**"), to the extent requested by the Debtor:

> (a)     Prepare and serve required notices and documents in this Chapter 11 Case
> in accordance with the Bankruptcy Code, the Bankruptcy Rules and the
> Local Rules in the form and manner directed by the Debtor and/or the Court,
> including, if applicable, (i) notice of the commencement of this Chapter 11
> Case and the initial meeting of creditors under section 341(a) of the
> Bankruptcy Code (as applicable), (ii) notice of any claims bar date (as
> applicable), (iii) notices of transfers of claims, (iv) notices of objections to
> claims and objections to transfers of claims, (v) notices of any hearings on
> a disclosure statement and confirmation of a plan or plans of reorganization,

Del. Jan. 29, 2023); *In re AIG Financial Products Corp*., Case No. 22-11309 (MFW) (Bankr. D. Del. Dec. 14, 2022);
*In re Medly Health Inc.*, Case No. 22-11257 (KBO) (Bankr. D. Del. Dec. 9, 2022); *In re Winc, Inc*., Case No. 22-
11238 (LSS) (Bankr. D. Del. Nov. 30, 2022); *In re FTX Trading Official Committee of Unsecured Creditors*, Case
No. 22- 11068 (JTD) (Bankr. D. Del. Nov. 11, 2022*); In re Prehired, LLC*, Case No. 22-11007 (JTD) (Bankr. D. Del.
Sep. 27, 2022); *In re Pack Liquidating, LLC (f/k/a Packable Holdings, LLC*), Case No. 22-10797 (CTG) (Bankr. D.
Del. Aug. 28, 2022); *In re ExpressJet Airlines LLC*, Case No. 22-10787 (MFW) (Bankr. D. Del. Aug. 23, 2022); *In
re FSPH, Inc*., Case No. 22-10575 (CTG) (Bankr. D. Del. Jun. 29, 2022); *In re Armstrong Flooring, Inc.,* 22-10426
(MFW) (Bankr. D. Del. May 8, 2022); *In re Gulf Coast Health Care, LLC,* Case No. 21-11336 (KBO) (Bankr. D. Del.
Oct 14, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC,* Case No. 21-10474; *In re RTI Holding Company,
LLC*, Case No. 20- Case 20-12456 (JTD) (Bankr. D. Del. Oct 7, 2020); *In re Town Sports International LLC*, Case
No. 20-12168, (CSS) (Bankr. D. Del. Sept. 16, 2020); *In re RGNGroup Holdings, LLC*, Case No. 20-11961 (BLS)
(Bankr. D. Del. Aug. 19, 2020).

including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan or plans, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtor or the Court may deem necessary or appropriate for an orderly administration of this Chapter 11 Case;

(b)     If necessary, maintain an official copy of the Debtor's schedules of assets and liabilities and statement of financial affairs (collectively, the "**Schedules**"), listing the Debtor's known creditors and the amounts owed thereto;

(c)     Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk;

(d)     Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     For *all* notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     Maintain an electronic platform for purposes of filing proofs of claim;

(i)     Maintain the official claims register for the Debtor (the "**Claims Register**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

(j)     Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

5

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original proofs of claim;

(l)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to Epiq's offices, not less than weekly;

(n)     Upon completion of the docketing process for all claims received to date, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

(o)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicate names and addresses from such lists;

(p)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(q)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding this Chapter 11 Case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

(r)     Assist the Debtor in complying with any orders entered by the Court with respect to the confidentiality of resident information;

(s)     Monitor the Court's docket in this Chapter 11 Case and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

(t)     If this Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to Epiq of entry of the order converting the case;

(u)     Thirty (30) days prior to the close of this Chapter 11 Case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this Chapter 11 Case;

(v)     Within seven (7) days of notice to Epiq of entry of an order closing this Chapter 11 Case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the Chapter 11 Case;

(w)     Within fourteen (14) days of entry of an order dismissing this Chapter 11 Case or within twenty-eight (28) days of entry of a final decree, Epiq shall (a) forward to the Clerk an electronic version of all imaged claims, (b) upload the creditor mailing list into CM/ECF and (c) docket a Final Claims Register; and

(x)     Within the earlier to occur of (a) fourteen (14) days of entry of an order converting the Chapter 11 Case and (b) entry of a termination order, Epiq shall (i) forward to the Clerk an electronic version of all imaged claims; (ii) upload the creditor mailing list into CM/ECF and (iii) docket a Final Claims Register.

10.     The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

### PROFESSIONAL COMPENSATION

11.     The Debtor is proposing to compensate Epiq for the Claims and Noticing Services set forth above in accordance with the pricing schedule attached to the Engagement Agreement. The Debtor respectfully requests that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to section 156(c) of the Judicial Code and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

12.     Epiq agrees to maintain records of all Claims and Noticing Services, including dates, categories of Claims and Noticing Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), counsel for the Debtor, counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter from the Court.

RLF1 30496460V.1

13.     Pursuant to the Engagement Agreement, Epiq is to receive a retainer of $25,000 to hold as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

14.     Additionally, under the terms of the Engagement Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Epiq and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Proposed Order.  The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in this Chapter 11 Case.

## EPIQ'S DISINTERESTEDNESS

15.     Although the Debtor does not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Mailloux Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed.

16.     Moreover, in connection with its retention as Claims and Noticing Agent, Epiq represents in the Mailloux Declaration, among other things, that:

(a)     Epiq is not a creditor of the Debtor;

(b)     Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

RLF1 30496460V.1

(c)     By accepting employment in this Chapter 11 Case, Epiq waives any rights to receive compensation from the United States government in connection with this Chapter 11 Case;

(d)     In its capacity as the Claims and Noticing Agent in this Chapter 11 Case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

(e)     Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this Chapter 11 Case;

(f)     Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent in this Chapter 11 Case, Epiq will not intentionally misrepresent any fact to any person;

(h)     Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of section 156(c) of the Judicial Code; and

(j)     None of the services provided by Epiq as Claims and Noticing Agent in this Chapter 11 Case shall be at the expense of the Clerk's office.

17.     In view of the foregoing, the Debtor believes that Epiq is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

18.     Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

19.     This Application complies with the Claims Agent Protocol and substantially conforms to the standard Application in use in this Court.  In accordance with the Claims Agent Protocol, prior to the selection of Epiq as the Claims and Noticing Agent, the Debtor reviewed and compared engagement proposals from three court-approved Claims and Noticing Agents, including Epiq, to ensure selection through a competitive process.  The Debtor submits, based on

9

all engagement proposals obtained and reviewed, that Epiq's rates, as set forth in the Engagement

Agreement, are competitive and reasonable given its quality of services and expertise.

20.    Based on the foregoing, the Debtor submits that it has satisfied the requirements of

section 156(c) of the Judicial Code, the Local Rules, and the Claims Agent Protocol.  Accordingly,

the Debtor respectfully requests entry of the Proposed Order, pursuant to section 156(c) of the

Judicial Code, Bankruptcy Rule 2002, Local Rule 2002-1(f), and the Claims Agent Protocol,

authorizing the Debtor to retain and employ Epiq as Claims and Noticing Agent, effective as of

the Petition Date.

## **BASIS FOR RELIEF REQUESTED**

21.    This Application is made, pursuant to section 156(c) of the Judicial Code, section

105(a) of the Bankruptcy Code, Bankruptcy Rule 2002(f), Local Rule 2002-1(f), and the Claims

Agent Protocol, for entry of the Proposed Order appointing Epiq as the Claims and Noticing Agent

to assume full responsibility for the distribution of notices and the maintenance, processing, and

docketing of proofs of claim filed in this Chapter 11 Case.

22.    Section 156 of the Judicial Code, in relevant part, provides:

> Any court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices, dockets,
> calendars, and other administrative information to parties in cases
> filed under the provisions of title 11, United States Code, where the
> costs of such facilities or services are paid for out of the assets of the
> estate and are not charged to the United States. The utilization of
> such facilities or services shall be subject to such conditions and
> limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

23.    Section 105 of the Bankruptcy Code, in relevant part, provides:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title. No
> provision of this title providing for the raising of an issue by a party
> in interest shall be construed to preclude the court from, *sua sponte*,

10

taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

24.     Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the Claims and Noticing Services.

25.     In accordance with the Claims Agent Protocol, prior to the selection of Epiq, the Debtor reviewed and compared engagement proposals from three total court-approved claims and noticing agents to ensure selection through a competitive process. The Debtor submits, based on the engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given its quality of services and expertise. The terms of Epiq's retention are set forth in the Engagement Agreement; provided, however, this Application seeks approval solely of the terms and provisions as set forth in this Application and the Proposed Order attached hereto as **Exhibit A**.

26.     In view of the number of anticipated claimants and the complexity of the Debtor's business, the Debtor submits that the appointment of Epiq as the Claims and Noticing Agent is both necessary and in the best interests of the Debtor's estate, creditors, and other parties in interest because the Debtor will be relieved of the burdens associated with the Claims and Noticing Services. Accordingly, the Debtor will be able to devote its full attention and resources to its restructuring efforts.

## RELIEF AS OF PETITION DATE IS APPROPRIATE

27.     In accordance with the Debtor's request, Epiq has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtor would seek approval of its employment and retention, effective as of the Petition Date, so that Epiq can be compensated for services rendered before approval of this Application.  The Debtor believes that no party in interest will be prejudiced by the granting of relief as of the Petition Date as proposed in this Application, because Epiq has provided and continues to provide valuable services to the Debtor's estate during the interim period.

28.     Accordingly, the Debtor respectfully requests entry of the Proposed Order authorizing the Debtor to retain and employ Epiq as Claims and Noticing Agent effective as of the Petition Date.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

29.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

30.     Notice of this Application will be provided to (a) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attn: Linda Richenderfer, Esq. (Linda.Richenderfer@usdoj.gov)); (b) the holders of the largest unsecured claims against the Debtor; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) the United States Securities and Exchange Commission; and (f) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  Notice of this Application and any order entered hereon

will be served in accordance with Local Rule 9013-1(m).  The Debtor respectfully submits that no

further notice is required.

## <u>NO PRIOR REQUEST</u>

31.    No previous request for the relief sought herein has been made to this Court or any

other court.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Proposed Order substantially in the form attached hereto as **Exhibit A** granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated:  January 29, 2024
       Wilmington, Delaware

                     Respectfully submitted,

           */s/ Zachary I. Shapiro*
           RICHARDS, LAYTON & FINGER, P.A.
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email:    heath@rlf.com
          shapiro@rlf.com
          milana@rlf.com

    -and-

WEIL, GOTSHAL & MANGES LLP
Ronit Berkovich (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
F. Gavin Andrews (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Email:    ronit.berkovich@weil.com
          jessica.liou@weil.com
          f.gavin.andrews@weil.com

*Proposed Attorneys for Debtor*
*and Debtor in Possession*

**EXHIBIT A**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | **Chapter 11** |
| Terraform Labs Pte. Ltd.,[1] | **Case No. 24-10070 (BLS)** |
| Debtor. | |
| | Re: Docket No. __ |

**ORDER (I)
APPROVING THE RETENTION
AND APPOINTMENT OF EPIQ CORPORATE
RESTRUCTURING, LLC AS THE CLAIMS AND
NOTICING AGENT TO THE DEBTOR, EFFECTIVE AS OF
THE PETITION DATE, AND (II) GRANTING RELATED RELIEF**

Upon the application (the "**Application**")[2] of the above-captioned debtor and debtor in possession (the "**Debtor**") for entry of an order (this "**Order**") approving the retention and appointment of Epiq Corporate Restructuring, LLC ("**Epiq**") as the Claims and Noticing Agent for the Debtor in the Chapter 11 Case, effective as of the Petition Date, under section 156(c) of the Judicial Code, section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002(f), Local Rule 2002-1(f), and the Claims Agent Protocol, to, among other things, (a) distribute required notices to parties in interest, (b) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Chapter 11 Case, (c) provide such other administrative services as required by the Debtor that would fall within the purview of services to be provided by the Clerk's office, all as more fully set forth in the Application, and (d) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration; and upon the Mailloux Declaration; and this Court having jurisdiction over this matter pursuant to sections 157 and 1334 of the Judicial Code

---

[1]  The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to section 157(b)(2) of the Judicial Code and that the Court may enter a final order under Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to sections 1408 and 1409 of the Judicial Code; and this Court having found that the relief requested in the Application is in the best interests of the Debtor's estate, creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Application is granted as set forth herein.

2.      Notwithstanding the terms of the Engagement Agreement attached as **<u>Exhibit C</u>** to the Application, the Application is approved solely as set forth in this Order and solely with respect to the "Claims Management" and "Noticing" services set forth in the Services Schedule attached to the Engagement Agreement.

3.      The Debtor is authorized to retain and employ Epiq as Claims and Noticing Agent, effective as of the Petition Date, under the terms of the Engagement Agreement, and Epiq is authorized and directed to perform noticing services and to receive, maintain, record, and

otherwise administer the proofs of claim filed in the Chapter 11 Case, and all related tasks, all as described in the Application (the "**Claims and Noticing Services**").

4.      Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in the Chapter 11 Case and is authorized and directed to maintain the Claims Register for the Debtor, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.      Epiq is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

6.      Epiq is authorized to take such other actions as required to comply with the specific duties set forth in paragraph 10 of the Application which have been authorized pursuant to this Order.

7.      Epiq shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of section 156(c) of the Judicial Code.

8.      Without further order of this Court, the Debtor is authorized to compensate Epiq for the Claims and Noticing Services in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.      Epiq shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices via electronic mail on the Debtor, counsel for the U.S. Trustee, counsel for the Debtor, counsel for any statutory committee and any party in interest that specifically requests service of the monthly invoices.

10.     The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtor's estate.

12.     Epiq is permitted to receive a $25,000 retainer from the Debtor and will hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services incurred under the Engagement Agreement.

13.     The Debtor shall indemnify Epiq and each other Indemnified Person, as that term is defined in the Engagement Agreement (collectively, the "**Indemnified Persons**"), under the terms of the Engagement Agreement, subject to the following modifications:

    a.      The Indemnified Persons shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the Claims and Noticing Services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

    b.      Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify Indemnified Persons, or provide contribution or reimbursement to Indemnified Persons, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from an Indemnified Person's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of an Indemnified Person's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law, or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which the

4

Claims and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order;

c.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this Chapter 11 Case (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, an Indemnified Person believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, the Indemnified Person or Epiq must file an application therefor in this Court, and the Debtor may not pay any such amounts to such Indemnified Person before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by an Indemnified Person for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify the Indemnified Persons.  All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, or reimbursement.

14.    Notwithstanding anything to the contrary, Section 8 of the Engagement Agreement regarding limitation of liability shall be given no effect during the Chapter 11 Case.

15.    In the event Epiq is unable to provide the Claims and Noticing Services, Epiq shall immediately notify the Clerk and the Debtor's counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's counsel.

16.    The Debtor may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for services that are to be performed by Epiq but are not specifically authorized by this Order.

17.    Epiq shall not cease providing Claims and Noticing Services during the Chapter 11 Case for any reason, including nonpayment, without an order of the Court.

18.    In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, this Order shall govern.

5

19.     The Debtor and Epiq are authorized to take all action necessary to effectuate the relief granted in this Order.

20.     After entry of an order terminating Epiq's services as the Claims and Noticing Agent, upon the closing of the Chapter 11 Case, or for any other reason, Epiq shall be responsible for (a) forwarding to the Clerk and electronic version of all imaged claims, (b) uploading the creditor mailing lists into CM/ECF and (c) docketing a final Claims Register.

21.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

22.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Final Order.

6

## **EXHIBIT B**

### **Mailloux Declaration**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Terraform Labs Pte. Ltd.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 24-10070 (BLS) |

### DECLARATION OF
### KATE MAILLOUX IN SUPPORT OF
### APPLICATION OF DEBTOR FOR ENTRY OF
### AN ORDER (I) APPROVING THE RETENTION AND
### APPOINTMENTOF EPIQ CORPORATE RESTRUCTURING, LLC AS
### THE CLAIMS AND NOTICING AGENT TO THE DEBTOR, EFFECTIVE
### AS OF THE PETITION DATE, AND (II) GRANTING RELATED RELIEF

I, Kate Mailloux, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.  I am a Senior Director with Epiq Corporate Restructuring, LLC ("**Epiq**"), with offices located at 777 3rd Ave., 12th Floor, New York, NY 10017. I am authorized to submit this declaration (this "**Declaration**") in support of the *Application of the Debtor for Entry of an Order (I) Approving the Retention and Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent to the Debtor, Effective as of the Petition Date, and (II) Granting Related Relief* (the "**Application**").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.  Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has acted as the claims and noticing agent in

---

[1] The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

numerous recent cases of varying size and complexity, including the following recent cases filed in this District: *See, e.g., In re Yellow Corporation, Inc.*, Case No. 23-11069 (CTG) (Bankr. D. Del. Aug. 9, 2023*); In re Nova Wildcat Shur-Line Holdings, Inc*. (a/k/a H2 Brands Group Home & Hardware), Case No. 23-10114 (CTG) (Bankr. D. Del. Jan. 29, 2023); *In re AIG Financial Products Corp*., Case No. 22-11309 (MFW) (Bankr. D. Del. Dec. 14, 2022); *In re Medly Health Inc.*, Case No. 22-11257 (KBO) (Bankr. D. Del. Dec. 9, 2022); *In re Winc, Inc*., Case No. 22-11238 (LSS) (Bankr. D. Del. Nov. 30, 2022); *In re FTX Trading Official Committee of Unsecured Creditors*, Case No. 22- 11068 (JTD) (Bankr. D. Del. Nov. 11, 2022*); In re Prehired, LLC*, Case No. 22-11007 (JTD) (Bankr. D. Del. Sep. 27, 2022); *In re Pack Liquidating, LLC (f/k/a Packable Holdings, LLC*), Case No. 22-10797 (CTG) (Bankr. D. Del. Aug. 28, 2022); *In re ExpressJet Airlines LLC*, Case No. 22-10787 (MFW) (Bankr. D. Del. Aug. 23, 2022); *In re FSPH, Inc*., Case No. 22-10575 (CTG) (Bankr. D. Del. Jun. 29, 2022); *In re Armstrong Flooring, Inc.,* 22-10426 (MFW) (Bankr. D. Del. May 8, 2022); *In re Gulf Coast Health Care, LLC,* Case No. 21-11336 (KBO) (Bankr. D. Del. Oct 14, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC,* Case No. 21-10474; *In re RTI Holding Company, LLC*, Case No. 20- Case 20-12456 (JTD) (Bankr. D. Del. Oct 7, 2020); *In re Town Sports International LLC*, Case No. 20-12168, (CSS) (Bankr. D. Del. Sept. 16, 2020); *In re RGNGroup Holdings, LLC*, Case No. 20-11961 (BLS) (Bankr. D. Del. Aug. 19, 2020).

3.      As agent and custodian of Court records pursuant to section 156(c) of the Judicial Code, Epiq will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "**Clerk**"), the services specified in the Application and the Engagement Agreement. In addition, at the Debtor's request, Epiq will perform such other claims and noticing services

specified in the Application.  For the avoidance of doubt, pursuant to the Engagement Agreement, Epiq will perform the Claims and Noticing Services for the Debtor in this Chapter 11 Case.

4.       Subject to Court approval, the Debtor has agreed to compensate Epiq for professional services rendered pursuant to section 156(c) of the Judicial Code in connection with this Chapter 11 Case according to the terms and conditions of the Engagement Agreement. Payments are to be based upon the submission of a billing statement by Epiq to the Debtor after the end of each calendar month which includes a detailed listing of services and expenses.  Under the terms of the Engagement Agreement, upon the entry of the Proposed Order, Epiq will receive a $25,000 retainer and will hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

5.       Epiq represents, among other things, the following:

(a)     Epiq is not a creditor of the Debtor;

(b)     Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

(c)     By accepting employment in this Chapter 11 Case, Epiq waives any rights to receive compensation from the United States government in connection with this Chapter 11 Case;

(d)     In its capacity as the Claims and Noticing Agent in this Chapter 11 Case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

(e)     Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this Chapter 11 Case;

(f)     Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent in this Chapter 11 Case, Epiq will not intentionally misrepresent any fact to any person;

3

(h)     Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)      Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of section 156(c) of the Judicial Code; and

(j)      None of the services provided by Epiq as Claims and Noticing Agent in this Chapter 11 Case shall be at the expense of the Clerk's office.

6.      Although the Debtor does not propose to retain Epiq under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of identified potential parties in interest (the "**Potential Parties in Interest**") in this Chapter 11 Case.  The list of Potential Parties in Interest was provided by the Debtor and is attached hereto as **Schedule 1**. Epiq is not aware of any relationship that would present a disqualifying conflict of interest.  To the extent that Epiq's conflicts check has revealed that certain Potential Parties in Interest were current or former clients of Epiq within the past three years, these parties have been identified on a list annexed hereto as **Schedule 2** (the "**Client Match List**").  However, given Epiq's neutral position as claims and noticing agent or administrative advisor for any parties listed on the Client Match List, Epiq does not view such relationships as real or potential conflicts.  Further, to the best of my knowledge, any such relationship between Epiq and any parties on the Client Match List is completely unrelated to the Debtor and this chapter 11 case.

7.      In addition, to the best of my knowledge, none of Epiq's employees are related to bankruptcy judges in the District of Delaware, the United States Trustee for Region 3, any attorney known by Epiq to be employed in the Office of the United States Trustee serving the District of Delaware or are equity security holders of the Debtor.

8.      To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither Epiq, nor any of its professionals, has any

4

materially adverse connection to the Debtor, its creditors or other relevant parties.  Epiq may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for other chapter 11 debtors.

9.      Epiq is a wholly owned subsidiary of Epiq Systems, Inc., which is corporate parent to certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

10.     Epiq Systems, Inc. is a wholly owned subsidiary of Document Technologies, LLC ("**DTI**"), a global legal process outsourcing company, which is an ultimate wholly owned subsidiary of DTI Topco, Inc. ("**DTI Topco**"). DTI Topco is a privately-held entity with majority ownership held by OMERS Administration Corporation ("**OAC**"), the administrator of the OMERS pension funds, and managed by OMERS Private Equity Inc. ("**OPE**", which together with OAC are referred to as "**OMERS**"), and funds managed by Harvest Partners, LP, ("**Harvest**") a leading private equity investment firm.

11.     Neither OMERS nor Harvest is currently identified on the Potential Parties in Interest list. However, the following disclosure is made out of an abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

12.     Designees of OMERS and Harvest are members of the Board of Directors of DTI Topco ("**Parent Board Designees**"). No designees of OMERS or Harvest are members of the

Board of Directors of DTI or Epiq, or any other subsidiaries of DTI. Further, Epiq has the following restrictions in place (collectively, the "**Barrier**"):  (i) prior to the Debtor commencing this case, Epiq did not share the names or any other information identifying the Debtor with OMERS, Harvest, or the Parent Board Designees; (ii) Epiq has not and will not furnish any material nonpublic information about the Debtor to DTI, DTI Topco, OMERS, Harvest, or the Parent Board Designees; (iii) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work on Epiq client matters or have access to Epiq client information, client files, or client personnel; (iv) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work in Epiq's offices; (v) other than the Parent Board Designees, Epiq operates independently from DTI, DTI Topco, OMERS and Harvest, including that it does not share any employees, officers or other management with OMERS or Harvest, has separate offices in separate buildings, and has separate IT systems; and (vi) no Epiq executive or employee is a director, officer or employee of OMERS or Harvest (or vice versa other than the Parent Board Designees).

13.     Epiq has searched the names of DTI, DTI Topco, OMERS and Harvest against the Debtor and the Potential Parties in Interest list provided by the Debtor. Based solely on the foregoing search, Epiq has determined, to the best of its knowledge, that there are no connections. Because of any applicable securities laws and the fact that Epiq operates independently from DTI, DTI Topco, OMERS and Harvest, prior to the Petition Date, Epiq was unable to further investigate with either OMERS or Harvest, to the extent necessary, any potential or actual connection between either OMERS or Harvest and the Debtor and the potential parties in interest.

14.     Epiq has working relationships with certain of the professionals retained by the Debtor and other parties herein but such relationships are completely unrelated to this Chapter 11 Case.  Epiq has represented, and will continue to represent, clients in matters unrelated to this

6

Chapter 11 Case, and has had, and will continue to have, relationships in the ordinary course of its business with certain professionals in connection with matters unrelated to this Chapter 11 Case.

15.     Epiq has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this Chapter 11 Case.  If Epiq's proposed retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtor in this Chapter 11 Case.

16.     Based on the foregoing, I believe Epiq is a "disinterested person" as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge, neither Epiq nor any of its partners or employees hold or represent any interest materially adverse to the Debtor's estate with respect to any matter upon which Epiq is to be engaged.

17.     Neither Epiq nor its affiliates are party to any agreements where it/they receive(s) consideration in exchange for transferring information derived from its role as a claims agent under section 156(c) of the Judicial Code to non-client third parties.

18.     I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and Epiq will comply with them, subject to the Orders of this Court.

In accordance with section 1746 of the Judicial Code, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: January 29, 2024
    New York, New York

*/s/ Kate Mailloux*
Kate Mailloux
Senior Director
Epiq Corporate Restructuring, LLC

7

RLF1 30496460v.1

## **SCHEDULE 1**

### **Potential Parties in Interest**

**<u>Debtor</u>**
Terraform Labs Pte. Ltd.

**<u>5% Or More Equity Holders</u>**
Kwon, Do Hyeong
Shin, Daniel Hyunsung

**<u>Bankruptcy Professionals</u>**
WongPartnership LLP
Alvarez and Marsal
Epiq Global
Richards, Layton & Finger, P.A.
Weil, Gotshal & Manges LLP

**<u>Contract Counterparties</u>**
Amazon Web Services Singapore
Deel, Inc
Dubel & Associates, LLC
Luna Foundation Guard Ltd.
Moon Rabbit Labs, Inc

**<u>Directors And Officers</u>**
Amani, Arrash Chris
Brown, Michael
Dubel, John
Mathialagan, Ashwin

**<u>Known Affiliates (Non-Debtor Joint Ventures)</u>**
Moon Landing Venture I Ltd
Proximity Panorama, LDA
Terra Form Labs Korea
Terraform Labs Limited

**<u>Legal Parties</u>**
Beltran, Hulian Moreno
Drew & Napier LLC
Gan Yi Dong, Douglas
Kaplan Kecker Fink
Platias, Nikolaos Alexandros
Setia Law LLC

**<u>Ordinary Course Professionals</u>**
Kim & Chang
Kobre & Kim

**<u>Other Professionals</u>**
Dentons Rodyk & Davidson LLP
Dentons Us LLP

**<u>Taxing Authority/Governmental/Regulatory</u>**
Commodity Futures Trading Commission
High Court of Singapore
Internal Revenue Services
Ministry of Finance
U.S. Department of Justice

**<u>Top General Unsecured Creditors</u>**
Aca Engrg Pte Ltd
Archer Marketing & Development (S) Pte Ltd
Cheang & Lee Sanitary Plumbing Pte Ltd
Cloudflare, Inc.
Eshares, Inc. dba Carta, Inc.
K&L Gates LLP
Lee, Ethan
Nansen Pte. Ltd
Pagerduty, Inc.
Securities and Exchange Commission
Singtel
Standard Crypto Venture Fund
Submc1
Token Terminal OY
TPC Commercial Pte Ltd
TQ Ventures III LP

**<u>US Trustee And Staff</u>**
Attix, Laruen
Bu, Fang
Casey, Linda
Clausen, Joanne E.
Cudia, Joseph
Dice, Holly
Dortch, Shakima L.
Fox, Timothy J. Jr.
Giordano, Diane
Green, Christine
Hackman, Benjamin
Jones, Nyanquoi
Leamy, Jane
Lipshie, Jonathan
McCollum, Hannah M.
McMahon, Joseph J.

O'Malley, James R.
Panacio, Michael
Richenderfer, Linda
Schepacarter, Richard
Serrano, Edith A.
Sierra-Fox, Rosa
Thomas, Elizabeth
Vara, Andrew R.
Wynn, Dion

**Judges And Staff**
Chan, Ashely M., Judge
Dorsey, John T., Judge
Goldblatt, Craig T., Judge
Horan, Thomas M. Judge
Owens, Karen B., Judge
Shannon, Brendan Linehan
Silverstein, Laurie Selber, Chief Judge
Stickles, J. Kate, Judge
Walrath, Mary F., Judge
Barksdale, Nickita
Batts, Cacia
Bello, Rachel
Brady, Claire
Capp, Laurie
Cavello, Robert
Farrell, Catherine
Gadson, Danielle
Haney, Laura
Hrycak, Amanda
Johnson, Lora
Lopez, Marquietta
Lugano, Al
O'Boyle, Una
Ranieri, Joan
Subda, Paula
Walker, Jill
Yeager, Demitra

RLF1 30496486v.1

## **SCHEDULE 2**

## **Client Match List**

**N/A**

**EXHIBIT C**

**Engagement Agreement**

*Execution Version*



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below. In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1. Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2. Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3. Charges.**

3.1    For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable. Epiq will bill Client monthly. All invoices shall be due and payable upon receipt within ten (10) business days.

3.2    Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2025. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

*Execution Version*



3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable and documented out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items in accordance with the Pricing Schedule attached hereto.

3.4    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7    To the extent permitted by applicable law, and subject to Bankruptcy Court approval of Epiq's retention, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  Such Retainer shall be made through Client authorizing Dentons US LLP ("Dentons") to send Epiq the funds.  The Retainer is due within five (5) business days after execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.  The Client is solely responsible for payment of Epiq's fees and expenses.  The failure by Dentons to transfer any advance retainer or other payment to Epiq does not void or negate the Client's responsibility to pay Epiq's fees and expenses.

## 4.    <u>Confidentiality.</u>

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Confidential information will be utilized by Epiq solely for the purposes of performing Services for the Client. Epiq shall use and hold all confidential information in accordance with all applicable laws, rules, and regulations and shall keep confidential information in the strictest confidence.  Epiq shall not use the confidential information for its own use or in any way, directly or indirectly, harmful or competitive with the Client or for any purpose except as necessary to perform the required Services under the

*Execution Version*



Agreement. Confidential information includes written information as well as that transferred orally, visually, electronically, or by any other means. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

**5. <u>Title to Property.</u>**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "<u>Property</u>"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property. Client reserves all property rights in and to all Property (including any Property developed by Client for itself or for use by Epiq) provided to Epiq.

**6. <u>Disposition of Data.</u>**

6.1  Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2  Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "<u>Client Materials</u>") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all documented, out-of-pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for documented, reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; <u>provided</u>, <u>however</u>, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media. Notwithstanding anything herein to the contrary, Client shall retain all rights in and title to the Client Materials and expressly reserves all rights with respect thereto.

3



**7.  Indemnification.**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and reasonable and documented attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's actual fraud, gross negligence, or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person.  Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

**8. Limitation of Liability**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.

*Execution Version*



## 9. <u>Representations / Warranties.</u>

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 10. <u>Confidential On-Line Workspace</u>

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the written consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 11. <u>General</u>

11.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld; provided that the Client may assign this Agreement in connection with a restructuring transaction contemplated by its emergence from chapter 11 to an entity within the Client's reorganized corporate structure. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

*Execution Version*



11.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

11.7  Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9  All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

DocuSign Envelope ID: CDEBA0EA-DE90-431A-95BA-16A25A9F2AA4

*Execution Version*



11.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

       <u>If to Epiq</u>:

                    Epiq Corporate Restructuring, LLC
                    777 Third Avenue, 12th Floor
                    New York, New York 10017
                    Attn: Brad Tuttle

       <u>If to Client</u>:

                    Terraform Labs Pte Ltd.
                    1 Wallich Street # 37-01
                    Guoco Tower, Singapore, 07881
                    Attn: Arrash Chris Amani

       <u>With a copy to</u>:

                    Weil, Gotshal & Manges LLP
                    767 5th Avenue
                    New York, NY 10153
                    Attn: Ronit Berkovich, F. Gavin Andrews

11.11   Invoices sent to Client should be delivered to the following address:

                    Terraform Labs Pte Ltd.
                    1 Wallich Street # 37-01
                    Guoco Tower, Singapore, 07881
                    Attn: Edmund Lim
                    edmund.lim@terra.money

11.12   The "Effective Date" of this Agreement is January 21, 2024.

*Execution Version*



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____
Name:  Brad Tuttle
Title:   General Manager

**TERRAFORM LABS PTE LTD.**

By:_____
Name:  Arrash Chris Amani
Title:   Chief Executive Officer

8

*Execution Version*



# SERVICES SCHEDULE

**SCHEDULES/STATEMENT PREPARATION**

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

**CLAIMS MANAGEMENT**

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

*Execution Version*



➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## NOTICING

➢ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.

➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

*Execution Version*



## **BALLOTING/TABULATION**

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties. Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## **CALL CENTER**

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

## **MISCELLANEOUS**

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

*Execution Version*



➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.

*Execution Version*



# <u>PRICING SCHEDULE</u>

**Professional Fees**

| Title | Hourly Rates |
|---|---|
| Analyst | Waived |
| IT/Programming | $60-$85 |
| Project Managers/Consultants/ Directors | $85- $185 |
| Solicitation Consultant | $185 |
| Executive Vice President, Solicitation | $195 |
| Executives | No Charge |

## CLAIM AND NOTICING

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL[*] |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## <u>DATA MANAGEMENT RATES</u>

| | |
|---|---|
| Creditor Records, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.05 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## <u>ON-LINE CLAIM FILING SERVICES</u>

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

*Larger volume email noticing pricing quoted at time of request

DocuSign Envelope ID: CDEBA0EA-DE90-431A-95BA-16A25A9F2AA4

*Execution Version*



## CALL CENTER RATES

Standard Call Center Setup/Maintenance          NO CHARGE

Voice Recorded Message          NO CHARGE

Call Center Operator          $55.00 per hour

## OTHER SERVICES RATES

Custom Software, Workflow
and Review Resources          Quoted at time of request

Strategic Communication Services          Quoted at time of request

Escrow Services          Quoted at time of request /competitive rates

Securities Exchange/ATOP Event/Rights Offerings          Quoted at time of request

eDiscovery          Quoted at time of request, bundled pricing available

Virtual Data Room --
Confidential On-Line Workspace          Quoted at time of request

Disbursements -- Check and/or Form 1099          Quoted at time of request

Disbursements -- Record to Transfer Agent          Quoted at time of request