IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
: 
In re : Chapter 11
:
**TERRAFORM LABS PTE. LTD.** : Case No. 24–10070 (BLS)
:
Debtor.[1] :
:
---------------------------------------------------------- x

**DECLARATION OF MICHAEL LETO
IN SUPPORT OF THE DEBTOR'S FIRST DAY MOTIONS**

I, Michael Leto, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am a Managing Director with Alvarez & Marsal North America, LLC ("**A&M**"), a restructuring advisory services firm specializing in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services and financial and operational restructuring, and a restructuring advisor to the above-captioned debtor and debtor-in-possession, Terraform Labs Pte. Ltd. (the "**Debtor**" or the "**Company**").

2. The Debtor engaged A&M on or around January 19, 2024 to provide financial advisory services. Since the outset of the Debtor's engagement of A&M, I have worked closely with the Company and the Company's other advisors. I have over 15 years of distressed company advisory experience. Through roles in both senior management and as a restructuring advisor, I have substantial experience helping financially distressed companies stabilize their financial condition, analyze their operations, and develop business plans to accomplish the

---

[1] The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

necessary restructuring of their operations and finances. I have advised clients in numerous major bankruptcy cases, including Lehman Brothers Holdings Inc., a large financial bankruptcy (for 7 years, of which I served 3 years as Interim Chief Financial Officer), Genesis Global Holding and subsidiaries, a lending and borrowing, spot trading, derivatives and custody service for digital assets and fiat currency, Yellow Corporation, a provider of transportation services, Bristow Group, an aviation transportation company, and Gibson Brands, a large international consumer products company, and I have served as the interim Chief Financial Officer of other private companies. I received my bachelor's degree in Accounting and Business Administration from Hofstra University and an MBA from Fordham University in Management Systems and International Business.  This declaration (this "**Declaration**"), the Debtor's first day motions described further herein (the "**First Day Motions**"), and the Amani Declaration (as defined below) set forth the relevant facts in support of the relief requested in the First Day Motions.

3. I am generally familiar with the Debtor's operations, business, financial affairs, and books and records, as well as the circumstances leading to the commencement of this chapter 11 case, and I am authorized to submit this Declaration in support of the First Day Motions. I also refer to the *Declaration of Chris Amani in Support of the Debtor's Chapter 11 Petition and First Day Relief* (the "**Amani Declaration**") filed concurrently herewith, which, among other things, supports the Debtor's voluntary petition for relief under chapter 11 of the Bankruptcy Code and the First Day Motions.

4. The First Day Motions seek relief intended to allow the Debtor to perform and meet the obligations necessary to continue ordinary course activities and fulfill its duties as a debtor-in-possession. I am familiar with the contents of each First Day Motion (including the exhibits thereto) and, based on my knowledge and experience, believe that each First Day Motion

(i) is intended to stabilize the Debtor's business operations, (ii) facilitate the efficient administration of the Debtor's chapter 11 case, and (iii) constitutes a critical element to the Debtor's restructuring efforts. To the extent necessary to support the relief requested in the First Day Motions, the facts set forth in such motions are incorporated by reference herein.

5. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my personal experience, knowledge, and information concerning the Debtor's operations and financial condition, the information provided to me by the Debtor's employees, or my discussions with the Debtor's officers and advisors, including professionals at Weil, Gotshal & Manges LLP ("**Weil**"), WongPartnership LLP ("**Wong**"), and Richards, Layton & Finger, P.A. ("**RLF**," collectively with Weil, A&M, and Wong, the "**Advisors**"). If called upon to testify, I would testify competently to the facts set forth in this Declaration.

### I.     OVERVIEW

6. As discussed in further detail in the Amani Declaration, the Debtor is a software development company. Its primary business purpose is to develop and support (i) software used to create and run the current Terra blockchain network ("**Terra**" or the "**Terra Blockchain**"), which was started in May 2022, and (ii) an entire suite of tools, protocols, and applications that operate on the Terra Blockchain, making transactions on the network easier, faster, and more user-friendly. The Terra Blockchain is a unique decentralized digital ledger of peer-to-peer transactions involving digital assets designed specifically to that network.

7. Importantly, the Debtor does not currently issue or sell digital tokens for value (i.e., to generate revenue) and it is not a trading platform for digital currencies. The Debtor does not have–and never had–"customers" in the way many digital asset companies do, like

Coinbase and FTX (exchanges for digital assets) or Celsius Network (a cryptocurrency lending and borrowing platform). Nor did it make loans of cryptocurrency assets like Genesis. Users of the Debtor's products do not have accounts with the Debtor, and the Debtor never held, and does not hold, any customer funds.

## II.    FIRST DAY MOTIONS[2]

A. **Application of Debtor for Entry of an Order (I) Approving the Retention and Appointment of Epiq Corporate Restructuring, LLC as the Claims and Noticing Agent to the Debtor, Effective as of the Petition Date, and (II) Granting Related Relief (the "Claims and Noticing Agent Application")**

8.  I understand that in light of the anticipated issues and complexity of the Debtor's business, the appointment of Epiq Corporate Restructuring, LLC ("**Epiq**") as the claims and noticing agent is in the best interests of the Debtor's estate, creditors, and other parties in interest because the Debtor and the Clerk of the Court will be relieved of the burdens associated with claims and noticing services. Accordingly, the Debtor will be able to devote its full attention and resources to its restructuring efforts.

9.  Epiq will, among other things: (i) prepare and serve required notices and documents in this chapter 11 case; (ii) if necessary, maintain an official copy of the Debtor's schedules of assets and liabilities and statement of financial affairs; (iii) maintain (a) a list of all potential creditors, equity holders, and other parties in interest and (b) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i); (iv) furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim; (v) process all proofs of claim received; and (vi) maintain an electronic platform for purposes of filing proofs of claim.

---

[2]  Capitalized terms used but not otherwise defined shall have the meanings ascribed to such terms in the respective First Day Motions.

4

10. I believe that Epiq's rates, as described in the Claims and Noticing Agent Application, are competitive and reasonable given Epiq's quality of services and expertise. Given the complexity of this Chapter 11 Case, I believe that appointing Epiq as the Claims and Noticing Agent is in the best interest of the Debtor's estate and creditors and all parties in interest.

11. Based on the foregoing, I believe that granting the relief requested in the Claims and Noticing Agent Application is appropriate.

**B. Motion of Debtor for Entry of Order (I) Authorizing the Debtor to File Under Seal (A) Portions of the Creditor Matrix and (B) the Personal Information in Other and Future Filings, and (II) Granting Related Relief (the "Sealing Motion")**

12. The Debtor requests entry of an order (i) authorizing the Debtor to file under seal and to redact (a) certain portions of its creditor mailing matrix (the "**Creditor Matrix**") containing the Personal Information and (b) certain portions of other and any other future filings containing the Personal Information (together with the Creditor Matrix, the "**Sealed Documents**"), and (ii) granting related relief.

13. I believe that cause exists to authorize the Debtor to file under seal and to redact the home address of individuals (the "**Personal Information**") in the Sealed Documents. The disclosure of address information poses a risk to individuals because, among other things, such information could be used to perpetrate identity theft or locate survivors of domestic violence, harassment, or stalking. The Debtor cannot reasonably know with sufficient certainty whether a release of an individual's personal information could potentially jeopardize his or her safety. Accordingly, I believe good cause exists to grant the relief in the Sealing Motion.

**C. Motion Of Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to Use Treasury Management System, (II) Authorizing Continuation of Intracompany and Intercompany Transactions, (III) Extending Time to Comply with Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief (the "Treasury Management Motion")**

14. In the ordinary course of its business, the Debtor maintains a system to store, manage, and move its digital assets in a secure manner and to convert its digital assets to fiat currency to pay its obligations (the "**Treasury Management System**"). The Treasury Management System enables the Debtor to maintain control over the administration of various "wallets," or software applications that store the public and private keys needed to access digital currencies. These wallets can store digital assets for different purposes, including for operational expenditures, staking, and liquidity provisioning among others

15. The Debtor's internal finance and operations department maintains oversight over the Treasury Management System and implements controls for accepting and transferring digital currencies and for reconciling the Debtor's books and records monthly to ensure that all movement of digital currencies is accounted for.

16. The Debtor has been diligently reviewing its books and records with the assistance of A&M and its other advisors to confirm the ownership of certain of the Debtor's cryptocurrency wallets as between TFL and Terraform Labs Limited ("**TLL**") (a British Virgin Islands company limited by shares and a wholly-owned subsidiary of the Debtor) and the intercompany claims between the entities, and is considering its options in respect to TLL, including whether to reinstate it in accordance with BVI law. This issue is also being considered by the special committee of the Debtor's Board as part of its internal investigation (as described below).

17. Allowing the Debtor to continue using its Treasury Management System is crucial to maintaining and maximizing the value of the Debtor's estate. Without the relief sought

in this Motion, the Debtor would be unable to pay: (i) the approximately 60-person workforce employed by the Debtor (and its primary operating subsidiary) that is working diligently to develop innovative software applications for the Terra Community; (ii) its vendors that help support the Debtor's infrastructure and operations; and (iii) its ongoing legal fees in connection with defending lawsuits that could substantially and negatively impact its business.

18. So as to minimize disruption to the Treasury Management System, which would be costly to the Debtor's operations and divert precious time and resources from the Debtor's focus on their restructuring efforts, the Debtor has sought entry of interim and final orders authorizing it to continue the use of the Treasury Management System, including (i) authority to (a) use the Debtor's digital asset and fiat currency management system, including, without limitation, using its existing Wallets and Accounts and opening new wallets and accounts, (b) process transfers from the Bitcoin Wallets and Ops Multisig Wallets, (c) process and receive transfers of digital assets or cash from third parties, and (d) process any Intracompany Transactions and Intercompany Transactions; (ii) authority to pay all obligations related thereto; (iii) an extension of time to comply with the requirements of section 345(b) of the Bankruptcy Code; and (iv) related relief.

19. The relief in the Treasury Management Motion is necessary to avoid immediate and irreparable harm to the Debtor. Absent such relief, the Debtor's ability to pay employees and vendors and successfully administer this chapter 11 case will be severely compromised. The delays that would result from the Debtor being required to establish a new system of accounts and digital asset management would place an undue burden and put unnecessary pressure on the Debtor and its employees while they work to stabilize the business

and meet the obligations imposed by chapter 11 of the Bankruptcy Code, among other expected significant and detrimental effects.

20. Based on the foregoing, I believe that granting the relief requested in the Treasury Management Motion is appropriate.

**D. Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Pay Prepetition Employee Obligations and (B) Maintain Employee Benefit Programs, and (II) Granting Related Relief (the "Employee Wages Motion")**

21. By the Employee Wages Motion, the Debtor requests entry of interim and final orders (i) authorizing, but not directing, the Debtor to (a) pay Workforce Compensation Obligations and Employee Benefit Obligations, and any related expenses, fees, and costs, and (b) maintain, continue to honor, and pay, in its sole discretion, amounts relating to the Debtor's business practices, programs, and policies for its Workforce as in effect as of the Petition Date, and as may be modified or supplemented from time to time in the ordinary course of business, and (ii) granting related relief.  In further support of this Motion.  The Debtor's workforce—which consists of Employees employed by the Debtor, Proximity, and Deel, as well as Contractors—performs a variety of critical functions for the Debtor's business such as research and development, engineering, product design, software development, administrative duties, and executive duties. The Employees' and Contractors' skills and specialized knowledge of the Debtor's business model, industry, and operations, as well as their relationships with vendors, the community, and other third parties, are essential to the value of the Debtor's assets and business.  Without the support and dedication of the Debtor's workforce to ensure the continued operation of the business, the Debtor would be unable to maintain and maximize value for stakeholders and effectively reorganize.

22. The Employees and Contractors provide the Debtor with services necessary to conduct the Debtor's business, and absent the payment of the compensation and benefits owed

to the Employees and Contractors, the Debtor may experience workforce turnover and instability at this critical time in this chapter 11 case. Without these payments and authorization to continue the Employee Benefits Programs, the Debtor's workforce may become demoralized and unproductive because of the potential significant financial strain and other hardships the Employees and Contractors may face, likely leading to significant attrition.

23. Absent the relief in the Employee Wages Motion, the Debtor would suffer immediate and irreparable harm. Failure to satisfy the Workforce Obligations will jeopardize morale and loyalty at a time when support of the Workforce is critical to the Debtor's business The relief requested Payment of the prepetition obligations with respect to the Employee Compensation Obligations and Employee Benefit Obligations is a necessary and critical element of the Debtor's efforts to preserve value and will give the Debtor the greatest likelihood of retention of its workforce as the Debtor seeks to operate its business in this chapter 11 case.

24. Based on the foregoing, I believe that granting the relief requested in the Employee Wages Motion is appropriate.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:   January 30, 2024
         New York, New York

                                    Respectfully submitted,

                                    By:   */s/ Michael Leto*
                                          Michael Leto
                                          Managing Director
                                          Alvarez & Marsal North America, LLC

RLF1 30497819v.1