**<u>EXHIBIT A</u>**

**Motion**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

--------------------------------------------------------------- x
                                            :
In re                                       :        **Chapter 11**
                                            :
**TERRAFORM LABS PTE. LTD.**                :        **Case No. 24–10070 (BLS)**
                                            :
            **Debtor.[1]**                  :
                                            :
--------------------------------------------------------------- x

### MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO (A) PAY PREPETITION WORKFORCE OBLIGATIONS AND (B) MAINTAIN EMPLOYEE BENEFIT PROGRAMS, AND (II) GRANTING RELATED RELIEF

Terraform Labs Pte. Ltd., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), respectfully moves and represents as follows in support of this motion (the "**Motion**"):

**Background**

1.     On January 21, 2024 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

2.     Additional information regarding the circumstances leading to the commencement of this chapter 11 case and the Debtor's business and capital structure is set forth in the *Declaration of Chris Amani in Support of Debtor's Chapter 11 Petition and First-Day Relief*

---

[1]     The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

(the "**First Day Declaration**"),[2] filed contemporaneously herewith and incorporated herein by reference.

**Jurisdiction**

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      Pursuant to Rule 9013-(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

5.      By this Motion, pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtor requests entry of orders (i) authorizing, but not directing, the Debtor to (a) pay Workforce Compensation Obligations and Employee Benefit Obligations (each as defined below) (collectively, the "**Workforce Obligations**"), and any related expenses, fees, and costs, and (b) maintain, continue to honor, and pay, in its sole discretion, amounts relating to the Debtor's business practices, programs, and policies for its Workforce (as defined below) as in effect as of the Petition Date, and as may be modified or supplemented from time to time in the

---

[2]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

2

ordinary course of business, and (ii) granting related relief.  In further support of this Motion, the Debtor has filed contemporaneously herewith the *Declaration of Michael Leto in Support of the Debtor's First Day Motions* (the "**Leto Declaration**" and together with the First Day Declaration, the "**Supporting Declarations**").

6.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**"), and, pending a final hearing, if necessary, on the relief requested herein on a final basis as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

### The Debtor's Workforce

7.      As of the Petition Date, the Debtor and its wholly-owned subsidiary, Proximity Panorama, LDA ("**Proximity**"),[3] employ 44 full-time employees paid on a salaried basis and 1 employee paid on an hourly basis (collectively, the "**Employees**").  In addition, the Debtor and Proximity utilize the services of approximately 15 independent contractors, all of whom are contracted directly by the Debtor or Proximity (the "**Contractors**," and collectively with the Employees, the "**Workforce**").  None of the Employees are party to a collective bargaining agreement or other similar labor agreement.  The Workforce primarily consists of software developers, coders, senior management, and a constellation of staff required to support operations.

8.      The Debtor seeks authority to pay the following prepetition accrued obligations on an interim and final basis:

---

[3]      As described more fully in the First Day Declaration, the Debtor acquired Proximity in November 2023 as a wholly owned subsidiary.  Proximity has its own bank accounts and directly employs almost all of its employees, although one of the individuals who provides services for Proximity will be employed by Deel as an EOR Employee.

3

| Prepetition Obligations | Interim Relief Requested | Final Relief Requested |
|---|---|---|
| Workforce Compensation Obligations[4] | $759,000 | $759,000 |
| Employee Benefit Obligations | $87,650 | $87,650 |
| **Total Workforce Obligations** | **$846,650** | **$846,650** |

9.     The Workforce is located all over the world, and only a portion of the Workforce is contracted directly by the Debtor.  The Debtor's Employees can be categorized in two ways: (i) those located in Singapore, where the Debtor is incorporated, for whom the Debtor is the employer of record (such Employees, the "**Singapore Employees**"); and (ii) those located outside of Singapore, for whom the employer of record is Deel, Inc. ("**Deel**," and such Employees, the "**EOR Employees**"), a human capital management firm.  Proximity is the employer of record for its Employees located in Portugal (such Employees, the "**Portugal Employees**"), where Proximity is incorporated.

10.     With the exception of four Contractors,[5] Deel currently provides payroll and human resource services to the rest of the Workforce.  As discussed in more detail below, the Debtor funds the payment of wages and benefits for all Employees (including those employed directly by Proximity) and almost all Contractors through Deel.[6]  The Workforce provides services that directly or indirectly support the Debtor's operations, and it is imperative to the Debtor's

---

[4]     Workforce Compensation Obligations are inclusive of amounts owed by the Debtor for unpaid prepetition Employer Payroll Taxes, as further discussed in paragraphs 17–18 of the Motion.

[5]     As of February 1, 2024, three current Contractors of Proximity will transition to Employees, with one becoming an EOR Employee (as defined below), and two becoming Portugal Employees (as defined below).

[6]     The Debtor's method of converting digital assets to fiat currency in the ordinary course to pay vendors, including Deel, is explained in further detail in the *Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to Use Treasury Management System, (II) Authorizing Continuation of Intracompany and Intercompany Transactions, (III) Extending Time to Comply with Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief* (the "**Treasury Management Motion**").

4

ongoing business that it continue compensating the Workforce through Deel. The Debtor also has certain contractual obligations to pay Deel amounts invoiced for its services, in addition to the payment of wages and benefits to the Workforce, as detailed further below.

<strong><u>Workforce Compensation Obligations</u></strong>

11.    The Debtor's outstanding prepetition obligations related to the compensation of the Workforce (collectively, the "**Workforce Compensation Obligations**") are summarized in the following chart and described in further detail below:

| Workforce Compensation Obligations | Interim Relief Requested | Final Relief Requested |
|---|---|---|
| Deductions and Payroll Taxes | $700,000 | $700,000 |
| Business Expenses | $59,000 | $59,000 |
| **Total Workforce Compensation Obligations** | **$759,000** | **$759,000** |

**A.    Human Capital Management Fees**

12.    As discussed above, the Debtor outsources certain responsibilities related to human resources, payroll, employee benefits, and for some employees, the status of employer of record, to the human capital management firm, Deel. Deel efficiently manages the processing and payment of the various obligations described in this Motion, by providing payroll processing, tax computation and withholding, payment preparation, and payroll transfer administration services. Deel also ensures compliance with various regulatory schemes throughout the world. In exchange for these services, the Debtor pays Deel service fees (the "**Deel Fees**") of approximately $23,750 each month. As of the Petition Date, the Debtor does not believe it owes any amounts to Deel on account of prepetition accrued Deel Fees. The Debtor seeks authority to pay all Deel Fees, whether such fees accrued prepetition or postpetition, as they come due in the ordinary course of business.

5

B.     **Wage Obligations**

13.     In the ordinary course of business, the Debtor incurs and pays salaries,[7] wages, and related obligations to Employees ("**Wage Obligations**"),[8] which obligations to all but one Employee are paid through Deel and paid in arrears.  The frequency of payments generally depends on the location and employer of record for each Employee.  With respect to EOR Employees, Deel submits an invoice to the Debtor on the 26th of each month during which the employee worked, and the Debtor must pay the invoice by the end of the month.  In the following month, EOR Employees are paid on the 15th and the end of the month if located in the United States or Canada, or at the end of the month if located elsewhere.  Nearly all the Debtor's Singapore Employees are paid at the end of each month, and the Employee who receives an hourly wage is paid bi-weekly.  Proximity's Employees in Portugal are paid at the end of each month.  The respective date on which each Employee is paid shall be referred to herein as a "**Pay Day**" and the period between each Pay Day, a "**Pay Period**."  On average, the Debtor's gross payroll (including amounts paid on account of taxes and other amounts, as set forth in more detail below) is approximately $1,000,000 per month.

14.     Deel generally determines gross payroll for the Employees and includes the amounts on an invoice Deel provides to the Debtor each month.  As discussed more fully in the Treasury Management Motion, the Debtor pays Deel by transferring the necessary amount of digital assets to Moon Rabbit Labs, Inc. ("**Moon Rabbit**") in advance of the applicable Pay Day.

---

[7]     Because of Deel's internal coding, an Employee's salary may be classified as variable compensation to the extent the Employee's annual income exceeds a certain threshold set by Deel.

[8]     The Debtor recently implemented a prepetition key employee retention program (the "**KERP**") for critical employees, which was approved by the independent director of the Debtor's Board of Directors, to ensure minimal disruptions to the Debtor's operations while in chapter 11.  For the avoidance of doubt, the Debtor is not seeking any relief with respect to the KERP.

6

Moon Rabbit converts the digital assets into fiat currency through an over-the-counter exchange and transfers it to Deel, which then disburses the funds to the Employees on the relevant Pay Day.

15.     As of the Petition Date, the Debtor does not believe it owes any amounts for unpaid prepetition Wage Obligations.[9]  The Debtor requests authority to pay any prepetition amounts, and to continue to pay Wage Obligations, whether such obligations accrued prepetition or postpetition, in the ordinary course of business during this chapter 11 case.  No Employee is owed unpaid Wage Obligations in excess of the $15,150 cap imposed by section 507(a)(4) of the Bankruptcy Code.

## C.     Deductions and Payroll Taxes

16.     Generally, for each applicable Pay Period, Deel, on behalf of itself (as employer of record), the Debtor, or Proximity, as applicable, deducts certain amounts from each Employee's gross pay, including 401(k) contributions for certain Employees, and other pre- and after-tax deductions payable pursuant to certain Employee Benefit Programs discussed herein (collectively, the "**Deductions**").  In the aggregate, approximately $130,000 in Deductions are made each month.

17.     In addition to the Deductions, applicable foreign, federal, state, and local laws require the Debtor to withhold amounts from each Employee's gross pay related to applicable income taxes, including Social Security and Medicare taxes in the United States, for remittance to the appropriate taxing authorities (collectively, the "**Withholdings**").  Deel, on behalf of the Debtor, typically collects the Withholdings from the Debtor's gross payroll.  For EOR Employees in the United States, for example, the Debtor matches, from its own funds, amounts for Social

---

[9]     Certain amounts that have been paid to Moon Rabbit prepetition may not yet have been paid to Deel due to an ongoing reconciliation process.

7

RLF1 30497190v.1

Security and Medicare taxes, and pays additional amounts for applicable federal and state unemployment insurance based on a percentage of gross payroll. For Singapore Employees, the Debtor's remittance includes certain mandatory employer contributions to the Central Provident Fund ("**CPF**"). All such applicable remittances (collectively, the "**Employer Payroll Taxes**" and, together with the Withholdings, the "**Payroll Taxes**") are typically determined by Deel. The Debtor pays Deel the amounts directed, and Deel then remits the Payroll Taxes to the relevant governmental authorities. In the aggregate, the Payroll Taxes, including both the Employee and employer portions, total approximately $106,000 per month.

18. As of the Petition Date, the Debtor estimates owing approximately $700,000 in the aggregate for unpaid prepetition Deductions and Payroll Taxes, all of which will come due between the Petition Date and the date on which the Court is expected to hold a hearing to consider the relief requested in this Motion on a final basis (the "**Interim Period**"). The Debtor requests authority to pay this prepetition amount, and to continue to pay Deductions and Payroll Taxes, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during this chapter 11 case.

**D.     Board Fees**

19. In the ordinary course of business, the Debtor also remits certain fees for an independent board member who was retained prepetition (the "**Board Fees**"). The Debtor incurs approximately $40,000 per month on account of Board Fees. The Debtor does not believe it owes any outstanding Board Fees as of the Petition Date, but seeks authority to continue to pay Board Fees, whether such fees accrued prepetition or postpetition, as they come due in the ordinary course of business during this chapter 11 case.

8

E.    **Discretionary Bonus Programs**

20.    The Debtor does not currently offer any discretionary bonus programs.  The Debtor does not seek authority to make any payments under any such bonus programs pursuant to this Motion, but reserves the right to seek authority for bonus programs pursuant to a separate motion.

F.    **Statutory Bonus Program**

21.    Solely with respect to the Portugal Employees, Portuguese law requires the payment of bonuses in an amount equal to two additional months of salary on an annual basis. This is commonly known as "13th and 14th month salaries," which are added to each Portugal Employee's basic salary and paid in monthly installments (the "**Statutory Bonus Program**").  As of the Petition Date, the Debtor does not believe it owes any amounts on account of unpaid obligations on the Statutory Bonus Program.  The Debtor seeks authority to continue to pay Deel on account of the Statutory Bonus Program, which is not discretionary, whether such obligations accrued prepetition or postpetition, as they come due in the ordinary course of business during this chapter 11 case.

G.    **Expense Reimbursement Program**

22.    In the ordinary course of business, certain Employees incur business expenses in connection with their employment duties (the "**Business Expenses**") and are reimbursed by the Debtor for such expenses (the "**Expense Reimbursement Program**").  The Business Expenses include amounts for meal allowances, work-related travel and lodging, local transportation, and computers and other work-related equipment.  These Business Expenses are incurred personally by the Employees who then submit an expense report through Expensify, Inc. The Debtor then transfers USD Coin directly to the Employees' digital asset wallets as

9

reimbursement. During the 12 months preceding the Petition Date, the Business Expenses ranged from $12,500 to $142,000 per month for a monthly average of approximately $60,000.

23.    Although it is difficult to determine the amount of Business Expenses outstanding at any given time, as of the Petition Date, the Debtor estimates that it may owe approximately $59,000 on account of the Business Expenses. Due to the nature of such Business Expenses and the Debtor's reimbursement policy, the Debtor may be required to reimburse all such Business Expenses during the Interim Period. The Debtor seeks authority to pay all Business Expense reimbursements, whether such expenses accrued prepetition or postpetition, in the ordinary course of business during this chapter 11 case.

**H.    Indemnification Obligations**

24.    The Debtor's Constitution contains a provision requiring the Debtor to indemnify Employees for losses and expenses which any employee may incur or become liable to incur by reason of any contract entered into or act or deed done by such employee as an employee in the discharge of his or her duties. The Debtor regularly pays for Employees' legal representation under such indemnification clause—paying the attorneys' fees and expenses directly in some instances, and reimbursing the Employees' already-paid fees and expenses in others. The Debtor is not seeking any relief in this motion related to the indemnification obligations, and any such relief will be sought in a separate motion.

**I.    Contractor Obligations**

25.    In addition to its Employees, the Debtor and Proximity rely significantly on Contractors, which includes individuals who have expertise related to the Debtor and Proximity's operations, including: research and development, engineering, product design, and software development. The Debtor directly engages all but three of the Contractors, whose work and hours from the prior month are generally approved by the 25th of the next month. With one exception,

10

the Debtor then pays the appropriate amount to Deel by the end of the month, and Deel pays the Contractor by the end of the month.  Deel includes such amounts on its invoice to the Debtor, and the Debtor then pays the requisite amount to Moon Rabbit.  Moon Rabbit then remits the amounts to Deel through an over-the-counter exchange, which pays each Contractor by the end of the month.  The Debtor compensates one Contractor directly, without utilizing Deel, making direct payments in digital assets upon receipt of an invoice (usually at the end of each month) transferred directly from the Debtor to the Contractor.  Proximity currently directly engages three of the Contractors, compensating them directly in digital assets, but as of February 1, 2024, those individuals will become Employees (two as Portugal Employees, and one as an EOR Employee). In the aggregate, the Debtor remits approximately $92,000 per month with respect to the Contractors (amounts owed to such Contractors, the "**Contractor Obligations**").

26.     As of the Petition Date, the Debtor does not believe it owes any amounts for unpaid prepetition services provided by the Contractors.  The Debtor requests authority to pay this prepetition amount and to continue to retain and pay the Contractors in the ordinary course of business during this chapter 11 case.  No individual Contractor who is contracted and paid directly by the Debtor is owed unpaid compensation in excess of the $15,150 cap imposed by section 507(a)(4) of the Bankruptcy Code.

## Employee Benefit Programs

27.     In the ordinary course of business, the Debtor or other relevant entity makes various benefit programs available to its Employees depending on the employer of record, whether such Employees are EOR Employees, Singapore Employee, or Portugal Employees (each such benefit, an "**Employee Benefit**," and any such benefit programs, as applicable, the "**Employee Benefit Programs**").  As described herein, depending on the Employee Benefit, the Debtor may

11

(a) pay the full cost thereunder, or (b) pay a portion of the costs after Employee contributions are made.

28.    By this Motion, the Debtor seeks authority, in the exercise of its discretion, to continue the Employee Benefit Programs in the ordinary course and consistent with past practice and to pay any prepetition obligations owed on account of the Employee Benefits (the "**Employee Benefit Obligations**"), subject to the Debtor's rights, if any, to modify or discontinue any Employee Benefits to reduce applicable costs or the benefits provided thereunder.  As of the Petition Date, the Debtor estimates that approximately $87,650 is outstanding on account of prepetition obligations owed by the Debtor for Employee Benefit Obligations.

29.    The Employee Benefit Obligations are summarized in the following chart and are described in further detail below:

| Employee Benefit Obligations | Interim Relief Requested | Final Relief Requested |
|---|---|---|
| EOR Employees | $18,800 | $18,800 |
| Singapore Employees | $60,450 | $60,450 |
| Portugal Employees | $8,400 | $8,400 |
| **Total Employee Benefit Obligations** | $87,650 | $87,650 |

**A.    EOR Employees Benefit Programs**

30.    Through Deel, the Debtor provides EOR Employees: (i) unlimited paid time off (the "**Employee Leave Benefits**"); (ii) medical, dental, and vision, life insurance, and disability insurance, through a plan or full reimbursement if an Employee elects to find a plan on their own (collectively, the "**EOR Employees Health and Welfare Benefits**"); (iii) a 401(k) retirement savings plan (the "**Retirement Benefits**"); and (iv) $100 USD (or local equivalent) monthly for internet/phone service, $2,500 USD (or local equivalent) every two years for computers/home

office setup, and a subscription to ChatGPT (collectively, the "**Equipment Benefits**") (each of (i) through (iv), an "**EOR Employee Benefit**" and collectively, the "**EOR Employees Benefit Programs**").

      1.      <u>EOR Employee Leave Benefits</u>

     31.    The Debtor provides Deel with funding for Employee Leave Benefits, which include personal time off, sick leave, federal and state holidays, parental leave, and vacation days, as long as the Employee informs his or her manager and team about his or her planned time away, and receives approval from the manager.  In 2023, no Employee took more than eight days of personal time off under the policy.  The Debtor incurs Employee Leave Benefit obligations when EOR Employees utilize these benefits by taking time off, which does not create any material cash flow requirements beyond the Debtor's regular payroll obligations.  Additionally, Employee Leave Benefits accrue at rates set by state and local laws, which amounts must be paid if an employee terminates his or her employment within thirty (30) days of such termination.  As of the Petition Date, the Debtor estimates approximately $18,800 has accrued on account of Employee Leave Benefit obligations for EOR Employees, all of which is may come due during the Interim Period.

      2.      <u>EOR Employees Health and Welfare Benefits</u>

     32.    As set forth above, the Debtor offers EOR Employees the option either to be reimbursed 100% for their own choice of medical, dental, vision, life insurance, and disability insurance or to opt into several Health and Welfare Benefits eligible to EOR Employees through Deel.  For many of these types of benefits, the Debtor pays a monthly $600 administrative fee to Deel as part of the other invoiced amounts, which in turn provides the benefits to EOR Employees. The Debtor also funds approximately $21,000 each month on account medical, dental, vision, and

13

life insurance, with other approximate monthly amounts described below.  The Debtor generally funds these amounts to Deel as part of satisfying its regular monthly invoice.

33.    <u>EOR Medical Plan</u>.  Deel offers medical benefits to EOR Employees through United Healthcare (the "**EOR Medical Plan**").  The Debtor provides funding to Deel for any medical benefits provided to those EOR Employees who choose to opt into their EOR Medical Plan and 100% reimbursement for those EOR Employees who choose their own insurance.  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the EOR Medical Plan.  The Debtor seeks authority to pay all amounts relating to the EOR Medical Plan, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

34.    <u>EOR Dental Plan</u>.  Deel offers dental benefits to EOR Employees through Delta Dental (the "**EOR Dental Plan**").  The Debtor provides funding to Deel for any dental benefits provided to those EOR Employees who choose to opt into their EOR Dental Plan and 100% reimbursement for those EOR Employees who choose their own insurance.  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the EOR Dental Plan.  The Debtor seeks authority to pay all amounts relating to the EOR Dental Plan, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

35.    <u>EOR Vision Plan</u>.  Deel offers vision benefits (the "**EOR Vision Plan**") to EOR Employees through VSP Vision ("**VSP**").  The Debtor provides funding to Deel for any vision benefits provided to those EOR Employees who choose to opt into their EOR Vision Plan and 100% reimbursement for those EOR Employees who choose their own insurance.  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the EOR Vision

Plan.  The Debtor seeks authority to pay all amounts relating to the EOR Vision Plan, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

36.    <u>EOR Life Insurance</u>.  Deel provides life insurance coverage to EOR Employees through Lincoln Financial Group ("**Lincoln**") in the United States and Manulife Financial Corporation ("**Manulife**") in Canada (the "**EOR Life Insurance**").  The Debtor provides funding to Deel for any life insurance provided to those EOR Employees who choose to opt into their EOR Life Insurance and 100% reimbursement for those EOR employees who choose their own insurance.  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the EOR Life Insurance.  The Debtor seeks authority to pay all amounts relating to the EOR Life Insurance, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

37.    <u>EOR STD Insurance and EOR LTD Insurance</u>.  Deel also provides both short-term disability ("**EOR STD Insurance**") and long-term disability insurance ("**EOR LTD Insurance**") to EOR Employees through Lincoln in the United States and Manulife in Canada. The Debtor provides funding to Deel for any EOR STD insurance provided to those EOR Employees who choose to opt into their EOR STD Insurance and 100% reimbursement for those EOR Employees who choose their own insurance.  Under the EOR STD Insurance, EOR Employees can receive 60% of their earnings up to $3,000 per week for up to 12 weeks.

38.    As of the Petition Date, the Debtor does not believe it owes any amounts on account of the EOR STD Insurance and the EOR LTD Insurance.  The Debtor seeks authority to pay all amounts relating to the EOR STD Insurance and EOR LTD Insurance, whether such

amounts accrued prepetition or postpetition, and to continue both programs in the ordinary course of business during the chapter 11 case.

       3.    <u>Retirement Benefits</u>

       39.    Deel maintains a defined contribution plan meeting the requirements of section 401(k) of the Internal Revenue Code (the "**401(k) Savings Plan**"), which is managed by Fidelity Investments ("**Fidelity**"). Approximately six EOR Employees are active participants in the 401(k) Savings Plan.  As part of the 401(k) Savings Plan, Deel matches 2% of an Employee's 401(k) contributions.  Deel collects the Employee contributions through withholdings from participating Employees' paychecks throughout the year (these are described above as Deductions).  Deel has not made any matching contributions in 2023 or so far in 2024 for EOR Employees.  As of the Petition Date, the Debtor does not believe it owes Deel any amounts with respect to matching contributions under the 401(k) Savings Plan for EOR Employees.  The Debtor seeks authority to fund all matching contributions under the 401(k) Savings Plan, whether such contributions accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

       4.    <u>Equipment Benefits</u>

      40.    As set forth above, the Debtor offers all EOR Employees $100 USD (or local equivalent) monthly for internet/phone service, $2,500 USD (or local equivalent) every two years for computers and a home office setup, and a subscription to ChatGPT.  The total cost of the Equipment Benefits program to the Debtor is approximately $6,500 each month for all EOR Employees.  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the Equipment Benefits for EOR Employees.  The Debtor seeks authority to pay all amounts relating to the Equipment Benefits, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

16

41. By this Motion, the Debtor seeks authority to honor all benefits provided to EOR Employees, whether such benefits accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

**B.    Singapore Employees Benefit Programs**

42. The Debtor provides Singapore Employees: (i) Employee Leave Benefits; (ii) full reimbursement of medical, dental, and vision, life insurance, and disability insurance, acquired by the employee (collectively, the "**Singapore Employees Health and Welfare Benefits**"); and (iii) Equipment Benefits (each of (i) through (iii), a "**Singapore Employee Benefit**" and collectively, the "**Singapore Employees Benefit Programs**").

1.    Singapore Employees Leave Benefits

43. The Debtor provides Singapore Employees with the same Employee Leave Benefits as stated above for EOR Employees.  The Debtor incurs Employee Leave Benefit obligations when Singapore Employees utilize these benefits by taking time off, which does not create any material cash flow requirements beyond the Debtor's regular payroll obligations. Additionally, Employee Leave Benefits accrue at rates set by applicable law, which amounts must be paid if an Employee terminates his or her employment within thirty (30) days of such termination.  As of the Petition Date, the Debtor estimates that approximately $10,450 has accrued on account of Employee Leave Benefit obligations for Singapore Employees, all of which may come due during the Interim Period.

2.    Singapore Employees Health and Welfare Benefits

44. As set forth above, the Debtor offers Singapore Employees 100% reimbursement for their choice of medical, dental, and vision, life insurance, and disability insurance.  The costs of these programs are described in more detail below.

17

45.    <u>Singapore Medical Plan</u>.  The Debtor provides 100% reimbursement for a medical plan of the Singapore Employee's choosing (the "**Singapore Medical Plan**").  As of the Petition Date, the Debtor estimates owing $50,000 on account of the Singapore Medical Plan.  The Debtor seeks authority to pay all amounts relating to the Singapore Medical Plan, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

46.    <u>Singapore Dental Plan</u>.  The Debtor provides 100% reimbursement for a dental plan of the Singapore Employee's choosing (the "**Singapore Dental Plan**").  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the Singapore Dental Plan.  The Debtor seeks authority to pay all amounts relating to the Singapore Dental Plan, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

47.    <u>Singapore Vision Plan</u>.  The Debtor provides 100% reimbursement for a vision plan of the Singapore Employee's choosing (the "**Singapore Vision Plan**").  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the Singapore Vision Plan.  The Debtor seeks authority to pay all amounts relating to the Singapore Vision Plan, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

48.    <u>Singapore STD Insurance and Singapore LTD Insurance</u>.  The Debtor provides 100% reimbursement for both short-term disability ("**Singapore STD Insurance**") and long-term disability insurance ("**Singapore LTD Insurance**") of the Singapore Employee's choosing.  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the Singapore STD Insurance and Singapore LTD Insurance.  The Debtor seeks authority to pay

18

all amounts relating to the Singapore STD Insurance and Singapore LTD Insurance, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

3.    Equipment Benefits:

49.    The Debtor provides the same Equipment Benefits to Singapore Employees as stated above for EOR Employees.  The total cost of the Equipment Benefits program to the Debtor is approximately $3,000 each month for Singapore Employees.  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the Equipment Benefits for Singapore Employees.  The Debtor seeks authority to pay all amounts relating to the Equipment Benefits, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

50.    By this Motion, the Debtor seeks authority to honor all benefits provided to Singapore Employees, whether such benefits accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

**C.    Portugal Employees**

51.    With funding provided by the Debtor, Proximity's Portugal employees receive: (i) leave benefits, (ii) full reimbursement of health insurance (the "**Portugal Health Insurance**"), and (iii) a 132€ per month meal allowance (the "**Meal Allowance**") (each a "**Portugal Employee Benefit**" and collectively, the "**Portugal Employees Benefit Programs**").

52.    Portugal Employees Leave Benefits: Proximity provides Portugal Employees with Employee Leave Benefits amounting to twenty-two (22) days per year of paid time off, as well as certain holiday allowances, as required by Portugal law.  Proximity incurs Employee Leave Benefit obligations when Portugal Employees utilize these benefits by taking time off, which does not create any material cash flow requirements beyond Proximity's regular

19

payroll obligations.  Additionally, the Employee Leave Benefits accrue at rates set by applicable law, which amounts must be paid if an Employee terminates his or her employment immediately following such termination with the Employee's final paycheck.  As of the Petition Date, the Debtor estimates that approximately $8,400 has accrued on account of Employee Leave Benefit obligations for Portugal Employees, all of which may come due during the Interim Period.

53.    <u>Portugal Health Insurance</u>: The Debtor provides 100% reimbursement for any health insurance of a Portugal Employee's choosing.  The total cost of the Portugal Health Insurance to the Debtor is estimated to be approximately $2,600 per month.  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the Portugal Health Insurance. The Debtor seeks authority to pay all amounts relating to the Portugal Health Insurance, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

54.    <u>Meal Allowance</u>: The Debtor provides all Portugal Employees with 132€ per month for meals.  The total cost of the Meal Allowance to the Debtor is approximately $1,750 per month.  As of the Petition Date, the Debtor does not believe it owes any amounts on account of the Meal Allowance.  The Debtor seeks authority to pay all amounts relating to the Meal Allowance for Portugal Employees, whether such amounts accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

55.    By this Motion, the Debtor seeks authority to honor all benefits provided to Portugal Employees, whether such benefits accrued prepetition or postpetition, in the ordinary course of business during the chapter 11 case.

### Relief Requested Should be Granted

**A.      Payment of Workforce Obligations Is Warranted under Sections 363(b)(1) and 105(a) of the Bankruptcy Code, and the Doctrine of Necessity**

56.      A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code.  11 U.S.C. § 363(b)(1).  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  If "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

57.      In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtor to carry out its fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an

21

operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Courts have consistently permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus.").

58.    The Court may also authorize the payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

59.    The relief requested by this Motion represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is justified under sections 105(a) and 363(b) of the Bankruptcy Code.  Authorizing the Debtor to pay prepetition wages, employee benefits, and similar items will benefit the Debtor's estate and its creditors by allowing the Debtor's business operations to continue without interruption.  Failure to satisfy the Workforce Obligations will jeopardize morale and loyalty at a time when support of the Workforce is critical to the Debtor's business.  The majority of the Debtor's Employees rely exclusively on their compensation and benefits to satisfy their daily living expenses.  Employees will be exposed to significant financial difficulties and other distractions if the Debtor is not permitted to honor its obligations to Employees.  Indeed, without the relief requested herein being granted, the Employees may seek alternative opportunities, perhaps with the Debtor's competitors.  The loss of valuable Employees would deplete the Debtor's workforce, thereby hindering the Debtor's ability to maintain its systems and proceed with research and development, and diminish stakeholder confidence in the Debtor's ability to carry out its chapter 11 strategy successfully.  In addition, Employee attrition would cause the Debtor to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtor's operations at a critical juncture.

60.    Similarly, the Contractors are an important component of the Debtor's operations and ensure the completion of key operational tasks that are critical to the Debtor's business.  Any interruption to the Contractors would cause significant strain on the Debtor's already limited resources and the ability of Employees to assist throughout the chapter 11 case.  The Debtor enjoys long-standing, positive relationships with each of the Contractors and is confident in their abilities to perform with the highest level of skill.  It would be difficult and costly

23

to find and integrate new workers into the Debtor's operations who hold an equivalent level of skill and knowledge as its current Contractors, particularly given the specialized nature of the digital asset industry.

**B.      Payment of Workforce Obligations Would Not Prejudice Parties in Interest**

61.      The Debtor believes that the vast majority of the prepetition Workforce Obligations constitute priority claims under sections 507(a)(4), (5), or (8) of the Bankruptcy Code. As priority claims, the Workforce Obligations are entitled to payment in full before any general unsecured claims asserted against the Debtor can be satisfied.  Thus, the relief requested largely affects only the timing of the payment of the priority prepetition Workforce Obligations, and should not prejudice the rights of general unsecured creditors or other parties in interest.

**C.      Payment of Certain Workforce Obligations Is Required by Law**

62.      The Debtor also seeks authority to remit certain Deductions and Payroll Taxes to the appropriate entities.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' paychecks.  Indeed, certain Deductions, including contributions to the Employee Benefit Programs and Withholdings, are not property of the Debtor's estate because they have been withheld from Employees' paychecks on another party's behalf.  *See* 11 U.S.C. § 541(b); *see Begier v. IRS*, 496 U.S. 53, 66–67 (1990) (concluding that withholding taxes are property held by a debtor in trust for another and are therefore not property of debtor's estate).  Further, federal and state laws require the Debtor and its officers to make certain tax payments that have been withheld from its Employees' paychecks.  *See* 26 U.S.C. §§ 6672 and 7501(a); *see also Ahmed v. Comm'r of Internal Revenue*, 64 F.4th 477, 481 (3d Cir. 2023) (noting that the Internal Revenue Service is authorized to collect penalties from officers or employees who are under a duty to collect, account for, and pay over a company's trust fund taxes and fail to do so); *City of Farrell v. Sharon Steel Corp.*, 41

F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes).  Because certain Deductions and Payroll Taxes are not property of the Debtor's estate, the Debtor requests that the Court authorize them to transmit the Deductions and Payroll Taxes to the proper parties in the ordinary course of business.

63.    For the foregoing reasons, payment of the prepetition Workforce Obligations is necessary, appropriate, and in the best interests of the Debtor, its estate, and all other parties in interest in this case.  Accordingly, the Court should authorize the relief requested herein.

## Bankruptcy Rule 6003(b) Has Been Satisfied

64.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" prior to 21 days after the Petition Date.  Fed. R. Bankr. P. 6003(b).  As explained above and in the Leto Declaration, the Debtor would suffer immediate and irreparable harm if the relief sought herein is not promptly granted.  Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## Request for Bankruptcy Rule 6004(a) and (h) Waivers

65.    To implement the foregoing successfully, the Debtor seeks waivers of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the Leto Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor.  Accordingly, ample cause exists to justify the waiver of the notice requirements

under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## **Reservation of Rights**

66.    Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtor, (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (c) an agreement or obligation to pay any claims, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (e) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's or any appropriate party in interest's rights to subsequently dispute such claim.

## **Notice**

67.    Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attn: Linda Richenderfer, Esq. (Linda.Richenderfer@usdoj.gov)); (b) the holders of the top largest unsecured claims against the Debtor; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) the United States Securities and Exchange Commission; (f) Moon Rabbit; (g) Deel; (h) VSP; (i) Lincoln; (j) Manulife; (k) Fidelity; (l) Expensify; and (m) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  Notice of this Motion and any order entered hereon will

be served in accordance with Local Rule 9013-1(m).  The Debtor respectfully submits that no further notice is required.

## **No Prior Request**

68.    No prior request for the relief sought herein has been made by the Debtor to this or any other Court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtor respectfully requests entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  January 30, 2024
        Wilmington, Delaware

/s/ Matthew P. Milana
RICHARDS, LAYTON & FINGER, P.A.
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email:      heath@rlf.com
            shapiro@rlf.com
            milana@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Ronit Berkovich (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
F. Gavin Andrews (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Email:  ronit.berkovich@weil.com
        jessica.liou@weil.com
        f.gavin.andrews@weil.com

*Proposed Attorneys for Debtor*
*and Debtor in Possession*

**Exhibit A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                            :
In re                                       :     Chapter 11
                                            :
TERRAFORM LABS PTE. LTD.                    :     Case No. 24–10070 (BLS)
                                            :
            Debtor.¹                        :     Re: Docket No. __
                                            :
------------------------------------------------------------ x
```

### INTERIM ORDER (I) AUTHORIZING DEBTOR TO (A) PAY PREPETITION WORKFORCE OBLIGATIONS AND (B) MAINTAIN EMPLOYEE BENEFIT PROGRAMS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Terraform Labs Pte. Ltd., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), for entry of orders (i) authorizing, but not directing, the Debtor to (a) pay Workforce Obligations and related expenses, fees, and costs, and (b) maintain, continue to honor, and pay amounts with respect to the Debtor's business practices, programs, and policies for its Employees as such were in effect as of the commencement of the chapter 11 case and as such may be modified during the pendency of the chapter 11 case, and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and § 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1]    The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the Supporting Declarations and the record of the Hearing; and all objections to the relief requested in the Motion on an interim basis, if any, having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

<b>IT IS HEREBY ORDERED THAT:</b>

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtor is authorized, but not directed, to pay and honor all prepetition Workforce Obligations and any related expenses, fees and costs incident to the foregoing, in an aggregate amount not to exceed $846,650.  Such Workforce Obligations are summarized in further detail in the table below.

| Workforce Obligations | Estimated Interim Amount |
|---|---|
| ***Workforce Compensation Obligations*** ||
| Deductions and Payroll Taxes | $700,000 |
| Business Expenses | $59,000 |
| **Subtotal** | **$759,000** |
| ***Employee Benefit Obligations*** ||
| EOR Employee Benefits | $18,800 |
| Singapore Employee Benefits | $60,450 |
| Portugal Employee Benefits | $8,400 |
| **Subtotal** | **$87,650** |

2

3.     The Debtor is further authorized, but not directed, to maintain, honor, and continue the Employee Benefits Programs in the ordinary course of business.

4.     Notwithstanding any other provision of this Interim Order, nothing in this Interim Order shall authorize the Debtor to make any payment to, or on behalf of, any Employee or Contractor on account of prepetition wages and other compensation obligations or other prepetition obligations in excess of the statutory caps set forth in sections 507(a)(4) and (5) of the Bankruptcy Code.

5.     Nothing in the Motion or this Interim Order shall authorize the Debtor to (i) cash out Employee Leave Benefits upon termination of an Employee, unless applicable law requires such payment, and (ii) make any payments (a) under any discretionary bonus programs (which, for the avoidance of doubt, shall not include any Statutory Bonus Program) or (b) that would violate or permit the violation of section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any bonus or severance obligations to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code).

6.     The Debtor is further authorized, but not directed, to modify or discontinue any Employee Benefit or to reduce or eliminate program expenses or the benefits provided thereunder, at any time and in its sole discretion, subject to applicable non-Bankruptcy law.

7.     The Debtor is further authorized, but not directed, to continue to employ and compensate the Employees and use and compensate the Contractors in the ordinary course of business and consistent with past practices and any other orders of this Court.

8.     The Debtor is authorized, but not directed, to effect new transfers, and to replace any prepetition transfer requests that may be rejected as a result of the commencement of

the Debtor's chapter 11 case with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

9.      Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtor, (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (c) an agreement or obligation to pay any claims, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (e) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.

10.      Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

11.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

12.      Under the circumstances of the chapter 11 case, notice of the Motion is adequate under Bankruptcy Rule 6004(a) and Local Rule 9013-1(m).

13.      Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

14.      A hearing to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on _____, 2024, at _____ (Eastern Time) and any objections or responses to the Motion shall be in writing, filed with the Court, and served by no later than **4:00 p.m. (Eastern Time) on _____, 2024** on the following:

> a.  (i) proposed counsel for the Debtor: Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ronit Berkovich, Esq. (ronit.berkovich@weil.com), Jessica Liou, Esq. (Jessica.Liou@weil.com), and F. Gavin Andrews Esq. (f.gavin.andrews@weil.com)); and

4

(ii) proposed co-counsel for the Debtor: Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Paul N. Heath, Esq. (heath@rlf.com), Zachary I. Shapiro, Esq. (shapiro@rlf.com), and Matthew P. Milana, Esq. (milana@rlf.com)); and

b.   the Office of the United States Trustee for the District of Delaware:  844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attn: Linda Richenderfer, Esq. (Linda.Richenderfer@usdoj.gov)).

15.    The Debtor is authorized to take all action necessary or appropriate to effectuate the relief granted in this Interim Order.

16.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

5

**Exhibit B**

**Proposed Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                              :
In re                                         :        Chapter 11
                                              :
TERRAFORM LABS PTE. LTD.                      :        Case No. 24–10070 (BLS)
                                              :
            Debtor.¹                          :        Re: Docket No. __
                                              :
------------------------------------------------------------ x
```

### FINAL ORDER (I) AUTHORIZING DEBTOR TO (A) PAY
### PREPETITION WORKFORCE OBLIGATIONS AND (B) MAINTAIN EMPLOYEE
### BENEFIT PROGRAMS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Terraform Labs Pte. Ltd., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), for entry of orders (i) authorizing, but not directing, the Debtor to (a) pay Workforce Obligations and related expenses, fees, and costs, and (b) maintain, continue to honor, and pay amounts with respect to the Debtor's business practices, programs, and policies for its Employees as such were in effect as of the commencement of the chapter 11 case and as such may be modified during the pendency of the chapter 11 case, and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and §1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1]    The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion on an interim (the "**Interim Hearing**") and, if necessary, final basis (the "**Final Hearing**"); and this Court having entered an order granting the relief requested in the Motion on an interim basis; and upon the Supporting Declarations, the record of the Interim Hearing, the Final Hearing, if any, and all of the proceedings had before this Court; and all objections to the relief requested in the Motion on a final basis, if any, having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtor is authorized, but not directed, to pay and honor all prepetition Workforce Obligations and any related expenses, fees and costs incident to the foregoing in an aggregate amount not to exceed $846,650.  Such Workforce Obligations are summarized in further detail in the table below.

2

| Workforce Obligations | Estimated Final Amount |
|---|---|
| ***Workforce Compensation Obligations*** | |
| Deductions and Payroll Taxes | $700,000 |
| Business Expenses | $59,000 |
| **Subtotal** | **$759,000** |
| ***Employee Benefit Obligations*** | |
| EOR Employee Benefits | $18,800 |
| Singapore Employee Benefits | $60,450 |
| Portugal Employee Benefits | $8,400 |
| **Subtotal** | **$87,650** |

3.      The Debtor is further authorized, but not directed, to maintain, honor, and continue the Employee Benefits Programs in the ordinary course of business.

4.      Nothing in the Motion or this Final Order shall authorize the Debtor to (i) cash out Employee Leave Benefits upon termination of an Employee, unless applicable law requires such payment and (ii) make any payments (a) under any discretionary bonus program (which, for the avoidance of doubt, shall not include any Statutory Bonus Program) or (b) that would violate or permit the violation of section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any bonus or severance obligations to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code).

5.      The Debtor is further authorized, but not directed, to modify or discontinue any Employee Benefit or to reduce or eliminate program expenses or the benefits provided thereunder, at any time and in its sole discretion, subject to applicable non-Bankruptcy law.

6.      The Debtor is further authorized, but not directed, to continue to employ and compensate the Employees and use and compensate the Contractors in the ordinary course of business and consistent with its past practices and any other orders of this Court.

7.      The Debtor is authorized, but not directed, to effect new transfers, and to replace any prepetition transfer requests that may be rejected as a result of the commencement of

3

the Debtor's chapter 11 case with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

8.      Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order, is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtor, (b) a waiver of the Debtor's or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (c) an agreement or obligation to pay any claims, (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (e) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code.

9.      Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

10.      Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

11.      Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

12.      The Debtor is authorized to take all action necessary or appropriate to effectuate the relief granted in this Final Order.

13.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

4