## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                                              :

**In re**                            :     **Chapter 11**
                                                :

**TERRAFORM LABS PTE. LTD.,**     :     **Case No. 24–10070 (BLS)**
                                              :

        **Debtor.**[1]            :     **Obj. Deadline: Feb. 27, 2024 at 4:00 p.m. (ET)**
                                              :     **Hearing Date: Mar. 5, 2024 at 2:30 p.m. (ET)**
                                              :
---------------------------------------------------------- x

## APPLICATION OF DEBTOR FOR ENTRY OF AN
## ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF
## ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL
## ADVISOR TO THE DEBTOR EFFECTIVE AS OF THE PETITION DATE

        Terraform Labs Pte. Ltd., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), respectfully represents as follows in support of this application (the "**Application**"):[2]

### Background

        1.      On January 21, 2024 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to continue operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case (the "**Chapter 11 Case**").

---

[1]    The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

[2]    The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined herein). Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

2.     Additional information regarding the Debtor's business and operations and the circumstances leading to the commencement of this Chapter 11 Case is set forth in the *Declaration of Chris Amani in Support of Debtor's Chapter 11 Petition and First Day Relief* [Docket No. 18] (the "**First Day Declaration**"),[3] filed on the Petition Date and incorporated herein by reference.

## Jurisdiction

3.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

4.     By this Application, pursuant to sections 327(a), 328(a), 330 and 1107(b) of title 11 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2014-1 and 2016-2, the Debtor requests entry of an order (i) authorizing the employment and retention of Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by its

---

[3]   Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively "**A&M**") as financial advisor for the Debtor in connection with the Chapter 11 Case, effective as of the Petition Date, in accordance with the terms and conditions set forth in that certain engagement letter entered by and between the Debtor and A&M, dated as of January 19, 2024, attached hereto as **Exhibit A** (as may be subsequently amended, modified, or supplemented from time to time, the "**Engagement Letter**"), and (ii) granting related relief.

5.      In support of this Application, the Debtor submits the declaration of Michael Leto, a Managing Director of A&M (the "**Leto Declaration**"), attached hereto as **Exhibit B**.

6.      A proposed form of order granting the relief requested herein is attached hereto as **Exhibit C** (the "**Proposed Order**").

### A&M's Qualifications

7.      In consideration of the size and complexity of its business, as well as the exigencies of the circumstances, the Debtor has determined that the services of experienced financial advisors are necessary and will substantially enhance the Debtor's efforts to maximize the value of its estate.  A&M is well qualified to provide these services in light of its extensive knowledge and expertise with respect to chapter 11 proceedings and the Debtor.

8.      A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.  A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans, assessments of a business's strategic position, monitoring and managing cash, cash flow and supplier relationships, assessing and recommending cost reduction strategies,

and designing and negotiating financial restructuring packages.   A&M's professionals have experience providing these services in many large and mid-size bankruptcy cases in this and other districts nationwide. *See, e.g., In re Sunlight Financial Holdings Inc.,* No. 23-11794 (MFW) (Bankr. D. Del.  Oct. 30, 2023); *In re Virgin Orbit, LLC,* No. 23-10408 (KBO) (Bankr. D. Del. Apr. 4, 2023); *In re Fast Radius, Inc.,* No. 22-11051 (JKS) (Bankr. D. Del. Nov. 7, 2022); *In re Packable Holdings, LLC f/k/a Entourage Commerce, LLC,* No. 22-10797 (CTG) (Bankr. D. Del. Oct. 11, 2022); *In re GT Real Estate Holdings, LLC,* No. 22-10505 (KBO) (Bankr. D. Del. Jul. 18, 2022); *In re Clover Techs. Grp., LLC,* No. 19-12680 (KBO) (Bankr. D. Del. Jan. 21, 2020); *In re Libbey Glass, Inc.*, No. 20-11439 (LSS) (Bankr. D. Del. Jun. 1, 2020); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Sept. 24, 2019); *In re Bristow Group Inc.*, No. 19-32713 (DRJ) (Bankr. D. Del. May 11, 2019); *In re Southcross Energy Partners, L.P.*, No. 19-10702 (MFW) (Bankr. D. Del. Apr. 1, 2019); *In re Imerys Talc America, Inc.*, No. 19-10289 (LSS) (Bankr. D. Del. Feb. 13, 2019).

9.     In addition, A&M is familiar with the Debtor's business, financial affairs, and capital structure.  Since the firm's initial engagement on January 19, 2024, the A&M personnel providing services to the Debtor (the "**A&M Professionals**") have worked closely with the Debtor's management and other professionals in assisting with a broad range of strategic, operational, financial, restructuring, and bankruptcy related matters, and in the preparation of the commencement of this Chapter 11 Case.

10.     The Debtor believes that A&M has developed significant relevant experience and expertise regarding the Debtor and the unique circumstances of this case.  For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of this case.  Accordingly, the Debtor submits that the

retention of A&M on the terms and conditions set forth in the Engagement Letter and as described herein is necessary and appropriate, is in the best interests of the Debtor's estate, creditors, and all other parties in interest, and should be granted.

## Scope of Services

11.    The Engagement Letter sets out the terms of which shall govern the Debtor's retention of A&M except as explicitly set forth herein or in any order granting this Application.

12.    Among other things, A&M will provide assistance to the Debtor with respect to management of the overall restructuring process, assist the Special Committee of the Debtor's Board of Directors (the "**Special Committee**") with respect to its investigation (the "**Investigation**") (as described in more detail in the First Day Declaration), and supporting restructuring activities among the Debtor, its advisors, and its creditors with respect to an overall exit strategy for the Chapter 11 Case.

13.    A&M will provide such restructuring support services as A&M and the Debtor shall deem appropriate and feasible to manage and advise the Debtor in the course of this Chapter 11 Case, including, but not limited to :

(a)    assistance to the Debtor in the preparation of financial-related disclosures required by the Court, including the Debtor's Schedules of Assets and Liabilities, Statement of Financial Affairs, and Monthly Operating Reports;

(b)    assistance with the identification and implementation of short-term cash management procedures, as well as a cash flow forecast;

(c)    assistance to Debtor's management team and counsel focused on the coordination of resources related to the ongoing reorganization effort;

(d)    assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset

and liability accounts, and analysis of proposed transactions for which
Court approval is sought;

(e)    attendance at meetings and assistance in discussions with potential
investors, creditors, any official committee(s) appointed in this Chapter 11
Case, the Office of the United States Trustee for the District of Delaware
(the "**U.S. Trustee**"), other parties in interest, and professionals hired by
same, as requested;

(f)    analysis of creditor claims by type, entity, and individual claim, including
assistance with development of databases, as necessary, to track such
claims;

(g)    assistance in the preparation of information and analysis necessary for the
confirmation of a plan of reorganization in this Chapter 11 Case, including
information contained in the disclosure statement;

(h)    assistance in the evaluation and analysis of avoidance actions, including
fraudulent conveyances and preferential transfers;

(i)    assistance to the Special Committee with its Investigation;

(j)    litigation advisory services with respect to accounting and tax matters,
along with expert witness testimony on case related issues as required by
the Debtor; and

(k)    rendering such other general business consulting or such other assistance as
Debtor's management or counsel may deem necessary consistent with the
role of a financial advisor to the extent that it would not be duplicative of
services provided by other professionals in this proceeding.

14.    Such financial advisory services are necessary to the Debtor's restructuring
efforts and in the ongoing operation and management of the Debtor's business while subject to
chapter 11 of the Bankruptcy Code.

### A&M's Disinterestedness

15.    To the best of the Debtor's knowledge, information, and belief, other than
as set forth in the Leto Declaration, A&M:  (i) has no connection with the Debtor, its creditors,
other parties in interest, the attorneys or accountants of any of the foregoing, or the United States
Trustee or any person employed in the Office of the United States Trustee; (i) does not hold any

interest adverse to the Debtor's estate; and (i) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

16.     Accordingly, the Debtor believes that A&M is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

17.     In addition, as set forth in the Leto Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

## No Duplication of Services

18.     A&M understands that the Debtor may retain additional professionals during the term of its engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtor.  The financial advisory services provided by A&M will complement, and not duplicate, the services rendered by any other professional retained in this Chapter 11 Case.

## Terms of Retention

19.     Subject to approval by the Court, the Debtor proposes to employ and retain A&M to serve as the Debtor's financial advisor on the terms and conditions set forth in the Engagement Letter.

20.     <u>Compensation</u>.  In accordance with the terms of the Engagement Letter, A&M will be paid by the Debtor (through Dentons who is authorized by the Debtor to pay A&M on its behalf) for the services of the A&M Professionals at their customary hourly billing rates. Since the filing, the Company has opened a bank account, and may also pay A&M directly.   The customary hourly billing rates, which shall be subject to the following ranges:

(a)     Managing Directors          $1,075-1,525

(b)     Directors                          $825-1,075

- 7 -

| | | |
|---|---|---|
| (c) | Associates | $625-825 |
| (d) | Analysts | $425-625 |

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

21.    In addition, A&M will be reimbursed for the reasonable out-of-pocket expenses of the A&M Professionals incurred in connection with this assignment, such as travel, lodging, third party duplications, messenger, and telephone charges.  A&M will not charge the 3% administrative fee set forth in paragraph 4(b) during this case.   In addition, A&M shall be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the preparation and approval of this Application.  All fees and expenses due to A&M will be billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules and the Local Rules.

## Indemnification

22.    As a material part of the consideration for which the A&M Professionals have agreed to provide the services described herein, the Debtor has agreed to the indemnification provisions in paragraph 11 of the Engagement Letter. Notwithstanding the foregoing, the Debtor and A&M have agreed to modify such provisions as follows, during the pendency of this Chapter 11 Case:

(a)    A&M shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

(b)    The Debtor shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either:  (i) judicially

- 8 -

determined (the determination having become final) to have arisen from A&M's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtor alleges the breach of A&M contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&M's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which A&M should not receive indemnity, contribution or reimbursement under the terms of the Letter as modified by this Order; and

(c)    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this Chapter 11 Case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing this Chapter 11 Case, A&M believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as may be modified by an order granting this Application), including without limitation the advancement of defense costs, A&M must file an application therefore in this Court, and the Debtor may not pay any such amounts to A&M before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by A&M for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify A&M.  All parties in interest shall retain the right to object to any demand by A&M for indemnification, contribution or reimbursement.

**<u>Fees</u>**

23.    The Debtor understands that A&M intends to apply to the Court for allowance of compensation and reimbursement of expenses for its financial restructuring advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, and guidelines established by the United States Trustee.

24.    In the 90 days prior to the Petition Date, A&M received retainers and payments totaling $1,500,000 in the aggregate for preparing for the filing of this Chapter 11 Case and related services performed for the Debtor.  Per the Engagement Letter, Dentons was authorized by the Company's behalf to remit payments directly to A&M on its behalf.  A&M has applied these funds to amounts due for services rendered and expenses incurred before the Petition Date. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first interim fee application for postpetition services and expenses to be rendered or incurred for or on behalf of the Debtor.  The unapplied residual retainer, which is estimated to total approximately $1,320,000, will be held in a segregated non-interest-bearing account (which may hold other A&M and A&M affiliate client retainers), separate from the general account to which A&M will direct payment of ongoing fees and expenses, and will be held until the end of this Chapter 11 Case and applied to A&M's final approved fees in this Chapter 11 Case.

25.    Given the numerous issues that the A&M Professionals may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtor submits

- 10 -

that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

## **Applicable Authority**

26.    The Debtor submits that the retention of A&M under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court' s approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."  11 U.S.C. § 327(a).  Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

(a)    is not a creditor, an equity security holder, or an insider;

(b)    is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(c)    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.  11 U.S.C. § 101(14).

27.    Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).  A&M's prepetition relationship with the Debtor is therefore not an impediment to A&M's retention as the Debtor's postpetition financial advisor.

28.    Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a

retainer . . ." 11 U.S.C. § 328(a).  The Debtor submits that the terms and conditions of A&M's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character.  Because the Debtor will require substantial assistance with the reorganization process, it is reasonable for the Debtor to seek to employ and retain A&M to serve as its financial advisor on the terms and conditions set forth herein.

### Notice

29.    Notice of this Application will be provided to (a) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attn: Linda Richenderfer, Esq. (Linda.Richenderfer@usdoj.gov)); (b) the holders of the largest unsecured claims against the Debtor; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) the United States Securities and Exchange Commission; and (f) any other party entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  The Debtor respectfully submits that no further notice is required.

30.    No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:  February 13, 2024
         Walnut Creek, California

                                   **TERRAFORM LABS PTE. LTD.**
                                   (on behalf of itself)

                                   */s/ Chris Amani*

                                   Name:  Chris Amani
                                   Title:   Chief Executive Officer