**Exhibit A**

**Copy of Executed Prepetition Engagement Letter**

Case 24-10070-BLS    Doc 58-2    Filed 02/13/24    Page 1 of 17



Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

January 19, 2024

Mr. Arrash Chris Amani
Chief Executive Officer
Terraform Labs Pte Ltd.
1 Wallich Street # 37-01
Guoco Tower, Singapore, 07881

Ronit Berkovich
Weil, Gotshal & Manges LLP
767 5th Avenue
New York, NY 10153-0119

Dear Chris, Ronit:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal North America, LLC ("A&M") and Weil Gotshal & Manges LLP ("Weil"), in its capacity as counsel to Terraform Labs Pte. ("Terra") and its subsidiaries and their respective assigns and successors (jointly and severally, the "Company"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company, Weil and A&M (the "Agreement").

1. Description of Services

    (a) A&M shall provide consulting services to the Company at the direction of Weil and the Company's Chief Executive Officer (the "Responsible Officer") in connection with their efforts in seeking to improve the Company's financial and operating performance, reporting directly to them, and assist the Company in its reorganization. It is anticipated that A&M's activities shall include the following:

    (i) assistance in the development and management of a 13-week cash flow forecast;

    (ii) assistance in contingency planning or other restructuring alternatives;

    (iii) report to the Board as desired or directed by Weil or the Responsible Officer; and

1

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

    (iv)    other activities as are approved by the Responsible Officer or Weil, and agreed to by A&M.

In rendering its services to Weil and the Company, A&M will report directly to the Responsible Officer and will make recommendations to and consult with Weil, the Responsible Officer and other senior officers as the Board or Responsible Officers direct.

(b) In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates, subsidiaries and independent contractors. Such affiliates are wholly owned by A&M's parent company and employees. A&M personnel providing services to the Company may also work with other A&M clients in conjunction with unrelated matters.

2. <u>Information Provided by the Company and Forward Looking Statements</u>

The Company shall use all reasonable efforts to: (i) provide A&M with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that A&M reasonably request in connection with the services to be provided to the Company. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company or Weiland otherwise reviewed by A&M in connection with the services performed for the Company. The Company and Weil acknowledge and agree that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Board to do so.

You understand that the services to be rendered by A&M may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, A&M will be relying on information provided by or on behalf of the Company in the preparation of those projections and other forward-looking statements.

3. <u>Limitation of Duties</u>

A&M makes no representation or guarantee that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company (ii) any restructuring proposal or strategic alternative presented to Weil the Company's management or the

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

Board or Responsible Officer will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, A&M does not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. A&M shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Board or Responsible Officer and only to the extent and in the manner authorized by and directed by the Board or Responsible Officers and agreed to by A&M.

Depending on future developments the spread of the Coronavirus has the potential to affect the services provided under this Agreement. Travel, work place and mobility restrictions (to include measures reasonably mandated by A&M with respect to its employees and personnel) may restrict travel to the Company and other work sites as well as limit access to facilities, infrastructure, information and personnel of A&M, the Company or others. Such circumstances may adversely affect the timetable or content of A&M's deliverables and completion of the scope of services included in this Agreement. A&M will discuss with Weil and the Company if A&M believes that the services may be impacted in this way. The Company and Weil accept and acknowledge that A&M employees and personnel may attend at the Company's or Weil's locations or physically interact with the Company's or Weil's employees and personnel in connection with the services, unless A&M, Weil or the Company decide that this should not be the case.

4.   <u>Compensation</u>

(a) A&M will receive fees based on the following hourly rates:

| | |
|---|---|
| Managing Directors | $1,075 - 1,525 |
| Directors | $825 - 1,075 |
| Associates | $625 - 825 |
| Analysts | $425 - 625 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

    (b) In addition, A&M will be reimbursed for its reasonable and documented out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, meals, messenger and wireless charges. A&M also charges a flat rate of 3% of professional fees to cover otherwise unbilled items such as telephone and conferencing charges, computer use, technology and software license fees, research subscriptions and other internal services. All fees and expenses will be billed on a weekly basis or, at A&M's discretion, more frequently. Invoices are payable upon receipt and will be made through authorizing Dentons to send payment of the Retainer or invoice to A&M.

    (c) The Company agrees to pay A&M a retainer of $1,500,000. (the "Retainer"). Such payment shall be made through authorizing Dentons to send to A&M payment for the Retainer. The Retainer shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder. The Retainer will be held in a segregated non-interest-bearing account (which may hold other A&M and A&M affiliate client retainers), separate from the general account to which A&M will direct payment of ongoing fees and expenses. Absent your agreement to the contrary, A&M may only draw on the Retainer (or a portion thereof) in order to apply to invoices that are due and payable or other amounts due under this Agreement or as the Company may otherwise agree and Company will be informed of such application of the Retainer. In addition, if a Retainer is to be increased or decreased, the foregoing shall apply.

    (d) Notwithstanding anything to the contrary herein, payment of the fees and expenses hereunder, the reimbursement and indemnity obligations hereunder, and any other amount payable or otherwise owing to A&M hereunder shall be the sole responsibility of the Company. Weil and Dentons shall in no event be liable or responsible in any capacity for any such amounts or any other amounts owing to A&M or any other person or entity hereunder; A&M shall look solely to the Company for payment of such fees. The failure by Dentons to transfer any Retainer or other payment to A&M does not void or negate the Company's responsibility to pay A&M's fees and expenses.

5.     <u>Term</u>

    (a) This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated with immediate effect by A&M, Company or Weil without cause by written notice to the other party.

    (b) A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists.

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

    (c) On termination of the Agreement, any fees and expenses due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

    (d) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6. <u>Relationship of the Parties</u>

The parties intend that an independent contractor relationship will be created by this engagement letter. Neither A&M nor any of its personnel or agents is to be considered an employee or agent of Weil or the Company and the personnel and agents of A&M are not entitled to any of the benefits that either Weil or the Company provides for its employees. Weil and the Company acknowledge and agree that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7. <u>Attorney Work Product</u>

The parties understand that A&M's work will be done at the direction of Weil to assist Weil in rendering legal advice, and that work performed by A&M as part of this engagement, including, without limitation, any reports it may prepare, is privileged and confidential and is deemed to constitute attorney work product which A&M will not disclose to any other third-party (other than Weil and the Company) except at the direction of Weil or otherwise in accordance with the terms hereof. The parties understand that any documents prepared or obtained by A&M are prepared or obtained solely for the use and benefit of Weil in connection with its representation of the Company, and are subject to Weil's right to request that they be delivered into their possession at any time they are still in A&M's possession.

8. <u>No Third Party Beneficiary</u>

Weil and the Company acknowledge that all advice (written or oral) provided by A&M in connection with this engagement is intended solely for the benefit and use of Weil and the Company (limited to its Board and management) in considering the matters to which this engagement relates. Weil and the Company agree that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

9. <u>Conflicts</u>

A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware, but we note that A&M is currently providing financial advisory services to Celsius Network, LLC and its affiliated debtors and debtors in possession ("Celsius") in connection with Celsius' chapter 11 bankruptcy cases. Celsius previously held certain Company crypto currency assets and experienced losses related to those assets. A&M will recuse itself in both its engagement for Celsius and its engagement for the Company related to any disputes that may arise between Celsius and the Company.

Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "<u>Firm</u>") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company and/or Weil, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with Weil's or the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained. Each of the entities comprising the definition of Company hereunder (each, a "<u>Company Entity</u>") acknowledges and agrees that the services being provided hereunder are being provided on behalf of each of them and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other Company Entity. Each Company Entity represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

10. <u>Confidentiality / Non-Solicitation</u>

A&M shall keep as confidential all non-public information received from Weil or the Company in conjunction with this engagement, except: (i) as requested by the Company or Weil (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("<u>Solicited Person</u>"). Should the Company or any of its subsidiaries or affiliates or any

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision. The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

11. <u>Indemnification and Limitations on Liability</u>

The attached indemnification and limitation on liability agreement is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

As to the services that A&M has agreed to provide under this Agreement, the total aggregate liability of A&M under this Agreement to Weil and the Company and their respective successors and assigns, shall be limited to the actual damages incurred by Weil and the Company and their successors or assigns, respectively. In no event will A&M or any of its affiliates be liable to Weil or the Company or their successors or assigns for consequential, special or punitive damages, including loss of profit, data, business or goodwill. Further, in no event shall the total aggregate liability of A&M under this Agreement to Weil and the Company and their successors and assigns, exceed the total amount of fees received and retained by A&M hereunder.

12. <u>Joint and Several Liability</u>

Each Company Entity hereby acknowledges and agrees that they are each jointly and severally liable to A&M and its affiliates for all of the Company's representations, warranties, covenants, liabilities and obligations set forth in the Agreement. Any beneficiary of this agreement may seek to enforce any of its rights and remedies hereunder against any or all Company Entities in any order at any time in its sole discretion.

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

13.     <u>Privacy and Data Protection.</u>

In the provision of Services under this Agreement, A&M may Process certain Company Personal Data. Capitalized terms are defined in clause (d), below.

(a) <u>Mutual Obligations</u>. A&M and Company shall each comply with Data Protection Laws applicable to their respective Processing of Company Personal Data.

(b) <u>A&M Obligations.</u> (i) A&M shall Process Company Personal Data in accordance with the Agreement as reasonably necessary to providing the Services ("<u>Business Purpose</u>"). (ii) A&M shall implement and maintain appropriate physical, technical, and organizational safeguards reasonably designed to protect the confidentiality and security of Company Personal Data, and to protect Company Personal Data against a Personal Data Breach. (iii) A&M shall not: (A) sell or share Company Personal Data; (B) retain, use, or disclose Company Personal Data for any purpose other than for the Business Purpose; (C) retain, use, or disclose Company Personal Data for a commercial purpose other than the Business Purpose, or as otherwise permitted under Data Protection Laws; (D) retain, use, or disclose Company Personal Data outside of the direct business relationship between Company and A&M, except as otherwise permitted under Data Protection Laws; or (E) combine Company Personal Data it receives from, or on behalf of, Company with personal information that it receives from, or on behalf of, another person or persons, or collects from its own interaction with the consumer, except as otherwise provided under Data Protection Laws. A&M has Company's general authorization to disclose Company Personal Data to its affiliates to assist A&M in processing Company Personal Data for the Business Purpose. Company acknowledges that where relevant to the Business Purpose and at its direction A&M may transfer Company Personal Data to third parties, and that any such transfers are for Company's convenience and shall always be deemed to be made on Company's behalf. (iv) A&M shall provide the same level of protection to Company Personal Data as required of businesses under applicable Data Protection Laws and will notify Company immediately if it determines that it can no longer meet its obligations under applicable Data Protection Laws. (v) A&M has Company's general authorization for the engagement of sub-processors to assist A&M in processing Company Personal Data for the Business Purpose; provided, A&M shall notify Company of that engagement and each sub-processor shall be subject to written agreement containing the same protections as set forth herein. (vi) Company shall be permitted to monitor A&M's compliance with its privacy and data protection obligations herein through written diligence questionnaires once every 12 months. (vii) To the extent A&M is permitted under the Agreement to deidentify, anonymize and/or aggregate Company Personal Data ("<u>Deidentified Data</u>"), Company acknowledges that A&M undertakes such actions in connection with and for the

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

purpose of performing the Services, and Deidentified Data shall not be considered Company Personal Data.

(c) Company Obligations. (i) Company confirms that it has established all rights (including, where relevant, providing a privacy notice and obtaining any necessary consents) necessary under applicable Data Protection Laws for A&M to provide the Services under the Agreement. (ii) Company shall not do or permit anything to be done, through any act or omission, in providing or making available to A&M any Company Personal Data, that would cause A&M or any of its affiliates to contravene or incur any liability under any Data Protection Laws. (iii) If Company's transfer of Company Personal Data to A&M would be prohibited by GDPR or other Data Protection Laws in the absence of an adequacy decision, standard contractual clauses, or other permitted transfer mechanism, Company shall be responsible for ensuring that appropriate safeguards are in place including, where applicable, by entering into standard contractual clauses with A&M. (iv) Company shall use its reasonable efforts, where practicable, to limit the Personal Data that it provides or makes available to A&M to information that is necessary and relevant for A&M's performance of the Services, including by removing and/or de-identifying datasets, and to notify A&M in advance regarding categories, types and volume of Personal Data that it will provide or make available so that the parties can implement appropriate data transmission, handling and storage safeguards. (v) If Company is a covered entity or business associate as defined under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Company shall not disclose protected health information (PHI) or electronic protected health information (ePHI) to A&M (in its own capacity as a business associate) unless and until the parties have entered into a mutually acceptable HIPAA business associate agreement, which will supersede this Privacy and Data Protection Provision with respect to such PHI/ePHI.

(d) Definitions. (i) "Data Protection Laws" means all laws, rules and regulations pertaining to the privacy and security of Personal Data, including but not limited to the California Consumer Protection Act of 2018 ("CCPA") and EU General Data Protection Regulation 2016/679 of the European Parliament and of the Council ("GDPR"); (ii) "Personal Data" means all "personal data", "personal information", "personally identifiable information", "special categories of data", "sensitive personal information", and similarly defined terms under Data Protection Laws; (iii) "Company Personal Data" means any Personal Data that Company provides or makes available to A&M, or that A&M collects directly from individuals, in connection with A&M's performance of the Services (but excluding contact details about Company's personnel that A&M processes to manage the business relationship with Company); (iv) "Process" has the meaning under applicable Data Protection Laws, and in all events means to collect, access, analyze, use, store, transfer (including by remote access), or disclose by transmission; (v) "Personal Data Breach" has the meaning under applicable Data Protection Laws, and in all events means any breach of

DocuSign Envelope ID: 3D58467D-B946-47D0-BB19-EC1879B341A1

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data; and, (vi) for purposes of clause (b)(iii) above, the terms "personal information", "consumer", "business", "service provider", "business purpose", "commercial purpose", "sell", and "share" shall have the meanings defined under CCPA.

14. <u>Miscellaneous</u>

This Agreement (together with the attached indemnity provisions), including without limitation, the construction and interpretation thereof and all claims, proceedings or causes of action (whether in contract, tort or statute) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement or the services provided hereunder (the "<u>Related Matters</u>"), shall be governed by, and enforced in accordance with, the internal laws of the State of New York, including its statutes of limitations, without regard to principles of conflict of law that would defer to the laws of another jurisdiction.

The Company, Weil and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any Related Matters. The Company, Weil and A&M agree, to the extent permitted by applicable law, that any action with respect to any Related Matters shall be brought and adjudicated exclusively in the United States District Court for the Southern District of New York or, if such court lacks jurisdiction, in the New York state courts with jurisdiction over New York, New York; that those courts shall have exclusive jurisdiction over any Related Matters; to submit to the personal jurisdiction of such courts; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue in any legal proceeding.

This Agreement shall be binding upon A&M, Weil and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's, Weil's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company, Weil and A&M. The Company and Weil agree that A&M may aggregate information provided by or on behalf of the Company during this engagement with information provided by or on behalf of others and use and disclose that information in de-identified form as part of research and advice, including, without limitation, benchmarking services. Notwithstanding anything herein to the contrary, A&M may reference or list the Company's name and/or logo and/or a general

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By: *Michael Leto*
Name: Michael S. Leto
Title: Managing Director

Accepted and agreed:

Weil Gotshal &Manges, LLP

By: */s/ Ronit Berkovich*
Name: Ronit Berkovich
Title: Partner

Terraform Labs Ptd Ltd.

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

        [on behalf of itself and its direct and indirect subsidiaries]

By: _____
        Name: Arrash Chris Amani
        Title: Chief Executive Officer

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

# INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of an agreement, dated January 19, 2024 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "<u>Agreement</u>"), by and between Alvarez & Marsal North America, LLC ("<u>A&M</u>"), Weil Gotshal & Manges, LLP, in its capacity as counsel to Terraform Labs Ptd. Ltd. together with its subsidiaries, jointly and severally, the "<u>Company</u>"), for services to be rendered to the Company by A&M.

A.   The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "<u>Indemnified Party</u>" and collectively, the "<u>Indemnified Parties</u>") against any and all documented losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity). The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

B.      These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.      If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action. The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

D.      In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.      In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay any expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.      Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.      The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

767 5th Avenue, New York NY 10153-0019
Weil Gotshal & Manges LLP
January 19, 2024

| Terraform Labs Ptd. Ltd.<br>on behalf of itself and its subsidiaries | ALVAREZ & MARSAL NORTH AMERICA, LLC |
|---|---|
| By: _____<br>Name: Arrash Chris Amani<br>Title: Chief Executive Officer | By: _____<br>Name: Michael S. Leto<br>Title:   Managing Director |