## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TERRAFORM LABS PTE. LTD., | ) | Case No. 24-10070 (BLS) |
| | ) | |
| | ) | |
| Debtor. | ) | **Obj. Deadline: Feb. 27, 2024 at 4:00 p.m.** |
| | ) | **Hearing Time: Mar. 5, 2024 at 2:30 p.m.** |
| _____ | ) | |

### OBJECTION OF THE U.S. SECURITIES AND
### EXCHANGE COMMISSION TO APPLICATION OF DEBTOR FOR ENTRY
### OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
### OF DENTONS US LLP AS SPECIAL COUNSEL TO THE DEBTOR
### AND DEBTOR IN POSSESSION EFFECTIVE AS OF THE PETITION DATE

The United States Securities and Exchange Commission (the "**SEC**"), a creditor in these proceedings and the federal agency responsible for regulating the nation's securities markets and enforcing compliance with the federal securities laws, objects to the *Application Of Debtor For Entry Of An Order Authorizing The Retention And Employment Of Dentons US LLP As Special Counsel To The Debtor And Debtor In Possession Effective As Of The Petition Date* [Docket No. 60] (the "**Dentons Retention Application**" or "**Application**") on the terms set forth therein. A year ago, the SEC sued the Debtor and its principal, Kwon Do Hyeong, alleging a years-long fraud that led to billions in devastating losses, including to retail investors in the United States. The SEC does not object to the retention of Dentons US LLP ("**Dentons**") as counsel in that action, or to the payment of legitimate litigation expenses. But the amount of funds at issue is extraordinary—nearly $166 million worth of prepetition transfers from the Debtor's estate of which more than $84 million appears to have already been spent in litigation expenses.

Given the lack of appropriate disclosures, the failure to comply with the Bankruptcy Code, and the SEC's significant interest in protecting these assets for the benefit of the defrauded victims, the SEC objects to the Application on the terms set forth therein. The SEC respectfully

requests that the Court deny the Application unless Dentons returns to the Debtor the $81 million remaining in its Advance Payment Retainer (as defined herein) and it and other professionals file with this Court their engagement letters, and any agreement governing how the Advance Payment Retainer is to be used, with their fees subject to review by this Court. The SEC further respectfully requests that the Court exercise its discretion to appoint a fee examiner.

In support of its objection, the SEC respectfully states as follows:

<u>**INTRODUCTION**</u>

1.      On February 16, 2023, the SEC filed a civil enforcement action against Terraform Labs Pte, Ltd. (the "**Debtor**") and Kwon Do Hyeong ("Kwon") in the District Court for the Southern District of New York (the "**SEC Enforcement Action**"). Among other things, the SEC alleges, in an Amended Complaint filed on April 3, 2023, Terraform and Kwon caused billions in losses following the collapse of their years-long, fraudulent scheme to sell crypto asset securities in unregistered transactions. The SEC alleges, for example, that "[c]ountless retail investors lost their life savings and ended up in debt as a result of the collapse. For example, a pharmacist in California borrowed $400,000 against the value of his home to purchase UST and lost his entire investment. A painter in Vermont invested $20,000 in UST set aside for his son's college education, but lost it all when the Terraform ecosystem collapsed." Am. Compl. ¶ 172 in *SEC v. Terraform Labs, Inc.*, No. 23 Civ. 1346 (D.E. 25) (S.D.N.Y.) filed Apr. 3, 2023.

2.      In March 2023, a federal grand jury in New York returned an indictment criminally charging Kwon with two counts of securities fraud and six other counts for much of the same conduct alleged in the SEC Enforcement Action. Indictment, *United States v. Kwon*, 1:23-cr-00151-JPC (S.D.N.Y. filed March 23, 2023).

3.      Over the course of the following months, in the face of these allegations of devastating investor losses, the Debtor transferred a staggering $166M into the Dentons Advance

Payment Retainer in the year prior to the filing of this proceeding, approximately $122M of which was transferred within 90 days of bankruptcy.  These transfers were ostensibly made to pay Dentons, who in turn paid itself, its member firms and numerous other vendors, for services relating to Debtor's and its employees' legal troubles.  Dentons' services included representation of Kwon, the Debtor's former CEO who has been indicted by the Department of Justice and is currently incarcerated in Montenegro, in the SEC Enforcement Action.

4.      The timing and enormous amount of these transfers, given the ongoing litigation with the SEC, warrant proceeding with caution to protect Debtor assets—which may ultimately belong to the investor victims the SEC alleges were defrauded by the Debtor.  While the Debtor's stated purpose in filing for bankruptcy is that it would be unable to post a supersedeas bond to appeal the District Court's December 28, 2023 ruling that Defendants are liable for securities laws violations,[1] the transfers appear designed to remove assets from the estate that could be used to pay a judgment arising from the SEC Enforcement Action and raise red flags regarding the propriety of the Dentons Retention Application.

5.      Moreover, the assets transferred may be proceeds of the conduct the SEC alleged, and the District Court already found, violated the law.  Dentons may accordingly hold an interest adverse to the estate arising from these transfers and from its current role in administering a highly unusual payment system, as these funds may be a significant source of recovery for the bankruptcy estate.

**BACKGROUND**

6.      On January 21, 2024 ("**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**").

---

[1] *SEC v. Terraform Labs Pte. Ltd*., 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023).

7.      On February 13, 2024, the Debtor filed the Dentons Retention Application.

8.      Paragraphs 24 and 25 of Dentons Retention Application provide that:

- Dentons received approximately $166M (total cash including retainers) within one (1) year of the petition date, approximately $122M of which was received within 90 days of the petition date.
- Of the $166M, Dentons "billed" approximately $38M ($11M within 90 days of the petition date) on account of Dentons, approximately $1M ($306k within 90 days of the petition date) to its member firms, and approximately $47M ($32M within 90 days of the petition date) to certain "Vendors" on behalf of the Debtor.
- As of the petition date, there were at least $2M in unpaid invoices.
- As of February 13, 2024, approximately $81M remained in the Advance Payment Retainer.

9.      Paragraph 8 of the proposed order ("**Proposed Order**") attached to the Application provides that Dentons may apply amounts the Debtor transferred to Dentons prepetition (the "**Advance Payment Retainer**") to pay "any outstanding prepetition invoices, including prepetition invoices for Contractors set forth on Schedule 1" attached to the Dentons Retention Application.

10.      The Contractors set forth on Schedule 1 include law firms and vendors, whose services are not described in the Dentons Retention Application and whose retention letters, if any, are not included with the Application.  The Debtor has filed a separate *Motion Of Debtor For Entry Of Orders Pursuant To Sections 363, 503(B), And 105(A) Of The Bankruptcy Code Authorizing Debtor To Pay Certain Amounts In Furtherance Of Litigation And Granting Related Relief* ("**Litigation Claims Motion**") [Docket No. 61],[2] which includes law firms and vendors that appear to be different from and in addition to the law firms and vendors that the Debtor seeks to pay pursuant to the Dentons Retention Application.

11.      The Department of Justice has indicted Kwon and Debtors' Litigation Claim

---

[2]  The SEC filed contemporaneous herewith an objection to the Litigation Claims Motion.  The background and objection set forth in the SEC's objection to the Litigation Claims Motion are incorporated herein by reference.

motion states that the Department of Justice "stated that it is continuing its investigation of individuals and entities involved in the Terra Blockchain, including the Debtor and some of its former employees."  Litigation Claim Motion, ¶ 16; *see also United States v. Kwon*, 23-cr-151 (JPC) (S.D.N.Y.).  "In March 2023, Kwon was arrested in Montenegro and charged with forging official documents.  Mr. Kwon stepped down as Chief Executive Officer of TFL on March 31, 2023 and resigned his position as director of TFL shortly thereafter. . . . Mr. Kwon is still held in custody in Montenegro." Amani Decl., at 25 n. 20.

12.     The exhibits attached to the Dentons Retention Application list transfers within 90 days of the bankruptcy case, including payments on January 19, 2024 to the Law Office of Goran Rodic, criminal counsel to Kwon in the proceeding in Montenegro ($271k); Kaplan Hecker & Fink LLP, counsel to Kwon in the SEC Enforcement Action ($5M); and Kim & Chang, counsel to certain Debtor employees and former employees in the SEC Enforcement Action ($5M). Dentons Retention Application, Exhibit E.

13.     Peter Hsieh, the Debtor's General Counsel, filed a Declaration in support of the Dentons Retention Application.  However, the Debtor has not provided information regarding Hsieh's background or qualifications to review the magnitude of fees paid to Dentons' law firms and vendors.

14.     Paragraph 5 of the Dentons Retention Application and paragraph 2 of the Proposed Order seek to authorize the Debtor to retain and employ Dentons as "special counsel" and in accordance with the terms and conditions set forth in the engagement letter (the "**Engagement Letter**") and Dentons Retention Application.  However, a copy of the Engagement Letter was not filed with the Dentons Retention Application.

## **DISCUSSION**

**A.  The Timing and Staggering Amount of the Prepetition Transfers Are Suspicious, Given the Ongoing Litigation with the SEC**

15.     As it was litigating (and ultimately lost on the SEC's Securities Act Section 5 claims [15 U.S.C. § 77e(a), (c)]) summary judgment with the SEC, the Debtor transferred $122 million into an opaque slush fund for its lawyers, filed for bankruptcy protection within ninety days of those transfers, and then sought via the retention of Dentons, and the Application and the Litigation Costs Motion to use the money it siphoned as a war chest to bankroll its continuing defense against the SEC (and others), to the detriment of the estate and its creditors—including likely the investor victims of Debtor's massive, multibillion dollar fraud.

16.     The timing and amount of these transfers are suspicious, given the developments in the SEC Enforcement Action, as set forth below:

- From January 21, 2023, a time during which the Debtor was under SEC investigation and already litigating with the SEC, to the Petition Date, the Debtor transferred $166M to Dentons, $122M of which was transferred since October 23, 2023.
- On February 16, 2023, the SEC filed the SEC Enforcement Action against the Debtor and its founder and creator Do Kwon, alleging that both engaged in fraudulent unregistered offers and sales of certain crypto assets securities, ultimately causing billions of harms to investors in those assets.
- On December 28, 2023, the District Court granted partial summary judgment in favor of the SEC—concluding that the defendants in the SEC Enforcement Action had engaged in unregistered offers and sales of securities as a matter of law and setting for trial on January 29, 2024] the SEC's fraud claims. *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023).
- On January 11, 2024, Kwon's new counsel sought an adjournment of the trial date to allow for Kwon's appearance at trial, which the Court granted, setting the trial for Mach 25, 2024.  Kwon's counsel has since informed the SEC and the court in the SEC Enforcement Action that Kwon will likely not appear at trial and that Kwon has appealed a Montenegrin court's decision to extradite Kwon to the United States.
- On January 21, 2024, Debtor filed for bankruptcy.
- As of February 13, 2024, more than half of the $166M amounts transferred to Dentons have been used to pay Dentons, its member firms, and numerous "Vendors," with $81M still remaining in Dentons Advance Payment Retainer.

17.      The Debtor seeks to continue to pay its vendors, including at least $2M for unpaid prepetition fees and expenses, which may be contrary to the goal of maximum distribution to the creditors of the estate. *See In re Chas. A. Stevens & Co.*, 105 B.R. 866, 871–72 (Bankr. N.D. Ill. 1989) ("The estate is not a cash cow to be milked to death by professionals seeking compensation for services rendered to the estate which have not produced a benefit commensurate with the fees sought.").

**B. Dentons May Hold an Interest Adverse to the Estate Arising from these Prepetition Transfers**

18.      Under Section 327(e) of the Bankruptcy Code, a professional cannot be employed by the estate if it holds "any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."  11 U.S.C. § 327(e).

19.      Here, the Dentons Retention Application provides that Dentons made payments from the Advance Payment Retainer for legal fees and costs by Dentons, its member firms, and vendors on behalf of the Debtor.  However, the Dentons Retention Application fails to adequately disclose the terms of any agreements among Dentons, the Debtor, and/or other law firms and vendors governing the use of the Advance Payment Retainer.  In addition, it appears that payments from the Advance Payment Retainer include payments to counsel to Kwon (an insider) in a criminal action in Montenegro unrelated to his employment with the Debtor, and to counsel to Kwon and current/former employees of the Debtor in connection with the SEC Enforcement Action.  The Dentons Retention Application does not state whether or how these prepetition fees were reviewed to determine that they are reasonable or appropriate, or whether, if they were reviewed by the Debtor's general counsel, he is qualified to review expenditures in this magnitude.  Prudence would require that safeguards be put in place, as these transfers may be avoidable as preferences, fraudulent conveyances, or by some other theory, and could be a

substantial source of recovery for the estate and creditors. *See In re NNN 400 Capitol Ctr. 16 LLC*, 632 B.R. 243, 259 (D. Del. 2021), *aff'd sub nom. In re NNN 400 Capitol Ctr. 16 LLC.*, No. 21-3013, 2022 WL 17831445 (3d Cir. Dec. 21, 2022) (affirming the bankruptcy court's ruling that special counsel was disqualified where it held a pecuniary interest adverse to the debtors that under the circumstances created a bias against the estate); *see also Staiano v. Pillowtex Inc.*, 304 F.3d 246 (3d Cir. 2002) (holding in context of 327(a) representation that a preferential transfer constitutes an interest adverse to the estate for retention purposes). *But see In re Mallinckrodt PLC*, No. 21-CV-268-LPS, 2022 WL 906462, at *6 (D. Del. Mar. 28, 2022) (concluding that *Pillowtex* did not apply to the retention of special counsel under section 327(e) in case involving a relatively *de minimis* $3.6M of transfers).

20.    Given the staggering $166M that was transferred to Dentons, $122M of which was within 90 days of bankruptcy, and Dentons' role as the architect and current administrator of the Debtor's highly unusual payment system, Dentons may hold a disqualifying pecuniary interest adverse to the Debtor under section 327(e) if it is allowed to continue in its current role in expending estate resources. 11 U.S.C. § 327(e); *NNN 400 Capitol Ctr.*, 632 B.R. at 260 ("The court has broad discretion to determine whether an attorney holds a disqualifying adverse interest based on the facts of a particular case."). Indeed, the Debtor's first day filings list no unfettered cash available in the Debtor's accounts, and their only potentially liquid assets appear to be large amounts of crypto assets with very volatile values.[3]

21.    If Dentons intends to pursue its employment and retention, given the highly unusual circumstances and the amount of money that has already been distributed, it should be

---

[3] *See Amani Decl.*, ¶62-66 (listing the Debtor's assets as BTC, various other crypto assets, Luna, fee advances the majority of which was paid to Dentons, interests in certain venture investments, cash held in a Singapore escrow account pending the outcome of the Singapore Action (as defined therein), amounts in locked accounts, and certain intellectual property).

required to return to the Debtor the $81M remaining in the Advance Payment Retainer, which amounts should be deposited in the Debtor's DIP bank account and in accordance with section 345 of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 345; Office of the United States Trustee's list of authorized depositories for such accounts, and a fee examiner should instead be appointed to determine the propriety of disbursing such funds.[4]

## C. Dentons Has Failed to File a Copy of Its Engagement Letter or the Engagement Letters with Other Professionals and Vendors

22.     The Dentons Retention Application references its Engagement Letter with the Debtor, and asks this Court to authorize the employment of Dentons pursuant to the application and "*the Engagement Letter.*"  Application at ¶ 7 (emphasis added); *see also id.* at ¶¶ 12, 20, 22, 33 (defining the scope of services at issue in the Application as consistent with the "Engagement Letter"); Proposed Order (Application at Exhibit A) ¶ 2 (purporting to authorize engagement "in accordance with the terms and conditions set forth in the Engagement Letter and Application"). This "Engagement Letter" should be filed and parties in interest should have sufficient time to review the terms thereof and an opportunity to object.

23.     In addition, Dentons should file copies of the engagement letters with other professionals whom it is seeking to pay pursuant to the terms of the Dentons Retention Application, as well as any other agreement that sets forth the terms and conditions of how the Advance Payment Retainer is to be used.

## D. Contractors' Fees Should Be Subject to Review by this Court

24.     Schedule 1 to the Proposed Order includes a list of Contractors who will submit their invoices directly to, and be paid by, Dentons.  These Contractors include a number of law

---

[4] Debtor's counsel has represented to the undersigned counsel that the Debtor recently opened a debtor in possession bank account.

firms, and vendors whose services to the Debtor are unclear.  Given that "Vendor" fees amounted to $32M within 90 days of the Petition Date, these Contractors should be required to file retention applications or apply to be ordinary course professionals, subject to appropriate fee caps, or otherwise have their fees subject to review by this Court or a fee examiner.  *See In re Congoleum Corp.*, 426 F.3d 675, 693 (3d Cir. 2005) ("the bankruptcy court has an obligation to prevent unnecessary expenditures in the administration of an estate.").

25.     Moreover, the Debtor provides *no legal justification* for paying the over $2 million in outstanding unpaid invoices, which it seeks authority to pay pursuant to paragraph 8 of the Proposed Order.

### E.  Appointment of a Fee Examiner is Warranted

26.     Pursuant to Rule 2016-2(j) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), this Court may, in its discretion or upon motion of any party, appoint a fee examiner to review applications and make recommendations for approval. Local Rule 2016-2(j).  Given the highly unusual retainer arrangement, and the number of Contractors, including professionals, that may seek to be compensated using estate funds, this Court should exercise its discretion to appoint a fee examiner pursuant to Local Rule 2016-2.  Although fee examiners are generally appointed to review fee applications filed by professionals who have filed formal retention applications, here an examiner is warranted to also review the fee applications for professionals whose retentions have not been approved by this court, but who seek nonetheless to be compensated by the estate, including the Contractors listed in Schedule 1 attached to the Proposed Order.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the U.S. Securities and Exchange Commission requests entry of an Order

denying the Application for the reasons stated above, unless:

- o   Dentons returns to the Debtor the $81M remaining in the Advance Payment Retainer;
- o   Denton's Engagement Letter, engagement letters with other professionals whom Dentons is seeking to pay, and any other agreement that sets forth the terms and conditions of how the Advance Payment Retainer is to be used, are filed; and
- o   The "Contractors" referenced in the application file retention applications, apply to be ordinary course professionals, or otherwise have their fees subject to review by this Court.

The SEC further requests that this Court exercise its discretion to appoint a fee examiner

pursuant to Local Rule 2016-2(j), and grant such further relief as is just and proper.

Dated: February 27, 2024          UNITED STATES SECURITIES AND
                                  EXCHANGE COMMISSION


                                  /s/ William M. Uptegrove
                                  William M. Uptegrove
                                  NY Bar No. 4846622; NJ Bar No. 031602003
                                  950 East Paces Ferry Road, Suite 900
                                  Atlanta, Georgia 30326-1382
                                  Tel: (404) 842-5765
                                  Email: uptegrovew@sec.gov

                                  -and-

                                  Therese A. Scheuer
                                  DE Bar No. 5699
                                  100 F. Street, NE
                                  Washington, DC 20549
                                  Phone: (202) 551-6029
                                  Fax: (202) 772-9317
                                  Email:  scheuert@sec.gov



Of Counsel: Alistaire Bambach
            Michael Kelly

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Objection was served this 27th day of February, 2024 upon all parties receiving notices through the Administrative Procedures of the CM/ECF System for the Bankruptcy Court for the District of Delaware.

_/s/ William M. Uptegrove_