**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TERRAFORM LABS PTE. LTD., | ) | Case No. 24-10070 (BLS) |
| | ) | |
| | ) | |
| Debtor. | ) | **Obj. Deadline: Feb. 27, 2024 at 4:00 p.m.** |
| | ) | **Hearing Time: Mar. 5, 2024 at 2:30 p.m.** |
| _____ | ) | |

**OBJECTION OF THE U.S. SECURITIES AND**
**EXCHANGE COMMISSION TO DEBTOR'S MOTION FOR ENTRY OF ORDERS**
**PURSUANT TO SECTIONS 363, 503(B), AND 105(A) OF THE BANKRUPTCY**
**CODE AUTHORIZING DEBTOR TO PAY CERTAIN AMOUNTS IN**
**FURTHERANCE OF LITIGATION AND GRANTING RELATED RELIEF**

The United States Securities and Exchange Commission (the "**SEC**"), a creditor in these proceedings and the federal agency responsible for regulating the nation's securities markets and enforcing compliance with the federal securities laws, objects to the approval of the *Motion of the Debtor for Entry of Orders Pursuant to Sections 363, 503(B), and 105(A) of the Bankruptcy Code Authorizing Debtor to Pay Certain Amounts in Furtherance of Litigation and Granting Related Relief* [Docket No. 61] (the "**Litigation Claim Motion**" or "**Litig. Cl. Mot.**") of Terraform Labs PTE. LTD. ("**Debtor**" or "**Terraform**"), on the terms set forth therein.  The SEC does not object to the payment of legitimate litigation expenses.   Rather, the SEC objects to the lack of appropriate disclosures in the Litigation Claim Motion and failure to comply with the Bankruptcy Code.  In support of its objection, the SEC respectfully states as follows:

**INTRODUCTION**

1.      By the Litigation Claim Motion, the Debtor seeks to use millions in estate funds to benefit insiders, outside of this Court's supervision.  Amid the district court granting in part the SEC's motion for summary judgment against the Debtor, the Debtor transferred as much as

$122 million into a fund for its lawyers, filed for bankruptcy protection shortly thereafter, and now seeks to improperly use that money without appropriate court oversight.  Accordingly, the motion should be denied.

2.      The SEC has charged the Debtor for an unregistered, fraudulent offering of securities that led to investor losses in the billions of dollars, and the district court has already concluded that Terraform has engaged in illegal unregistered offers and sales of securities as a matter of law, and that there are triable issues as to the SEC's claims that the Debtor committed fraud.

3.      In sum, the Debtor has failed to show that it owes the moneys it requests authority in the motion to pay, and neither Sections 503(b) nor 363(b) and (c) provide a proper basis to grant the relief sought.  The SEC also respectfully submits that reimbursement of costs sought in the Litigation Claim Motion should not be granted until the establishment of the minimal safeguards requested at the conclusion of this Objection.

## BACKGROUND

### A.  The Debtor's Scheme to Defraud Investors

4.      The Debtor launched the Terraform blockchain on April 24, 2019, which served as the infrastructure for five crypto securities assets, none of which were SEC registered. Amended Complaint ("**AC**"), ¶ 34, *SEC v. Terraform Labs Pte. Ltd.*, Civ. A. No. 23-1346 (S.D.N.Y. Apr. 3, 2023).  The Debtor and its then-chief executive officer, Do Hyeong Kwon ("**Kwon**"), marketed, offered, sold, and/or effected transactions in those crypto assets to investors worldwide, promoting them with fraudulent representations. *Id.* ¶¶ 3, 15, 39-117, 127-133,138-140, 149-152, 163-165, 169.

**B.  The SDNY Has Found That the Debtor Violated the Federal Securities Laws**

5.      After an investigation during which the Debtor and Kwon contested U.S.

jurisdiction, refused to respond to administrative subpoenas, and fought those subpoenas to the

United States Supreme Court, *SEC v. Terraform Labs Pte Ltd.*, No. 22-368, 2022 U.S. App.

LEXIS 15722 (2d Cir. Jun. 8, 2022), *cert. denied*, 143 S.Ct. 1020 (2023), on February 16, 2023,

the SEC filed a civil enforcement action against the Debtor and Kwon in the District Court for

the Southern District of New York (the "**SEC Enforcement Action**") alleging they engaged in

unregistered offers and sales of crypto asset securities in a fraudulent scheme that caused $40

billion in market losses, including to U.S. retail and institutional investors. AC, ¶ 1.

6.      In December 2023, the District Court granted partial summary judgment to the

SEC, holding the Debtor and Kwon engaged in unregistered offers and sales of securities in

violation of Section 5 of the Securities Act of 1933.  *SEC v. Terraform Lab Pte, Ltd.*, No. 23-

1346, 2023 U.S. Dist. LEXIS 230518, at *2, 54 (S.D.N.Y. Dec. 28, 2023).  While the District

Court has not yet ordered remedies, "the Debtor faces significant liability as a result of the

summary judgment decision and the pending securities fraud claims . . . ." Amani Decl., ¶ 11.

Trial on the fraud claims is scheduled to begin on March 25, 2024.[1]

**C.  The Debtor Transferred Substantial Assets to its Trial Counsel, and Then Filed
For Bankruptcy Protection**

7.      The Debtor and Kwon retained Dentons US LLP ("**Dentons**") as their trial

counsel in the SEC Enforcement Action.  After summary judgment, Dentons withdrew as

---

[1] The Department of Justice has indicted Kwon and "stated that it is continuing its investigation of individuals and
entities involved in the Terra Blockchain, including the Debtor and some of its former employees." Litigation Claim
Motion, ¶ 16; *see also United States v. Kwon*, 23 CR 151 (JPC) (S.D.N.Y.). "In March 2023, Kwon was arrested in
Montenegro and charged with forging official documents. Mr. Kwon stepped down as Chief Executive Officer of
TFL on March 31, 2023 and resigned his position as director of TFL shortly thereafter. . . . Mr. Kwon is still held in
custody in Montenegro." Amani Decl., at 25 n. 20.

counsel for Kwon and was replaced by other attorneys.[2]  [Docket No. 146, 147, 148, 170]; *SEC v. Terraform Labs Pte. Ltd.*, No. 23-cv-1346 (S.D.N.Y.).  Dentons remains trial counsel for the Debtor.

8.      In the year before the petition date, the Debtor transferred $165,996,818.87 to Dentons, with more than $120 million transferred within the 90 days before filing. [Docket No. 60-3, ¶ 21.]  About $38 million was applied to billings attributable to Dentons and its other member firms.  *Id.*  More than $47 million were transferred to "Vendors on behalf of the Debtor" for what appear to be antecedent debts.  *Id.*

9.      On January 21, 2024, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code because of the anticipated money judgement in the SEC Enforcement Action and Debtor's likely inability to post a supersedeas bond for an appeal of such judgement.  Amani Decl., ¶ 14.

### D.  The Litigation Claim Motion Lacks Transparency and Seeks to Use Estate Assets to Benefit Insiders at the Expense of Its Largest Creditor

10.     The Litigation Claim Motion seeks permission to pay: (1) legal fees and expenses for multiple unnamed individuals affiliated with the Debtor ("**Employee Counsel fees and expenses**"); (2) fees and expenses to multiple unnamed "critical vendors" for services related to the SEC Enforcement Action and a Department of Justice investigation; and (3) payments to foreign courts resulting from third party discovery undertaken by the Debtor in those jurisdictions.  Litig. Cl. Mot., at 4-5.

11.     The motion includes monthly caps, but no overall spending cap.  It proposes to pay up to $3,488,754.31 to Employee Counsel over the next three months, *id.*, at 6, via a procedure that lacks court oversight, instead authorizing disbursements upon presentation of

---

[2] Kwon's current counsel received $5.3 million from Dentons in the 90 days before bankruptcy. [Docket No. 60-6.]

invoices and approval of the Debtor's board in consultation with an internal committee. *Id.*, at 18-19. The Debtor can extend coverage of legal fees to other employees or contractors via a similar process: board approval in consultation with an internal committee. *Id.* Additionally, the motion seeks reimbursement for amounts owed prepetition. *Id.*, at 4-5.

### E.  The Debtor Has Not Shown That It Is Obligated to Advance Litigation Costs

12.     The Debtor contends that three documents require it to advance the litigation costs of current and former personnel: the Debtor's Constitution, the individual employment agreements, and the Deel Master Services Agreement (the "**Deel MSA**"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of Roger Landsman ("**Landsman Decl.**"). Litig. Cl. Mot., at 9-11.  But the Debtor fails to support this contention as to all three documents. First, the Debtor, cites no provision of the Debtor Constitution, nor any Singapore law, permitting—much less requiring—the advancement, rather than indemnity, of litigation costs.[3] *Id.*  Second, the cited employment contract obliges ***only*** non-debtor Deel, a third-party staffing company, to advance costs.  *See id.* at 10-11 ("[Deel] shall advance all expenses, including reasonable attorney's fees and costs . . .").  Third, the Deel MSA provides for the indemnity of litigation costs, but ***not*** for the advancement of such costs.[4] The Deel MSA also obliges Deel to

---

[3] The Debtor Constitution provides:

> Subject to the provisions of and so far as may be permitted by the Act, every Director, manager, Secretary and other officer or servant of the Company shall be indemnified by the Company against, and it shall be the duty of the Directors out of the funds of the Company to pay, all costs, losses and expenses which any such officer or servant may incur or become liable to incur by reason of any contract entered into or act or deed done by him as such officer or servant or in any way in the discharge of his duties, including reasonable hotel, travelling and other expenses.

Litig. Cl. Mot., at 9.

[4] The relevant provision provides, in pertinent part, "Customer Indemnification. Customer will indemnify, defend and hold harmless Deel Group, its affiliates, officers, directors, employees, agents and other representatives (collectively, "Deel Indemnitee") from and against any judgments, losses, damages, liabilities, costs or expenses (including but limited to, attorneys' fees and legal expenses) Deel Indemnitee may suffer or incur in connection with any actual or threatened claim, demand, action or other proceeding by any third party arising from or relating to . . . (d) expenses and costs incurred by Deel Group arising from the indemnification provision inserted at Customer's request in the employment agreements with Consultants engaged for Customer." Nowhere does the Debtor state that

indemnify the Debtor for losses, including attorneys' fees resulting from the breach of the Deel MSA or from any misrepresentation, negligence or willful misconduct by Deel in connection with the services rendered.  Deel MSA, ¶ 8.4.  In other words, it may be that Deel, in fact, is indebted to the Debtor in connection with the conduct of Deel's employees.  California law governs the Deel MSA; governing law for the employment agreements varies.

13.    The Debtor has failed to specify which employee is covered by which agreement—or under which jurisdiction's laws.  The Debtor represents that it has 45 full-time employees and approximately 15 independent contractors, and an undisclosed number of former employees for whom Debtor also proposes to pay litigation costs.

## DISCUSSION

### A.  The Debtor Has Not Shown That It Is Obliged to Advance Litigation Costs

14.    The Debtor has not demonstrated an obligation to advance litigation costs.  The contractual right to an advancement of expenses is separate and distinct from the right to indemnification.  *In re RNI Wind Down Corp.*, 369 B.R. 174, 185 (Bankr. D. Del. 2007).  "While a determination as to whether a corporate officer is entitled to ***indemnification*** must await the outcome of the underlying controversy, "'[a]dvancement, by contrast, is a ***right*** whereby a potential indemnitee has the ability to force the company to pay his litigation expenses as they are incurred regardless of whether he will ultimately be entitled to indemnification.'" *Id.*, *quoting Majkowski v. Am. Imaging Mgmt. Svcs.*, LLC, 913 A.2d 572, 586 (Del. Ch. 2006) (emphasis in original).  Here, the very terms of the cited agreements show there is no such contractual right.

15.    The Debtor's Constitution contains no provision requiring the advancement of costs, just indemnification.  Nor is it clear that the "employees," who appear to be independent

---

Deel made any request for payment of attorneys' fees or other litigation costs, nor has it mentioned if Deel has its own insurance coverage as contemplated under paragraph 6.4 of the Deel MSA.

contractors, fall within the limited class of the Debtor's Constitution's indemnity beneficiaries:

"Director, manager, Secretary and other officer or servant." Similarly, the individual

employment agreements only obligate Deel, the third-party staffing company—not the *Debtor*—

to advance litigation costs. The Debtor has cited no provision, in the Deel MSA or elsewhere,

that obligates the **Debtor** to advance expenses to Deel.[5] At best, Deel may have a contractual

claim against the Debtor for reimbursement based on the Deel MSA's indemnification provision,

but the Debtor has provided no explanation—other than its Section 503(b) argument which is

addressed below—for why that unsecured claim should take priority over other claims.

### B. The Litigation Claim Motion Improperly Seeks to Elevate Insider Claims Over Other Creditor Claims

#### 1. *Section 503(b) Does Not Authorize the Payment of Counsel Fees*

16.     Were there an obligation to advance costs, that obligation would not be entitled to

administrative priority. Indemnification or advancement are compensation claims. *See*

*Christian Life Center Litig. Defense Comm. v. Silva (In re Christian Life Center)*, 821 F.2d 1370,

1373-74 (9th Cir. 1987) ("A corporation's duty to indemnify its officer, whether conferred by

statute or by contract, is a form of compensation for the officer's services.") (citing *In re*

*Baldwin-United Corp.*, 43 B.R. 443, 454-56 (S.D. Ohio 1984)); *Andrikopoulos v. Silicon Valley*

*Innovation Co., LLC*, 120 A.3d 19, 26 (Del. Ch. 2015) ("Advancement obligations are

contractual in nature . . . In that respect, they are no different from other creditors' claims."). To

establish an administrative claim, a claimant must show that "(1) there was a post-petition

---

[5] Under California law, an indemnitor who has contracted to indemnify a party for losses, including attorneys' fees, only becomes liable for such losses upon proof that the indemnity has suffered a loss and paid the debt. Cal. Civ. Code § 2778; *Alberts v. American Casualty Co.*, 88 Cal. App. 2d 891, 899 (Cal. App. 1948). Section 2778(4) does provide that the indemnitor "is bound, **on request of the person indemnified**, to defend actions or proceedings ***brought against the latter*** . . .", but the indemnitee in the Deel MSA is Deel, which is not a defendant in any action. Even if that was not the case, the Debtor has proffered no evidence that any such request was made.

transaction between the claimant and the estate; and (2) those expenses yielded a benefit to the estate." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021); *see also In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999).

17.    The Debtor has established neither element.  First, the claims are based on prepetition activities—the activities at issue in the SEC Enforcement Action—and therefore "are merely claims for prepetition compensation for services rendered, not unlike salary or other benefits." *In re Mid-American Waste Sys.*, 228 B.R. 816, 821-22 (Bankr. D. Del. 1999); *see also Christian Life, 821 F.2d* at 1373 (indemnity/contribution claims not administrative expenses when based on prepetition services and conduct); *In re Summit Metals, Inc.*, 379 B.R. 40, 56 (Bankr. D. Del. 2007), *aff'd*, 406 F. App'x 634 (3d Cir. 2011) (an indemnification claim based on a prepetition contract is "a form of prepetition compensation for services that is not entitled to administrative expense priority");  *In re Philadelphia Mortgage Trust,* 117 B.R. 820, 828 (Bankr. E.D. Pa. 1990) (indemnification claims for prepetition actions are consistently denied administrative status); *In re Consolidated Oil & Gas, Inc.*, 110 B.R. 535, 537 (Bankr. D. Col. 1990) (indemnification claims denied administrative priority because they were based on prepetition conduct).

18.    Regarding the second element, unlike expenses used to fund ongoing business operations, the proposed litigation expenses here do not benefit the estate—to the contrary, they would affirmatively harm it.  "A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of the creditors."  *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243 (3d Cir. 2000) (citations omitted).  This motion would permit the Debtor to transfer vast amounts of estate assets away from creditors, including the

SEC, and to third parties for the benefit of Terraform insiders.

19.    Additionally, the contingent reimbursement claims of Kwon and potentially others, for which we do not have sufficient information, should be disallowed under Section 501(e)(1)(B) because the Debtor may conceivably be co-liable on those claims. *See In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 109-10 (Bankr. D. Del. 2008).

### 2.  *Section 363(c) Does Not Authorize the Payment of Counsel Fees*

20.    Section 363(c) authorizes the Debtor, in certain circumstances, to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing."  11 U.S.C. § 363(c)(1).  "The purpose behind 11 U.S.C. § 363 is to allow businesses to continue their daily operations without incurring the burden of obtaining court approval or notifying creditors for minor transactions . . . ." *In re Dant & Russell, Inc.*, 67 B.R.. 360, 363 (D. Or. 1986), *aff'd in part and rev'd in part*, 853 F.2d 700 (9th Cir. 1988).

21.    The reimbursement claims here are anything but minor or ordinary.  They do not relate to the "ordinary course of business" because they arise from prepetition conduct and contractual obligations.  *See In re Christian Life Center*, 821 F.2d at 1374 (indemnification expenses are prepetition claims if the activities to which they relate are prepetition, even if the litigation expenses accrue postpetition); *In re New York Trap Rock Corp.*, 137 B.R. 568, 573 (Bankr. S.D.N.Y. 1992) (same).  Paying them outside of a confirmed Chapter 11 plan is therefore outside the "ordinary course of business."  *See, e.g.*, *In re Berry Good, LLC*, 400 B.R. 741, 745-46 (Bankr. D. Ariz. 2008) ("Although the debtor . . . may use property of the estate in the ordinary course of business, it does not have the right to pay prepetition claims") (quoting Hon. Joan N. Feeney, *Bankruptcy Law Manual* § 11A:25 (Thomson/West 2008)); *In re Metro.*

*Cosm. & Reconstructive Surgical Clinic, P.A.*, 115 B.R. 185, 189 (Bankr. D. Minn. 1990) ("Post-petition payment of prepetition debt is not authorized by § 363(c)(1)").

22.    The litigation cost claims also do not arise from transactions that qualify as "in the ordinary course of business."  Courts apply this provision using a two-part test: the horizontal test (compared to other industry participants) and the vertical test (assessed from a hypothetical creditor's expectations).  *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992).  The Debtor fails the horizontal test because it purportedly is in the software business and not in the business of hiring defense counsel for its employees (or those of its staffing company).  *See*, *e.g.*, *In re United States Machine Tools, Inc.*, 38 B.R. 984, (D. Conn. 1983) (concluding that a tool manufacturer was not in the business of satisfying liens).

23.    Under the vertical test, "the size, nature and type of the business, and the size and nature of the transactions in question are relevant to determine whether the transactions are ordinary."  *United States ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592, 598 (M.D. Tenn. 1990); *see also In re Waterfront Cos.*, 56 B.R. 31, 35 (Bankr. D. Minn. 1985) (assuming an indemnification "is simply not the type of transaction which creditors expect a debtor will enter into without notice to creditors and other interested parties.").  This motion, in conjunction with the motion to retain Dentons, seeks to commit tens of millions of dollars to defense costs, potentially without providing creditors with transparency into how, when and why much of the money is spent.  That, by any measure, is extraordinary.

**3.    *Sections 105(a) and 363(b) Do Not Authorize the Payment of Counsel Fees and Litigation Vendor Claims Under the Circumstances of This Case***

24.    For a court to approve an application under Section 363(b), it must "expressly find from the evidence presented before [it] at the hearing a good business reason to grant such an application." *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Dura*

*Auto. Sys.*, No. 06-11202, 2007 Bankr. LEXIS 2764, at *258 (Bankr. D. Del. Aug. 15, 2007)

(bankruptcy courts authorize sales of debtor assets if such sale is "based upon the sound business

judgment of the debtor").  However, "[t]he court does not merely rubber stamp a debtor's

decision."  *In re BSA*, No. 20-10343, 2023 Bankr. LEXIS 2890, at *10 (Bankr. D. Del. Dec. 5,

2023).  The Debtor bears the burden of proof to demonstrate that the standard is satisfied.  *See,

e.g.*, *In re Diocese of Camden*, 653 B.R. 722, 735 (Bankr. D.N.J. Aug. 29, 2023).  The Debtor

has failed to carry that burden for a number of reasons.

> a.  *The Debtor Cannot Delegate Its Business Judgment to Its Trial Counsel, and
> the Debtor Fails to Provide Other Information Sufficient to Establish Its
> Exercise of Business Judgment*

25.    As a threshold matter, the Debtor has proffered insufficient evidence supporting

its claim of the exercise of business judgment.  Its only evidence is a declaration from Mark G.

Califano, a partner at Dentons, which established the Debtor's highly unusual payment system

and Dentons' receipt of approximately $122M in transfers within 90 days of the Petition Date.

*See* Declaration of Mark G. Califano [Docket No. 61-4] (the "**Califano Decl.**").  His justification

for retaining the Employee Counsel is brief and conclusory: "[i]t is critical that the Employees

are represented by competent counsel, which will further ensure the Debtor has an adequate

defense in connection with the SEC Enforcement Action." *Id*., ¶ 12. Nowhere does he state

when, how, and by whom any specific judgment was made, let alone the rationale used in

exercising that judgment.  Nor does he state whether any of the parties benefiting from this

motion recused themselves from the decision-making.

> b.  *The Debtor Cannot Use Section 363(b) to Pay Litigation Costs*

26.    Section 363(b) is not routinely used to hire counsel and other professionals to

defend litigation or investigations unconnected to the bankruptcy case.  When Section 363(b) has

been used in lieu of Section 327 to hire professionals, those professionals are generally retained

to assist with the administration of the chapter 11 case.  *See, e.g.*, *In re Nine W. Holdings, Inc.*, 588 B.R. 678, 687 (Bankr. S.D.N.Y. 2018) (noting approvingly the use of Section 363(b) in hiring professionals to serve as interim CEO, CFO, COO, and VP of Finance, and to provide additional personnel to assist such officers).  This usage gave rise to the so-called Jay Alix Protocol, which requires the implementation of certain safeguards that are wholly lacking here, such as the requirement to file monthly staffing reports subject to court review and to have such professionals be approved by and act under the direction of "an independent board of directors." *Id.* at 688.

27.    The *Enron* case cited by the Debtor highlights the extraordinary nature of this motion.  *See Official Comm. Of Unsecured Creditors of Enron Corp. v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22 (S.D.N.Y. 2005).  In that case, the district court noted the "unique" and "unprecedented" circumstances attendant to the Debtors' attempt to retain a single firm to represent 105 individuals in connection with the ongoing governmental investigations.  *Id.* at 30-32.  Here, the Debtor proposes to hire several firms and litigation vendors, at enormous expense, not primarily to help facilitate resolution of investigations but mostly to defend the SEC Enforcement Action.  *Cf. id.*.

28.    The cases the Debtor cites as precedent are inapposite, and in many cases support denying the motion as proposed.  In *RNI*, the post-confirmation plan administrator sought to disallow a timely-filed proof of claim filed by a former officer for reimbursement of attorneys' fees.  *RNI*, 369 B.R. at 179.  Among other things, the court concluded that the plan administrator failed to offer evidence proving that the former officer's attorneys' fees which had already accrued were contingent.  *Id.* at 187.  Some of the cases cited provide safeguards that are completely absent here.  *See In re Celsius LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Sept. 21,

2023) [Docket No. 3515] (providing, *inter alia*, that the debtors **and** the committee shall determine which employees to reimburse; requiring eligible employees to execute a reimbursement agreement which in form and substance was acceptable to the committee; providing relevant information about the professional's retention to the committee and the U.S. Trustee; providing the committee with joint power of approval of any reimbursements; and establishing a period within which the U.S. Trustee could object to any reimbursements); *In re Lehman Brothers Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 3, 2008) [Docket No. 2052] (requiring a written undertaking of repayment and the ability of the committee to review and challenge expenses for reasonableness).  Other cases either do not address indemnification and litigation costs or provide no rationale for the advancement of costs.  *See In re Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Oct. 16, 2019) [Docket No. 309]; *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB) (Bankr. S.D.N.Y. May 31, 2012) [Docket No. 187].

> c.   *The Debtor's Justifications for Paying Its Founder's Personal Criminal Counsel Do Not Clear the Applicable "Heightened Scrutiny" Standard*

29.    A Montenegrin court previously ordered Kwon detained and sentenced in connection with his use of "forged official documents."[6]  The Debtor, through Dentons, has since paid Kwon's criminal defense counsel, Law Office Rodic, $1,121,875.98 in the months leading up to the bankruptcy, [Docket No. 60-6 at 5, 8, 11], and now seeks to continue those payments at a rate of $244,296 per month.  The court should deny this extraordinary request.

---

[6] Reuters, Montenegro court scraps bail for crypto entrepreneur Do Kwon, (May 24, 2023, 1:50 p.m. EDT), https://www.reuters.com/world/europe/montenegro-court-scraps-bail-crypto-entrepreneur-do-kwon-2023-05-24/; *see also* Verdict, Basic Court in Podgorica and a certified translation of that verdict, true and correct copies of which are attached as Exhibits 2 and 3, respectively, to the Landsman Decl.

30.     The Debtor has no obligation to pay Kwon's Montenegrin criminal counsel. Applicable law excludes from indemnification employees whose "conduct resulted in a criminal conviction," as Kwon's has.  *See* Litig. Cl. Mot. at 9. Nor could Kwon's act of attempting travel on a forged passport plausibly fall within scope of "the discharge of his duties," a prerequisite for the indemnification right to attach. *Id.*  Further, when transactions benefit an insider, 11 U.S.C. § 101(31), courts require such transactions to "withstand heightened scrutiny before they can be approved under § 363(b)."  *Enron*, 335 B.R. at 28.

31.     The Debtor's proffered justification falls short of this high standard.  It makes no claim that defending Kwon on the merits of his criminal charge would benefit the estate. Instead, it focuses narrowly on Rodic's role as an "intermediary" who "assisted with communications between the Debtor's counsel and Mr. Kwon." Litig. Cl. Mot. at 17. That does not justify the Debtor paying the entirety of Kwon's legal bills, and the Debtor offers no explanation as to why separate counsel could not be hired at lower cost to carry out that modest role.  On February 21, 2024, Singapore's High Court ruled that Kwon should be extradited to the United States, but Kwon's appeal of that ruling has delayed his extradition.  *See* SEC Enforcement Action, No. 23-cv-01346 [Docket No. 179].  Extradition would moot the stated need for paying Rodic.

***

WHEREFORE, the U.S. Securities and Exchange Commission requests entry of an Order denying the Motion unless:

- The Debtor provides a detailed list of proposed payments which set forth when the services were incurred and what they relate to;
- The expenses are subject to independent review for reasonableness, such as by a review of independent directors;
- The Debtor demonstrates that the Debtor is obligated to fund each category of costs;
- The Debtor declines to pay fees that are not reimbursable, such as criminal fees for Kwon's passport fraud case, and

- Prepetition and post-petition costs and expenses of counsel and vendors are subject to court approval and review by a fee examiner.

Dated: February 27, 2024   UNITED STATES SECURITIES AND
             EXCHANGE COMMISSION


             */s/ William M. Uptegrove*
             William M. Uptegrove
             NY Bar No. 4846622; NJ Bar No. 031602003
             950 East Paces Ferry Road, Suite 900
             Atlanta, Georgia 30326-1382
             Tel: (404) 842-5765
             Email: uptegrovew@sec.gov

             -and-

             Therese A. Scheuer
             DE Bar No. 5699
             100 F. Street, NE
             Washington, DC 20549
             Phone: (202) 551-6029
             Fax: (202) 772-9317
             Email:  scheuert@sec.gov


Of Counsel: Alistaire Bambach
      Michael Kelly

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Objection was served this 27th day of February, 2024 upon all parties receiving notices through the Administrative Procedures of the CM/ECF System for the Bankruptcy Court for the District of Delaware.

_/s/ William M. Uptegrove_