## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| TERRAFORM LABS PTE. LTD.,[1] | : | Case No. 24-10070 (BLS) |
| Debtor. | : | **Re: D.I. 60** |
| | : | **Hearing Date: March 5, 2024 at 10:30 a.m. (ET)**<br>**Obj. Ddl.: February 29, 2024 at 4:00 p.m. (ET)**<br>**(extended by agreement for U.S. Trustee)** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE APPLICATION OF
DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF DENTONS US LLP AS SPECIAL COUNSEL TO THE DEBTOR
AND DEBTOR IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE**

In support of his objection to the *Application of Debtor for Entry of an Order Authorizing the Retention and Employment of Dentons US LLP as Special Counsel to the Debtor and Debtor in Possession, Effective as of the Petition Date* [D.I. 60] (the "<u>Application</u>"), Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("<u>U.S. Trustee</u>"), by and through his undersigned counsel, states:

### PRELIMINARY STATEMENT

1.    The U.S. Trustee objects to approval of the Application. First, the proposed scope of Dentons US LLP's ("<u>Dentons US</u>") employment exceeds the scope permitted under section 327(e) ("<u>Section 327(e)</u>") of title 11, United States Code (the "<u>Bankruptcy Code</u>"). Second, the Debtor has not met the standard of section 327(a) ("<u>Section 327(a)</u>") of the Bankruptcy Code to employ the firm, due to (i) Dentons US's concurrent representation of the Debtor and Luna

---

[1] The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

Foundation Guard Ltd. ("LFG") in connection with a criminal grand jury investigation and (ii) the lack of detailed information regarding the firm's potential preference exposure.  Third, there is insufficient information to determine if Dentons US may be retained as special counsel pursuant to Section 327(e).  In particular, the engagement agreement(s) between the Debtor and Dentons US has not been provided to the Court.  As set forth below, complete disclosure of the engagement agreement, as well as all connections of Dentons US and its member firms, is required to determine if the firm's retention "is in the best interest of the estate[s]" as required by Section 327(e), or if the firm has a disqualifying conflict of interest with respect to the matters upon which the Debtor proposes to retain the firm.  Fourth, the request to permit Dentons US to maintain a prepetition retainer of approximately $80 million is objectionable, as it is not a reasonable term or condition of employment.

## JURISDICTION AND STANDING

2.      This Court has jurisdiction to hear the Application and this Objection.

3.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4.      Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to this Objection.

## **BACKGROUND**

5.      On January 21, 2024 (the "Petition Date"), Terraform Labs Pte. Ltd. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

6.      On February 29, 2024, the U.S. Trustee appointed a statutory committee of unsecured creditors (the "Committee") in this case.

**The Application**

7.      On February 13, 2024, the Debtor filed the Application, seeking authority to retain Dentons US as Section 327(e) special counsel on the terms and conditions of an Engagement Letter dated November 27, 2023 (the "Engagement Letter").  Appl. ¶ 3.   A copy of the Engagement Letter was not attached to the Application.

8.      The Debtor seeks authority to retain Dentons US as Section 327(e) special counsel to "represent the Debtor in litigation and investigations in multiple fora," effective as of the Petition Date.  Appl. ¶ 6.   The Declaration of Mark G. Califano in support of the Application is attached to the Application as Exhibit B (the "Califano Declaration").

9.      The Debtor seeks to retain Dentons US as counsel in the following matters: (i) an enforcement action, entitled *SEC v. Terraform Labs Pte Ltd, et al*., Case No. 1:23-cv-01346-JSR (S.D.N.Y), naming the Debtor and its co-founder Kwon Do Hyeong (the "SEC Enforcement Action"), (ii) ongoing grand jury, criminal and regulatory investigations, and prosecutions of former Debtor employees and others in the U.S. and other jurisdictions, and (iii) the matter entitled *Julian Moreno Beltran, et al., v. Terraform Labs Pte Ltd, et al*., currently pending in the High Court of the Republic of Singapore (the "Beltran Action").   Appl. ¶ 6.

10.     In addition to the representing the Debtor in the litigation matters, the Application

identifies three other categories of tasks for which the Debtor seeks to retain Dentons US:

(a) Manage and support the Debtor's Litigations;

(b) Provide necessary background knowledge of and information regarding the Debtor's structure and operations to the Debtor's bankruptcy counsel, as necessary;

(c) Provide advice regarding matters related to product counseling, privacy and cybersecurity counseling, and employment law; and

(d) Perform such other legal services in connection with this chapter 11 case as may be reasonably required and consistent with Dentons US's role as special counsel.

Appl. ¶ 11.

11.     The Califano Declaration discloses that Dentons US is a member of the US

Region of Dentons Group (a Swiss Verein) ("Dentons") and that Dentons US and other members

of Dentons ("Member Firms") may provide services postpetition and also provided services

prepetition.  Califano Decl. ¶¶ 1, 6.

12.     The Califano Declaration further discloses that "pursuant to the terms of the

Engagement Letter, Dentons US: (a) involves other lawyers and professionals from its Member

Firms to assist, as necessary, in providing legal advice and representation to the Debtor *and its

present and former employees*; and (b) *retains other law firms and third-party vendors*

(collectively, the "Vendors", and together with Member Firms, the "Contractors") on behalf of

the Debtor." (emphasis added).  Califano Decl. ¶ 16.

13.     The Califano Declaration discloses numerous connections between Dentons, the

Debtor and other parties in interest, including:

- Pre-petition, Dentons represented the Debtor and Mr. Kwon in the SEC Enforcement

    Action.  Dentons has withdrawn from representing Mr. Kwon in the SEC

    Enforcement Action.  Califano Decl. ¶ 32.

4

- Pre-petition, Dentons represented the Debtor, Mr. Kwon and LFG in the Beltran Action.  Dentons is in the process of withdrawing from representing Mr. Kwon and LFG in the Beltran Action.  *Id*.

- Dentons represented the Debtor, LFG and Mr. Kwon in a grand jury investigation. Dentons will continue to represent the Debtor and LFG in the grand jury investigation.  *Id.*

- Prepetition, the Debtor made numerous cryptocurrency transfers to the Debtor which upon receipt were converted to fiat currency (USD) and held in a Dentons US savings account as an advance payment retainer (the "Advance Payment Retainer").  Califano Decl. ¶ 18.

- Dentons subsequently made payments from the Advance Payment Retainer for legal fees and costs expended by Dentons US on behalf of the Debtor.  *Id*.

- As of February 13, 2024, the balance in the Advance Payment Retainer totaled $80,608,842.44.  Califano Decl. ¶ 20.

- Within one year prior to the Petition Date, Dentons US received $165,996,818.87 (total cash including retainers); Dentons US billed $86,143,605.29 in connection with prepetition fees and costs for representation of the Debtor (the "Prepetition Invoices"). On account of the Prepetition Invoices, Dentons US made the following payments:  $37,817,271.62 to Dentons US; $989,320.03 to Member Firms; and $47,337,013.64 to Vendors on behalf of the Debtor.  Califano Decl. ¶ 21.

- Within 90 days prior to the Petition Date, Dentons US received $121,973,086.03 (total cash including retainers); Dentons US billed $43,153,676.68 in connection the Prepetition Invoices.  On account of the Prepetition Invoices, Dentons US made the

following payments:  $11,204,224.00 to Dentons US; $306,030.99 to Member Firms; and $31,643,421.69 to Vendors on behalf of the Debtor.  *Id.*

- The Vendors paid by Dentons on behalf of the Debtor include, among others, payments to fund retainers and/or payments to Debtor's bankruptcy counsel, Weil Gotshal & Manges LLP and Richards Layton & Finger LLP, as well as the Law Office of Goran Rodic.  Appl. Ex. E.

- Pursuant to the proposed order attached to the Application, Dentons seeks authority to use the Advance Payment Retainer to pay the outstanding pre-petition invoices and, going forward, to pay the post-petition invoices of the Vendors.

## ARGUMENT

### A.  The Scope of Dentons US's Proposed Retention Exceeds the Scope Permitted Under Section 327(e).

14.    The scope of Dentons US's proposed retention exceeds the scope permitted under Section 327(e).  First, the SEC Enforcement Action may only be fairly characterized as "bet the company"-type litigation; the Debtor acknowledges that the potential impact of an adverse ruling in the SEC Enforcement Action may be significant for its estate.  In a similar circumstance – where a debtor was engaged in litigation which represented a key feature or part of its bankruptcy case – the United States Bankruptcy Court for the Southern District of Georgia held that counsel representing the debtor's interests in connection with same must be employed under Section 327(a).  *See In re First Am. Health Care of Ga., Inc.*, No. 96-20188, 1996 WL 33404562 at *3-6 (Bankr. S.D. Ga. Apr. 18, 1996) (proposed counsel's role in yet-to-be-filed litigation, "the outcome of which will dictate the manner in which Debtors' bankruptcy counsel can conduct

the case and determine in large measure the success of this Chapter 11 case," could not be

approved under section 327(e)).

**B.   The Debtor Has Not Met the Standard to Employ Dentons US Under Section 327(a).**

15.    Section 327(a) states:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

16.    Courts have defined the "interest adverse" language in Section 327(a) as follows:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or

(2) to possess a predisposition under circumstances that render such a bias against the estate.

*See I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir.

2005) (citations omitted); *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005).

17.    Section 327(c) of the Bankruptcy Code provides:

In a case under chapter 7, 12, or 11 of this title, a person is not disqualified from employment under this section solely because of such person's employment by or representation of a creditor, unless there is [an] objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

18.    The United States Court of Appeals for the Third Circuit has neatly reduced

conflicts analysis for attorneys proposed to be retained under Section 327(a) to a basic set of

principles:  actual conflicts of interest require disqualification; potential conflicts of interest may

be disqualifying in the exercise of the Court's discretion; and the mere appearance of conflict,

without more, is insufficient to disqualify counsel.  *See In re Marvel Entm't Grp., Inc.*, 140 F.3d

463, 476 (3d Cir. 1998).

19.     The term "disinterested person" is defined in part as a person who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."  11 U.S.C. § 101(14)(C). This provision, better known as the "catch-all" provision, "has been held broad enough to include anyone who 'in the slightest degree might have some interest or relationship that might faintly color the independence and impartial attitude required [of estate professionals] by the Code and the Bankruptcy Rules.'" *In re BH & P, Inc.*, 949 F.2d 1300, 1309 (3d Cir. 1991) (internal citations omitted).

20.     The Third Circuit has previously held that counsel which has received preferential transfers is not a "disinterested person."  *See In re Pillowtex, Inc.*, 304 F.3d 246, 255 (3d Cir. 2002) ("We hold that when there has been a facially plausible claim of a substantial preference, the district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the mere expedient of approving retention conditional on a later determination of the preference issue"); *see also United States Trustee v. First Jersey Secs., Inc. (In re First Jersey Secs., Inc.)*, 180 F.3d 504 (3d Cir. 1999).  Dentons US stated that it received approximately $121 million in transfers from the Debtor during 90-day period prior to the Petition Date, and the firm also stated that it was paid approximately $11.2 million from the received funds.  Accordingly, if Dentons US's employment is considered under Section 327(a), the Debtor bears the burden to establish that there is not a "facially plausible claim of a substantial preference" in Dentons US's favor. The Application does not contain sufficiently-detailed information to enable parties in interest to evaluate the Debtor's position with respect to Dentons US's potential preference exposure.

21.     Further, counsel proposed to represent the estate under Section 327(a) must not "hold" or "represent" an interest adverse to the estate.  While Dentons US appears to think that

withdrawing from certain of its representations of Mr. Kwon and LFG to address potential conflicts is appropriate (e.g., the Beltran Action), the Debtor seeks to have Dentons US represent its estate while the firm continues to represent LFG in connection with the grand jury investigation. At this early stage in the case, it is unclear what estate claims, if any, the Debtor's estate holds against Mr. Kwon and LFG. What is clear is that the proposal to have Dentons US concurrently represent the Debtor and LFG post-petition in connection with the grand jury investigation would constitute representation of a potential "adverse interest" under Section 327(a).

22.     Second, in addition to the Debtor proposing that Dentons US represent it in the Litigations, the Debtor seeks to have Dentons US "manage and support the Litigations," among other items. This description of Dentons' proposed services appears to refer to Dentons US's selection and retention of the counsel and vendors identified on Schedule 1 to the proposed order appended to the Application, as well as Dentons US's payment of the invoices of such parties from funds transferred to Dentons US by the Debtor pre-petition. Pre-petition, Dentons US acted as the Debtor's payment agent for the Litigations, through the receipt of over $165 million in the year prior to the Petition Date, and directly funded retainers for bankruptcy and other counsel. It is unclear if Dentons US is required to seek the Debtor's approval of the Contractor invoices prior to incurring and/or paying same, or if incurrence and/or payment of the invoices is subject to Dentons US's sole approval.

23.     Dentons US's service as payment agent and its involvement in managing Litigations rises to the level of "conducting the case," which is outside the scope of Section 327(e) counsel. Because Dentons US's services appear to encompass much of the conduct of

this case, the Application exceeds the purview of Section 327(e).  If Dentons US wishes to

perform such services, then the firm must be retained under Section 327(a).

**C.  The Application Contains Insufficient Information to Determine Whether Dentons US May be Employed Pursuant to Section 327(e) of the Bankruptcy Code.**

24.    Section 327(e) of the Bankruptcy Code provides that a trustee, or debtor in

possession, "with the court's approval, may employ, for a specified special purpose*, other than

to represent the trustee in conducting the case*, an attorney that has represented the debtor, *if in

the best interest of the estate*, and *if such attorney does not represent or hold any interest adverse

to the debtor or to the estate with respect to the matter on which such attorney is to be

employed.*"  11 U.S.C. § 327(e) (emphasis added).

25.    An attorney may represent a debtor pursuant to Section 327(e) if: (1) the attorney

already represented the debtor; (2) the Court approves the attorney's engagement for a specific

purpose other than to represent the debtor in conducting the case; (3) appointment of the attorney

is in the best interests of the estate; and (4) the attorney does not hold or represent an interest

adverse to the debtor or the estate.  *See In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 406

(D. Del. 2005); *see also Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847-48 (D.

Del. 1996).

26.    The "specified special purpose" for which counsel may be retained under Section

327(e) must be described explicitly in the application and "must be unrelated to the

reorganization[.]" *In re Congoleum Corp.*, 426 F.3d 675, 689 (3d Cir. 2005); *see also In re

Running Horse, L.L.C.,* 371 B.R. 446, 451 (Bankr. E.D. Cal. 2007).

27.    When analyzing a retention application under Section 327(e), "the court should

consider all relevant facts surrounding the debtor's case, including but not limited to, the nature

of the debtor's business, all foreseeable employment of special counsel, the history and

10

relationship between the debtor and the proposed special counsel, the expense of replacement counsel, potential conflicts of interest and the role of general counsel." *In re Woodworkers Warehouse, Inc.*, 323 B.R. at 406.

28.     In the context of Section 327(a), "[a] Court may consider an interest adverse to the estate when counsel has 'a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant.'" *In re First Jersey Secs., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (quoting *In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996)).  Whether an attorney to be retained under Section 327(e) holds an adverse interest "must be made on a case by case basis considering the totality of the circumstances." *In re Residential Cap., LLC*, 2012 WL 3308408 at *4 (Bankr. S.D.N.Y. 2012).

29.     In order to determine if Dentons US's retention "is in the best interest of the estate[s]" and that Dentons US does not have a disqualifying conflict as required by Section 327(e), further disclosure is needed with respect several areas.  The Debtor's request to retain Dentons includes, among other things, the request for approval pursuant to the terms and conditions set forth in the Engagement Letter and the Application.   The Application also contains several references to the Terms of Business attached to the Engagement Letter.  Appl. ¶ 12 ; Califano Decl. ¶¶ 6, 7.  However, the Debtor did not attach a copy of the Engagement Letter to the Application.  The Engagement Letter, including the Terms of Business attachment, must be filed with the Court and made available for all parties in interest to review.  Full disclosure will enable parties to determine whether it contains any objectionable provisions.

30.     Further disclosure is required with respect to Dentons US's representation of current and former employees, if any.  Califano Decl. ¶ 16.  In addition, further disclosure is needed as to the nature of the connections listed on Schedule 1 attached to the proposed order

and whether it includes disclosure of connections of Dentons Member Firms.  Finally, Dentons

US must provide an update regarding the status of its planned withdrawal as counsel to Mr.

Kwon in the Beltran Action.

**D.  The Debtor Has Not Shown That Maintenance of an $80 Million Retainer Is Reasonable.**

31.     As of February 13, 2024, the balance of the Dentons US Advance Payment

Retainer was $80,608,842.44.  Califano Decl. ¶ 20.  The Debtor has not established that

maintenance of an $80 million Advance Payment Retainer by Dentons for the payment of its

fees, as well as other law firms and vendors listed on Schedule 1 to proposed order, is a

reasonable term or condition of employment under Section 328.

32.     Section 328(a) of the Bankruptcy Code provides in part that a debtor may, with

the Court's approval, employ a professional person under Section 327 "on any reasonable terms

and conditions of employment[.]"

33.     The starting point in a reasonableness inquiry is a review of what is common in

the marketplace.  *See In re Insilco Techs., Inc.*, 291 B.R. 628, 633-34 (Bankr. D. Del. 2003)

(citing *In re United Artists Theatre Co.*, 315 F.3d 217, 229 (3d Cir. 2003) ("[S]ome reference to

the market is not out of place when considering whether terms of retention are 'reasonable' in the

bankruptcy context.")).  Reasonableness is market-driven, not market-determined, "especially in

the realm of bankruptcy, where courts play a special supervisory role."  *In re United Artists

Theatre Co.*, 315 F.3d at 230.  Practices common in the marketplace are not automatically

reasonable under Section 328.  *See id.*

34.     The reasonableness inquiry "must be tailored to Bankruptcy Code requirements,

including the particular circumstances of a chapter 11 proceeding, the court's supervisory role

and the interests of the various constituents."  *In re Insilco Techs., Inc.*, 291 B.R. at 634.  Factors

to be considered include whether (1) the terms of the proposed engagement agreement reflect normal business terms in the marketplace; (2) the debtor and the professional are sophisticated business entities with equal bargaining power who negotiated at arms' length; (3) the terms of the retention are in the best interests of the estate; (4) creditors oppose the retention provisions; and (5) *any retainer is reasonable given the size, circumstances and posture of the case.  See id. (emphasis added)*

35.     The party seeking approval of a professional's employment has the burden of establishing that the professional's engagement or compensation agreement is reasonable.  *See In re Hathaway Ranch P'ship*, 116 B.R. 208, 219 (Bankr. C.D. Cal. 1990) (citing *In re C & P Auto Transport, Inc.*, 94 B.R.682, 686 (Bankr. E.D. Cal. 1988)).

36.     The Court "may approve some of the terms and conditions proposed in an employment application while rejecting others."  *In re Federal Mogul-Global, Inc.*, 348 F.3d 390, 398-99 (3d Cir. 2003) (citing *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253 (3d Cir. 1995)).  The Court "must be allowed to review the reasonableness of a proposed hourly fee[.]"  *In re Federal Mogul-Global, Inc.*, 348 F.3d at 400.

37.     The U.S. Trustee understands that because the Debtor did not have a bank account prepetition, as an accommodation to the Debtor, Dentons US agreed to receive transfers of cryptocurrency from the Debtor, which was then converted to cash to pay vendors.  Because the Debtor has now opened a bank account, it does not appear reasonable or necessary for Dentons US to continue to maintain a multi-million dollar retainer for the payment of other law firms (and to presumably charge the Debtor for its services in managing and distributing such payments).

**D.    The Debtor Has Not Established that Dentons May Pay Contractors Directly; Submission of Required Fee Applications Prior to Payment Is Necessary to Determine Reasonableness**

38.    The proposed order attached to the Application seeks authority for Dentons to pay the prepetition and postpetition invoices of the Contractors listed on Schedule 1 to the proposed order from the Advance Payment Retainer.  The Contractors listed on Schedule 1 include Member Firms of Dentons, five other law firms and several litigation-related vendors. The U.S. Trustee objects to this request, as it contrary to the provisions of the Bankruptcy Code.

39.    Section 330(a)(1) of the United States Bankruptcy Code provides that after notice and a hearing, the court may award to a professional person employed under § 327 or § 1103 "reasonable compensation for actual, necessary services rendered" by such a professional person, but subject to the limitations of, *inter alia*, Section 326. 11 U.S.C. § 330(a)(1).

40.    Professional fees may not be awarded unless and until the applicant shows that there is a benefit to the estate. 11 U.S.C. § 330(a)(4)(A)(ii).  In addition, the fees must be reasonable and necessary.  Benefit to the estate and necessity are critical threshold issues before the awarding of any fees or compensation. *Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enterprises)*, 997 F.2d 1321, 1322-23 (10th Cir. 1993) (holding that the disallowance of fees for services which were not necessary or beneficial to the estate should not be considered a penalty but rather a statutory imperative).

41.    The Debtor has cited no authority that would permit Dentons US to pay the prepetition invoices of the Contractors (including several law firms).   With respect to post-petition services, any law firms providing services to the Debtor should be separately retained and paid by the Debtor.  It is not appropriate to simply include the invoices of such firms in the fee application of Dentons US as such firms must be separately employed pursuant to Section

14

327.

42.      Payment of any amounts prior to a required application for compensation and/or reimbursement being filed is not appropriate, and the proposed order should not be approved without clarification that fee applications are required prior to payment of any such fees and expenses.

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Application and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

**By:**    */s/ Jane M. Leamy*
        Linda Richenderfer (#4138)
        Jane M. Leamy (#4113)
        J. Caleb Boggs Federal Building
        844 King Street, Suite 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491
        Linda.Richenderfer@usdoj.gov
        Jane.M.Leamy@usdoj.gov

Dated: February 29, 2024