## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                            :
In re                                       :   Chapter 11
                                            :
TERRAFORM LABS PTE. LTD.                     :   Case No. 24–10070 (BLS)
                                            :
               Debtor.¹                      :   Re: Docket No. 60
                                            :
------------------------------------------------------------ x
```

**OMNIBUS REPLY TO OBJECTIONS OF THE U.S. SECURITIES AND EXCHANGE COMMISSION AND THE UNITED STATES TRUSTEE TO APPLICATION OF DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT  OF DENTONS US LLP AS SPECIAL COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

Terraform Labs Pte. Ltd., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**" or "**TFL**"), respectfully replies to the (i) *Objection of the U.S. Securities and Exchange Commission to Application of Debtor for Entry of an Order Authorizing the Retention and Employment of Dentons US LLP as Special Counsel to the Debtor and Debtor in Possession Effective as of the Petition Date* [Docket No. 86] (the "**SEC Objection**") filed by the United States Securities and Exchange Commission (the "**SEC**"); and (ii) *United States Trustee's Objection to the Application of Debtor for Entry of an Order Authorizing the Retention and Employment of Dentons Us LLP as Special Counsel to the Debtor and Debtor in Possession, Effective as of the Petition Date* [Docket No. 103] (the "**UST Objection**") filed by the United States Trustee (the "**U.S. Trustee**").  In further support of the application [Docket No. 60] (the "**Application**"),[2] the Debtor represents as follows:

---

[1] The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

[2] Any capitalized term not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration or the Application, as applicable.

## I.  **REPLY TO SEC OBJECTION**

A.  **THE COURT SHOULD REJECT THE SEC'S EFFORTS TO LITIGATE ISSUES PENDING BEFORE ANOTHER COURT THAT ARE NOT RELEVANT TO DENTONS US'S EMPLOYMENT.**

1.      After forcing the Debtor into chapter 11 by aggressive tactics that caused the Debtor to be de-banked and de-platformed, the SEC now attempts to use the Application to attack the Debtor and its counsel and to re-hash its alleged version of prepetition facts that are being litigated before the United States District Court for the Southern District of New York (the "**District Court**").[3]   Those issues are not before this Court and are not relevant to the Application or to the Bankruptcy Code standards regarding section 327(e) employment as special litigation counsel, which the Debtor's retention of Dentons US clearly satisfies.

2.      Accordingly, this Court should reject the SEC's transparent attempt to: (i) use the SEC Objection to litigate issues pending before the District Court; (ii) take discovery of trial counsel[4] (Dentons US) defending the Debtor against the SEC's claims in the District Court; and (iii) use the disclosures in the Application as a weapon to undermine the Debtor's ability to defend itself in the District Court.   The SEC is not a "garden variety" contingent creditor in this Case, but the main actor responsible for de-banking the Debtor without ever having sought a freeze order and without due process.

3.      Before addressing the SEC's arguments, some background facts are required for context.   In an attempt to create a false narrative that the Debtor and its majority

---

[3] *SEC v. Terraform Labs Pte. Ltd., et al.,* Case No. 1:23-cv-013460-JSR (S.D.N.Y.) (the "**SEC Enforcement Action**").

[4] This is a critical point:  Discovery of trial counsel is a rare occurrence.  *See generally Hickman v. Taylor*, 329 U.S. 495, 516 (1947) ("Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary.") (Jackson, J., concurring).

shareholder profited from the May 2022 depeg event, the SEC alleged in paragraph 173 of its *Amended Complaint*[5] that the Debtor and its majority shareholder "retain[ed] valuable proceeds from the Terraform ecosystem" by transferring bitcoin to an un-hosted "cold" wallet, and then, on a periodic basis since May 2022, transferring and continuing to transfer Bitcoin from this wallet to a Swiss financial institution. *Amended Complaint*, ¶ 173.  Thereafter, the SEC alleges, the Debtor and its majority shareholder withdrew over $100 million in fiat currency from that Swiss bank.  *Id.*  Because it had received full account statements for the Debtor and its majority shareholder from the Swiss financial institution before filing this case, the SEC knew that these allegations were false when it filed the SEC Enforcement Action.  By way of example, as the SEC knew before it filed the SEC Enforcement Action, the Debtor's majority shareholder never transferred any Bitcoin to his account, and did not transfer any cryptocurrency of any type to his account after March 15, 2022.  *See Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment*, SEC Enforcement Action, Docket No. 101, ¶ 140.  In fact, when pressed to admit that the allegations in paragraph 173 are false, the SEC asserted that it could not admit or deny whether paragraph 173 was false after reasonable inquiry because the Debtor and its majority shareholder did not produce information relating to their accounts with the Swiss financial institution, which was also both a false statement by the SEC and an admission that the SEC lacked any basis to allege paragraph 173 in the *Amended Complaint*.  *Id.*, ¶¶ 140-141.  This is a remarkable set of facts:  Paragraph 173 contains very specific allegations, the SEC's own document production shows that it received full account information from the Swiss financial institution in late 2022, before it filed the SEC Enforcement Action, and yet the SEC asserted that it could not admit or deny the truth of allegations it made subject to Rule 11.

---

[5] Docket No. 25, SEC Enforcement Action.

4.    But the SEC's misstatements worked:  As a result of the them, and even though the Swiss financial institution knew they were false from the records it produced to the SEC, the Swiss financial institution refused to allow further banking by the Debtor, because, in its own words, "[t]he SEC's complaint unfortunately unmistakably was a 'warning shot' fired in our direction – whether for good or not good reason does unfortunately not matter, given the power and public perception of this authority within the banking community."  *See* email correspondence between M. Burgherr and D. Henkin (Mar. 2-3, 2023), attached hereto as **Exhibit A**.  The SEC was fully aware of the impact of its actions within the banking community and yet proceeded without concern about the truth of its allegations or the inevitable impact of its actions.  Its conduct created the situation that compelled the Debtor's acts about which it now complains.  And that is not all:  The SEC's Objection has itself prevented the Debtor from entering into a relationship with a professional cryptocurrency custodian in order to further safeguard its cryptocurrency assets.  This is hardly the behavior of an agency that would like the world to believe it is acting to preserve assets.[6]

---

[6] Nor are the false statements the SEC made here an isolated incident:  In a case pending in the District of Utah, the SEC achieved the entry of an *ex parte* TRO containing a freeze order and appointing a receiver by providing materially false and misleading statements about that defendants' activities with respect to bank accounts, too.  On November 30, 2023, in *SEC v. Digital Licensing Inc. et al.*, No. 23 Civ. 482 (D. Utah Nov. 30, 2023), Chief Judge Robert J. Shelby issued a decision [Docket No. 214] and an *Order to Show Cause* [Docket No. 215], finding that the SEC had made "materially false and misleading misrepresentations" to that court that were so serious that the court dissolved the TRO, the freeze order, and the receivership and ordered the SEC to show cause why it should not be sanctioned.  The SEC's misrepresentations in that case involved, *inter alia*, allegations regarding flows of funds and were made by an SEC attorney who also represents the SEC in *this* SEC Enforcement Action.  In an effort to avoid sanctions in the *Digital Licensing* case, the SEC replaced the entire trial team, assigned attorneys from its Office of General Counsel and a different regional office, and ultimately sought to dismiss the case without prejudice.  *See Plaintiff Securities and Exchange Commission's Surreply to the Court's November 30, 2023 Order to Show Cause* filed on January 30, 2024 [Docket No. 259] in *SEC v. Digital Licensing Inc. et al.*, No. 23 Civ. 482.  As of the date of this filing, Chief Judge Shelby has not yet determined whether to sanction the SEC or permit its request for dismissal without prejudice.

5.      The SEC also omits discussion of another critical issue.  Despite having no legal obligation to do so, Dentons US disclosed information about each transfer to the SEC – sometimes because the SEC emailed Dentons US to inquire regarding a Bitcoin transfer it had noticed from a TFL wallet, and sometimes because Dentons US informed the SEC in advance that it would see transfers from that wallet.  And yet the SEC's Objection reads as if none of that ever happened.  The facts are, of course, quite different.

6.      Focusing on the Application pending before this Court, the SEC's actual objection may be distilled into three conditions to Dentons US's employment that the SEC asks the Court to impose: (1) that Dentons US return the funds in the Advance Payment Retainer to the Debtor; (2) that Dentons US and other professionals file copies of their engagement letters; and (3) that the Contractors file retention applications, apply to be ordinary course professionals, or otherwise have their fees subject to review by this Court.

7.      The SEC's first request seeks to strip the Debtor of its ability to defend itself against the SEC Enforcement Action.  Specifically, the SEC requests that the Advance Payment Retainer be transferred to the Debtor, which one could reasonably predict would be followed by the SEC seeking to freeze the Debtor's account and arguing that such an act is an exception to the automatic stay.[7]  Equally troubling is that the SEC's proposal is a backdoor way of seeking claim-specific remedies when the District Court made clear that such remedies would not be considered until after trial.[8]  In any event, the Advance Payment Retainer is not property

---

[7] *See generally S.E.C. v. Wyly*, 73 F. Supp. 3d 315 (S.D.N.Y. 2014), *aff'd in part and remanded sub nom. S.E.C. v. Miller*, 808 F.3d 623 (2d Cir. 2015), and *vacated in part sub nom. Sec. & Exch. Comm'n v. Wyly*, No. 1:10-CV-05760-JPO, 2017 WL 4119282 (S.D.N.Y. June 12, 2017*)* (SEC argued that bankruptcy filings had no impact on its attempt to freeze assets of the debtors.).

[8] "The SEC's motion for summary judgment made no mention of potential remedies, which will be determined once the question of liability has been resolved for all claims."  *Opinion and Order* [Docket No. 149 at 47, SEC Enforcement Action.

of the estate and is properly used to pay fees and costs for services to be rendered in the Litigations.[9]

8.    As to the SEC's second request, the SEC should not be allowed to gain an advantage in the underlying litigation by reviewing engagement letters that contain confidential and privileged information that relate to the Debtor's defense against the SEC.  In an effort to resolve this issue, however, the Debtor has filed a motion to seal and has filed the Engagement Letters on the docket with appropriate redactions.  As to the SEC's third request, the proposed procedure with respect to the Contractors is consistent with the Local Rules, and the SEC's overbroad arguments disregard distinctions that are important to how the Contractors should be treated and paid.

9.    To resolve the SEC Objection without delay, the Debtor proposes that: (i) Dentons US will transfer significant funds to the Debtor's bank account within fifteen (15) days of the entry of a final order on the Application, provided that the order contain provisions precluding the SEC, the Department of Justice, any unit from the Department of Justice, and the UST from (a) filing a motion in any court seeking to freeze or otherwise interfere with the use of any funds in any accounts held by the Debtor or Dentons, or (b) taking any other steps to attempt to seize or freeze the accounts or the funds in any such accounts; and (ii) the remaining funds will remain in the Advance Payment Retainer subject to the terms of the Engagement Letters. Dentons US and other professionals will also not oppose the appointment of a fee examiner, so

---

[9] *See In re Caesars Entm't Operating Co.,* 561 B.R. 420, 436, 437 (Bankr. N.D. Ill. 2015) ("an advance payment retainer is earned on receipt and does not become property of the client's bankruptcy estate"); *In re King,* 392 B.R. 62, 70-71 (Bankr. S.D.N.Y. 2008) ("The last type of retainer is the 'advance payment' retainer. This type of retainer involves fees paid to an attorney for services to be rendered, but the payment passes to counsel upon remittance at which time the debtor relinquishes all interest in the monies […]"); *see also* N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 1202 (2020); N.Y. State Bar Ass'n Comm. On Ethics, Op. 816 (2007) (allowing for advance-payment retainers and providing that they should be held outside the client trust account, even though they would be refundable to the extent that they were not earned).

long as that examiner is charged with examining all professional fees, including those sought by professionals retained by the Official Committee of Unsecured Creditors. Based on the foregoing, and the reasons more fully discussed below, Dentons US requests that the SEC Objection be overruled.

## B.    DENTONS US MEETS THE STANDARDS FOR EMPLOYMENT AS SPECIAL LITIGATION COUNSEL.

10.    The Application demonstrates that Dentons does not have an interest adverse to the Debtor or the estate with respect to the matters on which Dentons US is to be employed, as required under § 327(e) of the Bankruptcy Code. Application, ¶¶ 28-33; Califano Declaration, ¶¶ 24-28; *see also* 11 U.S.C. § 327(e).

11.    The SEC argues that Dentons US "may" hold a disqualifying pecuniary interest adverse to the Debtor under section 327(e) of the Bankruptcy Code if it is allowed to continue "expending estate resources." SEC Objection, ¶ 20. This argument defies logic. Were the SEC right, no special counsel could ever be employed because every special counsel "expends estate resources" in fulfilling its duties as special counsel. Because the SEC's argument would write section 327(e) out of the Bankruptcy Code, it cannot be credited. *See generally Bamidele v. I.N.S.*, 99 F.3d 557, 564 (3d Cir. 1996) (eschewing interpretation that would have read statute out of existence).

12.    The SEC fails to explain why any of Dentons US's interests are adverse to the Debtor or the estate *with respect to the matters on which Dentons US will be employed*. The SEC's argument is confounding. The SEC argues that receiving the Advance Payment Retainer and prepetition transfers for services to be rendered "may" result in "pecuniary interest adverse" to the Debtor. SEC Objection, ¶ 20. Taken to its logical conclusion, the SEC's argument would preclude any special litigation counsel from having a prepetition retainer or paying vendors and

law firms prepetition that support its services.  Such an argument is not supported in law and contradicts the express language in section 327(e) of the Bankruptcy Code.  The SEC knows this from its own citations; as stated in another case *the SEC cites* (and in the Retention Application, ¶ 36), prepetition payments "are not relevant to whether special counsel has a qualifying adverse interest 'with respect to the matter on which such attorney is to be employed' for section 327(e) of the Bankruptcy Code purposes." *In re Mallinckrodt PLC*, Case No. 20-12522-JTD, 2022 WL 906462, at *2 (D. Del. Mar. 28, 2022) (internal citations omitted) ("***Mallinckrodt***").

13.    Although the SEC complains about what it calls "staggering" amounts, the amounts are entirely appropriate given the scope of the litigations facing the Debtor in multiple fora.  Defending fast-paced, expedited litigation of this type commenced by the SEC (including trial preparation and trial), that requires collecting discovery in almost a dozen different jurisdictions; investigations and simultaneous actions initiated by other government agencies in multiple jurisdictions (many at the request of the SEC itself), and multiple class and mass actions, requires an enormous amount services to be rendered by law firms, professionals, and legal and related vendors across several different countries and languages.  This includes counsel to address investigations by the Monetary Authority of Singapore (which includes both employee interviews, several broad record requests, and multiple duplicative records requests and interviews conducted on behalf of and at the request of the SEC in parallel with discovery taken by the SEC itself); the Singapore Attorney General (which also required the production of evidence); the Seoul Prosecutor's Office (which investigated dozens of employees and is presently prosecuting a number of these); the United States Attorney's Office for the Southern District of New York (which has indicted Do Kwon, served several subpoenas requiring multiple

productions, and conducted dozens of interviews); investigations by Swiss authorities (including at the request of the SEC); two separate nationwide class actions in the United States (both of which the Debtor had dismissed after significant motion practice); and one mass action in Singapore.  Each of these has required the use of records management vendors and legal teams to collect, process, and produce records in response to those requests and discovery; technical and legal experts; multiple translation services; counsel for employees being interviewed and subpoenaed; and payment of costs and expenses in each of these matters.  For comparison, the defense of a single government enforcement action and related civil actions can easily cost $80 million or more annually—not including trial or trial preparation.

14.    The SEC's reliance on *In re NNN 400 Capitol Ct. 16, LLC* does not support the SEC's position, as it only discusses one inapplicable example of an adverse pecuniary interest.  There, the bankruptcy court found that the law firm hired under section 327(e) of the Bankruptcy Code had an agreement with a broker hired to assist the Debtor in obtaining financing, under which the law firm would receive a portion of the broker's commission, an agreement that was not disclosed and is not permitted postpetition under the Bankruptcy Code.  Here, however, there is no allegation that Dentons US was or is improperly sharing commissions, fees, or anything else with vendors, rendering erroneous the SEC's attempt to rely on *In re NNN 400 Capitol Ct. 16, LLC.*  For the avoidance of doubt, Dentons US has done no more than pay vendor bills as rendered, with no markups of any kind; the only fees Dentons US has received from the Debtor are its own.

15.    Therefore, as set forth above, Dentons US has made all requisite disclosures and otherwise meets section 327(e) of the Bankruptcy Code's requirements, including section 327(e)'s requirement that Dentons US "not represent or hold any interest

adverse to the debtor or the estate with respect to the matter on which the attorney is to be employed."

16.    The SEC's citation to *In re Pillowtex, Inc.* ("**Pillowtex**") is also misguided because a *Pillowtex* analysis is irrelevant to employment under section 327(e) of the Bankruptcy Code.  *See Mallinckrodt*, Case No. 20-12522-JTD, 2022 WL 906462, at *2 (discussing *In re Pillowtex, Inc.*, 304 F.3d 246 (3d Cir. 2002)); *In re Servico, Inc.*, 149 B.R. 1009, 1013 (Bankr. S.D. Fla. 1993) ("The Court agrees with CLF & Y that the standard for approving special counsel set forth in 11 U.S.C. § 327(e) has not been violated by its receipt of the potential preference."); *In re Thrush Aircraft, Inc.*, No. 19-10976-AEC, 2020 WL 1650323, at n.3 (Bankr. M.D. Ga. Mar. 31, 2020) (citing *In re Servicio, Inc.*, 149 B.R. at 1013).

17.    Finally, the SEC mischaracterizes *Mallinckrodt* when it states in a parenthetical "that Pillowtex did not apply to the retention of special counsel under section 327(e) in case involving a relatively *de minimis* $3.6M of transfers."  *See* SEC Objection, ¶ 19. This is squarely contrary to explicit language in *Mallinckrodt*, which states that *Pillowtex* does not apply in section 327(e) applications:

> Finally, Acthar Plaintiffs argue that "Arnold & Porter held an interest adverse to the estate based on the preference payments received and a *Pillowtex* analysis should have been conducted.  None was conducted and Arnold & Porter should have been disqualified."  The Court concludes, instead, that *Pillowtex* does not apply here.  *Pillowtex* is a § 327(a) case about the "disinterested" requirement ***that finds no analogue in § 327(e)***.

No. BR 20-12522-JTD, 2022 WL 906462, at *6 (D. Del. Mar. 28, 2022) (emphasis added) (internal citations omitted).  Nothing in *Mallinckrodt* suggests that the size of prepetition

payments received by an applicant under section 327(e) of the Bankruptcy Code can, by itself, create an adverse interest with respect to the matter on which the applicant is to be employed.

18.     In other words, it is not that *Pillowtex* did not apply in *Mallinckrodt* because the prepetition transfer in that case was below a specific threshold. Instead, *Mallinckrodt* affirms that *Pillowtex* does not apply because the requirements of section 327(a) of the Bankruptcy Code are not the same as, analogous to, or applicable to the requirements of section 327(e) of the Bankruptcy Code.

## C.     REVIEW OF PREPETITION INVOICES IS NOT BEFORE THIS COURT AND IS NOT RELEVANT TO EMPLOYMENT UNDER SECTION 327(e) OF THE BANKRUPTCY CODE.

19.     Although Dentons US disclosed prepetition transfers in the Employment Agreement for purposes of full disclosure, the SEC inexplicably argues that the Application does not state whether or how these prepetition fees were reviewed to determine that they are reasonable or appropriate, or whether, if they were reviewed by the Debtor's general counsel, he is qualified to review expenditures in this magnitude. SEC Objection, ¶ 19. Among other flaws, that argument is based on the false premise that there is a requirement that prepetition fees be reviewed postpetition under a reasonableness standard in the context of a retention application. The SEC cites no authority for that argument, because there is none. The absence of such a rule makes perfect sense, because otherwise Bankruptcy Courts would have to review privileged information as part of every section 327(e) application, and Congress would have spoken clearly if it intended such a review to be part of all such applications. In addition, this argument is improper because it inexplicably seeks to attack the qualifications of Debtor's general counsel, a subject which is simply nowhere to be found in any part of section 327 of the Bankruptcy Code, and is thus not part of the analysis required of the Court.

20.     The SEC further argues that the Application "provides *no legal justification* for paying the over $2 million in outstanding unpaid invoices, which it seeks authority to pay pursuant to paragraph 8 of the Proposed Order." SEC Objection, ¶ 25.  This argument is based on the flawed assumption that payment of the prepetition invoices is controlled by the Bankruptcy Code.  Here, the funds in the Advance Payment Retainer became Dentons US's property upon receipt and thus are not property of the estate.  *See supra*, fn. 5; *see also In Terraform Labs Pte. Ltd.*, Case No. 24-10070 (KBO), Docket Nos. 96 & 97 (Bankr. D. Del. Feb. 29, 2024) (authorizing Weil, Gotshal & Manges LLP and Richards, Layton & Finger, P.A. to apply their respective retainers to their respective outstanding prepetition invoices); *In re Mallinckrodt PLC*, Case No. 23-11258 (JTD), Docket No. 463 (Bankr. D. Del. Oct. 2, 2023) (authorizing Latham & Watkins LLP to apply its retainer to outstanding prepetition fees and expenses); *In re Proterra Inc.*, Case No. 23-11120 (BLS), Docket No. 208 (Bankr. D. Del. Sep. 6, 2023) (authorizing Paul, Weiss, Rifkind, Wharton & Garrison LLP to apply its retainer to prepetition fees and expenses); *In re RevitaLid Pharmaceutical Corp.*, Case No. 23-11704 (BLS), Docket No. 101 (Bankr. D. Del. July 24, 2023) (authorizing Ropes and Gray LLP to apply its retainer to final prepetition bill for prepetition fees and expenses); and *In re Packable Holdings, LLC*, Case No. 22-10797 (CTG), Docket No. 161 (Bankr. D. Del. Oct. 7, 2022) (authorizing Potter Anderson & Corroon LLP to apply its retainer to all prepetition invoices).

21.     Accordingly, the prepetition invoices owed to the Contractors should be paid from the Advance Payment Retainer.  The Contractors are essential to the representation of the Debtor and, given the imminent nature of the SEC trial, irreplaceable.  These Contractors have indicated to Dentons US that absent payment of their prepetition invoices, they will not

continue to support the Debtor's defense of the SEC's claims.  Again, the SEC cannot use this Application to attempt to kneecap the Debtor's defense of the claims brought by the SEC.

**D.     THE PROPOSED PROCEDURE AND PAYMENT WITH RESPECT TO THE CONTRACTORS IS CONSISTENT WITH THE PURPOSE OF AN ADVANCE PAYMENT RETAINER AND THE LOCAL RULES.**

22.     The SEC demands that vendors providing services to Dentons US in support of the litigation be required to be employed as ordinary course professionals ("**OCPs**") or file fee applications.  SEC Objection, ¶ 24.  These vendors were engaged by Dentons US and are appropriately paid from the Advance Payment Retainer as Dentons US's costs in the litigation – the vendors are not providing services directly to the Debtor in the ordinary course of business, and, thus, by definition, are not OCPs.  With regard to procedure, the proposed procedure in the Application with respect to vendors is consistent with Local Rule 2016-2(f):

> Reimbursement of Payments Made to Other Professionals. If any entity subject to this Local Rule seeks reimbursement for any payment it made to another professional, such entity must provide, with respect to the services rendered or expenses incurred by such other professional, the information required by paragraphs (c), (d), and (e) hereof, unless a waiver is obtained under paragraph (h) hereof.

23.     This proposed procedure is also appropriate for all Contractors listed in the revised Schedule 1 to the Proposed Order, which includes third-party Vendors and law firms, as defined in the Application.  Attached hereto as **Exhibit B-1** is the revised Schedule 1, along with **Exhibit B-2**, which is a redline from the version originally attached to the Proposed Order attached as Exhibit A to the Application.

## II.     REPLY TO UST OBJECTION

24.     Unsupported even by the cases it cites, the UST Objection ignores the purpose for which section 327(e) exists, essentially seeks to deprive the Debtor of long-standing

trial counsel on the eve of trial in what the U.S. Trustee *admits* is "bet-the-company" litigation, and would almost certainly doom the Debtor's efforts to reorganize.

25.    The UST Objection first argues, based on *one* decision from almost 30 years ago from a bankruptcy court in the Southern District of Georgia, that the proposed scope of Dentons US's employment exceeds the scope permitted under section 327(e) of the Bankruptcy Code because the litigation is "bet-the-company" litigation.  Of course, there is no such language in the Bankruptcy Code, which alone requires overruling the Objection.  The U.S. Trustee's request that the Court add a condition to the employment of special counsel (that the "special purpose," here litigation, cannot be existential) must be rejected because it would have this Court rewrite the statute, which is a power reserved to Congress.  *See generally Lamie v. United States Trustee*, 540 U.S. 526, 537 (2004) (courts should not add an "absent word" to a statute); *Mobil Oil Corp. v. Higginbotham*, 436 U. S. 618, 625 (1978) ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted."); *Iselin v. United States*, 270 U.S. 245, 250 (1926) ("What the government asks is not a construction of a statute, but, in effect, an enlargement of it by the Court, so that what was omitted, presumably by inadvertence, may be included within its scope.  To supply omissions transcends the judicial function.").  Thus, the Supreme Court makes clear that courts cannot do what the U.S. Trustee asks even if there was an "inadverten[t]" omission in a statute, but here the U.S. Trustee does not even argue for "inadvertence," it just advocates for something that is not in the Bankruptcy Code.

26.    In addition to asking the Court to add conditions to the text of section 327(e) that are not there, the UST Objection ignores both the actual text and the legislative history of the statute.  To be employed under section 327(e), the scope of the proposed

representation must be for "a specified special purpose."  Dentons US's employment is for specified special purposes which are clearly described in the Application.  Primary among those is representing the Debtor in the SEC Enforcement Action, a complex litigation which is three weeks from trial.

27.    The legislative history makes the U.S. Trustee's effort to import a "bet-the-company" litigation exception even more far-fetched:  In enacting section 327(e), Congress said that "[t]he subsection will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation."  H.R. Rep. No. 595, 95th Cong., 1st Sess., at 328 (1977); S. Rep. No. 989 95th Cong., 2nd Sess., at 38–39 (1978), U.S.C.C.A.N. 1978, at 5787, 5824–5825, 6284–6285.  That is precisely this scenario:  Dentons US's retention as special litigation counsel is aimed specifically at pending, complex litigation where changing attorneys three weeks before trial would be *at best* detrimental to the progress of that litigation, and more likely fatal.  Weil Gotshal and Richards Layton, two well respected and very experienced firms, are already retained pursuant to section 327(a) to represent "the estate generally" and represent the Debtor "in the conduct of the bankruptcy case."  Thus, the proposed retention of Dentons US as special counsel is consistent with both the express language and the legislative history of the statute.  *See generally In re DeVlieg, Inc.*, 174 B.R. 497, 503 (Bankr. D. Ill. 1994) (approving the retention of counsel which initiated prepetition LBO Litigation as special counsel under section 327(e), noting that "a complex case such as the LBO Litigation is apparently precisely the special purpose which motivated Congress to create section 327(e).").

28.    The U.S. Trustee's argument that employment under section 327(e) is inappropriate in situations where the litigation to be handled by special counsel is existential is

also inconsistent with the practice in this Court.  Numerous cases have approved retention of special litigation counsel under section 327(e) where that representation included sizeable and important litigation and other duties.  *See e.g.*, *In re Woodworkers Warehouse, Inc*., 323 B.R. 403 (D. Del. 2005) (District court upheld bankruptcy court approval of counsel pursuant to section 327(e) to, among other things, assist the debtor with asset sales because the order left a wide range of services to be performed by general bankruptcy counsel, and narrowly defines the tasks to which special counsel was authorized to perform.); *In re TK Holdings Inc. et al*., Case No. 17-11375 (BLS) (Bankr. D. Del.) (July 26, 2017) (authorizing the retention of special counsel under section 327(e) to "represent the Debtors in all matters arising from the Airbag Litigation (as defined in the Application) and to continue to represent the Debtors in connection with the antitrust, regulatory, and corporate matters described in the Application" over the objection of the U.S. Trustee); *In re PGX Holdings, Inc. et al.*, Case No. 23-10718 (CTG) (Bankr. D. Del.) (July 19, 2023) (authorizing the retention of special counsel under section 327(e) to represent the debtors in "connection with all of the CFPB Litigation (as that term is defined in the Application) in accordance with the terms and conditions set forth in the Application and in the Engagement Letter.").

29.     The U.S. Trustee relies on one unreported decision from almost three decades ago (*In re First Am. Health Care of Ga., Inc.*, No. 96-20188, 1996 WL 33404562 (Bankr. S.D. Ga. Apr. 18, 1996)) for the proposition that the proposed scope of Dentons US's employment exceeds the scope permitted under section 327(e).  But the U.S. Trustee misrepresents the holdings of that case, ignores that it is contrary to the precedent in this District, and is readily distinguishable from this case.

30.    The UST Objection, surprisingly, fails to acknowledge that the restrictive interpretation of section 327(e) in *First American* was expressly rejected by the United States District Court in this District.  *See Woodworkers Warehouse*, 323 B.R. at 406.  In *Woodworkers*, the proposed services focused on three following tasks:  "(1) obtaining court approval for the use of its cash collateral, (2) selling assets through a 'going out of business sale' and disposing of related executory contracts, and (3) preparing and negotiating the Debtor's key employee retention program and providing payment to critical personnel of the Debtor."  *Id*. at 405. Although all of those tasks are frequently performed by general bankruptcy counsel, the District Court in *Woodworkers* ruled that work was narrow enough, and related to prepetition work enough, that the § 327(e) counsel was permitted to continue that work without being deemed to be "conducting the case."  And nothing in *First American* or *Woodworkers* supports the U.S. Trustee's contention that "Dentons US's service as payment agent and its involvement in managing Litigations rises to the level of 'conducting the case,' which is outside the scope of Section 327(e) counsel."  UST Objection at ¶ 23.

31.    The UST Objection also misstates the holding in *First American*.  In *First American,* the debtors sought to employ Alston & Bird as special counsel under section 327(e), to, among other things, represent the debtor in (i) ongoing criminal litigation, (ii) an ongoing adversary proceeding related to Medicare payments, and (iii) in *future* Medicare and private payor disputes.  But the UST Objection ignores the fact that the bankruptcy court *approved* Alston & Bird's employment as to the pending criminal litigation (1996 WL 33404562, at *1) and as to the already pending adversary proceeding (*id*. at *5).  The Bankruptcy Court only denied the debtor's retention application as to future, speculative Medicare litigation, reasoning that the scope of the proposed employment was overly broad and general and not limited to a

specified special purpose. *Id*. at *4. Moreover, the Court found it significant that Alston & Bird did not represent the debtors in any Medicare litigation prior to the bankruptcy and litigation of future potential Medicare disputes could pit one creditor against another rather than provide a benefit for all creditors. *Id*. at *5-6.

32.    In this case, Dentons US has represented the Debtor in the SEC Enforcement Action, the Beltran Action, and ongoing grand jury, criminal and regulatory investigations prior to the Petition Date; in fact, it has represented the Debtor in each since their inceptions.  Thus, for the Debtor to change counsel at this point, three weeks from the start of trial, would require the estate to incur additional costs with respect to these matters, and it is not clear that the trial could be delayed (the District Judge overseeing the SEC Enforcement Action has stated that he will not move the trial date).  The Bankruptcy Court in *First American* recognized this point when it noted that it was in the best interests of the estate to retain Alston & Bird to continue to handle a pending adversary proceeding (unrelated to Medicare disputes) because "Alston & Bird is capable, knowledgeable and experienced [and] the substitution of another firm would increase costs, delay any further prosecution of the matter . . . ." *Id*. at *5. That reasoning applies here with even more force.

33.    The UST Objection then argues, incorrectly assuming it has prevailed on the section 327(e) argument, that Dentons US is required to meet the standards for retention under section 327(a) but cannot meet those standards because of (1) the current representation of LFG in connection with a criminal grand jury investigation and (2) the lack of detailed information regarding the firm's potential preference exposure.  Neither argument is supported by the evidence.

34.    *First*, representing LFG does not render Dentons US not disinterested. Dentons US does not represent the Debtor vis-à-vis LFG (or vice versa).  There is no conflict with respect to the grand jury matters because the representation of LFG merely includes the production of documents in that matter.  Indeed, although LFG is not a creditor in this case, courts have approved the retention of special counsel even in circumstances where proposed counsel also represented another party or creditor related to the case, and so this argument would carry no weight even if it had a valid factual predicate (it does not).  *See Nisselson v. Wong (In re Best Craft Gen. Contractor & Design Cabinet, Inc.)*, 239 B.R. 462, 468 (Bankr. E.D.N.Y. 1999) ("if a creditor's attorney employed as special counsel does not otherwise hold or represent interests adverse to the estate, where there is an identity of interest between the creditor and the estate 'with respect to the matter for which special counsel is retained, there is no conflict and the representation can stand.'"); *Johnson v. Richter, Miller & Finn (In re Johnson)*, 312 B.R. 810, 822-23 (E.D. Va. 2004) ("Simply put, the interests of the Trustee and [the creditor] did not conflict; they coincided; both were interested in enlarging the estate.  Thus, by seeking to enlarge the estate on behalf of the Trustee, [counsel] served both the interests of the Trustee and [the creditor].").

35.    *Second*, whether there is potential preference exposure here is a red herring.  Obviously, if the employment is approved under section 327(e), this is not even a consideration.  *City of Rockford v. Mallinckrodt PLC (In re Mallinckrodt)*, Case No. 2012522-JTD. 2022 WL 906462 (D. Del. Mar. 28, 2022) (Court concludes that "Pillowtex does not apply" in considering an application to employ special counsel pursuant to section 327(e).).  But even if the employment is reviewed under section 327(a), there is no substantial preference exposure

given that the retainer was a legally permissible Advance Payment Retainer.  Nonetheless, Dentons US is performing a "Pillowtex" analysis and will provide the results to the U.S. Trustee.

36.     *Third*, Dentons US's disclosures are sufficient to support its retention under section 327(e).  *See In re NNN 400 Capitol Ctr*. 16 LLC, 632 B.R. 243, 261 (D. Del. 2021), *aff'd*, No. 21-3013, 2022 WL 17831445 (3d Cir. Dec. 21, 2022) (citing 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2014(a) & 2016(b); Del. Bankr. L.R. 2014-1(a) & 2016-1)) ("Every law firm representing a debtor in bankruptcy must disclose (i) the amount and source of any compensation received or agreed to be paid; and (ii) all connections to creditors and parties in interest.").  The UST Objection argues that there are faults with the disclosures related to (a) the Engagement Letters between the Debtor and Dentons US (Objection at ¶ 29); (b) Dentons US's representation of current and former employees (*id*. at ¶ 30); (c) what the U.S. Trustee calls "connections" listed on Schedule 1[10] to the Proposed Order attached to the Application (*id*.); and (d) the current status of Dentons US's withdrawal as counsel to Mr. Kwon in the Beltran Action (*id*.).

37.     Bankruptcy Rule 2014 disclosures are "for the Court's benefit so that it can scrutinize any adverse interest of the attorney."  *Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP* (*In re Northwestern Corp.*), 346 B.R. 84, 89 (D. Del. 2006) (quoting *In re CIC Inv. Corp.*, 175 B.R. 52, 54 (B.A.P. 9th Cir. 1994)).  The disclosure requirements are meant to "ensure that all relevant connections have been brought to light" (*In re Enron Corp.*, No. 02 CIV. 5638 (BSJ), 2003 WL 223455 (S.D.N.Y. Febr. 3, 2003)), and are not so onerous "as

---

[10] Although the UST Objection refers to "connections listed on Schedule 1," Schedule 1 lists various Contractors that are proposed to be paid directly by Dentons US postpetition.  It is unclear how the word "connections" applies to Schedule 1 at all.

to require the party to raise with the court every imaginable conflict which may occur in a bankruptcy" (*In re eToys, Inc.*, 331 B.R. 176, 191 (Bankr. D. Del. 2005)).

38.     Here, Dentons US's initial disclosures in the Application and the Califano Declaration were sufficient to satisfy Bankruptcy Rule 2014, including with respect to the matters Dentons US is handling as special litigation counsel, but also as to matters such as the funds handled and disbursed by Dentons US.   Dentons US has further supplemented those disclosures formally with this Court as well as responding informally to various questions from the U.S. Trustee and will address further questions from this Court or the U.S. Trustee as necessary.   For example, Dentons US has now filed redacted versions of the Engagement Letters and the Terms of Business on the docket, filed under seal unredacted versions of the Engagement Letters and Terms of Business, provided informal responses to the U.S. Trustee regarding the relationship to Dentons US of each party listed on Schedule 1 to the Proposed Order, clarified that it no longer represents any current or former employees and, finally, clarified that its withdrawal as counsel to Mr. Kwon is complete.   Thus, Dentons US has provided all the disclosures sought by the U.S. Trustee.

39.     *Fourth*, the payments received by Dentons US are appropriate as explained in the response to the SEC Objection.   As noted above, the payments to Dentons US were advance payment retainers, which became Dentons US's property upon receipt.   They were paid to Dentons US as a result of a prepetition business judgement of the Debtor.   In any event, any postpetition expenditures from that retainer will only be paid in accordance with the fee procedures established for this case by the Court.   Further, any funds which are not expended as to allowed fees and costs incurred by Dentons US as special counsel will be returned to the Debtor at the conclusion of Dentons US's engagement.

40.     The U.S. Trustee also contends that the Debtor has not established that Dentons US may pay the Contractors listed on Schedule 1 to the Proposed Order from the Advance Payment Retainer.  The Debtor agrees that of the law firms listed on Schedule 1 that are not Member Firms of Dentons US, three (3) of the law firms will be removed from Schedule 1 (Benesch, Friedlander, Coplan & Aronoff LLP; Collas Crill L.P.; Elliot Kwok Levine & Jaroslaw LLP), and the two (2) remaining law firms (Gasser Partner Attorneys at Law; Howse Williams) will either be retained under section 327 or as ordinary course professionals.  Member Firms of Dentons and vendor invoices will be attached to Dentons US's invoices and, thus, will be included in fee applications filed with the Court.  The Debtor submits that these clarifications alleviate the U.S. Trustee's concerns in providing Dentons US authority to pay invoices of Contractors.

**<u>Reservation of Rights</u>**

41.     The Debtor reserves the right to raise additional arguments with respect to the SEC Objection and the UST Objection prior to or at the hearing to consider the Application.

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Order attached to the Application as Exhibit A:  (i) granting the Application; (ii) authorizing the Debtor to retain and employ Dentons US as its special counsel effective as of the Petition Date; and (iii) granting such other and further relief as may be just and proper.

Dated: March 4, 2024
       Wilmington, Delaware


/s/ Matthew P. Milana
RICHARDS, LAYTON & FINGER, P.A.
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email:     heath@rlf.com
           shapiro@rlf.com
           milana@rlf.com

*Co-Counsel for Debtor and Debtor in
Possession*


DENTONS US LLP
Samuel R. Maizel (admitted *pro hac vice*)
Tania M. Moyron (admitted *pro hac vice*)
601 S. Figueroa Street, #2500
Los Angeles, CA  90017
Telephone:  (213) 623-9300
Email:    samuel.maizel@dentons.com
          tania.moyron@dentons.com

*Proposed Special Counsel to Debtor and
Debtor in Possession*

WEIL, GOTSHAL & MANGES LLP
Ronit J. Berkovich (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
F. Gavin Andrews (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Email:     ronit.berkovich@weil.com
           jessica.liou@weil.com
           f.gavin.andrews@weil.com

*Counsel for Debtor and Debtor in Possession*

RLF1 30648019v.1