## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x
                                   :

In re                               :        **Chapter 11**
                                     :

**TERRAFORM LABS PTE. LTD.,**       :        **Case No. 24–10070 (BLS)**
                                     :

**Debtor.[1]**                       :        **Re: Docket No. 61**
                                     :

-------------------------------------------------------- x

## SUPPLEMENTAL DECLARATION OF MARK G. CALIFANO IN SUPPORT OF THE MOTION OF DEBTOR FOR ENTRY OF ORDERS PURSUANT TO SECTIONS 363, 503(B), AND 105(A) OF THE BANKRUPTCY CODE AUTHORIZING DEBTOR TO PAY CERTAIN AMOUNTS IN FURTHERANCE OF LITIGATION AND GRANTING RELATED RELIEF

I, Mark G. Califano, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury:

1.       I am a partner in the law firm of Dentons US LLP ("**Dentons US**"), located at 1900 K Street, NW Washington, D.C., 20006, and have been duly admitted to practice law in the State of New York and in the District of Columbia, as well as in the United States District Courts for the Southern District of New York, the United States Court of Appeals for the Second Circuit, and the Supreme Court of the United States.

2.       I act for Terraform Labs Pte. Ltd. ("**TFL**" or the "**Debtor**"), as part of its legal team in the ongoing SEC Enforcement Action (as defined below) and DOJ Investigation (as defined below).  I refer to my original declaration (the "**Declaration**") in support of the *Motion of Debtor for Entry of Orders Pursuant to Bankruptcy Code Section 363 Authorizing Debtor to Pay (I) Fees and Expenses of Counsel to Debtor Employees (II) Certain Critical Vendors Claims (III) Certain Foreign Litigation Related Claims and Obligations, and (IV) Granting Related Relief*

---

[1]     The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

[Docket No. 61], filed on February 13, 2024 (the "**Motion**").[2]   I submit this supplemental declaration (the "**Supplemental Declaration**") in further support of the Motion.

3.      Except as otherwise indicated, the facts set forth in this Supplemental Declaration are based upon my personal knowledge, my review of relevant documents, my personal experience, knowledge, and information provided to me by the Debtor's employees, and/or my discussions with the Debtor's officers and advisors.  If called upon to testify, I would testify competently to the facts set forth in this Supplemental Declaration.  I am not being compensated specifically for this testimony other than through payments received by Dentons as a professional proposed to be retained by the Debtor as the Debtor's special litigation counsel in this chapter 11 case (the "**Chapter 11 Case**").

### Litigation Related Payments

4.      The Debtor is exactly three (3) weeks away from the commencement of the SEC Jury Trial, in which the entry of an adverse non-appealable final judgment would likely mean the end of the Debtor's ability to continue to operate.  Immediate payment of the Employee Counsel Fees and Expenses and the Critical Vendors is essential to ensure the Debtor can best defend itself against the claims brought by the SEC and maximize its chances of success on appeal. In addition, the Debtor is in the midst of the DOJ Investigation.  Payment of the Employee Counsel Fees and Expenses so that Employees can continue to aid the Debtor in its compliance with the DOJ is critical to ensuring that the Debtor can avoid unfair and inaccurate prosecutions in the DOJ Investigation.  The Debtor and the Employees also face ongoing investigations and related civil and criminal proceedings in Korea and Singapore, in which payment of the Employee Counsel

---

[2]   Capitalized terms used but not defined in this Declaration shall have the meanings ascribed to them in the Motion or the *Debtor's Omnibus Reply to Objections to Motion of Debtor for Entry of Orders Pursuant to Sections 363, 503(B), and 105(A) of the Bankruptcy Code Authorizing Debtor to Pay Certain Amounts in Furtherance of Litigation and Granting Related Relief* (the "**Reply**"), filed contemporaneously herewith.

Fees and Expenses ensures the availability of the Employees for these proceedings. Payment of these fees directly benefits the Debtor because it helps ensure the Debtor's continued access to key fact witnesses and the information they have.

## A.   Employee Counsel Fees and Expenses

### 1.   *Kobre and the Other Employee Counsel*

5.   As described in the Motion and Declaration, sixteen (16) Employees have retained separate counsel for their individual representation in connection with the SEC Enforcement Action and/or the DOJ Investigation. These Employee Counsel have gained significant knowledge, expertise, and familiarity with the Debtor, its operations, the legal issues it faces, and the respective Employees' roles at the Debtor, as well as knowledge of all relevant facts. It is critical that the Employees are adequately represented in both actions, to ensure the best defense of the Debtor in the SEC Enforcement Action and protect the Debtor from unfair and inaccurate prosecution in the DOJ Investigation. For avoidance of doubt, the Employees in this case (with the exception of Mr. Kwon) are merely witnesses participating in the SEC Enforcement Action and complying with the DOJ Investigation

6.   As one of the Debtor's lead counsel in the SEC Enforcement Action, I am in frequent communication with the Employee Counsel. Each Employee Counsel has contacted Dentons repeatedly in the past few weeks seeking the status of their payment and the Court's decision on the Motion. Employee Counsel for the majority of represented Employees have advised me that they would cease representation of the Employees unless Employees were able to pay, and that they understood that the Employees likely did not have the ability to pay. One counsel to the Employees advised that it would significantly scale back any representation and that it would be unable to assist or respond to the Debtor's requests for information.

7.      If any one of the Employee Counsel refused to continue representing their client(s) in these matters, even for a short period, that lapse in representation would have a severe negative impact on the Debtor's defense in the SEC Enforcement Action given that the SEC Jury Trial is set to commence in only three (3) weeks.  Negative consequences include, for example, making the Employees themselves unwilling to cooperate with the Debtor counsel's requests for information or efforts to prepare employees for testimony.  Regular and consistent access to the Employees and the information they have, particularly former Employees who were involved in operations that are the focus of the SEC actions and the multiple investigations, is essential to the Debtor's compliance with authorities in all investigations and its defense of enforcement and civil actions. The mere *risk* that Employee Counsel would cease providing services to the Employees on the eve of the SEC Jury Trial with the concomitant devastating effect on access to information and the ability to advise and defend the Debtor justifies the payment of the prepetition fees and expenses.  This risk has a similar effect on the Debtor's ability to defend the claims in the *Beltran* litigation in Singapore.

8.      For the same reasons, it is critical that the Employees are adequately represented in the DOJ and other investigations, not only to protect the Employees' interests and to comply with governmental units, but also to protect the Debtor from the potential of judicial prejudice or unfair and inaccurate prosecution of claims against the Debtor and to ensure access to the Employees to obtain information from them.  The DOJ has informed Dentons that it intends to continue interviewing witnesses, so it is therefore imperative that Employees have counsel already engaged.  I expect similar activity in other investigations and matters in Singapore and Korea.

9.      Further, it is my understanding that if the Debtor does not pay the Employee Counsel, the majority of Employees do not have the ability or willingness to pay existing Employee

4

Counsel or new replacement counsel.  Some Employees are based in foreign jurisdictions and may simply stop cooperating if they are not represented by counsel.  If the Debtor cannot pay Employee Counsel, there is a significant risk that most Employees would likely be unrepresented; would not spend time preparing for interviews and depositions; simply not respond to communications, attend interviews or depositions; or appear to offer trial testimony.  Such a scenario would be incredibly detrimental to the Debtor's position in the SEC Enforcement Action and the DOJ Investigation.  Even if the Employees attempted to engage new counsel, that would take weeks, and most Employee Counsel have only been willing to be engaged if they receive a retainer, which most Employees would not be able or willing to pay.  There is simply not enough time for new counsel to get acquainted with the facts of the case and provide the same level of representation that the Employees receive from existing Employee Counsel, and from which the Debtor benefits.

### 2. *Rodic*

10.     As outlined in the Motion and Declaration, Mr. Kwon retained counsel in Montenegro, the Law Office Rodic ("**Rodic**"), in connection with his detention in Montenegro.

11.     Rodic is paid a monthly fixed fee for its services in connection with its representation of Mr. Kwon.  Accordingly, if the Debtor is to obtain the benefits of Rodic's services, it must pay the full monthly fee.  The Debtor is relying on Mr. Kwon's cooperation in connection with corporate governance and, among other matters, its defense in the SEC Enforcement Action. Due to Mr. Kwon's significant involvement in the Debtor's business during the period of time relevant to the SEC Enforcement Action, he is uniquely privy to key information that will assist the Debtor's defense.

12.     Further, and as outlined in the Declaration, Montenegrin authorities highly restrict foreign counsel from visiting Mr. Kwon.  Therefore, the primary means of communication between Dentons and Mr. Kwon is through Rodic as an intermediary.  Rodic has assisted with

5

communications between the Debtor's counsel and Mr. Kwon, as well as facilitated the execution of corporate documentation on behalf of the Debtor.  Therefore, it is necessary to pay Rodic's fees, which facilitate access to Mr. Kwon during this integral period.

13.     Rodic cannot be replaced as counsel to Mr. Kwon, and a less expensive alternative cannot be engaged as an intermediary for communications between Mr. Kwon and Dentons, including because Rodic is the counsel of record for Mr. Kwon and only though Rodic can the Debtor liaise with Mr. Kwon.  It would simply be too difficult and costly to attempt to engage an adequate alternative counsel in Montenegro given the stage of Mr. Kwon's extradition proceedings, which are pending appeal, and the logistics of having new counsel be the counsel of record for Mr. Kwon.  I also understand there are limited options for counsel in Montenegro with the trustworthiness, experience and expertise that the Debtor requires, given Mr. Kwon's cooperation with corporate governance and defense in the SEC Enforcement Action, among other matters.  Further, I understand the proceedings in relation the Kwon's criminal conviction in Montenegro for possession of a false document are complete, and therefore Rodic has not spent material time since the Petition Date representing Mr. Kwon in these proceedings.

14.     For the avoidance of doubt, the Debtor will not need to pay Rodic's fees and expenses going forward if Mr. Kwon is extradited to the United States from Montenegro.

### 3. *Sources of Indemnification Obligation*

15.     The Motion and Reply references the Constitution, the Deel Employment Agreements, Deel MSA, Company Employment Agreement, Kobre Pool Retention Agreement, and Kobre Employee Engagement Letters.

16.     A true and correct copy of the Constitution is attached here to as **Exhibit A**.

17.     True and correct copies of a form of the Deel Employment Agreement and the Deel MSA are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

RLF1 30648338V.1

18.    A true and correct copy of a form of the Company Employment Agreement is attached hereto as **Exhibit D**.

19.    True and correct copies of the Kobre Pool Retention Agreement, which includes the form of the Kobre Employee Engagement Letter, are attached hereto as **Exhibit E**.

20.    The SEC and UST have been provided with copies of the engagement letters pertaining to the other Employee Counsel.

**B.    Critical Vendors**

21.    As outlined in the Motion, the Debtor seeks to pay prepetition fees for four Critical Vendors.  Each Critical Vendor is currently providing essential litigation-related services specifically in connection with the SEC Enforcement Action.

22.    The details of the Critical Vendors are as follows:

a.    Alpha Consulting: provides strategic security consulting and local intelligence in Montenegro. Alpha Consulting has been vital to obtaining information from relevant authorities related to Mr. Kwon's extradition from Montenegro, which is important, as the timing of Mr. Kwon's extradition determines whether he can be a witness in the SEC Enforcement Action. Alpha Consulting is owed approximately $4,000 in prepetition fees.

b.    Cornerstone Research: serves as a research consultant in connection with expert testimony for the SEC Enforcement Action and the DOJ Investigation. Cornerstone Research is owed approximately $637,000 in prepetition fees.

c.    JS Held LLC: provides expert witness and consulting services regarding cyptocurrency transaction tracing and analysis. JS Held LLC is owed approximately $387,000 in prepetition fees.

d.    Quinlan Partners: provides investigative services, including regarding trial witness backgrounds, financial statements, past social media statements, and cryptocurrency wallet histories. Quinlan Partners is owed approximately $262,000 in prepetition fees.

23.    All of the Critical Vendors have been devoting a significant amount of time supporting the Debtor in its efforts to defend the SEC Enforcement Action and the criminal

investigations are expected to continue doing so leading to and during the SEC Jury Trial. Dentons, as Debtor's lead litigation counsel, requires all Critical Vendors to be responsive and ready to carry out tasks that Debtor deems necessary for the purpose of its defense to the SEC Enforcement Action.

24.     As one of the Debtor's lead litigation counsel, I am in ongoing communication with the Critical Vendors.  They have contacted Dentons repeatedly in the past few weeks seeking the status of these payments and the Court's decision on the Motion.  Many of the Critical Vendors have conveyed to me, in no uncertain terms, that they will strongly reconsider or cease providing services if the Debtor does not promptly pay the prepetition amounts owing to the Critical Vendors.

25.     Especially given that the subject matter of the SEC Enforcement Actions and investigations is highly complex, and that many of the Critical Vendors have been working for almost a year and a half conducting complex analyses of immense quantities of data, all of the Critical Vendors have months of nontransferable institutional knowledge of the facts and issues at hand, and there are no alternatives to the services they provide.  Given that the Debtor is on the eve of the SEC Jury Trial, at this time, the Critical Vendors are irreplaceable.  Even if non-conflicted alternative vendors existed that were capable of performing this work, at this stage, it is not possible to switch from a Critical Vendor to a new provider. This would be detrimental and extraordinarily prejudicial to the Debtor's defense of the SEC Enforcement Action.

### Governance

26.     The Debtor's Board of Directors consists of three members: Chris Amani (Chief Executive Officer), Ashwin Mathialagan (Senior Legal Counsel), and John S. Dubel (independent director).  The Board meets regularly with its advisors, including Dentons.  Prior to the Debtor's filing the Motion, the Board reviewed information relating to the proposed litigation

expenses, including information about the Employee Counsel Fees and Expenses and Critical Vendors, during the course of three (3) separate formal and informal Board meetings on February 6, February 9, and February 12.  I attended these meetings of the Board and advised the Board regarding the amount of the litigation related expenses, the necessity for paying the Employee Counsel and Critical Vendors to aid in the Debtor's defense in the SEC Enforcement Action and compliance with the DOJ in the DOJ Investigation, and the significant consequences if these payments were not made. Over the course of the three meetings, the Board took the opportunity to ask numerous questions of me regarding the litigation related expenses, and the risks associated with failing to pay postpetition Employee Counsel Fees and Expenses.  The Board unanimously approved these payments and the filing of the Motion.

27.     Chris Amani is one of the Employees represented by Kobre pursuant to the terms of the Kobre Employee Engagement Letter.  He is expected to be an important witness at the trial.  As noted above, under Mr. Amani's Kobre Employee Engagement Letter, the Debtor is obligated to pay all Employee Counsel Fees and Expenses owed to Kobre in connection with its representation of Mr. Amani.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:    March 4, 2024
          New York, NY

Respectfully submitted,

By:     _/s/ Mark G. Califano_____
          Mark G. Califano
          Partner, Dentons US LLP