**<u>Exhibit D</u>**

**Form Company Employment Agreement**

# EMPLOYMENT AGREEMENT

█████████ (hereinafter, the "Employee") enters into this Employment Agreement with Terraform Labs PTE LTD. (hereinafter, the "Company" or "Employer") as follows:

**1.    Commencement of Employment and Term:**    The employment will commence on September 1, 2021 or some other reasonable date agreed to by the parties. This employment is for no particular duration, and will only be terminated by the written advance notice by one of the parties.

**2.    Responsible Duties and Position:** █████████
Location: Any location
The Employee's responsible duties, position and location of work may subsequently be changed by the Company pursuant to the Company's work requirements and business needs.

**3.    Remuneration**

- **Base annual compensation**: █████████ The Company shall pay the Employee 12 equal installments of the annual base salary on the salary payment date of each month.

  The salary shall be paid on the 25th day of the current month via direct deposit, ACH, or wire payment to a bank account designated by the Employee; provided that, in the event the date of payment falls on a Saturday or a public holiday, the salary shall be paid on the preceding day.

- **Incentive compensation**: ████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████

- **Double Trigger Acceleration.** In the event that Employee's employment with the Company is terminated by the Company (or its successor) without Cause (defined below) or by Employee for Good Reason (as defined below), the vesting of any outstanding incentive awards shall be automatically accelerated in full.

  - "Cause" Definition. For purposes of this Agreement, Cause means a determination by the Company that any of the following has occurred: (A) Employee's willful and continued failure to use his best efforts to perform his reasonably assigned duties; (B) Employee is convicted of, or enter a guilty plea to, a misdemeanor or felony involving moral turpitude; or (C) Employee engages in (1) gross negligence, or recklessness, causing material harm to the Company or any affiliate, or its or their business or reputation, (2) intentional, willful, and/or material misconduct, (3) breach of fiduciary duty and/or breach of the duty of loyalty, (4) breach of any of the restrictive covenants described herein, and/or (5) violation of any Company policy. The Company's determination that Cause exists under (A) or (C) above may only be made after providing at least 14 days' notice to Employee of its intent to terminate Employee for Cause and permitting Employee the right, either individually or through his counsel, to present evidence to the contrary to the Company.

  o "Good Reason" Definition. For purposes of this Agreement, Good Reason means, without Employee's consent, (A) any material diminution of Employee's position, authority and duties under this Agreement, including the reassignment of the Employee to a position that is not the GC or the assignment to duties that are not consistent with the GC position; (B) diminution of Employee's Base Salary; (C) any material breach by the Company or any affiliate of any of its obligations under this Agreement; (D) a Change-in-Control or a winding down of the Company that materially impacts Employee's position, authority, or duties under this Agreement; or (D) failure of the Company to obtain the assumption in writing of its obligation to perform this Agreement by any successor to all or substantially all of the assets of the Company within 15 days after any merger, consolidation, sale or similar transaction, except where such assumption occurs by operation of law. Notwithstanding the above provisions, a condition is not considered "Good Reason" unless (a) Employee gives the Company written notice of such condition within 30 days after the condition comes into existence; (b) the Company fails to cure the condition within 10 days after receiving Employee's written notice unless such a cure cannot reasonably be completed within 10 days and the Company is diligently pursuing a cure it will nevertheless be a cure as long as it is carried through to fruition; and (c) Employee terminates employment within 60 days after the expiration of the Company's cure period if the termination is to be treated as for Good Reason based on the uncured Good Reason event.

- **Compensation and Benefits upon Termination.** If the Company terminates Employee's employment without Cause or if Employee resigns for Good Reason, the Company shall pay or provide Employee the sum of:

DocuSign Envelope ID: E5C77D6A-8302-472E-B90F-A1CEEE7579B3

    (1)      Any accrued or unvested Incentive Amounts;

    (2)      An amount equal to the sum of Employee's Base Salary as of such termination date; and

    (3)      The continuation of all Company benefits, including medical, dental, vision, life, and disability benefits under which Employee was receiving benefits and/or coverage, for the 12 month period following the date of the Employee's termination, with such benefits provided to the Employee at no less than the same coverage level as in effect as of the date of termination.

## 4.   Indemnification of Employee

To the maximum extent permitted by law, the Company and its respective successors and assigns, shall indemnify, protect, defend and hold Employee harmless from, for, and against any and all claims, liabilities, liens, fines, demands, lawsuits, actions, losses, damages, injuries, judgments, settlements, costs or expenses whether asserted in law or in equity and including any claims made by regulatory agencies asserted against the Employee arising out of, in whole or in part, the actions or commissions of the Employee, other than those which have arisen from the Employee's gross negligence, willful misconduct, or breach of this Agreement (hereinafter, collectively, "Claims"). Employer shall advance all expenses, including reasonable attorney's fees and costs of court-approved settlements, actually or necessarily incurred by Employee in connection with the defense of any action, suit, or proceeding and in connection with any appeal, which has been brought against Employee by reason of his service as an officer or agent of the Company and shall continue to provide such costs and expenses of defense to the Employee until the matter is fully resolved by either final judgment, settlement, or other release executed by the Employee. The Company indemnifies the Employee from, for and against all Claims, including, without limitation, all legal

fees, costs and expert fees and costs that the Employee may directly or indirectly sustain, suffer or incur as a result thereof. The Company shall and does hereby assume on behalf of the Employee, upon its demand, the amount of any costs allowed by law, and costs identified herein, any settlement reached or any judgment that may be entered against the Employee, as a result of such Claims. The obligations of the Company pursuant to this Section will survive the expiration or earlier termination of the Employees employment.

**5.    Insurance**

The Company shall reimburse the Employee 100% of health/dental/vision insurance costs for himself and all his immediate dependents. Coverage is determined in accordance with company policy depending on the region in which the Employee is domiciled.

**6.    Working Hours and Days Off:**

Working hours shall be from 10:00 to 19:00 on Monday through Friday, with a recess period from 13:00 to 14:00. Every Saturday shall be unpaid day off. The weekly day off and Labor Day shall be paid holidays. The Company may modify the working hours according to the Company's work requirements, in which case the Company shall give prior notice of such modifications.

**7.    Annual Paid Leave:**

The Employee will be allowed to take unlimited days of annual leave, provided that this paid annual leave does not materially impede the growth and output of the Company. For purposes of accrual and payout of unused paid annual leave, the amount of paid annual leave granted to the Employee shall be deemed as one (1) day of paid leave per each completed month of service.

**8.    Non-competition, Non-disclosure of Information, etc.:**

During the period of this Agreement, the Employee shall not perform any services for any competitor of the Company or any subsidiary of a competitor, nor shall the Employee otherwise serve any conflicting interest unless the Company first consents in writing. During the term of employment under this Agreement, any and all information about the Company or information that the Employee obtains during the course of performing his/her duties shall be proprietary and shall be maintained in confidence. The Employee agrees not to disclose such information without the prior written consent of the Company during the term of this Agreement and even after termination of employment. With respect to specific matters relating thereto and matters to be observed by the Employees, Appendix 1 shall apply.

**9.    Work-made-for hire**

(1)    All rights and names of any and all products including but limited to invention, conception, design, creation, computer program, R&D outcome, sales strategy, idea, other know-how, etc. which the Employee has completed in connection with Company business during the period of his/her employment with the Company (hereinafter "Intellectual Property Rights, etc.") shall fully be assigned to the Company. Unless the Employee proves that Intellectual Property Rights, etc., completed by the Employee within one (1) year following the termination of his/her employment with the Company is not, in any way whatsoever, related to the Company business during the period of his/her employment with the Company, all rights and names in respect of such Intellectual Property Rights, etc. shall entirely be assigned to the Company.    If there

DocuSign Envelope ID: E5C77D6A-8302-472E-B20F-81CEEE7579B3

are any rights including moral rights and the like, which are not assignable by nature or under the law, the Employee shall waive the right related thereto and shall not exercise it.

(2)    The Employee shall be entitled to compensation for the assignment of rights to Intellectual Property Rights, etc. pursuant to the relevant regulations of the Company to the extent prescribed by applicable laws and regulations. If the Employee receives compensation as stated above, he/she shall not make any further request or claim including request for payment of compensation with respect there to.

**10. Company Regulations:**

The Employee shall fully comply with all Company regulations.

**11.   Access to Communication System, etc. and Employee Data Collection**

The Employee shall use internal e-mail, voice mail and computer systems, etc. for work purposes and shall not use them for personal purposes as consented in Appendix 2. The Employee hereby expressly consents to the processing (including collection, use, and local and international transmission to databases of the Company's group or third-party contractors storing such data on the Company's behalf) of his/her personal data.   The Employee may request and obtain access to his/her own personal data (where collected), and correct or delete such data (where appropriate).

**12.   Termination:**

The Company may terminate this Agreement by giving the Employee 30 days' advance notice or payment of 30 days' ordinary wage in lieu thereof. When the Employee desires to voluntarily resign from the Company, he/she shall submit a written resignation at least 30 days prior to the intended resignation date to the Company and continue to perform his/her duties until the Company accepts his/her resignation, and thereafter, shall diligently transfer his/her duties to his/her successor.

## 13.  Others:

This Agreement is governed by the laws of Singapore.

This Agreement constitutes the entire agreement of the parties relating to the subject matter addressed in this Agreement. This Agreement supersedes all prior communications, contracts, or agreements between the parties with respect to the subject matter addressed in this Agreement, whether oral or written.

This Agreement was entered into on  <u>August 12, 2021</u>

**Employee**                                      **Terraform Labs PTE LTD.**

Name: ███████         (signature or seal)     Name: ██████      (signature or seal)

Date: <u>2021-08-12</u>                           Date: <u>2021-08-12</u>

Appendix 1

## CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

Terraform Labs PTE LTD (hereinafter the "Company") and ██████████ (hereinafter "I") enter into the Confidentiality and Non-competition Agreement as below.

## 1.   Confidentiality

As an officer or employee of the Company, I agree that I will not disclose or use the Proprietary Information of the Company or its customers, except as required in the course of my employment, either during my employment or after its conclusion, without the prior written consent of the Company.   "Proprietary Information" as used in this Agreement shall mean all materials, product information, vendor information, customer information, designs, plans, specifications, intellectual property and intellectual property applications, trade secrets, sales/marketing information, computer applications, methods of doing business, personnel related information, and any other proprietary information and data, that I may obtain as a result of or in connection with my employment with the Company from the Company or its customers or affiliates.   At the Company's request or upon conclusion of my employment, I will deliver or return to the Company the originals and all copies of the Proprietary Information then in my possession or under my control.

## 2.   Non-competition & Non-solicitation

I shall not, during my employment with the Company and for one (1) year immediately thereafter, directly or indirectly, for myself or on behalf of or in conjunction with any person,

DocuSign Envelope ID: E5C77D6A-8302-473E-B80F-01CFE5757B03

do any one or more of the following:

(1)   divert, take away, or attempt to take away any account which I solicited or sold while an employee of the Company, or learned of from customer information furnished to me by a current or former employee or agent of the Company;

(2)   directly engage in a business that is the same type of business conducted by the Company whether on my own account or third parties' account, or be employed by other companies engaging in the same type of business; or

(3)   solicit, induce, entice, hire or attempt to hire away or employ any employee or agent of the Company or its customers.

With respect to confidentiality and non-competition, etc., I understand my obligations as an officer or employee of the Company as described above and hereby covenant to fulfill such obligations in good faith.   I hereby acknowledge and agree that failure to comply with any of the foregoing covenants would lead me to any disciplinary action from the Company and any and all civil and/or criminal liabilities including compensation for damages.

Date:  2021-08-12
       _____

Confirmed by   (Name/Signature)

<u>Appendix 2</u>

**Written Consent**
**to the**
**Monitoring of Computer and E-mail Systems, etc.**

With regard to the computer and other e-mail systems provided by Terraform Labs PTE LTD
(hereinafter the "Company"), ▮▮▮▮▮ (hereinafter the "Employee") consents to familiarize
and comply with the following:

1.  The e-mail systems in this written consent means all communication methods including,
    but not limited to, e-mail and voice mail by means of Internet and other e-mail systems.

2.  All data prepared, amended, copied, received, sent, or saved in the Company's system shall
    be presumed to be the Company's property and the Company will restrict Employees from
    using for personal uses.

3.  In particular, it is strictly prohibited to send information and/or materials including, but not
    limited to, internal information or data classified as confidential for business purposes to
    an unauthorized person or organization, materials regarding personal information of other
    Employees or information containing sexual abuse or racial discrimination, illegal and
    immoral materials, or political, social or religious materials which may cause social
    criticism.

4.  Employees shall strictly adhere to the above regulations, and the Company may,
    periodically or not periodically, monitor Employees' computer or the e-mail systems in
    order to observe whether Employees are following the above regulations.

5.  The Company may, at its discretion, delete transmitted, received or sent messages and may
    also take disciplinary actions, based on relevant Company regulations, if any of the
    following are discovered as a result of the Company's monitoring: Employees' transmitting
    or receiving information irrelevant to office; Employees' transmitting information and/or
    data classified as confidential out of the office; or Employees' intending to commit or
    having committed any of above items.

Date:  2021-08-12
       _____

Confirmed by  ▮▮▮▮▮  (Name/Signature)



-  11  -