IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
:
In re                                                        :    Chapter 11
:
**TERRAFORM LABS PTE. LTD.,**                                :    Case No. 24–10070 (BLS)
:
Debtor.[1]                                                   :    Obj. Deadline: March 21, 2024 at 4:00 p.m.
:    Hr'g Date: April 18, 2024 at 10:00 a.m.
:
------------------------------------------------------------ x

## APPLICATION OF DEBTOR FOR AUTHORITY TO EMPLOY AND RETAIN RAHMAN RAVELLI SOLICITORS AS SPECIAL FOREIGN COUNSEL TO TERRAFORM LABS PTE. LTD., EFFECTIVE AS OF THE PETITION DATE

Terraform Labs Pte. Ltd., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), respectfully represents as follows in support of this application (the "**Application**"):

### Background

1. On January 21, 2024 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On February 29, 2024, the United States Trustee for Region 3 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in this chapter 11 case.

3. Additional information regarding the circumstances leading to the commencement of this chapter 11 case and the Debtor's business and operations is set forth in the

---

[1] The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

*Declaration of Chris Amani in Support of Debtor's Chapter 11 Petition and First Day Relief* [Docket No. 18] (the "**First Day Declaration**"),[2] filed on the Petition Date and incorporated herein by reference.

### Jurisdiction

4. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

6. By this Application, pursuant to sections 327(e), 328(a), and 330 of title 11 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2014-1 and 2016-1, the Debtor requests entry of an order (i) authorizing the Debtor to employ and retain Rahman Ravelli Solicitors ("**Rahman**" or the "**Firm**") as special foreign counsel to the Debtor, in connection with the Debtor's application to seek discovery in the United Kingdom (the "**UK**") from Wintermute Trading Ltd. ("**Wintermute**") and the ongoing litigation related thereto (the "**Wintermute Litigation**"),

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

pursuant to the terms and conditions set forth in that certain engagement letter between Rahman and the Debtor dated July 21, 2023 (the "**Engagement Letter**"), effective as of the Petition Date (as defined below) and (ii) granting related relief.

7. In support of this Application, the Debtor submits (i) the *Declaration of Azizur Rahman* (the "**Rahman Declaration**"), a managing partner at Rahman, annexed hereto as **Exhibit A** and incorporated herein by reference, and (ii) the *Declaration of Peter Hsieh* (the "**Hsieh Declaration**"), the Debtor's General Counsel, annexed hereto as **Exhibit B** and incorporated herein by reference.

8. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit C** (the "**Proposed Order**").

**Retention of Rahman**

9. As set forth in detail in the First Day Declaration, the Debtor is party to certain securities litigation in the Southern District of New York captioned *SEC v. Terraform Labs Pte. Ltd., et al.*, Case No. 23 Civ. 1346 (JSR) (S.D.N.Y.) (the "**SEC Enforcement Action**"). In connection with the SEC Enforcement Action, Judge Rakoff issued certain letters of request (the "**Letters of Request**") pursuant to the Hague Evidence Convention[3] to request discovery from third parties, including Wintermute. Wintermute commenced the Wintermute Litigation prior to the Petition Date to oppose such discovery requests.

10. On July 21, 2023, the Debtor engaged Rahman to represent it in connection with the Letters of Request and the Wintermute Litigation, which litigation remains ongoing.

---

[3] "**Hague Evidence Convention**" means the Convention of 18 March 1970 on Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature, Mar. 18, 1970, 23 U.S.T. 2555, under which U.S. Courts may "request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act." Hague Evidence Convention Chapter I, Article 1.

Accordingly, by this Application, the Debtor requests authority to retain and employ Rahman as special foreign counsel in respect to the Letters of Request and the Wintermute Litigation.

### Rahman's Qualifications

11. The Debtor seeks to retain Rahman as special foreign counsel to the Debtor given the Firm's extensive knowledge, expertise, and experience in the field of cryptocurrency, complex litigation, cross-border investigations, and white collar crime. The Debtor requires separate counsel in the UK in relation to the Wintermute Litigation, given it is taking place in the UK and due to the complexity of the litigation, the discovery process, and the unique issues they present. The Debtor believes that retaining knowledgeable, experienced, and independent UK counsel to advise the Debtor is appropriate and necessary to maximize the value of the Debtor's estate and allow the Debtor to diligently perform its duties. Further, the Debtor believes that Rahman is uniquely qualified to advise the Debtor in connection with UK litigation and discovery laws in relation to this Chapter 11 Case, especially given that Wintermute is an entity based in Cheshire, England, in the UK. Moreover, as a result of Rahman's representation of the Debtor in the Wintermute Litigation prior to the Petition Date, Rahman possesses an in-depth knowledge of such litigation. Accordingly, Rahman possesses the necessary background and knowledge to address the potential legal issues that may arise in the Wintermute Litigation, including issues related to the Letters of Request.

12. Rahman is a law firm based in the UK with approximately 19 attorneys in two offices. The members of the Firm practice in many practice areas, including complex litigation and arbitration, regulatory and compliance, reputation and crisis management, cross-border investigations, white collar crime, and private prosecution. In addition, Rahman has represented clients in large and complex cross-border investigations involving allegations of white-collar crime by national and international enforcement agencies. Rahman offers expertise in litigation and

discovery in the UK that other firms, especially firms based in the United States, cannot offer. As set forth in the Rahman Declaration, Rahman's knowledge, expertise, and experience will enable the Firm to perform its services to the Debtor in an efficient and cost-effective manner. Accordingly, the Debtor submits that Rahman should be retained as special foreign counsel to the Debtor in this Chapter 11 Case effective as of the Petition Date.

**Professional Compensation and Expense Reimbursement**

13. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. *See* 11 U.S.C. § 328(a). Rahman intends to apply for compensation for professional services rendered in connection with this Chapter 11 Case, subject to the approval of this Court and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Rahman.

14. Rahman has advised the Debtor that Rahman's current hourly rates are in the following ranges:

| Professional | Hourly Rate |
|---|---|
| Managing Partner | £725.00 |
| Partner | £650.00 |
| Legal Director/Of Counsel | £600.00 |
| Senior Associate | £500.00 |
| Associate | £450.00 |
| Trainee Solicitor/Paralegal | £250.00 |

5

15. Rahman has explained to the Debtor that the hourly rates set forth above (a) are set at a level designed to fairly compensate Rahman for its work and to cover fixed and routine overhead expenses, (b) are standard for services of this nature inside or outside bankruptcy, and (c) remain subject to periodic, Firm-wide adjustments in the ordinary course of Rahman's business.

16. It is Rahman's policy to charge its clients in all areas of practice and for all other expenses incurred in connection with the client's matters.  The expenses charged to clients include, among other things, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for working meals, computerized research, and transcription costs, as well as non-ordinary overhead expenses such as overtime for secretarial personnel and other staff.  Rahman will charge the Debtor's estate for these expenses in a manner and at rates consistent with charges made generally to Rahman's clients outside of bankruptcy.  Rahman believes that these expenses should be fairly charged to the clients incurring them rather than to increase the hourly rates and spread the expenses among all clients.

17. In addition, pursuant to the Engagement Letter, Rahman charges the debtor for disbursements or costs that the Firm may have to pay to third parties (for example, barristers, experts, investigators) on the Debtor's behalf.

18. In addition, Rahman intends to seek compensation for all time and expenses associated with its retention in accordance with sections 330 and 331 of the Bankruptcy Code and any orders of this Court, including the preparation of the Application, this Declaration, and related documents, as well as any monthly fee statements or interim or final fee applications and related issues.

19. Further, Rahman also intends to make a reasonable effort to comply with the Office of the United States Trustee for the District of Delaware's (the "**U.S. Trustee**") requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. 330 by Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "**Fee Guidelines**"), both in connection with this Application and any interim and final fee applications to be filed by Rahman in this Chapter 11 Case.[4]

20. Other than as set forth herein, there is no proposed arrangement to compensate Rahman. Rahman has not shared, nor agreed to share, (a) any compensation it has received or may receive with any other party or person, other than with the shareholders, counsel, associates, and employees of Rahman, or (b) any compensation another person or party has received or may receive.

21. Rahman is owed approximately £231,922.67 for fees and expenses incurred prior to the Petition Date.[5] An accounting summary of outstanding invoices and the Pre-Filing Fees (defined below) paid to Rahman in the 90 days prior to the Petition Date is set forth in **Schedule 2** to the Rahman Declaration. During the 90-day period prior to the Petition Date, Rahman was paid fees in the aggregate amount of £394,530 (the "**Pre-filing Fees**"). Rahman applied the Pre-filing Fees against invoices issued by Rahman when they became due and payable leaving a balance of £108,702.50 (the "**Retainer Balance**"). Rahman intends to use the Retainer

---

[4] Further information regarding Rahman's compliance with the Fee Guidelines is set forth in the Rahman Declaration.

[5] Courts have recognized "having claims against the estate for unpaid prepetition professional fees does not amount to an 'interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed' for purposes of § 327(e)." *In Re Mallinckrodt PLC*, 2022 WL 906462, at *6 (D. Del. Mar. 28, 2022) (quoting *In re DeVlieg, Inc.*, 174 B.R. 497, 503 (N.D. Ill. 1994)); *accord In re Potter*, 2009 WL 2922850, at *1 (Bankr. D.N.M. June 12, 2009); *In re EBW Laser, Inc.*, 333 B.R. 351, 359 & n.3 (Bankr. M.D.N.C. 2005); *In re Henlar, Ltd.*, 1997 WL 4567 at *1, 3-4 (E.D. La. Jan. 6, 1997).

Balance to satisfy any unpaid prepetition invoices. For the avoidance of doubt, Rahman is not seeking repayment of its outstanding prepetition claim for fees and expenses after the Retainer Balance is applied other than as provided for under the Bankruptcy Code.

22. Rahman bills the Debtor for its services on a monthly basis by providing itemized statements, comprised of the time entries of each individual timekeeper who provided services to the Debtor and an itemized list of expenses incurred for which reimbursement is sought. Rahman will maintain records, in 1/10 of an hour increments, in support of any fees incurred in connection with the rendering of its services in this Chapter 11 Case by category and nature of the services rendered. Rahman will file such records with the Court, which will include reasonably detailed descriptions of those services provided, the approximate time expended in providing those services, and the individuals who provided such professional services on behalf of the Debtor.

23. Rahman will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Rahman's applications for compensation and expenses will be paid by the Debtor pursuant to the terms of the Engagement Letter, in accordance with any procedures established by the Court.

## No Duplication of Services

24. By separate application, the Debtor has sought or will seek the Court's approval to retain and employ Weil, Gotshal & Manges LLP ("**Weil**") as the Debtor's general bankruptcy counsel, Richards, Layton & Finger, P.A. ("**RLF**") as the Debtor's local bankruptcy counsel, Dentons US LLP ("**Dentons**") as special counsel, WongPartnership LLP ("**WongPartnership**") as special foreign counsel in Singapore, and Kim & Chang ("**K&C**") as special foreign counsel in Korea. For the avoidance of doubt, Rahman's postpetition work is comprised of its representation of the Debtor with respect to the Wintermute Litigation. These matters do not involve the conduct of this Chapter 11 Case. Accordingly, the services rendered

and functions to be performed by Rahman will not be duplicative of any bankruptcy-related work performed by Weil on behalf of the Debtor. Furthermore, Rahman will coordinate with the Debtor's other professionals (i) Alvarez & Marsal North America, LLC, as financial advisor ("**A&M**"), and (ii) Epiq Corporate Restructuring, LLC, as claims and noticing agent and administrative agent ("**Epiq**," and together with Weil, RLF, Dentons, A&M, WongPartnership, and K&C, the "**Retained Professionals**"), to ensure that its services are complementary to and not duplicative of the Retained Professionals' services.

## No Adverse Interest

25. To the best of the Debtor's knowledge, and except as otherwise disclosed herein and in the Rahman Declaration, Rahman (i) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee for the District of Delaware; and (ii) does not hold any interest adverse to the Debtor's estate with respect to the matters for which Rahman is to be employed, as required by section 327(e) of the Bankruptcy Code.

26. Rahman will periodically review its files during this Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new, relevant facts or relationships are discovered or arise during this Chapter 11 Case, Rahman will use reasonable efforts to identify such further developments and will file a supplemental declaration in conformity with Bankruptcy Rule 2014(a).

## Basis for Relief

27. The Debtor seeks to retain Rahman under section 327(e) of the Bankruptcy Code as special foreign counsel for the Debtor to perform necessary legal services during this Chapter 11 Case. Section 327(e) provides that a debtor, subject to court approval:

9

> may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

28. Accordingly, retention of general, non-bankruptcy counsel is permissible so long as: (i) the appointment is in the best interest of the debtor's estate; (ii) counsel does not hold an interest adverse to the estate with respect to the subject matter of its retention; and (iii) the engagement does not amount to conducting the bankruptcy case for the debtor in possession. *See In re DeVlieg, Inc.*, 174 B.R. 497 (N.D. Ill. 1994); *In re Carla Leather, Inc.*, 44 B.R. 457, 474 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985) ("[Section] 327(e) bars engagement of special counsel only in the presence of an actual conflict of interest concerning the subject matter of the engagement.").

29. Additionally, pursuant to section 328(a) of the Bankruptcy Code, the Debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a) of the Bankruptcy Code permits compensation of professionals on flexible terms that reflect the nature of their services and market conditions. *See In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) [Docket No. 294] (Bankr. D. Del. Nov. 20, 2012) (authorizing the retention and employment of lead counsel to the debtors under sections 327 and 328(a) of the Bankruptcy Code).

30. Furthermore, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

31. The Debtor submits that for all the reasons stated herein and in the Rahman Declaration, the employment and retention of Rahman as special foreign counsel is warranted. Furthermore, as demonstrated by the Rahman Declaration, Rahman does not hold any interest adverse to the Debtor's estate with respect to the matters for which Rahman is to be retained, as required by section 327(e) of the Bankruptcy Code.

### Notice

32. Notice of this Application will be provided to (a) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attn: Linda Richenderfer, Esq. (Linda.Richenderfer@usdoj.gov)); (b) counsel to the Creditor's Committee; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) the United States Securities and Exchange Commission; and (f) any other party entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). The Debtor respectfully submits that no further notice is required.

### No Prior Request

33. No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE the Debtor respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 7, 2024
       Walnut Creek, California

**TERRAFORM LABS PTE. LTD.**

*/s/ Chris Amani*

Name:  Chris Amani
Title:    CEO