IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
: 
In re : Chapter 11
: 
**TERRAFORM LABS PTE. LTD.,** : Case No. 24–10070 (BLS)
: 
Debtor.[1] : Obj. Deadline: Mar. 21, 2024 at 4:00 p.m. (ET)
: Hr'g Date: Apr. 18, 2024 at 10:00 a.m. (ET)
: 
---------------------------------------------------------------- x

**APPLICATION OF DEBTOR
FOR AUTHORITY TO EMPLOY AND RETAIN
WONGPARTNERSHIP LLP AS SPECIAL FOREIGN COUNSEL
TO TERRAFORM LABS PTE. LTD., EFFECTIVE AS OF THE PETITION DATE**

Terraform Labs Pte. Ltd., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), respectfully represents as follows in support of this application (the "**Application**"):

**Background**

1. On January 21, 2024 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On February 29, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in this chapter 11 case (the "**Chapter 11 Case**").

---

[1] The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

3. Additional information regarding the circumstances leading to the commencement of this Chapter 11 Case and the Debtor's business and operations is set forth in the *Declaration of Chris Amani in Support of Debtor's Chapter 11 Petition and First Day Relief* [Docket No. 18] (the "**First Day Declaration**"),[2] filed on the Petition Date and incorporated herein by reference.

## Jurisdiction

4. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

6. By this Application, pursuant to sections 327(e), 328(a), and 330 of title 11 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2014-1 and 2016-1, the Debtor requests entry of an order (i) authorizing the Debtor to employ and retain WongPartnership LLP ("**WongPartnership**" or the "**Firm**") as special foreign counsel to the Debtor, in connection with

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

2

(a) the litigation commenced in the High Court of Singapore on or around September 2022 in a case entitled *Julian Moreno Beltran, et al. v. Terraform Labs Pte Ltd., et al.*, Case No. HC/OC 247/2022 (the "**Litigation**"),[3] (b) regulatory and enforcement investigations by the Monetary Authority of Singapore ("**MAS**" and, such investigation, the "**MAS Investigation**") and the Commercial Affairs Department ("**CAD**" and, such investigation, the "**CAD Investigation**" and together with the MAS Investigation, the "**Investigations**"), and (c) advising the Debtor on Singapore law issues and a prospective Singapore recognition proceeding (the "**Recognition Proceeding**"), pursuant to the terms and conditions set forth in three engagement agreements (the "**Engagement Agreements**") between WongPartnership and the Debtor dated August 20, 2022, January 9, 2024, and January 15, 2024, effective as of the Petition Date and (ii) granting related relief.

7. In support of this Application, the Debtor submits the (i) *Declaration of Smitha Rajan Menon* (the "**Menon Declaration**"), a partner at WongPartnership, which is annexed hereto as **Exhibit A** and incorporated herein by reference, and the (ii) *Declaration of Peter Hsieh* (the "**Hsieh Declaration**"), the Debtor's General Counsel, annexed hereto as **Exhibit B** and incorporated herein by reference.

8. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit C** (the "**Proposed Order**").

## WongPartnership's Qualifications

9. The Debtor seeks to retain WongPartnership as special foreign counsel to the Debtor given the Firm's extensive knowledge, expertise, and experience in Singapore law. The Debtor requires separate counsel in relation to the Litigation, the Investigations and the

---

[3] The Litigation was transferred from the High Court of Singapore to the Singapore International Commercial Court on February 9, 2024 (Case No. SIC/OA 3/2024).

Recognition Proceeding given that they are or will be taking place in Singapore and involve Singapore law, as well as due to the complexity of these matters and the unique issues they present. The Debtor believes that retaining knowledgeable, experienced, and independent Singapore counsel to advise the Debtor is appropriate and necessary to maximize the value of the Debtor's estate and allow the Debtor to diligently perform its duties.

10. As set forth in the Menon Declaration, WongPartnership is a Singapore law firm with more than 300 attorneys. The members of the Firm practice in various practice areas, including corporate and financial services, intellectual property, regulatory, litigation, dispute resolution, restructuring and insolvency, tax, corporate and regulatory investigations, fintech, employment, health sciences, and insurance. In addition, WongPartnership has advised numerous boards of directors, debtors, creditors, and other interested parties, in large and complex bankruptcy proceedings in Singapore as well as cross-border insolvencies and restructurings. WongPartnership offers expertise in Singapore corporate governance and recognition proceedings that other firms, especially firms based in the United States, cannot offer. As set forth in the Menon Declaration, WongPartnership's knowledge, expertise, and experience will enable the Firm to perform its services to the Debtor in an efficient and cost-effective manner. Accordingly, the Debtor submits that WongPartnership should be retained as special foreign counsel to the Debtor in this Chapter 11 Case effective as of the Petition Date.

**Professional Compensation and Expense Reimbursement**

11. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. *See* 11 U.S.C. § 328(a). WongPartnership intends to apply for compensation for professional services rendered in connection with: (i) the Litigation, (ii) the Investigations, and (iii) advice on Singapore law issues and the Recognition Proceeding, subject to the approval of

4

this Court and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by WongPartnership.

12.  WongPartnership has advised the Debtor that the current hourly rates applicable to the principal attorneys proposed to advise the Debtor are:

| Professional | Hourly Rate (S$) | Hourly rate (US$) (approximate)[4] |
|---|---|---|
| Partners | 780 - 1,500 | 580 - 1,120 |
| Associates | 360 - 700 | 270 - 520 |
| Practice Trainees | 250 | 190 |

13.  WongPartnership has explained to the Debtor that the hourly rates set forth above (a) are set at a level designed to fairly compensate WongPartnership for its work and to cover fixed and routine overhead expenses, (b) are standard for services of this nature inside or outside bankruptcy, and (c) remain subject to periodic, Firm-wide adjustments in the ordinary course of WongPartnership's business.

14.  It is WongPartnership's policy to charge its clients in all areas of practice and for all other expenses incurred in connection with the client's matters. The expenses charged to clients include, among other things, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for working meals, and transcription costs, as well as non-ordinary overhead expenses such as overtime for secretarial personnel and other staff. WongPartnership will charge the Debtor's estate for these

---

[4]  The conversion from Singapore Dollars ("**S$**") to United States Dollars ("**US$**") utilized the exchange rate on January 19, 2024 (the last day on which foreign exchange markets were trading before the Petition Date) of US$1:S$1.34.

expenses in a manner and at rates consistent with charges made generally to WongPartnership's clients outside of bankruptcy. WongPartnership believes that these expenses should be fairly charged to the clients incurring them rather than to increase the hourly rates and spread the expenses among all clients.

15. In addition, WongPartnership also intends to make a reasonable effort to comply with the Office of the United States Trustee for the District of Delaware's (the "**U.S. Trustee**") requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. 330 by Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "**Fee Guidelines**"), both in connection with this Application and with respect to any interim and final fee applications to be filed by WongPartnership in this Chapter 11 Case.[5]

16. Other than as set forth herein, there is no proposed arrangement to compensate WongPartnership. WongPartnership has not shared, nor agreed to share, (a) any compensation it has received or may receive with any other party or person, other than with the partners, counsel, associates, and employees of WongPartnership, or (b) any compensation another person or party has received or may receive.

17. A summary of the prepetition payments made by the Debtor to WongPartnership in the 90 days prior to the Petition Date is set forth in **Schedule 3** to the Menon Declaration. WongPartnership holds a prepetition retainer of S$325,000 (~US$242,537.31)[6] (the "**Retainer**") as security for payment of WongPartnership's unpaid fees and expenses. The

---

[5] Further information regarding WongPartnership's compliance with the Fee Guidelines is set forth in the Menon Declaration.

[6] The conversion from S$ to US$ was done using the exchange rate on January 19, 2024 (the last day on which foreign exchange markets were trading before the Petition Date) of US$1:S$1.34.

Retainer exceeds the unpaid prepetition fees and expenses by S$63,233.98 (~US$47,189.54) (the "**Retainer Balance**").[7]

18. WongPartnership intends to use the Retainer to satisfy any unpaid prepetition fees and expenses. Subject to this Court's approval, the Retainer Balance will be held as an evergreen retainer.

19. In this district, evergreen retainer agreements reflect normal business terms in the marketplace. *See In re Insilco Tech., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("[T]he practice [of receiving security retainers] in this district has been engaged in since at least the early 1990's."). WongPartnership believes that its request for approval of an evergreen retainer in this Chapter 11 Case satisfies the five-part test articulated by Judge Carey in *Insilco*. First, WongPartnership submits that the proposed terms of its engagement reflect normal business terms in the marketplace. Second, WongPartnership submits that it and the Debtor are sophisticated business entities that have negotiated the Retainer at arm's length and in good faith. Third, WongPartnership believes that approval of the Retainer Balance as an evergreen retainer is in the best interests of the Debtor's estate because it ensures the Debtor has access to highly skilled and experienced Singapore counsel with respect to advising the Debtor on the Litigation, the Investigations, Singapore law issues and Recognition Proceeding given that they are or will be taking place in Singapore and involve Singapore law. Fourth, WongPartnership is currently unaware of any creditor opposition to the approval of the Retainer Balance as an evergreen retainer. Fifth, given the size, circumstances, and posture of this Chapter 11 Case, WongPartnership believes that approval of the Retainer Balance as an evergreen retainer (particularly in light of the

---

[7] The conversion from S$ to US$ was done using the exchange rate on January 19, 2024 (the last day on which foreign exchange markets were trading before the Petition Date) of US$1:S$1.34.

modest size of the Retainer Balance as compared to the size of this Chapter 11 Case) provides it with an appropriate level of risk minimization in connection with the payment of its prospective fees and costs incurred for services performed in this Chapter 11 Case.

20. WongPartnership bills the Debtor for its services by providing itemized statements, comprised of the time entries of each individual timekeeper who provided services to the Debtor and expenses incurred. WongPartnership will maintain records, in 1/20 of an hour increments, in support of any fees incurred in connection with the rendering of its services during this Chapter 11 Case by category and nature of the services rendered. WongPartnership will file such records with the Court, which will include reasonably detailed descriptions of those services provided, the approximate time expended in providing those services, and the individuals who provided such professional services on behalf of the Debtor.

21. WongPartnership will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. WongPartnership's applications for compensation and expenses will be paid by the Debtor pursuant to the terms of the Engagement Agreements (as may be modified by an order granting this Application), in accordance with any procedures established by the Court; provided, that the Debtor proposes that, in connection with WongPartnership's request for reimbursement for fees, disbursement, and other charges of its external legal counsel in respect of its retention and its fee applications, the invoices and supporting time records from such attorneys shall be included in WongPartnership's own monthly, interim and final applications.

**No Duplication of Services**

22. By separate application, the Debtor has sought the Court's approval to retain and employ Weil, Gotshal & Manges LLP ("**Weil**") as the Debtor's general bankruptcy counsel, Richards, Layton & Finger, P.A. ("**RLF**") as the Debtor's local bankruptcy counsel, and

Dentons US LLP ("**Dentons**") as special counsel. For the avoidance of doubt, WongPartnership's postpetition work is comprised of its representation of the Debtor with respect to the Litigation, the Investigations, and advising the Debtor on Singapore law issues and the Recognition Proceeding. These matters do not directly involve the conduct of this Chapter 11 Case. Accordingly, the services rendered and functions to be performed by WongPartnership will not be duplicative of any bankruptcy-related work performed by Weil, RLF or Dentons on behalf of the Debtor. Furthermore, WongPartnership will coordinate with the Debtor's other professionals, including (i) Alvarez & Marsal North America, LLC ("**A&M**"), financial advisor, (ii) Kim & Chang ("**K&C**"), special foreign counsel in Korea, (iii) Epiq Corporate Restructuring, LLC ("**Epiq**"), claims and noticing agent and administrative agent, and (iv) Rahman Ravelli Solicitors ("**Rahman**"), special litigation counsel in the United Kingdom (collectively, Weil, RLF, A&M, K&C, Epiq, Dentons, and Rahman, the "**Retained Professionals**") to ensure that its services are complementary to and not duplicative of the Retained Professionals' services.

## No Adverse Interest

23. To the best of the Debtor's knowledge, and except as otherwise disclosed herein and in the Menon Declaration, WongPartnership (i) has no connection with the Debtor, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the U.S. Trustee or any person employed in the Office of the United States Trustee for the District of Delaware; and (ii) does not hold any interest adverse to the Debtor's estate with respect to the matters for which WongPartnership is to be employed, as required by section 327(e) of the Bankruptcy Code.

24. As disclosed in the Menon Declaration, the Firm currently represents the Debtor's former CEO, Kwon Do Hyeong ("**Do Kwon**"), and Luna Foundation Guard, Ltd ("**LFG**") (in addition to the Debtor) in the Litigation and Investigations. The Firm also renders

9

corporate governance advice to LFG that is unrelated to this Chapter 11 Case. WongPartnership has fully informed the Debtor of its ongoing representation of Do Kwon and LFG, and the Debtor has consented to the Firm's continued representation of Do Kwon and LFG in matters unrelated to this Chapter 11 Case.

25. WongPartnership will periodically review its files during this Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new, relevant facts or relationships are discovered or arise during this Chapter 11 Case, WongPartnership will use reasonable efforts to identify such further developments and will file a supplemental declaration in conformity with Bankruptcy Rule 2014(a).

## Basis for Relief

26. The Debtor seeks to retain WongPartnership under section 327(e) of the Bankruptcy Code as special foreign counsel for the Debtor to perform necessary legal services during this Chapter 11 Case. Section 327(e) provides that a debtor, subject to court approval:

> may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

27. Accordingly, retention of general, non-bankruptcy counsel is permissible so long as: (i) the appointment is in the best interest of the debtor's estate; (ii) counsel does not hold an interest adverse to the estate with respect to the subject matter of its retention; and (iii) the engagement does not amount to conducting the bankruptcy case for the debtor in possession. *See In re DeVlieg, Inc.*, 174 B.R. 497 (N.D. Ill. 1994); *In re Carla Leather, Inc.*, 44 B.R. 457, 474 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985) ("[Section] 327(e) bars engagement

of special counsel only in the presence of an actual conflict of interest concerning the subject matter of the engagement.").

28. Additionally, pursuant to section 328(a) of the Bankruptcy Code, the Debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a) of the Bankruptcy Code permits compensation of professionals on flexible terms that reflect the nature of their services and market conditions. *See In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) [Docket No. 294] (Bankr. D. Del. Nov. 20, 2012) (authorizing the retention and employment of lead counsel to the debtors under sections 327 and 328(a) of the Bankruptcy Code).

29. Furthermore, Bankruptcy Rule 2014(a) requires that an application for retention include:

> specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

30. The Debtor submits that for all the reasons stated herein and in the Menon Declaration, the employment and retention of WongPartnership as special foreign counsel is warranted. Furthermore, as demonstrated by the Menon Declaration, WongPartnership does not hold any interest adverse to the Debtor's estate with respect to the matters for which WongPartnership is to be retained, as required by section 327(e) of the Bankruptcy Code.

## Notice

31.     Notice of this Application will be provided to (a) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington Delaware 19801 (Attn: Linda Richenderfer, Esq. (Linda.Richenderfer@usdoj.gov)); (b) counsel to the Creditors' Committee; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) the United States Securities and Exchange Commission; and (f) any other party entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  The Debtor respectfully submits that no further notice is required.

## No Prior Request

32.     No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE the Debtor respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 7, 2024
          Walnut Creek, California

**TERRAFORM LABS PTE. LTD.**

*/s/ Chris Amani*

Name:  Chris Amani
Title:  CEO