IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
:
In re                                  :   Chapter 11
:
TERRAFORM LABS PTE. LTD.,              :   Case No. 24–10070 (BLS)
:
Debtor.[1]                             :   Re: Docket Nos. 60 & 61
:
------------------------------------------------------------ x

**DECLARATION OF JOHN S. DUBEL IN
SUPPORT OF THE (I) APPLICATION OF DEBTOR FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF DENTONS US LLP
AS SPECIAL COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION
EFFECTIVE AS OF THE PETITION DATE AND (II) MOTION OF DEBTOR
FOR ENTRY OF ORDERS PURSUANT TO SECTIONS 363, 503(B), AND 105(A)
OF THE BANKRUPTCY CODE AUTHORIZING DEBTOR TO PAY CERTAIN
AMOUNTS IN FURTHERANCE OF LITIGATION AND GRANTING RELATED RELIEF**

I, John S. Dubel, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury:

1. I have served as an independent director of the board of directors (the "**Board**") of Terraform Labs Pte. Ltd. (the "**Debtor**") since January 19, 2024. I have also served as the sole member of the special committee of the Board (the "**Special Committee**") since its formation on January 21, 2024.

2. I submit this declaration (the "**Declaration**") in support of (i) the *Application of Debtor for Entry of an Order Authorizing the Retention and Employment of Dentons US LLP as Special Counsel to the Debtor and Debtor in Possession Effective as of the Petition Date* [Docket No. 60], filed on February 13, 2024 (the "**Dentons Retention Application**"), and (ii) the *Motion of Debtor for Entry of Orders Pursuant to Section 363, 503(b), and 105(a) of the Bankruptcy Code*

---

[1] The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

*Authorizing Debtor to Pay Certain Amounts in Furtherance of Litigation and Granting Related Relief* [Docket No. 61], filed on February 13, 2024 (the "**Litigation Payments Motion**").[2]

3.  I have over 40 years of extensive experience in board representation, corporate governance, crisis management, operational restructurings, corporate acquisition/divestments, and creating value for stakeholders. I have served in various roles, including as a member of and chair of boards of directors, chief executive officer, chief restructuring officer, president, chief operating officer, chief financial officer, and as an outside advisor. Specifically, I have served on the board of, or been part of the management of, numerous companies in high-profile, contentious restructuring situations, including serving as the Special Committee Chairman of Purdue Pharma Inc., Chief Financial Officer of WorldCom, Inc. (after discovery of massive fraud), Chief Executive Officer and Chief Restructuring Officer of SunEdison, Inc., and as an independent board member for Highland Capital Management, LP and WMC Mortgage, LLC, among numerous others.

4.  Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge; my opinion based on my experience in board representation, corporate governance, crisis management, and operational restructuring; and my discussions with the Debtor's officers and advisors, including professionals at Weil, Gotshal & Manges LLP ("**Weil**"), Alvarez & Marsal North America LLC ("**A&M**"), Richards, Layton & Finger, P.A. ("**RLF**"), WongPartnership LLP ("**WP**"), and Dentons US LLP ("**Dentons**," collectively with Weil, A&M, RLF, and WP the "**Advisors**"). If called upon to testify, I would testify competently to the facts set forth in this Declaration.

---

[2] Capitalized terms used but not defined in this Declaration shall have the meanings ascribed to them in the Litigation Payments Motion or the *Debtor's Omnibus Reply to Objections to Motion of Debtor for Entry of Orders Pursuant to Sections 363, 503(B), and 105(A) of the Bankruptcy Code Authorizing Debtor to Pay Certain Amounts in Furtherance of Litigation and Granting Related Relief* [Docket No. 142], filed on March 4, 2024 (the "**Reply**").

**Independent Board Director and Special Committee Member**

5. I was appointed to the Board as an independent director on January 19, 2024. On January 21, 2024, the Board approved the formation of the Special Committee consisting solely of myself. The Special Committee is authorized to, among other things, (A) conduct and oversee an investigation of (i) the Debtor's and its subsidiaries' assets and liabilities, including issues relating to subsidiary Terraform Labs Limited and (ii) claims and/or causes of action in favor of the Debtor against current and former members of the Board, current and former members of the applicable governing bodies of the Debtor's subsidiaries, and any equity holders of the Debtor; (B) consult with the Advisors to the Debtor to evaluate the legal basis of any such claims and/or causes of action; and (C) act on behalf of, and bind the Debtor and its subsidiaries with respect to any disposition of any such claims and/or causes of action, to prosecute, compromise, settle, exculpate, release, or otherwise dispose of any such claims and/or causes of action, subject to any required approval of the Bankruptcy Court.

6. On January 21, 2024 (the "**Petition Date**"), the Board unanimously authorized the Debtor to commence this chapter 11 case (the "**Chapter 11 Case**"). Since my appointment to the Board and following the Petition Date, the Board has met regularly, on at least a weekly basis. The Special Committee likewise convenes on a weekly basis. Throughout my tenure as an independent director of the Board and Special Committee member, I have worked consistently to uphold my fiduciary duties by independently exercising my oversight of the Debtor's business and restructuring process and assisting the Board in exercising its business judgement in respect to key decisions, including, but not limited to, approving the Dentons Retention Application and Litigation Payments Motion.

3

**Dentons Retention Application**

7. It is my understanding that the Debtor engaged Dentons as counsel in May 2021. Prior to the Petition Date, Dentons represented the Debtor in respect to the ongoing SEC Enforcement Action and the DOJ Investigation, among other matters.

8. It is also my understanding that prior to the Petition Date, the Debtor made a number of transfers of cryptocurrency to Dentons, which upon receipt, in accordance with the terms of the Debtor's engagement letter with Dentons (the "**Dentons Engagement Letter**"), were converted to fiat currency (USD) and held in a Dentons savings account as an advance payment retainer (collectively, the "**Advance Payment Retainer**"). This payment structure was necessary because the Debtor did not have access to a bank account as a result of the SEC Enforcement Action. I further understand that subject to the Bankruptcy Court's approval, Dentons will apply the Advance Payment Retainer to pay all outstanding prepetition invoices, as detailed in the Litigation Payments Motion, related to litigation involving the Debtor.

9. The Debtor, with the assistance of Dentons, has continued to prepare for its defense in the jury trial for the remaining claims in the SEC Enforcement Action (the "**SEC Jury Trial**"), which is scheduled to commence on March 25, 2024. An adverse outcome in the SEC Enforcement Action would be significantly detrimental to the Debtor's viability as a going concern.

10. It is my understanding that, due to the size of the money judgment the SEC seeks to enforce in the SEC Enforcement Action, the Debtor would likely not be able to satisfy such judgment, nor would it be able to post the supersedeas bond required to bring an appeal. The SEC's complaint filed in the SEC Enforcement Action alleges that the Debtor is liable for over $40 billion

of losses on account of unregistered transactions and perpetration of alleged securities fraud.[3] Therefore, the Debtor filed this Chapter 11 Case and sought protection of the automatic stay afforded by the Bankruptcy Code.

11. On January 21, 2024, in addition to executing the resolutions approving the Debtor filing this Chapter 11 Case, and the retention of restructuring advisors, including Weil, RLF, WP, and A&M, the Board unanimously approved the retention of Dentons as special counsel in this Chapter 11 Case.

12. On February 14, 2024, the Debtor filed the Dentons Retention Application.

13. On March 6, 2024, in light of objection to the Dentons Retention Application by the SEC, United States Trustee, and newly formed Unsecured Creditors' Committee, the Special Committee held a meeting (the "**March 6 Special Committee Meeting**") to, among other things, review and ratify the Board's decision to seek authorization to retain Dentons as special counsel. In connection with the Special Committee meeting, I reviewed materials prepared and distributed in advance of the meeting, and I posed a number of questions to Mark Califano of Dentons regarding the Debtor's retention of Dentons.

14. Based on Mr. Califano's responses to my questions and my review of the materials provided to me in advance of the Special Committee meeting, it is my understanding that Dentons is no longer representing Do Kwon in any matters. It is also my understanding that Dentons no longer represents Luna Foundation Guard Ltd. ("**LFG**") in the Beltran Action. I understand Dentons is representing both the Debtor and LFG in the DOJ Investigation.

---

[3] Amended Complaint, SEC v. Terraform Labs Pte. Ltd., et al., Civil Action No. 1:23-cv-013460-JSR (S.D.N.Y. Apr. 3, 2023) (Docket No. 25) ¶ 1.

15. In light of Dentons' prepetition representation of the Debtor, its expertise and extensive knowledge of the Debtor's business and financial affairs, the work performed to-date in connection with the SEC Enforcement Action and the DOJ Investigation, and the timing of the upcoming trial in the SEC Enforcement Action, I determined that the Special Committee should ratify the Debtor's retention of Dentons.

16. In addition, I believe that even if the Debtor desired to replace Dentons as counsel in the SEC Enforcement Action, which it does not, the Debtor cannot change counsel at this point, without seeking a significant adjournment in the SEC Jury Trial. I understand that the Court in the SEC Enforcement Action has stated that it will not permit a delay in the commencement of the SEC Jury Trial.[4] Therefore, it would be a value-destructive course of action if the Debtor were to not seek retention of Dentons as special counsel.

17. Based on prior discussions with the Advisors and discussions during the March 6 Special Committee Meeting, and upon the Advisors' views of the viability and merit of the Debtor's defenses in the SEC Enforcement Action, I determined that continuing to prosecute the SEC Enforcement Action, with Dentons as counsel to the Debtor, will maximize value of the estate, is a reasonable use of estate assets, and is a proper exercise of the Debtor's business judgment. To that end, on March 6, 2024, after Mr. Califano was excused from the March 6 Special Committee Meeting, the Special Committee further deliberated and discussed the Dentons Retention Application and thereafter ratified the Board's decision to retain Dentons and seek Bankruptcy Court approval of the Dentons Retention Application.

---

[4] Order, *SEC v. Terraform Labs Pte. Ltd., et al.*, Civil Action No. 1:23-cv-013460-JSR (S.D.N.Y. January 16, 2024) (Docket No. 166) p. 2.

**Litigation Payments Motion**

18. Pursuant to the Litigation Payments Motion, the Debtor seeks Bankruptcy Court authorization to pay certain prepetition and postpetition payments in furtherance of the Debtor's defense to the SEC Enforcement Action and compliance with the DOJ Investigation (the "**Litigation Related Payments**"), including:

   i. Fees and expenses of counsel to certain current and former Employees (as defined in the Litigation Payments Motion) (the "**Employee Counsel**"), including:

      a. Prepetition fees and expenses in an amount not to exceed $355,366.31 (after application of prepetition retainers),

      b. Estimated fees and expenses for the three months following the Petition Date, in an amount not to exceed $2,908,388, subject to the proposed Employee Counsel Payment Procedures (as defined in the Litigation Payments Motion), and

      c. Future claims for indemnification related to legal fees and expenses made by Employees, in an amount not to exceed on a three-month rolling basis, $75,000 per month on average or $225,000 in the aggregate, subject to the Employee Counsel Payment Procedures ((a), (b), and (c), together, the "**Employee Counsel Fees and Expenses**");

   ii. Prepetition claims of certain litigation-related vendors (the "**Critical Vendors**"), in an amount not to exceed $1,300,000; and

   iii. Prepetition and postpetition amounts owed to third parties in connection with discovery-related litigation in foreign courts (the "**Foreign Litigation Claims**"), in an amount not to exceed $184,000.[5]

19. On February 6 and 9, 2024, the Board informally convened to review and discuss with the Advisors the Debtor's request to seek Bankruptcy Court authorization to pay the Litigation Related Payments. On February 12, 2024, the Board held a formal meeting to, among other

---

[5] My understanding is that the Court approved payment of Foreign Litigation Claims relating to Wintermute Trading Ltd., totaling $1,325,000. With this amount already approved, my understanding is that the Debtor is seeking Bankruptcy Court authorization to pay the remaining Foreign Litigation Claims, which total $184,000.

things, approve the Debtor's request to file the Litigation Payments Motion and pay the amounts thereunder subject to Bankruptcy Court approval. The Board unanimously approved the Debtor's request to file the Litigation Payments Motion seeking authorization to pay the Litigation Related Payments, including because (1) of the Debtor's indemnification and payment obligation, (2) the risk that declining to pay the Employee Counsel Fees and Expenses, the Critical Vendors, and the Foreign Litigation Claims would hinder the Debtor's ability to defend itself in the SEC Enforcement Action, and (3) the risk that declining to pay the Foreign Litigation Claims would put the Debtor at risk of incurring penalties

20. I understand from Mr. Califano that since the Petition Date, each Employee Counsel has contacted Mr. Califano and informed him that if they are not paid the Employee Counsel Fees and Expenses, each Employee Counsel will either terminate their representation of the Employees or materially scale back their representation, and/or will no longer assist the Debtor in connection with common interest issues. I also understand that many of the Employees will not or cannot afford to pay for the services of Employee Counsel, and may question whether to continue working for the Debtor if the Debtor does not pay their Employee Counsel Fees and Expenses. With respect to Mr. Kwon, it is my understanding that the Debtor relies on his counsel to facilitate communication with Mr. Kwon essential to the SEC Enforcement Action and corporate governance, among other things.

21. I also understand that if the Employee Counsel terminate their respective services, many Employees that reside outside the United States that are expected to serve as witnesses in the SEC Jury Trial may not be willing to comply with subpoenas issued to them by the Debtor. If the Debtor is unable to obtain the information and testimony from the Employee witnesses, the Debtor's defense in the SEC Jury Trial will be materially negatively affected. For these reasons, it is

essential that the Debtor pay the Employee Counsel Fees and Expenses to eliminate these serious risks.

22. I also asked the Advisors a number of questions regarding the Employees' entitlement to indemnification. I am satisfied, based on the discussion with the Advisors, including Mr. Califano, that the Debtor has an obligation to indemnify its employees and pay the Employee Counsel Fees and Expenses. I am further satisfied that even if there is no indemnification and/or payment obligation, it is in the best interests of the Debtor to pay the Employee Counsel Fees and Expenses to ensure that the Debtor is best positioned to defend itself at trial in the SEC Enforcement Action. I understand, based upon the relief requested in the Litigation Payments Motion, which seeks authorization, but not direction, to make the Litigation Related Payments, that the Debtor, subject to Board review, can decide not to pay postpetition Employee Counsel Fees and Expenses in accordance with the Payment Procedures.

23. During the March 6 Special Committee Meeting, I also asked Mr. Califano a number of questions regarding the proposed payment of the Critical Vendors pursuant to the Litigation Payments Motion. It is my understanding, based on Mr. Califano's responses to my questions, that each of the Critical Vendors' continued postpetition services are essential to the Debtor's preparation for the SEC Jury Trial and that the Debtor cannot risk losing access to their services on the eve of trial.

24. Because an adverse outcome in the SEC Enforcement Action would almost certainly require the Debtor to liquidate and prevent the Debtor's ability to reorganize, it is my strong belief that the Debtor's ability to pay all of the Litigation Related Payments, such that the Debtor is in the best position possible to defend itself in the SEC Enforcement Action and comply with the DOJ Investigation is necessary to the Debtor's continued operations and is in the best interest of all

stakeholders.

25. Based upon my review of the materials presented to me at previous Board meetings and the March 6 Special Committee Meeting, the discussions held with the Advisors at informal and formal Board meetings and the March 6 Special Committee Meeting, and Mr. Califano's and the Advisors' responses to my questions at such meetings, I determined that it is in the best interests of the Debtor's estate to continue to pursue the relief sought in the Litigation Payments Motion, including the payment of the Employee Counsel Fees and Expenses and the payment of the Critical Vendors claims. To that end, on March 6, 2024, after Mr. Califano was excused from the March 6 Special Committee Meeting, the Special Committee further deliberated and discussed the Litigation Related Payments and thereafter ratified the Board's decision to seek authorization to pay the Litigation Related Payments pursuant to the Litigation Payment Motion.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: March 9, 2024
Colts Neck, New Jersey

Respectfully submitted,

By:  */s/ John S. Dubel*
John S. Dubel
Board Director and Special Committee of the Board Member
Terraform Labs Pte. Ltd.