IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| Terraform Labs Pte. Ltd.,[1] | ) Case No. 24-10070 (BLS) |
| Debtor. | ) Related to Docket Nos. 60, 61, & 140 |

**SUPPLEMENT TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
(I) PRELIMINARY OBJECTION TO THE DENTONS US RETENTION
APPLICATION AND THE LITIGATION PAYMENT MOTION AND
(II) REQUEST FOR LIMITED ADJOURNMENT OF HEARING**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the case of the above-captioned debtor and debtor-in-possession (the "Debtor") files this supplement to the *Official Committee of Unsecured Creditors' (I) Preliminary Objection to the Dentons US Retention Application and The Litigation Payment Motion and (II) Request for Limited Adjournment of Hearing* [Docket No. 140] (the "Preliminary Objection"), and respectfully states as follows:[2]

**Preliminary Statement**

1. The Application and the Litigation Payment Motion together are a critical inflection point in the case with potentially huge ramifications for unsecured creditors' recoveries. Since filing the Preliminary Objection, the Committee has worked closely with the Debtor and Dentons US to resolve the Preliminary Objection. The Committee is appreciative of the Court adjourning the hearing for the Litigation Motions, but, unfortunately, the parties have not been able to reach

---

[1] The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Preliminary Objection.

a resolution. Despite this, the Committee has been able to narrow down the issues, and will continue to attempt to do so with the Debtor and Dentons US prior to the hearing.

2.  Although the Committee has gained a better understanding of the SEC Enforcement Action from the Debtor and Dentons, there must be appropriate guardrails in place to ensure that if the Litigation Motions are approved, they are not eroding the value of the Debtor's estate. Such guardrails include, without limitation: (i) the return of the Advanced Payment Retainer to the estate; (ii) a Committee-approved budget that will allow Dentons US to continue to provide services to the Debtor through the trial of the SEC Enforcement Action; (iii) Committee consent or further Court approval to allow Dentons US to continue to seek reimbursement of fees and expenses after the Trial Period (as defined below); (iv) providing Employee Counsels and Critical Vendors with general unsecured claims for prepetition amounts owed to them in lieu of payment in full of those amounts, subject to final Court approval; and (v) terminating the Debtor's obligations to Rodic in the likely event Mr. Kwon is extradited.

3.  Without appropriate safeguards, the Committee must continue to oppose the Litigation Motions for a number of reasons. First, Dentons US cannot have the unfettered ability to continue expending estate resources *after* the trial concludes. The Committee must have the right to reconvene with the Debtor and Dentons US following the trial to determine whether continued litigation efforts are in the best interests of general unsecured creditors—the fulcrum class in this case. The reason is simple—over the coming weeks, the Committee will diligence the merits of the SEC Enforcement Action and the value of the Debtor as a going concern. The Committee may ultimately reach the conclusion that walking away from the SEC Enforcement Action is the most value maximizing path forward in this case.

4.	Second, Employee Counsels and Critical Vendors are not entitled to payment in full of their prepetition fees.  Certain of the Employee Counsels and all of the Critical Vendors are parties to contracts with the Debtors and are obligated to continue to perform under those contracts.  Failing to honor those contracts without cause is a violation of the automatic stay.  The other Employee Counsels at issue have an ethical obligation to continue providing services to their clients.  This is particularly true here given that Employee Counsels and Critical Vendors will be paid in full for postpetition services they provide.  The prepetition amounts owed to them are simply general unsecured claims, which should not be granted priority over other similarly situated general unsecured creditors.

## Background

5.	On January 21, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  On February 29, 2024, the United States Trustee (the "U.S. Trustee") appointed the Committee. *See* Docket No. 101.

6.	On March 4, 2024, the Committee filed the Preliminary Objection objecting to the (i) *Application of Debtor for Entry of an Order Authorizing the Retention and Employment of Dentons US LLP as Special Counsel to the Debtor and Debtor in Possession Effective as of the Petition Date* [Docket No. 60] (the "Application") and (ii) *Motion of Debtor for Entry of Orders Pursuant to Sections 363, 503(b), and 105(a) of the Bankruptcy Code Authorizing Debtor to Pay Certain Amounts in Furtherance of Litigation and Granting Related Relief* [Docket No. 61] (the "Litigation Payment Motion" and together with the Application, the "Litigation Motions").

**Supplemental Objection**

I. **Dentons US Should Return the Advance Payment Retainer.**

7. As discussed in the Preliminary Objection, prior to the Petition Date, the Debtor transferred cryptocurrency to Dentons US, which, in accordance with the terms of the Engagement Letter, purportedly became Dentons US's property upon receipt and was converted to fiat currency (USD) and held in a Dentons US savings account as an advance payment retainer (collectively, the "Advance Payment Retainer"). The amount of the Advance Payment Retainer was an astounding approximately $165 million and Dentons US still holds over approximately $70 million. The Advanced Payment Retainer is held in an interest-bearing account. Accordingly, the Committee has serious concerns that the intent of the retainer was to remove assets from the reach of the Debtor's creditors.

8. The Committee, for the reasons stated herein and in the Preliminary Objection, request that Dentons US return the Advance Payment Retainer, including any interest that has accrued as a result of the retainer.

II. **Dentons US Should Provide the Committee with a Budget for the Trial Period.**

9. As discussed in the Preliminary Objection, because the Debtor has lost access to bank accounts, the Debtor has purportedly used the Advance Payment Retainer, which Dentons US controls, to pay its legal fees and expenses.[3] First Day Decl. ¶ 63. Based on the Debtor's pleadings, it is not possible to determine the amount the Debtor anticipates will be required for each step of the various litigations it faces around the world. Notwithstanding the amount of fees Dentons US has collected and seeks to collect, the Debtor and Dentons US have failed to provide

---

[3] Based on the Debtor's Wages Motion [Docket No. 20], the Debtor has used cryptocurrency to pay its employee obligations and, presumably, other operating expenses.

4

any budget and staffing plan as part of the Application. App. ¶ 34. It is unclear whether such a budget has ever been presented to the Debtor.

10.  If the Court grants the relief requested in the Application, the Committee requests that Dentons US provide the Committee a budget (the "Budget") for the period from January 21, 2024 through and including April 21, 2024 (the "Trial Period"). The Committee further requests that Dentons US provide the Debtor and the Committee with 14-day written notice if it intends to continue to be retained by the Debtor and seek reimbursement of fees and expenses after the Trial Period.

11.  The Committee believes that if the Application is approved, a Budget would be necessary to preserve the value of the Debtor's estate and protect creditors.

III. **The Employee Counsels and Critical Vendors Must Continue Performance.**

12.  As discussed in the Preliminary Objection, the Litigation Payments are tied to a myriad of litigation expenses that extract value from the Debtor's estate. The Committee, however, acknowledges the value that such vendors provide and are only requesting that this Court deny payment of the Employee Counsels' and Critical Vendors' prepetition amounts.

    A. **The Employee Counsel and Critical Vendors Must Continue Performance under the Bankruptcy Code.**

13.  The Debtor has asserted concerns that the Employee Counsels and Critical Vendors will not perform unless they receive payment of their outstanding prepetition claims – effectively terminating or modifying the terms under their contracts. However, the automatic stay protects against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Such property includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Accordingly, terminating a contract without court approval is a clear

violation of the automatic stay. "Courts have consistently held that contract rights are property of the estate, and that therefore those rights are protected by the automatic stay" *In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) (quoting *Elder–Beerman Stores Corp. v. Thomasville Furniture Indus. Inc.*, 195 B.R. 1019, 1023 (Bankr. S.D. Ohio 1996)).

14. Additionally, Bankruptcy Code section 365(e)(1)(B) prohibits counterparties to debtor contracts from terminating or modifying such contracts, including rights or obligations thereunder, solely on account of a debtor's bankruptcy filing—invalidating such "*ipso facto*" provisions. Section 365 also prohibits, absent court approval, third parties from enforcing the terms of a contract against the Debtors. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984) ("before executory contracts are assumed or rejected under § 365(a), those contracts remain in existence, enforceable by the debtor but not against the debtor."). Third parties must thus continue to perform under executory contracts until they are assumed or rejected. *See In re El Paso Refinery, L.P.*, 196 B.R. 58, 72 (Bankr. W.D. Tex. 1996); *In re Physician Health Corp.*, 262 B.R. 290, 294 (Bankr. D. Del. 2001).

15. Thus, for the abovementioned reasons, certain of the Debtor's Employee Counsels and Critical Vendors must continue performance under the Bankruptcy Code.

### B. Employee Counsels have a Professional, Ethical, and Fiduciary Obligation to Continue Representation.

16. The Employee Counsels have a professional, ethical, and fiduciary obligation to continue to provide legal services to their clients given the timing of the upcoming trial. The Committee questions whether the Employee Counsels can cease performance if the Court denies the Employee Counsels' prepetition amounts, especially considering that Employee Counsels (i) had an opportunity to request a retainer that would fund their services through the Petition Date

and (ii) will be fully compensated for the services incurred on a postpetition basis.  Thus, there is no good cause for the Employee Counsels to cease performance of their obligations to their clients.

**IV.**     **The Debtor Should Not Continue Payment of Rodic if Mr. Kwon is Extradited.**

17.     Mr. Kwon has retained Rodic in connection with his detention in Montenegro. Litigation Payment Mot. ¶ 25.  The Committee is concerned that the Debtor will continue to incur such obligations following Mr. Kwon's likely extradition and requests that the Debtor cease paying Rodic on behalf of Mr. Kwon's legal bills in that instance.  Postpetition payments and obligations incurred by the Debtor on behalf of Mr. Kwon following his likely extradition would diminish the estates value at the expense of the Debtor and its stakeholders.

### Reservation of Rights

18.     This objection is submitted without prejudice to, and with a full reservation of, the Committee's rights, claims, defenses, and remedies, including the right to amend, modify or further supplement the objection, to seek additional discovery, to raise additional objections and to introduce evidence at any hearing relating to the objection, and without in any way limiting any other rights of the Committee.

19.     The Committee has serious concerns about the propriety of the SEC Enforcement Action and the manner in which it is being prosecuted.  The Committee will monitor these matters if the Application is approved over the Committee's objection to ensure that the fees paid to Dentons US are reasonable.  Accordingly, the Committee reserves its rights to object to Dentons US's future fees under Bankruptcy Code section 328 and section 330.

### Conclusion

20.     WHEREFORE, the Committee requests that the Court deny the Application and the Litigation Payment Motion and grant any other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: March 11, 2024<br>Wilmington, Delaware | **MCDERMOTT WILL & EMERY LLP**<br><br>*/s/ David R. Hurst*<br>David R. Hurst (I.D. No. 3743)<br>Dante Pavan (I.D. No. 7095)<br>The Brandywine Building<br>1000 N. West Street, Suite 1400<br>Wilmington, Delaware 19801<br>Telephone: (302) 485-3900<br>dhurst@mwe.com<br>dpavan@mwe.com<br><br>*- and -*<br><br>Darren Azman<br>Joseph B. Evans<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Telephone: (212) 547-5400<br>dazman@mwe.com<br>jbevans@mwe.com<br><br>*- and -*<br><br>Gregg A. Steinman<br>333 SE 2nd Avenue, Suite 4500<br>Miami, Florida 33131<br>Telephone: (305) 358-3500<br>gsteinman@mwe.com<br><br>*Counsel to the Official Committee of Unsecured Creditors* |