UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .  Chapter 11
                                    .  Case No. 24-10070 (BLS)
TERRAFORM LABS PTE. LTD.,           .
                                    .
                                    .
                                    .  Courtroom No. 1
                                    .  824 North King Street
             Debtor.                .  Wilmington, Delaware 19801
                                    .
                                    .  Tuesday, March 12, 2024
. . . . . . . . . . . . . . .  11:00 a.m.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:          Ronit Berkovich, Esquire
                         F. Gavin Andrews, Esquire
                         Jared Friedmann, Esquire
                         WEIL, GOTSHAL & MANGES LLP
                         767 Fifth Avenue
                         New York, New York 10153

                         Tania Moyron, Esquire
                         Samuel Maizel, Esquire
                         DENTONS US LLP
                         601 S. Figueroa Street
                         Suite 2500
                         Los Angeles, California 90017
(APPEARANCES CONTINUED)

Audio Operator:          Dana L. Moore, ECRO


Transcription Company:   Reliable
                         The Nemours Building
                         1007 N. Orange Street, Suite 110
                         Wilmington, Delaware 19801
                         Telephone: (302)654-8080
                         Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES CONTINUED:

For the U.S. Trustee:      Timothy Fox, Esquire
                           OFFICE OF THE UNITED STATES TRUSTEE
                           844 King Street, Suite 2207
                           Lockbox 35
                           Wilmington, Delaware 19801

For the Committee:         David Hurst, Esquire
                           MCDERMOTT WILL & EMERY
                           The Brandywine Building
                           1000 North West Street
                           Suite 1400
                           Wilmington, Delaware 19801

                           Darren Azman, Esquire
                           MCDERMOTT WILL & EMERY
                           One Vanderbilt Avenue
                           New York, New York 10017

For the SEC:               Therese Scheuer, Esquire
                           UNITED STATES SECURITIRES
                             AND EXCHANGE COMMISSION
                           100 F. Street, NE
                           Washington, DC 20549

1                                INDEX

2   <u>MOTION</u>:                                           <u>PAGE</u>

3   Agenda
    Item 2:  Application of Debtor for Entry of an      10
4            Order Authorizing the Retention and
             Employment of Dentons US LLP as
5            Special Litigation Counsel to the
             Debtor and Debtor-in-Possession
6            Effective as of the Petition Date
             [D.I. 60; Filed 2/13/24]
7
             Court's Ruling:                             17
8
    Agena
9   Item 3:  Motion of Debtor for Entry of Orders        18
             Pursuant to Sections 363, 503(b), and
10           105(a) of the Bankruptcy Code
             Authorizing Debtor to Pay Certain
11           Amounts in Furtherance of Litigation
             and Granting Related Relief
12           [D.I. 61; Filed 2/13/24]

13           Court's Ruling:                             37

14

15  <u>DECLARATIONS/EXHIBITS</u>:                            <u>PAGE</u>

    1) Mark Califano                                     16
16
    2) John Dubel                                        17
17
    3) Michael Leto                                      25
18
    Debtor's Exhibits 7 through 11                       31
19

20

21

22

23

24

25

1      (Proceedings commence at 11:19 a.m.)

2           THE COURTROOM DEPUTY:  All rise.

3           THE COURT:  Please be seated.  Good morning.

4           Ms. Berkovich, good morning.

5           MS. BERKOVICH:  Good morning, Your Honor.  Good to

6  see you.  Its Ronit Berkovich from Weil Gotshal for the

7  debtor, Terraform Labs Pte, Ltd.  I am joined today by my

8  colleagues, Jared Friedmann, Christine Calabrese, and Gavin

9  Andrews.  We also have Paul Heath and Zach Shapiro from the

10 Richards Layton Firm.

11          Also in the courtroom today from Dentons US, Sam

12 Maizel, Tania Moyron, and Mark Califano, the debtor's

13 proposed special litigation counsel.  We also Michael Leto of

14 Alvarez & Marsal, the debtor's proposed financial advisor.

15          THE COURT:  And he is a declarant today.

16          MS. BERKOVICH:  Yes, that is correct.  As well as

17 John Dubel, the debtor's independent director who also is a

18 declarant today.

19          Thank you for making time for us this morning.

20          THE COURT:  Happy to oblige.

21          MS. BERKOVICH:  Your Honor, we filed the revised

22 agenda this morning at Docket No. 170.  I have a few updates

23 even since then.  There are two matters going forward today:

24 the Dentons retention application at Docket 60 and the motion

25 to pay certain amounts in furtherance of litigation at Docket

1    61.  I will also note the motion to redact confidential

2    information in connection with Dentons retention application

3    at Docket 141.  That is resolved through an agreed order

4    filed under certification last night.

5          So, Your Honor, just last week we were before you

6    on the same two motions facing objections from a sea of

7    acronyms.  We had the SEC, the U.S.T., and the UCC.  We also

8    raised at that point serious concerns about the UCC's

9    position.  Your Honor granted the UCC's request for

10   adjournment over our objection.

11         We are pleased to report that we used the one week

12   productively as well as the additional time this morning.

13   Thank you, Your Honor, for being patient on that.  And not to

14   bury the lead, but we are fully resolved with all three

15   parties on every issue except there is one remaining issue

16   with the U.S. Trustee on the litigation payments motion --

17         THE COURT:  Okay.

18         MS. BERKOVICH:  -- which we will get to.  Most

19   notably, after the hearing last week, from the debtor's

20   perspective, we heard a different tune from the UCC.  We can

21   spare the Court the details but suffice it to say that the

22   debtor and the UCC spent the last week negotiating hard, but

23   in good faith on the specific terms of the two orders that we

24   are seeking.  I think we are rowing in the same direction, at

25   least for now.

1          So, we will discuss the specific resolutions when

2  we get to the motions, but what is important is that these

3  orders, if entered, will enable the debtor to mount its

4  defense in the SEC jury trial that starts now in less than

5  two weeks.

6          THE COURT:  Can I ask just a technical question,

7  and this is just because I don't know the answer.  I think I

8  asked at the first day hearing whether the debtor intended to

9  interpose the automatic stay with respect to that and the

10  debtor emphatically said no.  Don't you still need relief

11  from the stay or have I granted that?

12          MS. BERKOVICH:  Relief from the stay to continue

13  the SEC litigation?

14          THE COURT:  Yeah.

15          MS. BERKOVICH:  I don't believe we need relief from

16  the stay.  I think its automatically accepted from the stay.

17          THE COURT:  Because of a police and regulatory

18  action?

19          MS. BERKOVICH:  That's correct.

20          THE COURT:  Okay.

21          MS. BERKOVICH:  This wasn't like through an

22  agreement.

23          THE COURT:  And -- yeah, I am not hinting at

24  anything. I just didn't know the answer.  There is a range of

25  issues where they fall within that police power exception,

1  and when they don't, and when the government is acting in one

2  capacity or another.  I wasn't certain about what the result

3  of that was.  It was abundantly clear to me the debtor didn't

4  intend to interpose the automatic stay.  I didn't know

5  whether or not relief or some authorization was necessary

6  from me.  So, you have answered that question.  We can move

7  on.

8          MS. BERKOVICH:  We will take a further look at

9  that.

10         THE COURT:  You don't need to.  Please don't.

11     (Laughter)

12         MS. BERKOVICH:  We want to make clear our position

13  that the automatic stay would bar the enforcement of any

14  monetary judgment by the SEC.  You know, that is the

15  exception to the exception.

16         THE COURT:  Sure.  That was kind of the thought

17  process that I was running through, but, no, I don't want any

18  further inquiry into that.  One war at a time, Ms. Berkovich.

19         MS. BERKOVICH:  In terms of road map, I think the

20  UCC counsel would like to say a few words first.  I then

21  propose that we move onto the litigation -- sorry, to the

22  Dentons retention application which Ms. Moyron and Mr. Maizel

23  will handle. Then we can do the litigation payments motion

24  which I will handle with my colleague, Mr. Andrews.  We would

25  introduce the evidence for each one of those separately.

1              THE COURT:  I think that sounds fine.

2              MS. BERKOVICH:  Thank you, Your Honor.

3              THE COURT:  Mr. Hurst, good morning.

4              MR. HURST:  Good morning, Your Honor.  David Hurst,

5    McDermott Will & Emery, on behalf of the official committee

6    of unsecured creditors.  Your Honor, today with me in the

7    courtroom is my partner, Darren Azman, also Dante Pavan.

8              Unless you have any questions for me, Your Honor, I

9    would like to turn the podium over to Mr. Azman.

10             THE COURT:  Very good.

11             MR. HURST:  Thank you.

12             THE COURT:  Welcome, sir.

13             MR. AZMAN:  Good morning, Your Honor.  Darren Azman

14   from McDermott Will & Emery, proposed counsel to the

15   committee.

16             Thank you for the one-week adjournment. It was very

17   productive.  And as Ms. Berkovich pointed out, we are fully

18   resolved on the motions that are for today.

19             There is one thing that I wanted to highlight for

20   Your Honor.  I think it will become a recurring theme in the

21   case, at least in the near term.  What we were trying to

22   accomplish with the settlement was really preserving

23   optionality.  We don't know standing here today, it was a bit

24   optimistic that we were going to understand the total value

25   of the business, the merits of the SEC action, all those

1  things in a one-week period of time.

2          So, really what we were trying to accomplish, and I

3  think we have accomplished it with the settlement, is

4  preserving optionality meaning that the debtor will have the

5  resources that it needs, nothing more, nothing less, to move

6  forward with the SEC defense and then we will revisit this

7  issue at the end of the trial as you will see in the proposed

8  order that was filed as a status conference.

9          THE COURT:  I saw that.

10         MS. AZMAN:  And hopefully by that time, in the next

11 two months, we will have done our diligence, get a better

12 understanding of this business, whether its viable as a going

13 concern even if they win, if they're not, and if we can

14 resolve that before coming to Your Honor we will; otherwise,

15 we will come back to Your Honor and rehash some of these

16 discussions that we have had.  I think what we have done here

17 is really accomplished optionality which to the committee is

18 the most important thing for right now.

19         THE COURT:  Very good.  Thank you, Mr. Azman.  I

20 appreciate it.

21         MR. AZMAN:  Thank you.  Your Honor, briefly; I may

22 need to be excused.  May I --

23         THE COURT:  No worries.

24         MR. AZMAN:  Thank you very much.

25         THE COURT:  Thank you.

1        MS. MOYRON:  Good morning, Your Honor.

2        THE COURT:  Good morning.

3        MS. MOYRON:  Tania Moyron of Dentons US LLP and in

4   the courtroom as well, as Ms. Berkovich mentioned, my

5   partner, Sam Maizel is in the courtroom as well as our senior

6   associate, Sarah Schrag.

7        THE COURT:  Let me ask a question, if I can, and it

8   may be more directed to Ms. Berkovich or to Ms. Richenderfer.

9   I understand that there remains one issue with respect to the

10  litigation payments motion, which is not your problem, but I

11  wouldn't mind knowing, at least generally, what that issue

12  is.

13        MS. BERKOVICH:  The one remaining issue is the

14  payment for counsel fees for the Montenegro counsel.

15        THE COURT:  Okay.

16        MS. MOYRON:  Your Honor, as Ms. Berkovich and Mr.

17  Azman reported, we are pleased that we have reached an

18  agreement with all parties and thank you again for your time.

19  And thank you to counsel for the SEC, the Office of the

20  United States Trustee, and the committee.  This has truly

21  been a collaborative effort.

22        You have before you Docket No. 169.  That is the

23  amended order to retain Dentons.  There have been two

24  modifications to that order that I would like to walk the

25  Court through.

1          THE COURT:  Sure.

2          MS. MOYRON:  With respect to Paragraph 5, Your

3   Honor, that paragraph is a paragraph that we negotiated with

4   the committee.  As already indicated by Mr. Azman that gives

5   the committee ethe opportunity to come before this Court

6   after the trial.  The second sentence of that paragraph is

7   the committee's reservation of rights to evaluate Dentons

8   continued services after that trial.  The Office of the

9   United States Trustee would also like to add their name into

10  that second sentence in Paragraph 5 so they are also able to

11  evaluate the services after trial.

12          THE COURT:  Is that acceptable to Dentons?

13          MS. MOYRON:  That is acceptable to Dentons. This

14  would be included in our revised order.

15          THE COURT:  Okay.

16          MS. MOYRON:  The only other addition, Your Honor,

17  is in Paragraph 13.  In Paragraph 13 you will also recall

18  that is a broad reservation of rights with respect to

19  prepetition payments and with respect to the advanced fee

20  retainer.  The only party that was not included in that

21  reservation of rights is the SEC, and we are going to add the

22  SEC into the revised order.

23          THE COURT:  Okay.

24          MS. MOYRON:  The other thing I would like to tell

25  Your Honor that is important to the SEC and its important to

1  the Office of the United States Trustee that we are going to

2  put on the record is when this engagement is over any excess

3  funds that Dentons has in its savings account, including any

4  fees, will be returned, will be transferred or wired to the

5  debtor's bank account.

6          THE COURT:  Okay.

7          MS. MOYRON:  I think with that I have captured what

8  was requested, but there has been a lot of different

9  discussions. So, I am going to pause and give counsel for the

10  SEC and the U.S.T. an opportunity in case I have not stated

11  something into the record that they wanted me to state into

12  the record.

13          THE COURT:  No, that sounds fine. I'm certainly

14  happy to hear from anyone and we will start with Ms.

15  Richenderfer.  Good morning.  Welcome.

16          MS. RICHENDERFER:  Good morning, Your Honor.  Linda

17  Richenderfer from the Office of the United States Trustee.

18          I just wanted to emphasize that last point because

19  it was very important to the Office that, for instance, in

20  Paragraph 3 of the proposed order, it talks about something

21  that has been defined as the post-petition advanced fee

22  retainer.  We just wanted to make sure it was clear on the

23  record that that is not property of Dentons to keep

24  regardless of what happens.  It is going to be used in the

25  normal course, and as invoices are approved, they will be

1  transferring money from that, I guess, into general accounts.

2          So, that was one of our concerns and then, of

3  course, the large amount that is coming back to the debtor's

4  account and they now have a bank account with a UDA bank.

5  So, that all worked out very well over the past week.  So, we

6  are very happy about that, Your Honor.

7          THE COURT:  Very good.  Ms. Scheuer.  Good morning

8  and welcome.  Good to see you again.

9          MS. SCHEUER:  For the record Therese Scheuer from

10  the U.S. Securities and Exchange Commission.  With me in the

11  courtroom are William Uptegrove and Michael Kelly, also from

12  the SEC.

13          THE COURT:  Welcome.

14          MS. SCHEUER:  Thank you, Your Honor.

15          Before I begin, I just would like to confirm that

16  it is the SEC's position that the District Court action falls

17  under the police and regulatory exceptions to the --

18          THE COURT:  Yeah, I didn't even want to open that

19  can of worms.

20      (Laughter)

21          MS. SCHEUER:  Thank you, Your Honor.

22          THE COURT:  So, we will consider that can closed.

23          MS. SCHEUER:  Thank you.  Your Honor, when we filed

24  our objections, we were faced with a situation where the

25  debtor's litigation counsel had received a staggering $166

1  million within a year of bankruptcy, disbursed over half that

2  amount to itself, member firms, and lenders, and was seeking

3  to continue to make payments using the approximately $80

4  million remaining in its retainer account.  The SEC was not

5  seeking to disqualify Dentons, but propose appropriate

6  safeguards to comply with the bankruptcy code and help insure

7  that payments are reasonable and appropriate.

8          The debtor and Dentons have agreed to make many of

9  our requested changes.  Dentons has agreed to return $48

10 million to the debtor.  Dentons agreed to return interest

11 earned during post-petition that remains at the end of the

12 Dentons engagement and to return the remaining balance of the

13 retainer at the end of its engagement.

14         They included language that nothing in the Dentons

15 order restricts the right or claims of the SEC with respect

16 to prepetition transfers to Dentons.  They removed law firms

17 from the list of contractors being compensated by Dentons.

18 The debtor is working through the terms of a fee examiner

19 appointment and has provided additional transparency about

20 the vendors to be paid and included it in the litigation

21 claims order.  And it has also agreed, as part of the

22 litigation claims order, that invoices will be reviewed and

23 approved by the special committee in its sole discretion.

24         We think that these safeguards are appropriate

25 under the circumstances and resolve the issues raised in our

1  objections.  Thank you, Your Honor.

2          THE COURT:  Very good. Thank you, Ms. Scheuer.

3          MS. MOYRON:  Your Honor, I think with that,

4  everything that is going to be included into the revised

5  order and I'd like to turn it over to my partner, Sam Maizel,

6  who will introduce into evidence the two declarations in

7  support of our application.

8          THE COURT:  Sure.  Mr. Maizel, good to see you.

9  It's been a while.

10         MR. MAIZEL:  It has, Your Honor. Thank you.  It

11  falls to me to just clean up the record apparently this

12  morning which is just --

13         THE COURT:  Don't screw it up.

14     (Laughter)

15         MR. MAIZEL:  No promises, Your Honor.  Your Honor,

16  with this we would move into evidence the declaration of Mark

17  Califano which is attached as an exhibit to the application

18  of the debtor for entry of an order authorizing the retention

19  and employment of Dentons US LLP as special counsel. That is

20  at Docket 60.  The declaration, itself, is at Docket 60-3.

21  And I don't believe there is any objection. I would ask the

22  Court to enter it.

23         THE COURT:  I would ask if there are any objections

24  to the admission of Mr. Califano's declaration as part of the

25  debtor's case in chief for purposes of the retention of

1    Dentons as special counsel.

2        (No verbal response)

3        THE COURT:  Hearing no response, Mr. Califano's

4    declaration is admitted.

5        (Califano declaration received into evidence)

6        THE COURT:  Is there any party that intends or

7    expects to cross-examine Mr. Califano regarding the contents

8    of his declaration?

9        (No verbal response)

10        THE COURT:  Very well.  Mr. Califano's declaration

11    is admitted without contradiction.

12        MR. MAIZEL:  Your Honor, with that we move for the

13    entry into evidence of the declaration of John S. Dubel in

14    support of the application of the debtor for entry of an

15    order authorizing the retention and employment of Dentons US

16    LLP as special counsel to the debtor and debtor-in-

17    possession, and also in support of the motion for the debtor

18    -- of the debtor for entry of an order pursuant to Sections

19    363, 503(b), and 105(a) of the Bankruptcy Code.  That is at

20    Docket Entry 160.  I don't believe, again, there is any

21    objection.

22        THE COURT:  I would ask if there are any objections

23    to the admission of Mr. Dubel's declaration as part of the

24    debtor's case in chief for purposes of the litigation

25    payments motion.

1       (No verbal response)

2           THE COURT:  Very well.  That declaration is

3   admitted.

4       (Dubel declaration received into evidence)

5           THE COURT:  Is there any party that intends or

6   expects to cross-examine Mr. Dubel regarding the contents of

7   his declaration?

8       (No verbal response)

9           THE COURT:  Hearing no response, Mr. Dubel's

10  declaration likewise is admitted without contradiction.

11          MR. MAIZEL:  Thank you, Your Honor.  Apparently, I

12  got through it.

13          THE COURT:  I would ask if anyone else wishes to be

14  heard with respect to the debtor's application for an order

15  authorizing the retention of Dentons under Bankruptcy Code

16  Section 327(e) on the terms that have bene described by

17  counsel on the record and reflected in a revised form of

18  order that has been provided to the Court under a notice of

19  filing.

20      (No verbal response)

21          THE COURT:  Hearing no response, I am prepared to

22  approve and authorize the application.  I note that the Court

23  adjourned the hearing from last week and it is not lost upon

24  me the amount of negotiation, arm wrestling and dialog

25  necessary in order to get to a consensual submission of form

1  of order and I appreciate the efforts of all parties in

2  connection there with.

3        The matter before me is the request for retention

4  of special counsel. There is no dispute that Dentons is both

5  capable and necessary to perform services that are required

6  by the estate. The application is granted and the order will

7  issue.

8        MS. BERKOVICH:  Thank you, Your Honor. I will turn

9  it over to my colleague, Mr. Andrews, to present the

10 litigation payments motion.

11       THE COURT:  Very good.

12       MR. ANDREWS:  Your Honor, Gavin Andrews of Weil

13 Gotshal on behalf of the debtor.

14       Your Honor, the litigation payment motion is at

15 Docket No. 61, as I'm sure you are aware. It seeks to pay

16 certain prepetition and post-petition amounts in furtherance

17 of the debtor's defense to the SEC litigation which all into

18 three categories: the employee counsel fees and expenses, the

19 critical vendor payments, and foreign litigation costs.  As

20 Ms. Berkovich alluded to earlier, we understand that there is

21 only one open item to be dealt with today.

22       Your Honor, if you would like, I am happy to

23 summarize the relief in the motion including the relief in

24 the revised order last night.

25       THE COURT:  I think that would be appropriate.  We

1    do have -- I appreciate getting the proposed revised final

2    order that was submitted, I guess, last night.  Again, the

3    Court never really commenced the hearing on the substance of

4    this last week. So, I think it would be appropriate, at

5    least, just to recite generally the relief that is being

6    sought. I believe we have already entered the evidentiary

7    predicate for the relief so far.

8            MR. ANDREWS:  Thank you, Your Honor.  So, as you

9    noted, the revised order was filed last night at Docket No.

10   161 which does reflect a resolution with the UCC in respect

11   to their objection. We did have some additional changes which

12   were negotiated with the SEC this morning and I can take Your

13   Honor through them after we get through the summary of the

14   relief.

15           THE COURT:  Okay.

16           MR. ANDREWS:  So, as I mentioned, Your Honor, there

17   is three broad categories that the litigation payments motion

18   reflects.  The first being the fees and expenses of five law

19   firms that separately represent the debtor's current and

20   former employees.  The four law firms currently represent 16

21   employes and one additional firm represents Do Kwon and

22   Montenegro which we will get to.

23           These payments include prepetition fees and

24   expenses of employee counsel in the amount of approximately

25   $355,000.  I would note that this amount is after the

1   application of their respective prepetition retainers.  There

2   are post-petition fees and expenses from employee counsel in

3   an amount not to exceed $2.9 million which is an aggregate

4   estimate that the law firms faced for the three months after

5   the petition date.  This figure does include the law firms

6   monthly fixed fee of around $245,000 or in the aggregate

7   $733,000 over three months.

8          I would also note, Your Honor, and we will get to

9   this when we flesh out this issue in more detail, but in

10  light of the recent news that Mr. Kwon is likely to be

11  extradited to South Korea later this month it's likely the

12  debtor won't have to pay (indiscernible) fees for two months.

13  We have made it clear in the revised order that the debtor

14  will not pay the (indiscernible) fees and expenses for any

15  period following Mr. Kwon's extradition.

16         The post-petition employee counsel hourly fees and

17  expenses will be subject to the payment procedures which are

18  reflected in the revised order.  We have substantially beefed

19  up these procedures in the revised order.  Specifically, the

20  procedures provide, as stated in the revised order, the

21  process for the UCC and U.S.T. to be reviewing parties to

22  review and object to employee counsel post-petition fees and

23  expenses on the reasonable basis as outlined in Section 330

24  of the Bankruptcy Code.

25         Also, Your Honor, if there are indemnity

1   limitations that are triggered the debtor can claw back these

2   payments made on account of the indemnification obligations.

3   These indemnity limitations are set forth in Singapore law

4   and include, you know, things such as the employee conduct

5   resulting in criminal conviction or if they can be a wrongful

6   act against the debtor.

7           Further, we also requested authorization for post-

8   petition fees and expenses relating to future employee

9   indemnification claims. If these fees and expenses are

10  approved by the special committee pursuant to the revised

11  payment procedures, which again provide for the UCC and

12  U.S.T. oversight, this would be an amount not to exceed

13  $225,000 in the aggregate.

14          THE COURT:  Okay.

15          MR. ANDREWS:  So, Your Honor, turning to the second

16  category in respect to the critical vendors, we have

17  prepetition claims of four critical vendors that are

18  assisting the debtor and counsel with the defense of the SEC

19  enforcement action.  Your Honor may have noted in the revised

20  order we have requested a revised amount which is gone down

21  to $921,900 as part of our agreement with the UCC.

22          Specifically, the debtor is now only seeking to pay

23  40 percent of two of the critical vendors prepetition claims;

24  those vendors being Alpha and Quinlan (phonetic). Those

25  vendors will retain claims for the remaining 60 percent of

1  their prepetition claims due and owing.  The other two

2  critical vendors, Cornerstone and JSL (phonetic) the debtor

3  is seeking to pay 70 percent of their prepetition expenses

4  and those vendors will waive their claims of the remaining 30

5  percent.

6          THE COURT:  Okay.

7          MR. ANDREWS:  Your Honor, I would also note that

8  the vendors -- we have in there that the vendors will agree

9  to continue to provide services following this payment.

10         Lastly, Your Honor, we have the third category in

11 respect to the prepetition litigation claims.  These relate

12 to the third-party discovery request related to the SEC

13 enforcement action.  Notably the total amount for this

14 category is now less than $200,000.  As Your Honor might

15 recall we had a larger amount in respect to the Wintermute

16 proceedings, and Your Honor made that order approving payment

17 of the costs at the end of February.

18         THE COURT:  Right.  That issue has been dealt with.

19         MR. ANDREWS:  Correct.  Yes, Your Honor.

20         So, in total the debtor now seeks approval to pay

21 less then $4.5 million of these litigation related costs and

22 as Your Honor knows not including Wintermute.  So, Your

23 Honor, if okay with you, I will just turn to the additional

24 changes we have agreed with the SEC.

25         THE COURT:  That would be great.

1         MR. ANDREWS:  I do have a copy of the order with

2  these changes if Your Honor would like.

3         THE COURT:  Sure.  Thank you, Mr. Andrews.

4         MR. ANDREWS:  So, the first amendment arises in

5  order two just at the end there, just making clear that for

6  avoidance of doubt the post-petition payments of fees and

7  expenses in respect to employee counsel don't go beyond the

8  period of three months from the petition date.

9         Next, Your Honor, in Footnote 4 of page 4, making

10  clear that the board -- sorry, the special committee in

11  consultation with the board will approve invoices, not the

12  other way around. And this change is similarly reflected in

13  respect to the future indemnification request at Paragraph

14  6(d).

15         Lastly, Your Honor, in order 10, just making clear

16  that, you know, for avoidance of doubt that the --

17         THE COURT:  This isn't a general authorization.

18         MR. ANDREWS:  Exactly right.  Everything is being

19  authorized in the order and the order only.  That is correct.

20         THE COURT:  Okay.

21         MR. ANDREWS:  And so, Your Honor, unless you have

22  any questions about those amendments, we'll attempt to file

23  them under COC after the hearing today.

24         THE COURT:  No, I don't have questions about those

25  amendments, and I think that leaves us then with the one

1   issue with respect to payments to Roddick; is that correct?

2           MR. ANDREWS:  Yes, Your Honor.  I think, before we

3   turn to the issue in respect to Roddick, I'm going to turn to

4   -- turn this over to my colleague Jared Friedmann in respect

5   to entering the declarations into evidence.

6           THE COURT:  Oh, okay.

7           MR. FRIEDMANN:  Good morning, Your Honor, Jared

8   Friedmann from Weil Gotshal on behalf of the debtor.

9           THE COURT:  Welcome.

10          MR. FRIEDMANN:  So we have four declarations in

11  total, though Mr. Dubel's declaration was already --

12          THE COURT:  Was already admitted.

13          MR. FRIEDMANN:  -- admitted this morning, but that

14  one, as was noted, applies to both the motions before you.

15          In addition to Mr. Dubel's  motion, we'd move for

16  the entrance of the declaration of Michael Leto in support of

17  debtor's motion for entry of orders pursuant to Sections 363,

18  503(b), and five -- 105(a) of the Bankruptcy Code,

19  authorizing debtor to pay certain amounts in furtherance of

20  litigation and granting related relief.  That was submitted

21  on the docket at ECF 161.  Mr. Leto is available in the

22  courtroom today should there be any desire to cross-examine

23  him.

24          THE COURT:  Very good.  Is there any objection to

25  the admission of Mr. Leto's declaration as part of the

1   debtor's case in chief for the relief sought?

2         (No verbal response)

3               THE COURT:  Very well, Mr. Leto's declaration is

4   admitted.

5         (Declaration of Michael Leto received)

6               THE COURT:  Is there any party that intends or

7   expects to cross-examine Mr. Leto regarding the contents of

8   his declaration?

9         (No verbal response)

10              THE COURT:  Mr. Leto's declaration is admitted

11  without contradiction.

12              Mr. Freeman, you may proceed.

13              MR. FRIEDMANN:  Thank you, Your Honor.  In

14  addition to that, Mr. Califano also submitted two

15  declarations in support of this motion.

16              THE COURT:  I have them both.  We can deal with

17  them together, if you wish.

18              MR. FRIEDMANN:  Fantastic.  And what I'd like to

19  do also is, in connection with that, two corrections, one in

20  each of them.

21              THE COURT:  Okay.

22              MR. FRIEDMANN:  The benefit of having an

23  additional week with three different parties analyzing

24  everything you've said --

25              THE COURT:  Scrubbing the documents?

1    MR. FRIEDMANN:  -- is you find out any typos that

2  have been identified.  So, if it's all right, Your Honor,

3  before I enter them, maybe I can point those two corrections

4  out.

5    THE COURT:  That would be great.

6    MR. FRIEDMANN:  Okay.  So in the initial

7  declaration, which was ECF 61-4, that was his February 13th,

8  2024 declaration, in paragraph 5 --

9    THE COURT:  Okay.

10    MR. FRIEDMANN:  -- the second sentence, in the

11  declaration it read, "The District Court granted summary

12  judgment against the debtor and Mr. Kwon on the SEC's claims

13  relating to certain securities-based swap claims," that

14  actually should read, "The District Court granted summary

15  judgment for the debtor and Mr. Kwon on the SEC's claims

16  relating to certain securities-based swap claims."

17    So it's just changing against to for to correct

18  that language there.

19    THE COURT:  Okay.

20    MR. FRIEDMANN:  With that change, we otherwise

21  would move for the entrance into evidence of Mr. Califano's

22  February 13th, 2024 declaration.

23    THE COURT:  All right.  And there's a modification

24  to the other one as well?

25    MR. FRIEDMANN:  Yes.  So on that one, which was

 1  entered on ECF as Document 144, and on paragraph 23, the last

 2  sentence currently reads, "Dentons, as debtor's lead

 3  litigation counsel, requires all critical vendors to be

 4  responsive and ready to carry out tasks that debtor deems

 5  necessary for the purpose of its defense to the SEC

 6  enforcement action," debtor should be debtor's counsel in

 7  that last phrase.

 8          THE COURT:  Okay.

 9          MR. FRIEDMANN:  That is correction there and, with

10  that modification, we would also move to enter into evidence

11  Mr. Califano's March 4th, 2024 declaration.

12          THE COURT:  Very good.  Is there any objection to

13  the admission of Mr. Califano's declarations as laid out by

14  counsel and as modified by a proffer?

15      (No verbal response)

16          THE COURT:  Very well, both declarations are

17  admitted.

18      (Declarations of Mr. Califano received)

19          THE COURT:  Is there any party that intends or

20  expects to cross-examine Mr. Califano regarding the contents

21  of his declarations in connection with the litigation

22  payments motion?

23      (No verbal response)

24          THE COURT:  Very well, Mr. Califano's declaration

25  is -- oh, Ms. Richenderfer?

1        MS. RICHENDERFER:  Yes, Your Honor, there was one

2   more proffer that I believe was going to be made that will do

3   away with the necessity for cross-examination by the U.S.

4   Trustee of Mr. Califano.

5        THE COURT:  Okay.  Assuming you get your proffer,

6   is there any party that intends or expects to cross-examine?

7        (No verbal response)

8        THE COURT:  I think the answer is no.  So, again,

9   if there's an issue with the proffer or if the U.S. Trustee

10  has questions, or any party, feel free to sing out, but

11  otherwise the Court will presume that Mr. Califano's

12  declarations as perhaps modified by proffer are admitted.

13        You may proceed.

14        MR. FRIEDMANN:  Thank you, Your Honor.  So maybe -

15  - with that introduction in mind, maybe I'll move to the

16  proffer next, if that's --

17        THE COURT:  Okay.

18        MR. FRIEDMANN:  -- all right with Your Honor?

19        So the proffer that we would like to make, which

20  otherwise would have been included in Mr. Califano's

21  declaration or he would have testified to today, in terms of

22  an update is that the extradition court in Montenegro

23  determined that Mr. Kwon should be extradited to South Korea.

24  Our understanding is that the Montenegrin prosecutor can

25  appeal that decision, and our further understanding that we

1   could learn whether or not the Montenegrin prosecutor will

2   decide to appeal as early as this week, but that regardless

3   of the status of the extradition proceedings, so long as Mr.

4   Kwon is detained in Montenegro, the debtor still requires Mr.

5   Roddick to facilitate access to Mr. Kwon in connection with

6   both the SEC enforcement action and the DOJ investigation.

7           Let me also check to make sure I've got -- that's

8   everything you needed?

9           MS. RICHENDERFER:  I think that --

10          THE COURT:  Do you want a moment?

11          MS. RICHENDERFER:  Yes, Your Honor.

12          MR. FRIEDMANN:  Please.

13          THE COURT:  Take your time.

14      (Pause)

15          MR. FRIEDMANN:  Your Honor, if I may add one point

16  to the proffer?

17          THE COURT:  Of course.

18          MR. FRIEDMANN:  Thank you, Your Honor, it is that

19  previously Mr. Kwon, there was a ruling that he be extradited

20  to the United States, but that decision was appealed and

21  overturned.

22          THE COURT:  And overturned?

23          MR. FRIEDMANN:  Correct.

24          THE COURT:  And so it's been a lower court ruling

25  at this point granting extradition and that may be subject to

1   appellate review; is that right?

2            MR. FRIEDMANN:  That's correct.

3            THE COURT:  Okay, I understand.

4            MR. FRIEDMANN:  Okay.  And then --

5            THE COURT:  Ms. Richenderfer, is that

6   satisfactory, or do you have questions for Mr. Califano?

7            MS. RICHENDERFER:  It is satisfactory, Your Honor.

8            THE COURT:  Very well.

9            MR. FRIEDMANN:  Thank you, Your Honor.

10           And then the last piece I'd like to offer, Your

11  Honor, evidentiary-wise, is there are five exhibits that are

12  listed on the Joint Exhibit list, they're Exhibits 7, 8, 9,

13  10, and 11, which, Your Honor, I would ask that absent

14  objection that those five exhibits also be entered into

15  evidence.  It's the Terraform Labs limited constitution at

16  Exhibit 7, Exhibit 8 is the form deal employment agreement,

17  Exhibit 9 is the deal master services agreement, Exhibit 10

18  is the form company employment agreement, and Exhibit 11 is

19  the Kobre & Kim pool retention agreement.

20           So we would ask Your Honor that those five

21  exhibits be entered into evidence as well in support of this

22  motion.

23           THE COURT:  Very well.  Any objection to the

24  admission of those exhibits?

25       (No verbal response)

1          THE COURT:  Hearing no response, those exhibits

2 are admitted.

3      (Debtor's Exhibits 7 through 11 received.

4          MR. FRIEDMANN:  Thank you, Your Honor.  I'll turn

5 the podium back over to Mr. Andrews -- or Ms. Berkovich.

6          MS. BERKOVICH:  Your Honor, before we present

7 argument, it probably makes sense to hear from the objector,

8 the U.S. Trustee's Office, first about what their issues are

9 with the payment of the Roddick fees given the evidence that

10 you heard.

11          THE COURT:  Okay.  Ms. Richenderfer?

12          MS. RICHENDERFER:  Thank you, Your Honor, Linda

13 Richenderfer from the Office of the United States Trustee.

14          The argument is a simple one; it is that Mr. Kwon

15 finds himself in prison in Montenegro because he was

16 convicted of passport forgery, having nothing to do with his

17 job or his time with the debtor.  Mr. Roddick has been

18 representing him.  I realize that Mr. Roddick has been

19 playing varying roles perhaps during his time that he's been

20 representing Mr. Kwon, but be that as it may, Mr. Kwon is

21 there because of something that is totally unrelated to his

22 prior role with the company.

23          And, in addition, I noted that Mr. Andrews when he

24 was talking about the indemnification limitations made

25 mention of act against interests of the debtor as being a

1 reason.  And, initially, the Montenegro court had ordered

2 that Mr. Kwon would be extradited to the United States court

3 and --

4          THE COURT:  And that was reversed --

5          MS. RICHENDERFER:  I'm sorry --

6          THE COURT:  -- right?

7          MS. RICHENDERFER:  -- that was the first ruling,

8 and that was appealed by Mr. Kwon's counsel that debtors are

9 seeking to pay.  And that led to it being overturned and it

10 being directed back to the lower court to enter a ruling,

11 which led to then the ruling to send him to South Korea,

12 which is sort of a rather confusing series of events because

13 it's my understanding, and I believe this is in the record,

14 that the March 25th date was picked because it was

15 represented to Mr. Rakoff that that was when Mr. Kwon would

16 be in the United States and would be there for trial.

17          So whatever information he may or may not be

18 providing through his counsel -- Mr. Kwon, that is -- through

19 his counsel to the debtor, I don't see, if he's not going to

20 be present and will not be, therefore, available for

21 testimony at the trial, the question is what use is that to

22 the debtor under the circumstances.  And he's not coming to

23 this country, at least as of right now.  I understand that

24 there are other levels of appeal that may be taken --

25          THE COURT:  It seems like he's not going anywhere

1  --

2          MS. RICHENDERFER:  Well --

3          THE COURT:  -- real soon.

4          MS. RICHENDERFER:  -- I think Montenegro -- he's

5  worn out his welcome with Montenegro.  I think Montenegro, at

6  this point, probably -- and, Your Honor, that is purely from

7  me reading articles, but that he has served his sentence, in

8  other words, under Montenegro law for that which he was

9  convicted of.  They're looking to see where he should go

10 next.  And it looks, as of right now, he will be going to

11 South Korea, and that is the result of the individual who's

12 representing him in Montenegro whom the debtor wants to pay

13 fees for for the last month or two and perhaps into April, if

14 he is still there in Montenegro.

15         THE COURT:  Okay, I understand.

16         MS. RICHENDERFER:  If he goes to South Korea, I

17 guess all -- we'll hear another motion or another request.

18         So I think it's just we're having a hard time

19 reconciling that with obligations under the constitution of

20 the company, Singapore law, and even under 363, because -- in

21 terms of information that's being provided to the company and

22 due to his unavailability to testify if he does go to South

23 Korea, unless the U.S. District Court up in the Southern

24 District of New York is allowing people to testify virtually

25 from South Korea from a jail cell, I don't know the answer to

1    that.

2            THE COURT:  I don't know, last month I had a

3    collection of people testify from Teheran.

4            MS. RICHENDERFER:  That's an interesting one.  So

5    I don't know what will happen up there, but if somebody

6    doesn't want to testify and they're sitting in South Korea, I

7    don't know how one makes one testify.  So there is that

8    aspect of it.

9            Thank you, Your Honor.

10           THE COURT:  Thank you, Ms. Richenderfer.

11           Before I hear from the debtor in response, can I

12   hear from the committee on the motion itself?  I don't know

13   if the committee has any position on the Kwon issue, but with

14   respect to the application itself I think that the committee

15   has expressed that it's supportive, but I'd like to just make

16   sure our record is complete.

17           MR. HURST:  Good afternoon, Your Honor -- almost

18   afternoon, it's still good morning -- David Hurst, McDermott

19   Will & Emery, for the committee.

20           Your Honor, as Mr. Azman said, we have reached

21   agreement with the debtor regarding the litigation payment

22   motion.  The order that's before Your Honor reflects a

23   significant negotiation between and among the parties, and we

24   are in agreement with the terms in that order and support its

25   entry.

1          THE COURT:  Very good.

2          MR. HURST:  Thank you.

3          THE COURT:  Thank you.

4          Ms. Berkovich?

5          MS. BERKOVICH:  Good morning, Your Honor.  For the

6  relief that we're seeking in general, we're rely on our

7  papers to make the argument that --

8          THE COURT:  Yeah, we're talking about the Kwon

9  issue right now.

10          MS. BERKOVICH:  Okay, so just focused on the Kwon

11  issue.  You have uncontroverted evidence in the form of

12  testimony from Mr. Califano about how critical it is for the

13  debtor's defense that we continue to pay the Roddick fees.  I

14  will direct the Court specifically to paragraphs 10 to 14 of

15  the supplemental Califano declaration.

16          And just to summarize, you know, first, Roddick's

17  services are the only means by which the debtor and Mr.

18  Kwon's counsel in the SEC enforcement action are able to

19  communicate with him and obtain cooperation while he's in

20  jail in Montenegro.

21          Second, it's not just about whether Mr. Kwon will

22  or will not be testifying at the SEC trial, Mr. Kwon was a

23  key person involved with the company during the time of the

24  actions at issue in the fraud trial.  Information from Mr.

25  Kwon, as Mr. Califano testified, is crucial to help prepare

1  the debtor's defense of the SEC enforcement action.  This

2  includes preparing witnesses and reviewing documents and

3  Exhibits, it involves presenting the debtor's own evidence,

4  as well as responding to the SEC's evidence.

5          Third, as Mr. Califano said, there are limited

6  options for counsel in Montenegro.  So this idea that counsel

7  that was involved somehow in appealing extradition should be

8  different from counsel that's working to cooperate with the

9  debtor, that would be not workable, it would also be

10  inefficient.

11          Fourth, and importantly, the services that Roddick

12  is providing post-petition are unrelated to the criminal

13  conviction, that was in the past; that was completed

14  prepetition.

15          Fifth, we're talking about a relatively modest fee

16  here of less than $250,000 a month that would be paid to the

17  Roddick firm to assist the debtor -- provide services that

18  would ultimately assist the debtor in its defense position.

19          Sixth, I'd say, for the avoidance of doubt, we

20  made it clear in the revised order that the debtor is not

21  going to seek to pay Roddick for any period following the

22  time when Mr. Kwon is extradited from Montenegro.  So, based

23  on what we're thinking today, it will only be through March

24  that Roddick would be paid.

25          And, seventh, you know, Mr. Andrews talked about

1    the indemnity litigations, those apply here, and we would not

2    -- you know, we would not be obligated to indemnify Mr. Kwon

3    if his conduct is found to have triggered any any of the

4    indemnity litigations --

5             THE COURT:  Does that mean it would also be

6    subject to clawback?

7             MS. BERKOVICH:  Correct, Your Honor, yes.

8             THE COURT:  I understand.

9             MS. BERKOVICH:  And, lastly, I can't help but

10   notice, but here we're seeking -- we have a Government agency

11   taking a position that will make it harder for the debtor to

12   defend itself fully in a serious Government -- serious action

13   involving, you know, serious allegations of misconduct, that

14   is not a good look, and it would also, frankly, make it

15   harder for Mr. Kwon to defend himself against those same

16   serious allegations.

17            So, in sum, both the evidence and the law here

18   support that this is in the best interest of the debtor's

19   estate to pay these fees.

20            Does Your Honor have any questions?

21            THE COURT:  I do not.

22            Here's what we're going to do.  I am going to

23   overrule the objection of the United States Trustee, and I

24   would make a couple observations.

25            First, I certainly don't believe that there is

1  anything untoward in the Trustee bringing and raising this

2  objection.  And I understand the interplay or the perceived

3  interplay between two different governmental institutions

4  where one of them is a plaintiff in litigation against the

5  debtor, but the United States Trustee stands as the watchdog

6  of the bankruptcy system, I know that because they put it

7  into every pleading that they file --

8       (Laughter)

9       THE COURT:  -- and I'm being a little bit flip,

10  but, you know, it's not a secret that this particular issue

11  has some hair on it and the United States Trustee has

12  expressed concerns about whether or not using estate funds

13  assist and provide legal services to an individual who is

14  presently incarcerated, and other stuff, whether that's an

15  appropriate and wise use of funds, and the United States

16  Trustee has objected and has continued to prosecute that

17  objection, notwithstanding resolving other pieces.  I'm going

18  to overrule that objection based upon the evidentiary

19  predicate that's been developed by the debtor.

20       This is a complicated and touchy issue.  Court's

21  are always concerned about the expense of funds -- the

22  expense of funds for professionals, and then the expense of

23  funds for professionals for management or former management

24  that are accused of wrongdoing.  But the fact of the matter

25  is that the unrebutted testimony through Mr. Califano's

1  declaration, as well as the record developed before me today,

2  indicates that access to Mr. Kwon is in fact necessary to

3  litigation that is in the immediate prospect, and the debtor

4  has made that decision and determination as reflected by

5  declarations that have been submitted not just by Mr.

6  Califano, but by other representatives of the estate that

7  give the Court a measure of confidence that this is in fact a

8  necessary and an appropriate expenditure.

9         And so I'm satisfied that the relief requested is

10  appropriate and warranted.  All of the other aspects have

11  been -- of the relief requested in the motion have been both

12  scrubbed carefully by the participants, and I appreciate Mr.

13  Andrews walking the Court through those elements of it, but

14  those are not in controversy, but I'm satisfied, so that the

15  record is complete, that the debtors have carried their

16  burden with respect to the relief that's being sought.

17         So I'm going to approve and authorize the relief

18  as it's reflected in the proposed notice of filing of amended

19  order -- or it's not amended, it's the new form of order, and

20  I would enter that order today, noting that the United States

21  Trustee's objection with respect to the specific issues as to

22  the Roddick firm have been overruled.  It is the Court's

23  expectation from counsel's report and the record before me

24  that, one way or the other, there is not expected to be an

25  ongoing relationship with Roddick; if there is, then my

1  expectation is that that would likely be the subject of

2  dialogue between stakeholders and, if need be, the

3  opportunity to get on the phone with the Court on a status

4  conference.

5          I think I would make one other observation and I

6  think it was pointed out by committee counsel that this is an

7  evolving situation.  The debtor is headed to trial, that

8  trial will occur, but we are in a separate proceeding and

9  there's an expectation that further direction in this court

10  will be informed by a variety of circumstances, including

11  whatever may happen to Mr. Kwon, whatever is decided in

12  Montenegro, whatever is decided in Manhattan.

13          So I think that I take a measure of comfort that

14  the parties before me are familiar with me and have little

15  difficulty getting a hold of me, if there are issues or

16  uncertainty about where we're headed.  And I don't think I'm

17  giving any secret that I am generally not a fan of motion

18  practice when it relates to the mechanics of how these cases

19  go.  If there are issues or if it starts to get complicated,

20  you can get me on the phone, but I think I understand where

21  we are now, I understand where the debtor wants to move

22  forward, and I believe that the relief that's being proposed

23  to me is appropriate and, as I said, I believe the debtors

24  have carried their evidentiary burden under Bankruptcy Code

25  Section 363 and 105, and I would enter that order.  Okay?

1              MS. BERKOVICH:  Thank you, Your Honor.  We will

2   submit a revised form of order reflecting the changes that

3   Mr. Andrews discussed today.

4              THE COURT:  Yeah, I think I'm going to have two

5   orders.  Is the Dentons order uploaded or is that final?

6              MS. BERKOVICH:  We will also be uploading --

7              THE COURT:  I'll look for both of them --

8              MS. BERKOVICH:  -- the Dentons order.

9              THE COURT:  -- to be uploaded today and I'll enter

10  them promptly.

11             I would ask, the Court has ruled, are there any

12  questions with respect to the Court's ruling?

13        (No verbal response)

14             THE COURT:  All right.  Ms. Berkovich, do we have

15  anything else this morning --

16             MS. BERKOVICH:  No, Your Honor.  Thank you --

17             THE COURT:  -- or it's now afternoon?

18             MS. BERKOVICH:  -- thank you again for your time

19  this morning and thank you for the adjournment that we didn't

20  want, but helped us get to a very good place.

21        (Laughter)

22             THE COURT:  I'm happy to oblige.  And, again, I

23  don't want to repeat myself, but it's not lost upon me the

24  amount of effort and engagement that parties had to go

25  through following last week to get to this week, and I

1   appreciate all parties making that effort to get us to a

2   hearing today that hopefully will advance the case.

3            With that, we stand in recess.  Thank you,

4   Counsel.

5            COUNSEL:  Thank you, Your Honor.

6         (Proceedings concluded at 12:05 p.m.)

1                           CERTIFICATION

2            I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter to the best of my

5   knowledge and ability.

6

7   /s/ William J. Garling                    March 12, 2024

8   William J. Garling, CET-543

9   Certified Court Transcriptionist

10  For Reliable