# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re                                                  :          **Chapter 11**

                                                       :

**TERRAFORM LABS PTE. LTD.** *et al.*,                 :          **Case No. 24–10070 (BLS)**

                                                       :

Debtors.[1][2]                                         :

                                                       :

---------------------------------------------------------- x

## CHAPTER 11 PLAN OF LIQUIDATION OF
## TERRAFORM LABS PTE. LTD. AND TERRAFORM LABS LIMITED

**WEIL, GOTSHAL & MANGES LLP**
Ronit Berkovich (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
F. Gavin Andrews (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

**RICHARDS, LAYTON & FINGER, P.A.**
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

*Attorneys for Debtors*
*and Debtors in Possession*

Dated:        June 30, 2024
              Wilmington, Delaware

---

[1]    The Debtor's principal office is located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

[2]    TLL is not currently a Debtor in chapter 11; however, TLL may be a Debtor and its Chapter 11 Case may be jointly administered with this Chapter 11 Case by the time the Plan is solicited. If TLL does not become a Debtor by such time, TFL will amend the Plan to include only TFL as a Debtor.

# TABLE OF CONTENTS

SECTION 1.    DEFINITIONS AND INTERPRETATION ........................................................1

SECTION 2.    ADMINISTRATIVE EXPENSE, PRIORITY CLAIMS, AND PRIVATE
WALLET CRYPTO HOLDERS ............................................................14

    2.1.    Administrative Expense Claims Bar Date ........................................................14
    2.2.    Allowance of Administrative Expense Claims ...................................................14
    2.3.    Payment of Allowed Administrative Expense Claims.........................................14
    2.4.    Fee Claims ...........................................................................................15
    2.5.    Priority Tax Claims ................................................................................15
    2.6.    Private Wallet Crypto Holders ...................................................................16

SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS ...................................16

    3.1.    Classification in General ..........................................................................16
    3.2.    Summary of Classification ........................................................................16
    3.3.    Special Provision Governing Unimpaired Claims..............................................17
    3.4.    Claims Arising Out of the Beltran Action ......................................................17
    3.5.    Elimination of Vacant Classes ...................................................................17
    3.6.    Voting Classes; Presumptions ...................................................................17
    3.7.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
Code ..................................................................................................18
    3.8.    No Waiver ...........................................................................................18

SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS ...........................................18

    4.1.    Priority Non-Tax Claims (Class 1) ..............................................................18
    4.2.    Other Secured Claims (Class 2) .................................................................19
    4.3.    Beltran Allowed Secured Claims (Class 3) ....................................................19
    4.4.    General Unsecured Claims (Class 4) ...........................................................20
    4.5.    Crypto Loss Claims (Class 5) ...................................................................20
    4.6.    SEC Claim (6)......................................................................................20
    4.7.    Intercompany Claims (Class 7)..................................................................21
    4.8.    Intercompany Interests (Class 8) ...............................................................21
    4.9.    510(c) Subordinated Claims (Class 9) .........................................................21
    4.10.    TFL Equity Interests (Class 10) ...............................................................22

SECTION 5.    MEANS FOR IMPLEMENTATION ............................................................23

    5.1.    Limited Substantive Consolidation of the Debtors ...........................................23
    5.2.    Sources of Consideration for Plan Distribution ...............................................23
    5.3.    Implementation .....................................................................................23
    5.4.    Liquidating Plan Administrator ..................................................................24
    5.5.    Administration of Crypto Loss Claims .........................................................27
    5.6.    Corporate Action...................................................................................27
    5.7.    Withholding and Reporting Requirements .....................................................27
    5.8.    Exemption From Certain Transfer Taxes ......................................................28
    5.9.    Effectuating Documents; Further Transactions ...............................................28
    5.10.    Preservation of Rights of Action...............................................................29
    5.11.    Certificate of Incorporation and By-Laws ....................................................29
    5.12.    Cancellation of Existing Securities and Agreements........................................30
    5.13.    Subordinated Claims.............................................................................30

**TABLE OF CONTENTS**
**(continued)**

5.14.  Equitable Subordination Under Bankruptcy Code 510(c) ............................................30
5.15.  Election to Contribute Third-Party Claims ..............................................................30
5.16.  Contribution of Contributed Third-Party Claims ......................................................30
5.17.  Closing of Chapter 11 Cases .................................................................................31
5.18.  Notice of Effective Date ......................................................................................31
5.19.  Corporate Form ..................................................................................................31
5.20.  Separability .......................................................................................................31

SECTION 6.     DISTRIBUTIONS ..................................................................................31

6.1.   Distributions Generally .......................................................................................31
6.2.   Distribution Record Date .....................................................................................31
6.3.   Distributions on the Effective Date or as Soon as Reasonably Practicable
       Thereafter .........................................................................................................32
6.4.   Periodic Distributions from the Senior Claim Pool, GUC Pool, and Crypto Loss
       Claim Pool ........................................................................................................32
6.5.   Date of Distributions ...........................................................................................32
6.6.   Disbursing Agent ...............................................................................................33
6.7.   Rights and Powers of Disbursing Agent ..................................................................33
6.8.   Expenses of Disbursing Agent ..............................................................................33
6.9.   No Postpetition Interest on Claims .........................................................................34
6.10.  Delivery of Distributions .....................................................................................34
6.11.  Distributions after Effective Date ..........................................................................34
6.12.  Unclaimed Property ............................................................................................34
6.13.  Time Bar to Cash Payments ..................................................................................34
6.14.  Manner of Payment under Plan ..............................................................................35
6.15.  Satisfaction of Claims .........................................................................................35
6.16.  Minimum Cash Distributions .................................................................................35
6.17.  Setoffs and Recoupments ....................................................................................35
6.18.  Allocation of Distributions between Principal and Interest ..........................................35
6.19.  No Distribution in Excess of Amount of Allowed Claim ..............................................35

SECTION 7.     PROCEDURES FOR DISPUTED CLAIMS ..............................................35

7.1.   Objections to Claims ...........................................................................................35
7.2.   Resolution of Disputed Claims ..............................................................................36
7.3.   Payments and Distributions with Respect to Disputed Claims .......................................36
7.4.   Distributions after Allowance ................................................................................36
7.5.   Estimation of Claims ...........................................................................................36
7.6.   No Distributions Pending Allowance .......................................................................36
7.7.   Claim Resolution Procedures Cumulative .................................................................37
7.8.   Interest .............................................................................................................37

SECTION 8.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........................37

8.1.   Rejection of Executory Contracts and Unexpired Leases ..............................................37
8.2.   Determination of Assumption Disputes and Deemed Consent ........................................37
8.3.   Rejection Damages Claims ...................................................................................38
8.4.   Insurance Policies ..............................................................................................39
8.5.   Indemnification Obligations ..................................................................................39
8.6.   Intellectual Property Licenses and Agreements .........................................................40
8.7.   Assignment .......................................................................................................40
8.8.   Modifications, Amendments, Supplements, Restatements, or Other Agreements .........40

**TABLE OF CONTENTS**
**(continued)**

8.9.    Reservation of Rights ........................................................................................... 40

SECTION 9.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...................................... 41

9.1.    Conditions Precedent to the Effective Date ......................................................... 41
9.2.    Waiver of Conditions Precedent ........................................................................... 42
9.3.    Effect of Failure of Conditions to Effective Date ................................................ 42

SECTION 10.    EFFECT OF CONFIRMATION ........................................................................... 42

10.1.    Vesting of Assets ............................................................................................... 42
10.2.    Term of Injunctions or Stays ............................................................................. 43
10.3.    Injunction .......................................................................................................... 43
10.4.    Debtors are Not Entitled to a Discharge ........................................................... 44
10.5.    Binding Effect ................................................................................................... 44
10.6.    Releases by the Debtors .................................................................................... 44
10.7.    Exculpation ....................................................................................................... 45
10.8.    Additional Provisions Regarding Governmental Units ...................................... 45
10.9.    Solicitation of the Plan ...................................................................................... 46
10.10.   Corporate Action ............................................................................................... 46

SECTION 11.    RETENTION OF JURISDICTION ...................................................................... 46

11.1.    Retention of Jurisdiction ................................................................................... 46
11.2.    Courts of Competent Jurisdiction ..................................................................... 48

SECTION 12.    MISCELLANEOUS PROVISIONS ...................................................................... 48

12.1.    Payment of Statutory Fees ................................................................................ 48
12.2.    Substantial Consummation ................................................................................ 48
12.3.    Dissolution of Creditors' Committee ................................................................ 48
12.4.    Amendments ...................................................................................................... 48
12.5.    Revocation or Withdrawal of the Plan .............................................................. 49
12.6.    Severability of Plan Provisions upon Confirmation .......................................... 49
12.7.    Governing Law .................................................................................................. 49
12.8.    Time ................................................................................................................... 50
12.9.    Additional Documents ....................................................................................... 50
12.10.   Retention of Books and Records ....................................................................... 50
12.11.   Immediate Binding Effect .................................................................................. 50
12.12.   Successors and Assigns ...................................................................................... 50
12.13.   Entire Agreement .............................................................................................. 50
12.14.   Notices .............................................................................................................. 51

Terraform Labs Pte. Ltd. and Terraform Labs Limited propose the following chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in <u>Section 1.A</u>.[3]

## SECTION 1.   DEFINITIONS AND INTERPRETATION.

### A.  Definitions.

1.1      ***"510(c) Subordinated Claim"*** means any Claim against the Debtors that has been determined by Final Order to be subject to equitable subordination pursuant to section 510(c) of the Bankruptcy Code. Any Claim that satisfies the definition of a 510(c) Subordinated Claim will be classified as such, and not in any other Class of Claims.

1.2      ***"Administrative Expense Claim"*** means any Claim for costs or expenses of administration incurred during the Chapter 11 Cases of a kind specified under sections 324, 328, 330, 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses; (ii) Fee Claims, and (iii) all Allowed Claims that are to be treated as Administrative Expense Claims pursuant to a final order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

1.3      ***"Administrative Expense Claims Bar Date"*** means the date that is sixty (60) calendar days after the Effective Date.

1.4      ***"Advisory Board"*** means the board of advisors to the Liquidating Plan Administrator, which shall be appointed by the Creditors' Committee in consultation with the Debtors. The identities of the members of the Advisory Board shall be disclosed in the Plan Supplement.

1.5      ***"Affiliate"*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.6      ***"Allowed"*** means with respect to any Claim against or Interest in the Debtors, (i) any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in this Plan; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors, the Wind Down Estates, or the Plan Administrator, as applicable; or (c) as to which any objection has been determined by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder, (ii) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, (iii) any Claim or Interest expressly Allowed under this Plan, or (iv) any Claim that is listed in the Debtors' Schedules as liquidated, non-contingent, and undisputed; *provided*, *that*, notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims shall be subject to, and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Debtors will retain all

---

[3]   A number of provisions in this Plan remain subject to further comment and review by the SEC and the Creditors' Committee. The Debtors will coordinate with the SEC and Creditors' Committee and will file an amended Plan prior to the hearing to approve the Disclosure Statement.

claims and defenses with respect to Allowed Claims that are reinstated or otherwise unimpaired pursuant to this Plan.

1.7 **"*Asset*"** means all of the rights, title, and interests of the Debtors in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property.

1.8 **"*Assumption Dispute*"** means a pending objection relating to assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.9 **"*Assumption Schedule*"** means the schedule of executory contracts and unexpired leases to be either assumed by the Debtors or assumed by the Debtors and assigned to a liquidating trust, if applicable. The Assumption Schedule shall be filed with the Plan Supplement, as may be amended, modified, or supplemented from time to time.

1.10 **"*Avoidance Actions*"** means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law. For the avoidance of doubt, nothing herein shall modify the terms of or the rights reserved under the Dentons Retention Order.

1.11 **"*Ballot*"** means each of the ballots distributed to the holders of Impaired Claims entitled to vote on the Plan.

1.12 **"*Bankruptcy Code*"** means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.13 **"*Bankruptcy Court*"** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.14 **"*Bankruptcy Rules*"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.15 **"*Bar Date Order*"** means that certain *Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim By Governmental Units, (III) Establishing an Amended Schedules Bar Date, (IV) Establishing a Rejection Damages Bar Date, (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Proposed Notice of Bar Dates, and (VII) Granting Related Relief* [Docket No. __].

1.16 **"*Beltran Action*"** means the litigation captioned as *Julian Moreno Beltran & 9 Ors v Terraform Labs Pte. Ltd & 2 Ors*, SIC/OA 3/2024 pending in the High Court of the Republic of Singapore.

1.17 **"*Beltran Allowed Secured Claims*"** means Claims asserted against TFL in the Beltran Action Allowed either (i) pursuant to a settlement with TFL and/or the Liquidating Plan

2

Administrator or (ii) as determined by Final Order of the courts of the Republic of Singapore, in each case up to the amount of the Beltran Escrow Deposit; *provided, however*, that (a) to the extent the Bankruptcy Court determines that claims asserted against TFL in the Beltran Action are not Secured Claims, such Claims shall not be Beltran Allowed Secured Claims but shall be Crypto Loss Claims and (b) any portion of any Allowed Claim asserted against TFL in the Beltran Action that exceeds its allocated portion of the Beltran Escrow Deposit shall be treated as an Allowed Crypto Loss Claim.

1.18 *"Beltran Escrow Deposit"* means the funds deposited into a Singapore escrow account, totaling approximately $56.9 million, as required by order of the High Court of the Republic of Singapore in the Beltran Action as security against judgment pending the outcome of the Beltran Action.

1.19 *"Board of Directors"* means the board of directors of the Debtors.

1.20 *"Business Day"* means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.21 *"Cash"* means legal tender of the United States of America.

1.22 *"Cause of Action"* means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or any other Avoidance Actions, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any claims under any state law or foreign law, including, without limitation, any fraudulent transfer or similar claims.

1.23 *"Chapter 11 Cases"* means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

1.24 *"Claim"* has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.25 *"Class"* means any group of Claims or Interests classified as set forth in Section 3 of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.26 *Confirmation"* means the entry on the docket of the Chapter 11 Cases of the Confirmation Order.

1.27 *"Confirmation Date"* means the date on which the Bankruptcy Court enters the Confirmation Order.

1.28 ***"Confirmation Hearing"*** means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.29 ***"Confirmation Order"*** means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.30 ***"Contributed Third-Party Claims"*** means all direct Causes of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of the Debtors.

1.31 ***"Contributing Claimants"*** means any holders of Claims or Interests that contribute their Contributed Third-Party Claims to the Wind Down Estates in accordance with Section 5.15 hereof.

1.32 ***"Creditors' Committee"*** means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases on February 29, 2024 pursuant to section 1102 of the Bankruptcy Code.

1.33 ***"Crypto Loss Claim"*** means any Claim asserted against the Debtors arising from (a) the purchase, sale, or rescission of the purchase or sale of Cryptocurrency, including (i) Terra Crypto, (ii) any wrapped version on any blockchain of any Terra Crypto, (iii) any receipt or derivative of any Terra Crypto, or (iv) any other Cryptocurrency that derives a value from Terra Crypto, and (v) any other Cryptocurrency that was transacted or made available on the TerraLunaClassic and TerraLuna blockchains, and (b) any reimbursement or contribution claims allowed under section 502 of the Bankruptcy Code on account of such claims.

1.34 ***"Crypto Loss Claim Bar Date"*** means a date to be established by the Liquidating Plan Administrator upon motion and notice by which holders of Crypto Loss Claims arising before the Petition Date must be asserted; *provided that* such date shall be no more than one hundred twenty (120) calendar days after the Effective Date.

1.35 ***"Crypto Loss Claim Pool"*** means any remaining funds in the GUC Pool upon the General Unsecured Claim Payment Completion, *plus* the SEC Settlement Fund.

1.36 ***"Crypto Loss Claim Procedures"*** means the procedures pursuant to which (i) holders of Crypto Loss Claims may assert such Claims, and (ii) the Liquidating Plan Administrator would establish a general process and timeline for administering and determining the Allowed Claim for each holder of a Crypto Loss Claim, which procedures shall be disclosed in the Plan Supplement.

1.37 ***"Cryptocurrency"*** means all digital assets that are traded on a blockchain, broadly defined to include all types of digital assets, including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets. This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum (ETH), USD Coin, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, PYTH, Luna (LUNA), Luna Classic (LUNC), Terra USD (UST), Avalanche (AVAX), Convex (CVX), OHM, Governance OHM, and any other digital asset.

1.38        **"Cure Amount"** means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary pursuant to section 365(b)(1)(A) of the Bankruptcy Code to permit the Debtor to assume such executory contract or unexpired lease.

1.39        **"D&O Policy"** means any insurance policy that covers, among others, current or former directors, members, trustees, managers, and officers liability issued at any time to or providing coverage to the Debtors and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

1.40        **"Debtors"** means Terraform Labs Pte. Ltd. and Terraform Labs Limited, in each case, solely in its capacity as a debtor in possession under the Bankruptcy Code.

1.41        **"Debtors in Possession"** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.42        **"Definitive Documents"** means the documents that are necessary or desirable to implement, or otherwise relate to, the implementation of the transactions contemplated herein including, but not limited to: (i) the Plan; (ii) each of the documents comprising the Plan Supplement; (iii) the Disclosure Statement; (iv) any motion seeking the approval of the adequacy of the Disclosure Statement and solicitation of the Plan; (v) solicitation materials; and (vi) the Confirmation Order.

1.43        **"Dentons"** means Dentons US LLP.

1.44        **"Dentons Retention Order"** means the *Order Granting Application of Debtor for Entry of an Order Authorizing the Retention and Employment of Dentons US LLP as Special counsel to the Debtor and Debtor in Possession, Effective as of the Petition Date* [Docket No. 177].

1.45        **"Disallowed"** means with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.46        **"Disbursing Agent"** means the Liquidating Plan Administrator or any Person engaged by the Wind Down Estates or Liquidating Plan Administrator.

1.47        **"Disclosure Statement"** means the disclosure statement filed by the Debtors in support of the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code (as may be amended, supplemented, or modified from time to time).

1.48        **"Disputed"** means, with respect to any Claim or Interest, such Claim or Interest that is not yet Allowed or Disallowed.

1.49        **"Distribution"** means payment or distribution of consideration to holders of Allowed Claims pursuant to this Plan.

1.50        **"Distribution Record Date"** means the Effective Date of the Plan or such other date as determined by the Liquidating Plan Administrator.

1.51    ***"Effective Date"*** means the date on which all conditions to the effectiveness of the Plan set forth in <u>Section 9</u> hereof have been satisfied or waived in accordance with the terms of the Plan.

1.52    ***"Effective Date Available Cash"*** means Cash or cash equivalents on hand as of the Effective Date, not including the (i) SEC Settlement Fund, (ii) the Fee Escrow Account, (iii) Cash held in Restricted Accounts, and (iv) the amount of Cash necessary to fund or satisfy, as applicable, each of (a) the Senior Claim Pool, (b) any Statutory Fees required to be paid in accordance with the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court, and (c) the Wind Down Reserve.

1.53    ***"Entity"*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.54    ***"Estate or Estates"*** means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.55    ***"Exculpated Parties"*** means, collectively, solely to the extent that they are Estate fiduciaries and in their capacities as such: (a) the Debtors; (b) the Board of Directors and each of its members who served in such capacity on or after the Petition Date; (c) the Liquidating Plan Administrator or Estate representative, as applicable; (d) the Creditors' Committee and each of its members, solely in their capacity as such; (e) with respect to each of the foregoing, each such Person's financial advisors, attorneys, accountants, investment bankers, consultants, experts, claims and noticing agents, and other Professionals; (f) with respect to each of the foregoing, such Person's officers and directors, principals, members, and employees, in each case who served in such capacity on or after the Petition Date (but for the avoidance of doubt, not TFL's current or former shareholders); and (g) and any other Person or Entity identified in the Schedule of Released and Exculpated Parties.

1.56    ***"Fee Claim"*** means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by Professionals retained by the Debtors or the Creditors' Committee pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

1.57    ***"Fee Escrow Account"*** means the depository account established or designated by the Debtor to be funded with Cash for payment of Fee Claims in accordance with the terms of this Plan.

1.58    ***"Final Order"*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and is in full force and effect, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.59 ***"General Unsecured Claim"*** means any Claim against the Debtors (other than any Intercompany Claims, Crypto Loss Claims, Claims subordinated pursuant to section 510(b), and Section 510(c) Subordinated Claims) as of the Petition Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any final order of the Bankruptcy Court.

1.60 ***"General Unsecured Claim Payment Completion"*** means the time at which all Allowed General Unsecured Claims are indefeasibly paid in full in Cash and there are no Disputed General Unsecured Claims.

1.61 ***"Governmental Unit"*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.62 ***"GUC Pool"*** means the Cash pool established pursuant to this Plan for distribution to holders of Allowed General Unsecured Claims, which shall be funded, (i) on the Effective Date, with Effective Date Available Cash and, (ii) after the Effective Date, with (a) Post-Effective Date Cash, (b) any Surplus Reserved Cash, and (c) any Surplus Senior Claim Pool cash, in each case in accordance with the Waterfall.  Upon the General Unsecured Claim Payment Completion, the funds in the GUC Pool shall be released to the Crypto Loss Claim Pool.

1.63 ***"Impaired"*** means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.64 ***"Insider"*** means an "insider" (as defined in section 101(31) of the Bankruptcy Code) of the Debtors.

1.65 ***"Intercompany Claim"*** means a Claim against any Debtor by another Debtor or non-Debtor Affiliate of such other Debtor.

1.66 ***"Intercompany Interest"*** means an Interest in a Debtor other than a TFL Equity Interest.

1.67 ***"Interest"*** means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all shares, common stock, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

1.68 ***"LFG"*** means Luna Foundation Guard Ltd.

1.69 ***"LFG Amount"*** means the amount of funds transferred by LFG to the Debtors pursuant to the SEC Settlement.

1.70 ***"Lien"*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.71 ***"Liquidating Plan Administrator"*** means the Person or entity selected by the Creditors' Committee, subject to the consent of the SEC and the Debtors, who, (i) in the event that the Wind Down Estates does not take the form of a liquidating trust, is charged with overseeing the

tasks outlined in <u>Section 5.4</u> of this Plan, or (ii) in the event that the Wind Down Estates takes the form of a liquidating trust, is the liquidating trustee.

        1.72        ***"Ordinary Course Professionals Order"*** means the *Order Authorizing Debtor to Employ Professionals Used in Ordinary Course of Business* [Docket No. 206].

        1.73        ***"Other Secured Claim"*** means a Secured Claim other than a Beltran Allowed Secured Claim.

        1.74        ***"Person"*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other Entity.

        1.75        ***"Petition Date"*** means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

        1.76        ***"Plan"*** means this chapter 11 plan, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with <u>Section 12.4</u> herein.

        1.77        ***"Plan Supplement"*** means a supplemental appendix to the Plan containing, among other things, forms or term sheets of applicable documents, schedules and exhibits to the Plan to be filed with the Court, the following: (a) the Assumption Schedule, (b) the Schedule of Retained Causes of Action, (c) the Wind Down Budget, (d) the identity of the Liquidating Plan Administrator, (e) a Wind Down Agreement, (f) the identity of the Advisory Board, (g) the Crypto Loss Claim Procedures, and (h) information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code.  Through the Effective Date, the Debtors shall have the right to amend any documents contained in, and exhibits to, any Plan Supplement document subject to the requirements of <u>Section 12.4</u> of the Plan.

        1.78        ***"Post-Effective Date Cash"*** means any Cash received by the Wind Down Estates after the Effective Date, including (i) Cash in Restricted Accounts, to the extent the Debtors or Wind Down Estates gain access to such accounts, and (ii) the proceeds from the sale of any or all Estate assets, including, but not limited to Cryptocurrency, Proximity, and the Venture Investments, and any other non-Cash assets of the Debtors that may become Cash, including proceeds from the Estate Causes of Action.

        1.79        ***"Prerequisite Condition"*** has the meaning set forth in <u>Section 9.1</u> hereof.

        1.80        ***"Priority Non-Tax Claim"*** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

        1.81        ***"Priority Tax Claim"*** means any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

        1.82        ***"Private Wallet Crypto Holder"*** means a Token Holder with Tokens held in wallets or accounts owned or controlled by such Token Holder which are no longer readily accessible through the Debtors' applications or protocols as a result of the Debtors' Wind Down.  For the avoidance of doubt, to the extent such Tokens have not been withdrawn by the applicable Private Wallet

Crypto Holder by the Private Wallet Crypto Holder Bar Date and are accessible to the Debtors after the Private Wallet Crypto Holder Bar Date, such Tokens shall be deemed property of the Estates.

        1.83        ***"Private Wallet Crypto Holder Bar Date"*** means the date that is thirty (30) calendar days after the Effective Date.

        1.84        ***"Professionals"*** means financial advisors, attorneys, accountants, actuaries, investment bankers, consultants and other professionals.

        1.85        ***"Pro Rata"*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims in that Class.

        1.86        ***"Proof of Claim"*** means a proof of Claim filed against the Debtors in the Chapter 11 Cases.

        1.87        ***"Proximity"*** means Proximity Panorama, LDA.

        1.88        ***"Quarterly Fees"*** has the meaning set forth in <u>Section 12.1</u> hereof.

        1.89        ***"Released Claims"*** means claims, counterclaims, disputes, interests, obligations, rights, suits, damages, Causes of Action, Avoidance Actions, obligations, debts, Liens, suits, judgments, demands, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of any of the Debtors, their Estates, the Wind Down Estates and the Liquidating Plan Administrator, as may be applicable, or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, as may be applicable, whether arising prepetition or postpetition, known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Person or its estate, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors or other Person or Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the defense of the SEC Enforcement Action and the investigation that preceded it, the defense of civil claims brought against the Debtors that have been dismissed, the defense of pending criminal proceedings against, and investigations into, the Debtors, the Debtors' in -court restructuring efforts, post-petition intercompany transactions approved by the Bankruptcy Court subject to the terms thereof, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Disclosure Statement, the Plan (including, for the avoidance of doubt, any Plan Supplement), the SEC Settlement, the Definitive Documents, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the preparation for and filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit or consummation of any sale transactions during the Chapter 11 Cases, the administration and implementation of the Wind Down, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act, or

omission, transaction, agreement, event, or other occurrence, including those used to effectuate payment of fees and legal expenses and related vendors, related or relating to the Chapter 11 Cases, the defense of the SEC Enforcement Action and the investigation that preceded it, the defense of civil claims brought against TFL that have been dismissed, and the pending criminal proceedings and investigations taking place on or before the Effective Date (in each case, whether prepetition or postpetition). Released Claims shall also include all Avoidance Actions involving transactions used to effectuate payment of fees or legal fees and related vendors related or relating to the Chapter 11 Cases, the defense of the SEC Enforcement Action and the investigation that preceded it, the defense of civil claims brought against TFL that have been dismissed, and the pending criminal proceedings and investigations. For the avoidance of doubt, nothing herein shall modify the terms of or the rights reserved under the Dentons Retention Order.

1.90    **"Released Parties"** means, collectively: [(a) John Dubel, Russ Nelms and Ben Thong, each in their capacity as members of the Board of Directors; (b) the Liquidating Plan Administrator or Estate representative, as applicable; (c) the Creditors' Committee and each of its members, solely in their capacity as such; (d) with respect to the Debtors and each of the foregoing, each such Person's financial advisors, attorneys, accountants, investment bankers, consultants, experts, and other Professionals; *provided* that to, to the extent set forth in solely Sections 1.10, 1.89, and 10.6, Dentons shall not be a Released Party; (e) with respect to each of the foregoing, such Person's officers and directors, principals, members, and employees, in each case who served in such capacity on or after the Petition Date (but for the avoidance of doubt, not TFL's current or former shareholders); and (f) any other Person or Entity identified in the Schedule of Released and Exculpated Parties.][4]

1.91    **"Restricted Accounts"** means certain TFL bank accounts and investment accounts located outside the United States, to which the Debtors' access has been restricted.

1.92    **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.93    **"Schedule of Retained Causes of Action"** means the schedule of certain Causes of Action of the Debtor that are not released, waived, or transferred pursuant to the Plan, which may include categories of Causes of Actions and potential defendants and shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time. For the avoidance of doubt, nothing herein in intended to limit the Wind Down Estates' or the Liquidating Plan Administrator's ability to retain Causes of Action.

1.94    **"Schedule of Released and Exculpated Parties"** means the schedule of current or former officers, directors, managers, employees, Professionals, or other agents of the Debtor agreed by the Debtors, the SEC, and the Creditors' Committee to be Released Parties and Exculpated Parties, to the extent not included in the definition of Released Parties. The Schedule of Released and Exculpated Parties shall be filed with the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

1.95    **"SEC"** means the Securities and Exchange Commission.

1.96    **"SEC Claim"** means the Claim, as determined by the *Final Judgment Against Defendants Terraform Labs Pte. Ltd. and Do Hyeong Kwon* entered by the United States

---

[4]    Released Parties under the Plan are subject to ongoing discussion with the Creditors' Committee.

District Court for the Southern District of New York in the SEC Enforcement Action at Docket No. 273, by the SEC against TFL pursuant to the SEC Settlement fixing TFL's civil penalty and disgorgement, including prejudgment interest, to $4,473,828,306 in total aggregate amount.

1.97 **"SEC Enforcement Action"** means the litigation captioned as *SEC v. Terraform Labs Pte. Ltd., et al.*, Case No. 1:23-cv-013460-JSR pending in the United States District Court for the Southern District of New York.

1.98 **"SEC Settlement"** means the settlement of the SEC Claim between the Debtor and the SEC, the terms of which are set forth in the *Consent of Defendant Terraform Labs Pte. Ltd.*, filed in the SEC Enforcement Action at Docket No. 271-1.

1.99 **"SEC Settlement Fund"** means, pursuant to the terms of the SEC Settlement and the *Final Judgment Against Defendants Terraform Labs Pte. Ltd. and Do Hyeong Kwon* in the SEC Enforcement Action, filed at Docket No. 273, (a) as of the Effective Date, $7,000,000 in Cash transferred to the Wind Down Estates by Do Hyeong Kwon, *plus* such other funds, Cash, cash equivalents, Tokens, or other Assets that Do Hyeong Kwon transfers to the Wind Down Estates, *plus* the LFG Amount, and (b) after the Effective Date, such other funds, Cash, cash equivalents, or other Assets, that Mr. Kwon transfers to the Wind Down Estates, comprising the balance outstanding of the $204,320,196 monetary judgment against Mr. Kwon.  After the Effective Date, the SEC Settlement Fund shall be converted to Cash, to the extent applicable, and reserved for distribution solely to holders of Allowed Crypto Loss Claims.

1.100 **"Secured Claim"** means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in this Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.101 **"Senior Claim"** means any Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, and Other Secured Claim.

1.102 **"Senior Claim Pool"** means the Cash pool established pursuant to this Plan, containing on the Effective Date, the amount of Cash estimated by the Debtors to be necessary to pay holders of Allowed Senior Claims, plus to the total Disputed amounts of such Claims until final Allowance or Disallowance.

1.103 **"Single Share"** has the meaning set forth in Section 4.10(b) hereof.

1.104 **"Statutory Fees"** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

1.105 **"Subsequent Condition"** has the meaning set forth in Section 9.1 hereof.

1.106 **"Surplus Reserved Cash"** means a surplus in funding of the Wind Down Reserve as may be released from the Wind Down Reserve by the Liquidating Plan Administrator from time to time pursuant to Section 5.4 of the Plan.

1.107 **"Surplus Senior Claim Pool Cash"** means a surplus in the funding of the Senior Claim Pool as may be released from the Senior Claim Pool by the Liquidating Plan Administrator from time to time pursuant to Section 5.4 of the Plan.

1.108 *"Tax Code"* means the Internal Revenue Code of 1986, as amended.

1.109 *"Terra Crypto"* means any Cryptocurrency issued, created, generated, minted, promoted by or otherwise associated with the Company and its Affiliates, the Terra Ecosystem, or any decentralized or centralized application or protocol on the TerraLunaClassic and TerraLuna blockchains, including Anchor (ANC), Bonded Assets (bLUNA and bETH), Mirror (MIR), Mirror Assets (mAssets), TerraLunaClassic (LUNC), Wrapped Luna (wLUNA), TerraClassicUSD (USTC), TerraLuna (LUNA), and Liquidity Pool (LP) tokens on TerraLunaClassic and TerraLuna decentralized exchanges.

1.110 *"Terra Ecosystem"* is defined as including, but not limited, to the projects, applications, and protocols listed on Debtors' website (https://www.terra.money/ecosystem) as of June 30, 2024 and the projects, applications, and protocols listed on Debtors' website as of May 2022 from the Wayback Machine (https://web.archive.org/web/20220510182304/https://www.terra.money/ecosystem).

1.111 *"TFL"* means Terraform Labs Pte. Ltd.

1.112 *"TFL Equity Interest"* means, all Interests in TFL, including TFL Stock and any options, warrants or rights to acquire any such Interests.

1.113 *"TFL Stock"* means, all shares of TFL.

1.114 *"TLL"* means Terraform Labs Limited, a British Virgin Islands entity.

1.115 *"Token"* means a unit of Cryptocurrency.

1.116 *"Token Holder"* means a holder of Tokens.

1.117 *"Unimpaired"* means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.118 *"U.S. Trustee"* means the United States Trustee for the District of Delaware.

1.119 *"Venture Investments"* means the investment interests held by TFL and TLL in third party funds, direct investments and other venture-related endeavors, as set forth in the Debtors' Schedules or otherwise.

1.120 *"Waterfall"* means the distribution of Post-Effective Date Cash, Surplus Reserved Cash, and Surplus Senior Claim Pool Cash, (i) first, to fund any deficits in the Wind Down Reserve, as determined in the sole discretion of the Liquidating Plan Administrator, (ii) second, to fund any deficits in the Senior Claim Pool, as determined in the sole discretion of the Liquidating Plan Administrator, and (iii) third, to fund the GUC Pool, until the General Unsecured Claim Payment Completion.

1.121 *"Wind Down"* means, following the Effective Date, the process to (i) sell, abandon, wind down, dissolve, liquidate, or distribute any remaining assets of the Debtors' Estates and (ii) resolve, terminate, or wind down any remaining liabilities of the Debtors' Estates, in each case in accordance with the Plan, including, if applicable, the transfer of all or part of the assets of the Debtors' Estates to a liquidating trust.

1.122      ***"Wind Down Agreement"*** means (i) to the extent the Wind Down Estates do not take the form of a liquidating trust, the form of agreement reasonably acceptable to the Creditors' Committee, substantially in the form included in the Plan Supplement, governing the Person or entity charged with overseeing the tasks outlined in <u>Section 5.4</u> of this Plan, or (ii) to the extent the Wind Down Estates take the form of a liquidating trust, the form of liquidating trust agreement, substantially in the form included in the Plan Supplement (as it may be subsequently modified from time to time with the consent of the Advisory Board), governing the Wind Down Estates.

1.123      ***"Wind Down Amount"*** means the amount of Cash and cash equivalents sufficient to fund the Wind Down Budget until the Wind Down Completion Date, taking into account expected Post-Effective Date Cash.

1.124      ***"Wind Down Budget"*** means a budget setting forth the estimate of costs and expenses necessary to effectuate the Wind Down through the Wind Down Completion Date, which budget may, after the Effective Date, be amended, modified, or supplemented from time to time by the Liquidating Plan Administrator in its reasonable discretion.

1.125      ***"Wind Down Completion Date"*** means the date upon which all assets of the Wind Down Estates have been sold, abandoned, dissolved, liquidated, or otherwise disposed of, and all proceeds thereof or remaining assets of the Wind Down Estates have been distributed in accordance with the Plan.

1.126      ***"Wind Down Estates"*** means, the Debtors, or any successor thereto, by merger, consolidation or otherwise (which may be, among other things, a corporation, limited liability company or a liquidating trust) to Wind Down, dissolve, and liquidate the Estates or otherwise administer or distribute the proceeds of, any remaining assets in accordance with this Plan.

1.127      ***"Wind Down Reserve"*** means, the Cash reserve established pursuant to this Plan, consisting of the Wind Down Amount.

**B.  Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.  Controlling Document.

In the event of an inconsistency between the Plan and any other document, the terms of the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided* that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

### SECTION 2.    ADMINISTRATIVE EXPENSE, PRIORITY CLAIMS, AND PRIVATE WALLET CRYPTO HOLDERS.

#### 2.1.    *Administrative Expense Claims Bar Date.*

Except as provided for herein or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Expense Claims (other than holders of Administrative Expense Claims paid in the ordinary course of business, holders of Administrative Expense Claims arising under section 1930 of chapter 123 of title 28 of the United States Code, and holders of Fee Claims) must file and serve on the Debtors requests for payment of such Administrative Expense Claims not already Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order on or before the Administrative Expense Claims Bar Date or be forever barred, estopped, and enjoined from asserting such Claims against the Debtors or their assets or properties, and such Claims shall be deemed discharged as of the Effective Date.

#### 2.2.    *Allowance of Administrative Expense Claims.*

An Administrative Expense Claim with respect to which a request for payment has been properly and timely filed pursuant to Section 2.1 of this Plan shall become an Allowed Administrative Expense Claim if no objection to such request is filed by the Liquidating Plan Administrator with the Bankruptcy Court on or before one hundred twenty (120) days after the Effective Date, or on such later date as may be fixed by the Bankruptcy Court.  If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order or such Claim is settled, compromised, or otherwise resolved by the Liquidating Plan Administrator pursuant to Section 7.2 of the Plan.

#### 2.3.    *Payment of Allowed Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim (other than a Fee Claim) agrees to a different treatment, the holder of such Allowed Administrative Expense Claim shall receive, on account of such Allowed Claim, Cash in an amount equal to the Allowed amount of such Claim from the Senior Claim Pool, within thirty (30) days following the later to occur of (i) the Effective Date and (ii) the date on which such Administrative Expense Claim shall become an Allowed Claim; *provided, however*, that Allowed Administrative Expense Claims against any of the Debtors representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, shall be paid by the Liquidating Plan Administrator in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities.

## 2.4.    *Fee Claims.*

(a)      All entities seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is sixty (60) days after the Effective Date, and (ii) shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) allowing any such postpetition, Estate-retained professional fee and expense claim (A) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Fee Claim is entered or (B) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor or the Liquidating Plan Administrator, as applicable. The Liquidating Plan Administrator is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

(b)      Prior to the Effective Date, the Debtors shall establish the Fee Escrow Account and fund such account with an amount of Cash sufficient to pay all Fee Claims as determined by Section 2.4(c) hereof.

(c)      At least three (3) business days prior to the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services before the Effective Date to the Debtor, and the Debtor shall separately escrow such estimated amounts in the Fee Escrow Account (less any retainers) for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties. If a holder of a Fee Claim does not provide an estimate, the Debtor may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim. When all such Allowed Fee Claims have been paid in full, any remaining amount in such escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Wind Down Estates and the Liquidating Plan Administrator without any further action or order of the Bankruptcy Court, shall be deemed Post-Effective Date Cash, and may, for the avoidance of doubt, be used to administer the Wind Down Estates subject to and in accordance with the Wind Down Budget.

(d)      Funds held in the Fee Escrow Account shall not be considered property of the Debtors' Estates or property of the Wind Down Estates, but shall revert to the Wind Down Estates and be deemed Post-Effective Date Cash, in accordance with Section 2.4(c), only after all Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full. The Fee Escrow Account shall be held in trust for Estate-retained professionals and for no other parties until all Fee Claims Allowed by the Bankruptcy Court have been paid in full.

## 2.5.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, at the sole option of the Debtor or the Liquidating Plan Administrator, as applicable, (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is forty-five (45) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period

not exceeding five (5) years from and after the Petition Date; *provided*, that the Debtor reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

### 2.6.    *Private Wallet Crypto Holders.*

Private Wallet Crypto Holders shall have until the Private Wallet Crypto Holder Bar Date to request withdrawal of Tokens held in wallets or accounts owned or controlled by such Private Wallet Crypto Holder or be forever barred, estopped, and enjoined from withdrawing such Tokens and asserting any Claims relating to the loss of access to such Tokens against the Debtors or the Wind Down Estates, as applicable, or their respective assets or properties and such Claims shall be deemed discharged as of the Effective Date.  Any such Tokens remaining in wallets accounts owned or controlled by such Private Wallet Crypto Holder after the Private Wallet Crypto Holder Bar Date and that are accessible to the Debtors after the Private Wallet Crypto Holder Bar Date, shall automatically become property of the Estates and deemed Post-Effective Date Cash.

## SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1.    *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2.    *Summary of Classification.*

The following table designates the Classes of Claims against, and Interests in, each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.

The classification and treatment of Claims under this Plan takes into account various factors, including (i) the potential that some or all Crypto Loss Claims could be subordinated pursuant to section 510(b) of the Bankruptcy Code, and (ii) that holders of Crypto Loss Claims shall receive distributions of certain assets, including those in the SEC Settlement Fund, pursuant to the SEC Settlement, some of which might have been assets available for distribution to the GUC Pool but for the SEC Settlement.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 3 | Beltran Allowed Secured Claims | Unimpaired | No (Presumed to accept) |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Crypto Loss Claims | Impaired | Yes |
| 6 | SEC Claim | Impaired | Yes |
| 7 | Intercompany Claims | Impaired | No (Deemed to reject) |
| 8 | Intercompany Interests | Unimpaired / Impaired | No (Deemed to accept/reject) |
| 9 | 510(c) Subordinated Claims | Impaired | No (Deemed to reject) |
| 10 | TFL Equity Interests | Impaired | No (Deemed to reject) |

### 3.3. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor or the Liquidating Plan Administrator, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.4. *Claims Arising Out of the Beltran Action.*

For the avoidance of doubt, nothing in the Plan shall be interpreted to mean that Claims arising out of the Beltran Action are Secured Claims. To the extent Claims arising out of the Beltran Action are not Beltran Allowed Secured Claims, TFL and/or the Liquidating Plan Administrator shall request of the High Court of the Republic of Singapore that the Beltran Escrow Deposit be returned to the Wind Down Estates. Further, to the extent Claims arising out of the Beltran Action are Beltran Allowed Secured Claims, then after such Claims are satisfied, TFL and/or the Liquidating Plan Administrator shall request of the High Court of the Republic of Singapore that any excess amount of the Beltran Escrow Deposit shall be returned to the Wind Down Estates. For the avoidance of doubt, nothing in the Plan shall be deemed to Allow the Claims arising out of the Beltran Action.

### 3.5. *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.6. *Voting Classes; Presumptions.*

(a)    **Acceptance by Certain Impaired Classes.** Only holders of Allowed Claims in Classes 4, 5, and 6 are entitled to vote to accept or reject this Plan. An Impaired Class of Claims shall have accepted this Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept this Plan. Holders of Claims in Classes 4, 5, and 6 shall receive Ballots containing detailed voting instructions.

(b)    **Presumed Acceptance by Unimpaired Classes.**  Holders of Claims and Interests in Classes 1, 2, 3 and 8 (if so treated) are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

(c)    **Deemed Rejection by Certain Impaired Classes.**  Holders of Claims and Interests in Classes 7, 8 (if so treated), 9, and 10 are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

**3.7.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.***

The Debtor shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserves the right to modify this Plan in accordance with <u>Section 12.4</u> hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**3.8.    *No Waiver.***

Nothing contained in this Plan shall be construed to waive a Debtor's, the Liquidating Plan Administrator's, or other Person's right to object on any basis to any Claim, except as provided for in the Plan.

**SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS.**

**4.1.    *Priority Non-Tax Claims (Class 1).***

(a)    *Classification*:  Class 1 consists of Priority Non-Tax Claims against the Debtors.

(b)    *Treatment*:  On or as soon as practicable after the Effective Date, except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each holder thereof shall be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c)    *Voting*:  Class 1 is Unimpaired, and holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

**4.2.** *Other Secured Claims (Class 2).*

(a) *Classification*:  Class 2 consists of the Other Secured Claims against the Debtors.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2.

(b) *Treatment*:

(i) Except to the extent that a holder of an Allowed Other Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is thirty (30) days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim will receive, on account of such Allowed Claim, at the sole option of the Debtors or the Liquidating Plan Administrator, as applicable:  (i) Cash in an amount equal to the Allowed amount of such Claim; (ii) such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired;  or (iii) return of the applicable collateral in satisfaction of the Allowed amount of such Other Secured Claim.

(ii) Except as otherwise specifically provided herein, upon the payment in full in Cash of an Other Secured Claim, any Lien securing an Other Secured Claim that is paid in full, in Cash, shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors held by such holder and to take such actions as may be requested by the Liquidating Plan Administrator, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Liquidating Plan Administrator.

(c) *Voting*:  Class 2 is Unimpaired, and holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

**4.3.** *Beltran Allowed Secured Claims (Class 3).*

(a) *Classification*:  Class 3 consists of the Beltran Allowed Secured Claims against the Debtors.

(b) *Treatment*:  Except to the extent that a holder of a Beltran Allowed Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is thirty (30) days after the date that: (i) such Beltran Allowed Secured Claim becomes an Allowed Claim, and (ii) a Final Order of the courts of the Republic of Singapore is made permitting the release of the Beltran Escrow Deposit to the holders of the Beltran Allowed Secured

Claims, or as soon thereafter as is reasonably practicable, each holder of a Beltran Allowed Secured Claim will receive payment from the Beltran Escrow Deposit as determined by the Final Order of the courts of the Republic of Singapore.

(c)     *Voting*:  Class 3 is Unimpaired, and holders of Beltran Allowed Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Beltran Allowed Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Beltran Allowed Secured Claims.

### 4.4.    *General Unsecured Claims (Class 4).*

(a)     *Classification*:  Class 4 consists of General Unsecured Claims against the Debtor.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, each holder of an Allowed General Unsecured Claim will receive its Pro Rata share of the GUC Pool up to the full amount of such Allowed General Unsecured Claim.

(c)     *Voting*:  Class 4 is Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

### 4.5.    *Crypto Loss Claims (Class 5)*

(a)     *Classification*:  Class 5 consists of Crypto Loss Claims against the Debtor.

(b)     *Treatment*:  Each holder of an Allowed Crypto Loss Claim will receive its Pro Rata share of the Crypto Loss Claim Pool.  Except as provided for herein or in any order of the Bankruptcy Court, holders of Crypto Loss Claims must file and serve on the Wind Down Estates Proofs of Claim consistent with the procedures to be specified in the motion seeking to establish a Crypto Loss Claims Bar Date or be forever barred, estopped, and enjoined from asserting such Claims against the Wind Down Estates or their assets or properties, and such Claims shall be deemed discharged as of the Effective Date.

(c)     *Voting*:  Class 5 is Impaired, and the holders of Crypto Loss Claims are entitled to vote to accept or reject the Plan.

### 4.6.    *SEC Claim (6)*

(a)     *Classification*:  Class 6 consists of the SEC Claim against the Debtors.

(b)     *Treatment*:  By consent of the SEC, pursuant to the SEC Settlement, the SEC Claim shall be treated as an Allowed general unsecured claim. Any distributions made to holders of Allowed Class 4 and Allowed Class 5 Claims shall be deemed to satisfy the SEC Claim in the aggregate amount

of such Allowed Class 4 and Allowed Class 5 Claims. For the avoidance of doubt, (i) there shall be no distributions on the SEC Claim unless Allowed Claims in Class 4 and Class 5 are satisfied in full, and (ii) if the Allowed Claims in Class 4 and Class 5 are satisfied in full under the Plan, distributions shall be made on account of any remaining unsatisfied portion of the SEC Claim until paid in full before any distribution is made to holders of 510(c) Subordinated Claims or holders of TFL Equity Interests.

(c)     *Voting*:  Class 6 is Impaired, and the holder of the SEC Claim is entitled to vote to accept or reject the Plan.

**4.7.     *Intercompany Claims (Class 7).***

(a)     *Classification*:  Class 7 consists of Intercompany Claims against the Debtor.

(b)     *Treatment*:  On or after the Effective Date, all Intercompany Claims will either be reinstated or cancelled and released at the option of the Debtor or otherwise treated as determined by the Liquidating Plan Administrator; *provided* that no such distributions shall be made on account of such Intercompany Claims on the Effective Date.

(c)     *Voting*:  Class 7 is Impaired, and the holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

**4.8.     *Intercompany Interests (Class 8).***

(a)     *Classification*:  Class 8 consists of Intercompany Interests in the Debtors.

(b)     *Treatment*:  On the Effective Date, Intercompany Interests shall receive no recovery or distribution and be reinstated solely to maintain the Debtors' corporate structure, as necessary.

(c)     *Voting*:  Allowed Intercompany Interests are either Unimpaired, in which case the holders of such Intercompany Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, in which case the holders of such Intercompany Interests conclusively are presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Allowed Intercompany Interests are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Allowed Intercompany Interests.

**4.9.     *510(c) Subordinated Claims (Class 9).***

(a)     *Classification*: Class 9 consists of 510(c) Subordinated Claims.

(b)    *Treatment*: Class 9 510(c) Subordinated Claims are subordinated pursuant to this Plan and section 510(c) of the Bankruptcy Code.  510(c) Subordinated Claims shall be deemed expunged, released, and extinguished without further action by or order of the Bankruptcy Court, and shall be of no further force or effect.

(c)    *Voting*: Class 9 is Impaired, and the holders of TFL Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of 510(c) Subordinated Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such 510(c) Subordinated Claims.

### 4.10.    *TFL Equity Interests (Class 10).*

(a)    *Classification*: Class 10 consists of TFL Equity Interests.

(b)    *Treatment*:  On the Effective Date, all TFL Equity Interests shall be cancelled and one share of TFL common stock (the "**Single Share**") shall be issued to the Liquidating Plan Administrator to hold in trust as custodian for the benefit of the former holders of TFL Equity Interests consistent with their former relative priority and economic entitlements and the Single Share shall be recorded on the books and records maintained by the Liquidating Plan Administrator.  Each former holder of TFL Stock (through their interest in the Single Share, as applicable) shall neither receive nor retain any property of the Estate or direct interest in property of the Estate on account of such TFL Stock; *provided*, that in the event that all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each former holder of a TFL Existing Equity Interests may receive its share of any remaining assets of TFL consistent with such holder's rights of payment existing immediately prior to the Petition Date; *provided* that, for the avoidance of doubt, no former holder of TFL Existing Equity Interests on account of the Single Share shall retain any voting rights in the Wind Down Estates. Unless otherwise determined by the Liquidating Plan Administrator, on the date that TFL's Chapter 11 Case is closed in accordance with Section 5.15 of the Plan, the Single Share issued on the Effective Date shall be deemed cancelled and of no further force and effect; *provided* that (i) such cancellation does not adversely impact the Debtors' Estates; and (ii) the continuing rights of former holders of TFL Stock (including through their interest in Single Share or otherwise) shall be nontransferable except (A) by operation of law or (B) for administrative transfers where the ultimate beneficiary has not changed, subject to the Liquidating Plan Administrator's consent.

(c)    *Voting*:  Class 10 is Impaired, and the holders of TFL Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of TFL Equity Interests are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such TFL Equity Interests.

**SECTION 5.    MEANS FOR IMPLEMENTATION.**

    **5.1.    *Limited Substantive Consolidation of the Debtors.***

    This Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order deeming the substantive consolidation of the Debtors' Estates into a single Estate for certain limited purposes relating to the Plan, including voting, Confirmation, and Distribution.  As a result of the limited substantive consolidation of the Estates, (a) each Class of Claims and Interests shall be treated as against a single consolidated Estate without regard to the separate legal existence of the Debtors, (b) as set forth in <u>Section 4.7</u>, no Distributions under the Plan shall be made on account of Intercompany Claims, and (c) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one consolidated entity so that, subject to the other provisions of section 553, debts due to one Debtor may be set off against the debts of the other Debtor.  The limited substantive consolidation of the Debtors under the Plan shall not affect (i) the legal and organizational structure of the Debtors, including for corporate, tax or any other purpose, (ii) the ability of the Wind Down Estates and the Liquidating Plan Administrator to subordinate or otherwise challenge Claims on an entity-by-entity basis, (iii) any Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the Estates, and (iv) payments from any insurance policies or the proceeds thereof.

    **5.2.    *Sources of Consideration for Plan Distribution.***

    The Debtors and the Liquidating Plan Administrator, as applicable, shall fund Distributions under this Plan as set forth herein with the (a) Effective Date Available Cash, (b) Post-Effective Date Cash, (c) the Senior Claim Pool, (d) the SEC Settlement Fund, and (e) the Surplus Reserved Cash.

    **5.3.    *Implementation.***

    (a)    Prior to the Effective Date, the Debtors shall use commercially reasonable efforts to sell its interest in Proximity, all related assets of Proximity, and the Venture Investments.

    (b)    On the Effective Date, the Senior Claim Pool shall be established and funded pursuant to the Plan.

    (c)    On the Effective Date, the SEC Settlement Fund shall be established and funded.

    (d)    On the Effective Date, the GUC Pool shall be established and funded pursuant to the Plan.

    (e)    Prior to the Effective Date, the Fee Escrow Account shall be established and funded with an amount of Cash sufficient to pay Fee Claims, based upon estimates provided by the Professionals, as set forth in <u>Section 2.4</u> of the Plan.

    (f)    On the Effective Date, the Wind Down Reserve and the Wind Down Estates shall be funded in accordance with the Wind Down Budget for the Wind Down process and be funded with the Wind Down Amount.  An initial Wind Down Budget shall be filed with the Plan Supplement and may be amended, modified, or supplemented from time to time by the Liquidating Plan Administrator.

(g)      On the Effective Date, any remaining assets and any Causes of Action of the Debtors' Estates shall transfer to the Wind Down Estates automatically and without further action of the Bankruptcy Court.

(h)      On or before the Effective Date, TFL shall transfer all remaining non-Terra Crypto, if any, held in private wallets or accounts controlled or owned by the Debtors to a third party custodian wallet or account held in the name of the Liquidating Plan Administrator.

(i)      Up to the Private Wallet Crypto Holder Bar Date, the Debtors shall provide Private Wallet Crypto Holders access to such Private Wallet Crypto Holders' wallets or accounts for the sole purpose of allowing such Private Wallet Crypto Holder to withdraw Tokens held in such wallets or accounts, which, for the avoidance of doubt, shall be deemed property of the Estates, to the extent such Tokens have not been withdrawn by the applicable Private Wallet Crypto Holder by the Private Wallet Crypto Holder Bar Date and are accessible to the Debtors after the Private Wallet Crypto Holder Bar Date;

(j)      At the conclusion of the Wind Down, any residual amounts remaining in the Wind Down Reserve shall be transferred to the GUC Pool for final distribution.  Upon the General Unsecured Claims Payment Completion, any residual amounts remaining in the Wind Down Reserve shall be transferred to the Crypto Loss Claims Pool.

(k)      In accordance with <u>Section 5.4</u> of the Plan, the Liquidating Plan Administrator may allocate Surplus Reserved Cash pursuant to the Waterfall.

(l)      In accordance with <u>Section 5.4</u> of the Plan, the Liquidating Plan Administrator may allocate Surplus Senior Claim Pool Cash pursuant to the Waterfall.

### 5.4.    *Liquidating Plan Administrator.*

(a)      *Appointment*.  The Liquidating Plan Administrator's retention shall commence on the Effective Date and shall continue until: (i) the Bankruptcy Court enters an order closing the Chapter 11 Cases, unless otherwise set forth in such order; (ii) the Bankruptcy Court enters an order removing the Liquidating Plan Administrator for cause; or (iii) the Liquidating Plan Administrator voluntarily resigns, upon notice filed with the Bankruptcy Court, and a successor Liquidating Plan Administrator is appointed in accordance with the Plan.

(b)      *Authority*.  Subject to <u>Section 5.4(b)</u> and in accordance with the Wind Down Agreement, the Liquidating Plan Administrator shall have the authority and right on behalf of the Debtors, and the directors of TFL shall be deemed to have delegated their authority, rights, powers and discretions under the TFL constitution, Singapore Companies Act of 1967 or any applicable law, without the need for Bankruptcy Court approval (unless otherwise indicated), in furtherance of the Liquidating Plan Administrator's fiduciary duties to the creditor beneficiaries of the Wind Down Estates (until all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan), and subject to any consent or consultation rights of the Advisory Board, as set forth herein and in the Wind Down Agreement, to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)      subject to <u>Section 7</u> of the Plan, except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process in accordance with the terms of this Plan, including to Allow, object to, or seek to subordinate, compromise or settle any and all Claims against the Debtors;

(ii)      make Distributions in accordance with this Plan;

(iii)    exercise its reasonable business judgment to direct and control the Wind Down under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv)    prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Liquidating Plan Administrator as described herein;

(v)    other than any Causes of Action released by the Debtor pursuant to the Plan or otherwise, prosecute all Causes of Action on behalf of the Debtor, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Liquidating Plan Administrator may determine is in the best interests of the Debtors and their Estates;

(vi)    retain professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to the Wind Down Agreement to assist in performing its duties under the Plan;

(vii)    maintain the books and records and accounts of the Debtors;

(viii)    incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals retained by the Liquidating Plan Administrator;

(ix)    administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its Estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws, and (iii) representing the interest and account of each Debtor or its Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(x)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtor that are required hereunder, by any Governmental Unit or applicable law;

(xi)    pay Statutory Fees in accordance with <u>Section 12.1</u> of the Plan;

(xii)    amend, modify, or supplement the Wind Down Budget or Wind Down Agreement;

(xiii)    to the extent not already determined and implemented, determine the procedure by which a holder of a Claim or Interest may contribute its Contributed Third-Party Claims to the Wind Down Estates;

(xiv)    determine, from time to time, whether the amounts available in the Wind Down Reserve are in excess of the amount necessary to satisfy the purpose for which such reserve was established and amend, modify, or supplement the Wind Down Budget accordingly.  If the Liquidating Plan Administrator determines that a surplus exists in the Wind Down Reserve as of the date of such determination, the Liquidating Plan Administrator may allocate such Surplus Reserved Cash pursuant to the Waterfall;

(xv)     determine, from time to time, whether the amounts available in the Senior Claim Pool are in excess of the amount necessary to pay holders of Allowed Senior Claims, plus any such Disputed Claims until final Allowance or Disallowance. If the Liquidating Plan Administrator determines that a surplus exists in the Senior Claim Pool as of the date of such determination, the Liquidating Plan Administrator may allocate the Surplus Senior Claim Pool Cash pursuant to the Waterfall;

(xvi)    perform other duties and functions that are consistent with the implementation of the Plan; and

(xvii)   close the Chapter 11 Cases.

For the avoidance of doubt, until all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan, the Liquidating Plan Administrator shall owe no fiduciary duties to TFL Existing Equity Interests on account of the Single Share maintained by the Liquidating Plan Administrator, and shall instead owe fiduciary duties to creditor beneficiaries of the Wind Down Estates.

(c)     *Boards of Directors and Officers*.

Upon the Effective Date, (i) the officers and directors of the Debtors existing prior to the Effective Date shall be relieved of any and all duties with the respect to the Debtors and shall be deemed to have resigned without the requirement of having to take any further action and (ii) the Liquidating Plan Administrator shall be the sole officer, director, or manager, as applicable, of each of the Debtors without the requirement of having to take any further action; *provided, that*, TFL shall have one director who is ordinarily resident in Singapore, and who shall also be a member of the Advisory Board, for the purpose of ensuring compliance with any corporate governance and reporting requirements of TFL under Singapore law including, among other things, the holding of an annual general meeting and laying of financial statements at the annual general meeting (section 201 of the Singapore Companies Act 1967), the lodgment of annual returns (section 197 of the Singapore Companies Act 1967), and the maintenance of registers of the company and lodging of documents as required under Singapore law..

(d)     *Wind Down*.  After the Effective Date, pursuant to the Plan, the Liquidating Plan Administrator shall effectuate the Wind Down according to the Wind Down Budget without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, *provided, that*, the Liquidating Plan Administrator shall not effectuate the Wind Down in a manner inconsistent with any express requirements of the Wind Down Agreement, including with respect to any consent or consultation rights of the Advisory Board.  The Wind Down (as determined for federal income tax purposes) shall occur in an expeditious but orderly manner after the Effective Date.

(e)     *Indemnification*.  The Wind Down Estates shall indemnify and hold harmless the Liquidating Plan Administrator solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Liquidating Plan Administrator's bad faith, gross negligence, willful misconduct or criminal conduct.

(f)     *Dissolution*.  After the Effective Date, the Liquidating Plan Administrator shall, subject to applicable non-bankruptcy law and consistent with the implementation of this Plan, merge, dissolve, liquidate, or take such other similar action with respect to each Debtor (including the cancellation of all Interests in each Wind Down Estate) and complete the winding up of such Wind Down Estate as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Wind Down Estate or its shareholders or members, as applicable, or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate Governmental

Unit; *provided*, *however*, that the foregoing does not limit the Liquidating Plan Administrator's ability to otherwise abandon an Interest in a Wind Down Estate.  The Liquidating Plan Administrator may, to the extent required by applicable non-bankruptcy law, maintain a Wind Down Estate as a corporate entity in good standing until such time as such Wind Down Estate is dissolved or merged out of existence in accordance with the Plan.

(g)      *Wind Down Agreement*.  For the avoidance of doubt, the establishment, obligations, and governance of the Wind Down Estates, the rights, obligations, and duties of the Liquidating Plan Administrator, and the rights of creditors, including consent and consultation rights, shall be set forth fully in the Wind Down Agreement, and the consent and consultation rights set forth in this Section 5.4 are cumulative to those set forth in the Wind Down Agreement.  In the event of a conflict between the consent rights set forth in this Section 5.4 of the Plan on the one hand, and the Wind Down Agreement or any other document on the other, the document containing the broadest consent or consultation rights shall control. For the further avoidance of doubt, and notwithstanding anything to the contrary herein, any consent or consultation rights set forth in the Wind Down Agreement shall not limit, dilute, or otherwise impair those set forth in this Section 5.4 of the Plan.

### 5.5.      *Administration of Crypto Loss Claims.*

Other than to the limited extent provided in the Plan with respect to the overall treatment of Crypto Loss Claims, individual Crypto Loss Claims will be administered in accordance with the Crypto Loss Claim Procedures and any related procedures for determining the Allowed Claim for each creditor that asserts a Crypto Loss Claim, which general process to such procedures are to be described in the Plan Supplement.

### 5.6.      *Corporate Action.*

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Liquidating Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person.  All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect as of the Effective Date, without any requirement of further action by the Debtors or the Estates.

### 5.7.      *Withholding and Reporting Requirements.*

(a)      *Withholding Rights*.  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  Additionally, in the case of a non-Cash distribution that is subject to withholding, the distributing party has the right, but not the obligation, to withhold an appropriate portion

of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.

(b)      *Forms*.  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Liquidating Plan Administrator, Wind Down Estates, or such other Person designated by the Liquidating Plan Administrator or Wind Down Estates (which entity shall subsequently deliver to the Liquidating Plan Administrator any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or Form W-8, as applicable, unless such Person is exempt from information reporting under the Tax Code and provides to the Liquidating Plan Administrator notice and evidence of such exemption.  If such request is made by the Liquidating Plan Administrator, Wind Down Estates, or such other Person designated by the Liquidating Plan Administrator or Wind Down Estates and the holder fails to comply within three hundred sixty-five (365) calendar days after the request is made, the amount of such distribution shall irrevocably revert to the applicable Wind Down Estate and any Claim in respect of such distribution shall be forever barred from assertion against any Debtor, the applicable Wind Down Estate and their respective property.

### 5.8.    *Exemption From Certain Transfer Taxes.*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.9.    *Effectuating Documents; Further Transactions.*

(a)      On or as soon as practicable after the Effective Date, the Liquidating Plan Administrator shall take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, subject to any consent or consultation rights of the Advisory Board, as set forth in the Wind Down Agreement, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may determine; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule; (v) the execution, delivery, or filing of contracts, instruments, releases, and other agreements to effectuate and implement the Plan without the need for any approvals, authorizations, actions, or consents; (vi) making any required lodgements and filing with the Accounting and Corporate Regulatory Authority to effect the

appropriate changes to the electronic register of members to give effect to Section 4.10; and (vii) all other actions that the applicable Entities determine to be necessary or appropriate.

(b)     Each officer, manager, or member of the board of directors of the Debtors is (and each officer, manager, or member of the board of directors of the Liquidating Plan Administrator, if applicable, shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of, and on behalf of, the Wind Down Estates, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders or directors or managers of the Debtors, or the Wind Down Estates) except for those expressly required pursuant to the Plan.

(c)     All matters provided for herein involving the corporate structure of the Debtor or the Wind Down Estates, to the extent applicable, or any corporate or related action required by the Debtors or the Wind Down Estates in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or directors or managers of the Debtors and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors or the Wind Down Estates.

### 5.10.   *Preservation of Rights of Action.*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, transferred, or settled pursuant to this Plan, the Confirmation Order, or by another Bankruptcy Court order, the Debtors reserve any and all Causes of Action. On and after the Effective Date, the Liquidating Plan Administrator may pursue such Causes of Action on behalf of the Wind Down Estates. No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Liquidating Plan Administrator, as applicable will not pursue any and all available Causes of Action against them. Except with respect to findings in the Confirmation Order relating to <u>Section 10.9</u> of the Plan, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date. Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Liquidating Plan Administrator shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion, subject to this Plan, to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing, as the Liquidating Plan Administrator may determine is in the best interest of the Estates, without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of this Plan itself shall be resolved only by Confirmation of this Plan itself.

### 5.11.   *Certificate of Incorporation and By-Laws.*

As of the Effective Date, the certificate of incorporation and by-laws, or other organizational documents, as applicable, of the Debtor shall be amended to the extent necessary to carry out the provisions of this Plan.

### 5.12. *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, all notes, instruments, other securities, and other evidence of debt issued, and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtor thereunder shall be deemed fully satisfied, released, and discharged.

### 5.13. *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Liquidating Plan Administrator to seek to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 5.14. *Equitable Subordination Under Bankruptcy Code 510(c).*

The Liquidating Plan Administrator shall have the right to object to any Claim on the basis that such Claim should be equitably subordinated pursuant to section 510(c) and should be classified as a Section 510(c) Subordinated Claim. A Claim shall be deemed a Section 510(c) Subordinated Claim only upon a Final Order of the Bankruptcy Court.

### 5.15. *Election to Contribute Third-Party Claims.*

Because aggregating all Contributed Third-Party Claims may enable the pursuit and settlement of such litigation claims in a more efficient and effective manner, each holder of a Claim or Interest may agree to contribute its Contributed Third-Party Claims to the Wind Down Estates. To the extent not already determined and implemented, the procedure by which a holder of a Claim or Interest may contribute its Contributed Third-Party Claims to the Wind Down Estates shall be determined by the Liquidating Plan Administrator. By contributing its Claim or Interest, each Contributing Claimant agrees that it will be deemed, without further action, (i) to have irrevocably contributed its Contributed Third-Party Claims to the Wind Down Estates, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Wind Down Estates to memorialize and effectuate such contribution.

### 5.16. *Contribution of Contributed Third-Party Claims.*

Upon election, all Contributed Third-Party Claims will be irrevocably contributed to the Wind Down Estates and shall thereafter be assets of the Wind Down Estates for all purposes. No Person may rely on the absence of a specific reference in the Plan, the Disclosure Statement, the Confirmation Order, the Wind Down Agreement, the Plan Supplement, or any other document as any indication that the Wind Down Estates will or will not pursue any and all available Contributed Third-Party Claims against such Person. The Wind Down Estates shall have, retain, reserve, and be entitled to assert all Contributed Third-Party Claims fully to the same extent that the Contributing Claimants could have asserted such Claims prior to the Effective Date. For the avoidance of doubt, the Contributed Third-Party Claims shall not include the rights of any of the Contributing Claimants to receive the distributions under the Plan on account of their Claims or Interests.

### 5.17. *Closing of Chapter 11 Cases.*

After an Estate has been fully administered, the applicable Wind Down Estate or Liquidating Plan Administrator shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules.

### 5.18. *Notice of Effective Date.*

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

### 5.19. *Corporate Form.*

On the Effective Date, each of the Debtors shall maintain its current corporate form, which may be modified or changed at any time after the Effective Date by the Liquidating Plan Administrator in accordance with the terms of this Plan and applicable law.

### 5.20. *Separability.*

Notwithstanding the combination of the separate plans of liquidation for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor. Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtors, confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

## SECTION 6.   DISTRIBUTIONS.

### 6.1. *Distributions Generally.*

Except as otherwise provided in the Plan, one or more Disbursing Agents shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

### 6.2. *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record holders or the permitted designees of any such Claims or Interests. The Debtor, or the Liquidating Plan Administrator, as applicable, shall have no obligation to recognize any transfer or designation of such Claims or Interests occurring after the close of business on the Distribution Record Date. In addition, with respect to payment of any Cure Amounts or Assumption Disputes, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

31

**6.3.    *Distributions on the Effective Date or as Soon as Reasonably Practicable Thereafter.***

The Disbursing Agent shall make Distributions, as applicable, on the Effective Date or as soon as reasonably practicable thereafter, of Cash on the Effective Date:

(a)    of Cash in the Senior Claim Pool to holders of Allowed Senior Claims, to the extent Allowed as of the Effective Date;

(b)    of Cash in the Fee Escrow to holders of Fee Claims in accordance with Section 2.4; and

(c)    of Cash in the GUC Pool to holders of Allowed General Unsecured Claims, to the extent Allowed as of the Effective Date and there are funds in the GUC Pool;

**6.4.    *Periodic Distributions from the Senior Claim Pool, GUC Pool, and Crypto Loss Claim Pool.***

The Disbursing Agent shall make periodic Distributions, in the frequency determined by the Liquidating Plan Administrator in its sole discretion, as applicable:

(a)    of Cash in the Senior Claim Pool to holders of Allowed Senior Claims, to the extent Allowed after the Effective Date;

(b)    of Cash in the GUC Pool to (i) holders of Allowed General Unsecured Claims, to the extent Allowed after the Effective Date and (ii) as Disputed General Unsecured Claims are resolved, resulting in additional funds being available in the GUC Pool for holders of Allowed General Unsecured Claims, to holders of previously Allowed General Unsecured Claims that have not been paid in full;

(c)    of Cash in the Crypto Loss Claim Pool to holders of Allowed Crypto Loss Claims, in accordance with the allocation procedures set forth in the Crypto Loss Claim Procedures, to the extent Allowed after the Effective Date and as Disputed Crypto Loss Claims are Allowed; and

(d)    of Cash in the Crypto Loss Claim Pool to the SEC, to the extent all Allowed Crypto Loss Claims have been satisfied in full and all Disputed Crypto Loss Claims have been resolved.

**6.5.    *Date of Distributions.***

(a)    In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

(b)    (i) Except as set forth in Section 6.5(c), prior to any distributions by the Liquidating Plan Administrator of any Surplus Senior Claim Pool Cash pursuant to the Waterfall, the Liquidating Plan Administrator shall make distributions to holders of all Allowed Senior Claims until such Allowed Claims are indefeasibly paid in full, (ii) prior to any distributions by the Liquidating Plan Administrator of any surplus funds in the GUC Pool to the holders of Crypto Loss Claims, the General Unsecured Claim Payment Completion shall have occurred; *provided* that the Liquidating Plan

Administrator may make distributions to holders of Allowed Crypto Loss Claims prior to the General Unsecured Claim Payment Completion, solely to the extent such distributions are funded with the SEC Settlement Fund, and (iii) prior to any distributions by the Liquidating Plan Administrator to the SEC, the Liquidating Plan Administrator shall make distributions to holders of Crypto Loss Claims.

(c)     After the resolution of a Disputed Senior Claim, the Liquidating Plan Administrator may treat any amounts that were reserved on account of such Disputed Senior Claim that is Disallowed or does not become an Allowed Claim as Surplus Senior Claim Pool Cash and such amounts shall be allocated pursuant to the Waterfall.

### 6.6.    *Disbursing Agent.*

Other than as contemplated in Section 6.2 of the Plan, all distributions under this Plan shall be made by the Disbursing Agent on and after the Effective Date as provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Liquidating Plan Administrator shall use all commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the books and records of the Debtors or the Wind Down Estates, as applicable.  The Liquidating Plan Administrator shall cooperate in good faith with the applicable Disbursing Agent to comply with the reporting and withholding requirements outlined in Section 5.7 of the Plan.

### 6.7.    *Rights and Powers of Disbursing Agent.*

(a)     From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against, and Interests in, the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.  No holder of a Claim or Interest, or other party in interest, shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.

(b)     The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all distributions contemplated hereby; and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 6.8.    *Expenses of Disbursing Agent.*

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent acting in such capacity (including reasonable documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash.

### 6.9. *No Postpetition Interest on Claims.*

Except as otherwise provided in the Plan, the Confirmation Order, another order of the Bankruptcy Court, or the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), interest shall not accrue or be paid on any Claims on or after the Petition Date; *provided*, that if interest is payable pursuant to the preceding clause, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

### 6.10. *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder or permitted designee, as applicable, of an Allowed Claim or Interest shall be made to a Disbursing Agent, who shall transmit such distribution to the applicable holders or permitted designees of Allowed Claims or Interests on behalf of the Debtors. In the event that any distribution to any holder or permitted designee is returned as undeliverable, no further distributions shall be made to such holder or such permitted designee unless and until such Disbursing Agent is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest. Nothing herein shall require the Disbursing Agent to attempt to locate holders or permitted designees, as applicable, of undeliverable distributions and, if located, assist such holders or permitted designees, as applicable, in complying with Section 5.7 of the Plan.

### 6.11. *Distributions after Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

### 6.12. *Unclaimed Property.*

Undeliverable distributions or unclaimed distributions shall remain in the possession of the Debtors or Wind Down Estates, as applicable, until such time as a distribution becomes deliverable or the holder accepts the distribution, or such distribution reverts back to the Debtors or Wind Down Estates, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the date of distribution. After such date all unclaimed property or interest in property shall revert to the Wind Down Estates and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 6.13. *Time Bar to Cash Payments.*

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Wind Down Estates, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

### 6.14.    *Manner of Payment under Plan.*

Except as otherwise specifically provided in the Plan, at the option of the Debtors or Liquidating Plan Administrator, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer, or ACH transfer, or as otherwise required or provided in applicable agreements or customary practices of the Debtor.

### 6.15.    *Satisfaction of Claims.*

Except as otherwise specifically provided for in the Plan and to the extent permitted by law, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction of, and exchange for, such Allowed Claims.

### 6.16.    *Minimum Cash Distributions.*

The Disbursing Agent shall not be required to make any distribution in an amount less than Two Hundred and Fifty Dollars ($250) to any holder of an Allowed Claim; *provided*, that if any distribution is not made pursuant to this Section 6.16, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

### 6.17.    *Setoffs and Recoupments.*

The Debtors or Wind Down Estates, as applicable, or such entity's designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or Wind Down Estates, as applicable, may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; *provided*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or its successor of any claims, rights, or Causes of Action that a Debtor or its successor or assign may possess against the holder of such Claim.

### 6.18.    *Allocation of Distributions between Principal and Interest.*

Except as otherwise required by law (as reasonably determined by the Liquidating Plan Administrator), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

### 6.19.    *No Distribution in Excess of Amount of Allowed Claim.*

Except as provided in Section 6.9 of the Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

## SECTION 7.    PROCEDURES FOR DISPUTED CLAIMS.

### 7.1.    *Objections to Claims.*

The Debtors or the Liquidating Plan Administrator on behalf of the Wind Down Estates shall exclusively be entitled to object to Claims.  After the Effective Date, the Liquidating Plan Administrator shall have and retain any and all rights and defenses that the Debtor had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed.

### 7.2. *Resolution of Disputed Claims.*

The Liquidating Plan Administrator, on behalf of each of the Wind Down Estates and subject to the terms of the Wind Down Agreement, shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Senior Claims, Beltran Allowed Secured Claims, General Unsecured Claims, and Crypto Loss Claims without approval of the Bankruptcy Court, other than with respect to Fee Claims.

### 7.3. *Payments and Distributions with Respect to Disputed Claims.*

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 7.4. *Distributions after Allowance.*

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in this Plan, without interest, as provided in Section 7.8 of the Plan. Such distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order.

### 7.5. *Estimation of Claims.*

The Debtors or Liquidating Plan Administrator (on behalf of each of the Wind Down Estates), as applicable, shall determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims. The Debtor, Liquidating Plan Administrator (on behalf of each of the Wind Down Estates), with respect to such Disputed Claims, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim or Class of Claims pursuant to section 502(c) of the Bankruptcy Code or otherwise, including to establish a reserve for distribution purposes, regardless of whether such, or any, Person had previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim or Class of Claims at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim or Class of Claims, the amount so estimated shall constitute either the Allowed amount of such Claim or Class of Claims, or a maximum limitation on such Claim or Class of Claims, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim or Class of Claims, the Debtors or Liquidating Plan Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Claims; *provided*, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

For the avoidance of doubt, there shall be no estimation of the SEC Claim.

### 7.6. *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

7.7.    ***Claim Resolution Procedures Cumulative.***

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

7.8.    ***Interest.***

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date, except as provided in Section 6.9 of the Plan.

## SECTION 8.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

8.1.    ***Rejection of Executory Contracts and Unexpired Leases.***

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Effective Date; (iv) is identified in Sections 8.4 and 8.6 of the Plan; or (v) is identified on the Assumption Schedule included in the Plan Supplement for assumption, or assumption and assignment to a liquidating trust, if applicable.

(b)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that Wind Down Estates, as applicable, have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases.  Each executory contract and unexpired lease assumed or assumed and assigned to a liquidating trust, pursuant to the Plan shall vest in and be fully enforceable by the Wind Down Estates or such liquidating trust, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

8.2.    ***Determination of Assumption Disputes and Deemed Consent.***

(a)    Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

(b)    The Debtors shall file, as part of the Plan Supplement, the Assumption Schedule.  At least fourteen (14) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned to a liquidating trust, if applicable, reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter**

**period as agreed to by the parties or authorized by the Bankruptcy Court.** Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or the Wind Down Estates, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Wind Down Estates, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this <u>Section 8.2(b)</u>, shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)     If there is an Assumption Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided*, that the Debtors or Wind Down Estates, as applicable, may settle any Assumption Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)     To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtor may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of the Assumption Dispute; *provided*, that the Debtors, the Wind Down Estates, or liquidating trust, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to the extent such executory contract or unexpired lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Debtor or the Wind Down Estates, as applicable). The Debtors or Wind Down Estates, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(e)     Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease. Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired leases.

### 8.3.    *Rejection Damages Claims.*

**In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 4 (General Unsecured Claims). A proof of such Claim must**

**be filed with the Bankruptcy Court by the later of (i) thirty (30) days after the filing and service of the notice of occurrence of the Effective Date; (ii) the general bar date or governmental bar date, as applicable; and (iii) thirty (30) days following service of an Order approving rejection of any executory contract or unexpired lease of the Debtors if such contract or lease is the subject of a pending Assumption Dispute.**

### 8.4.    *Insurance Policies.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice, or claim objection, and any other document related to any of the foregoing, and any other order of the Bankruptcy Court, on the Effective Date: (a) all insurance policies issued or providing coverage to the Debtors shall (subject to the applicable insurer's right to object to such a designation) be assumed in their entirety by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code, and coverage for defense costs and indemnification under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the D&O Policies, and Wind Down Estates, or Liquidating Plan Administrator, as applicable, shall remain liable in full for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under such insurance policies, without the need or requirement for an insurer to file a Proof of Claim, Administrative Expense Claim or objection to any cure amount; (b) nothing shall alter or modify the terms and conditions of and/or any rights, obligations, benefits, claims, rights to payments, or recoveries under the insurance policies without the express written consent of the applicable insurer; and (c) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against an insurer under applicable nonbankruptcy law to proceed with their claims; (ii) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (I) workers' compensation claims, (II) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing; (iii) the insurers to cancel any insurance policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the insurance policies; and (iv) holders of Allowed Claims to pursue insurance recovery.

### 8.5.    *Indemnification Obligations*

Any obligations of the Debtors pursuant to a contract, instrument, agreement, certificate of incorporation, constitution, by-law, comparable organizational document or any other document or applicable law, to indemnify, reimburse, or limit the liability of any director, officer, or employee of the Debtors, pursuant to the foregoing in respect of any claims, demands, suits, causes of action, or proceedings against such director, officer, or employee based upon any act or omission related to such director or officer's service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall survive Confirmation of the Plan and except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; *provided*, however, that all monetary obligations under this provision shall, to the extent Allowed, be treated as General Unsecured Claims or 510(c) Subordinated Claims, as determined by the Court.  The Liquidating Plan Administrator reserves all legal and equitable rights and defenses in respect of any claims asserted by any current or former officers, directors, or employees of the Debtors.  For the avoidance of doubt, the scope of the Debtors' indemnification obligations in this <u>Section 8.5</u> shall be conterminous with applicable non-bankruptcy law and to the extent

provided by such law.  For the avoidance of doubt, any claim for indemnification for amounts payable after the Effective Date shall not constitute an Allowed Claim unless approved by the Bankruptcy Court.

### 8.6.    *Intellectual Property Licenses and Agreements.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed assumed by the Debtors and the Wind Down Estates and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors in accordance with Section 8.1 of the Plan.  Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Wind Down Estates, and the Wind Down Estates may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

### 8.7.    *Assignment.*

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned to a liquidating trust hereunder, if applicable, shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

### 8.8.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

### 8.9.    *Reservation of Rights.*

(a)    The Debtors may amend the Assumption Schedule, with the consent of the Creditors' Committee, not to be unreasonably withheld, and any cure notice until five (5) Business Days immediately prior to the commencement of the Confirmation Hearing in order to (i) add, delete, or reclassify any executory contract or unexpired lease or amend a proposed assumption or assumption and assignment and/or (ii) amend the proposed Cure Amount; *provided*, that if the Confirmation Hearing is adjourned for a period of more than two (2) consecutive calendar days, the Debtors' right to amend such schedules and notices shall be extended to the Business Day immediately prior to the adjourned date of the Confirmation Hearing, with such extension applying in the case of any and all subsequent adjournments of the

Confirmation Hearing. The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

(b)        Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtors, or Wind Down Estates, or their respective affiliates have any liability thereunder.

(c)        Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors and Wind Down Estates, under any executory or non-executory contract or any unexpired or expired lease.

(d)        Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, Wind Down Estates, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

## SECTION 9.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

### 9.1.    *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)        the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred, and no stay of the Confirmation Order shall be in effect;

(b)        all agreements necessary to implement the Plan, shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

(c)        the documents contained in the Plan Supplement will contain terms and conditions consistent in all material respects with this Plan;

(d)        the Fee Escrow Account shall have been established and funded;

(e)        the Wind Down Reserve shall have been funded with the Wind Down Amount in accordance with the Wind Down Budget;

(f)        the SEC Settlement Fund shall have been established and funded;

(g)        the Senior Claim Pool shall have been established and funded; and

(h)        the GUC Pool shall have been established and funded with Effective Date Available Cash (if any).

Notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the completion of the applicable conditions precedent to the Effective Date; *provided*, that to the extent a condition

precedent (a "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to a Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

> **9.2.    *Waiver of Conditions Precedent.***

(a)    Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Each of the conditions precedent in <u>Section 9.1</u> of the Plan other than the conditions set forth in <u>Section 9.1(b)</u> may be waived in writing by the Debtors, with the consent of the Creditors' Committee, not to be unreasonably withheld, without leave of or order of the Bankruptcy Court.

(b)    The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

> **9.3.    *Effect of Failure of Conditions to Effective Date.***

Unless otherwise extended by the Debtors, if the Effective Date does not occur on or before the date that is one hundred and eighty (180) days after the date on which the Confirmation Order is entered or if the Confirmation Order is vacated, (a) no distributions under the Plan shall be made, (b) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (c) all the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtor or otherwise.

## SECTION 10.  EFFECT OF CONFIRMATION.

> **10.1.    *Vesting of Assets.***

(a)    On the Effective Date pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all remaining property of the Debtors' Estates and any Estate Causes of Action, including the SEC Settlement Fund, shall vest in the Wind Down Estates free and clear of all Claims, Liens, encumbrances, charges, and other interests, subject to treatment of Other Secured Claims under the Plan. On and after the Effective Date, the Wind Down Estates may take any action, including, without limitation, the operation of their businesses; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein.  Without limiting the foregoing, the Wind Down Estates may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court. Notwithstanding the foregoing, vesting of property in which any governmental unit holds an interest, and for which title vests in the Debtors subject to regulatory requirements under a governmental grant or award, including but not limited to, the requirements of 10 C.F.R. 600.321, shall be limited to the extent of the Debtors' interest in such property; and the Wind Down Estates may only take action, including but not

limited to the use, acquisition, sale, lease, and disposition of such property, in accordance with applicable non-bankruptcy law.

### 10.2.  *Term of Injunctions or Stays.*

Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.3.  *Injunction.*

**From and after the Effective Date through and until Wind Down Completion Date:**

(a)  **All holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.**

(b)  **Except as expressly provided in the Plan, the Definitive Documents, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, solely with respect to any Claims, Interests, and Causes of Action that will be or are treated by the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Wind Down Estates, or the Liquidating Plan Administrator, as applicable, or the property of any of the Debtors, the Wind Down Estates, or the Liquidating Plan Administrator, as applicable; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Wind Down Estates, or the Liquidating Plan Administrator, or the property of any of the Debtors, or the Wind Down Estates, as applicable; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Wind Down Estates, or the property of any of the Debtors, the Wind Down Estates, or the Liquidating Plan Administrator, as applicable; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, or the Wind Down Estates, as applicable, or against property or interests in property of any of the Debtors, or the Wind Down Estates, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

(c)  **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this <u>Section 10.3</u>.**

(d)     **The injunctions in this <u>Section 10.3</u> shall extend to any successors of the Debtor, or the Wind Down Estates, as applicable, and their respective property and interests in property.**

(e)     **Notwithstanding the foregoing, nothing in this <u>Section 10.3</u> shall enjoin the assertion of a defensive right of recoupment.**

(f)     **Nothing in the Plan or Confirmation Order shall (1) enjoin, release, impair or otherwise preclude the United States (i) from pursuing, commencing, continuing or enforcing any criminal action or any police or regulatory action against the Debtors or any non-debtor person or entity, (ii) from pursuing any liability to the United States that is not a Claim, (iii) from exercising any rights of setoff or recoupment subsequent to confirmation of the Plan or any order granting substantive consolidation, and such rights are preserved, and (iv) from pursuing any claim of the United States arising on or after the Confirmation Date; and (2) grant the Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code.**

### 10.4.    *Debtors are Not Entitled to a Discharge.*

Nothing in the Plan or the Confirmation Order shall grant the Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code.

### 10.5.    *Binding Effect.*

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders were (a) Impaired or Unimpaired under the Plan; (b) deemed to accept or reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any distribution under the Plan.

### 10.6.    *Releases by the Debtors.*

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Case, to the fullest extent allowed by applicable law, as such law may be extended subsequent to the Effective Date, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, their Estates, the Wind Down Estates and the Liquidating Plan Administrator, as may be applicable, and any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, as may be applicable, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons or Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, or for the foregoing Entities, from any and all Released Claims.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in any Plan Supplement) executed to implement the Plan, (b) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, criminal misconduct, or gross negligence, (c) Causes of Action against Released Parties, if any, listed on the Schedule of Retained Causes of Action; (d) rights reserved under the Dentons Retention Order; (e) any avoidance actions relating to private wallet transactions that occurred prior to the Petition Date other than payment of legal fees and related vendors who provided services and acted in good

faith in receiving fees from private wallets related or relating to the Chapter 11 Cases, the defense of the SEC Enforcement Action and the investigation that preceded it, the defense of civil claims brought against TFL that have been dismissed, and the pending criminal proceedings and investigations, except for any avoidance actions subject to the reservation of rights set forth in (d) hereof which are fully preserved; (f) the SEC Settlement.

### 10.7.    *Exculpation.*

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Releases by the Debtors or the Releases by Holders of Claims and Interests, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to, any act or omission taken on or after the Petition Date and prior to the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the preparation for, filing, negotiation, solicitation, confirmation, execution, or implementation (to the extent on or after the Petition Date and prior to the Effective Date) of, as applicable, the Plan (including, for the avoidance of doubt, any Plan Supplement), the Disclosure Statement, or any restructuring transaction, contract, instrument, release, or other agreement or document created, filed, or entered into during the Chapter 11 Cases in connection with the Chapter 11 Cases, the management of the Debtors' cash and cryptocurrency assets during the Chapter 11 Cases (including the trading and sales of cryptocurrencies and tokens in connection with the Chapter 11 Cases), the Debtors' or Wind Down Estates' receipt of assets from LFG pursuant to the SEC Settlement, the annual financial statements prepared pursuant to Singapore Companies Act requirements, the recognition application for recognition proceedings in Singapore, the Plan, the Disclosure Statement, the SEC Settlement, the Definitive Documents, the pursuit or consummation of any sale transactions during the Chapter 11 Cases, the administration and implementation of the Wind Down, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or after the Petition Date and before the Effective Date , except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted bad faith, fraud, willful misconduct, criminal misconduct, or gross negligence.

The Exculpated Parties who have participated in any conduct referenced in section 1125(e) of the Bankruptcy Code and on terms compliant therewith, are not, and on account of such conduct, shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale or purchase of a security under the Plan, to the extent permitted by section 1125(e) of the Bankruptcy Code.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above shall not be construed as exculpating any party or entity from its post-Effective Date obligations under the Plan, or any document, instrument, or agreement (including those set forth in any Plan Supplement) executed to implement the Plan.

### 10.8.    *Additional Provisions Regarding Governmental Units.*

Notwithstanding any language to the contrary contained in the Plan, and/or the Plan Confirmation Order, no provision of this Plan or the Plan Confirmation Order shall (i) preclude the SEC from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor Person or entity in any forum.

### 10.9. *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date, to the extent they have participated in any conduct referenced in section 1125(e) of the Bankruptcy Code and on terms compliant therewith, the Debtors and each of their respective directors, who served in such capacity on or after the Petition Date, officers, employees, claims and noticing agents, financial advisors, investment bankers, professionals, accountants, and attorneys (but for the avoidance of doubt, not the Debtors' current or former shareholders) shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale or purchase of a security under the Plan, to the extent provided in Section 1125(e) of the Bankruptcy Code.

### 10.10. *Corporate Action.*

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Liquidating Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred on the Effective Date and shall be in effect, without any requirement of further action by the Debtors or the Estates.

## SECTION 11.  RETENTION OF JURISDICTION.

### 11.1. *Retention of Jurisdiction.*

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order, including to ensure that an Allowed Claim does not receive consideration in excess of the Allowed amount of such Claim, and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(d)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or Class of Claims;

(e)    to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)        to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)        to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)        to hear and determine all applications and proceedings to approve Fee Claims;

(i)        to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)        to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(k)        to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)        to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(m)        to hear, adjudicate, decide, or resolve any and all matters related to Section 10 of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(n)        to resolve disputes concerning Disputed Claims or the administration thereof;

(o)        to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)        to enter one or more final decrees closing the Chapter 11 Cases;

(q)        to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located and adjudicate any disputes with respect thereto;

(r)        to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(s)        to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code, other than defenses or limits that are asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code; and

(t)      to enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Cases.

### 11.2.  *Courts of Competent Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## SECTION 12.  MISCELLANEOUS PROVISIONS.

### 12.1.  *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the Debtors or the Liquidating Plan Administrator, as applicable, shall pay all Statutory Fees that are due and payable, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case (the "**Quarterly Fees**").  After the Effective Date, the Wind Down Estates and the Liquidating Plan Administrator, as applicable, shall pay any and all Quarterly Fees when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Wind Down Estates and the Liquidating Plan Administrator, as applicable shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Notwithstanding anything called for in the Plan to the contrary, the Wind Down Estates and the Liquidating Plan Administrator, as applicable, shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee and make such reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.  The obligations under this Section 12.1 shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

### 12.2.  *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3.  *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee, if any, shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided, however,* that after the Effective Date, the Creditors' Committee shall exist and its professionals shall continue to be retained and shall continue to be entitled to reasonable compensation by the Debtors without the need for further application to the Bankruptcy Court with respect to all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and any related hearings.

### 12.4.  *Amendments.*

(a)      *Plan Modifications*.  The Debtors reserve the right, with the consent of the Creditors' Committee, not to be unreasonably withheld, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan (i) prior to the entry of the Confirmation Order, including

amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, the Debtors may, upon order of the Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(b)     *Other Amendments*.  Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

### 12.5.     *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw this Plan for any Debtor of all Debtors, prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, in each case with respect to a Debtor, then, with respect to such Debtor: (a) this Plan shall be null and void in all respects; (b) any assumption or rejection of executory contracts or unexpired leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, the Estates, or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Estates, or any other Entity.

### 12.6.     *Severability of Plan Provisions upon Confirmation.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to this Plan and may not be deleted or modified without the consent of the Debtors or the Wind Down Estates (as the case may be); and (3) nonseverable and mutually dependent.

### 12.7.     *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, that corporate or limited liability

company governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

### 12.8.    *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.9.    *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtors and all holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest are authorized to prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### 12.10.    *Retention of Books and Records.*

Neither the Debtor nor the Wind Down Estates shall destroy or otherwise abandon any such books, records, electronically stored information, or other documents without authorization from the Bankruptcy Court and without providing advance notice to the SEC (c/o Therese A. Scheuer and Michael Kelly, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549, Scheuert@sec.gov; Kellymich@sec.gov  and William M Uptegrove, U.S. Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326, UptegroveW@SEC.GOV), which shall have seven (7) days to object to any proposed destruction or abandonment; provided that, nothing in the Plan or the Confirmation Order shall affect the obligations of the Debtors, the Wind Down Estates, and/or any transferee or custodian to maintain any books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency. The Wind Down Budget shall include an amount appropriate to fund this obligation.

### 12.11.    *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Wind Down Estates, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Liquidating Plan Administrator.

### 12.12.    *Successors and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

### 12.13.    *Entire Agreement.*

On the Effective Date, this Plan, the Plan Supplement and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**12.14.  *Notices.***

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(i) If to the Debtors, prior to the Effective Date:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:   Ronit Berkovich
           Jessica Liou
           F. Gavin Andrews
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

- and –

Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Attn:   Paul N. Heath
           Zachary I. Shapiro
           Matthew P. Milana
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

(ii) If to the Wind Down Estates or the Liquidating Plan Administrator, after the Effective Date:

An address to be identified in the Plan Supplement.

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:  June 30, 2024

By:     */s/ Chris Amani*
           Name: Chris Amani
           Title:   Head of Company Operations

**TERRAFORM LABS PTE. LTD.**