**EXHIBIT B**

**Liquidation Analysis**

# LIQUIDATION ANALYSIS

In connection with developing the *Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (as may be amended, modified, or supplemented from time to time and including all exhibits thereto, the "Plan"),[1] the Debtors prepared the following analysis under the Plan (the "Liquidation Analysis") to estimate recoveries to creditors pursuant to the Plan and a hypothetical chapter 7 liquidation for purposes of ascertaining compliance with Section 1129(a)(7) of the Bankruptcy Code. The Liquidation Analysis reflects the Debtors' good faith estimate of the expected cash and assets available for distribution after the transactions contemplated by the Plan. For purposes of the Liquidation Analysis, the Effective Date is assumed to be September 30, 2024 (the "Assumed Effective Date").

The Liquidation Analysis is being provided solely to enable holders of Claims entitled to vote on the Plan to make an informed judgment of how to vote on the Plan. The Debtors and their advisors expressly disclaim any liability to any holder of Claims or Interests in connection with such information or its decision with respect to how to vote on the Plan. The Liquidation Analysis reflects the Debtors' judgment of the outcome of various actions undertaken as part of the Debtors' wind down process, which are subject to change. The Debtors' financial advisors have relied upon the accuracy and completeness of financial and other information furnished by the Debtors and did not attempt to independently audit or verify such information. All estimates and assumptions shown within the Liquidation Analysis were developed by the Debtors and their advisors, and the Liquidation Analysis has not been audited or reviewed by independent accountants. The assumptions disclosed herein are those that the Debtors believe to be significant to the Liquidation Analysis.

THE LIQUIDATION ANALYSIS, INCLUDING THE UNDERLYING ASSUMPTIONS, SHOULD BE CAREFULLY REVIEWED IN EVALUATING THE PLAN. ALTHOUGH THE DEBTORS BELIEVE THE ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS, WHEN CONSIDERED ON AN OVERALL BASIS, ARE REASONABLE IN LIGHT OF CURRENT CIRCUMSTANCES AND EXPECTATIONS, NO ASSURANCE CAN BE GIVEN THAT THE RESULTS HEREIN WILL BE REALIZED. THE ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS ARE SUBJECT TO SIGNIFICANT UNCERTAINTIES, AND AS SUCH, DEPSITE EFFORTS TO FORSEE AND PLAN FOR THE EFFECTS OF CHANGES IN THESE CIRCUMSTANCES, RESULTS CANNOT BE PREDICTED WITH CERTAINTY. CONSEQUENTLY, ACTUAL RESULTS COULD VARY SIGNIFICANTLY FROM THE PROJECTIONS HEREIN.

THE LIQUIDATION ANALYSIS SHOULD NOT BE REGARDED AS A REPRESENTATION OR WARRANTY BY THE DEBTORS OR ANY OTHER PERSON AS TO THE ACCURACY OF THE ANALYSIS OR THAT THE ASSUMED RESULTS WILL BE REALIZED. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS SHALL CONSTITUTE A WAIVER OR ADMISSION BY THE DEBTORS IN ANY RESPECT, INCLUDING WITHOUT LIMITATION, WITH RESPECT TO MATTERS INVOLVING OBJECTIONS TO CLAIMS,

---

[1] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

LIMITED SUBSTANTIVE CONSOLIDATION, EQUITABLE SUBORDINATION, DEFENSES, ANY ASSERTED RIGHTS OF OR PURPORTED EXERCISE OF FORECLOSURE, SETOFF OR RECOUPMENT, OR ANY OTHER RELEVANT APPLICABLE LAWS, AND THE DEBTORS RESERVE ALL RIGHTS AND DEFENSES RELATING TO ANY OF THE ASSUMPTIONS MADE HEREIN. THE SIGNIFICANT ASSUMPTIONS USED IN THE PREPARATION OF THE LIQUIDATION ANALYSIS ARE STATED BELOW. THE LIQUIDATION ANALYSIS ASSUMES THAT THE DEBTORS WILL EMERGE FROM CHAPTER 11 ON THE ASSUMED EFFECTIVE DATE. THE LIQUIDATION ANALYSIS SHOULD BE READ IN CONJUNCTION WITH (1) THE DISCLOSURE STATEMENT (AS DEFINED BELOW), INCLUDING ANY OF THE EXHIBITS THERETO OR INCORPORATED REFERENCES THEREIN, AS WELL AS THE RISK FACTORS SET FORTH THEREIN, AND (2) THE SIGNIFICANT ASSUMPTIONS, QUALIFICATIONS, AND NOTES SET FORTH BELOW.

## ASSUMPTIONS TO LIQUIDATION ANALYSIS

**1. Methodology**

(a) The Liquidation Analysis assumes limited substantive consolidation to estimate the amount of net assets at Terraform Labs Pte. Ltd. ("TFL") and "Terraform Labs Limited ("TLL") that may be available for distribution;

(b) The Liquidation Analysis assumes a period of up to twenty-four months following the Assumed Effective Date (the "Projection Period") to distribute all of the Debtors' assets and resolve all outstanding claims;

(c) The Liquidation Analysis assumes that all assets will be distributed during the Projection Period. Although many of the Debtors' assets would be available for immediate distribution under the terms of the Plan, certain assets may take additional time to distribute. All amounts included in the Liquidation Analysis have not been discounted to present values;

(d) The asset values and projected recoveries in the Liquidation Analysis, in many cases, assume a range of estimates to reflect economic, business, regulatory and competitive uncertainties and contingencies.

**2. Causes of Actions**

(a) As described in the Plan, on the Effective Date, the Debtors shall transfer to the Wind Down Trust all Causes of Action, and the Wind Down Trustee, as directed by the Plan Administrator may, on behalf of the Wind Down Trust, enforce all rights to commence, pursue and settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date;

(b) Due to the uncertain nature of any litigation that might be pursued in connection with Causes of Action, the Debtors have not estimated the value of any potential proceeds or incremental litigation costs.

2

3. **Digital Asset Values**

(a) In the low case, Cryptocurrency[2] is valued using trading prices from CoinGecko as of August 4, 2024 ("Current Cryptocurrency Prices"). In the high case, Cryptocurrency is valued using a volume weighted average price over the 30 days ending August 4, 2024 ("Average Cryptocurrency Prices"). A schedule detailing these Cryptocurrency prices is below. This schedule excludes Terra Crypto[3] expected to be burned pursuant to the SEC Settlement and certain Cryptocurrency that comprise a *di minimis* portion of the Debtors' Cryptocurrency;

(b) Cryptocurrency values are subject to material market volatility changes, and such changes may be significant and could have a material impact on the ultimate asset recoveries available for distribution.

| Digital Asset | Current Cryptocurrency Prices (in USD) | Average Cryptocurrency Prices (in USD) |
|---|---|---|
| ASTRO | 0.0335 | 0.0406 |
| AVAX | 21.2000 | 27.4074 |
| BNB | 495.9600 | 554.5851 |
| BTC | 58,006.0000 | 63,127.3082 |
| CVX | 2.5900 | 2.7704 |
| ETH | 2,682.4400 | 3,234.0848 |
| PYTH | 0.2736 | 0.3383 |
| USDC | 1.0000 | 1.0000 |
| USDT | 1.0000 | 1.0000 |

---

[2]   "Cryptocurrency" means all digital assets that are traded on a blockchain, broadly defined to include all types of digital assets, including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets. This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum (ETH), USD Coin, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, PYTH, Luna (LUNA), Luna Classic (LUNC), Terra USD (UST), Avalanche (AVAX), Convex (CVX), OHM, Governance OHM, and any other digital asset.

[3]   Terra Crypto" means any Cryptocurrency issued, created, generated, minted, promoted by or otherwise associated with the Company and its Affiliates, the Terra Ecosystem, or any decentralized or centralized application or protocol on the TerraLunaClassic and TerraLuna blockchains, including Anchor (ANC), Bonded Assets (bLUNA and bETH), Mirror (MIR), Mirror Assets (mAssets), TerraLunaClassic (LUNC), Wrapped Luna (wLUNA), TerraClassicUSD (USTC), TerraLuna (LUNA), and Liquidity Pool (LP) tokens on TerraLunaClassic and TerraLuna decentralized exchanges.

4. **Debtor and Non-Debtor Affiliates**

    (a) In certain cases, the Debtors may have receivables from, or equity interests in, certain non-Debtor affiliates. The Liquidation Analysis reflects estimates related to these assets, which are included in Venture Investments. Given the Plan contemplates limited substantive consolidation for distribution, confirmation, and voting purposes, Debtor to Debtor balances have not been reflected in the Liquidation Analysis.

5. **Taxes**

    (a) The Liquidation Analysis does not include the potential effect of taxes payable in connection with the Debtors' dispositions of assets as part of distributions. The impact of such taxes is uncertain at this time, including as a result of uncertainty regarding whether the Debtors will be permitted to utilize all of the existing Net Operating Losses after the Effective Date. If applicable, such taxes could either reduce the amount of Distributable Assets or generate additional Priority Tax Claims (as described below), potentially by a material amount;
    (b) For further information related to tax-related items, please refer to Section VI of the Debtors' *Disclosure Statement for Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* ("Disclosure Statement").

# ESTIMATED NET ASSETS AVAILABLE FOR DISTRIBUTION[4]

## Chapter 11 Plan of Liquidation

*USD in thousands*

| Distributable Value Summary | Notes | Assets As of 6/30/2024 | Adjustments | Pro Forma As of 9/30/2024 | Recovery Estimate % Low | Recovery Estimate % High | Recovery Estimate $ Low | Recovery Estimate $ High |
|---|---|---|---|---|---|---|---|---|
| Effective Date Cash | [A] | $ 25,657 | $ 39,709 | $ 65,366 | 90.0% | 100.0% | $ 58,823 | $ 65,366 |
| Restricted Accounts | [B] | 3,837 | - | 3,837 | 0.0% | 100.0% | - | 3,837 |
| Cryptocurrency | [C] | 156,165 | (145,952) | 10,213 | 0.0% | 100.0% | - | 10,213 |
| Prepayments | [D] | 44,899 | (27,299) | 17,601 | 0.0% | 22.7% | - | 4,000 |
| Other Assets | [E] | 13,345 | - | 13,345 | 0.0% | 0.0% | - | - |
| Venture Investments | [F] | 104,168 | (5,411) | 98,756 | 17.8% | 98.7% | 17,627 | 97,505 |
| Beltran Escrow Deposit | [G] | 56,949 | - | 56,949 | 100.0% | 100.0% | 56,949 | 56,949 |
| SEC Settlement Fund | [H] | 231,846 | (27,525) | 204,320 | 25.0% | 100.0% | 51,080 | 204,320 |
| **Gross Distributable Value** | | **$ 636,865** | **$ (166,479)** | **$ 470,386** | **39.2%** | **94.0%** | **$ 184,479** | **$ 442,190** |
| Liquidation Costs | [I] | | | | | | (30,848) | (22,109) |
| **Net Distributable Value** | | | | | | | **$ 153,631** | **$ 420,080** |

| | Notes | Claims $ Low | Claims $ High | Recovery Estimate % Low | Recovery Estimate % High | Recovery Estimate $ Low | Recovery Estimate $ High |
|---|---|---|---|---|---|---|---|
| **Proceeds Available for Administrative Expense Claims** | | | | | | **$ 45,602** | **$ 158,811** |
| Fee Claims | [J] | 20,553 | 20,553 | 100.0% | 100.0% | 20,553 | 20,553 |
| Other Administrative Expense Claims | [J] | 261 | 261 | 100.0% | 100.0% | 261 | 261 |
| **Proceeds Available after Administrative Expense Claims** | | | | | | **$ 24,788** | **$ 137,997** |
| Priority Tax Claims | [K] | TBD | TBD | 0.0% | 0.0% | TBD | TBD |
| **Proceeds Available after Priority Tax Claims** | | | | | | **$ 24,788** | **$ 137,997** |
| Priority Non-Tax Claims | [L] | - | - | n/a | n/a | - | - |
| **Proceeds Available after Priority Non-Tax Claims** | | | | | | **$ 24,788** | **$ 137,997** |
| Other Secured Claims | [M] | 70 | 70 | 100.0% | 100.0% | 70 | 70 |
| **Proceeds Available after Other Secured Claims** | | | | | | **$ 24,718** | **$ 137,927** |
| Value Available from Beltran Escrow Deposit | | | | | | 56,949 | 56,949 |
| Beltran Allowed Secured Claims | [N] | 56,949 | - | 100.0% | n/a | 56,949 | - |
| **Proceeds Available after Beltran Allowed Secured Claims** | | | | | | **$ 24,718** | **$ 194,875** |
| General Unsecured Claims | [O] | 48,003 | 5,000 | 51.5% | 100.0% | 24,718 | 5,000 |
| **Proceeds Available after General Unsecured Claims** | | | | | | **$ -** | **$ 189,875** |
| Value Available from SEC Settlement Fund | | | | | | 51,080 | 204,320 |
| **Proceeds Available for Crypto Loss Claims, SEC Claims, and other Claims and Interests** | [P] | | | | | **$ 51,080** | **$ 394,196** |

---

[4] Assets as of June 30, 2024, adjusted for Average Cryptocurrency Prices.

# NOTES TO LIQUIDATION ANALYSIS
## Chapter 11 Plan of Liquidation

Note A – Effective Date Cash

Includes estimated cash and equivalents as of the Assumed Effective Date. Balances in both the high and low case reflect the conversion of Cryptocurrency, excluding (i) frozen assets held in Restricted Accounts, including frozen assets held at Hex Trust Ltd. and (ii) Terra Crypto expected to be burned pursuant to the SEC Settlement. Additionally, the high case assumes Average Cryptocurrency Prices and the low case assumes Current Cryptocurrency Prices.

Note B – Restricted Accounts

Represents bank accounts and investment accounts that were frozen shortly after the SEC Enforcement Action. The high case assumes the Debtors are able to retrieve all the funds of approximately $4 million currently frozen in these accounts, whereas the low case assumes no recovery of such amount. For the purposes of this Liquidation Analysis, Restricted Accounts exclude frozen assets held at Hex Trust Ltd., which can be found in Cryptocurrency.

Note C – Cryptocurrency

Includes accessible Cryptocurrency owned and controlled by the Debtors in the period prior to the Effective Date. The high case uses Average Cryptocurrency Prices and the low case uses Current Cryptocurrency Prices:
- Under the SEC Settlement, all UST, MIR, LUNA, wLUNA, ANC, KRTC, and LUNA 2.0 in the possession or control of TFL and its estate are required to be burned. Both the high and low case reflect this (as reflected in the adjustments column above);
- Remaining Cryptocurrency, excluding assets held by Hex Trust Ltd. as third party custodian – Both the high and low case assume these assets are converted to fiat currency by the Assumed Effective Date (as reflected in the adjustments column above). In addition, alt coins held by the Debtors are assumed to be 25% of market value in the low case and 100% in the high case; and
- Assets held by Hex Trust Ltd. – Low case assumes no recovery, whereas the high case assumes these frozen assets stay denominated in Cryptocurrency until such time they are liquidated and disbursed to claimants.

Note D – Prepayments

Includes various professional fee retainers related to Advance Fee Retainer[5], professionals retained by the Debtors, certain counsel to current and former employees pursuant to indemnification obligations, and other prepayments which the Debtors and their advisors are in the process of reconciling.

Both low and high recoveries assume all retainers are applied against accrued professional fee balances outstanding as of the Assumed Effective Date, aside from a $4 million retainer in the high case which is assumed recouped in cash.

Given the nature of the non-retainer prepayments still subject to reconciliation, no recovery is assumed.

Note E – Other Assets

Other Assets include prepaid accounting assets such as prepetition employee retention and severance, fixed assets, and other immaterial assets.

Due to the nature of these assets, no recoveries are assumed.

Note F – Venture Investments

Venture Investments include numerous technology-related ventures in early-stage and growth-stage companies that the Debtors have invested in over the last several years. In furtherance of the wind-down process contemplated by the SEC Settlement, the Debtors intend to sell their interest in the Venture Investments. The Debtors are currently conducting outreach to potential bidders interested in purchasing its Business Assets and certain of its Ventures Assets, including wholly owned subsidiary, Proximity Panorama, LDA, Pulsar Finance, Station, Enterprise, Foundation, and Warp. For the Debtors' Venture Investments, no marketing process has yet been initiated nor have the Debtors received any substantive indication of value from potential acquirors. For this reason, the Liquidation Analysis incorporates an assumption of approximately 25-100% of recorded book value for Venture Investments without future funding obligations, and 0-100% of recorded book value for Venture Investments with future funding obligations (with the approximate $33 million of unfunded future obligations incorporated as General Unsecured Claims in the low case).

---

[5] As defined in the *Order Granting Application of Debtor for Entry of an Order Authorizing the Retention and Employment of Dentons US LLP as Special Counsel to the Debtor and Debtor in Possession, Effective as of the Petition Date* [Docket No. 179]

Note G – Beltran Escrow Deposit

Represents the approximate $57 million of funds deposited into the Beltran Escrow Deposit, as required by order of the High Court of the Republic of Singapore in the Beltran Action as security against judgment pending the outcome of the Beltran Action. The high and low case assume full recoveries of $57 million, with all proceeds to be used to satisfy Beltran Allowed Secured Claims. As referenced in the Plan, the Beltran Action is ongoing, which could materially impact recoveries for these claimants.

Note H – SEC Settlement Fund

Includes the assets contemplated by the SEC Settlement to be transferred from Do Hyeong Kwon ("Mr. Kwon") to TFL:

- $7 million in Cash transferred to TFL by Mr. Kwon, which will in turn be transferred to the Wind Down Trust pursuant to the Plan and Wind Down Trust Agreement;
- All Cryptocurrency of Luna Foundation Guard; and
- Mr. Kwon's ownership in all Pyth tokens obtained pursuant to the May 18, 2021 Token Grant Agreement between Mr. Kwon and Tribal Invest Corp.

As referenced in the Disclosure Statement, the Debtors and Mr. Kwon have faced obstacles regarding the transferability of certain tokens, including AVAX and Pyth. For this reason, the Liquidation Analysis assumes a recovery on the SEC Settlement Fund of approximately $204 million (or 100%) in the high case and approximately $51 million (or 25%) in the low case.

The SEC Settlement Fund shall be reserved for distribution solely to holders of Allowed Crypto Loss Claims.

Note I – Liquidation Costs

Consistent with other similar chapter 11 cryptocurrency cases, Liquidation Costs are estimated to be 5 to 10% of gross distributable assets in the high and low case, respectively.

Liquidation Costs include the cost associated with operating personnel required to distribute the assets of the Wind Down Trust in accordance with the Plan as well as to assist in the resolution of Disputed Claims and Causes of Action. Furthermore, payroll costs include incremental costs associated with operating personnel required by federal and state law, contractual obligations, and other policies of the Debtors. These figures also include vendor costs related to cloud data transfer and storage, security, and other technological services.

In addition, the Liquidation Costs include an estimate of fees for professionals required to assist the Debtors in workstreams pertaining to the Plan. These include, but are not limited to, achieving the recoveries contemplated herein, mitigating and resolving Disputed Claims, making distributions, and assisting the Debtors in other daily matters. These estimates also include assumptions regarding the provision of day-to-day financial and other advisory

services to the Wind Down Trust. These services include, but are not limited to, fees associated with the Plan Administrator, the Wind Down Trustee, the Advisory Board, the claims agent, claims reconciliation process, cash management, tax-related services, bankruptcy court-related services, and other fees required to administer the Plan.

Lastly, the low case includes certain indemnification payments related to CJ Han and Do Kwon. These payments are subject to Board approval and, while included in Liquidation Costs, may be paid in full or in part prior to the Assumed Effective Date (to the extent approved by the Board).

Note J – Administrative Expense Claims

Includes Fee Claims, which are defined in the Plan as Claims for professional services rendered or costs incurred on or after the Petition Date through the Effective Date. Additionally, includes certain post-petition claims estimated as of the Effective Date.

Note K – Priority Tax Claims

Any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code. The Liquidation Analysis assumes there are no Priority Tax Claims.

Note L – Priority Non-Tax Claims (Class 1)

Any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code. The Liquidation Analysis assumes there are no Priority Tax Claims.

Note M – Other Secured Claims (Class 2)

Reflects $0.07 million of FRAX tokens that the Debtors borrowed prior to the Petition Date. These tokens were collateralized by Convex tokens on a decentralized finance protocol governed by a smart contract. These Other Secured Claims are assumed to be offset using outstanding Convex collateral.

Note N – Beltran Allowed Secured Claims (Class 3)

Claims asserted against TFL in the Beltran Action in the amount either (i) of a settlement with TFL and/or the Plan Administrator or (ii) as determined by Final Order of the High Court of the Republic of Singapore, in each case up to the amount of the Beltran Escrow Deposit.

In the low case, the Liquidation Analysis assumes Beltran Allowed Secured Claims are equal to the Beltran Escrow Deposit, which is approximately $57 million. The high case assumes

Beltran Allowed Secured Claims are $0, resulting in the Beltran Escrow Deposit becoming available to Holders of General Unsecured Claims and Crypto Loss Claims.

Any portion of any Allowed Claim asserted against TFL in the Beltran Action that exceeds its allocated portion of the Beltran Escrow Deposit shall be treated as an Allowed Crypto Loss Claims.

Note O – General Unsecured Claims (Class 4)

General Unsecured Claims means any Claim against the Debtors (other than any Intercompany Claims, Crypto Loss Claims, Claims subordinated pursuant to section 510(b), and Section 510(c) Subordinated Claims) as of the Petition Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any final order of the Bankruptcy Court. The Liquidation Analysis assumes General Unsecured Claims amount to $48 million in the low case and $5 million in the high case.

Note P – Proceeds Available for Crypto Loss Claims, SEC Claim, and other Claims and Interests (Class 5-10)

Crypto Loss Claims means any Claim asserted against the Debtors arising from (a) the purchase, sale, or rescission of the purchase or sale of Cryptocurrency, including (i) Terra Crypto, (ii) any wrapped or bridged version on any blockchain of any Terra Crypto, (iii) any staked or bonded Terra Crypto on any blockchain, (iv) any Terra Crypto on any centralized or decentralized liquidity, lending, or borrowing application or protocol on any blockchain, (v) any receipt or derivative of any Terra Crypto on any blockchain, (vi) any derivatives trading or perpetual swaps of Terra Crypto, or any other Cryptocurrency that derives a value from Terra Crypto, and (vii) any other Cryptocurrency that was transacted or made available on the TerraLunaClassic and TerraLuna blockchains, and (b) any reimbursement or contribution claims allowed under section 502 of the Bankruptcy Code on account of such claims. As referenced in the Disclosure Statement, the Preliminary Crypto Loss Claims Bar Date is August 21, 2024. For this reason, the value of Crypto Loss Claims is uncertain and the Debtors have not estimated the value of Crypto Loss Claims in the Liquidation Analysis, resulting in an estimated 0.1%-100% class recovery.

SEC Claim means the Claim, as determined by the Final Judgment Against Defendants Terraform Labs Pte. Ltd. and Do Hyeong Kwon entered by the United States District Court for the Southern District of New York in the SEC Enforcement Action at Docket No. 273, by the SEC against TFL pursuant to the SEC Settlement fixing TFL's civil penalty and disgorgement, including prejudgment interest, to $4,473,828,306 in total aggregate amount. In a chapter 7 liquidation, the SEC Claim would share pari passu with General Unsecured Claims (Class 4).

Other Claims and Interests refers to Classes 7 through 10, as defined in the Plan, including Intercompany Claims, Intercompany Interests, 510(c) Subordinated Claims, and TFL Equity Interests.

Upon satisfaction of Administrative Claims, Secured Claims, and Holders of Claims in Class 1 through Class 4, the Liquidation Analysis assumes that $51 million to $394 million will be available to satisfy Holders of Claims in Class 5 through Class 10, paid in accordance with the Plan. As Class 5 Crypto Loss Claims cannot be estimated at this time, the Debtors are unable to estimate class-specific recoveries beyond what is included herein.

## Recoveries in a Hypothetical Chapter 7 Liquidation

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of a claim or interest in a certain class either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Assumed Effective Date. This is referred to as the "best interests of creditors" test. Accordingly, to demonstrate that the Debtors' proposed Plan satisfies the "best interests of creditors" test, the Debtors, with the assistance of their restructuring advisors, have prepared this hypothetical liquidation analysis (this "Chapter 7 Liquidation Analysis"), which estimates the realizable liquidation value of the Debtors' assets and estimates the distribution to creditors resulting from such liquidation.

The Chapter 7 Liquidation Analysis has been prepared assuming that the Debtors' chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code on the Assumed Effective Date (September 30, 2024).

As the Plan calls for the continued liquidation of the Debtors assets (consistent with the process and recoveries outlined previously in this Exhibit), a chapter 7 liquidation will be structured similarly, with certain critical exceptions that may significantly impair creditor recoveries:

- **The Debtors are best positioned to maximize the value of the assets under the Plan**

  In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets and to make distributions to creditors in accordance with the priorities established in the Bankruptcy Code. Although a chapter 7 liquidation may try to achieve the same goal (i.e., a sale of the entirety of the Debtors' assets), the Debtors believe that the Plan will provide greater proceeds and recoveries to holders of Allowed Claims, than would be realized in a chapter 7 liquidation. A chapter 7 trustee would be unlikely to have the technical expertise and knowledge of the Debtors' businesses and assets that is required to maximize the proceeds from the sale of the Debtors' assets. This is particularly true in light of the highly complex nature of the Debtors' business and these chapter 11 cases. In particular, the Debtors' institutional knowledge of the business would be fundamental in maximizing the value of the Causes of Action that would be difficult for a chapter 7 trustee to replace and could have a significant impact on the recovery of these assets.

11

Moreover, a chapter 7 trustee could sell all of the Debtors' assets immediately and at depressed prices in a fire sale liquidation. This fire sale of the Debtors' assets could result in lower values than those estimated in the Plan.

- **The incremental costs of a chapter 7 trustee would increase the costs of a wind-down in the event of a conversion to chapter 7 as compared to those to be incurred under the Plan**

Pursuant to section 326 of the Bankruptcy Code, the Bankruptcy Court may allow reasonable compensation for a trustee's services, not to exceed 25% on the first $5,000 or less, 10% on any amount in excess of $5,000 but not in excess of $50,000, 5% on any amount in excess of $50,000 but not in excess of $1.0 million, and reasonable compensation not to exceed 3% of such moneys in excess of $1,000,000 upon all moneys disbursed or turned over in the case by the trustee to parties in interests. This fee structure would represent a significant and incremental cost as compared to the Plan.

In addition, the chapter 7 Trustee would incur many of the same costs assumed under the Plan (and as incorporated in the Liquidation Analysis), including the Debtors' operating personnel and vendor costs. As such, a chapter 7 conversion would result in an increase in chapter 7 trustee fees, with little or no reduction in the operating costs assumed in the Plan.

- **The incremental cost of professional fees would increase the costs of a wind-down in the event of a conversion to chapter 7 as compared to those to be incurred under the Plan**

Following the appointment of a chapter 7 trustee, the chapter 7 trustee would hire new professionals who would be unfamiliar with the complexities of the Debtors' assets, operations, and asserted claims. As such, it is likely that these new professionals would require significant time to obtain the requisite knowledge and background of the Debtors' chapter 11 cases to adequately advise the chapter 7 trustee, which could extend the timeline to monetize the Debtors' assets and resolve Claims. Further, to better enable the onboarding of the chapter 7 trustee's professionals, the chapter 11 professionals may remain engaged for a limited period, resulting in increased fees.

- **The SEC's agreed subordination of its claim is conditioned upon confirmation of the Plan**

Pursuant to the SEC Settlement, the SEC Claim is only subordinated to Class 4 and Class 5 claims to the extent a chapter 11 Plan is confirmed on the conditions and timeline therein. A conversion to a chapter 7 Plan would permit the SEC to assert its full Claim in the amount of approximately $4.5 billion as a Class 4 claim, significantly diluting recoveries to other Class 4 claimants and eliminating any recovery for Class 5 or other holders of Claims/Interests.

12

As summarized in the illustrative tables below, after incorporating estimates for the discussed additional costs and the reclassification of Class 6 Claims, the Debtors have determined that upon the Assumed Effective Date, the Plan will provide all holders of Allowed Claims with a recovery that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code. Therefore, the Debtors believe that the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7).

| USD in thousands | Chapter 11 Low | Chapter 11 High | Chapter 7 Low | Chapter 7 High |
|---|---|---|---|---|
| **Net Distributable Value** | $ 153,631 | $ 420,080 | $ 153,631 | $ 420,080 |
| Reduced Asset Recoveries | n/a | n/a | - | - |
| Chapter 7 Trustee Fees | n/a | n/a | (3,770) | (11,305) |
| Incremental Professional Fees Upon Chapter 7 Conversion | n/a | n/a | (6,000) | (3,000) |
| **Adjusted Net Distributable Value** | $ 153,631 | $ 420,080 | $ 143,861 | $ 405,776 |
| | | | | |
| **Secured, Admin & Priority Claims** | 77,833 | 20,885 | 77,833 | 20,885 |
| Recovery $ | 77,833 | 20,885 | 77,833 | 20,885 |
| Recovery % | 100.0% | 100.0% | 100.0% | 100.0% |
| **Remaining Proceeds Available** | $ 75,798 | $ 399,196 | $ 66,028 | $ 384,891 |
| Remaining Proceeds Available for Class 4-6 Claims [A] | 24,718 | 194,875 | 66,028 | 384,891 |
| SEC Settlement Proceeds Available for Class 5-6 Claims | 51,080 | 204,320 | - | - |
| **Class 4 Unsecured Claims** | 48,003 | 5,000 | 4,521,832 | 4,478,828 |
| Recovery $ | 24,718 | 5,000 | 66,028 | 384,891 |
| Recovery % [A] | 51.5% | 100.0% | 1.5% | 8.6% |
| **Proceeds Available for Class 5 - 6 Claims** [A] | $ 51,080 | $ 394,196 | $ - | $ - |

[A] Pursuant to the SEC Settlement, contributed assets benefit Class 5 Crypto Loss Claims in a chapter 11 plan of liquidation. In the low chapter 11 liquidating plan scenario, there are insufficient GUC Pool proceeds to pay Class 4 General Unsecured Claims in full, resulting in a partial recovery for Class 4 while still providing for a recovery to Class 5 Claims.

| # | Claims Class | Chapter 11 Plan Liquidation % - Low | Chapter 11 Plan Liquidation % - High | Chapter 7 Liquidation % - Midpoint |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | n/a | n/a | n/a |
| 2 | Other Secured Claims | 100.0% | 100.0% | 100.0% |
| 3 | Beltran Allowed Secured Claims | 100.0% | n/a | 100.0% / n/a |
| 4 | General Unsecured Claims | 51.5% | 100.0% | 5.0% |
| 5 | Crypto Loss Claims | 0.1% | 100.0% | 0.0% |
| 6 | SEC Claim | 0.0% | 100.0% | 0.0% |
| 7 | Intercompany Claims | 0.0% | 0.0% | 0.0% |
| 8 | Intercompany Interests | 0.0% | 100.0% | 0.0% |
| 9 | 510(c) Subordinated Claims | 0.0% | 0.0% | 0.0% |
| 10 | TFL Equity Interests | 0.0% | 0.0% | 0.0% |

RLF1 31336766v.1