UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

In re:

Terraform Labs, Debtor Case No. 24-10070 (BLS)

Chapter 11 (Jointly Administered)

Date : 09/11/2024

Filed by : Maxim S. Kalmykov, Creditor, Claim # 10013

# Objection to the Debtor's Proposed Recovery Plan

Maxim S. Kalmykov, a Creditor holding a Class 5 claim (Crypto Loss Claims) with a total Claim amount of $256,518.71, hereby respectfully submits this Objection to the confirmation of the Debtor's proposed recovery plan based on the following reasoning:

**Honorable Judge Brendan L. Shannon,**

1.      I, Maxim S. Kalmykov, am in regular contact with UST smallholder individual investors from the United States and other countries. Many of UST smallholder victims I am in touch with share the following concerns. I would like to propose solutions to address these concerns in the Debtor's proposed recovery plan. UST here and after is a stablecoin crypto asset security issued by Terraform Labs (TFL).

BACKGROUND

2.      Terra UST collapse destroyed life savings of thousands of UST smallholder investors from dozens of countries around the world. Smallholders invested their hard-earned life savings, children college education savings, future mortgage down payments, their healthcare and retirement savings, child support savings, and other savings, and in many cases lost them all to the Terra UST collapse. While the $ amounts UST smallholders invested and lost might look insignificant in

comparison to other large claims in this Chapter 11 process and could be ranging from $5 to $20 thousand, the loss of even these small savings inflicted a major damage on some smallholder investors' lives, especially in low-income countries.

3. According to the current plan, the UST smallholder investors are not expected to be entitled for a substantial percentage recovery, given they are all put into unsecured Class 5 Crypto Loss Claims group and, hence, are expected to be downgraded in their rights to get a substantial portion of their investment back.

4. Meanwhile, according to the current plan, a small group of large UST investors in secured Class 3, with losses around $1 million and more by some of the Class 3 claimants, are expected to be entitled to close to 100% recoupment. These investors had enough savings left after Terra UST collapse to engage a Singaporean law firm Drew & Napier to file a representative action in Singapore. Currently this action is

classified as Class 3 Beltran action in the Debtor's proposed recovery plan.

5. Among the objectives of the Beltran action was targeting smallholders Luna Foundation Guard fund and its remaining Bitcoin cryptocurrency, which according to the public announcement by the Luna Foundation Guard was supposed to be converted into collaterized USDC or USDT stablecoin crypto asset securities and paid out to the affected UST smallholders via blockchain, smallest holders being first. According to the later official announcement from the Luna Foundation Guard, as a result of the Singapore legal action against it, the blockchain payout to UST smallholders was put on hold, and UST smallholders lost this recovery opportunity.

6. Primarily only the large claimants were accepted into the Beltran action, and, given the limited total claims size of the action, whoever pays the deposit to Drew & Napier first was prioritized over

others, while only 7 days were given to onboard. Members of other UST victim groups were not allowed to join the action, as well as the newcomers and the UST victims raising concerns, as according to the action leaders they represented risk.

7. The action was publicly prioritizing large claimants over small, given the structural nature of the representative action process in Singapore, processing expenses at Drew & Napier and filing costs at Singapore High Court. Finally, primarily English speaking victims were joining, since, for instance, victims from Korea, which as a country suffered the most damage from Do Kwon's fraud, couldn't participate simply because they were not a part of that primarily English speaking group.

8. As a result, thousands of smallholder investors from around the world could not participate in the Beltran action, even if they potentially wanted, and were ready to pay the legal expenses. Obviously,

UST smallholder victims who couldn't finance their litigation in Singapore on time, or were not aware of it, couldn't join the action at all.

SITUATION

9. Given the way how the Debtor's proposed recovery plan is structured now, it is entirely possible, that a hypothetical UST smallholder investor with $5 thousand lost to Do Kwon's fraud might get only $50 back, while a hypothetical participant or leader of the Beltran action with the total claim amount of $1 million will get his(her) full $1 million back as well as might even get his(her) Drew & Napier legal expenses covered, hence providing a 100% recovery. The same might be true for all wealthy $ multi-million claimants from the Beltran action.

10. Given the dire situation, in which the existing plan puts the majority of UST smallholder investors, and a very weird and unjust outcome it might lead the UST restitution process to, I would like to

propose some possible remedies to improve the UST smallholders expected recoupment at least somewhat.

PROPOSALS

11.   First of all, smallholder UST victims have to be prioritized over institutional or corporate claimants as well as within the individual UST investor cohort itself. This has been done in the vast majority of historical precedents of massive fraud recoveries and could be achieved by using USD claim size brackets, for instance, $0-$5 thousand, $5 thousand - $20 thousand, $20 thousand - $100 thousand, $100 thousand - $250 thousand, $250 thousand - $1 million, and so on, or some other brackets approved by this Court for individual UST investors, based on the final size of TFL's bankruptcy estate and distribution of claim sizes by UST individual investors.

12.   Secondly, the Debtor, with support from the United States Securities and Exchange Commission and Department of Justice as well

as this Court, could consider ways to reallocate the TFL bankruptcy estate more in favor of UST smallholder victims by reclassifying them as secured and at least on par with the Beltran action. This appears to be the only way for UST smallholder victims to expect a recovery on par with the Beltran action UST victims, which had means to legally secure TFL assets in Singapore and currently have means to pay for legal protection of their Singapore escrow in this Chapter 11 process in the United States.

13. Thirdly, and finally, the Court might consider and propose the involved legal teams to ensure proper communication and prolonged deadlines for whatever opposition, decisions and important milestones of this Chapter 11 process, since UST smallholder victims lack financial means and organizational capability, and often even language skills, to engage legal counsels and timely protect their interests in a proper legal way within this Chapter 11 process. UST smallholder victims have numerous obligations in their everyday lives, and given that they are currently unsecured, unprotected, located in different countries and

speak different languages, they need more time to understand the process, organize and timely protect their interests in this Court.

Thank you for your attention to this matter. Dated: 09/11/2024

**Respectfully submitted by,**

Maxim S. Kalmykov

E-mail: maxim.kalmykov.mk@icloud.com

4281 Express Lane Suite L4801 Sarasota, FL 34249 Ph: (941) 538-6941