## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TERRAFORM LABS PTE LTD., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-10070 (BLS)<br><br>(Jointly Administered)<br><br>**Hearing Date: Sept. 19, 2024 at 10:00 a.m.**<br>**Obj. Deadline: Sept. 12, 2024 at 4:00 p.m.**<br><br>**Re: D.I. 568** |

### UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION
### OF AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF
### TERRAFORM LABS PTE. LTD. AND TERRAFORM LABS LIMITED

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his counsel, files this objection (the "Objection") to the *Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (the "Plan") [D.I. 568], and in support of his Objection states:

### PRELIMINARY STATEMENT

1. The Plan[2] should not be confirmed in its present form. The U.S. Trustee objects to the Plan on the following grounds:

- First, to be consistent with applicable law in this District, the Debtors must establish that each party to be released by the Debtors has made a substantial contribution to the Plan, among other requirements.

- Second, the proposed exculpation provision is overly broad; to the extent exculpation is permissible beyond the provisions of section 1125(e), this Circuit has only approved exculpations that are limited to estate fiduciaries, and the defined term "Exculpated Parties" includes parties that are not estate fiduciaries. A similar objectionable provision appears to prospectively exculpate the Advisory Board.

---

[1] The Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited. The Debtors' principal offices are located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 07881.

[2] All capitalized terms not defined herein have the definitions set forth in the Plan, as applicable.

- Third, the Plan's injunction provision is overly broad and operates to effectuate a discharge for a liquidating debtor in violation of section 1141.

- Fourth, the Plan's mechanisms for disallowance of claims are inconsistent with the requirements of section 502.

2.      Unless the above issues are satisfactorily addressed, the Court should deny confirmation.

## JURISDICTION AND STANDING

3.      Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine confirmation of the Plan and this Objection.

4.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

5.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

6.       The U.S. Trustee has standing to be heard on the Plan pursuant to 11 U.S.C. § 307.

## BACKGROUND

7.      On January 21, 2024, and July 1, 2024, respectively, the above-captioned cases were commenced by the filing of voluntary petitions in this Court.

8.      On February 29, 2024, the U.S. Trustee appointed an official committee of unsecured creditors.

9.      On June 30, 2024, the Debtors filed the *Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [D.I. 416].

10.      On July 3, 2024, the Debtors filed the *Disclosure Statement for Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (as amended at D.I. 569, the "Disclosure Statement") [D.I. 423].

11.      On July 17, 2024, the Debtors filed the *Motion of Debtors for Entry of Order (I) Approving Proposed Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Establishing Cure Procedures, (IV) Scheduling Confirmation Hearing, (V) Establishing Notice and Objection Procedures For Confirmation Of Proposed Plan, and (VI) Granting Related Relief* (the "Solicitation Motion") [D.I. 481].

12.      On July 29, 2024, the U.S. Trustee's counsel sent Debtors' counsel informal comments on the version of the Plan filed at D.I. 416. The Debtors agreed to revise the Plan to address some (but not all) of the U.S. Trustee's comments.

13.      On August 8, 2024, the Court entered an order approving the Disclosure Statement and the Debtors' Solicitation Motion at D.I. 572.

14.      On August 8, 2024, the Debtors filed the solicitation versions of the Plan [D.I. 568] and Disclosure Statement [D.I. 569].

*Relevant Plan Provisions*

15.     The Plan includes a section titled "Releases by the Debtors" which provides:

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Case to facilitate the liquidation of the Debtors and the implementation of the Wind Down Trust Formation Transactions, to the fullest extent allowed by applicable law, as such law may be extended subsequent to the Effective Date, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, their Estates, the Wind Down Trust, the Plan Administrator, and the Wind Down Trustee, as may be applicable, and any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, as may be applicable, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons or Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, or for the foregoing Entities, from any and all Released Claims.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in any Plan Supplement) executed to implement the Plan, (b) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, criminal misconduct, or gross negligence, (c) Causes of Action against Released Parties, if any, listed on the Schedule of Retained Causes of Action; (d) rights reserved under the Dentons Retention Order; (e) any avoidance actions relating to private wallet transactions that occurred prior to the Petition Date other than payment of legal fees and related vendors who provided services and acted in good faith in receiving fees from private wallets related or relating to the Chapter 11 Cases, the defense of the SEC Enforcement Action and the investigation that preceded it, the defense of civil claims brought against TFL that have been dismissed, and the pending criminal proceedings and investigations, except for any avoidance actions subject to the reservation of rights set forth in (d) hereof which are fully preserved; (f) the SEC Settlement.

Plan § 10.6.

16.     The Plan defines "Released Parties" as follows:

"Released Parties" means, collectively: (a) John S. Dubel, Russell Nelms, Thong Kum Keen Benjamin, and TFL, each in their capacity as members of the Board of

Directors; (b) *the Wind Down Trustee;* (c) the Creditors' Committee and each of its members, solely in their capacity as such; (d) *the Advisory Board* and each of its members, solely in their capacity as such; (e) *the Plan Administrator* in its capacity as such; (f) Weil, Gotshal & Manges LLP; (g) Alvarez & Marsal North America, LLC; (h) Epiq Corporate Restructuring, LLC; (i) Richards, Layton & Finger, P.A.; and (j) *with respect to each of the foregoing, such Person's officers and directors, principals, members, and employees*, in each case who served in such capacity on or after the Petition Date (but for the avoidance of doubt, not TFL's current or former shareholders). For the avoidance of doubt, nothing herein shall modify the terms of or the rights reserved under the Dentons Retention Order.

Plan § I. A.1.98 (emphasis added).

17.    Section 10.7 of the Plan provides as follows ("<u>Exculpation Provision</u>"):

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting the Releases by the Debtors, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to, any act or omission taken on or after the Petition Date and prior to the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the preparation for, filing, negotiation, solicitation, confirmation, execution, or implementation (to the extent on or after the Petition Date and prior to the Effective Date) of, as applicable, the Plan (including, for the avoidance of doubt, any Plan Supplement), the Disclosure Statement, or any restructuring transaction, contract, instrument, release, or other agreement or document created, filed, or entered into during the Chapter 11 Cases in connection with the Chapter 11 Cases, the management of the Debtors' cash and cryptocurrency assets during the Chapter 11 Cases (including the trading and sales of cryptocurrencies and tokens in connection with the Chapter 11 Cases), the Debtors' or Wind Down Trust's receipt of assets from LFG pursuant to the SEC Settlement, the annual financial statements prepared pursuant to Singapore Companies Act requirements, the recognition application for recognition proceedings in Singapore, the Plan, the Disclosure Statement, the SEC Settlement, the Definitive Documents, the pursuit or consummation of any sale transactions during the Chapter 11 Cases, the administration and implementation of the Wind Down, the pursuit of Confirmation, the pursuit of Consummation, the Wind Down Trust Formation Transactions, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or after the Petition Date and before the Effective Date , except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted bad faith, fraud, willful misconduct, criminal misconduct, or gross negligence.

> The Exculpated Parties who have participated in any conduct referenced in section 1125(e) of the Bankruptcy Code on terms compliant therewith, are not, and on account of such conduct, shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale or purchase of a security under the Plan, to the extent permitted by section 1125(e) of the Bankruptcy Code. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above shall not be construed as exculpating any party or entity from its post-Effective Date obligations under the Plan, or any document, instrument, or agreement (including those set forth in any Plan Supplement) executed to implement the Plan.

Plan § 10.7.

18.    The Plan defines Exculpated Parties as follows:

> "Exculpated Parties" means, collectively: (a) the Debtors; (b) the Board of Directors and each of its members who served in such capacity on or after the Petition Date; (c) the Debtors' officers who served in such capacity on or after the Petition Date; (d) the Creditors' Committee and each of its members, solely in their capacity as such; (e) the Professionals retained in these cases; *and (f) the successors and assigns of each of the foregoing.*

Plan § I.A.1.61 (emphasis added).

19.    At Plan § 5.5(n), the Debtors also seek to prospectively exculpate the Advisory

Board to be established under the Plan:

> (n) Exculpation of Advisory Board.  The Advisory Board[3] shall be exculpated (subject to exceptions for willful misconduct, bad faith, gross negligence, or fraud) to the fullest extent allowable by applicable law with respect to the liquidating of the Estates' Assets and administration of the Wind Down Trust.

Plan § 5.5(n).

---

[3] The Plan defines Advisory Board as follows: "Advisory Board" means the body of persons with the rights and powers to enforce the Wind Down Trust and supervise its administration, as set forth in the Wind Down Trust Agreement. The members of the Advisory Board shall be selected by the Creditors' Committee in consultation with the Debtors and not objectionable to the SEC, in accordance with Section 5.5(i) of this Plan, and disclosed in the Plan Supplement.  Plan § I.A.1.4.

20.    The Plan includes a section titled "Injunction" which provides in relevant part:

From and after the Effective Date through and until Wind Down Completion Date:

(a) All Persons and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, holding Claims, Liens, Interests, charges, encumbrances, and other interests of any kind or nature whatsoever, including rights or Claims based on any successor or transferee liability, against the Debtors, the Wind Down Trust, or the assets transferred thereto (whether legal or equitable, secured or unsecured, matured or unmatured, contingent, or noncontingent, known or unknown), arising under or out of, in connection with, or in any way relating to the Debtors, the Estates' Assets, the operation of the Estates' Assets prior to the Effective Date, or the Wind Down Trust Formation Transactions, shall be forever barred, estopped, and permanently enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished or released pursuant to the Plan.

(b) Except as expressly provided in the Plan, the Definitive Documents, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined (but, as to the Debtors, solely to the extent such action is brought against the Debtors to directly or indirectly recover upon any Assets of the Estates or the Wind Down Trust), solely with respect to any Claims, Interests, and Causes of Action that will be or are treated by the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable, or the property of any of the Debtors, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, or the property of any of the Debtors, or the Wind Down Trust, as applicable; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Wind Down Trust, or the property of any of the Debtors, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, or the

Wind Down Trust, as applicable, or against property or interests in property of any of the Debtors, or the Wind Down Trust, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c) Each holder of a Claim or Interest will be bound by the Plan pursuant to section 1141(a) of the Bankruptcy Code, including, without limitation, the injunctions set forth in this Section 10.3.

(d) The injunctions in this Section 10.3 shall extend to any successors of the Debtor, or the Wind Down Trust, as applicable, and their respective property and interests in property.

Plan § 10.3.

21.    The Plan at Section 7.1 provides for automatic disallowance of certain claims

without further action being taken by the Debtors or the Wind Down Trustee:

Except as otherwise provided herein, all Proofs of Claim filed after: (x) the Effective Date for all Claims other than Fee Claims and Claims subject to the Other Bar Dates or (y) the Other Bar Dates, with respect to such applicable Claims, shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Wind Down Trust, without the need for any objection by the Debtors, the Wind Down Trust, or the Plan Administrator or any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, a Proof of Claim or Interest filed after the applicable bar date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim.

Plan § 7.1.

## ARGUMENT

### I.    Confirmation Standard

22.    A chapter 11 plan may not be confirmed unless the Court can find that the plan complies with the provisions of 11 U.S.C. § 1129(a). A plan proponent bears the burden of proof with respect to each and every element of 11 U.S.C. § 1129(a). *See In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001).

### II.    Objections to Plan Provisions

#### A.  To Provide a Debtor Release, the Debtors Must Demonstrate a Substantial Contribution, Among Other Things, by the Released Parties.

23.    To be consistent with applicable law in this District, the Debtors must establish that each party to be released by the Debtors has made a substantial contribution to the Plan, among other requirements.

24.    In *In re Zenith Electronics Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999), the bankruptcy court considered the permissibility of the release of a debtor's claims.  In *Zenith*, the bankruptcy court noted that a plan, notwithstanding section 524(e), may provide for releases by the debtor of claims against third parties under certain limited circumstances.  The bankruptcy court in *Zenith* adopted a five-part test enunciated in *Master Mortgage Investment Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994) to determine whether a release by a debtor of a third party as part of a plan is permissible.  These factors are:

> (1) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;
>
> (2) substantial contribution by the non-debtor of assets to the reorganization;
>
> (3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;

(4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan; and

(5) provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

*Zenith,* 241 B.R. at 111.

25.    The *Master Mortgage/Zenith* factors must be separately applied to each of the entities.  Absent such a showing, and appropriate findings by the Court, the plan is unconfirmable.  In *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), the court examined a similar provision and tested its applicability as to each party to be affected by the provision.  For example, the attempt in *Genesis* to release the debtor's post-petition management was rejected, with the Court stating: "[a]s to the debtor's management personnel here, there is no showing that the individual releasees have made a substantial contribution of assets to the reorganization." *Id.* at 606.  In the present case, the Debtors cannot satisfy all of the Master Mortgage/Zenith factors with respect to all of the proposed releasees.

26.    In *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011), the court found that, although the first *Zenith* factor may be met (identity of interests) with respect to the debtors' directors, officers and professionals, the other four were not.  The court commented that, with respect to their post-petition activities, the directors, officers and professionals of the debtors (and the Committee) were receiving exculpations, which were sufficient, and releases were "unnecessary, duplicative and exceed the limits of what they are entitled to receive."  442 B.R at 350.

27.    In the Disclosure Statement and Plan, the Debtors do not address whether all of the *Zenith* factors are met for the parties who will receive releases from the Debtors.  In particular, the

Plan's definition of Released Parties includes parties such as the Plan Administrator, the Advisory Board and the Wind Down Trustee, who are not in existence until the Effective Date. Absent a showing and appropriate finding by the Court that each proposed Released Party has made a substantial contribution to the Plan,[4] and that the other *Master Mortgage/Zenith* factors have been met, the proposed debtor releases render the Plan unconfirmable.

### B. The Proposed Exculpation Provision is Overly Broad.

28.     To the extent exculpation is permissible beyond the provisions of section 1125(e), this Circuit has only approved exculpations that are limited to estate fiduciaries. The Plan's definition of Exculpated Parties is inconsistent with controlling case law because it is not limited to estate fiduciaries. In *In re PWS Holding Corp.*, the Third Circuit considered whether an official committee of unsecured creditors could be exculpated and held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of immunity to members of the unsecured creditors' committee. 228 F.3d 224, 246 (3d Cir. 2000). This Court has repeatedly interpreted *PWS Holding* as requiring a party's exculpation to be based upon its status as an estate fiduciary. *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 304 (Bankr. D. Del. 2013); *In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011); *In re Washington Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011); *In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *12 (Bankr. D. Del. Nov. 10, 2011).

29.     The Plan definition of Exculpated Parties includes many parties who are not fiduciaries of the estates—namely the successors and assigns of each of the parties listed in

---

[4]     An example of a court finding a "substantial contribution" can be found in *In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004), where this Court, after examining the *Zenith* factors, permitted the debtors to release noteholders who had contributed $56 million in funding to the plan, which funds allowed the debtors to repay in full all creditors other than the noteholders, as well as make a significant distribution to the debtors' shareholders. 315 B.R. at 335.

sections (a) through (d) of the Plan's definition of Exculpated Parties. *See Washington Mut.*, 442 B.R. at 350-51 ("[An] exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers.").

30.    Additionally, the Advisory Board will not come into existence until after the effective date of the Plan.  In *In re Mallinckrodt PLC*, 639 B.R. 837 (Bank. D. Del. 2022), this court held that exculpation "only extends to conduct that occurs between the Petition Date and the effective date," and ordered the debtors to strike contrary language from the exculpation provision. *Id*. at 883.  The same analysis ought to apply to the Plan's prospective relief for the Advisory Board.  *See* Plan § 5.5(n).

**C.  Injunction Would Give Debtors a Discharge, Contrary to 11 U.S.C. § 1141(d)(3).**

31.    Confirmation should be denied because Section 10.3 of the Plan would establish an injunction that is tantamount to a discharge, in contravention of section 1141(d)(3) of the Bankruptcy Code.

32.    Section 1141(d)(3) provides:

The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

33.    The elements of section 1141(d)(3) are present here.  The Debtors concede these elements are met in Section 10.4 of the Plan, which states, "Debtors are Not Entitled to a

Discharge. Nothing in this Plan or the Confirmation Order shall grant the Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code." Plan § 10.4.

34.     The Plan establishes an injunction that would effect a discharge. As set forth in section 524(a) of the Code, the effect of a discharge "with respect to any debt discharged under section . . . 1141" includes "an ***injunction*** against the ***commencement or continuation of an action***, the employment of process, or an act, to ***collect***, recovery or ***offset*** any such debt as a personal liability of the debtor[.]" 11 U.S.C. § 524(a)(1) and (2) (emphasis added). The Plan achieves that same result. Plan § 10.3. The Debtors should not be able to achieve something that is expressly prohibited by 11 U.S.C. § 1141(d)(3) by including it in the Plan's injunction provisions. Thus, because Section 10.3 would effect a discharge that Section 1141(d)(3) of the Bankruptcy Code expressly prohibits in liquidating plans, the Plan fails to satisfy Section 1129(a)(1) of the Bankruptcy Code and cannot be confirmed as drafted. This section should be amended to enjoin only actions against assets to be distributed pursuant to the Plan.

### D.     The Plan Should Not Dispense with Requirements Under 11 U.S.C. § 502 Regarding Filed Claims.

35.     Automatic disallowance of a claim is contrary to § 502(a) of the Code, which provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, . . . objects." 11 U.S.C. § 502(a).

36.     Thus, if the claims proposed to be disallowed are the subject of a proof of claim, such claims are allowed under § 502(a) of the Bankruptcy Code. If the Debtors or another party in interest believes that a claim has been paid in full or in part, they must file an objection, serve the objection on the affected claimholder, and provide them with an opportunity to respond.

37.     A claimholder's right to notice that their claim will be disallowed is not only required under § 502(a) of the Code, but it is right and fair. The Plan must provide for an objection to be filed as to any claim that the Debtors or any other party seek to have disallowed by the Court.

38.     For these reasons, Section 7.1 of the Plan, to the extent it provides for automatic disallowance of claims, should be removed from the Plan or otherwise modified.

## CONCLUSION

39.     For the reasons set forth above, the Plan should not be confirmed.

**WHEREFORE**, the U.S. Trustee requests that this Court enter an order denying confirmation of the Plan and granting such other relief that the Court deems just and proper.

Dated: September 12, 2024
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 and 9**

By:  /s/ *Jane M. Leamy*
      Linda Richenderfer (DE Bar No. 4138)
      Jane M. Leamy (DE Bar No. 4113)
      United States Department of Justice
      Office of the United States Trustee
      J. Caleb Boggs Federal Building
      844 King Street, Suite 2207, Lockbox35
      Wilmington, Delaware 19801
      Phone: (302) 573-6491
      Email: Linda.Richenderfer@usdoj.gov
           Jane.M.Leamy@usdoj.gov