IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| TERRAFORM LABS PTE. LTD., *et al.*, | Case No. 24-10070 (BLS) |
| | (Jointly Administered) |
| Debtors.[1] | |
| | **Re: D.I. 679** |
| | Deadline to object to confirmation of the Proposed Plan : **September 12, 2024 at 4:00 p.m. (ET)** |

## OBJECTION TO CONFIRMATION OF THE PROPOSED PLAN REGARDING PRIORITIZATION OF UST AND NON-INSTITUTIONAL INVESTORS FOR COMPENSATION

**Submitted by:** Thomas Pierre Blanc, a creditor holding a Class 5 Claim (Crypto Loss Claims) in the amount of $418,490.19. I am submitting this Objection not only on my own behalf but also on behalf of over one hundred other investors within Class 5 Claims who share my concerns regarding the proposed plan and whom I represent in this matter. This Objection is related to the Notice of Objection (Amended) to the Proposed Plan of Liquidation dated September 12, 2024, regarding prioritization of UST and non-institutional investors for compensation, [D.I. 679].

### PRELIMINARY STATEMENT

1. Thomas Pierre Blanc, a creditor holding a Class 5 claim (Crypto Loss Claims) in the amount of $418,490.19, object to the confirmation of the Debtors' proposed liquidation plan on two grounds. First, within Class 5, UST losses should be prioritized due to their intended stable nature and different investor expectations. Second, the proposed plan does not ensure that non-

---

[1] The Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd and Terraform Labs Limited. The Debtors' principal offices are located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

1

institutional investors are compensated before larger investors and institutional funds, which unfairly disadvantages smaller, more vulnerable investors.

## FIRST OBJECTION: PRIORITIZING UST LOSSES OVER OTHER TERRA CRYPTO LOSSES

2. Class 5 ("Crypto Loss Claims") includes claims against Terraform Labs arising from losses related to transactions of any cryptocurrency associated with Terraform Labs, such as TerraUSD (UST) but also all the other Terra Crypto: TerraLuna (LUNA), Anchor (ANC), Mirror (MIR), Bonded Assets, Liquidity Pool tokens. We consider UST losses should receive priority in compensation due to UST's marketing as a stablecoin with a fixed value, unlike all the other Terra Crypto, which were understood to be volatile assets.

### A.    Nature of Investment and Fraudulent Misrepresentation

3. UST was marketed as a stablecoin, specifically designed to maintain a one-to-one peg with the U.S. dollar. This promise and expectation of stability attracted investors seeking a low-risk investment. Its collapse represents a severe breach of this promise. Thus, UST investors have a stronger claim for restitution compared to other Terra Crypto investors, who knowingly engaged in a speculative investment.

4. The SEC's amended complaint details that Terraform Labs and Do Kwon misled investors about UST's stability, particularly after the first de-pegging in May 2021. Terraform Labs falsely claimed that the algorithm restored UST's peg, while secretly intervening to stabilize it. This deception supports prioritizing UST investors for compensation.

### B.    Higher Risk Assumed by LUNA Investors

5. LUNA, and all the other Terra Crypto except UST, were marketed as speculative assets with high volatility tied to the Terra ecosystem's growth. LUNA investors accepted the high-risk nature of their investment. Conversely, UST investors were led to believe they were investing in a stable, low-risk asset. LUNA, as a speculative investment, lacked such promises

of stability. That difference in risk profiles suggests prioritizing UST investors who suffered losses due to misrepresentation.

### C. Judicial Precedent and Priority in Settlement

6. As described on **Exhibit A** annexed hereto, in bankruptcy cases, courts prioritize compensating victims who were directly misled by fraudulent misrepresentation and the expectations set by investment promoters, over other creditors. In cases like Madoff, Lehman Brothers, and Enron, the courts recognized that those who relied on false representations suffered the greatest harm and deserved compensation first. Given UST's marketing as a stable investment, UST investors should be treated similarly to misled creditors, giving them priority in any recovery or settlement.

### D. Proposed Criteria for Prioritization

7. Sequential Compensation Order: Fully satisfy UST loss claims before distributing any funds to other Terra Crypto loss claimants.

8. Tiered Compensation Structure: Establish a structure where UST loss claims receive compensation up to a certain amount before other Terra Crypto claims are considered.

## SECOND OBJECTION: PRIORITIZATION OF COMPENSATION FOR NON-INSTITUTIONAL INVESTORS

9. Compensation for Class 5, which covers Crypto Loss Claims, will occur through a structured process outlined in the Chapter 11 Plan of Liquidation for Terraform Labs Pte. Ltd. The distribution is supposed to be on a pro-rata basis, meaning the available funds will be divided among all the claimants proportionally based on the size of their allowed claims. Priority should however be given to non-institutional investors over larger institutional investors and hedge funds (such as Foreign Reps of Three Arrows Capital LTD. Crypto Loss claim amount of $1,322,303,330.08), so that the most vulnerable creditors get protected.

### A. Vulnerability of Non-Institutional Investors

10. The fraud had a disproportionate impact on non-institutional investors, who have limited financial resources, and losing their entire savings in the UST collapse had devastating personal consequences. These investors have faced significant financial hardship, including the inability to cover basic living expenses, pay for education, or secure retirement. On the contrary, larger investors, including investment funds, generally have diversified portfolios and often have access to various financial safety nets, including insurance, capital reserves, and the ability to hedge against losses.

11. Non-institutional investors generally lack the expertise and access to sophisticated financial advice that large investors have. They are less likely to have access to the same level of information and analysis as large investors. They often rely on the information provided by the issuers, which in this case was misleading. This asymmetry in information puts non-institutional investors at a disadvantage, warranting priority in compensation.

12. Non-institutional investors may have invested in UST under the false belief that it was a safe and stable asset, as promoted by Terraform Labs. Large investors, on the other hand, likely understood the inherent risks better and made their investment decisions accordingly. This difference in risk perception and understanding should be considered when determining compensation priorities.

B. **Moral and Ethical Considerations:**

13. Financial regulations, including those enforced by the SEC, emphasize the protection of retail investors because they are less equipped to recover from significant financial losses. The principle of investor protection suggests that those with the most to lose—and the least ability to recover—should be prioritized in compensation.

14. Compensating non-institutional investors first can help restore public trust in the financial system. It sends a message that the system protects the interests of ordinary individuals rather than favoring large, well-capitalized institutions. If non-institutional investors are left

uncompensated while large investors recover most of their losses, it could undermine trust in the financial system and discourage participation from retail investors in the future.

C.     **Precedent in Legal Settlements**

15. As described on **Exhibit B** annexed hereto, in cases involving fraud, courts prioritize compensating smaller, individual investors and vulnerable creditors over large institutional creditors. Courts recognize the disproportionate harm caused to smaller investors who are typically more financially impacted and have less capacity to absorb losses compared to larger, more diversified entities who are presumed to have better access to information and the means to mitigate risks

D.     **Proposed Criteria for Prioritization**

16. The plan should explicitly prioritize compensation for non-institutional investors in Class 5 before distributing any remaining funds to larger investors or institutional entities. Establishing a clear threshold for non-institutional investors and a distribution hierarchy within Class 5 would ensure that the most vulnerable creditors are protected and treated fairly. That could be done once data on the distribution of losses among Crypto Loss Claims will be known.

## PUBLIC COMMITMENTS TO COMPEMSATE SMALL UST HOLDERS

## BY LUNA FOUNDATION GUARD

17. The Luna Foundation Guard, of which Do Kwon is the Founding Member & Director, made several public commitments, as seen on **Exhibit C** annexed hereto, to prioritize compensating small UST holders first, using the funds from the Foundation. Although this compensation has yet to materialize, their statement must be taken into consideration.

## CONCLUSION

18. Non-institutional UST investors suffered from fraudulent misrepresentation, disproportionate impact, asymmetry of information, lack of expertise and difference in risk perception. Their prioritization ensures fairness by protecting those with limited resources and

the greatest need for compensation, but also aligns with legal precedents, regulatory objectives, and ethical considerations.

19. **WHEREFORE**, I respectfully request that the Court modify the proposed plan of liquidation to prioritize distribution of funds within Class 5 to non-institutional UST investors, before other Terra Crypto investors and larger institutional creditors.

**Dated:** September 12, 2024

                                                                    **Respectfully submitted,**

                                                                    **By :** _/s/ Thomas P. Blanc_
                                                                    Thomas P. Blanc
                                                                    116 rue Vieille-du-Temple
                                                                    PARIS 75003
                                                                    FRANCE
                                                                    0033-786-482-964
                                                                    thomas.blanc.etudiant@gmail.com

## Exhibit A

### A. Madoff Investment Scandal (2008)

1. Context: Bernard Madoff's Ponzi scheme, one of the largest financial frauds in history, defrauded investors of billions of dollars. The court-appointed trustee, Irving Picard, sought to recover assets to compensate victims.

2. Precedent: The court prioritized returning funds to those who were directly misled by Madoff's fraudulent misrepresentations. Investors who were misled into believing they were investing in legitimate securities, based on Madoff's false representations, were given priority in receiving recovered funds over other creditors.

3. Reasoning: Court prioritized restitution to victims who were misled or defrauded over other unsecured creditors because these victims relied on fraudulent statements, which created an expectation of safety or return that was not met.

### B. Lehman Brothers Holdings Inc. (2008)

4. Context: Following Lehman Brothers' collapse in 2008, it was revealed that the company had engaged in misrepresentations and misleading practices related to the stability and valuation of certain investment products.

5. Precedent: In the bankruptcy proceedings, the court approved a settlement framework that gave higher priority to creditors who were misled by the company's misrepresentations about the stability of its financial products.

6. Reasoning: The priority was given to misled investors to ensure that they were adequately compensated for their losses, which were incurred based on incorrect or misleading information provided by Lehman Brothers.

7

### C.     <u>EnronCorp. (2001)</u>

7. Context: Enron's collapse in 2001 was accompanied by massive accounting fraud and misrepresentation of the company's financial health.

8. Precedent: The courts established a priority framework for compensating employees and small creditors who were misled by fraudulent representations about the company's financial status. Employee claims were prioritized because they were directly affected by Enron's misrepresentations.

9. Reasoning: The court recognized that employees and smaller creditors had acted based on misleading or fraudulent information and should be compensated first due to their reliance on these misrepresentations.

### D.     <u>MF Global Holdings Ltd. (2011)</u>

10. Context: MF Global, a brokerage firm, collapsed in 2011 due to excessive risk-taking and failure to properly disclose its financial condition to investors and customers.

11. Precedent: The court prioritized claims from customers and investors who were misled by the firm's lack of transparency and misrepresentation of its financial stability. Customers whose funds were improperly commingled and misrepresented were given priority in receiving compensation.

12. Reasoning: The court found that the misled customers had a stronger claim for restitution because they had relied on false statements and deceptive practices by MF Global.

### E.     <u>Purdue Pharma L.P. (2019)</u>

13. Context: Purdue Pharma, the maker of OxyContin, faced thousands of lawsuits alleging that it had misrepresented the risks of addiction associated with its opioid products.

14. Precedent: The court approved a bankruptcy plan that prioritized compensation for individual claimants and municipalities that had been directly misled by Purdue's marketing practices over larger governmental entities and institutional investors.

15. Reasoning: The court recognized the disproportionate impact of the fraudulent marketing practices on individual victims and local communities, giving them priority over other creditors.

**Exhibit B**

A. **Madoff Investment Scandal (2008)**

1. Context: Bernie Madoff perpetrated the largest Ponzi scheme in history, defrauding thousands of investors out of approximately $65 billion.

2. Precedent: In the liquidation process, the trustee (Irving Picard) and the Securities Investor Protection Corporation (SIPC) gave priority to small investors. People who invested less than $1.1 million, the relatively smaller investors, were paid back in full.

3. Reasoning: They focused on "net losers" — those who had not withdrawn more money than they initially invested — to recover and distribute funds equitably. Smaller investors received compensation first from the funds recovered, while larger investors, especially those who had withdrawn more than they deposited, received less priority

B. **MF Global Bankruptcy (2011)**

4. Context: MF Global, a major global commodities brokerage, collapsed after it was discovered that the company had misappropriated client funds totaling about $1.6 billion.

5. Precedent: The bankruptcy trustee, James Giddens, prioritized the return of funds to small retail customers before large institutional creditors.

6. Reasoning: This approach aimed to protect individual customers whose losses would have a more substantial impact on their financial situation.

C. **WorldCom Scandal (2002)**

7. Context: WorldCom, a telecommunications giant, filed for bankruptcy after an $11 billion accounting fraud was uncovered, one of the largest in U.S. corporate history.

8. Precedent: In the subsequent bankruptcy proceedings, smaller claimants and shareholders were given priority.

9. Reasoning: The bankruptcy court aimed to recover as much value as possible for smaller creditors before distributing remaining assets to larger institutional creditors.

### D.     BitConnect Ponzi Scheme (2018)

10. Context: BitConnect was a cryptocurrency investment platform that was revealed to be a Ponzi scheme, leading to massive losses for investors globally.

11. Precedent: In the aftermath, U.S. regulators and courts worked to prioritize smaller, individual investors who had lost funds in the fraudulent scheme.

12. Reasoning: Compensation efforts focused on recovering and returning funds to these smaller victims before any large-scale creditors or claimants, recognizing their relatively greater vulnerability and financial impact compared to larger institutions or high-net-worth individuals.

### E.     Lehman Brothers Holdings Inc. (2008)

13. Context: Lehman Brothers, a major investment bank, filed for Chapter 11 bankruptcy in 2008 during the global financial crisis, marking one of the largest bankruptcies in U.S. history.

14. Precedent: The courts established a hierarchy of creditors, giving relative priority to small investors and non-institutional creditors over larger institutional creditors and investors.

15. Reasoning: The courts justified this approach by acknowledging the disproportionate impact of losses on smaller individual investors, who lacked the same diversification or protection against losses as large investment funds.

### F.     EnronCorp. (2001)

16. Context: Enron, once one of the world's largest energy companies, filed for Chapter 11 bankruptcy in 2001 following revelations of massive accounting fraud.

17. Precedent: The courts allowed the creation of an "Employee Retention and Compensation Pool" for employees who were also creditors in the bankruptcy proceedings, giving priority to employee claims (often smaller) over those of larger commercial creditors.

18. Reasoning: This approach was adopted to protect the interests of vulnerable creditors (employees who lost their jobs and benefits), recognizing their greater economic dependence compared to institutional creditors.

### G.    Washington Mutual, Inc. (2008)

19. Context: Washington Mutual, once the largest savings and loan association in the U.S., filed for Chapter 11 bankruptcy in 2008 after its banking subsidiary was seized by U.S. regulators.

20. Precedent: The proposed reorganization plan established a priority of compensation for smaller creditors and individual unsecured creditors over large institutional creditors.

21. Reasoning: The court concluded that this prioritization was fair, considering the social and financial impact on individual creditors with limited resources to absorb losses, unlike more diversified institutional creditors.

### H.    Purdue Pharma L.P. (2019)

22. Context: Purdue Pharma, the manufacturer of the opioid OxyContin, filed for Chapter 11 bankruptcy in 2019 to address claims related to the opioid crisis.

23. Precedent: The bankruptcy court approved a distribution of funds prioritizing certain municipalities and individual victims over large government entities or investors.

24. Reasoning: The court recognized the disproportionate impact on local communities and direct victims, compared to entities with more substantial resources.

I.  **Nortel Networks Corporation (2009)**

25. Context: Nortel, a major telecommunications company, filed for bankruptcy in 2009.

26. Precedent: As part of Nortel's liquidation, a settlement was reached to give priority to smaller creditors, notably former employees and pension beneficiaries, before larger commercial creditors.

27. Reasoning: The court found it necessary to protect the most vulnerable creditors due to their increased reliance on pension payments and severance pay, which were essential for their livelihood.

## Exhibit C

Public statements to compensate small UST holders by Luna Foundation Guard



Source: https://x.com/LFG_org/status/1578420783323283461



Source: https://x.com/LFG_org/status/1526126719874109440