# Exhibit A

## Objection Response Chart

**TERRAFORM LABS PTE. LTD. AND TERRAFORM LABS LIMITED**
**CASE NO. 24-10070 (BLS)**

**SUMMARY CHART OF CONFIRMATION OBJECTIONS**[73]

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| 1. | 671, as amended by Docket No. 679, 685 | Thomas Pierre Blanc ("**Blanc**") | Blanc objects to confirmation of the Plan (the "**Blanc Objection**") on the following grounds: | |
| | | | a) UST should not be classified and treated the same as other Crypto Loss Claims in Class 5 because:<br><br>   i. UST was marketed as a stablecoin with a fixed value, unlike Luna, which was marketed as a speculative asset that was highly volatile;<br><br>   ii. Precedent exists that claims based on fraudulent misrepresentation should be prioritized; and<br><br>   iii. LFG made a public commitment to prioritize the compensation of UST holders by using the funds from Luna Foundation Guard. S*ee* Blanc Objection at ¶¶ 2-6, 17. | • *See* Memorandum at ¶¶ 196-203. |
| | | | b) The Plan should prioritize non-institutional investors over larger, institutional investors because:<br><br>   i. The plan does not prioritize compensation within Class 5, meaning non-institutional investors are treated *pari passu* with large institutional investors with large claims; | • *See* Memorandum at ¶¶ 196-203. |

---

[73] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Memorandum, the relevant Objection, the Plan, or the Disclosure Statement, as applicable. This chart summarizes certain key issues raised in the Objections. To the extent that an Objection or a specific point raised in an Objection is not addressed herein or the Memorandum, the Debtors reserve the right to respond to such Objection up to and at the Confirmation Hearing.

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | ii. Non-institutional investors are facing significant financial hardship due to their crypto losses; | |
| | | | iii. Non-institutional investors lack the resources available to larger institutional investors and were more likely to be misled by fraudulent claims and less able to assess the risks associate with complex financial products like UST; | |
| | | | iv. Financial regulations emphasize the need for protection for non-institutional investors because they are less equipped to recover from significant financial losses; | |
| | | | v. Compensating non-institutional investors first can help restore public trust in the financial system; and | |
| | | | vi. Precedent exists that prioritizes the restitution of non-institutional investors over larger, more sophisticated parties. S*ee* Blanc Objection at ¶¶ 9-16. | |
| 2. | 675 | Xavier Mattern ("**Mattern**") | Mattern objects to confirmation of the Plan (the "**Mattern Objection**") on the following grounds that: | |
| | | | a) Holders of Class 3 claims (Beltran Allowed Secured Claims) should not have priority ahead of the holders of claims in Class 5 (Crypto Loss Claims) because:<br><br>i. The non-institutional investors are classified Class 5 (Crypto Loss Claims) where their recover is severely limited while the a small group of large investors are in Class 3 (Beltran Allowed Secured Claims) which | • *See* Memorandum at ¶¶ 204-208. |

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | they will receive payment in full on account of their secured claims; and | |
| | | |     ii.    The Plan favors large investors with access to resources that were not available to the non-institutional investors, including the ability to retain counsel and file a legal action in Singapore, thereby solidifying their preferential status. S*ee* Mattern Objection at ¶ 1. | |
| | | | b)    The Plan should prioritize claims for UST losses over other crypto loss claimants because: | • *See* Memorandum at ¶¶ 196-203. |
| | | |     i.    The Plan wrongly lists UST along with other crypto loss claims in the same class (Class 5 (Crypto Loss Claims)); and | |
| | | |     ii.    UST was marketed as a stablecoin with a fixed value, unlike LUNA, which was marketed as a speculative asset that was highly volatile. S*ee* Mattern Objection at ¶ 2. | |
| 3. | 676 | Anna Spigiel ("**Spigiel**") | Spigiel objects to confirmation of the Plan on grounds that the Plan is not fair or equitable because holders of Class 4 claims (General Unsecured Claims) may receive a higher recovery than holders of than Class 5 (Crypto Loss Claims) claims (the "**Spigiel Objection**"). In support thereof, Spiegel argues:<br><br>    i.    The Class 4 claims may potentially absorb the majority of the available funds, leaving limited funds available for the recovery of Class 5 claims. S*ee* Spigiel Objection at ¶ 2.<br><br>    ii.    The Plan provides the Class 4 claimants with a guaranteed minimum recovery of 51.5% of their claims while the Class 5 claimants may receive a minimum recover of 0.1% of their claims. S*ee* Spigiel Objection at ¶¶ 1, 3. | • *See* Memorandum at ¶¶ 186-195. |

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | iii. The Plan current treats cryptocurrency investors unfairly compared to trade creditors. S*ee* Spigiel Objection at ¶ 4. | |
| 4. | 678 | Maxim S. Kalmykov ("**Kalmykov**") | Kalmykov objects to confirmation of the Plan on grounds that the holders of Class 3 claims (Beltran Allowed Secured Claims) should not have priority ahead of the holders of claims in Class 5 (Crypto Loss Claims) (the "**Kalmykov Objection**"). In support thereof, Kalmykov argues:<br><br>i. The larger institutional investors had access to resources to pursue an action in Singapore and did not allow smaller, non-institutional investors to join in the action due to their lack of ability to pay legal fees, the 7 day notice to join the action, the risk associated with their claims, and the inability of many of the claimants to speak English. S*ee* Kalymov Objection at ¶¶ 6-7.<br><br>ii. LFG made a public commitment to prioritize the compensation of UST holders by using the funds from LFG, which was enjoined by the Singapore action. S*ee* Kalymov Objection at ¶ 5.<br><br>iii. The non-institutional UST investors should at least receive the same priority as the Beltran claimants and other crypto loss claimants. S*ee* Kalymov Objection at ¶ 11-12.<br><br>iv. The Court should provide a lengthier timeline for non-institutional investors to participate in the process. S*ee* Kalymov Objection at ¶ 13. | • S*ee* Memorandum at ¶¶ 196-203. |

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| 5. | 681 | Office of the United States Trustee for the District of Delaware ("**U.S. Trustee**") | The U.S. Trustee objected to confirmation of the Plan on grounds that (the "**U.S. Trustee Objection**"): | |
| | | | a) To provide a release, the Debtors must demonstrate a substantial contribution, among other things, by the Released Parties. *See* United States Trustee Objection at ¶¶ 23-27. | • *See* Memorandum at ¶ 112 and Leto Declaration at ¶ 24. |
| | | | b) The exculpation provision in section 10.7 of the Plan (the "**Exculpation Provision**") is overly broad because it includes non-estate fiduciaries by including "successors and assigns" in the definition of "Exculpated Parties". *See* United States Trustee Objection at ¶¶ 28-29. The Plan also inappropriately seeks to prospectively exculpate the members of the Advisory Board in section 5.5(n) of the Plan. *See* United States Trustee Objection at ¶ 30. | • The Debtors believe this portion of the U.S. Trustee Objection should be resolved by certain modifications that were made to the Plan.<br><br>• The Debtors removed sub-part (f) ("the successors and assigns of each of the foregoing") from the definition of Exculpated Parties. *See* Plan, section 10.7. While the Debtors agreed to make this modification, the Debtors do not believe it ultimately affects the scope of parties entitled to the benefit of the Exculpation Provision. It is axiomatic that the successors and assigns of a party to an agreement are entitled to the benefits of that agreement as if they were a party thereto. Consistent with that basic premise, section 12.12 of the Plan expressly provides that the "benefits of any Person named or referred to in [the] Plan shall . . . insure to the benefit of any . . . successor or permitted assign . . . ." Plan, section 12.12. Accordingly, deleting sub-part (f) from the definition of Exculpated Parties has no substantive effect on the scope of the Exculpation Provision. |
| | | | c) The injunction in section 10.3 of the Plan (the "**Injunction Provision**") provides the Debtors with a discharge, contrary to section 1141(d)(3) of the Bankruptcy Code. *See* United States Trustee Objection at ¶¶ 31-34. | • The Debtors believe this portion of the U.S. Trustee Objection should be overruled to the extent it is not resolved.<br><br>• Initially, the Plan expressly provides that the Debtors are not receiving a discharge. *See* Plan, section 10.4 ("Nothing in the Plan or the Confirmation Order shall grant the Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code."). This is not a "representation" as suggested in the U.S. Trustee Objection (*see* U.S. Trustee Objection at ¶ 34) but an operative provision of the Plan. |

5

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | | • Moreover, the Injunction Provision is narrowly tailored to only apply "with respect to any Claims, Interests, and Causes of Action that will be or are treated by the Plan." In other words, the Injunction Provision is designed merely to ensure that creditors supporting and voting in favor of the Plan receive the benefit of the Plan they support.<br>• Further, the Injunction Provision has been modified to address the U.S. Trustee Objection in the following ways:<br>   o The Injunction Provision now provides that the Debtors only receive the benefit of such provision until their assets and the assets of the Estates vest in the Wind Down Trust.<br>   o The Injunction Provision now provides that such injunction only extends to property of the Estates, the Wind Down Trust, the Plan Administrator and the Wind Down Trustee *and not property of the Debtors*.<br>• To the extent the U.S. Trustee is arguing that the Injunction Provision should not extend to the Wind Down Trust, the Plan Administrator, the Wind Down Trustee, the Estates and/or the property of the foregoing, such a result would frustrate the purpose of the Plan. Creditors, who overwhelmingly voted in favor of the Plan, are entitled to receive the benefit of the Injunction Provision. *See* Hr'g Tr. at 45:3-8, *In re Corinthian Colleges, Inc.*, No. 15-10952 (KJC) (Bankr. D. Del. Aug. 26, 2015) (approving the debtors' injunction provision over objection and ruling that "[t]he debtor is entitled to an [injunction] provision… which assures that what the plan provides and what the Court has approved… will be unmolested by [commencing or continuing acts that would otherwise be prohibited by an injunction]…and if that's the debtors' intent, I think it's appropriate. And that's just through the effective date."). If the U.S. Trustee Objection is sustained, those creditors, who both voted in favor of the Plan and did not object to the Injunction Provision, will not receive |

6

RLF1 31513333v.1

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | | the benefit of the bargain that they thought they were receiving.<br><br>• Finally, given that the Injunction Provision is narrowly tailored and necessary to ensure that the purpose of the Plan is not frustrated, it would still be appropriate even if it amounted to a *de facto* discharge (which it does not). *See* Hr'g Tr. at 23:9–24:15, *In re JRV Grp. USA L.P.*, No. 19-11095 (CSS) (Bankr. D. Del. June 19, 2020) (Docket No. 456) ("[although there] is no discharge here under [section 1141] . . . there are independent provisions that, when taken in concert, arguably provided for a *de facto* discharge . . . [b]ut the important point is that [the injunctions] stand . . . on their own as appropriate and authorized by the Code. So if you have . . . independent factors, all of which are appropriate, all of which are supported by the evidence, and all of which are authorized by the Code, and the *de facto* effect is that they give a *de facto* discharge, I really don't think that undoes what you were otherwise allowed to do . . . my belief in ruling is that the fact that the elements that result in the *de facto* discharge are all appropriate, supported by the evidence, supported by the law, supported by the Code, and the fact that, when you combine and you end up with a *de facto* discharge – which you obviously can't have a *per se* discharge in the plan – I think is of no moment."). |
| | | | d) The Plan should not dispense with requirements under section 502 regarding filed claims. *See* United States Trustee Objection at ¶¶ 35-38. | • The Debtors believe that this portion of the U.S. Trustee Objection should be resolved by certain modifications that were made to the Plan.<br><br>• Specifically, the Debtors revised section 7.1 of the Plan so that late filed claims are no longer automatically disallowed if such claims are filed after the Effective Date or the applicable bar date, as applicable. *See* Plan, section 7.1. |

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| 6. | 591 | Raminder Singh Balbir Hora ("**Hora**") | Hora objects to confirmation of the Plan (the "**Hora Objection**") on the following grounds: | |
| | | | a) The Plan improperly classifies UST in the same class as all other Crypto Loss Claims because: (i) UST was marketed as a stablecoin with a fixed value, unlike LUNA, which was marketed as a speculative asset that was highly volatile; and (ii) the Plan dilutes the compensation available to UST claims by classifying them with all other Crypto Loss Claims. *See* Hora Objection at pp. 2-3. | • *See* Memorandum at ¶¶ 196-203. |
| | | | b) The Plan improperly classifies in Class 5 the claims of institutional investors in the same class as claims of small investors because: (i) it is not fair or equitable for institutional investors to dilute the recoveries of smaller investors whom are more vulnerability to losses; (ii) the Debtors would mitigate broader social and economic harm by allowing the small investors to recover first as they rely more heavily on the returns from their investments for financial security; and (iii) precedent exists that smaller investors should be prioritized. *See* Hora Objection at pp. 3-6. | • *See* Memorandum at ¶¶ 196-203. |
| | | | c) Holders of Class 3 claims (Beltran Allowed Secured Claims) should not have priority ahead of the holders of claims in Class 5 (Crypto Loss Claims) because the Debtors have no legal or factual basis to justify the Beltran Claimants are secured creditors up to the amount of the Singapore Escrow. *See* Hora Objection at pp. 6-11. | • *See* Memorandum at ¶¶ 204-207] |
| 7. | 695 | Rex Wu ("**Wu**") | Wu objected to confirmation of the Plan(the "**Wu Objection**") on the following grounds: | |
| | | | a) The LUNC tokens and USTC stablecoins should not be subject to subordination pursuant to section 510(b) of the Bankruptcy Code because such tokens are not registered securities and are not under any subordination agreements. *See* Wu Objection ¶¶ 3-5. | • *See* Memorandum at ¶¶ 193 n. 72. |

8

| No. | Docket No. | Objecting Party | Summary of Objection | Debtors Response |
|---|---|---|---|---|
| | | | b) LUNC tokens and USTC tokens should not be in the same class because LUNC token have different characteristics and perks, such as generating revenue for the LUNC blockchain and being used to purchase goods and services. *See* Wu Objection ¶¶ 6-7. | |

RLF1 31513333v.1