## Exhibit A

**Amended Wind Down Trust Agreement**

# WIND DOWN TRUST AGREEMENT

This Wind Down Trust Agreement (as it may be amended, modified, supplemented, or restated from time to time, this "Agreement") dated as of [●], 2024, is made and entered into as a deed by and among the entities listed as "Debtors" on the signature pages hereto (each, a "Debtor," and collectively, the "Debtors"), JTC (Cayman) Limited, solely in its capacity as wind down trustee (the "Wind Down Trustee"), and Todd R. Snyder, solely in his capacity as Plan Administrator for purposes of this Agreement (the "Plan Administrator," and together with the Debtors and the Wind Down Trustee, the "Parties"), and is executed in connection with and pursuant to the terms of the *Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited*, dated August 8, 2024 [Docket No. 568] (as it may be amended, modified, supplemented, or restated from time to time, the "Plan"), as approved and authorized by the Confirmation Order (as defined below).[1]

## RECITALS

WHEREAS, on January 21, 2024, the Debtor Terraform Labs Pte. Ltd. filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), on July 1, 2024, the Debtor Terraform Labs Limited filed a petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, on July 17, 2024, the Bankruptcy Court entered an order granting joint administration of the cases of Debtors Terraform Labs Pte. Ltd. and Terraform Labs Limited, and their chapter 11 cases are being jointly administered as *In re Terraform Labs Lte. Ltd., et al.,* Case No. 24-10070 (BLS);

WHEREAS, on February 29, 2024, the United States Trustee for Region 3 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee");[2]

WHEREAS, the Plan contemplates the establishment of a trust (the "Wind Down Trust") legally owned by the Wind Down Trustee, and that the Plan Administrator will be appointed to perform its duties in accordance with the Plan and this Agreement;

WHEREAS, the Plan provides that, on the Effective Date (as defined below), all Estate Assets (as defined below) of the Debtors will be transferred to and vest in the Wind Down Trust, and the Wind Down Trustee and Plan Administrator (as applicable) will, among other things, retain, preserve, liquidate, and distribute such assets to holders of Allowed Claims or Allowed Interests against the Debtors (such holders, the "Wind Down Trust Beneficiaries"), whether or not such Claims or Interests are Allowed as of the Effective Date;

[WHEREAS, the Debtors, the Plan Administrator, the Wind Down Trustee, and the Wind Down Beneficiaries intend to treat, solely for U.S. federal income tax purposes without affecting any other provision of this Agreement or the Plan, the transfer of the Estate Assets to the Wind

---

[1]    All capitalized terms used in this Agreement and not otherwise defined herein have the meanings ascribed to such defined terms in the Plan.

[2]    Docket No. 101.

Down Trust as a deemed transfer of the Estate Assets by the Debtors to the Wind Down Trust Beneficiaries on account of their Claims under the Plan, followed by a deemed transfer of Estate Assets by the Wind Down Trust Beneficiaries to the Wind Down Trust in exchange for beneficial interests herein;][3]

[WHEREAS, the Wind Down Trust is intended to qualify as a "liquidating trust" taxed as a "grantor trust" for U.S. federal income tax purposes, pursuant to sections 671 through 679 of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and the regulations thereunder, of which the Wind Down Trust Beneficiaries are the deemd owners and grantors for U.S. federal income tax purposes;][4]

WHEREAS on [●], 2024, the Bankruptcy Court entered an order ("Confirmation Order")[5] confirming the Plan, which became effective on [●] ("Effective Date");

WHEREAS, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan, this being the object of the Wind Down Trust; and

WHEREAS, on the Effective Date of the Plan, the Wind Down Trust shall be established, the Wind Down Trustee shall be appointed in accordance with the Plan, the Plan Administrator shall be appointed in accordance with the Plan, and the Wind Down Trustee and the Plan Administrator are willing to serve in such capacities, in each case upon the terms set forth in this Agreement and pursuant to the Plan, commencing as of the Effective Date;

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the parties contained in the Plan and herein, this deed hereby witnesses and the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtors, the Plan Administrator, and the Wind Down Trustee enter into this Agreement to effectuate the distribution of the Estate Assets to the holders of Claims against the Debtors pursuant to the Plan and the Confirmation Order;

Pursuant to sections 5.5 and 5.18 of the Plan and section 3.5 of this Agreement, all right, title, and interest in, under, and all assets of the Estates, including Contributed Third-Party Claims in accordance with section 3.4.3 of this Agreement (the "Estate Assets"), shall be absolutely and irrevocably transferred to the Wind Down Trust and to its successors in trust and its successors and assigns free and clear, and shall comprise Wind Down Trust Assets (as defined below) for all purposes;

TO HAVE AND TO HOLD unto the Wind Down Trustee; and

---

[3]    Subject to review.

[4]    Subject to review.

[5]    Docket No. [●].

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Estate Assets and all other property hereafter acquired and/or held from time to time by the Wind Down Trustee under this Agreement and any proceeds thereof and earnings thereon (collectively, the "Wind Down Trust Assets") are to be held by the Wind Down Trustee on the terms of this Agreement to be applied on behalf of the Wind Down Trust by the Wind Down Trustee, solely at the direction of the Plan Administrator, on the terms and conditions set forth herein, in furtherance of the Purposes as set forth in section 3.2 below.

## ARTICLE I
## RECITALS, INTERPRETATION, AND CONSTRUCTION

1.1    Recitals. The Recitals are incorporated into and made terms of this Agreement.

1.2    Interpretation; Headings. All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.3    Construction of Agreement. This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.4    Conflict Among Plan Documents. In the event of any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern and control. In the event of any inconsistency between this Agreement, on the one hand, and the Confirmation Order, on the other hand, the Confirmation Order shall control and take precedence.

## ARTICLE II
## ACCEPTANCE OF POSITIONS; OBLIGATION TO PAY CLAIMS; FIDUCIARY
## STATUS

2.1    Acceptance of Plan Administrator. (a) Todd R. Snyder hereby accepts appointment as the Plan Administrator; and (b) Todd R. Snyder agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, other orders of the Bankruptcy Court, and applicable law.

2.2    Acceptance of Wind Down Trustee. (a) JTC (Cayman) Limited hereby accepts appointment as the Wind Down Trustee; and (b) JTC (Cayman) Limited agrees to observe and perform all duties and obligations imposed upon the Wind Down Trustee under the Plan, this Agreement, other orders of the Bankruptcy Court, the courts of the Cayman Islands and applicable law.

2.3    Fiduciary. The Plan Administrator and Wind Down Trustee shall perform their obligations consistent with the Plan, this Agreement, and applicable orders of the Bankruptcy Court and/or the courts of the Cayman Islands, as applicable. The Plan Administrator shall be the sole officer, director, or manager, as applicable, of each of the Debtors without the requirement of having to take any further action; *provided*, that, TFL shall have one director (the "Singapore Director") who is ordinarily resident in Singapore, and who shall also be a member of the Advisory Board (as defined below), for the purpose of ensuring compliance with any corporate governance

3

and reporting requirements of TFL under Singapore law including, among other things, the holding of an annual general meeting and laying of financial statements at the annual general meeting (section 201 of the Singapore Companies Act 1967), the lodgment of annual returns (section 197 of the Singapore Companies Act 1967), any tax obligations of TFL under the Singapore Income Tax Act 1947 and the maintenance of registers of the company and lodging of documents as required under Singapore law. The Wind Down Trust shall also own substantially all the shares of the Debtors. The Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions in the Plan (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, apart from the Singapore Director, the authority, power, and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator or a representative of the Plan Administrator shall be appointed as the sole director, officer, or manager of the Debtors, as applicable, and shall succeed to the powers of the Debtors' directors, officers, and managers, as applicable. From and after the Effective Date, the Plan Administrator and the Wind Down Trustee shall be the sole representatives of, and shall act for, the Debtors. For the avoidance of doubt, the foregoing shall not limit the authority of the Debtors, the Plan Administrator, and the Wind Down Trust, as applicable, to continue the employment of any former director or officer, including pursuant to any transition services agreement entered into on or after the Effective Date.

## ARTICLE III
## ESTABLISHMENT OF TRUST

3.1     Creation and Name; Formation; Office

3.1.1     There is hereby created the Wind Down Trust in accordance with the Plan on the Effective Date. The Wind Down Trustee, solely at the direction of the Plan Administrator, may conduct the affairs of the Wind Down Trust under the name of the "Terraform Wind Down Trust."

3.1.2     It is the intention of the Plan Administrator and the Wind Down Trustee that Part VIII of the Trusts Act of the Cayman Islands ("STAR" and the "Trusts Act") applies to every trust, power and provision of the Wind Down Trust, that the trust formed hereby constitutes a STAR trust established under the law of the Cayman Islands and that this Agreement constitutes the governing instrument of the Wind Down Trust.

3.1.3     The principal office of the Wind Down Trust, and such additional offices as the Wind Down Trustee, at the direction of the Plan Administrator, may determine to establish, shall be located at such place or places inside or outside the Cayman Islands as the Wind Down Trustee, at the direction of the Plan Administrator, may designate from time to time. Service of process upon the Wind Down Trust may be made by service upon the Wind Down Trustee.

3.2     Purpose of Trust. The Debtors, the Plan Administrator, and the Wind Down Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Wind Down Trust for the primary purpose of collecting, holding, administering, distributing, and liquidating the Estate Assets for the benefit of the Wind Down Trust Beneficiaries, in accordance with the terms and conditions of this Agreement and the Plan, and to pay certain Allowed Claims

4

and statutory fees, in each case to the extent required by the Plan. The objects in this <u>section 3.2</u> constituting the "Purposes" of the Wind Down Trust.

3.3     The Wind Down Trust shall retain all rights to commence and pursue, at the direction of the Plan Administrator, all Causes of Action (including any Contributed Third-Party Claims) that are not released under the Plan. The Plan Administrator and the Wind Down Trustee understand and agree that the Wind Down Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Wind Down Trust. The Plan Administrator shall administer the Wind Down Trust, subject to the terms hereof, the Plan, and the Confirmation Order. The Wind Down Trust shall be administered and implemented by the Plan Administrator and, where applicable, the Wind Down Trustee, in consultation with the Advisory Board (as defined below). The Wind Down Trustee shall be deemed a "representative" of the estate as contemplated by the U.S. Bankruptcy Code section 1123(b)(3)(B), and performance of certain services in connection with this Agreement shall be authorized by the execution of this Agreement to the extent not already authorized by the Plan or the Confirmation Order.

3.4     <u>Limitations on the Wind Down Trust</u>. For the avoidance of doubt, the Wind Down Trust and the Wind Down Trustee shall not take any actions without the prior written consent or direction of the Plan Administrator unless required to take such action under the law of the Cayman Islands; *provided* that if such actions are required to be taken to comply with the laws of the Cayman Islands, the Wind Down Trustee shall provide the Plan Administrator with written advanced notice of such actions, and the Plan Administrator shall reserve all rights related thereto pursuant to this Agreement, the Plan, the Confirmation Order, and under applicable law.

3.5     Transfer of Wind Down Trust Assets.

3.5.1     <u>Conveyance of Wind Down Trust Assets</u>. Pursuant to the Plan, the Debtors hereby grant, release, assign, transfer, convey, and deliver, on behalf of the Wind Down Trust Beneficiaries, the Estate Assets to the Wind Down Trust free and clear as of the Effective Date in trust to be held by the Wind Down Trustee in furtherance of the Purposes, which shall comprise "Wind Down Trust Assets" for all purposes and shall be administered and applied as specified in this Agreement and the Plan. The Debtors, from time to time, as and when reasonably requested by the Plan Administrator, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors shall take or cause to be taken such further action as the Plan Administrator may reasonably deem necessary or appropriate, to vest or perfect in the Wind Down Trust or confirm to the Wind Down Trustee title to and possession of the Wind Down Trust Assets. The transfer and delivery of the Wind Down Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax to the maximum extent permitted under Bankruptcy Code section 1146 and the applicable law. The Plan Administrator and Wind Down Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

3.5.2     <u>Title to Wind Down Trust Assets</u>. Pursuant to the Plan, all of the Debtors' right, title, and interest in and to the Wind Down Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Wind Down Trust on the Effective Date and shall comprise Wind Down Trust Assets for all purposes, free and clear of all

<div align="center">5</div>

liens, claims, encumbrances, and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Wind Down Trust Beneficiaries to establish the Wind Down Trust. The Wind Down Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Wind Down Trust Assets in the possession or control of third parties, pursue all Causes of Action, and pursue, assert, and exercise all rights of setoffs and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all defendants as to any Causes of Action or holders of Disputed Claims or Disputed Interests. Without limiting the generality of the foregoing, the Wind Down Trust, solely at the direction of the Plan Administrator, shall have the right to invoke Bankruptcy Code section 542 to pursue turnover of the Wind Down Trust Assets. On the Effective Date, the Wind Down Trust shall be substituted for the Debtors for all purposes with respect to the Wind Down Trust Assets and, solely at the direction of the Plan Administrator, the administration of Claims and Interests. To the extent any law or regulation prohibits the transfer of ownership of any of the Wind Down Trust Assets from the Debtors to the Wind Down Trust and such law is not superseded by the Bankruptcy Code, the Wind Down Trust's interest shall be a lien upon and security interest in such Wind Down Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in section 3.2 of this Agreement, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. By executing this Agreement, the Wind Down Trustee on behalf of the Wind Down Trust hereby accepts all of such property as Wind Down Trust Assets, to be held in trust for the Purposes, subject to the terms of this Agreement and the Plan.

3.5.3    Title to Contributed Third-Party Claims. Upon the assignment, transfer, delivery, or conveyance of a Contributed Third-Party Claim to the Wind Down Trust through settlement, purchase, contribution, or otherwise, the right, title, and interest in and to the Contributed Third-Party Claims are automatically vested in the Wind Down Trust and shall comprise Wind Down Trust Assets for all purposes, free and clear of all liens, claims, encumbrances, and other interests.

3.6    Capacity of Wind Down Trust. The "Wind Down Trust" refers to the trust or trusts established under this Agreement and, where applicable, refers to the Wind Down Trustee acting in its capacity as trustee of the Wind Down Trust. Any reference in any document to the Wind Down Trust, or any action of the Wind Down Trust which presumes legal personhood shall be construed as referring to the Wind Down Trustee solely in its capacity as trustee of the Wind Down Trust. Subject to the foregoing, where applicable or appropriate in accordance with the laws of any jurisdiction the Wind Down Trust may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters, and other U.S. state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

3.7    Cooperation of Debtors In Effecting Transfer of Assets. The Debtors and their professionals shall and shall direct their professionals to use commercially reasonable efforts to cooperate with the Plan Administrator, the Wind Down Trustee, and the Wind Down Trust and their respective professionals in effecting the transition from the Debtors to the Wind Down Trust of administration of the Wind Down Trust Assets, of creditors' Claims and, solely to the extent of payment in full of Allowed Claims at any Estate, of holders' Interests. Upon the occurrence of the Effective Date, the Debtors' books and records shall be transferred to the Wind Down Trust, which shall continue to preserve all financial books and records, emails, and other financial documents relating to the Debtors' business that are currently in the Debtors' possession.

3.8    <u>No Retention of Excess Cash</u>. Notwithstanding anything to the contrary contained in this Agreement, under no circumstances shall the Wind Down Trust or the Wind Down Trustee retain cash or cash equivalents in excess of a reasonable amount to meet claims, including Disputed claims, expenses, and contingent liabilities or to maintain the value of the Wind Down Trust Assets during administration of the Wind Down Trust.

**ARTICLE IV**
**GENERAL POWERS, RIGHTS, AND OBLIGATIONS**

4.1    <u>Rights, Powers, and Privileges of Plan Administrator Generally</u>. Effective as of the Effective Date, the Plan Administrator is appointed under the Plan for purposes of implementing the terms and conditions of the Plan with respect to (a) effectuating the transaction beneficial and necessary to wind down the Debtors, (b) administration of, and distributions with respect to, Claims against and/or Interests in the Debtors, and (c) such other matters agreed to by the Debtors and Plan Administrator in accordance with the terms of the Plan (collectively, the "<u>Plan Administrator Responsibilities</u>"), in each case, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Plan Administrator is hereby appointed to direct the Wind Down Trustee to make all disbursements and distributions under the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Debtors shall be managed, administered, and wound down by the Plan Administrator in accordance with the terms of the Plan, and in consultation with the Advisory Board established pursuant to this Agreement (the "<u>Advisory Board</u>") as set forth in this Agreement, and the Plan Administrator shall have full authority to administer the provisions of the Plan, subject to the terms and conditions of this Agreement, the Plan, and the Confirmation Order. The Plan Administrator shall be deemed to be a judicial substitute and estate representative for the Debtors as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal to which any of the Debtors is a party. The Plan Administrator shall be deemed a "representative" of the estate as contemplated by Bankruptcy Code section 1123(b)(3)(B), and performance of certain services in connection with this Agreement shall be authorized by the execution of this Agreement to the extent not already authorized by the Plan or the Confirmation Order.

4.1.1    <u>Power to Contract</u>. In furtherance of the purpose of the Debtors, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Plan Administrator, in consultation with the Advisory Board, shall have the right and power to cause the Debtors or the Wind Down Trustee to enter into any covenants or agreements binding the Debtors or the Wind Down Trustee, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Plan Administrator to be consistent with and advisable in furthering the purpose of the Plan or this Agreement.

4.1.2    <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking or refraining to take, or directing the Wind Down Trustee to take or refrain from taking, any action on behalf of the Debtors or Wind Down Trust that, based upon the advice of counsel or other professionals, the Plan Administrator determines he is obligated to take or to refrain from taking in the performance of any duty under the Plan, Confirmation Order, or this Agreement, in

7

consultation with the Advisory Board, and the terms of the Plan, the Confirmation Order, and this Agreement.

4.2     Advisory Board Member Designation. If a conflict arises that prevents the involvement of the Plan Administrator from performing his duties, the Advisory Board shall designate a member of the Advisory Board to act as the Plan Administrator solely with respect to such conflict; *provided*, *however*, that if the conflict relates to a material Cause of Action, an independent Plan Administrator may be appointed upon the unanimous consent of the Advisory Board solely with respect to such material Cause of Action. During such time as an Advisory Board member is acting as Plan Administrator, such member shall not be entitled to vote on matters requiring Advisory Board consent and the voting provisions set forth in section 7.1 hereof shall apply.

4.3     Powers of Plan Administrator. The Plan Administrator shall provide the post-Effective Date administration, wind down, dissolution, and liquidation services related to the Plan Administrator Responsibilities that are necessary, required, desirable, or advisable to effectuate the terms and conditions of the Plan and the wind down of the Debtors, in consultation with the Advisory Board as set forth in this Agreement. Subject to the consent the Advisory Board as indicated in this section 4.3 and as set forth in this Agreement (each such consent not to be unreasonably withheld), the Plan Administrator shall have all duties, powers, and rights set forth herein, in the Plan, and in the Confirmation Order, including, but not limited to, the authority to do any of the following or, where applicable to procure or direct that the Wind Down Trustee does so:

4.3.1     implement the Wind Down Trust, and, subject to the consent of the Advisory Board, direct the Wind Down Trustee to make distributions contemplated by the Plan;

4.3.2     subject to the consent of the Advisory Board, and other than with respect to the assets described in section 4.7 of this Agreement, marshal, market for sale, sell pursuant to section 363 of the Bankruptcy Code, and wind down of any of the Debtors' assets constituting Wind Down Trust Assets;

4.3.3     oversee the accounts of the Debtors and the Wind Down Trust and the wind down and dissolution of the Debtors and the Wind Down Trust;

4.3.4     other than with respect to the assets described in section 4.7 of this Agreement, receive, maintain, conserve, supervise, and, subject to the consent of the Advisory Board, prosecute, collect, settle, manage, invest, protect, liquidate, and where appropriate, cause the Wind Down Trust to abandon the Wind Down Trust Assets, including causing the Wind Down Trust to invest any moneys held as Wind Down Trust Assets;

4.3.5     subject to the consent of the Advisory Board, open and maintain or direct the Wind Down Trustee to open and maintain bank accounts on behalf of or in the name of the Wind Down Trust;

4.3.6     subject to the consent of the Advisory Board, enter into any material agreement or execute any material document or material instrument required by or consistent with

8

the Plan, the Confirmation Order, or this Agreement, and to perform all material obligations thereunder;

> 4.3.7    protect and enforce the rights to the Wind Down Trust Assets (including any Causes of Action and Contributed Third-Party Claims) vested in the Wind Down Trust by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

> 4.3.8    subject to the consent of the Advisory Board, prepare, file, and prosecute any material and necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator;

> 4.3.9    subject to the consent of the Advisory Board, investigate any Wind Down Trust Assets, and any other potential Causes of Action and Contributed Third-Party Claims;

> 4.3.10    subject to the consent of the Advisory Board, offer and provide incentives to any Contributing Claimants, including an increase of up to 10% of Allowed Claims of all Contributing Claimants;

> 4.3.11    subject to the consent of the Advisory Board, review, reconcile, compromise, settle, object to, seek to subordinate, or prosecute Claims or Interests of any kind, including indemnification claims;

> 4.3.12    seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

> 4.3.13    in accordance with sections 4.9, 4.10, and 4.12 of this Agreement, retain, or direct the Wind Down Trustee to retain, professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to this Agreement and pay, or direct the Wind Down Trustee to pay, as applicable, the reasonable compensation thereof;

> 4.3.14    subject to the consent of the Advisory Board, pay all lawful fees, expenses, debts, charges, taxes, and other liabilities, and make all other payments relating to the Wind Down Trust Assets, solely out of Wind Down Trust Assets;

> 4.3.15    maintain the books and records and accounts of the Debtors and the Wind Down Trust;

> 4.3.16    subject to the consent of the Advisory Board and the terms set forth in section 4.5 of this Agreement, prosecute and settle the Causes of Action, including, without limitation, the Contributed Third-Party Claims;

> 4.3.17    subject to the consent of the Advisory Board and the terms set forth in section 4.5 of this Agreement, review, reconcile, pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, resolve, or elect not to pursue all Causes of Action and Contributed Third-Party Claims, or direct the Wind Down Trustee to do the same, as applicable;

Case 24-10070-BLS    Doc 719-1    Filed 09/18/24    Page 11 of 89


4.3.18    subject to the consent of the Advisory Board and the terms set forth in <u>section 4.5</u> of this Agreement, acquire, including, without limitation, through purchase, settlement, or contribution, litigation and other claims, including, without limitation, Contributed Third-Party Claims, and prosecute such claims;

4.3.19    subject to the consent of the Advisory Board, review and compel, or direct the Wind Down Trustee to compel, as applicable, turnover of the Debtors or the Wind Down Trust's property;

4.3.20    subject to the consent of the Advisory Board, calculate and direct the Wind Down Trustee to make all Distributions to the holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to holders of Allowed Interests, as provided for in, or contemplated by, the Plan and this Agreement;

4.3.21    subject to the consent of the Advisory Board, establish, administer, adjust, and maintain the Wind Down Reserve;

4.3.22    determine, from time to time, whether the amounts available in the Wind Down Reserve are in excess of the amount necessary to satisfy the purpose for which such reserve was established and amend, modify, or supplement the Wind Down Budget accordingly. Subject to the consent of the Advisory Board, if the Plan Administrator determines that a surplus exists in the Wind Down Reserve as of the date of such determination, the Wind Down Trustee, solely at the direction of the Plan Administrator, may allocate such Surplus Reserved Cash pursuant to the Waterfall; *provided*, that the amount reserved on account of the D&O Indemnification Obligations shall diminish only as payments are made on account of the D&O Indemnification Obligations;

4.3.23    determine, from time to time, whether the amounts available in the Senior Claim Pool are in excess of the amount necessary to pay holders of Allowed Senior Claims, plus any such Disputed Claims until final Allowance or Disallowance. Subject to the consent of the Advisory Board, if the Plan Administrator determines that a surplus exists in the Senior Claim Pool as of the date of such determination, the Wind Down Trustee, solely at the direction of the Plan Administrator, may allocate the Surplus Senior Claim Pool Cash pursuant to the Waterfall;

4.3.24    withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

4.3.25    in reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases and the Debtors' filed lists of equity security holders, review, and where appropriate and subject to the consent of the Advisory Board, direct the Wind Down Trustee to allow or object to Claims and (if applicable) Interests, and supervise and administer the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind Down Trust;

4.3.26     make all tax withholdings, file tax information returns, file and prosecute tax refunds claims, make tax elections by and on behalf of the Wind Down Trust, and file tax returns for the Wind Down Trust pursuant to and in accordance with the Plan, and pay taxes, if any, payable for and on behalf of the Wind Down Trust; *provided, however*, that notwithstanding any other provision of this Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

4.3.27     subject to the consent of the Advisory Board, abandon or donate to a charitable organization qualifying under IRC section 501(c)(3) any Wind Down Trust Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

4.3.28     seek, or direct the Wind Down Trustee to seek, a determination of tax liability or refund under Bankruptcy Code section 505;

4.3.29     establish, or direct the Wind Down Trustee to establish, as applicable, reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind Down Trust as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind Down Trust;

4.3.30     subject to the consent of the Advisory Board, pay Wind Down Trust expenses;

4.3.31     if the Plan Administrator deems appropriate, subject to the consent of the Advisory Board, to the extent necessary, seek to establish additional bar date(s) for filing proofs of Claims in any Debtor or otherwise to determine the holders and extent of Allowed Claims in any Debtor;

4.3.32     purchase and carry all insurance policies that the Plan Administrator deems reasonably necessary or advisable and pay all associated insurance premiums and costs;

4.3.33     undertake all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind Down Trust's, or the Plan Administrator's duties under the Plan, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

4.3.34     subject to the consent of the Advisory Board, retain, terminate, appoint, hire, or otherwise employees, personnel, management, and directors at any of the Debtors to the extent necessary to carry out the purposes of this Agreement and the Plan, including, without limitation, to address any disputes between the Debtors;

4.3.35     subject to the consent of the Advisory Board, develop and use creditor communication procedures, including a creditor portal (if necessary);

4.3.36    exercise, implement, enforce, and discharge all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement;

4.3.37    [in the event that the Plan Administrator determines that the Wind Down Trust Beneficiaries or the Wind Down Trust may, will, or have become subject to different tax consequences than those described in the Plan, take such actions that will, or are intended to, address, alleviate or reduce (to the greatest extent possible) such different tax consequences;][6]

4.3.38    [send annually to each known Wind Down Trust Beneficiary a separate statement stating the Wind Down Trust Beneficiary's share of income, gain, loss, deduction, or credit and instructing all such Wind Down Trust Beneficiaries to report such items on their U.S. federal income tax returns;][7]

4.3.39    close the Chapter 11 Cases; and

4.3.40    take all other actions consistent with the provisions of the Plan and this Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind Down Trust, subject to compliance with the Wind Down Budget.

4.4    <u>Wind Down Trustee's Powers</u>. Subject to this Agreement and the rights and powers of the Plan Administrator and/or the Advisory Board, the Wind Down Trustee has all the powers in relation to the Wind Down Trust and the Wind Down Trust Assets that it is legally possible for a natural person, corporation or trustee to have, including without limitation, any and all powers in <u>section 4.3</u> of this Agreement and any such other powers as are necessary to give effect to the Purposes and this Agreement.

4.5    <u>Exclusive Authority to Pursue Causes of Action</u>. Subject to the consent of Advisory Board (such consent not to be unreasonably withheld) and in compliance with the Wind Down Budget, the Plan Administrator shall have the exclusive right, power, and interest to review, reconcile, enforce, collect, compromise, settle, or elect not to pursue the Causes of Action, including, without limitation, the Contributed Third-Party Claims, or direct the Wind Down Trustee to do the same, as applicable, on behalf of the Wind Down Trust; *provided* that within the sixty (60) days following the Effective Date, the Plan Administrator shall establish a process, in his sole discretion, to analyze any potential causes of action or otherwise that may be approaching the applicable statute of limitation; *provided further* if the Plan Administrator reasonably believes, upon advice of counsel, that pursuing a Cause of Action would be required to comply with his fiduciary duties, the Plan Administrator may pursue such Cause of Action; *provided*, *further*, *however*, if the Plan Administrator determines to pursue such Cause of Action to comply with his fiduciary duties, the Plan Administrator shall provide the Advisory Board with as much relevant information concerning the basis for pursuing such Cause of Action as is reasonably practicable under the circumstances and seek the Advisory Board's consent; *provided, further, however* that if the Advisory Board fails to consent prior to forty-eight (48) hours before the applicable statute of limitation, the Plan Administrator may pursue such Cause of Action without Advisory Board

---

[6]    Subject to review.

[7]    Subject to review.

consent. The Plan Administrator and the Wind Down Trustee shall be the sole representatives of the Estates under Bankruptcy Code section 1123(b)(3) with respect to the Causes of Action. The Wind Down Trust shall be vested with and entitled to assert, solely at the direction of the Plan Administrator, all setoffs and defenses of the Debtors or the Wind Down Trust and the Contributed Third-Party Claimants to any counterclaims that may be asserted by any defendant with respect to any Cause of Action or Contributed Third-Party Claim, as applicable. The Wind Down Trust shall also be vested with and entitled to assert, solely at the direction of the Plan Administrator, all of the Debtors' and the Estates' rights with respect to any such counterclaims, under Bankruptcy Code section 558. In accordance with the Plan, all costs and expenses of pursuing the Causes of Action and the Contributed Third-Party Claims shall be satisfied first from the Wind Down Trust Assets, and all other expenses of the Wind Down Trust shall be paid or reserved for, before any proceeds of Causes of Action or Contributed Third-Party Claims are distributed. For the avoidance of doubt, all evidentiary privileges of the Debtors and/or the Creditors' Committee of any type or nature whatsoever, including the Debtors' attorney-client privilege, the work product privilege, and any other applicable evidentiary privileges of the Debtors, shall and shall be deemed to be assigned by the Debtors and the Creditors' Committee and shall vest in the Wind Down Trust as of the Effective Date and be property of the Wind Down Trustee and Plan Administrator.

      4.6     <u>Authority to Enter Into Settlement Agreements</u>. Notwithstanding any other provision of this Agreement, including <u>section 4.3.4</u>, the Plan Administrator shall have the exclusive right to enter into settlements, or direct the Wind Down Trustee to enter into settlements, as applicable, regarding Claims, Causes of Action, and Contributed Third-Party Claims without requiring court approval, subject to gaining consent of the majority of the Advisory Board for settlement of net proceeds valued in excess of $1,000,000.

      4.7     <u>Abandonment</u>. If, in the Plan Administrator's reasonable judgment, any non-cash Wind Down Trust Assets cannot be sold in a commercially reasonable manner or the Plan Administrator believes in good faith that such property has inconsequential value, the Plan Administrator shall have the right to direct the Wind Down Trustee to cause the Wind Down Trust to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization.

      4.8     <u>Responsibility for Administration of Claims</u>. From and after the Effective Date, the Wind Down Trustee shall become responsible for, solely at the direction of the Plan Administrator, administering and paying Distributions to the holders of Allowed Claims and (if applicable) Allowed Interests. The Wind Down Trustee, solely at the direction of the Plan Administrator, shall have the exclusive right to object to the allowance of any Claim or Interest on any ground, to file, withdraw, or litigate to judgment objections to Claims or Interests, to settle or compromise any Disputed Claims or Disputed Interests without any further notice to or action, order, or approval by the Bankruptcy Court, and to assert all defenses of the Debtors and their Estates; *provided, however*, that the Plan Administrator must obtain Advisory Board consent if the Plan Administrator determines not to object to any Claim or Interest that exceeds $1,000,000.00. The Wind Down Trustee shall also be entitled to assert, solely at the direction of the Plan Administrator, all of the Debtors' and the Estates' rights under, without limitation, Bankruptcy Code section 558.  The Wind Down Trustee, solely at the direction of the Plan Administrator, may also seek estimation of any Claims under and subject to Bankruptcy Code section 502(c).

4.9     <u>Agents and Professionals</u>. The Plan Administrator and the Wind Down Trustee may, subject to the consent of the Advisory Board, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals (each a "<u>Professional</u>," and collectively, the "<u>Professionals</u>") the Plan Administrator or the Wind Down Trustee believes have qualifications necessary to assist in the administration of the Wind Down Trust, including professionals previously retained by the Debtors or the Committee; *provided* that, to the extent the Plan Administrator or the Wind Down Trustee decide to consult with or retain a Professional in accordance with this <u>section 4.9</u>, all payment of Professional fees and expenses shall be in compliance with the applicable Budget (as defined below); *provided further* that during the Interim Period (as defined below), all Professional fees and expenses shall not exceed an amount equal to $[●] per month; *provided further* that following the Interim Period, payment of all such Professional fees and expenses shall not exceed fifteen (15%) of the projected Professional fees and expenses as set forth in the applicable Budget, including the Initial Budget, without the consent of the majority of the Advisory Board. For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Plan Administrator or Wind Down Trustee from engaging, or, as applicable, directing the Wind Down Trustee to engage, counsel or other professionals, including the Plan Administrator himself, to do work for the Wind Down Trust, *provided* that each such engagement shall be in compliance with the applicable Budget(s). The Plan Administrator may direct the payment by the Wind Down Trustee of the reasonable salaries, fees, and expenses of such Persons out of the Wind Down Trust Assets in the ordinary course of business.

4.10     <u>Maintenance and Disposition of Wind Down Trust's Records</u>. The Plan Administrator and the Wind Down Trustee shall maintain accurate records of the administration of the Wind Down Trust Assets, including receipts and disbursements and other activity of the Wind Down Trust. The Plan Administrator may engage a claims agent to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Wind Down Trust. To the extent of any Unsecured Claims reflected thereon, the Claims Register may serve as the Plan Administrator's register of beneficial interests held by creditors. The Plan Administrator shall be provided with originals or copies of or access to all documents and business records of the Debtors that are in the possession of the Debtors and reasonably necessary for the disposition of the Wind Down Trust Assets and objections to Claims or (if applicable) Interests except, in each case, to the extent necessary to: (a) ensure compliance with any applicable law or an order of the Bankruptcy Court; (b) preserve any applicable privilege (including the attorney-client privilege); or (c) comply with any contractual confidentiality obligations. The Debtors and the Wind Down Trust shall use commercially reasonable efforts to cooperate with the Plan Administrator in connection with the Plan Administrator's investigation and prosecution of Causes of Action, Contributed Third-Party Claims, and objections to Claims and Interests, including with respect to providing evidence and information as reasonably requested by the Plan Administrator. Nothing in the Plan or the Confirmation Order shall affect the obligations of the Debtors, the Wind Down Trust, or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

4.11     <u>Reporting Requirements</u>. The Plan Administrator shall provide the Advisory Board the information and reports they may reasonably request concerning the Wind Down Trust's administration. If requested by the Advisory Board, the Plan Administrator shall

prepare and submit individual budgets to the Advisory Board with respect to certain matters in the Advisory Board's discretion in such detail as is reasonably requested. The Plan Administrator shall file post-confirmation reports with the Bankruptcy Court.

4.12    Quarterly Budgets. Notwithstanding anything to the contrary contained in this Agreement, within thirty (30) days following the Effective Date, the Plan Administrator shall cause to be prepared a budget that covers the period that commences on the date that is thirty-one (31) days following the Effective Date through and including the date that is ninety (90) days following the Effective Date (such period, the "Initial Reporting Period"), which shall include, among other things, a line item for projected Professional fees and expenses the Plan Administrator and the Wind Down Trustee are expected to incur through Initial Reporting Period (such budget, the "Initial Budget"). The period from the Effective Date through and including the date on which the Advisory Board approves the Initial Budget shall be referred to as the "Interim Period." Following the Initial Reporting Period and commencing on the first fiscal quarter thereafter, the Plan Administrator shall cause to be prepared a budget every ninety (90) days (such period, the "Quarterly Reporting Period," and such budgets the "Quarterly Budgets," and together with the Initial Budget and the Wind Down Budget, the "Budgets"), which shall likewise include, among other things, a line item for projected Professional fees and expenses the Plan Administrator and the Wind Down Trustee are expected to incur for the applicable Quarterly Reporting Period. For the avoidance of doubt, all Budgets shall be approved with the consent of the majority of the Advisory Board (such consent not to be unreasonably withheld).

4.13    Crypto Loss Claim Procedures. The Plan Administrator shall develop the Crypto Loss Claim Procedures with the consent of the majority of the Advisory Board and shall file the Crypto Loss Claim Procedures Motion no later than sixty (60) days after the Effective Date; *provided*, *however*, that such deadline may be extended with the consent of the majority of the Advisory Board.

4.14    Insurance. The Plan Administrator shall be authorized to obtain all reasonably necessary insurance coverage subject to compliance with the Wind Down Budget and shall be reimbursed pursuant to section 4.15 hereof.

4.15    Compensation of Plan Administrator and Costs of Administration. The Plan Administrator shall receive fair and reasonable compensation for his services in accordance with the terms and conditions of the Plan and this Agreement, which shall be a charge against and paid out of the Wind Down Trust Assets. All costs, expenses, and obligations incurred by the Plan Administrator (or professionals who may be employed by the Plan Administrator in administering the Wind Down Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto), including, for the avoidance of doubt, any insurance policy obtained by the Plan Administrator in connection with his services, shall be paid by the Wind Down Trustee from the Wind Down Trust Assets prior to any distribution to holders of Allowed Claims or Allowed Interests. The terms of the compensation of the Plan Administrator are set forth on **Exhibit B** hereto (such compensation, the "Plan Administrator Compensation").

# ARTICLE V
# DISTRIBUTIONS

5.1     <u>Reserves; Pooling of Reserved Funds</u>. Before any distribution can be made to any holders of Allowed Claims and (if applicable) Allowed Interests, the Plan Administrator shall, in his reasonable discretion, direct the Wind Down Trustee to establish the Wind Down Reserve, the Fee Escrow Account, and any other reserves in an amount sufficient to meet any and all fees owed to the U.S. Trustee, to the extent such reserves and/or accounts have not already been established and transferred to the Wind Down Trust. On the Effective Date, the Plan Administrator shall, in his reasonable discretion, direct the Wind Down Trustee to establish the SEC Settlement Fund, the Senior Claim Pool, the GUC Pool, and the Crypto Loss Claim Pool, to the extent such funds and/or pools have not already been established and transferred to the Wind Down Trust. For the avoidance of doubt, the Plan Administrator may direct the Wind Down Trustee to withhold any distribution pending the Plan Administrator's determination of whether to object to any Claim or Interest. Any such withheld distribution shall become part of the Senior Claim Pool, GUC Pool, or Crypto Loss Claim Pool, as applicable, and shall be distributed to the appropriate claimholder after a decision is made not to object to the pertinent Claim or Interest, or the Claim or Interest becomes Allowed. The Wind Down Trustee need not maintain the Wind Down Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Wind Down Trust; *provided*, *however*, that the Wind Down Trustee shall treat all such reserved funds as being held in a segregated manner in its books and records, by use of book entries, subledgers, or other means of recognizing the separateness of non-consolidated estates, such that the Wind Down Trustee will be able to account for all distributions under the Plan separately for each Debtor, as expressly contemplated by the Plan.

5.2     <u>Plan Distributions in General</u>. Except as otherwise provided in the Plan, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the applicable register or in the Debtors' records as of the date of any such distribution (as applicable), including the address set forth in any Proof of Claim filed by that Holder.

5.3     <u>Record Date of Distributions</u>. On the Distribution Record Date, the various transfer registers for each Class of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any Claims or Interests. The Disbursing Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

5.4     <u>Tax Identification Numbers</u>. The Wind Down Trustee may require any creditor to furnish its taxpayer identification number as assigned by the U.S. Internal Revenue Service (and/or equivalent taxing authority in any applicable jurisdiction), including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, as a prerequisite to receiving any distribution under the Plan or this Agreement. If a creditor does not

16

timely provide the Wind Down Trustee or Plan Administrator with its taxpayer identification number in the manner and by the deadline established by the Wind Down Trustee, Plan Administrator and/or the Plan, the creditor shall be deemed to have forfeited its right to any current, reserved or future distributions provided for under the Plan and such creditor's Claim or Interest shall be disallowed and expunged without further order of the Bankruptcy Court. Any such forfeited distribution shall be deemed to have reverted back to the Wind Down Trust for all purposes, including for distributions to other holders of Allowed Claims or Allowed Interests (as applicable) against the Debtors, notwithstanding any escheat, abandoned, or unclaimed property law of any jurisdiction to the contrary.

5.5     AEOI. Notwithstanding any other clause of this Deed, in order to comply with AEOI (as defined below), the Wind Down Trustee shall, in consultation with the Plan Administrator, be entitled to release and/or disclose on behalf of the Wind Down Trust to the Cayman Islands Tax Information Authority or equivalent authority and any other foreign government body as required by AEOI, any information in its or its agents' or delegates' possession regarding a Wind Down Trust Beneficiary including, without limitation, financial information concerning the Wind Down Trust Beneficiary's interest in the Wind Down Trust, and any information relating to any shareholders, principals, partners, beneficial owners (direct or indirect) or controlling persons (direct or indirect) of such person. The Wind Down Trustee may, in consultation with the Plan Administrator, also authorize any third party agent, including but not limited to, the Plan Administrator, to release and/or disclose such information on behalf of the Wind Down Trust. In order to comply with AEOI and, if necessary, to reduce or eliminate any risk that the Wind Down Trust or the Wind Down Trust Beneficiaries are subject to withholding taxes pursuant to AEOI or incur any costs or liabilities associated with AEOI, the Wind Down Trustee may, in consultation with the Plan Administrator deduct from, or hold back any proceeds or distributions in order to comply with any requirement to apply and collect withholding tax pursuant to AEOI or ensure that any AEOI related costs, debts, expenses, obligations or liabilities (whether external, or internal, to the Wind Down Trust) are recovered from the beneficiary(s) whose action or inaction (directly or indirectly) gave rise or contributed to such costs or liabilities.

5.6     AEOI means one or more of (a) sections 1471 to 1474 of the US Internal Revenue Code of 1986 and any associated legislation, regulations or guidance, commonly referred to as the US Foreign Account Tax Compliance Act, the Common Reporting Standard ("CRS") issued by the Organization for Economic Cooperation and Development, or similar legislation, regulations or guidance enacted in any other jurisdiction which seeks to implement equivalent tax reporting and/or withholding tax regimes; (b) any intergovernmental agreement, treaty or any other arrangement between the Cayman Islands and the US or any other jurisdiction (including between any government bodies in each relevant jurisdiction), entered into to facilitate, implement, comply with or supplement the legislation, regulations or guidance described in this section; and any legislation, regulations or guidance implemented in the Cayman Islands to give effect to the matters outlined in this section.

5.7     Anti-Money Laundering Regulations. As part of the Wind Down Trustee's and the Plan Administrator's responsibility for the prevention of money laundering, the Wind Down Trustee, together with the Plan Administrator, may require detailed verification of the identity of any Wind Down Trust Beneficiary, or any other recipient of a payment or distribution from the Wind Down Trust and/or any contributor to the Wind Down Trust's assets. The Trustee,

RLF1 31523804v.1

together with the Plan Administrator, may request such information as is necessary to verify the identity of such person or persons and the source of their funds or wealth (where applicable) in accordance with the applicable anti-money laundering regulations in place in the Cayman Islands. In the event of delay or failure by such person to produce any information required for verification purposes, the Wind Down Trustee or Plan Administrator may refuse to make any payment unless and until the requisite information has been provided.

5.8     Unclaimed and Undeliverable Distributions. If any distribution to a creditor is returned to the Wind Down Trustee as undeliverable and/or otherwise remains unclaimed, no further Distributions to such creditor shall be made unless and until the creditor claims the distribution(s) by timely notifying the Wind Down Trustee and the Plan Administrator in writing of any information necessary to make the distribution to the creditor in accordance with this Agreement, the Plan, and applicable law, including such creditor's then-current address or taxpayer identification number. If a creditor timely provides the Wind Down Trustee and the Plan Administrator the necessary information within the period specified in section 6.12 of the Plan, all missed distributions shall be made to the creditor as soon as is practicable, without interest. After the passage of the deadline set forth in section 6.12 of the Plan, such distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and all title to and beneficial interest in such undeliverable Distribution shall revert to or remain in the Wind Down Trust automatically and without any need for further order by the Bankruptcy Court, notwithstanding any escheat, abandoned, or unclaimed property laws of any jurisdiction to the contrary, and shall be distributed in accordance with this Article V and the Plan. For the avoidance of doubt, undeliverable or unclaimed Plan distributions shall be administered in accordance with section 6.12 of the Plan as supplemented hereby.

5.9     No Responsibility to Attempt to Locate Creditors. The Plan Administrator may, in his sole discretion, attempt to determine a creditor's current address or otherwise locate a creditor, but nothing in this Agreement or the Plan shall require the Plan Administrator to do so.

5.10     Disallowance of Claims and Interests; Cancellation of Corresponding Beneficial Interests. All Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Wind Down Trust for all purposes (including, but not limited to, for distribution to holders of other Allowed Claims or Allowed Interests, as applicable, against the Debtors) pursuant to section 6.12 of the Plan shall be deemed disallowed and expunged without further action by the Wind Down Trustee or Plan Administrator and without further order of the Bankruptcy Court, and the corresponding interests of any creditor holding such disallowed Claims or Interests shall be deemed canceled. The creditor with respect to any such disallowed Claim or Interest shall no longer have any right, claim, or interest in or to any distributions in respect of such Claim or Interest, and further, such creditor is forever barred, estopped, and enjoined from receiving any distributions under the Plan or this Agreement and from asserting such disallowed Claim or Interest against the Wind Down Trust, the Wind Down Trustee, or Plan Administrator.

5.11     Inapplicability of Escheat, Abandoned, or Unclaimed Property Laws. Unclaimed property held by the Wind Down Trust shall not be subject to the escheat, abandoned, or unclaimed property laws of the Cayman Islands, the United States, any U.S. state, or any other local or foreign governmental unit.

5.12     Delivery of Distributions. Subject to the terms of this Agreement, the Plan Administrator shall cause the Wind Down Trustee to make Distributions to creditors in the manner provided in the Plan.

5.13     Timing of Distributions and Limitations on Investment of Undistributed Cash.  The Plan Administrator or the Wind Down Trustee, as applicable, shall distribute at least annually to Wind Down Trust Beneficiaries all net cash income plus all net cash proceeds from the liquidation of assets of the Wind Down Trust; *provided*, *however*, the Wind Down Trustee shall be required to make such distributions only if cash exists to be distributed after retaining and setting aside such amounts of cash to pay any claims, expenses, charges, liabilities, and obligations of the Wind Down Trust (including any obligations or liabilities of the Debtors under the Plan or Confirmation Order), any existing or anticipated Wind Down Trust expenses (including to maintain the value of the assets of the Wind Down Trust during liquidation, and any taxes imposed on the Wind Down Trust or in respect of the assets of the Wind Down Trust), and any amounts necessary to be held back to the extent claims are subject to reconciliation. The Plan Administrator is authorized to take any action as may be necessary or appropriate to minimize any potential tax liability of the Wind Down Trust and, thereafter, the Wind Down Trust Beneficiaries, arising out of the operations of the Wind Down Trust. The Plan Administrator shall be permitted to direct the Wind Down Trustee to invest any Cash held pending distribution, including Cash held in reserves, in (i) direct obligations of, or obligations guaranteed by, or obligations secured by, the United States of America (including United States Treasury Bills); (ii) obligations of any agency or corporation that is or may hereafter be created by or pursuant to an Act of the Congress of the United States as an agency or instrumentality thereof, or (iii) demand deposits or short-term certificates of deposit at any bank or financial institution approved by the Plan Administrator, *provided*, *however*, that the Wind Down Trustee may maintain Cash in an amount sufficient to cover Wind Down Trust expenses.

## ARTICLE VI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing with the Plan Administrator or Wind Down Trustee. In the absence of actual knowledge to the contrary, any Person dealing with the Wind Down Trust, the Wind Down Trustee, or the Plan Administrator shall be entitled to rely on the authority of the Plan Administrator and the Wind Down Trustee, or any of the Plan Administrator or Wind Down Trustee's agents, to act in connection with the Wind Down Trust Assets. There is no obligation of any Person dealing with the Plan Administrator or Wind Down Trustee to inquire into the validity or expediency or propriety of any transaction by the Plan Administrator or Wind Down Trustee or any agent of the Plan Administrator or Wind Down Trustee.

6.2     Limitation of Plan Administrator, Wind Down Trustee, and Advisory Board Liability. In exercising the rights and powers granted herein, the Wind Down Trustee and Plan Administrator shall exercise their best judgment with respect to the affairs of the Wind Down Trust and how best to further the Purposes in accordance with this Agreement and the Plan. [The Plan Administrator and Wind Down Trustee shall not at any time, on behalf of the Wind Down Trust or Wind Down Trust Beneficiaries, enter into or engage in any trade or business, and no part of the Wind Down Trust Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Wind Down Trust in furtherance of any trade or business, nor take any action

19

pursuant to this Agreement or otherwise that is inconsistent with the qualification of the Wind Down Trust as a "liquidating trust" for U.S. federal income tax purposes of which the Wind Down Trust Beneficiaries are considered the owners and grantors for U.S. federal income tax purposes.][8] Nevertheless, notwithstanding anything to the contrary contained in this Agreement, neither the Plan Administrator, Wind Down Trustee, nor any member of the Advisory Board, nor any of their respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, including with respect to any intercreditor or other issues that may arise as a result of the limited substantive consolidation of Estates under the Plan, whether sounding in tort, contract, or otherwise, except for actual fraud, gross negligence, or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Wind Down Trust. In no event shall the Plan Administrator, Wind Down Trustee, or any member of the Advisory Board be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Plan Administrator, Wind Down Trustee, or the Advisory Board has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Plan Administrator, Wind Down Trustee, and Advisory Board shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in section 10 of the Plan.

6.3     No Liability for Acts of Other Persons. None of the Persons identified in section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     No Liability for Acts of Predecessors. No successor Plan Administrator or Wind Down Trustee shall be in any way responsible for the acts or omissions of any Plan Administrator or Wind Down Trustee, as applicable, in office prior to the date on which such successor becomes the Plan Administrator or Wind Down Trustee, unless a successor Plan Administrator or Wind Down Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment. None of the Plan Administrator, the Advisory Board members, and Wind Down Trustee shall be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Plan Administrator, Wind Down Trustee, or any member of the Advisory Board, as applicable, was grossly negligent in ascertaining the pertinent facts.

6.6     Reliance by Plan Administrator, Wind Down Trustee, and Advisory Board on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Plan Administrator, the Wind Down Trustee, and the Advisory Board may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have

---

[8]     Subject to review.

been signed or presented by the proper party or parties. The Plan Administrator may engage and consult with his legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in reliance upon the advice of such counsel, agents, or advisors.

6.7     No Liability For Acts Approved by Bankruptcy Court. The Plan Administrator shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Wind Down Trust. Neither the Wind Down Trustee nor the Plan Administrator nor the Advisory Board shall be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

6.8     No Personal Obligation for Wind Down Trust's Liabilities. Persons dealing with the Plan Administrator, Wind Down Trustee, or Advisory Board shall have recourse only to the Wind Down Trust Assets, excluding the SEC Settlement Fund, to satisfy any liability incurred by the Plan Administrator, Wind Down Trustee, or any member of the Advisory Board, as applicable, to any such Person in carrying out the terms of this Agreement, and the Plan Administrator or Wind Down Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Plan Provisions. In connection with all actions taken in their capacities as Plan Administrator, Wind Down Trustee, and the Advisory Board, the Plan Administrator, Wind Down Trustee, and members of the Advisory Board shall be entitled to rely upon the applicable exculpation, release, and indemnification and limitation of liability provisions set forth in any organizational document of the Debtors, this Agreement, the Plan, and the Confirmation Order. The applicable exculpation, release, and indemnification and limitation of liability provisions set forth in the Plan, the Confirmation Order, and this Agreement shall survive the termination of (a) this Agreement or consummation of the Plan, and (b) any Indemnified Party (as defined below) from the capacity for which it was deemed indemnified, and shall remain available to and binding upon any Indemnified Party and any estate of any decedent Indemnified Party.

6.10    Exculpation. The Plan Administrator, Wind Down Trustee, and the Advisory Board, and their respective consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such, and any of such Person's successors and assigns (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall not be liable for any losses, claims, damages, liabilities, obligations settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalties, costs, and expenses, including, without limitation, reasonable legal, or other professional fees and disbursements and the costs and expenses of investigating, analyzing, and responding to claims, of any kind or nature (each, a "Loss" and collectively, "Losses"), whether or not in connection with litigation in which any Indemnified Parties is a party or enforcing this Agreement (including this exculpation provision), incurred, caused by, relating to, based upon, or arising out of (directly or indirectly) the Indemnified Parties' execution, delivery, and acceptance of, or performance or nonperformance of their powers, duties, and obligations under, this Agreement, the Plan, the Confirmation Order, any other order of the Bankruptcy Court, any applicable law or as may arise by reason of any action, omission, or error of an Indemnified Party, except to the extent it is finally determined by a final

21

judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision, *provided* that in no event will any such Person be liable for punitive, exemplary, consequential, or special damages under any circumstances. Every act taken or omitted, power exercised, or obligation assumed by or on behalf of the Wind Down Trust or any of the Indemnified Parties pursuant to the provisions of this Agreement, the Plan, the Confirmation Order, or any other order of the Bankruptcy Court shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Indemnified Parties acting for and on behalf of the Wind Down Trust and not otherwise, *provided*, *however*, that none of the foregoing Indemnified Parties are deemed to be responsible for any other such Indemnified Parties' actions or inactions.

      6.11      <u>Indemnification</u>. The Indemnified Parties shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Wind Down Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Wind Down Trustee's, the Plan Administrator's, or the Advisory Board's respective powers and duties under this Agreement or in rendering services by the Indemnified Party to the Wind Down Trust, Wind Down Trustee, or the Plan Administrator, including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

      6.11.1      <u>Expense of Wind Down Trust; Limitation on Source of Payment of Indemnification</u>. All indemnification liabilities of the Wind Down Trust under this <u>section 6.11</u> shall be expenses of the Wind Down Trust, excluding the SEC Settlement Fund. The amounts necessary for such indemnification and reimbursement shall be paid by the Wind Down Trust out of the available Wind Down Trust Assets after reserving for all other actual and anticipated expenses and liabilities of the Wind Down Trust. Neither the Plan Administrator, the Wind Down Trustee, nor the Advisory Board or its members shall be personally liable for the payment of any Wind Down Trust expense or claim or other liability of the Wind Down Trust, and no Person shall look to the Plan Administrator, Wind Down Trustee, the Advisory Board, or other Indemnified Parties personally for the payment of any such expense or liability.

      6.11.2      <u>Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay</u>. The Wind Down Trust shall promptly pay an Indemnified Party all amounts subject to indemnification under this <u>section 6.11</u> on submission of invoices for such amounts by the Indemnified Party. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this <u>section 6.11</u>.

      6.12      <u>Burden of Proof</u>. In any proceeding brought by any Person or Entity who is bound by this Agreement challenging any determination, action, or failure to act of any of the Indemnified Parties in discharge of their duties under this Agreement or the Plan, the Person or

Entity bringing or prosecuting such proceeding shall have the burden of proving that such determination, action, or failure to act constituted gross negligence, willful misconduct, or fraud. Notwithstanding anything to the contrary contained in this Agreement or any duty otherwise existing at law or equity, each determination, action, or failure to act of the Indemnified Parties in the discharge of their duties under this Agreement or the Plan is, to the extent consistent with this Agreement or the Plan, hereby deemed to not constitute a breach of this Agreement, the Plan, or any duty hereunder, thereunder, or existing at law, in equity, or otherwise.

6.13    No Implied Obligations. None of the Plan Administrator, Wind Down Trustee, or Advisory Board shall be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Plan Administrator.

6.14    Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Plan Administrator, the Wind Down Trustee, and the Advisory Board, or the termination of the Wind Down Trust or this Agreement, and shall inure to the benefit of the Plan Administrator's, the Wind Down Trustee's, the Advisory Board's, and the Indemnified Parties' heirs and assigns.

## ARTICLE VII
## ADVISORY BOARD

7.1    Appointment, Composition, and Governance of Advisory Board. The Advisory Board shall consist of six (6) members, which shall include five (5) voting members and one (1) non-voting member, as set forth herein. The Advisory Board shall consist of those initial members identified on **Exhibit A** hereto (the "Initial Members"). At least one member of the Advisory Board shall be the Singapore Director, whose role as an Advisory Board member will be limited to a non-voting participatory role. The Initial Members and the Plan Administrator will solicit resumes and materials from potential Advisory Board candidates and conduct interviews to determine the additional three voting Advisory Board members. Such three members shall then be appointed to the Advisory Board following the consent of both (a) at least one of the Initial Members and (b) the Plan Administrator. In the event that a member of the Advisory Board resigns, a new member of the Advisory Board shall be appointed following the consent of both (a) the majority of the remaining voting members of the Advisory Board and (b) the Plan Administrator. All matters requiring consent of the Advisory Board shall be decided with the consent of the majority of the Advisory Board. In the event that only two voting members of the Advisory Board are voting on a particular matter and the vote is a tie, the Plan Administrator's vote shall act as a tiebreaker.

7.2    Resignation of Advisory Board Members. Any member of the Advisory Board may resign upon reasonable notice to the Plan Administrator, counsel for the Plan Administrator, and other members of the Advisory Board. Thirty (30) days' prior written notice shall constitute reasonable notice under this section 7.2. Pursuant to section 7.1 of this Agreement, during the thirty-day notice period, a new member of the Advisory Board shall be appointed following the consent of both (a) the majority of the remaining voting members of the Advisory Board and (b) the Plan Administrator, and such new member shall begin their duties under this

23

Agreement immediately following resignation or replacement of the previous member. Any member of the Advisory Board may be removed by (a) the Plan Administrator, with the unanimous consent of the other Advisory Board members or (b) the Bankruptcy Court, in each case, for "cause," as defined in Article III hereof. The Advisory Board may authorize, with the consent of the Plan Administrator, its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities under the Plan have concluded.

       7.3        Procedures for Consultation with and Obtaining the Consent of the Advisory Board.

       7.3.1      Consultation Process.

A.      In the event the Plan Administrator is required to consult with the Advisory Board for any action or inaction contained in this Agreement or on any other matters specified herein, the Plan Administrator shall provide the Advisory Board with written advance notice (email being sufficient) of the matter under consideration, and with relevant information concerning the matter as is reasonably practicable under the circumstances. The Plan Administrator shall also provide the Advisory Board with such reasonable access to the applicable Professionals and other experts retained by the Plan Administrator or the Wind Down Trustee, as applicable, as the Advisory Board may reasonably request during the time that the Plan Administrator is considering such matter, and shall also provide the Advisory Board the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Plan Administrator.

B.      In determining when to take definitive action on any matter subject to the consultation process set forth in this section 7.3.1, the Plan Administrator shall take into consideration the time required for members of the Advisory Board, if such members so wish, to engage and consult with his or her own Professional as to such matter. The Plan Administrator shall not take definitive action on any such matter until at least five (5) business days, or a shorter period of time if necessary under the circumstances, after providing the Advisory Board with the initial written notice that such matter is under consideration by the Plan Administrator, unless such period is waived by the Advisory Board.

       7.3.2      Consent Process.

A.      In the event the Plan Administrator is required to obtain the consent of the Advisory Board for any action or inaction contained in this Agreement or on any other matters specified herein, the Plan Administrator shall provide the Advisory Board with a written notice (email being sufficient) stating that the Advisory Board's consent is being sought, describing in reasonable detail the nature and scope of the action the Plan Administrator proposes to take, and explaining in reasonable detail the reasons that the Plan Administrator desires to take such action. The Plan Administrator shall provide the Advisory Board as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Plan Administrator shall also provide the Advisory Board with such reasonable access to his Professionals and other experts retained by the Plan Administrator or the Wind Down Trustee, as applicable, as the Advisory Board may reasonably request during the time that the Plan Administrator is considering such matter, and shall also provide the Advisory Board the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Plan Administrator.

B.      The Advisory Board must consider in good faith and in a timely fashion any request for its consent by the Plan Administrator, and must in any event advise the Plan Administrator in writing (email being sufficient) of its consent or objection to the proposed matter within ten (10) calendar days of receiving the original request for consent from the Plan Administrator, or within such additional time as the Plan Administrator and Advisory Board may agree. The Advisory Board may not withhold its consent unreasonably. If the Advisory Board decides to withhold consent, it must explain in reasonable detail its objections to the proposed matter. If the Advisory Board does not advise the Plan Administrator in writing (email being sufficient) of its consent or objections to the proposed matter within ten (10) calendar days of receiving the notice from the Plan Administrator regarding such consent (or the additional time period agreed to by the Plan Administrator and the Advisory Board), the Advisory Board's consent shall be deemed to have been affirmatively granted; *provided, however,* that, in the event of an emergency, the Plan Administrator may reduce the period required for Advisory Board consent.

C.      If, after following the procedures specified in this section 7.3.2, the Advisory Board continues to object to the proposed matter and to withhold its consent to the proposed matter, the Plan Administrator and/or the Advisory Board shall resolve their dispute pursuant to section 12.17 or section 12.18, as applicable. Notwithstanding anything to the contrary contained in this Agreement, the burden of proof with respect to the validity of the Advisory Board's objection and withholding of its consent shall be on the Advisory Board.

7.4      Consultation. Notwithstanding anything to the contrary contained in this Agreement or otherwise, the Plan Administrator shall not be required to consult with or seek consent from, the Advisory Board with respect to any matters, actions, or inactions that would reasonably would be considered, upon advice of counsel, to be a breach of fiduciary duties for the Plan Administrator to fail to address the matter, act, or abstain from action, as applicable.

7.5      Wind Down Trust Bylaws. Within forty-five (45) days following the Effective Date, the Plan Administrator and the Advisory Board shall develop bylaws for the Wind Down Trust, which, among other things, shall detail the delegation of authority that the Advisory Board will give the Plan Administrator.

7.6      Fiduciary Duties. Members of the Advisory Board shall have fiduciary duties to creditors in the same manner as the Plan Administrator as set forth in section 2.3 of this Agreement, and shall be entitled to indemnification from the Wind Down Trust in the same manner as the Plan Administrator for service as members of the Advisory Board from and after the Effective Date of the Plan under or in connection with this Agreement.

7.7      Each of the Advisory Board and the Plan Administrator are enforcers for the purposes of STAR and as such (a) have a fiduciary duty to enforce the terms of this Agreement; and (b) are the only persons (or body in the case of the Advisory Board) with standing to enforce the terms of the Wind Down Trust. Each of the Advisory Board and the Plan Administrator may exercise their rights and powers as an enforcer either jointly or severally. The enforcers have the same rights as life tenant beneficiaries of an ordinary trust to receive information concerning the Wind Down Trust and its administration from the Wind Down Trustee and Plan Administrator and to inspect and take copies of trust documents.

7.8      Payment of Fees and Expenses. The Plan Administrator shall direct the Wind Down Trustee to pay from the Wind Down Trust Assets, other than the SEC Settlement

Fund, the reasonable out-of-pocket expenses of the members of the Advisory Board incurred solely in connection with their role as an Advisory Board member, and not in their individual capacity; *provided*, *however*, that attorneys' fees incurred by Advisory Board members in their individual capacities shall not be paid out of the Wind Down Trust Assets. Advisory Board members shall be paid $10,000 per month subject to adjustment upon the majority vote of the Advisory Board and consent of the Plan Administrator. The Bankruptcy Court shall hear and finally determine any dispute arising out of this <u>section 7.8</u>.

## ARTICLE VIII
## REMOVAL, REPLACEMENT
## AND COMPENSATION OF PLAN ADMINISTRATOR

8.1     <u>Plan Administrator</u>. The Plan Administrator shall be Todd R. Snyder. The Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.

8.2     <u>Term of Service</u>. The Plan Administrator shall serve until: (a) the completion of the administration of the Wind Down Trust Assets and the Wind Down Trust, including the winding down of the Debtors and the Wind Down Trust, in accordance with this Agreement and the Plan; (b) the termination of the Wind Down Trust in accordance with the terms of this Agreement and the Plan; or (c) the Plan Administrator's resignation, death, dissolution, incapacity, liquidation, or removal. In the event that the Plan Administrator's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the Plan Administrator shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the resignation or removal of any Plan Administrator.

8.3     <u>Removal of Plan Administrator for Cause</u>: The Advisory Board may seek to remove the Plan Administrator for cause by filing a motion with the Bankruptcy Court upon not less than thirty (30) days' prior written notice to the Plan Administrator and the Wind Down Trustee. For purposes of this agreement, "cause" means:

8.3.1     a determination, in good faith, by the Advisory Board that the Plan Administrator is not acting in the best interests of creditors;

8.3.2     arrest or conviction (or plea of guilty or nolo contendere) of the Plan Administrator for any felony, or any other crime involving dishonesty or moral turpitude;

8.3.3     a finding by the Bankruptcy Court that the Plan Administrator engaged in willful misconduct, or was grossly negligent, in the performance of its duties; or

8.3.4     a determination, in good faith, by the Advisory Board that the Plan Administrator has a material and direct conflict of interest, not previously disclosed or specifically waived.

8.4     <u>Removal of Plan Administrator Without Cause</u>: The Advisory Board may remove the Plan Administrator without "cause" upon a supermajority vote of at least 75% of

26

Advisory Board members upon not less than forty-five (45) days' prior written notice to the Plan Administrator and the Wind Down Trustee; *provided*, *however*, that the Advisory Board may not remove the Plan Administrator without "cause" in the first twelve (12) months of the Plan Administrator's appointment; *provided further* if the Plan Administrator is removed without "cause" in accordance with this <u>section 8.4</u>, the Plan Administrator shall continue to be entitled to (a) the Monthly Fee (as defined in **<u>Exhibit B</u>**) for three (3) months after the removal and (b) the incentives contemplated in the Plan Administrator Compensation through and including the date that equal an equivalent amount of time the Plan Administrator served in such capacity prior to the supermajority vote of removal (the "<u>Tail Period</u>"); *provided*, *however*, that the Tail Period shall be capped at eighteen (18) months.

8.5     <u>Resignation of Plan Administrator</u>. The Plan Administrator may resign at any time upon no less than forty-five (45) days' written notice to the Advisory Board. The resignation shall be effective on the later of (a) the date specified in the notice of resignation and (b) the date that is forty-five (45) days after the date such notice is delivered to the Advisory Board members. In the event of a resignation, the resigning Plan Administrator shall render to the Advisory Board a full and complete accounting of monies and assets received, disbursed, and held during the term of office of such Plan Administrator.  For the avoidance of doubt, the Plan Administrator shall be entitled to the Plan Administrator Compensation through and including the date on which such resignation, if any, becomes effective.

8.6     <u>Appointment of Successor Plan Administrator</u>. Upon the resignation, death, or removal of the Plan Administrator, the Advisory Board shall appoint a successor. In the event the Advisory Board does not seek the appointment of a successor Plan Administrator, the Bankruptcy Court may do so on its own motion. Any successor Plan Administrator so appointed (a) shall consent to and accept his, her, or its appointment as successor Plan Administrator, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her, or its appointment as successor Plan Administrator and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).

8.7     <u>Powers and Duties of Successor Plan Administrator</u>. A successor Plan Administrator shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and Confirmation Order.

## ARTICLE IX
## REMOVAL, REPLACEMENT
## AND COMPENSATION OF WIND DOWN TRUSTEE

9.1     <u>Wind Down Trustee</u>. The initial Wind Down Trustee shall be JTC (Cayman) Limited. The Wind Down Trustee shall be approved in the Confirmation Order, and the Wind Down Trustee's duties shall commence as of the Effective Date.

9.2     <u>Term of Service</u>. The Wind Down Trustee shall serve until: (a) the completion of the administration of the Wind Down Trust Assets and the Wind Down Trust, including the winding down of the Debtors and the Wind Down Trust, in accordance with this Agreement and the Plan; (b) the termination of the Wind Down Trust in accordance with the terms of this Agreement and the Plan; or (c) the Wind Down Trustee's resignation, death, dissolution,

27

incapacity, liquidation, or removal. In the event that the Wind Down Trustee's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the Wind Down Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the resignation or removal of any Plan Administrator.

9.3     Removal of Wind Down Trustee: The Plan Administrator may remove and replace the Wind Down Trustee at any time.

9.4     Resignation of Wind Down Trustee. The Wind Down Trustee may resign at any time upon no less than sixty (60) days' written notice to the Plan Administrator and the Advisory Board. The resignation shall be effective on the later of (a) the date specified in the notice of resignation and (b) the date that is sixty (60) days after the date such notice is delivered to the Plan Administrator provided that there is a trustee in office which satisfies the requirements applicable under STAR.

9.5     Appointment of Successor Wind Down Trustee. Upon the resignation, death, or removal of the Wind Down Trustee, the Plan Administrator shall appoint a successor provided that such successor satisfies the requirements of STAR. In the event the Plan Administrator does not seek the appointment of a successor Wind Down Trustee, the Bankruptcy Court may do so on its own motion. Any successor Wind Down Trustee so appointed (a) shall consent to and accept his, her, or its appointment as successor Wind Down Trustee by deed and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).

9.6     Powers and Duties of Successor Wind Down Trustee. A successor Wind Down Trustee shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and Confirmation Order.

9.7     Compensation of Wind Down Trustee and Costs of Administration. The Wind Down Trustee shall receive fair and reasonable compensation for his services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Wind Down Trust Assets, other than the SEC Settlement Fund. All costs, expenses, and obligations incurred by the Wind Down Trustee (or professionals who may be employed by the Wind Down Trustee in administering the Wind Down Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid from the Wind Down Trust Assets prior to any distribution to holders of Allowed Claims or Allowed Interests. The terms of the compensation of the Wind Down Trustee are set forth on **Exhibit C** hereto. The Plan Administrator may modify the Wind Down Trustee's compensation at the Plan Administrator's discretion; *provided*, *however*, that the Plan Administrator must obtain the consent of the majority of the Advisory Board prior to any increase of the Wind Down Trustee's compensation.

## ARTICLE X
## DURATION OF TRUST

10.1    <u>Duration</u>. Once the Wind Down Trust becomes effective upon the Effective Date of the Plan, the Wind Down Trust and this Agreement shall remain and continue in full force and effect until the Wind Down Trust is terminated.

10.2    <u>Termination on Payment of Wind Down Trust Expenses and Distribution of Wind Down Trust Assets.</u> Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Wind Down Trust, and the distribution of all Wind Down Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Wind Down Trust shall terminate and the Plan Administrator and Wind Down Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

10.3    <u>Termination after Five Years</u>. If the Wind Down Trust has not been previously terminated pursuant to <u>section 10.2</u> hereof, on the fifth anniversary of the Effective Date, the Wind Down Trust shall terminate and dissolve unless the Bankruptcy Court, upon motion made within the six month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension is necessary to facilitate or complete the recovery on, and liquidation of, the Wind Down Trust Assets) is appropriate. Upon such termination, the Wind Down Trustee shall distribute all of the Wind Down Trust Assets to the Wind Down Trust Beneficiaries in accordance with the Plan and this Agreement, and immediately thereafter the Wind Down Trust shall terminate and the Wind Down Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in <u>section 10.5</u> of this Agreement.

10.4    <u>No Termination by Beneficiaries</u>. The Wind Down Trust may not be terminated at any time by the Wind Down Trust Beneficiaries.

10.5    <u>Continuance of Wind Down Trust for Winding Up; Discharge and Release of Wind Down Trustee</u>. After the termination of the Wind Down Trust and solely for the purpose of liquidating and winding up the affairs of the Wind Down Trust, the Plan Administrator and Wind Down Trustee shall continue to act as such until their responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the distribution of the Wind Down Trust Assets, including all excess reserves, the Plan Administrator, the Wind Down Trustee, and the Wind Down Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Wind Down Trustee, solely at the direction of the Plan Administrator, the Bankruptcy Court may enter an order relieving the Plan Administrator, the Wind Down Trustee, their employees, professionals, and agents of any further duties, discharging and releasing the Plan Administrator, Wind Down Trustee, their employees, professionals, and agents from all liability related to the Wind Down Trust.

## ARTICLE XI
## CLOSING OF THE CHAPTER 11 CASES

29

11.1    <u>Termination</u>. When each of the following have occurred or will have occurred by the hearing on a motion to close the Chapter 11 Cases, the Plan Administrator shall promptly seek authority from the Bankruptcy Court to close the Chapter 11 Cases for each of the Debtors' Estates in accordance with the Bankruptcy Code and the Bankruptcy Rules: (a) all Claims against the Wind Down Estates entitled under the payment under the Plan (i) have been satisfied in accordance with the Plan or (ii) have been disallowed by a Final Order; (b) all assets have been liquidated and converted into Cash (other than those assets abandoned by the Wind Down Estates in the Plan Administrator's sole discretion), and such Cash has been distributed in accordance with the Plan; and (c) all wind-down costs and expenses have been paid in full in Cash. Notwithstanding the foregoing, the Plan Administrator may seek authority from the Bankruptcy Court to close the Chapter 11 Cases of the Debtors individually, prior to the requirements above being met with respect to all of the Debtors' Chapter 11 Cases, and may seek to close the Chapter 11 Cases in the event the Debtors lack sufficient funding for further administration. Subject to further order of the Bankruptcy Court, this Agreement shall terminate when the Bankruptcy Court enters a final decree contemplated by Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Debtors' Chapter 11 Cases with respect to each Debtor.

## ARTICLE XII
## MISCELLANEOUS

12.1    [<u>Intention of Parties to Establish Liquidating Trust</u>.][9]  For U.S. federal income tax purposes, the Wind Down Trust is intended to be treated as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code of which the Wind Down Trust Beneficiaries (as determined for U.S. federal income tax purposes) are the deemed owners and grantors. Accordingly, for U.S. federal income tax purposes, and without affecting any other provision in this Agreement or the Plan, Wind Down Trust Beneficiaries will be treated as if they had received a distribution of a direct undivided interest in the Estate Assets and then contributed such interests to the Wind Down Trust. Accordingly, the Wind Down Trust shall, in an expeditious but orderly manner, and pursuant to the terms of this Agreement, the Plan and the Confirmation Order, liquidate and convert to Cash the Wind Down Trust Assets, make timely distributions to the Wind Down Trust Beneficiaries pursuant to the Plan, and not unduly prolong the Wind Down Trust's duration. The Wind Down Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein, the Plan and Confirmation Order.  To the extent provided by law, the Wind Down Trust shall be governed and construed in all respects as a liquidating trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Wind Down Trust Agreement may be amended in accordance with Section 13.7 of this Agreement to comply with such U.S. federal income tax laws, which amendments may apply retroactively. All parties (including the Debtors, the Estates, the Plan Administrator, the Wind Down Trust Beneficiaries and the Wind Down Trustee) shall report consistently with the intended treatment of the Wind Down Trust (including the deemed receipt of the underlying assets, subject to applicable liabilities and obligations, by the Win Down Trust Beneficiaries, followed by the deemed transfer of such assets to the Wind Down Trust).

---

[9]    Subject to review.

12.2    [Tax Returns.][10]  In accordance with the Plan, the Plan Administrator shall cause the filing of tax returns for the Wind Down Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). To the extent reasonably practicable, unless otherwise ordered by the Bankruptcy Court, the Plan Administrator or Wind Down Trustee shall, within [120 days] after the end of each calendar year, send to each Wind Down Trust Beneficiary a statement setting forth the Wind Down Trust Beneficiary's share or items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their U.S. federal income tax returns. Such a statement shall also be sent to each Wind Down Trust Beneficiary within [120 days] of the dissolution of the Wind Down Trust. The Wind Down Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Plan and Confirmation Order) to the Wind Down Trust Beneficiaries in accordance with their relative beneficial interests in the Wind Down Trust, as determined pursuant to this Agreement. The Plan Administrator also shall file (or cause to be filed) any other statements, returns or disclosure relating to the Wind Down Trust that are required by any governmental unit.

12.3    [Valuation of Wind Down Trust Assets.][11]  As soon as practicable after the Effective Date, the Plan Administrator (to the extent that he or she deems it necessary or appropriate in the reasonable exercise of his or her discretion taking into account whether the value of an asset is reasonably ascertainable due to its contingent nature) shall, in good faith, value the Wind Down Trust Assets as of the Effective Date, solely for U.S. federal income tax purposes, and shall apprise the Wind Down Trust Beneficiaries of such valuation (but the Wind Down Trust is not required to engage an expert to make such a valuation) for tax purposes. The valuation shall be used consistently by all parties (including the Debtors, the Plan Administrator, the Wind Down Trustee, and the Wind Down Trust Beneficiaries) for all U.S. federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Wind Down Trust Assets.

12.4    Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

12.5    Notices. All notices to be given to creditors may be given by electronic mail, first class mail, or may be delivered personally, at the addresses for such creditors appearing on the books kept by the Plan Administrator. Any notice or other communication that may be or is required to be given, served, or sent to the Plan Administrator or the Wind Down Trustee shall be in writing and shall be sent by registered or certified mail, return receipt requested, postage prepaid, or transmitted by hand delivery addressed as follows:

> If to the Plan Administrator:
> Todd R. Snyder, Plan Administrator
> 1251 Avenue of the Americas
> New York, NY 10020

---

[10]    Subject to review.

[11]    Subject to review.

Email: todd.snyder@psc.com

with a copy to counsel:
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attn.:  Christopher T. Greco, P.C., Elizabeth H. Jones, Jimmy Ryan
Email addresses:
cgreco@kirkland.com
elizabeth.jones@kirkland.com
jimmy.ryan@kirkland.com

If to the Wind Down Trustee:
JTC (Cayman) Limited, Wind Down Trustee
[Address]
Email: [•]

with a copy to counsel:
[                              ]

or to such other address as may from time to time be provided in written notice by the Plan Administrator.

12.6     Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the Cayman Islands; *provided, however*, that any issue involving, arising from or related to the Plan or Confirmation Order shall be subject to the Bankruptcy Code and applicable law.

12.7     Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

12.8     Particular Words. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

12.9     Execution. All funds in the Wind Down Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a creditor, and no creditor or any other Person can execute upon, garnish, or attach the Wind Down Trust Assets, the Wind Down Trustee, or the Plan Administrator in any manner or compel payment from the Wind Down Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

12.10     Amendment. This Agreement may be amended by the Wind Down Trustee with the consent of the Plan Administrator and the Advisory Board or by order of the courts of the Cayman Islands or the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

32

12.11    <u>No Waiver</u>. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

12.12    <u>No Relationship Created</u>. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

12.13    <u>Severability</u>. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

12.14    <u>Further Assurances</u>. The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

12.15    <u>Counterparts</u>. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

12.16    <u>Prior Discussions</u>. Notwithstanding anything to the contrary contained in this Agreement, all privilege, exculpation, release, indemnification, and other limitation on liability provisions in this Agreement, the Plan, and the Confirmation Order shall be applicable to any act or omission taken and information obtained by the Plan Administrator, Wind Down Trustee, and members of the Advisory Board in connection with the preparation for and negotiation of this Agreement prior to the execution of this Agreement.

12.17    <u>Jurisdiction of the Courts of the Cayman Islands.</u> Subject to <u>section 12.15</u> of this Agreement and the jurisdiction of the Bankruptcy Court with respect to the Plan and matters arising from or related to the Plan, the courts of the Cayman Islands shall otherwise have exclusive jurisdiction with respect to any question affecting the validity and construction of the Wind Down Trust and the parties to this Agreement hereby irrevocably agree that the courts of the Cayman Islands shall have exclusive jurisdiction in respect of any dispute, suit, action, arbitration or proceedings which may arise out of or in connection with this Agreement and which are outside the scope of the Bankruptcy Court's jurisdiction ("<u>Proceedings</u>") and the parties hereby waive any objection to Proceedings in the courts of the Cayman Islands on the grounds of venue or on the basis that the Proceedings have been brought in an inconvenient forum.

12.18    <u>Jurisdiction of the Bankruptcy Court</u>. The Bankruptcy Court shall have jurisdiction regarding the Plan and matters arising from or related to the Plan and any matter arising out of or in respect of chapter 11 of the Bankruptcy Code, including without limitation, matters related to Causes of Action and the determination of any disputes arising out of or related to the distribution of Wind Down Trust Assets in accordance with the Plan. The Parties expressly consent to the Bankruptcy Court or any other U.S. courts having jurisdiction over the applicable matter,

33

hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court or such other U.S. court abstains from exercising, or declines to exercise, jurisdiction, or is otherwise without jurisdiction over any matter then such matter will be within the jurisdiction of the courts of the Cayman Islands in accordance with section 12.14 of this Agreement.

34

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as a deed as of the day and year written above.

Executed as a deed by Terraform Labs Pte. Ltd.

By:_____

Name:_____

Title:_____

Executed as a deed by Terraform Labs Limited

By:_____

Name:_____

Title:_____

Executed as a deed by Todd R. Snyder, as Plan Administrator

By: _____

Name_____

Title:_____

35

Executed as a deed by JTC (Cayman) Limited, as Wind Down Trustee

By: _____

Name_____

Title:_____

36

**EXHIBIT A**

**Advisory Board Members**

**<u>Advisory Board Members</u>**

1.  Celsius Network LLC and affiliates, c/o Litigation Oversight Committee ("<u>LOC</u>"); the LOC has authorized BRIC as its representative on the Advisory Board and designated R Christian Wyatt to be its initial voting member

2.  Francisco Javier Reina Barragan

**EXHIBIT B**

**Plan Administrator Compensation**

**Plan Administrator Compensation**

| Plan Administrator | Compensation |
|---|---|
| Todd R. Snyder | Subject to Section 8.4 of the Wind Down Trust Agreement, in consideration for serving as the Plan Administrator, Mr. Snyder shall receive (i) a monthly fee of $100,000 (the "Monthly Fee") through and including the date on which Mr. Snyder ceases to serve in his capacity as Plan Administrator in accordance with the terms of the Wind-Down Trust Agreement; *provided*, *however*, that the Monthly Fee may be reduced or increased over time with the consent of the Advisory Board, which shall at least annually, commencing twelve (12) months following the Effective Date, review the Monthly Fee, in consultation with the Plan Administrator and, if applicable, reduce or increase the Monthly Fee to reflect a proportionate decrease or increase, as applicable, in required workload; (ii) an incentive fee in an amount equal to one-percent (1%) of all Net Assets Recovered[12] and distributed by the Wind-Down Trust to holders of Allowed General Unsecured Claims and Crypto Loss Claims, which, for the avoidance of doubt, shall be calculated based on any and all Net Recovered Assets the Wind-Down Trust distributes, regardless of whether such assets are known prior to the Effective Date (the "Distribution Incentive Fee"); (iii) a timing distribution fee for any and all Net Assets Recovered and distributed by the Wind Down Trust to holders of General Unsecured Claims and Crypto Loss Claims in an amount equal to (a) a 1.75% fee for any and all Net Assets Recovered and distributed by the Wind Down Trust within the first eighteen |

---

[12]   "Net Assets Recovered" shall mean the value of any assets reduced by the cost of recovering such assets that the Plan Administrator recovers after the Effective Date that are not expressly contemplated to be recovered under the Plan. For the avoidance of doubt, Net Assets Recovered shall not include, without limitation, the SEC Settlement Fund or the proceeds thereof, the Senior Claim Pool or the proceeds thereof, the Surplus Senior Claim Pool Cash, the Surplus Reserved Cash, or the Wind Down Reserve.

|  | (18) months following the Effective Date, (b) a 1.50% distribution fee for any and all Net Assets Recovered and distributed by the Wind Down Trust between month nineteen (19) and month thirty-six (36) following the Effective Date , and (c) a 1.25% distribution fee for any and all Net Assets Recovered and distributed by the Wind Down Trust between month thirty-seven (37) and month fifty-four (54) following the Effective Date; and (iv) reimbursement of all reasonable and documented out-of-pocket fees, costs, and expenses.<br><br>Mr. Snyder intends to retain Piper Sandler as financial advisor to support the Plan Administrator. Piper Sandler's compensation shall include a monthly fee of $225,000 and may include incentive compensation tied to specific targets. |
|---|---|

## EXHIBIT C

**Wind Down Trustee Compensation**

**Wind Down Trustee Compensation**

| Wind Down Trustee | Compensation |
|---|---|
| JTC (Cayman) Limited | JTC (Cayman) Limited shall receive a $15,000 initial set up fee plus an annual fee of $15,000 plus hourly compensation for time spent subject to certain triggers to be negotiated with the Advisory Board. |

## Exhibit A-1

**Redline of Amended Wind Down Trust Agreement**

## WIND DOWN TRUST AGREEMENT

This Wind Down Trust Agreement (as it may be amended, modified, supplemented, or restated from time to time, this "Agreement") dated as of [●], 2024, is made and entered into as a deed by and among the entities listed as "Debtors" on the signature pages hereto (each, a "Debtor"), [●]," and collectively the "Debtors"), JTC (Cayman) Limited, solely in [its] capacity as wind down trustee (the "Wind Down Trustee"), and [●]Todd R. Snyder, solely in his capacity as Plan Administrator for purposes of this Agreement (the "Plan Administrator," and together with the Debtors and the Wind Down Trustee, the "Parties"), and is executed in connection with and pursuant to the terms of the *Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited*, dated August 8, 2024 ([Docket No. 568)] (as it may be amended, modified, supplemented, or restated from time to time, the "Plan"), as approved and authorized by the Confirmation Order (as defined below).[1]

## RECITALS

WHEREAS, on January 21, 2024, the Debtor Terraform Labs Pte. Ltd. filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), on July 1, 2024, the Debtor Terraform Labs Limited filed a petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, on July 17, 2024, the Bankruptcy Court entered an order granting joint administration of the cases of Debtors Terraform Labs Pte. Ltd. and Terraform Labs Limited, and their chapter 11 cases are being jointly administered as *In re Terraform Labs Lte. Ltd., et al.,* Case No. 24-10070 (BLS);

WHEREAS, on February 29, 2024, the United States Trustee for Region 3 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee");[2]

WHEREAS, the Plan contemplates the establishment of a trust (the "Wind Down Trust") legally owned by the Wind Down Trustee, and that the Plan Administrator will be appointed to perform its duties in accordance with the Plan and this Agreement;

WHEREAS, the Plan provides that, on the Effective Date (as defined below), all Estate Assets (as defined below) of the Debtors will be transferred to and vest in the Wind Down Trust, and the Wind Down Trustee and Plan Administrator (as applicable) will, among other things, retain, preserve, liquidate, and distribute such assets to holders of Allowed Claims or Allowed Interests against the Debtors (such holders, the "Wind Down Trust Beneficiaries"), whether or not such Claims or Interests are Allowed as of the Effective Date;

[WHEREAS, the Debtors, the Plan Administrator, the Wind Down Trustee, and the Wind Down Beneficiaries intend to treat, solely for U.S. federal income tax purposes without affecting any other provision of this Agreement or the Plan, the transfer of the Estate Assets to the Wind

---

[1]    All capitalized terms used in this Agreement and not otherwise defined herein have the meanings ascribed to such defined terms in the Plan.

[2]    Docket No. 101.

Down Trust as a deemed transfer of the Estate Assets by the Debtors to the Wind Down Trust Beneficiaries on account of their Claims under the Plan, followed by a deemed transfer of Estate Assets by the Wind Down Trust Beneficiaries to the Wind Down Trust in exchange for beneficial interests herein;][3]

[WHEREAS, the Wind Down Trust is intended to qualify as a "liquidating trust" taxed as a "grantor trust" for U.S. federal income tax purposes, pursuant to sections 671 through 679 of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and the regulations thereunder, of which the Wind Down Trust Beneficiaries are the deemd owners and grantors for U.S. federal income tax purposes;][4]

WHEREAS on [●], 2024, the Bankruptcy Court entered an order ("Confirmation Order")[35] confirming the Plan, which became effective on [●] ("Effective Date");

WHEREAS, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan, this being the object of the Wind Down Trust; and

WHEREAS, on the Effective Date of the Plan, the Wind Down Trust shall be established, the Wind Down Trustee shall be appointed in accordance with the Plan, the Plan Administrator shall be appointed in accordance with the Plan, and the Wind Down Trustee and the Plan Administrator are willing to serve in such capacities, in each case upon the terms set forth in this Agreement and pursuant to the Plan, commencing as of the Effective Date;

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the parties contained in the Plan and herein, this deed hereby witnesses and the Parties agree and declare as follows:

### DECLARATION OF TRUST

The Debtors, the Plan Administrator, and the Wind Down Trustee enter into this Agreement to effectuate the distribution of the Estate Assets to the holders of Claims against the Debtors pursuant to the Plan and the Confirmation Order;

Pursuant to ~~section~~sections 5.5 and 5.18 of the Plan and section **Error! Unknown switch argument.**3.5 of this Agreement, all right, title, and interest in, under, and all assets of the Estates, including Contributed Third-Party Claims in accordance with section 3.4.3 of this Agreement (the "Estate Assets"), shall be absolutely and irrevocably transferred to the Wind Down Trust and to its successors in trust and its successors and assigns free and clear, and shall comprise Wind Down Trust Assets (as defined below) for all purposes;

TO HAVE AND TO HOLD unto the Wind Down Trustee; and

---

[3] Subject to review.

[4] Subject to review.

[35] Docket No. [●].

RLF1 31431646v.1RLF1 31523804v.1

IT IS HEREBY FURTHER COVENANTED AND DECLARED**,** that the Estate Assets and all other property hereafter acquired and/or held from time to time by the Wind Down Trustee under this Agreement and any proceeds thereof and earnings thereon (collectively, the "Wind Down Trust Assets") are to be held by the Wind Down Trustee on the terms of this Agreement to be applied on behalf of the Wind Down Trust by the Wind Down Trustee, solely at the direction of the Plan Administrator, on the terms and conditions set forth herein, in furtherance of the Wind Down Trust Purposes as set forth in section 3.2 below.

## ARTICLE I
## RECITALS, INTERPRETATION, AND CONSTRUCTION

1.1     Recitals. The Recitals are incorporated into and made terms of this Agreement.

1.2     Interpretation; Headings. All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.3     Construction of Agreement. This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.4     Conflict Among Plan Documents. In the event of any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern and control. In the event of any inconsistency between this Agreement, on the one hand, and the Confirmation Order, on the other hand, the Confirmation Order shall control and take precedence.

## ARTICLE II
## ACCEPTANCE OF POSITIONS; OBLIGATION TO PAY CLAIMS; FIDUCIARY
## STATUS

2.1     Acceptance of Plan Administrator. (a) [●]Todd R. Snyder hereby accepts appointment as the Plan Administrator; and (b) [●]Todd R. Snyder agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, other orders of the Bankruptcy Court, and applicable law.

2.2     Acceptance of Wind Down Trustee. (a) [●]JTC (Cayman) Limited hereby accepts appointment as the Wind Down Trustee; and (b) [●]JTC (Cayman) Limited agrees to observe and perform all duties and obligations imposed upon the Wind Down Trustee under the Plan, this Agreement, other orders of the Bankruptcy Court, the courts of the Cayman Islands and applicable law.

2.3     Fiduciary. The Plan Administrator and Wind Down Trustee shall perform their obligations consistent with the Plan, this Agreement, and applicable orders of the Bankruptcy Court and/or the courts of the Cayman Islands, as applicable. The Plan Administrator shall be the sole officer, director, or manager, as applicable, of each of the Debtors without the requirement of having to take any further action; *provided*, that, TFL shall have one director (the "Singapore Director") who is ordinarily resident in Singapore, and who shall also be a member of the Advisory Board, (as defined below), for the purpose of ensuring compliance with any corporate governance

<center>3</center>

and reporting requirements of TFL under Singapore law including, among other things, the holding of an annual general meeting and laying of financial statements at the annual general meeting (section 201 of the Singapore Companies Act 1967), the lodgment of annual returns (section 197 of the Singapore Companies Act 1967), any tax obligations of TFL under the Singapore Income Tax Act 1947 and the maintenance of registers of the company and lodging of documents as required under Singapore law. The Wind Down Trust shall also own substantially all the shares of the Debtors. The Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions in the Plan (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, apart from the Singapore Director, the authority, power, and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator or a representative of the Plan Administrator shall be appointed as the sole director and sole, officer, or manager of the Debtors, as applicable, and shall succeed to the powers of the Debtors' directors and, officers, and managers, as applicable. From and after the Effective Date, the Plan Administrator and the Wind Down Trustee shall be the sole representatives of, and shall act for, the Debtors. For the avoidance of doubt, the foregoing shall not limit the authority of the Debtors, the Plan Administrator, and the Wind Down Trust, as applicable, to continue the employment of any former director or officer, including pursuant to any transition services agreement entered into on or after the Effective Date.

## ARTICLE III
## ESTABLISHMENT OF TRUST

3.1     Creation and Name; Formation; Office

3.1.1     There is hereby created the Wind Down Trust, which is referred to in section 5 and certain other sections of in accordance with the Plan.   This Agreement shall become effective on the Effective Date. The Wind Down Trustee, solely at the direction of the Plan Administrator, may conduct the affairs of the Wind Down Trust under the name of the "Terraform Wind Down Trust."

3.1.2     It is the intention of the Plan Administrator and the Wind Down Trustee that Part VIII of the Trusts Act of the Cayman Islands ("STAR" and the "Trusts Act") applies to every trust, power and provision of the Wind Down Trust, that the trust formed hereby constitutes a STAR trust established under the law of the Cayman Islands and that this Agreement constitutes the governing instrument of the Wind Down Trust.  Promptly following execution of this Agreement and receipt of the Estate Assets, the Wind Down Trustee shall take any further action as is necessary to establish the Wind Down Trust in accordance with the law of the Cayman Islands.

3.1.3     The principal office of the Wind Down Trust, and such additional offices as the Wind Down Trustee, at the direction of the Plan Administrator, may determine to establish, shall be located at such place or places inside or outside the [Cayman Islands] as the Wind Down Trustee, at the direction of the Plan Administrator, may designate from time to time. Service of process upon the Wind Down Trust may be made by service upon the Wind Down Trustee.

3.2     Purpose of Trust. The Debtors, the Plan Administrator, and the Wind Down Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Wind

4

Down Trust for the primary purpose of collecting, holding, administering, distributing, and liquidating the Estate Assets for the benefit of the Wind Down Trust Beneficiaries, in accordance with the terms and conditions of this Agreement and the Plan, and to pay certain Allowed Claims and statutory fees, in each case to the extent required by the Plan. The objects in this <u>section 3.2</u> constituting the "Purposes" of the Wind Down Trust.

3.3     The Wind Down Trust shall retain all rights to commence and pursue, at the direction of the Plan Administrator, all Causes of Action <u>(including any Contributed Third-Party Claims)</u> that are not released under the Plan. The Plan Administrator and the Wind Down Trustee understand and agree that the Wind Down Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Wind Down Trust. The Plan Administrator shall administer the Wind Down <u>Trust</u>, subject to the terms hereof, the Plan, and the Confirmation Order. The Wind Down Trust shall be administered and implemented by the Plan Administrator and, where applicable, the Wind Down Trustee, <u>in consultation</u> with the ~~oversight of the~~ Advisory Board (as defined ~~herein~~<u>below</u>). The Wind Down Trustee shall be deemed a "representative" of the estate as contemplated by the U.S. Bankruptcy Code section 1123(b)(3)(B), and performance of certain services in connection with this Agreement shall be authorized by the execution of this Agreement to the extent not already authorized by the Plan or the Confirmation Order.

3.4     <u>Limitations on the Wind Down Trust.</u> For the avoidance of doubt, the Wind Down Trust and the Wind Down Trustee shall not take any actions without the prior written consent or direction of the Plan Administrator~~.~~ <u>unless required to take such action under the law of the Cayman Islands; *provided* that if such actions are required to be taken to comply with the laws of the Cayman Islands, the Wind Down Trustee shall provide the Plan Administrator with written advanced notice of such actions, and the Plan Administrator shall reserve all rights related thereto pursuant to this Agreement, the Plan, the Confirmation Order, and under applicable law.</u>

3.5     Transfer of Wind Down Trust Assets.

3.5.1     <u>Conveyance of Wind Down Trust Assets.</u> Pursuant to the Plan, the Debtors hereby grant, release, assign, transfer, convey, and deliver, on behalf of the Wind Down Trust Beneficiaries, the Estate Assets to the Wind Down Trust free and clear as of the Effective Date in trust to be held by the Wind Down Trustee in furtherance of the Purposes, which shall comprise "Wind Down Trust Assets" for all purposes and shall be administered and applied as specified in this Agreement and the Plan. The Debtors, from time to time, as and when reasonably requested by the Plan Administrator, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors shall take or cause to be taken such further action as the Plan Administrator may reasonably deem necessary or appropriate, to vest or perfect in the Wind Down Trust or confirm to the Wind Down Trustee title to and possession of the Wind Down Trust Assets. The transfer and delivery of the Wind Down Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax to the maximum extent permitted under Bankruptcy Code section 1146 <u>and the applicable law</u>. The Plan Administrator and Wind Down Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

5

3.5.2    <u>Title to Wind Down Trust Assets</u>. Pursuant to the Plan, all of the Debtors' right, title, and interest in and to the Wind Down Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Wind Down Trust on the Effective Date and shall comprise Wind Down Trust Assets for all purposes, free and clear of all liens, claims, encumbrances, and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Wind Down Trust Beneficiaries to establish the Wind Down Trust. The Wind Down Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Wind Down Trust Assets in the possession or control of third parties, pursue all Causes of Action, and pursue, assert, and exercise all rights of setoffs and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all defendants as to any Causes of Action or holders of Disputed Claims or Disputed Interests. Without limiting the generality of the foregoing, the Wind Down Trust, solely at the direction of the Plan Administrator, shall have the right to invoke Bankruptcy Code section 542 to pursue turnover of the Wind Down Trust Assets. On the Effective Date, the Wind Down Trust shall be substituted for the Debtors for all purposes with respect to the Wind Down Trust Assets and, solely at the direction of the Plan Administrator, the administration of Claims and Interests. To the extent any law or regulation prohibits the transfer of ownership of any of the Wind Down Trust Assets from the Debtors to the Wind Down Trust and such law is not superseded by the Bankruptcy Code, the Wind Down Trust's interest shall be a lien upon and security interest in such Wind Down Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in <u>section 3.2</u> of this Agreement, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. By executing this Agreement, the Wind Down Trustee on behalf of the Wind Down Trust hereby accepts all of such property as Wind Down Trust Assets, to be held in trust for the ~~Wind Down Trust Beneficiaries~~<u>Purposes</u>, subject to the terms of this Agreement and the Plan.

3.5.3    <u>Title to Contributed Third-Party Claims</u>. Upon the assignment, transfer, delivery, or conveyance of a Contributed Third-Party Claim to the Wind Down Trust through settlement, purchase, contribution, or otherwise, the right, title, and interest in and to the Contributed Third-Party Claims are automatically vested in the Wind Down Trust and shall comprise Wind Down Trust Assets for all purposes, free and clear of all liens, claims, encumbrances, and other interests.

3.6    <u>Capacity of Wind Down Trust</u>. The "Wind Down Trust" refers to the trust or trusts established under this Agreement and, where applicable, refers to the Wind Down Trustee acting in its capacity as trustee of the Wind Down Trust. Any reference in any document to the Wind Down Trust, or any action of the Wind Down Trust which presumes legal personhood shall be construed as referring to the Wind Down Trustee solely in its capacity as trustee of the Wind Down Trust. Subject to the foregoing, where applicable or appropriate in accordance with the laws of any jurisdiction the Wind Down Trust may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters, and other U.S. state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

3.7    <u>Cooperation of Debtors In Effecting Transfer of Assets</u>. The Debtors and their professionals shall and shall direct their professionals to use commercially reasonable efforts to cooperate with the Plan Administrator, the Wind Down Trustee, and the Wind Down Trust and their respective professionals in effecting the transition from the Debtors to the Wind Down Trust

RLF1 31431646v.1RLF1 31523804v.1

of administration of the Wind Down Trust Assets, of creditors' Claims and, solely to the extent of payment in full of Allowed Claims at any Estate, of holders' Interests. Upon the occurrence of the Effective Date, the Debtors' books and records shall be transferred to the Wind Down Trust, which shall continue to preserve all financial books and records, emails, and other financial documents relating to the Debtors' business that are currently in the Debtors' possession.

3.8 <u>No Retention of Excess Cash</u>. Notwithstanding anything ~~in this Agreement~~ to the contrary <u>contained in this Agreement</u>, under no circumstances shall the Wind Down Trust or the Wind Down Trustee retain cash or cash equivalents in excess of a reasonable amount to meet claims, including Disputed claims, expenses, and contingent liabilities or to maintain the value of the Wind Down Trust Assets during administration of the Wind Down Trust.

## ARTICLE IV
## GENERAL POWERS, RIGHTS, AND OBLIGATIONS ~~OF THE PLAN ADMINISTRATOR~~

4.1 <u>Rights, Powers, and Privileges of Plan Administrator Generally</u>. Effective as of the Effective Date, the Plan Administrator is appointed under the Plan for purposes of implementing the terms and conditions of the Plan with respect to (~~i~~a) effectuating the transaction beneficial and necessary to wind down the Debtors, (~~ii~~b) administration of, and distributions with respect to, Claims against and/or Interests in the Debtors, and (~~iii~~c) such other matters agreed to by the Debtors and Plan Administrator in accordance with the terms of the Plan (collectively, the "<u>Plan Administrator Responsibilities</u>"), in each case, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Plan Administrator is hereby appointed to direct the Wind Down Trustee to make all disbursements and distributions under the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Debtors shall be managed, administered, and wound down by the Plan Administrator in accordance with the terms of the Plan, and ~~subject to the oversight of~~<u>in consultation with</u> the Advisory Board established pursuant to this Agreement (the "<u>Advisory Board</u>") as set forth in this Agreement, and the Plan Administrator shall have full authority to administer the provisions of the Plan, subject to the terms and conditions of this Agreement, the Plan, and the Confirmation Order. The Plan Administrator shall be deemed to be a judicial substitute and estate representative for the Debtors as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal to which any of the Debtors is a party. The Plan Administrator shall be deemed a "representative" of the estate as contemplated by Bankruptcy Code section 1123(b)(3)(B), and performance of certain services in connection with this Agreement shall be authorized by the execution of this Agreement to the extent not already authorized by the Plan or the Confirmation Order.

4.1.1 <u>Power to Contract</u>. In furtherance of the purpose of the Debtors, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Plan Administrator, ~~subject to the oversight of~~<u>in consultation with</u> the Advisory Board, shall have the right and power to cause the Debtors or the Wind Down ~~Trust~~<u>Trustee</u> to enter into any covenants or agreements binding the Debtors or the Wind Down ~~Trust~~<u>Trustee</u>, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Plan Administrator to be consistent with and advisable in furthering the purpose of the Plan or this Agreement.

7

4.1.2    Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking or refraining to take, or directing the Wind Down Trustee to take or refrain from taking, any action on behalf of the Debtors or Wind Down Trust that, based upon the advice of counsel or other professionals, the Plan Administrator determines he is obligated to take or to refrain from taking in the performance of any duty under the Plan, Confirmation Order, or this Agreement, ~~subject to the oversight of~~in consultation with the Advisory Board, and the terms of the Plan, the Confirmation Order, and this Agreement.

4.2    Advisory Board Member Designation. If a conflict arises that prevents the involvement of the Plan Administrator from performing his duties, the Advisory Board shall designate a member of the Advisory Board to act as the Plan Administrator solely with respect to such conflict; *provided, however*, that if the conflict relates to a material Cause of Action, an independent Plan Administrator may be appointed upon the unanimous consent of the Advisory Board solely with respect to such material Cause of Action. During such time as an Advisory Board member is acting as Plan Administrator, such member shall not be entitled to vote on matters requiring Advisory Board ~~approval~~consent and the voting provisions set forth in section 7.1 hereof shall apply.

4.3    Powers of Plan Administrator. The Plan Administrator shall provide the post-Effective Date administration, wind down, dissolution, and liquidation services related to the Plan Administrator Responsibilities that are necessary, required, desirable, or advisable to effectuate the terms and conditions of the Plan and the wind down of the Debtors, in consultation with the Advisory Board as set forth in this Agreement. Subject to the consent~~, approval, oversight and direction of~~ the Advisory Board, as indicated in this section 4.3 and as set forth in this Agreement (each such consent not to be unreasonably withheld), the Plan Administrator shall have all duties, powers, and rights set forth herein, in the Plan, and in the Confirmation Order, including, but not limited to, the authority to do any of the following or, where applicable to procure or direct that the Wind Down Trustee does so:

4.3.1    implement the Wind Down Trust, and, subject to the consent of the Advisory Board, direct the Wind Down Trustee to make distributions contemplated by the Plan;

4.3.2    subject to the consent of the Advisory Board, and other than with respect to the assets described in section 4.7 of this Agreement, marshal, market for sale, sell pursuant to section 363 of the Bankruptcy Code, and wind down of any of the Debtors' assets constituting Wind Down Trust Assets;

4.3.3    oversee the accounts of the Debtors and the Wind Down Trust and the wind down and dissolution of the Debtors and the Wind Down Trust;

4.3.4    other than with respect to the assets described in section 4.7 of this Agreement, receive, maintain, conserve, supervise, and, subject to the consent of the Advisory Board, prosecute, collect, settle, manage, invest, protect, liquidate, and where appropriate, cause the Wind Down Trust to abandon the Wind Down Trust Assets, including causing the Wind Down Trust to invest any moneys held as Wind Down Trust Assets;

8

4.3.5    subject to the consent of the Advisory Board, open and maintain or direct the Wind Down Trustee to open and maintain bank accounts on behalf of or in the name of the Wind Down Trust;

4.3.6    subject to the consent of the Advisory Board, enter into any material agreement or execute any material document or material instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all material obligations thereunder;

4.3.7 collect and liquidate all Wind Down Trust Assets, including the sale of any Wind Down Trust Assets;

4.3.7    4.3.8 protect and enforce the rights to the Wind Down Trust Assets (including any Causes of Action and Contributed Third-Party Claims) vested in the Wind Down Trust by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

4.3.8    subject to the consent of the Advisory Board, prepare, file, and prosecute any material and necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator;

4.3.9    subject to the consent of the Advisory Board, investigate any Wind Down Trust Assets, and any other potential Causes of Action and Contributed Third-Party Claims;

4.3.10    subject to the consent of the Advisory Board, offer and provide incentives to any Contributing Claimants, including an increase of up to 10% of Allowed Claims of all Contributing Claimants;

4.3.11    subject to the consent of the Advisory Board, review, reconcile, compromise, settle, object to, seek to subordinate, or prosecute Claims or Interests of any kind, including indemnification claims;

4.3.12    seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

4.3.13    in accordance with sections 4.9, 4.10, and 4.12 of this Agreement, retain, or direct the Wind Down Trustee to retain, professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to this Agreement and pay, or direct the Wind Down Trustee to pay, as applicable, the reasonable compensation thereof;

4.3.14    subject to the consent of the Advisory Board, pay all lawful fees, expenses, debts, charges, taxes, and other liabilities, and make all other payments relating to the Wind Down Trust Assets, solely out of Wind Down Trust Assets;

4.3.15    maintain the books and records and accounts of the Debtors and the Wind Down Trust;

4.3.16    ~~4.3.15~~ subject to the consent of the Advisory Board and the terms set forth in section 4.5 of this Agreement, prosecute and settle the Causes of Action, including, without limitation, the Contributed Third-Party Claims;

4.3.17    ~~4.3.16~~ subject to the consent of the Advisory Board and the terms set forth in section 4.5 of this Agreement, review, reconcile, pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, resolve, or elect not to pursue all Causes of Action and Contributed Third-Party Claims, or direct the Wind Down Trustee to do the same, as applicable;

4.3.18    ~~4.3.17~~ subject to the consent of the Advisory Board and the terms set forth in section 4.5 of this Agreement, acquire, including, without limitation, through purchase, settlement, or contribution, litigation and other claims, including, without limitation, Contributed Third-Party Claims, and prosecute such claims;

4.3.19    ~~4.3.18~~ subject to the consent of the Advisory Board, review and compel, or direct the Wind Down Trustee to compel, as applicable, turnover of the Debtors or the Wind Down Trust's property;

4.3.20    ~~4.3.19~~ subject to the consent of the Advisory Board, calculate and direct the Wind Down Trustee to make all Distributions to the holders of Allowed Claims against each Debtor and, solely to the extent of payment in full of Allowed Claims, to holders of Allowed Interests, as provided for in, or contemplated by, the Plan and this Agreement;

4.3.21    ~~4.3.20~~ subject to the consent of the Advisory Board, establish, administer, adjust, and maintain the Wind Down Reserve;

4.3.22    ~~4.3.21~~ determine, from time to time, whether the amounts available in the Wind Down Reserve are in excess of the amount necessary to satisfy the purpose for which such reserve was established and amend, modify, or supplement the Wind Down Budget accordingly. ~~If~~ Subject to the consent of the Advisory Board, if the Plan Administrator determines that a surplus exists in the Wind Down Reserve as of the date of such determination, the Wind Down Trustee, solely at the direction of the Plan Administrator, may allocate such Surplus Reserved Cash pursuant to the Waterfall; *provided*, that the amount reserved on account of the D&O Indemnification Obligations shall diminish only as payments are made on account of the D&O Indemnification Obligations;

4.3.23    ~~4.3.22~~ determine, from time to time, whether the amounts available in the Senior Claim Pool are in excess of the amount necessary to pay holders of Allowed Senior Claims, plus any such Disputed Claims until final Allowance or Disallowance. ~~If~~ Subject to the consent of the Advisory Board, if the Plan Administrator determines that a surplus exists in the Senior Claim Pool as of the date of such determination, the Wind Down Trustee, solely at the direction of the Plan Administrator, may allocate the Surplus Senior Claim Pool Cash pursuant to the Waterfall;

4.3.24    ~~4.3.23~~ withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld

10

from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

4.3.25    ~~4.3.24~~ in reliance upon the Debtors' Schedules, the official Claims Register maintained in the Chapter 11 Cases and the Debtors' filed lists of equity security holders, review, and where appropriate and subject to the consent of the Advisory Board, direct the Wind Down Trustee to allow or object to Claims and (if applicable) Interests, and supervise and administer the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind Down Trust;

4.3.26    ~~4.3.25~~ make all tax withholdings, file tax information returns, file and prosecute tax refunds claims, make tax elections by and on behalf of the Wind Down Trust, and file tax returns for the Wind Down Trust pursuant to and in accordance with the Plan, and pay taxes, if any, payable for and on behalf of the Wind Down Trust; *provided, however*, that notwithstanding any other provision of this Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

4.3.27    ~~4.3.26~~ subject to the consent of the Advisory Board, abandon or donate to a charitable organization qualifying under IRC section 501(c)(3) any Wind Down Trust Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

4.3.28    ~~4.3.27~~ seek, or direct the Wind Down Trustee to seek, a determination of tax liability or refund under Bankruptcy Code section 505;

4.3.29    ~~4.3.28~~ establish, or direct the Wind Down Trustee to establish, as applicable, reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind Down Trust as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind Down Trust;

4.3.30    ~~4.3.29~~ subject to the consent of the Advisory Board, pay Wind Down Trust expenses;

4.3.31    if the Plan Administrator deems appropriate, subject to the consent of the Advisory Board, to the extent necessary, seek to establish additional bar date(s) for filing proofs of Claims in any Debtor or otherwise to determine the holders and extent of Allowed Claims in any Debtor;

4.3.32    ~~4.3.30~~ purchase and carry all insurance policies that the Plan Administrator deems reasonably necessary or advisable and ~~to~~ pay all associated insurance premiums and costs;

4.3.33    ~~4.3.31~~ undertake all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind Down Trust's, or the

11

Plan Administrator's duties under the Plan, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

4.3.34    4.3.32  subject to the consent of the Advisory Board, retain, terminate, appoint, hire, or otherwise employees, personnel, management, and directors at any of the Debtors to the extent necessary to carry out the purposes of this Agreement and the Plan, including, without limitation, to address any disputes between the Debtors;

4.3.35    4.3.33 subject to the consent of the Advisory Board, develop and use creditor communication procedures, including a creditor portal (if necessary);

4.3.36    4.3.34 exercise, implement, enforce, and discharge all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

4.3.37    [in the event that the Plan Administrator determines that the Wind Down Trust Beneficiaries or the Wind Down Trust may, will, or have become subject to different tax consequences than those described in the Plan, take such actions that will, or are intended to, address, alleviate or reduce (to the greatest extent possible) such different tax consequences;][6]

4.3.38    [send annually to each known Wind Down Trust Beneficiary a separate statement stating the Wind Down Trust Beneficiary's share of income, gain, loss, deduction, or credit and instructing all such Wind Down Trust Beneficiaries to report such items on their U.S. federal income tax returns;][7]

4.3.39    close the Chapter 11 Cases; and

4.3.40    4.3.35 take all other actions consistent with the provisions of the Plan and this Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind Down Trust, subject to compliance with the Wind Down Budget.

4.4    Wind Down Trustee's Powers. Subject to this Agreement and the rights and powers of the Plan Administrator and/or the Advisory Board, the Wind Down Trustee has all the powers in relation to the Wind Down Trust and the Wind Down Trust Assets that it is legally possible for a natural person, corporation or trustee to have, including without limitation, any and all powers in section 4.3 of this Agreement and any such other powers as are necessary to give effect to the Purposes and this Agreement.

4.5    4.4 Exclusive Authority to Pursue Causes of Action. Subject to the approvalconsent of the Advisory Board (such consent not to be unreasonably withheld) and in compliance with the Wind Down Budget, the Plan Administrator shall have the exclusive right, power, and interest to review, reconcile, enforce, collect, compromise, settle, or elect not to pursue the Causes of Action, including, without limitation, the Contributed Third-PartyThird-Party

---

[6]    Subject to review.

[7]    Subject to review.

Claims, or direct the Wind Down Trustee to do the same, as applicable, on behalf of the Wind Down Trust; *provided that within the sixty (60) days following the Effective Date, the Plan Administrator shall establish a process, in his sole discretion, to analyze any potential causes of action or otherwise that may be approaching the applicable statute of limitation; provided further if the Plan Administrator reasonably believes, upon advice of counsel, that pursuing a Cause of Action would be required to comply with his fiduciary duties, the Plan Administrator may pursue such Cause of Action; provided, further, however, if the Plan Administrator determines to pursue such Cause of Action to comply with his fiduciary duties, the Plan Administrator shall provide the Advisory Board with as much relevant information concerning the basis for pursuing such Cause of Action as is reasonably practicable under the circumstances and seek the Advisory Board's consent; provided, further, however that if the Advisory Board fails to consent prior to forty-eight (48) hours before the applicable statute of limitation, the Plan Administrator may pursue such Cause of Action without Advisory Board consent*. The Plan Administrator and the Wind Down Trustee shall be the sole representatives of the Estates under Bankruptcy Code section 1123(b)(3) with respect to the Causes of Action. The Wind Down Trust shall be vested with and entitled to assert, solely at the direction of the Plan Administrator, all setoffs and defenses of the Debtors or the Wind Down Trust and the Contributed Third-Party Claimants to any counterclaims that may be asserted by any defendant with respect to any Cause of Action or Contributed Third-Party Claim, as applicable. The Wind Down Trust shall be vested with and entitled to assert, solely at the direction of the Plan Administrator, all of the Debtors' and the Estates' rights with respect to any such counterclaims, under Bankruptcy Code section 558. In accordance with the Plan, all costs and expenses of pursuing the Causes of Action and the Contributed Third-Party Claims shall be satisfied first from the Wind Down Trust Assets, and all other expenses of the Wind Down Trust shall be paid or reserved for, before any proceeds of Causes of Action or Contributed Third-Party Claims are distributed. For the avoidance of doubt, all evidentiary privileges of the Debtors and/or the Creditors' Committee of any type or nature whatsoever, including the Debtors' attorney-client privilege, the work product privilege, and any other applicable evidentiary privileges of the Debtors, shall and shall be deemed to be assigned by the Debtors and the Creditors' Committee and shall vest in the Wind Down Trust as of the Effective Date and be property of the Wind Down Trustee and Plan Administrator.

4.6    4.5 Authority to Enter Into Settlement Agreements. The Notwithstanding any other provision of this Agreement, including section 4.3.4, the Plan Administrator shall have the exclusive right to enter into settlements, or direct the Wind Down Trustee to enter into settlements, as applicable, regarding Claims, Causes of Action, and Contributed Third-Party Claims without requiring court approval, subject to gaining consent of the majority approval fromof the Advisory Board for settlement of net proceeds valued in excess of $[_____]1,000,000.

4.7    4.6 Abandonment. If, in the Plan Administrator's reasonable judgment, any non-cash Wind Down Trust Assets cannot be sold in a commercially reasonable manner or the Plan Administrator believes in good faith that such property has inconsequential value, the Plan Administrator shall have the right to direct the Wind Down Trustee to cause the Wind Down Trust to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization.

4.8    4.7 Responsibility for Administration of Claims. From and after the Effective Date, the Wind Down Trustee shall become responsible for, solely at the direction of the Plan Administrator, administering and paying Distributions to the holders of Allowed Claims and (if applicable) Allowed Interests. The Wind Down Trustee, solely at the direction of the Plan Administrator, shall have the exclusive right to object to the allowance of any Claim or Interest on any ground, to file, withdraw, or litigate to judgment objections to Claims or Interests, to settle or compromise any Disputed Claims or Disputed Interests without any further notice to or action, order, or approval by the Bankruptcy Court, and to assert all defenses of the Debtors and their Estates; *provided, however*, that the Plan Administrator must obtain Advisory Board consent if the Plan Administrator determines not to object to any Claim or Interest that exceeds $1,000,000.00. The Wind Down Trustee shall also be entitled to assert, solely at the direction of the Plan Administrator, all of the Debtors' and the Estates' rights under, without limitation, Bankruptcy Code section 558. The ~~Wind Down Debtor~~Wind Down Trustee, solely at the direction of the Plan Administrator, may also seek estimation of any Claims under and subject to Bankruptcy Code section 502(c).

4.9    4.8 Agents and Professionals. The Plan Administrator and the Wind Down Trustee may, subject to the ~~approval~~consent of the Advisory Board ~~and in compliance with the Wind Down Budget~~, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals (each a "Professional," and collectively, the "Professionals") the Plan Administrator or the Wind Down Trustee believes have qualifications necessary to assist in the administration of the Wind Down Trust, including professionals previously retained by the Debtors or the Committee; *provided* that, to the extent the Plan Administrator or the Wind Down Trustee decide to consult with or retain a Professional in accordance with this section 4.9, all payment of Professional fees and expenses shall be in compliance with the applicable Budget (as defined below); *provided further* that during the Interim Period (as defined below), all Professional fees and expenses shall not exceed an amount equal to $[●] per month; *provided further* that following the Interim Period, payment of all such Professional fees and expenses shall not exceed fifteen (15%) of the projected Professional fees and expenses as set forth in the applicable Budget, including the Initial Budget, without the consent of the majority of the Advisory Board. For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Plan Administrator or Wind Down Trustee from engaging, or, as applicable, directing the Wind Down Trustee to engage, counsel or other professionals, including the Plan Administrator himself, to do work for the Wind Down Trust, *provided* that each such engagement shall be ~~approved by the Advisory Board and be~~ in compliance with the ~~Wind Down~~applicable Budget(s). The Plan Administrator may direct the payment by the Wind Down Trustee of the reasonable salaries, fees, and expenses of such Persons out of the Wind Down Trust Assets in the ordinary course of business.

4.10    4.9 Maintenance and Disposition of Wind Down Trust's Records. The Plan Administrator and the Wind Down Trustee shall maintain accurate records of the administration of the Wind Down Trust Assets, including receipts and disbursements and other activity of the Wind Down Trust. The Plan Administrator may engage a claims agent to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Wind Down Trust. To the extent of any Unsecured Claims reflected thereon, the Claims Register may serve as the Plan Administrator's register of beneficial interests held by creditors. The Plan Administrator shall be provided with originals or copies of or access to all documents

14

and business records of the Debtors that are in the possession of the Debtors and reasonably necessary for the disposition of the Wind Down Trust Assets and objections to Claims or (if applicable) Interests except, in each case, to the extent necessary to: (~~i~~a) ensure compliance with any applicable law or an order of the Bankruptcy Court; (~~ii~~b) preserve any applicable privilege (including the attorney-client privilege); or (~~iii~~c) comply with any contractual confidentiality obligations. The Debtors and the Wind Down Trust shall use commercially reasonable efforts to cooperate with the Plan Administrator in connection with the Plan Administrator's investigation and prosecution of Causes of Action, Contributed Third-Party Claims, and objections to Claims and Interests, including with respect to providing evidence and information as reasonably requested by the Plan Administrator. Nothing in the Plan or the Confirmation Order shall affect the obligations of the Debtors, the Wind Down Trust, or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

4.11    ~~4.10~~ Reporting Requirements. The Plan Administrator shall provide the Advisory Board the information and reports they may reasonably request concerning the Wind Down Trust's administration. If ~~instructed~~requested by the Advisory Board, the Plan Administrator shall prepare and submit individual budgets to the Advisory Board ~~for approval a budget~~with respect to certain matters in the Advisory Board's discretion in such detail as is reasonably requested. The Plan Administrator shall file post-confirmation reports with the Bankruptcy Court.

4.12    Quarterly Budgets. Notwithstanding anything to the contrary contained in this Agreement, within thirty (30) days following the Effective Date, the Plan Administrator shall cause to be prepared a budget that covers the period that commences on the date that is thirty-one (31) days following the Effective Date through and including the date that is ninety (90) days following the Effective Date (such period, the "Initial Reporting Period"), which shall include, among other things, a line item for projected Professional fees and expenses the Plan Administrator and the Wind Down Trustee are expected to incur through Initial Reporting Period (such budget, the "Initial Budget"). The period from the Effective Date through and including the date on which the Advisory Board approves the Initial Budget shall be referred to as the "Interim Period." Following the Initial Reporting Period and commencing on the first fiscal quarter thereafter, the Plan Administrator shall cause to be prepared a budget every ninety (90) days (such period, the "Quarterly Reporting Period," and such budgets the "Quarterly Budgets," and together with the Initial Budget and the Wind Down Budget, the "Budgets"), which shall likewise include, among other things, a line item for projected Professional fees and expenses the Plan Administrator and the Wind Down Trustee are expected to incur for the applicable Quarterly Reporting Period. For the avoidance of doubt, all Budgets shall be approved with the consent of the majority of the Advisory Board (such consent not to be unreasonably withheld).

4.13    ~~4.11~~ Crypto Loss Claim Procedures. The Plan Administrator shall develop the Crypto Loss Claim Procedures with the consent of the majority ~~approval~~ of the Advisory Board and shall file the Crypto Loss Claim Procedures Motion no later than sixty (60) days after the Effective Date; *provided*, *however*, that such deadline may be extended with the consent of the majority ~~approval~~ of the Advisory Board.

4.14    Insurance. The Plan Administrator shall be authorized to obtain all reasonably necessary insurance coverage subject to compliance with the Wind Down Budget and shall be reimbursed pursuant to section 4.15 hereof.

4.15    4.12 Compensation of Plan Administrator and Costs of Administration. The Plan Administrator shall receive fair and reasonable compensation for his services in accordance with the terms and conditions of the Plan and this Agreement, which shall be a charge against and paid out of the Wind Down Trust Assets. All costs, expenses, and obligations incurred by the Plan Administrator (or professionals who may be employed by the Plan Administrator in administering the Wind Down Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto), including, for the avoidance of doubt, any insurance policy obtained by the Plan Administrator in connection with his services, shall be paid by the Wind Down Trustee from the Wind Down Trust Assets prior to any distribution to holders of Allowed Claims or Allowed Interests. The terms of the compensation of the Plan Administrator are set forth on **Exhibit B** hereto (such compensation, the "Plan Administrator Compensation").

**ARTICLE V**
**DISTRIBUTIONS**

5.1    Reserves; Pooling of Reserved Funds. Before any distribution can be made to any holders of Allowed Claims and (if applicable) Allowed Interests, the Plan Administrator shall, in his or her reasonable discretion, direct the Wind Down Trustee to establish the Wind Down Reserve, the Fee Escrow Account, and any other reserves in an amount sufficient to meet any and all fees owed to the U.S. Trustee, to the extent such reserves and/or accounts have not already been established and transferred to the Wind Down Trust. On the Effective Date, the Plan Administrator shall, in his or her reasonable discretion, direct the Wind Down Trustee to establish the SEC Settlement Fund, the Senior Claim Pool, the GUC Pool, and the Crypto Loss Claim Pool, to the extent such funds and/or pools have not already been established and transferred to the Wind Down Trust. For the avoidance of doubt, the Plan Administrator may direct the Wind Down Trustee to withhold any distribution pending the Plan Administrator's determination of whether to object to any Claim or Interest. Any such withheld distribution shall become part of the Senior Claim Pool, GUC Pool, or Crypto Loss Claim Pool, as applicable, and shall be distributed to the appropriate claimholder after a decision is made not to object to the pertinent Claim or Interest, or the Claim or Interest becomes Allowed. The Wind Down Trustee need not maintain the Wind Down Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Wind Down Trust; *provided*, *however*, that the Wind Down Trustee shall treat all such reserved funds as being held in a segregated manner in its books and records, by use of book entries, subledgers, or other means of recognizing the separateness of non-consolidated non-consolidated estates, such that the Wind Down Trustee will be able to account for all distributions under the Plan separately for each Debtor, as expressly contemplated by the Plan.

5.2    Plan Distributions in General. Except as otherwise provided in the Plan, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the applicable register or in the Debtors' records as of the date of any such distribution (as applicable), including the address set forth in any Proof of Claim filed by that Holder.

16

5.3     Record Date of Distributions. On the Distribution Record Date, the various transfer registers for each Class of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any Claims or Interests. The Disbursing Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

5.4     Tax Identification Numbers. The Wind Down Trustee may require any creditor to furnish its taxpayer identification number as assigned by the U.S. Internal Revenue Service (and/or equivalent taxing authority in any applicable jurisdiction), including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, as a prerequisite to receiving any distribution under the Plan or this Agreement. If a creditor does not timely provide the Wind Down Trustee or Plan Administrator with its taxpayer identification number in the manner and by the deadline established by the Wind Down Trustee, Plan Administrator and/or the Plan, the creditor shall be deemed to have forfeited its right to any current, reserved or future distributions provided for under the Plan and such creditor's Claim or Interest shall be disallowed and expunged without further order of the Bankruptcy Court. Any such forfeited distribution shall be deemed to have reverted back to the Wind Down Trust for all purposes, including for distributions to other holders of Allowed Claims or Allowed Interests (as applicable) against the Debtors, notwithstanding any escheat, abandoned, or unclaimed property law of any jurisdiction to the contrary.

5.5     AEOI. Notwithstanding any other clause of this Deed, in order to comply with AEOI (as defined below), the Wind Down Trustee shall, in consultation with the Plan Administrator, be entitled to release and/or disclose on behalf of the Wind Down Trust to the Cayman Islands Tax Information Authority or equivalent authority and any other foreign government body as required by AEOI, any information in its or its agents' or delegates' possession regarding a Wind Down Trust Beneficiary including, without limitation, financial information concerning the Wind Down Trust Beneficiary's interest in the Wind Down Trust, and any information relating to any shareholders, principals, partners, beneficial owners (direct or indirect) or controlling persons (direct or indirect) of such person. The Wind Down Trustee may, in consultation with the Plan Administrator, also authorize any third party agent, including but not limited to, the Plan Administrator, to release and/or disclose such information on behalf of the Wind Down Trust. In order to comply with AEOI and, if necessary, to reduce or eliminate any risk that the Wind Down Trust or the Wind Down Trust Beneficiaries are subject to withholding taxes pursuant to AEOI or incur any costs or liabilities associated with AEOI, the Wind Down Trustee may, in consultation with the Plan Administrator deduct from, or hold back any proceeds or distributions in order to comply with any requirement to apply and collect withholding tax pursuant to AEOI or ensure that any AEOI related costs, debts, expenses, obligations or liabilities (whether external, or internal, to the Wind Down Trust) are recovered from the beneficiary(s) whose action or inaction (directly or indirectly) gave rise or contributed to such costs or liabilities.

5.6       AEOI means one or more of (a) sections 1471 to 1474 of the US Internal Revenue Code of 1986 and any associated legislation, regulations or guidance, commonly referred to as the US Foreign Account Tax Compliance Act, the Common Reporting Standard ("CRS") issued by the Organization for Economic Cooperation and Development, or similar legislation, regulations or guidance enacted in any other jurisdiction which seeks to implement equivalent tax reporting and/or withholding tax regimes; (b) any intergovernmental agreement, treaty or any other arrangement between the Cayman Islands and the US or any other jurisdiction (including between any government bodies in each relevant jurisdiction), entered into to facilitate, implement, comply with or supplement the legislation, regulations or guidance described in this section; and any legislation, regulations or guidance implemented in the Cayman Islands to give effect to the matters outlined in this section.

5.7       Anti-Money Laundering Regulations. As part of the Wind Down Trustee's and the Plan Administrator's responsibility for the prevention of money laundering, the Wind Down Trustee, together with the Plan Administrator, may require detailed verification of the identity of any Wind Down Trust Beneficiary, or any other recipient of a payment or distribution from the Wind Down Trust and/or any contributor to the Wind Down Trust's assets. The Trustee, together with the Plan Administrator, may request such information as is necessary to verify the identity of such person or persons and the source of their funds or wealth (where applicable) in accordance with the applicable anti-money laundering regulations in place in the Cayman Islands. In the event of delay or failure by such person to produce any information required for verification purposes, the Wind Down Trustee or Plan Administrator may refuse to make any payment unless and until the requisite information has been provided.

5.8       5.5  Unclaimed and Undeliverable Distributions. If any distribution to a creditor is returned to the Wind Down Trustee as undeliverable and/or otherwise remains unclaimed, no further Plan Distributions to such creditor shall be made unless and until the creditor claims the distribution(s) by timely notifying the Wind Down Trustee and the Plan Administrator in writing of any information necessary to make the distribution to the creditor in accordance with this Agreement, the Plan, and applicable law, including such creditor's then-current address or taxpayer identification number. If a creditor timely provides the Wind Down Trustee and the Plan Administrator the necessary information within the period specified in section 6.12 of the Plan, all missed distributions shall be made to the creditor as soon as is practicable, without interest. After the passage of the deadline set forth in section 6.12 of the Plan, such distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and all title to and beneficial interest in such undeliverable Distribution shall revert to or remain in the Wind Down Trust automatically and without any need for further order by the Bankruptcy Court, notwithstanding any escheat, abandoned, or unclaimed property laws of any jurisdiction to the contrary, and shall be distributed in accordance with this Article V and the Plan. For the avoidance of doubt, undeliverable or unclaimed Plan distributions shall be administered in accordance with section 6.12 of the Plan as supplemented hereby.

5.9       5.6  No Responsibility to Attempt to Locate Creditors. The Plan Administrator may, in his sole discretion, attempt to determine a creditor's current address or otherwise locate a creditor, but nothing in this Agreement or the Plan shall require the Plan Administrator to do so.

5.10     5.7 Disallowance of Claims and Interests; Cancellation of Corresponding Beneficial Interests. All Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Wind Down Trust for all purposes (including, but not limited to, for distribution to holders of other Allowed Claims or Allowed Interests, as applicable, against the Debtors) pursuant to section 6.12 of the Plan shall be deemed disallowed and expunged without further action by the Wind Down Trustee or Plan Administrator and without further order of the Bankruptcy Court, and the corresponding interests of any creditor holding such disallowed Claims or Interests shall be deemed canceled. The creditor with respect to any such disallowed Claim or Interest shall no longer have any right, claim, or interest in or to any distributions in respect of such Claim or Interest, and further, such creditor is forever barred, estopped, and enjoined from receiving any distributions under the Plan or this Agreement and from asserting such disallowed Claim or Interest against the Wind Down Trust, the Wind Down Trustee, or Plan Administrator.

5.11     5.8 Inapplicability of Escheat, Abandoned, or Unclaimed Property Laws. Unclaimed property held by the Wind Down Trust shall not be subject to the escheat, abandoned, or unclaimed property laws of the Cayman Islands, the United States, any U.S. state, or any other local or foreign governmental unit.

5.12     5.9 Delivery of Distributions. Subject to the terms of this Agreement, the Plan Administrator shall cause the Wind Down Trustee to make Distributions to creditors in the manner provided in the Plan.

5.13     Timing of Distributions and Limitations on Investment of Undistributed Cash. The Plan Administrator or the Wind Down Trustee, as applicable, shall distribute at least annually to Wind Down Trust Beneficiaries all net cash income plus all net cash proceeds from the liquidation of assets of the Wind Down Trust; *provided, however*, the Wind Down Trustee shall be required to make such distributions only if cash exists to be distributed after retaining and setting aside such amounts of cash to pay any claims, expenses, charges, liabilities, and obligations of the Wind Down Trust (including any obligations or liabilities of the Debtors under the Plan or Confirmation Order), any existing or anticipated Wind Down Trust expenses (including to maintain the value of the assets of the Wind Down Trust during liquidation, and any taxes imposed on the Wind Down Trust or in respect of the assets of the Wind Down Trust), and any amounts necessary to be held back to the extent claims are subject to reconciliation. The Plan Administrator is authorized to take any action as may be necessary or appropriate to minimize any potential tax liability of the Wind Down Trust and, thereafter, the Wind Down Trust Beneficiaries, arising out of the operations of the Wind Down Trust. The Plan Administrator shall be permitted to direct the Wind Down Trustee to invest any Cash held pending distribution, including Cash held in reserves, in (i) direct obligations of, or obligations guaranteed by, or obligations secured by, the United States of America (including United States Treasury Bills); (ii) obligations of any agency or corporation that is or may hereafter be created by or pursuant to an Act of the Congress of the United States as an agency or instrumentality thereof, or (iii) demand deposits or short-term certificates of deposit at any bank or financial institution approved by the Plan Administrator, *provided, however*, that the Wind Down Trustee may maintain Cash in an amount sufficient to cover Wind Down Trust expenses.

RLF1 31431646v.1RLF1 31523804v.1

## ARTICLE VI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing with the Plan Administrator or Wind Down Trustee. In the absence of actual knowledge to the contrary, any Person dealing with the Wind Down Trust, the Wind Down Trustee, or the Plan Administrator shall be entitled to rely on the authority of the Plan Administrator and the Wind Down Trustee, or any of the Plan Administrator or Wind Down Trustee's agents, to act in connection with the Wind Down Trust Assets. There is no obligation of any Person dealing with the Plan Administrator or Wind Down Trustee to inquire into the validity or expediency or propriety of any transaction by the Plan Administrator or Wind Down Trustee or any agent of the Plan Administrator or Wind Down Trustee.

6.2     Limitation of Plan Administrator, Wind Down Trustee, and Advisory Board Liability. In exercising the rights and powers granted herein, the Wind Down Trustee and Plan Administrator shall exercise their best judgment with respect to the affairs of the Wind Down Trust and how best to further the Purposes in accordance with this Agreement and the Plan. However[The Plan Administrator and Wind Down Trustee shall not at any time, on behalf of the Wind Down Trust or Wind Down Trust Beneficiaries, enter into or engage in any trade or business, and no part of the Wind Down Trust Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Wind Down Trust in furtherance of any trade or business, nor take any action pursuant to this Agreement or otherwise that is inconsistent with the qualification of the Wind Down Trust as a "liquidating trust" for U.S. federal income tax purposes of which the Wind Down Trust Beneficiaries are considered the owners and grantors for U.S. federal income tax purposes.][8] Nevertheless, notwithstanding anything herein to the contrary contained in this Agreement, neither the Plan Administrator, Wind Down Trustee, nor any member of the Advisory Board, nor any of their respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, including with respect to any intercreditor or other issues that may arise as a result of the limited substantive consolidation of Estates under the Plan, whether sounding in tort, contract, or otherwise, except for actual fraud, gross negligence, or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Wind Down Trust. In no event shall the Plan Administrator, Wind Down Trustee, or any member of the Advisory Board be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Plan Administrator, Wind Down Trustee, or the Advisory Board has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Plan Administrator, Wind Down Trustee, and Advisory Board shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in section 10 of the Plan.

---

[8]     Subject to review.

RLF1 31431646v.1RLF1 31523804v.1

6.3     No Liability for Acts of Other Persons. None of the Persons identified in ~~the immediately preceding~~ section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     No Liability for Acts of Predecessors. No successor Plan Administrator or Wind Down Trustee shall be in any way responsible for the acts or omissions of any Plan Administrator or Wind Down Trustee, as applicable, in office prior to the date on which such successor becomes the Plan Administrator or Wind Down Trustee, unless a successor Plan Administrator or Wind Down Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment. ~~The~~None of the Plan Administrator, the Advisory Board members, and Wind Down Trustee shall ~~not~~ be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Plan Administrator ~~or,~~ Wind Down Trustee, or any member of the Advisory Board, as applicable, was grossly negligent in ascertaining the pertinent facts.

6.6     Reliance by Plan Administrator, Wind Down Trustee, and Advisory Board on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Plan Administrator, the Wind Down Trustee, and the Advisory Board may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator may engage and consult with his legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in reliance upon the advice of such counsel, agents, or advisors.

6.7     No Liability For Acts Approved by Bankruptcy Court. The Plan Administrator shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Wind Down Trust. Neither the Wind Down Trustee nor the Plan Administrator nor the Advisory Board shall be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

6.8     No Personal Obligation for Wind Down Trust's Liabilities. Persons dealing with the Plan Administrator ~~or,~~ Wind Down Trustee, or Advisory Board shall have recourse only to the Wind Down Trust Assets, excluding the SEC Settlement Fund, to satisfy any liability incurred by the Plan Administrator ~~or,~~ Wind Down Trustee, or any member of the Advisory Board, as applicable, to any such Person in carrying out the terms of this Agreement, and the Plan Administrator or Wind Down Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Plan Provisions. In connection with all actions taken in their capacities as Plan Administrator, Wind Down Trustee, and the Advisory Board, the Plan Administrator, Wind Down Trustee, and members of the Advisory Board shall be entitled to rely upon the applicable exculpation, release, and indemnification and limitation of liability provisions set forth in any organizational document of the Debtors, this Agreement, the Plan, and the Confirmation Order. The applicable exculpation, release, and indemnification and limitation of liability provisions set

21

forth in the Plan, the Confirmation Order, and this Agreement shall survive the termination of (a) this Agreement or consummation of the Plan, and (b) any Indemnified Party (as defined below) from the capacity for which it was deemed indemnified, and shall remain available to and binding upon any Indemnified Party and any estate of any decedent Indemnified Party.

6.10    Exculpation. The Plan Administrator, Wind Down Trustee, and the Advisory Board, and their respective consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such, and any of such Person's successors and assigns (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall not be liable for any losses, claims, damages, liabilities, obligations settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalties, costs, and expenses, including, without limitation, reasonable legal, or other professional fees and disbursements and the costs and expenses of investigating, analyzing, and responding to claims, of any kind or nature (each, a "Loss" and collectively, "Losses"), whether or not in connection with litigation in which any Indemnified Parties is a party or enforcing this Agreement (including this exculpation provision), incurred, caused by, relating to, based upon, or arising out of (directly or indirectly) the Indemnified Parties' execution, delivery, and acceptance of, or performance or nonperformance of their powers, duties, and obligations under, this Agreement, the Plan, the Confirmation Order, any other order of the Bankruptcy Court, any applicable law or as may arise by reason of any action, omission, or error of an Indemnified Party, except to the extent it is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision, *provided* that in no event will any such Person be liable for punitive, exemplary, consequential, or special damages under any circumstances. Every act taken or omitted, power exercised, or obligation assumed by or on behalf of the Wind Down Trust or any of the Indemnified Parties pursuant to the provisions of this Agreement, the Plan, the Confirmation Order, or any other order of the Bankruptcy Court shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Indemnified Parties acting for and on behalf of the Wind Down Trust and not otherwise, *provided, however,* that none of the foregoing Indemnified Parties are deemed to be responsible for any other such Indemnified Parties' actions or inactions.

6.11    6.9 Indemnification. The Plan Administrator, Wind Down Trustee, and the Advisory Board, and their respective consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such, and any of such Person's successors and assigns (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Wind Down Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Wind Down Trust's Trustee's, the Plan Administrator's, or the Advisory Board's respective powers and duties under this Agreement or in rendering services by the Indemnified Party to the Wind Down Trust, Wind Down Trustee, or the Plan Administrator, including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated

22

against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

6.11.1    6.9.1 Expense of Wind Down Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Wind Down Trust under this section Error! Unknown switch argument.6.11 shall be expenses of the Wind Down Trust, excluding the SEC Settlement Fund. The amounts necessary for such indemnification and reimbursement shall be paid by the Wind Down Trust out of the available Wind Down Trust Assets after reserving for all other actual and anticipated expenses and liabilities of the Wind Down Trust. Neither the Plan Administrator, the Wind Down Trustee, nor the Advisory Board or its members shall be personally liable for the payment of any Wind Down Trust expense or claim or other liability of the Wind Down Trust, and no Person shall look to the Plan Administrator, Wind Down Trustee, the Advisory Board, or other Indemnified Parties personally for the payment of any such expense or liability.

6.11.2    6.9.2 Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Wind Down Trust shall promptly pay an Indemnified Party all amounts subject to indemnification under this section Error! Unknown switch argument.6.11 on submission of invoices for such amounts by the Indemnified Party. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section Error! Unknown switch argument.6.11.

6.12    Burden of Proof. In any proceeding brought by any Person or Entity who is bound by this Agreement challenging any determination, action, or failure to act of any of the Indemnified Parties in discharge of their duties under this Agreement or the Plan, the Person or Entity bringing or prosecuting such proceeding shall have the burden of proving that such determination, action, or failure to act constituted gross negligence, willful misconduct, or fraud. Notwithstanding anything to the contrary contained in this Agreement or any duty otherwise existing at law or equity, each determination, action, or failure to act of the Indemnified Parties in the discharge of their duties under this Agreement or the Plan is, to the extent consistent with this Agreement or the Plan, hereby deemed to not constitute a breach of this Agreement, the Plan, or any duty hereunder, thereunder, or existing at law, in equity, or otherwise.

6.13    6.10 No Implied Obligations. The None of the Plan Administrator, Wind Down Trustee, or Advisory Board shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Plan Administrator.

6.14    6.11 Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Plan Administrator and, the Wind Down Trustee, and the Advisory Board, or the termination of the Wind Down Trust or this Agreement, and shall inure to the benefit of the Plan

23

Administrator's, the Wind Down Trustee's, the Advisory Board's, and the Indemnified Parties' heirs and assigns.

## ARTICLE VII
## ADVISORY BOARD

7.1     Appointment, Composition, and Governance of Advisory Board. As provided for in section 5 of the Plan, the AdvisoryThe Advisory Board shall consist of six (6) members, which shall include five (5) voting members and one (1) non-voting member, as set forth herein. The Advisory Board shall consist of those initial members identified on **Exhibit A** hereto (the "Initial Members"). At least one member of the Advisory Board shall be the Singapore Director, whose role as an Advisory Board member will be limited to a non-voting participatory role. The Initial Members and the Plan Administrator will solicit resumes and materials from potential Advisory Board candidates and conduct interviews to determine the additional three voting Advisory Board members. Such three members shall then be appointed to the Advisory Board following the consent of both (a) at least one of the Initial Members and (b) the Plan Administrator. In the event that a member of the Advisory Board resigns, the remaining members may appoint a new member of the Advisory Board. All matters requiring approval shall be appointed following the consent of both (a) the majority of the remaining voting members of the Advisory Board shall be decided with the majorityand (b) the Plan Administrator. All matters requiring consent of the Advisory Board shall be decided with the consent of the majority of the Advisory Board. In the event that only two voting members of the Advisory Board are voting on a particular matter and the vote is a tie, the Plan Administrator's vote shall act as a tiebreaker.

7.2     Resignation of Advisory Board Members. Any member of the Advisory Board may resign upon reasonable notice to the Plan Administrator, counsel for the Plan Administrator, and other members of the Advisory Board. Thirty (30) days' prior written notice shall constitute reasonable notice under this Sectionsection 7.2. Pursuant to Sectionsection 7.1 of this Agreement, during the thirty-day notice period, the Plan Administrator will seek a replacement for the position ona new member of the Advisory Board that willshall be appointed following the consent of both (a) the majority of the remaining voting members of the Advisory Board and (b) the Plan Administrator, and such new member shall begin their duties under this Agreement immediately following resignation or replacement of the previous member. Any member of the Advisory Board may be removed by (ia) the Plan Administrator, with the unanimous consent of the other Advisory Board members or (iib) the Bankruptcy Court, in each case, for "cause," as defined in Article IIIArticle III hereof. The Advisory Board may authorize, with the consent of the Plan Administrator, its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities under the Plan have concluded.

7.3     Procedures for Consultation with and Obtaining the Consent of the Advisory Board.

7.3.1     Consultation Process.

A.     In the event the Plan Administrator is required to consult with the Advisory Board for any action or inaction contained in this Agreement or on any other matters specified herein, the Plan Administrator shall provide the Advisory Board with written advance notice (email being sufficient) of the matter under consideration, and with relevant information concerning the matter

24

as is reasonably practicable under the circumstances. The Plan Administrator shall also provide the Advisory Board with such reasonable access to the applicable Professionals and other experts retained by the Plan Administrator or the Wind Down Trustee, as applicable, as the Advisory Board may reasonably request during the time that the Plan Administrator is considering such matter, and shall also provide the Advisory Board the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Plan Administrator.

B.     In determining when to take definitive action on any matter subject to the consultation process set forth in this section 7.3.1, the Plan Administrator shall take into consideration the time required for members of the Advisory Board, if such members so wish, to engage and consult with his or her own Professional as to such matter. The Plan Administrator shall not take definitive action on any such matter until at least five (5) business days, or a shorter period of time if necessary under the circumstances, after providing the Advisory Board with the initial written notice that such matter is under consideration by the Plan Administrator, unless such period is waived by the Advisory Board.

7.3.2     Consent Process.

A.     In the event the Plan Administrator is required to obtain the consent of the Advisory Board for any action or inaction contained in this Agreement or on any other matters specified herein, the Plan Administrator shall provide the Advisory Board with a written notice (email being sufficient) stating that the Advisory Board's consent is being sought, describing in reasonable detail the nature and scope of the action the Plan Administrator proposes to take, and explaining in reasonable detail the reasons that the Plan Administrator desires to take such action. The Plan Administrator shall provide the Advisory Board as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Plan Administrator shall also provide the Advisory Board with such reasonable access to his Professionals and other experts retained by the Plan Administrator or the Wind Down Trustee, as applicable, as the Advisory Board may reasonably request during the time that the Plan Administrator is considering such matter, and shall also provide the Advisory Board the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Plan Administrator.

B.     The Advisory Board must consider in good faith and in a timely fashion any request for its consent by the Plan Administrator, and must in any event advise the Plan Administrator in writing (email being sufficient) of its consent or objection to the proposed matter within ten (10) calendar days of receiving the original request for consent from the Plan Administrator, or within such additional time as the Plan Administrator and Advisory Board may agree. The Advisory Board may not withhold its consent unreasonably. If the Advisory Board decides to withhold consent, it must explain in reasonable detail its objections to the proposed matter. If the Advisory Board does not advise the Plan Administrator in writing (email being sufficient) of its consent or objections to the proposed matter within ten (10) calendar days of receiving the notice from the Plan Administrator regarding such consent (or the additional time period agreed to by the Plan Administrator and the Advisory Board), the Advisory Board's consent shall be deemed to have been affirmatively granted; *provided, however,* that, in the event of an emergency, the Plan Administrator may reduce the period required for Advisory Board consent.

C.     If, after following the procedures specified in this section 7.3.2, the Advisory Board continues to object to the proposed matter and to withhold its consent to the proposed matter, the

RLF1 31431646v.1RLF1 31523804v.1

Plan Administrator and/or the Advisory Board shall resolve their dispute pursuant to section 12.17 or section 12.18, as applicable. Notwithstanding anything to the contrary contained in this Agreement, the burden of proof with respect to the validity of the Advisory Board's objection and withholding of its consent shall be on the Advisory Board.

7.4    Consultation. Notwithstanding anything to the contrary contained in this Agreement or otherwise, the Plan Administrator shall not be required to consult with or seek consent from, the Advisory Board with respect to any matters, actions, or inactions that would reasonably would be considered, upon advice of counsel, to be a breach of fiduciary duties for the Plan Administrator to fail to address the matter, act, or abstain from action, as applicable.

7.5    Wind Down Trust Bylaws. Within forty-five (45) days following the Effective Date, the Plan Administrator and the Advisory Board shall develop bylaws for the Wind Down Trust, which, among other things, shall detail the delegation of authority that the Advisory Board will give the Plan Administrator.

7.6    7.3 Fiduciary Duties. Members of the Advisory Board shall have fiduciary duties to creditors in the same manner ~~that members of an official committee of creditors appointed pursuant to Bankruptcy Code section 1102 have fiduciary duties to the constituents represented by such a committee~~as the Plan Administrator as set forth in section 2.3 of this Agreement, and shall be entitled to indemnification from the Wind Down Trust in the same manner as the Plan Administrator for service as members of the Advisory Board from and after the Effective Date of the Plan under or in connection with this Agreement.

7.7    7.4 The~~The~~Each of the Advisory Board ~~is the enforcer~~and the Plan Administrator are enforcers for the purposes of STAR and as such (a) ~~has~~have a fiduciary duty to enforce the terms of this Agreement; and (b) ~~is~~are the only ~~person~~persons (or body in the case of the Advisory Board) with standing to enforce the terms of the Wind Down Trust. ~~As enforcer,~~Each of the Advisory Board ~~has~~and the Plan Administrator may exercise their rights and powers as an enforcer either jointly or severally. The enforcers have the same rights as life tenant beneficiaries of an ordinary trust to receive information concerning the Wind Down Trust and its administration from the ~~Trustees~~Wind Down Trustee and Plan Administrator and to inspect and take copies of trust documents.

7.8    7.5 Payment of Fees and Expenses. The Plan Administrator shall direct the Wind Down Trustee to pay from the Wind Down Trust Assets, other than the SEC Settlement Fund, the reasonable out-of-pocket expenses of the members of the Advisory Board incurred solely in connection with their role as an Advisory Board member, and not in their individual capacity; *provided*, *however*, that attorneys' fees incurred by Advisory Board members in their individual capacities shall not be paid out of the Wind Down Trust Assets. Advisory Board members shall ~~not be entitled to compensation other than the allowance of fees and expenses in accordance with this section~~be paid $10,000 per month subject to adjustment upon the majority vote of the Advisory Board and consent of the Plan Administrator. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 7.8~~7.8~~.

26

## ARTICLE VIII
## REMOVAL, REPLACEMENT
## AND COMPENSATION OF PLAN ADMINISTRATOR

8.1     <u>Plan Administrator</u>. The Plan Administrator shall be [•]Todd R. Snyder. The Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.

8.2     <u>Term of Service</u>. The Plan Administrator shall serve until: (a) the completion of the administration of the Wind Down Trust Assets and the Wind Down Trust, including the winding down of the Debtors and the Wind Down Trust, in accordance with this Agreement and the Plan; (b) the termination of the Wind Down Trust in accordance with the terms of this Agreement and the Plan; or (c) the Plan Administrator's resignation, death, dissolution, incapacity, liquidation, or removal. In the event that the Plan Administrator's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the Plan Administrator shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the resignation or removal of any Plan Administrator.

8.3     <u>Removal of Plan Administrator for Cause</u>: The Advisory Board may seek to remove the Plan Administrator for cause by filing a motion (the "Removal Motion") with the Bankruptcy Court upon not less than thirty (30) days' prior written notice to the Plan Administrator and the Wind Down Trustee. For purposes of this agreement, "cause" means:

8.3.1     a determination, in good faith, by the Advisory Board that the Plan Administrator is not acting in the best interests of creditors;

8.3.2     arrest or conviction (or plea of guilty or nolo contendere) of the Plan Administrator for any felony, or any other crime involving dishonesty or moral turpitude;

8.3.3     a finding by the Bankruptcy Court that the Plan Administrator engaged in willful misconduct, or was grossly negligent, in the performance of its duties; or

8.3.4     a determination, in good faith, by the Advisory Board that the Plan Administrator has a material and direct conflict of interest, not previously disclosed or specifically waived.

8.4     <u>Removal of Plan Administrator Without Cause</u>: The Advisory Board may remove the Plan Administrator without "cause" upon a supermajority vote of at least 75% of Advisory Board members upon not less than forty-five (45) days' prior written notice to the Plan Administrator and the Wind Down Trustee; *provided, however,* that the Advisory Board may not remove the Plan Administrator without "cause" in the first twelve (12) months of the Plan Administrator's appointment; *provided further* if the Plan Administrator is removed without "cause" in accordance with this section 8.4, the Plan Administrator shall continue to be entitled to (a) the Monthly Fee (as defined in **Exhibit B**) for three (3) months after the removal and (b) the incentives contemplated in the Plan Administrator Compensation through and including the date

27

that equal an equivalent amount of time the Plan Administrator served in such capacity prior to the supermajority vote of removal (the "Tail Period"); *provided*, *however*, that the Tail Period shall be capped at eighteen (18) months.

8.5 8.4 Resignation of Plan Administrator. The Plan Administrator may resign at any time upon no less than sixtyforty-five (6045) days' written notice to the Advisory Board. The resignation shall be effective on the later of (ia) the date specified in the notice of resignation and (iib) the date that is sixtyforty-five (45) days after the date such notice is delivered to the Advisory Board members. In the event of a resignation, the resigning Plan Administrator shall render to the Advisory Board a full and complete accounting of monies and assets received, disbursed, and held during the term of office of such Plan Administrator. For the avoidance of doubt, the Plan Administrator shall be entitled to the Plan Administrator Compensation through and including the date on which such resignation, if any, becomes effective.

8.6 8.5 Appointment of Successor Plan Administrator. Upon the resignation, death, or removal of the Plan Administrator, the Advisory Board shall appoint a successor. In the event the Advisory Board does not seek the appointment of a successor Plan Administrator, the Bankruptcy Court may do so on its own motion. Any successor Plan Administrator so appointed (a) shall consent to and accept his, her, or its appointment as successor Plan Administrator, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her, or its appointment as successor Plan Administrator and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).

8.7 8.6 Powers and Duties of Successor Plan Administrator. A successor Plan Administrator shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and Confirmation Order.

## ARTICLE IX
## REMOVAL, REPLACEMENT AND COMPENSATION OF WIND DOWN TRUSTEE

9.1 Wind Down Trustee. The initial Wind Down Trustee shall be JTC (Cayman) Limited. The Wind Down Trustee shall be [●]. The Wind Down Trustee shall be approved in the Confirmation Order, and the Wind Down Trustee's duties shall commence as of the Effective Date.

9.2 Term of Service. The Wind Down Trustee shall serve until: (a) the completion of the administration of the Wind Down Trust Assets and the Wind Down Trust, including the winding down of the Debtors and the Wind Down Trust, in accordance with this Agreement and the Plan; (b) the termination of the Wind Down Trust in accordance with the terms of this Agreement and the Plan; or (c) the Wind Down Trustee's resignation, death, dissolution, incapacity, liquidation, or removal. In the event that the Wind Down Trustee's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the Wind Down Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the resignation or removal of any Plan Administrator.

9.3      Removal of Wind Down Trustee: The Plan Administrator may remove and replace the Wind Down Trustee at any time.

9.4      Resignation of Wind Down Trustee. The Wind Down Trustee may resign at any time upon no less than sixty (60) days' written notice to the Plan Administrator and the Advisory Board. The resignation shall be effective on the later of (ia) the date specified in the notice of resignation and (iib) the date that is sixty (60) days after the date such notice is delivered to the Plan Administrator provided that there is a trustee in office which satisfies the requirements applicable under STAR.

9.5      Appointment of Successor Wind Down Trustee. Upon the resignation, death, or removal of the Wind Down Trustee, the Plan Administrator shall appoint a successor provided that such successor satisfies the requirements of STAR. In the event the Plan Administrator does not seek the appointment of a successor Wind Down Trustee, the Bankruptcy Court may do so on its own motion. Any successor Wind Down Trustee so appointed (a) shall consent to and accept his, her, or its appointment as successor Wind Down Trustee by deed and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).

9.6      Powers and Duties of Successor Wind Down Trustee. A successor Wind Down Trustee shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement, the Plan, and Confirmation Order.

9.7      Compensation of Wind Down Trustee and Costs of Administration. The Wind Down Trustee shall receive fair and reasonable compensation for his services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Wind Down Trust Assets, other than the SEC Settlement Fund. All costs, expenses, and obligations incurred by the Wind Down Trustee (or professionals who may be employed by the Wind Down Trustee in administering the Wind Down Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid from the Wind Down Trust Assets prior to any distribution to holders of Allowed Claims or Allowed Interests. The terms of the compensation of the Wind Down Trustee are set forth on **Exhibit C** hereto. The Plan Administrator may modify the Wind Down Trustee's compensation at the Plan Administrator's discretion; *provided*, *however*, that the Plan Administrator must obtain the approvalconsent of the majority of the Advisory Board prior to any increase of the Wind Down Trustee's compensation.

## ARTICLE X
## DURATION OF TRUST

10.1     Duration. Once the Wind Down Trust becomes effective upon the Effective Date of the Plan, the Wind Down Trust and this Agreement shall remain and continue in full force and effect until the Wind Down Trust is terminated.

10.2     Termination on Payment of Wind Down Trust Expenses and Distribution of Wind Down Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Wind Down Trust, and the distribution of all Wind Down Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Wind Down Trust shall terminate and the Plan Administrator and Wind Down Trustee shall

29

have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

10.3    <u>Termination after Five Years</u>. If the Wind Down Trust has not been previously terminated pursuant to <u>section 10.2</u> hereof, on the fifth anniversary of the Effective Date, the Wind Down Trust shall terminate and dissolve unless the Bankruptcy Court, upon motion made within the six month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension is necessary to facilitate or complete the recovery on, and liquidation of, the Wind Down Trust Assets) is appropriate. Upon such termination, the Wind Down Trustee shall distribute all of the Wind Down Trust Assets to the Wind Down Trust Beneficiaries in accordance with the Plan and this Agreement, and immediately thereafter the Wind Down Trust shall terminate and the Wind Down Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in <u>section 10.5</u> of this Agreement.

10.4    <u>No Termination by Beneficiaries</u>. The ~~Wind Down~~<u>Wind Down</u> Trust may not be terminated at any time by the Wind Down Trust Beneficiaries.

10.5    <u>Continuance of Wind Down Trust for Winding Up; Discharge and Release of Wind Down Trustee</u>. After the termination of the Wind Down Trust and solely for the purpose of liquidating and winding up the affairs of the Wind Down Trust, the Plan Administrator and Wind Down Trustee shall continue to act as such until their responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the distribution of the Wind Down Trust Assets, including all excess reserves, the Plan Administrator, the Wind Down Trustee, and the Wind Down Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Wind Down Trustee, solely at the direction of the Plan Administrator, the Bankruptcy Court may enter an order relieving the Plan Administrator, the Wind Down Trustee, their employees, professionals, and agents of any further duties, discharging and releasing the Plan Administrator, Wind Down Trustee, their employees, professionals, and agents from all liability related to the Wind Down Trust.

## ARTICLE XI
## CLOSING OF THE CHAPTER 11 CASES

11.1    <u>Termination</u>. When each of the following have occurred or will have occurred by the hearing on a motion to close the Chapter 11 Cases, the Plan Administrator shall promptly seek authority from the Bankruptcy Court to close the Chapter 11 Cases for each of the Debtors' Estates in accordance with the Bankruptcy Code and the Bankruptcy Rules: (a) all Claims against the Wind Down Estates entitled under the payment under the Plan (i) have been satisfied in accordance with the Plan or (ii) have been disallowed by <u>a</u> Final Order; (b) all assets have been liquidated and converted into Cash (other than those assets abandoned by the Wind Down Estates in the Plan Administrator's sole discretion), and such Cash has been distributed in accordance with the Plan; and (c) all wind-down costs and expenses have been paid in full in Cash. Notwithstanding the foregoing, the Plan Administrator may seek authority from the Bankruptcy Court to close the Chapter 11 Cases of the Debtors individually, prior to the requirements above being met with respect to all of the Debtors' Chapter 11 Cases, and may seek to close the Chapter 11 Cases in the event the Debtors lack sufficient funding for further administration. Subject to further order of the

30

Bankruptcy Court, this Agreement shall terminate when the Bankruptcy Court enters a final decree contemplated by Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Debtors' Chapter 11 Cases with respect to each Debtor.

# ARTICLE XII
# MISCELLANEOUS

12.1    [Intention of Parties to Establish Liquidating Trust.][9]  For U.S. federal income tax purposes, the Wind Down Trust is intended to be treated as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code of which the Wind Down Trust Beneficiaries (as determined for U.S. federal income tax purposes) are the deemed owners and grantors. Accordingly, for U.S. federal income tax purposes, and without affecting any other provision in this Agreement or the Plan, Wind Down Trust Beneficiaries will be treated as if they had received a distribution of a direct undivided interest in the Estate Assets and then contributed such interests to the Wind Down Trust. Accordingly, the Wind Down Trust shall, in an expeditious but orderly manner, and pursuant to the terms of this Agreement, the Plan and the Confirmation Order, liquidate and convert to Cash the Wind Down Trust Assets, make timely distributions to the Wind Down Trust Beneficiaries pursuant to the Plan, and not unduly prolong the Wind Down Trust's duration. The Wind Down Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein, the Plan and Confirmation Order.  To the extent provided by law, the Wind Down Trust shall be governed and construed in all respects as a liquidating trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Wind Down Trust Agreement may be amended in accordance with Section 13.7 of this Agreement to comply with such U.S. federal income tax laws, which amendments may apply retroactively. All parties (including the Debtors, the Estates, the Plan Administrator, the Wind Down Trust Beneficiaries and the Wind Down Trustee) shall report consistently with the intended treatment of the Wind Down Trust (including the deemed receipt of the underlying assets, subject to applicable liabilities and obligations, by the Win Down Trust Beneficiaries, followed by the deemed transfer of such assets to the Wind Down Trust).

12.2    [Tax Returns.][10]  In accordance with the Plan, the Plan Administrator shall cause the filing of tax returns for the Wind Down Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). To the extent reasonably practicable, unless otherwise ordered by the Bankruptcy Court, the Plan Administrator or Wind Down Trustee shall, within [120 days] after the end of each calendar year, send to each Wind Down Trust Beneficiary a statement setting forth the Wind Down Trust Beneficiary's share or items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their U.S. federal income tax returns. Such a statement shall also be sent to each Wind Down Trust Beneficiary within [120 days] of the dissolution of the Wind Down Trust. The Wind Down Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Plan and Confirmation Order) to the Wind Down Trust Beneficiaries in accordance with their relative beneficial interests in the

---

[9]    Subject to review.

[10]    Subject to review.

Wind Down Trust, as determined pursuant to this Agreement. The Plan Administrator also shall file (or cause to be filed) any other statements, returns or disclosure relating to the Wind Down Trust that are required by any governmental unit.

12.3     [Valuation of Wind Down Trust Assets.][11]   As soon as practicable after the Effective Date, the Plan Administrator (to the extent that he or she deems it necessary or appropriate in the reasonable exercise of his or her discretion taking into account whether the value of an asset is reasonably ascertainable due to its contingent nature) shall, in good faith, value the Wind Down Trust Assets as of the Effective Date, solely for U.S. federal income tax purposes, and shall apprise the Wind Down Trust Beneficiaries of such valuation (but the Wind Down Trust is not required to engage an expert to make such a valuation) for tax purposes. The valuation shall be used consistently by all parties (including the Debtors, the Plan Administrator, the Wind Down Trustee, and the Wind Down Trust Beneficiaries) for all U.S. federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Wind Down Trust Assets.

12.4     ~~12.1~~ Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

12.5     ~~12.2~~ Notices. All notices to be given to creditors may be given by electronic mail, first class mail, or may be delivered personally, at the addresses for such creditors appearing on the books kept by the Plan Administrator. Any notice or other communication that may be or is required to be given, served, or sent to the Plan Administrator or the Wind Down Trustee shall be in writing and shall be sent by registered or certified mail, return receipt requested, postage prepaid, or transmitted by hand delivery addressed as follows:

If to the Plan Administrator:
[•]Todd R. Snyder, Plan Administrator
[Address]
1251 Avenue of the Americas
New York, NY 10020
Email: [•]todd.snyder@psc.com

with a copy to counsel:
Kirkland & Ellis LLP
[                    ]601 Lexington Avenue
New York, NY 10022
Attn.:  Christopher T. Greco, P.C., Elizabeth H. Jones, Jimmy Ryan
Email addresses:
cgreco@kirkland.com
elizabeth.jones@kirkland.com
jimmy.ryan@kirkland.com

If to the Wind Down Trustee:

---

[11]     Subject to review.

RLF1 31431646v.1RLF1 31523804v.1

[•]JTC (Cayman) Limited, Wind Down Trustee
[Address]
Email: [•]

with a copy to counsel:
[                                    ]

or to such other address as may from time to time be provided in written notice by the Plan Administrator.

12.6      12.3 Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the Cayman Islands; *provided, however*, that any issue involving, arising from or related to the Plan or Confirmation Order shall be subject to the Bankruptcy Code and applicable law.

12.7      12.4 Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

12.8      12.5 Particular Words. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

12.9      12.6 Execution. All funds in the Wind Down Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a creditor, and no creditor or any other Person can execute upon, garnish, or attach the Wind Down Trust Assets, the Wind Down Trustee, or the Plan Administrator in any manner or compel payment from the Wind Down Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

12.10     12.7 Amendment. This Agreement may be amended by the Wind Down Trustee with the consent of the Plan Administrator and the Advisory Board or by order of the courts of the Cayman Islands or the Bankruptcy Court; *provided*, *however*, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

12.11     12.8 No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

12.12     12.9 No Relationship Created. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

12.13     12.10 Severability. If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

33

12.14    ~~12.11~~ Further Assurances. The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

12.15    ~~12.12~~ Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

12.16    Prior Discussions. Notwithstanding anything to the contrary contained in this Agreement, all privilege, exculpation, release, indemnification, and other limitation on liability provisions in this Agreement, the Plan, and the Confirmation Order shall be applicable to any act or omission taken and information obtained by the Plan Administrator, Wind Down Trustee, and members of the Advisory Board in connection with the preparation for and negotiation of this Agreement prior to the execution of this Agreement.

12.17    Jurisdiction of the Courts of the Cayman Islands. Subject to section 12.15 of this Agreement and the jurisdiction of the Bankruptcy Court with respect to the Plan and matters arising from or related to the Plan, the courts of the Cayman Islands shall otherwise have exclusive jurisdiction with respect to any question affecting the validity and construction of the Wind Down Trust and the parties to this Agreement hereby irrevocably agree that the courts of the Cayman Islands shall have exclusive jurisdiction in respect of any dispute, suit, action, arbitration or proceedings which may arise out of or in connection with this Agreement and which are outside the scope of the Bankruptcy Court's jurisdiction ("Proceedings") and the parties hereby waive any objection to Proceedings in the courts of the Cayman Islands on the grounds of venue or on the basis that the Proceedings have been brought in an inconvenient forum.

12.18    ~~12.13~~ Jurisdiction ~~[~~ of the Bankruptcy Court. The Bankruptcy Court shall have jurisdiction regarding the ~~Debtors, the Wind Down Trust, the Wind Down Trustee, the Plan Administrator, the Advisory Board, and the Wind Down Trust Assets~~Plan and matters arising from or related to the Plan and any matter arising out of or in respect of chapter 11 of the Bankruptcy Code, including~~,~~ without limitation, matters related to Causes of Action and the determination of ~~all~~any disputes arising out of or related to ~~administration of the~~the distribution of Wind Down Trust. ~~The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Wind Down Trust.~~ Assets in accordance with the Plan. The Parties expressly consent to the Bankruptcy Court or any other U.S. courts having jurisdiction over the applicable matter, hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court or such other U.S. court abstains from exercising, or declines to exercise, jurisdiction, or is otherwise without jurisdiction over any matter ~~arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions~~then such matter will be within the jurisdiction of the courts of

34

the Cayman Islands in accordance with section 12.14 of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.]<sup>4</sup>

.

---

<sup>4</sup>  Subject to ongoing review and revision.

RLF1 31431646v.1RLF1 31523804v.1

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as a deed as of the day and year written above.

Executed as a deed by Terraform Labs Pte. Ltd.

By:_____

Name:_____

Title:_____

Executed as a deed by Terraform Labs Limited

By:_____

Name:_____

Title:_____

[•]Executed as a deed by Todd R. Snyder, as Plan Administrator

By: _____

Name_____

Title:_____

36

[•]Executed as a deed by JTC (Cayman) Limited, as Wind Down Trustee

By: _____

Name_____

Title:_____

RLF1 31431646v.1RLF1 31523804v.1

**<u>EXHIBIT A</u>**

**Advisory Board Members**

**Advisory Board Members**

1.  Celsius Network LLC and affiliates, c/o Litigation Oversight Committee ("LOC"); the LOC has authorized BRIC as its representative on the Advisory Board and designated R Christian Wyatt to be its initial voting member

2.  1. [•]Francisco Javier Reina Barragan

# **EXHIBIT B**

**Plan Administrator Compensation**

**Plan Administrator Compensation**

| ~~Plan Administrator~~ | ~~Compensation~~ |
|---|---|
| ~~[●]~~ | |

| Plan Administrator | Compensation |
|---|---|
| Todd R. Snyder | Subject to Section 8.4 of the Wind Down Trust Agreement, in consideration for serving as the Plan Administrator, Mr. Snyder shall receive (i) a monthly fee of $100,000 (the "Monthly Fee") through and including the date on which Mr. Snyder ceases to serve in his capacity as Plan Administrator in accordance with the terms of the Wind-Down Trust Agreement; *provided*, *however*, that the Monthly Fee may be reduced or increased over time with the consent of the Advisory Board, which shall at least annually, commencing twelve (12) months following the Effective Date, review the Monthly Fee, in consultation with the Plan Administrator and, if applicable, reduce or increase the Monthly Fee to reflect a proportionate decrease or increase, as applicable, in required workload; (ii) an incentive fee in an amount equal to one-percent (1%) of all Net Assets Recovered[12] and distributed by the Wind-Down Trust to holders of Allowed General Unsecured Claims and Crypto Loss Claims, which, for the avoidance of doubt, shall be calculated based on any and all Net Recovered Assets the Wind-Down Trust distributes, regardless of whether such assets are known prior to the Effective Date (the "Distribution Incentive Fee"); |

---

[12]    "Net Assets Recovered" shall mean the value of any assets reduced by the cost of recovering such assets that the Plan Administrator recovers after the Effective Date that are not expressly contemplated to be recovered under the Plan. For the avoidance of doubt, Net Assets Recovered shall not include, without limitation, the SEC Settlement Fund or the proceeds thereof, the Senior Claim Pool or the proceeds thereof, the Surplus Senior Claim Pool Cash, the Surplus Reserved Cash, or the Wind Down Reserve.

| | |
|---|---|
| | (iii) a timing distribution fee for any and all Net Assets Recovered and distributed by the Wind Down Trust to holders of General Unsecured Claims and Crypto Loss Claims in an amount equal to (a) a 1.75% fee for any and all Net Assets Recovered and distributed by the Wind Down Trust within the first eighteen (18) months following the Effective Date, (b) a 1.50% distribution fee for any and all Net Assets Recovered and distributed by the Wind Down Trust between month nineteen (19) and month thirty-six (36) following the Effective Date , and (c) a 1.25% distribution fee for any and all Net Assets Recovered and distributed by the Wind Down Trust between month thirty-seven (37) and month fifty-four (54) following the Effective Date; and (iv) reimbursement of all reasonable and documented out-of-pocket fees, costs, and expenses.<br><br>Mr. Snyder intends to retain Piper Sandler as financial advisor to support the Plan Administrator. Piper Sandler's compensation shall include a monthly fee of $225,000 and may include incentive compensation tied to specific targets. |

**<u>EXHIBIT C</u>**

**Wind Down Trustee Compensation**

**Wind Down Trustee Compensation**

| Wind Down Trustee | Compensation |
|---|---|
| [•]JTC (Cayman) Limited | $[•] JTC (Cayman) Limited shall receive a $15,000 initial set up fee plus an annual fee of $15,000 plus hourly compensation for time spent subject to certain triggers to be negotiated with the Advisory Board. |