**Exhibit A**

**Plan**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------  x
In re:                                             :
                                                   :      Chapter 11
                                                   :
TERRAFORM LABS PTE. LTD. et al.,                   :      Case No. 24–10070 (BLS)
                                                   :
              Debtors.¹                            :      (Jointly Administered)
                                                   :
-------------------------------------------------  x
```

## SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF
## TERRAFORM LABS PTE. LTD. AND TERRAFORM LABS LIMITED

**WEIL, GOTSHAL & MANGES LLP**
Ronit Berkovich (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
Clifford W. Carlson (admitted pro *hac vice*)
F. Gavin Andrews (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

**RICHARDS, LAYTON & FINGER, P.A.**
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

*Attorneys for Debtors*
*and Debtors in Possession*

Dated:     September 17, 2024
           Wilmington, Delaware

---

[1]    The Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited.  The Debtors' principal offices are located at 10 Anson Road, #10-10 International Plaza, Singapore 079903.

# TABLE OF CONTENTS

SECTION 1.    DEFINITIONS AND INTERPRETATION. ...................................................1

SECTION 2.    ADMINISTRATIVE EXPENSE, PRIORITY CLAIMS, PRIVATE WALLET
              CRYPTO HOLDERS, AND BRIDGE WALLET CRYPTO HOLDERS. ....................16

    2.1.    Administrative Expense Claims Bar Date. ...................................................16
    2.2.    Allowance of Administrative Expense Claims. .............................................16
    2.3.    Payment of Allowed Administrative Expense Claims. ...................................17
    2.4.    Fee Claims. ..................................................................................17
    2.5.    Priority Tax Claims. .........................................................................18
    2.6.    Private Wallet Crypto Holders and Private Wallet Bar Date. ...........................18
    2.7.    Bridge Wallet Crypto Holders and Bridge Wallet Bar Date. ...........................18

SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS. ...................................18

    3.1.    Classification in General. ...................................................................18
    3.2.    Summary of Classification. .................................................................19
    3.3.    Special Provision Governing Unimpaired Claims. ........................................19
    3.4.    Claims Arising Out of the Beltran Action. ................................................19
    3.5.    Elimination of Vacant Classes. ............................................................20
    3.6.    Voting Classes; Presumptions. .............................................................20
    3.7.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
            Code. ...........................................................................................20
    3.8.    No Waiver. ....................................................................................20

SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS. ........................................21

    4.1.    Priority Non-Tax Claims (Class 1). ........................................................21
    4.2.    Other Secured Claims (Class 2). ...........................................................21
    4.3.    Beltran Allowed Secured Claims (Class 3). ...............................................22
    4.4.    General Unsecured Claims (Class 4). ......................................................22
    4.5.    Crypto Loss Claims (Class 5) ..............................................................23
    4.6.    SEC Claim (6) ................................................................................23
    4.7.    Intercompany Claims (Class 7) .............................................................23
    4.8.    Intercompany Interests (Class 8). ..........................................................24
    4.9.    510(c) Subordinated Claims (Class 9). ....................................................24
    4.10.   TFL Equity Interests (Class 10). ...........................................................24

SECTION 5.    MEANS FOR IMPLEMENTATION. ....................................................25

    5.1.    Limited Substantive Consolidation of the Debtors. .......................................25
    5.2.    Sources of Consideration for Plan Distribution. ..........................................25
    5.3.    Implementation. ..............................................................................25
    5.4.    Plan Administrator. ..........................................................................27
    5.5.    Wind Down Trust. ...........................................................................31
    5.6.    Vesting of Liabilities in the Wind Down Trust. ...........................................35
    5.7.    Administration of Crypto Loss Claims. ....................................................35
    5.8.    Corporate Action. ............................................................................35
    5.9.    Withholding and Reporting Requirements. ................................................36
    5.10.   Exemption From Certain Transfer Taxes. .................................................36

**TABLE OF CONTENTS**
**(continued)**

| | | |
|---|---|---|
| 5.11. | Effectuating Documents; Further Transactions. | 37 |
| 5.12. | Preservation of Rights of Action. | 37 |
| 5.13. | Certificate of Incorporation and By-Laws. | 38 |
| 5.14. | Cancellation of Existing Securities and Agreements. | 38 |
| 5.15. | Subordinated Claims. | 38 |
| 5.16. | Equitable Subordination Under Bankruptcy Code 510(c). | 38 |
| 5.17. | Election to Contribute Third-Party Claims. | 39 |
| 5.18. | Contribution of Contributed Third-Party Claims. | 39 |
| 5.19. | Closing of Chapter 11 Cases. | 39 |
| 5.20. | Notice of Effective Date. | 39 |
| 5.21. | Corporate Form. | 40 |
| 5.22. | Separability. | 40 |
| SECTION 6. | DISTRIBUTIONS. | 40 |
| 6.1. | Distributions Generally. | 40 |
| 6.2. | Distribution Record Date. | 40 |
| 6.3. | Distributions on the Effective Date or as Soon as Reasonably Practicable Thereafter. | 40 |
| 6.4. | Periodic Distributions from the Senior Claim Pool, GUC Pool, and Crypto Loss Claim Pool. | 41 |
| 6.5. | Date of Distributions. | 41 |
| 6.6. | Disbursing Agent. | 42 |
| 6.7. | Rights and Powers of Disbursing Agent. | 42 |
| 6.8. | Expenses of Disbursing Agent. | 42 |
| 6.9. | No Postpetition Interest on Claims. | 42 |
| 6.10. | Delivery of Distributions. | 43 |
| 6.11. | Distributions after Effective Date. | 43 |
| 6.12. | Unclaimed Property. | 43 |
| 6.13. | Time Bar to Cash Payments. | 43 |
| 6.14. | Manner of Payment under Plan | 43 |
| 6.15. | Satisfaction of Claims. | 44 |
| 6.16. | Minimum Cash Distributions. | 44 |
| 6.17. | Setoffs and Recoupments. | 44 |
| 6.18. | Allocation of Distributions between Principal and Interest. | 44 |
| 6.19. | No Distribution in Excess of Amount of Allowed Claim. | 44 |
| SECTION 7. | PROCEDURES FOR DISPUTED CLAIMS. | 44 |
| 7.1. | Objections to Claims. | 44 |
| 7.2. | Allowance of Claims. | 45 |
| 7.3. | Resolution of Disputed Claims. | 45 |
| 7.4. | Adjustment to Claims or Interests Without Objection. | 45 |
| 7.5. | Reservation of Rights to Object to Claims. | 45 |
| 7.6. | Payments and Distributions with Respect to Disputed Claims. | 45 |
| 7.7. | Distributions after Allowance. | 46 |

iii

**TABLE OF CONTENTS**
**(continued)**

| | | |
|---|---|---|
| 7.8. | Estimation of Claims. | 46 |
| 7.9. | [Reserved] | 46 |
| 7.10. | No Distributions Pending Allowance. | 46 |
| 7.11. | Claim Resolution Procedures Cumulative. | 46 |
| 7.12. | Interest. | 47 |
| SECTION 8. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 47 |
| 8.1. | Rejection of Executory Contracts and Unexpired Leases. | 47 |
| 8.2. | Determination of Assumption Disputes and Deemed Consent. | 47 |
| 8.3. | Rejection Damages Claims. | 49 |
| 8.4. | Insurance Policies. | 49 |
| 8.5. | Indemnification Obligations | 49 |
| 8.6. | Intellectual Property Licenses and Agreements. | 50 |
| 8.7. | Assignment. | 50 |
| 8.8. | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 50 |
| 8.9. | Reservation of Rights. | 51 |
| SECTION 9. | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. | 51 |
| 9.1. | Conditions Precedent to the Effective Date. | 51 |
| 9.2. | Waiver of Conditions Precedent. | 52 |
| 9.3. | Effect of Failure of Conditions to Effective Date. | 52 |
| SECTION 10. | EFFECT OF CONFIRMATION. | 53 |
| 10.1. | Vesting of Assets. | 53 |
| 10.2. | Term of Injunctions or Stays. | 53 |
| 10.3. | Injunction. | 53 |
| 10.4. | Debtors are Not Entitled to a Discharge. | 55 |
| 10.5. | Binding Effect. | 55 |
| 10.6. | Releases by the Debtors. | 55 |
| 10.7. | Exculpation. | 56 |
| 10.8. | Additional Provisions Regarding Governmental Units. | 56 |
| 10.9. | Solicitation of the Plan. | 57 |
| 10.10. | Corporate Action. | 57 |
| 10.11. | Ipso Facto and Similar Provisions Ineffective. | 57 |
| 10.12. | No Successor Liability. | 57 |
| SECTION 11. | RETENTION OF JURISDICTION. | 57 |
| 11.1. | Retention of Jurisdiction. | 57 |
| 11.2. | Courts of Competent Jurisdiction. | 59 |
| SECTION 12. | MISCELLANEOUS PROVISIONS. | 59 |
| 12.1. | Payment of Statutory Fees. | 59 |
| 12.2. | Substantial Consummation. | 60 |
| 12.3. | Dissolution of Creditors' Committee. | 60 |

iv

**TABLE OF CONTENTS**
**(continued)**

12.4.    Amendments. ..................................................................................................60
12.5.    Revocation or Withdrawal of the Plan. ..........................................................61
12.6.    Severability of Plan Provisions upon Confirmation. .....................................61
12.7.    Governing Law. ..............................................................................................61
12.8.    Time. ...............................................................................................................61
12.9.    Additional Documents ....................................................................................61
12.10.   Retention of Books and Records....................................................................62
12.11.   Immediate Binding Effect...............................................................................62
12.12.   Successors and Assigns. .................................................................................62
12.13.   Entire Agreement. ..........................................................................................62
12.14.   Notices. ...........................................................................................................62

v

Terraform Labs Pte. Ltd. and Terraform Labs Limited propose the following chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in <u>Section 1.A</u> of this Plan.

## SECTION 1.    DEFINITIONS AND INTERPRETATION.

### A.  Definitions.

1.1      *"510(c) Subordinated Claim"* means any Claim against the Debtors that has been determined by Final Order to be subject to equitable subordination pursuant to section 510(c) of the Bankruptcy Code.  Any Claim that satisfies the definition of a 510(c) Subordinated Claim will be classified as such, and not in any other Class of Claims.

1.2      *"Administrative Expense Claim"* means any Claim for costs or expenses of administration incurred during the Chapter 11 Cases of a kind specified under sections 324, 328, 330, 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses; (ii) Fee Claims, and (iii) all Allowed Claims that are to be treated as Administrative Expense Claims pursuant to a final order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

1.3      *"Administrative Expense Claims Bar Date"* means the date that is sixty (60) calendar days after the Effective Date.

1.4      *"Advisory Board"* means the body of persons with the rights and powers to enforce the Wind Down Trust and supervise its administration, as set forth in the Wind Down Trust Agreement.  The members of the Advisory Board shall be selected by the Creditors' Committee in consultation with the Debtors and not objectionable to the SEC, in accordance with Section 5.5(i) of this Plan, and disclosed in the Plan Supplement.

1.5      *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.6      *"Allowed"* means with respect to any Claim against or Interest in the Debtors, (i) any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in this Plan; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors, the Wind Down Trust, or the Plan Administrator, as applicable; or (c) as to which any objection has been determined by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder, (ii) any Claim or Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, (iii) any Claim or Interest expressly Allowed under this Plan, or (iv) any Claim that is listed in the Debtors' Schedules as liquidated, non-contingent, and undisputed; *provided*, *that*, notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims shall be subject to, and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Debtors will retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise unimpaired pursuant to this Plan.

1.7 ***"Asset"*** means all of the rights, title, and interests of the Debtors in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property, including all social media or online accounts and access thereto.

1.8 ***"Assumption Dispute"*** means a pending objection relating to assumption or assumption and assignment of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.9 ***"Assumption Schedule"*** means the schedule of executory contracts and unexpired leases to be either assumed by the Debtors or assumed by the Debtors and assigned to the Wind Down Trust. The Assumption Schedule shall be filed with the Plan Supplement, as may be amended, modified, or supplemented from time to time.

1.10 ***"Avoidance Actions"*** means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law. For the avoidance of doubt, nothing herein shall modify the terms of or the rights reserved under the Dentons Retention Order.

1.11 ***"Ballot"*** means each of the ballots distributed to the holders of Impaired Claims entitled to vote on the Plan.

1.12 ***"Bankruptcy Code"*** means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.13 ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.14 ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.15 ***"Beltran Action"*** means the litigation captioned as *Julian Moreno Beltran & 9 Ors v Terraform Labs Pte. Ltd & 2 Ors*, SIC/OA 3/2024 pending in the High Court of the Republic of Singapore.

1.16 ***"Beltran Allowed Secured Claims"*** means Claims asserted against TFL in the Beltran Action Allowed either (i) pursuant to a settlement with TFL and/or the Wind Down Trustee or (ii) as determined by Final Order of the courts of the Republic of Singapore, in each case up to the amount of the Beltran Escrow Deposit; *provided, however*, that any portion of any Allowed Claim asserted against TFL in the Beltran Action that exceeds its allocated portion of the Beltran Escrow Deposit shall be treated as an Allowed Crypto Loss Claim.

2

1.17     **"Beltran Escrow Deposit"** means the funds deposited into a Singapore escrow account, totaling approximately $56.9 million, as required by order of the High Court of the Republic of Singapore in the Beltran Action as security against judgment pending the outcome of the Beltran Action.

1.18     "**Beltran Stipulated Order**" means the *Order Approving Amended Stipulation Between Debtors and Singapore Action Claimants Regarding Relief from the Automatic Stay* [Docket No. 661].

1.19     **"Board of Directors"** means the board of directors of the Debtors, including TFL in its capacity as a director of TLL.

1.20     **"Bridge Protocols"** means the protocols operated by TFL that allowed users of Terra Crypto to deposit such Terra Crypto in a Bridge Wallet in exchange for wrapped Tokens for use on the Harmony One Network, the Binance Smart Chain Network, or the Ethereum Network.

1.21     **"Bridge Wallet"** means a wallet associated with the Bridge Protocols, which users interact with to obtain wrapped assets on a destination chain and redeem the tokens automatically upon request.

1.22     **"Bridge Wallet Bar Date"** means the date that is thirty (30) calendar days after the Effective Date.

1.23     **"Bridge Wallet Crypto Holder"** means a Token Holder entitled to redeem Terra Crypto held in the Bridge Wallets.

1.24     **"Business Day"** means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.25     **"Cash"** means legal tender of the United States of America.

1.26     **"Cause of Action"** means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or any other Avoidance Actions, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any claims under any state law or foreign law, including, without limitation, any fraudulent transfer or similar claims.

3

1.27     **"Chapter 11 Cases"** means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

1.28     **"Claim"** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.29     **"Claims Register"** means the official register of Claims against the Debtors maintained by Epiq Corporate Restructuring, LLC or the clerk of the Bankruptcy Court.

1.30     **"Class"** means any group of Claims or Interests classified as set forth in Section 3 of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.31     **"Confirmation"** means the entry on the docket of the Chapter 11 Cases of the Confirmation Order.

1.32     **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order.

1.33     **"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.34     **"Confirmation Order"** means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be approved by the Creditors' Committee (such approval not to be unreasonably withheld)  prior to submission to the Bankruptcy Court.

1.35     **"Contributed Third-Party Claims"** means all direct Causes of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of the Debtors.

1.36     **"Contributing Claimants"** means any holders of Claims or Interests that contribute their Contributed Third-Party Claims to the Wind Down Trust in accordance with Section 5.17 of this Plan or otherwise pursuant to an agreement with the Plan Administrator.

1.37     **"Creditors' Committee"** means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases on February 29, 2024 pursuant to section 1102 of the Bankruptcy Code.

1.38     **"Crypto Loss Claim"** means any Claim asserted against the Debtors arising from (a) the purchase, sale, or rescission of the purchase or sale of Cryptocurrency, including (i) Terra Crypto, (ii) any wrapped or bridged version on any blockchain of any Terra Crypto, (iii) any staked or bonded Terra Crypto on any blockchain, (iv) any Terra Crypto on any centralized or decentralized liquidity, lending, or borrowing application or protocol on any blockchain, (v) any receipt or derivative of any Terra Crypto on any blockchain, (vi) any derivatives trading or perpetual swaps of Terra Crypto, or any other Cryptocurrency that derives a value from Terra Crypto, and (vii) any other

4

Cryptocurrency that was transacted or made available on the TerraLunaClassic and TerraLuna blockchains, and (b) any reimbursement or contribution claims allowed under section 502 of the Bankruptcy Code on account of such claims.

1.39    ***"Crypto Loss Claim Bar Date"*** means a date to be established by the Plan Administrator upon motion and notice by which holders of Crypto Loss Claims arising before the Petition Date must be asserted; *provided that* such date shall be no more than one hundred twenty (120) calendar days after the Effective Date; *provided, further, however*, that such time may be extended by the Plan Administrator upon filing a notice on the docket.

1.40    ***"Crypto Loss Claim Pool"*** means any remaining funds in the GUC Pool upon the General Unsecured Claim Payment Completion, *plus* the SEC Settlement Fund.

1.41    ***"Crypto Loss Claim Procedures"*** means the procedures pursuant to which (i) holders of Crypto Loss Claims may assert such Claims, and (ii) the Plan Administrator will establish a general process and timeline, in accordance with the Wind Down Trust Agreement, for administering and determining the Allowed Claim for each holder of a Crypto Loss Claim, through the filing of the Crypto Loss Claim Procedures Motion and subject to Bankruptcy Court approval, which procedures shall include: (A) notice of the Crypto Loss Claim Procedures and an opportunity to object thereto; (B) notice of the hearing to consider approval of the Crypto Loss Claim Procedures, if necessary; (C) the deadline to file Crypto Loss Claims; (D) instructions for submitting a Crypto Loss Claim; (E) a modified Proof of Claim form specifically as to Crypto Loss Claims; and (F) a notice for holders of Crypto Loss Claims to "opt in" to being a Contributing Claimant.

1.42    ***"Crypto Loss Claim Procedures Motion"*** means the motion seeking approval of the Crypto Loss Claim Procedures, to be filed in the Bankruptcy Court by the Plan Administrator.

1.43    ***"Cryptocurrency"*** means all digital assets that are traded on a blockchain, broadly defined to include all types of digital assets, including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets. This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum (ETH), USD Coin, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, PYTH, Luna (LUNA), Luna Classic (LUNC), Terra USD (UST), Avalanche (AVAX), Convex (CVX), OHM, Governance OHM, and any other digital asset.

1.44    ***"Cure Amount"*** means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary pursuant to section 365(b)(1)(A) of the Bankruptcy Code to permit the Debtor to assume such executory contract or unexpired lease.

1.45    ***"D&O Indemnification Obligations***" means the obligation of the Debtors or the Wind Down Trust, as applicable, to indemnify John S. Dubel, Russell Nelms, and Thong Kum Keen Benjamin, each in his capacity as an independent director of TFL, including in TFL's capacity as director of TLL, in accordance with the TFL constitution and TLL's articles of association.

5

1.46      **"D&O Policy"** means any insurance policy that covers John S. Dubel, Russell Nelms, and Thong Kum Keen Benjamin, each in his capacity as an independent director of TFL, including in TFL's capacity as director of TLL, issued at any time to the Debtors and all agreements, documents, or instruments relating thereto.

1.47      **"Debtors"** means Terraform Labs Pte. Ltd. and Terraform Labs Limited, in each case, solely in its capacity as a debtor in possession under the Bankruptcy Code.

1.48      **"Debtors in Possession"** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.49      **"Definitive Documents"** means the documents that are necessary or desirable to implement, or otherwise relate to, the implementation of the transactions contemplated herein including, but not limited to: (i) the Plan; (ii) each of the documents comprising the Plan Supplement; (iii) the Disclosure Statement; (iv) any motion seeking the approval of the adequacy of the Disclosure Statement and solicitation of the Plan; (v) solicitation materials; and (vi) the Confirmation Order.

1.50      **"Dentons"** means Dentons US LLP.

1.51      **"Dentons Retention Order"** means the *Order Granting Application of Debtor for Entry of an Order Authorizing the Retention and Employment of Dentons US LLP as Special counsel to the Debtor and Debtor in Possession, Effective as of the Petition Date* [Docket No. 177].

1.52      **"Disallowed"** means with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.53      **"Disbursing Agent"** means the Wind Down Trustee or any Person engaged by the Wind Down Trust or the Wind Down Trustee to make Distributions pursuant to this Plan.

1.54      **"Disclosure Statement"** means the disclosure statement filed by the Debtors in support of the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code (as may be amended, supplemented, or modified from time to time).

1.55      **"Disputed"** means, with respect to any Claim or Interest, such Claim or Interest that is not yet Allowed or Disallowed.

1.56      **"Distribution"** means payment or distribution of consideration to holders of Allowed Claims pursuant to this Plan.

1.57      **"Distribution Record Date"** means the Effective Date of the Plan or such other date as determined by the Plan Administrator.

6

1.58    ***"Effective Date"*** means the date on which all conditions to the effectiveness of the Plan set forth in <u>Section 9</u> of this Plan have been satisfied or waived in accordance with the terms of the Plan.

1.59    ***"Effective Date Available Cash"*** means Cash or cash equivalents on hand as of the Effective Date, not including the (i) SEC Settlement Fund, (ii) the Fee Escrow Account, (iii) Cash held in Restricted Accounts, and (iv) the amount of Cash necessary to fund or satisfy, as applicable, each of (a) the Senior Claim Pool, (b) any Statutory Fees required to be paid in accordance with the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court, and (c) the Wind Down Reserve.

1.60    ***"Entity"*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.61    ***"Estate or Estates"*** means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.62    ***"Exculpated Parties"*** means, collectively: (a) the Debtors; (b) the Board of Directors and each of its members who served in such capacity on or after the Petition Date; (c) the Debtors' officers who served in such capacity on or after the Petition Date; (d) the Creditors' Committee and each of its members, solely in their capacity as such; and (e) the Professionals retained in these cases.

1.63    ***"Fee Claim"*** means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by Professionals retained by the Debtors or the Creditors' Committee pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

1.64    ***"Fee Escrow Account"*** means the depository account established or designated by the Debtor to be funded with Cash for payment of Fee Claims in accordance with the terms of this Plan.

1.65    ***"Final Order"*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and is in full force and effect, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

7

1.66 **"General Bar Date Order"** means that certain *Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim By Governmental Units, (III) Establishing an Amended Schedules Bar Date, (IV) Establishing a Rejection Damages Bar Date, (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Proposed Notice of Bar Dates, and (VII) Granting Related Relief* [Docket No. 437].

1.67 **"General Unsecured Claim"** means any Claim against the Debtors (other than any Intercompany Claims, Crypto Loss Claims, Claims subordinated pursuant to section 510(b), and Section 510(c) Subordinated Claims) as of the Petition Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any final order of the Bankruptcy Court.

1.68 **"General Unsecured Claim Payment Completion"** means the time at which all Allowed General Unsecured Claims are indefeasibly paid in full in Cash and there are no Disputed General Unsecured Claims.

1.69 **"Governmental Unit"** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.70 **"GUC Pool"** means the Cash pool established pursuant to this Plan for distribution to holders of Allowed General Unsecured Claims, which shall be funded, (i) on the Effective Date, with Effective Date Available Cash and, (ii) after the Effective Date, with (a) Post-Effective Date Cash, (b) any Surplus Reserved Cash, and (c) any Surplus Senior Claim Pool cash, in each case in accordance with the Waterfall. Upon the General Unsecured Claim Payment Completion, the funds in the GUC Pool shall be released to the Crypto Loss Claim Pool.

1.71 **"Impaired"** means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.72 **"Insider"** means an "insider" (as defined in section 101(31) of the Bankruptcy Code) of the Debtors.

1.73 **"Intercompany Claim"** means a Claim against any Debtor by another Debtor or non-Debtor Affiliate of such other Debtor.

1.74 **"Intercompany Interest"** means an Interest in a Debtor other than a TFL Equity Interest.

1.75 **"Interest"** means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all shares, common stock, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

1.76 **"LFG"** means Luna Foundation Guard Ltd.

8

1.77      ***"LFG Amount"*** means the amount of funds and/or Cryptocurrency transferred by LFG and/or Do Kwon to the Debtors and/or the Wind Down Trust pursuant to the SEC Settlements.

1.78      ***"Lien"*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.79      ***"Ordinary Course Professionals Order"*** means the *Order Authorizing Debtor to Employ Professionals Used in Ordinary Course of Business* [Docket No. 206].

1.80      ***"Other Bar Dates"*** means the Administrative Expense Claims Bar Date, the Private Wallet Bar Date, and the Bridge Wallet Bar Date.

1.81      ***"Other Secured Claim"*** means a Secured Claim other than a Beltran Allowed Secured Claim.

1.82      ***"Person"*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other Entity.

1.83      ***"Petition Date"*** means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

1.84      ***"Plan"*** means this chapter 11 plan, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with Section 12.4 of this Plan.

1.85      ***"Plan Administrator"*** means the Person or entity selected by the Creditors' Committee, subject to the consent of the SEC and the Debtors, who has the rights, powers and duties set out in the Wind Down Trust Agreement and is charged with overseeing the tasks outlined in Section 5.4 of this Plan. Where the context allows, references to the Plan Administrator may refer to the Plan Administrator directing or procuring an action of the Wind Down Trustee in its capacity as trustee of the Wind Down Trust in which capacity the Wind Down Trustee is legal owner of the assets comprised in the Wind Down Trust*;*

1.86      ***"Plan Supplement"*** means a supplemental appendix to the Plan containing, among other things, forms or term sheets of applicable documents, schedules and exhibits to the Plan to be filed with the Court, the following: (a) the Assumption Schedule, (b) the Schedule of Retained Causes of Action, (c) the Wind Down Budget, (d) the identity of the Wind Down Trustee, (e) a Wind Down Trust Agreement, (f) the identity of the Plan Administrator, (g) the identity of the Advisory Board, and (h) information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code.  Through the Effective Date, the Debtors, with the consent of the Creditors' Committee (not to be unreasonably withheld), shall have the right to amend any documents contained in, and exhibits to, any Plan Supplement document subject to the requirements of Section 12.4 of this Plan.

1.87      ***"Post-Effective Date Cash"*** means any Cash received by the Wind Down Trust after the Effective Date, including (i) Cash in Restricted Accounts, to the extent the Debtors or

9

the Wind Down Trust gain access to such accounts, and (ii) the proceeds from the sale of any or all Estate assets, including, but not limited to Cryptocurrency, Proximity, and the Venture Investments, and any other non-Cash assets of the Debtors that may become Cash, including proceeds from the Estate Causes of Action and Contributed Third-Party Claims; *provided*, *however*, that Post-Effective Date Cash shall not include the SEC Settlement Fund.

1.88        ***"Preliminary Crypto Loss Claim Bar Date Order"*** means that certain *Order (I) Establishing a Bar Date to File Preliminary Crypto Loss Proofs of Claim Solely for Voting Purpose, (II) Approving the Form and Manner of Notice for Filing Preliminary Crypto Loss Proofs of Claim, (III) Approving the Form and Manner of Proposed Notice of Preliminary Crypto Loss Claims Bar Date, and (IV) Granting Related Relief* [Docket No. 491].

1.89        ***"Prerequisite Condition"*** has the meaning set forth in <u>Section 9.1</u> of this Plan.

1.90        ***"Priority Non-Tax Claim"*** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.91        ***"Priority Tax Claim"*** means any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.92        ***"Private Wallet Crypto Holder"*** means a Token Holder with Tokens held in wallets or accounts owned or controlled by such Token Holder which are no longer readily accessible through the Debtors' applications or protocols as a result of the Debtors' Wind Down.  For the avoidance of doubt, to the extent such Tokens have not been withdrawn by the applicable Private Wallet Crypto Holder by the Private Wallet Bar Date and are accessible to the Debtors after the Private Wallet Bar Date, such Tokens shall be deemed property of the Estates.

1.93        ***"Private Wallet Bar Date"*** means the date that is thirty (30) calendar days after the Effective Date.

1.94        ***"Professionals"*** means financial advisors, attorneys, accountants, actuaries, investment bankers, consultants and other professionals.

1.95        ***"Pro Rata"*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims in that Class.

1.96        ***"Proof of Claim"*** means a proof of Claim filed against the Debtors in the Chapter 11 Cases.

1.97        ***"Proximity"*** means Proximity Panorama, LDA.

1.98        ***"Released Claims"*** means claims, counterclaims, disputes, interests, obligations, rights, suits, damages, Causes of Action, Avoidance Actions, obligations, debts, Liens, suits, judgments, demands, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of any of the Debtors, their Estates, the Wind Down Trust,

the Plan Administrator, and the Wind Down Trustee, as may be applicable, or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, as may be applicable, whether arising prepetition or postpetition, known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the defense of the SEC Enforcement Action and the investigation that preceded it, the defense of civil claims brought against the Debtors that have been dismissed, the defense of pending criminal proceedings against, and investigations into, the Debtors, the Debtors' in-court restructuring efforts, post-petition intercompany transactions approved by the Bankruptcy Court subject to the terms thereof, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of, as applicable, the Disclosure Statement, the Plan (including, for the avoidance of doubt, any Plan Supplement), the Wind Down Trust Formation Transactions, the SEC Settlements, the Definitive Documents, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the preparation for and filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit or consummation of any sale transactions during the Chapter 11 Cases, the administration and implementation of the Wind Down, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including those used to effectuate payment of fees and legal expenses and related vendors, related or relating to the Chapter 11 Cases, the defense of the SEC Enforcement Action and the investigation that preceded it, the defense of civil claims brought against TFL that have been dismissed, and the pending criminal proceedings and investigations.  Notwithstanding anything to the contrary in the foregoing, Released Claims only include claims held by the Debtors, their Estates, or the Wind Down Trustee (on behalf of the Wind Down Trust) or claims that could be asserted by or on behalf of the Debtors, their Estates, or the Wind Down Trustee on behalf of the Wind Down Trust under applicable law.  Released Claims shall also include all Avoidance Actions involving transactions used to effectuate payment of fees or legal fees and related vendors related or relating to the Chapter 11 Cases, the defense of the SEC Enforcement Action and the investigation that preceded it, the defense of civil claims brought against TFL that have been dismissed, and the pending criminal proceedings and investigations; *provided*, *however*, for the avoidance of doubt, nothing herein shall modify the terms of or the rights reserved under the Dentons Retention Order.

   1.99   ***"Released Parties"*** means, collectively: (a) John S. Dubel, Russell Nelms, Thong Kum Keen Benjamin, and TFL, each in their capacity as members of the Board of Directors; (b) the Wind Down Trustee; (c) the Creditors' Committee and each of its members, solely in their capacity as such; (d) the Advisory Board and each of its members, solely in their capacity as such; (e) the Plan Administrator in its capacity as such; (f) Weil, Gotshal & Manges LLP; (g) Alvarez & Marsal North America, LLC; (h) Epiq Corporate Restructuring, LLC; (i) Richards, Layton & Finger, P.A.; and (j) with respect to each of the foregoing, such Person's officers and directors, principals, members, and employees, in each case who served in such capacity on or after the Petition Date (but for the avoidance of doubt, not TFL's current or former shareholders, officers, or directors (other than John S. Dubel,

Russell Nelms, and Thong Kum Keen Benjamin)).  For the avoidance of doubt, nothing herein shall modify the terms of or the rights reserved under the Dentons Retention Order.

1.100    ***"Restricted Accounts"*** means certain TFL bank accounts and investment accounts located outside the United States, to which the Debtors' access has been restricted.

1.101    ***"Schedules"*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.102    ***"Schedule of Retained Causes of Action"*** means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, to be retained by the Debtors and transferred to the Wind Down Trust, which may include categories of Causes of Actions and potential defendants and shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.  For the avoidance of doubt, nothing herein is intended to limit the Wind Down Trust's or the Wind Down Trustee's ability to retain Causes of Action, or the Wind Down Trustee's ability to pursue such Causes of Action.

1.103    ***"SEC"*** means the Securities and Exchange Commission.

1.104    ***"SEC Claim"*** means the Claim, as determined by the *Final Judgment Against Defendants Terraform Labs Pte. Ltd. and Do Hyeong Kwon* entered by the United States District Court for the Southern District of New York in the SEC Enforcement Action at Docket No. 273, by the SEC against TFL pursuant to the SEC Settlements fixing TFL's civil penalty and disgorgement, including prejudgment interest, to $4,473,828,306 in total aggregate amount.

1.105    ***"SEC Enforcement Action"*** means the litigation captioned as *SEC v. Terraform Labs Pte. Ltd., et al.*, Case No. 1:23-cv-013460-JSR pending in the United States District Court for the Southern District of New York.

1.106    ***"SEC Settlements"*** means the (a) settlement of the SEC Claim between the Debtor and the SEC and (b) the settlement between Do Kwon and the SEC, the terms of which are set forth in the *Consent of Defendant Terraform Labs Pte. Ltd.* and the *Consent of Defendant Do Kwon*, filed in the SEC Enforcement Action at Docket Nos. 271-1 and 271-2.

1.107    ***"SEC Settlement Fund"*** means, pursuant to the terms of the SEC Settlements and the *Final Judgment Against Defendants Terraform Labs Pte. Ltd. and Do Hyeong Kwon* in the SEC Enforcement Action, filed at Docket No. 273, (a) as of the Effective Date, up to $7,000,000 in Cash transferred to the Wind Down Trust by Do Hyeong Kwon, *plus* such other funds, Cash, cash equivalents, Tokens, or other Assets that Do Hyeong Kwon transfers to the Wind Down Trust, *plus* the LFG Amount, and (b) after the Effective Date, such other funds, Cash, cash equivalents, or other Assets, that Mr. Kwon transfers to the Wind Down Trust, comprising the balance outstanding of the $204,320,196 monetary judgment against Mr. Kwon, plus the LFG Amount.  After the Effective Date, the SEC Settlement Fund shall be converted to Cash, to the extent applicable, and reserved for distribution solely to harmed investors holding Allowed Crypto Loss Claims.

12

1.108    **"Secured Claim"** means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in this Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.109    **"Security"** has the meaning set forth in section 101(49) of the Bankruptcy Code.

1.110    **"Senior Claim"** means any Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, and Other Secured Claim.

1.111    **"Senior Claim Pool"** means the Cash pool established pursuant to this Plan, containing on the Effective Date, the amount of Cash estimated by the Debtors to be necessary to pay holders of Allowed Senior Claims, plus to the total Disputed amounts of such Claims until final Allowance or Disallowance.

1.112    **"Statutory Fees"** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code to the extent applicable.

1.113    **"Subsequent Condition"** has the meaning set forth in Section 9.1 of this Plan.

1.114    **"Surplus Reserved Cash"** means a surplus in funding of the Wind Down Reserve as may be released from the Wind Down Reserve by the Wind Down Trustee, as directed by the Plan Administrator, from time to time pursuant to Section 5.4 of this Plan.

1.115    **"Surplus Senior Claim Pool Cash"** means a surplus in the funding of the Senior Claim Pool as may be released from the Senior Claim Pool by the Wind Down Trustee, as directed by the Plan Administrator, from time to time pursuant to Section 5.4 of this Plan.

1.116    **"Tax Code"** means the Internal Revenue Code of 1986, as amended.

1.117    **Terra Crypto"** means any Cryptocurrency issued, created, generated, minted, promoted by or otherwise associated with the Company and its Affiliates, the Terra Ecosystem, or any decentralized or centralized application or protocol on the TerraLunaClassic and TerraLuna blockchains, including Anchor (ANC), Bonded Assets (bLUNA and bETH), Mirror (MIR), Mirror Assets (mAssets), TerraLunaClassic (LUNC), Wrapped Luna (wLUNA), TerraClassicUSD (USTC), TerraLuna (LUNA), and Liquidity Pool (LP) tokens on TerraLunaClassic and TerraLuna decentralized exchanges.

1.118    **"Terra Ecosystem"** is defined as including, but not limited, to the projects, applications, and protocols listed on Debtors' website (https://www.terra.money/ecosystem) as of June 30, 2024 and the projects, applications, and protocols listed on Debtors' website as of May 2022 from the Wayback Machine (https://web.archive.org/web/20220510182304/https://www.terra.money/ecosystem).

13

1.119      ***"TFL"*** means Terraform Labs Pte. Ltd.

1.120      ***"TFL Additional Stock"*** means the 1,000,000,000 shares of TFL Stock issued in favor of the Wind Down Trust for $0.00000001 USD per share, pursuant to Section 5.5(c) of this Plan.

1.121      ***"TFL Equity Interest"*** means all Interests in TFL, including TFL Stock and any options, warrants or rights to acquire any such Interests.

1.122      ***"TFL Stock"*** means all shares of TFL.

1.123      ***"TLL"*** means Terraform Labs Limited, a British Virgin Islands entity.

1.124      ***"Token"*** means a unit of Cryptocurrency.

1.125      ***"Token Holder"*** means a holder of Tokens.

1.126      ***"Unimpaired"*** means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.127      ***"U.S. Trustee"*** means the United States Trustee for the District of Delaware.

1.128      ***"Venture Investments"*** means the investment interests held by TFL and TLL in third party funds, direct investments and other venture-related endeavors, as set forth in the Debtors' Schedules or otherwise.

1.129      ***"Waterfall"*** means the distribution of Post-Effective Date Cash, Surplus Reserved Cash, and Surplus Senior Claim Pool Cash, (i) first, to fund any deficits in the Wind Down Reserve, as determined in the sole discretion of the Plan Administrator, (ii) second, to fund any deficits in the Senior Claim Pool, as determined in the sole discretion of the Plan Administrator, and (iii) third, to fund the GUC Pool, until the General Unsecured Claim Payment Completion.

1.130      ***"Wind Down"*** means, following the Effective Date, the process to (i) sell, abandon, wind down, dissolve, liquidate, or distribute any remaining assets of the Debtors' Estates and (ii) resolve, terminate, or wind down any remaining liabilities of the Debtors' Estates, in each case in accordance with the Plan, including the transfer of all or part of the assets of the Debtors' Estates to the Wind Down Trust.

1.131      ***"Wind Down Amount"*** means the amount of Cash and cash equivalents (other than from the SEC Settlement Fund or proceeds thereof) sufficient to fund (1) the Wind Down Budget until the Wind Down Completion Date, taking into account expected Post-Effective Date Cash, and (2) the D&O Indemnification Obligations, in an amount to be determined prior to the Effective Date.

1.132      ***"Wind Down Budget"*** means a budget setting forth the estimate of costs and expenses necessary to effectuate the Wind Down through the Wind Down Completion Date, which budget may, after the Effective Date, be amended, modified, or supplemented from time to time by the Plan Administrator in its reasonable discretion.

14

1.133    *"Wind Down Completion Date"* means the date upon which all assets of the Wind Down Trust have been sold, abandoned, dissolved, liquidated, or otherwise disposed of, and all proceeds thereof or remaining assets of the Wind Down Trust have been distributed in accordance with the Plan.

1.134    *"Wind Down Reserve"* means, the Cash reserve established pursuant to this Plan, consisting of the Wind Down Amount.

1.135    *"Wind Down Trust"* means the STAR trust established under Part VIII of the Trusts Act of the Cayman Islands to effectuate the Wind Down, as described in <u>Section 5.5</u> of this Plan and, where applicable, refers to the Wind Down Trustee acting in its capacity as trustee of the Wind Down Trust; *provided*, *however*, that the Debtors reserve the right with the Creditors' Committee's consent, not to be unreasonably withheld, to establish the Wind Down Trust under a different form under Cayman Islands law or in a jurisdiction other than the Cayman Islands prior to the Effective Date.

1.136    *"Wind Down Trust Agreement"* means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the Wind Down Trust and governing the Wind Down Trustee, the Plan Administrator, and the Advisory Board, substantially in the form included in the Plan Supplement (as it may be subsequently modified from time to time with as set forth in the Wind Down Trust Agreement).

1.137    *"Wind Down Trust Formation Transactions"* means one or more transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, including any transactions that may be necessary or appropriate to effectuate the actions described in <u>Sections 5.4</u> through <u>5.5</u> and <u>10.1</u> of this Plan, which include (i) the establishment of the Wind Down Trust, (ii) the issuance and vesting of the TFL Additional Stock in the Wind Down Trust, (iii) the assignment and vesting of the Estates' assets in the Wind Down Trust, and (iv) the execution of the Wind Down Trust Transfer Agreement(s). The Debtors, the Wind Down Trust, and the Wind Down Trustee may take all actions consistent with this Plan and the Wind Down Trust Agreement as may be necessary or appropriate to effect the Wind Down Trust Formation Transactions.

1.138    *"Wind Down Trust Transfer Agreement(s)"* means one or more agreements transferring Assets, documents, and information from the Debtors to be entered into between the Wind Down Trustee, on behalf of the Wind Down Trust, and the Debtors, on behalf of themselves, the terms of which shall be consistent with this Plan and otherwise reasonably acceptable to the Debtors and the Creditors' Committee.

1.139    *"Wind Down Trustee"* means the Person or entity holding the office of trustee of the Wind Down Trust, being a Cayman Islands licensed professional trust company (if applicable) selected by the Debtors and the Creditors' Committee, subject to the consent of the SEC, and appointed pursuant to the Wind Down Trust Agreement, this Plan, and the Confirmation Order.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a

15

whole and not to any particular section, subsection or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.  Controlling Document.

In the event of an inconsistency between the Plan and any other document, the terms of the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided* that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## SECTION 2.    ADMINISTRATIVE EXPENSE, PRIORITY CLAIMS, PRIVATE WALLET CRYPTO HOLDERS, AND BRIDGE WALLET CRYPTO HOLDERS.

### 2.1.    *Administrative Expense Claims Bar Date.*

Except as provided for herein or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Expense Claims (other than holders of Administrative Expense Claims paid in the ordinary course of business, holders of Administrative Expense Claims arising under section 1930 of chapter 123 of title 28 of the United States Code, and holders of Fee Claims) must file and serve on the Debtors requests for payment of such Administrative Expense Claims not already Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order on or before the Administrative Expense Claims Bar Date or be forever barred, estopped, and enjoined from asserting such Claims against the Debtors or their assets or properties.

### 2.2.    *Allowance of Administrative Expense Claims.*

An Administrative Expense Claim with respect to which a request for payment has been properly and timely filed pursuant to Section 2.1 of this Plan shall become an Allowed Administrative Expense Claim if no objection to such request is filed by the Plan Administrator with the Bankruptcy Court on or before one hundred twenty (120) days after the Effective Date, or on such later date as may be fixed by the Bankruptcy Court.  If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order or such Claim is settled, compromised, or otherwise resolved by the Plan Administrator pursuant to Section 7.3 of this Plan.

16

### 2.3.    *Payment of Allowed Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim (other than a Fee Claim) agrees to a different treatment, the holder of such Allowed Administrative Expense Claim shall receive, on account of such Allowed Claim, Cash in an amount equal to the Allowed amount of such Claim from the Senior Claim Pool, within thirty (30) days following the later to occur of (i) the Effective Date and (ii) the date on which such Administrative Expense Claim shall become an Allowed Claim; *provided, however*, that Allowed Administrative Expense Claims against any of the Debtors representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, shall be paid by the Wind Down Trustee, at the direction of the Plan Administrator, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities.  For the avoidance of doubt, Administrative Expense Claims shall be paid in full in cash to the extent Allowed.

### 2.4.    *Fee Claims.*

(a)    All entities seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is sixty (60) days after the Effective Date, and (ii) shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) allowing any such postpetition, Estate-retained professional fee and expense claim (A) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Fee Claim is entered or (B) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor or the Plan Administrator, as applicable.  The Wind Down Trustee, at the direction of the Plan Administrator, is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

(b)    Prior to the Effective Date, the Debtors shall establish the Fee Escrow Account and fund such account with an amount of Cash sufficient to pay all Fee Claims as determined by Section 2.4(c) of this Plan.  On the date the Wind Down Trust is established or as soon as reasonably practicable thereafter, the Debtors will cause title to the Fee Escrow Account to be transferred to the Wind Down Trust.

(c)    At least three (3) business days prior to the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services before the Effective Date to the Debtors, and the Debtors shall separately escrow such estimated amounts in the Fee Escrow Account (less any retainers) for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a holder of a Fee Claim does not provide an estimate, the Debtors may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim.  When all such Allowed Fee Claims have been paid in full, any remaining amount in such escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Wind Down Trust and the Wind Down Trustee without any further action or order of the Bankruptcy Court, shall be deemed Post-Effective Date Cash, and may, for the avoidance of doubt, be used to administer the Wind Down Trust subject to and in accordance with the Wind Down Budget.

17

(d)    Funds held in the Fee Escrow Account shall not be considered property of the Debtors' Estates or property of the Wind Down Trust, but shall revert to the Wind Down Trust and be deemed Post-Effective Date Cash, in accordance with <u>Section 2.4(c)</u> of this Plan, only after all Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full.  The Fee Escrow Account shall be held in trust for Estate-retained professionals and for no other parties until all Fee Claims Allowed by the Bankruptcy Court have been paid in full.

### 2.5.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, at the sole option of the Debtor or the Wind Down Trustee, as applicable, (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is forty-five (45) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Petition Date; *provided*, that the Debtor reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

### 2.6.    *Private Wallet Crypto Holders and Private Wallet Bar Date.*

Private Wallet Crypto Holders shall have until the Private Wallet Bar Date to request withdrawal of Tokens held in wallets or accounts owned or controlled by such Private Wallet Crypto Holder or be forever barred, estopped, and enjoined from withdrawing such Tokens and asserting any Claims relating to the loss of access to such Tokens against the Debtors or the Wind Down Trust, as applicable, including Crypto Loss Claims, or their respective assets or properties.  Any such Tokens remaining in wallets or accounts owned or controlled by such Private Wallet Crypto Holder after the Private Wallet Bar Date and that are accessible to the Debtors or the Wind Down Trust after the Private Wallet Bar Date, shall automatically become property of the Wind Down Trust and deemed Post-Effective Date Cash.

### 2.7.    *Bridge Wallet Crypto Holders and Bridge Wallet Bar Date.*

Bridge Wallet Crypto Holders shall have until the Bridge Wallet Bar Date to redeem Terra Crypto held in the Bridge Wallets or be forever barred, estopped, and enjoined from redeeming such Terra Crypto and asserting any Claims, including Crypto Loss Claims, relating to the loss of access to such Terra Crypto against the Debtors or the Wind Down Trust, as applicable, or their respective assets or properties. Any Terra Crypto remaining in the Bridge Wallets after the Bridge Wallet Bar Date to which the Debtors or the Wind Down Trust has access or control after the Bridge Wallet Bar Date shall be burned.

## SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1.    *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy

18

Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2.    *Summary of Classification.*

The following table designates the Classes of Claims against, and Interests in, each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this <u>Section 3</u>.

The classification and treatment of Claims under this Plan takes into account various factors, including (i) the potential that some or all Crypto Loss Claims could be subordinated pursuant to section 510(b) of the Bankruptcy Code, and (ii) that holders of Crypto Loss Claims shall receive distributions of certain assets, including those in the SEC Settlement Fund, pursuant to the SEC Settlements, some of which might have been assets available for distribution to the GUC Pool but for the SEC Settlements.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| 3 | Beltran Allowed Secured Claims | Unimpaired | No (Presumed to accept) |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Crypto Loss Claims | Impaired | Yes |
| 6 | SEC Claim | Impaired | Yes |
| 7 | Intercompany Claims | Impaired | No (Deemed to reject) |
| 8 | Intercompany Interests | Impaired | No (Deemed to reject) |
| 9 | 510(c) Subordinated Claims | Impaired | No (Deemed to reject) |
| 10 | TFL Equity Interests | Impaired | No (Deemed to reject) |

### 3.3.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor, the Plan Administrator, or the Wind Down Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.4.    *Claims Arising Out of the Beltran Action.*

To the extent Claims arising out of the Beltran Action are Beltran Allowed Secured Claims, then after such Claims are satisfied, TFL and/or the Plan Administrator shall request of the High Court of the Republic of Singapore that any excess amount of the Beltran Escrow Deposit shall be returned to the Wind Down Trust.  For the avoidance of doubt, nothing in the Plan shall be deemed to Allow the Claims arising out of the Beltran Action and/or modify the Beltran Stipulated Order.

19

### 3.5. *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.6. *Voting Classes; Presumptions.*

(a)    **Acceptance by Certain Impaired Classes.**  Only holders of Allowed Claims in Classes 4, 5, and 6 are entitled to vote to accept or reject this Plan.  An Impaired Class of Claims shall have accepted this Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.  Holders of Claims in Classes 4, 5, and 6 shall receive Ballots containing detailed voting instructions.

(b)    **Presumed Acceptance by Unimpaired Classes.**  Holders of Claims and Interests in Classes 1, 2, 3 and 8 (if so treated) are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

(c)    **Deemed Rejection by Certain Impaired Classes.**  Holders of Claims and Interests in Classes 7, 8 (if so treated), 9, and 10 are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

### 3.7. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

The Debtor shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserves the right to modify this Plan in accordance with Section 12.4 of this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

### 3.8. *No Waiver.*

Nothing contained in this Plan shall be construed to waive a Debtor's, the Wind Down Trustee's, or other Person's right to object on any basis to any Claim, except as provided for in the Plan.

20

**SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS.**

    4.1.    ***Priority Non-Tax Claims (Class 1).***

        (a)    *Classification*:  Class 1 consists of Priority Non-Tax Claims against the Debtors.

        (b)    *Treatment*:  On or as soon as practicable after the Effective Date, except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each holder thereof shall be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

        (c)    *Voting*:  Class 1 is Unimpaired, and holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

    4.2.    ***Other Secured Claims (Class 2).***

        (a)    *Classification*:  Class 2 consists of the Other Secured Claims against the Debtors.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2.

        (b)    *Treatment*:

            (i)    Except to the extent that a holder of an Allowed Other Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is thirty (30) days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim will receive, on account of such Allowed Claim, at the sole option of the Debtors or the Plan Administrator, as applicable: (i) Cash in an amount equal to the Allowed amount of such Claim; (ii) such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired; or (iii) return of the applicable collateral in satisfaction of the Allowed amount of such Other Secured Claim.

            (ii)    Except as otherwise specifically provided herein, upon the payment in full in Cash of an Other Secured Claim, any Lien securing an Other Secured Claim that is paid in full, in Cash, shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors held by such holder and to take such actions as may be requested by the Plan Administrator, to

21

evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Plan Administrator.

(c)     *Voting*: Class 2 is Unimpaired, and holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

**4.3.     *Beltran Allowed Secured Claims (Class 3).***

(a)     *Classification*:  Class 3 consists of the Beltran Allowed Secured Claims against the Debtors.

(b)     *Treatment*:  Except to the extent that a holder of a Beltran Allowed Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is thirty (30) days after the date that: (i) such Beltran Allowed Secured Claim becomes an Allowed Claim, and (ii) a Final Order of the courts of the Republic of Singapore is made permitting the release of the Beltran Escrow Deposit to the holders of the Beltran Allowed Secured Claims, or as soon thereafter as is reasonably practicable, each holder of a Beltran Allowed Secured Claim will receive payment from the Beltran Escrow Deposit as determined by the Final Order of the courts of the Republic of Singapore.

(c)     *Voting*:  Class 3 is Unimpaired, and holders of Beltran Allowed Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Beltran Allowed Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Beltran Allowed Secured Claims.

**4.4.     *General Unsecured Claims (Class 4).***

(a)     *Classification*:  Class 4 consists of General Unsecured Claims against the Debtor.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, each holder of an Allowed General Unsecured Claim will receive its Pro Rata share of the GUC Pool up to the full amount of such Allowed General Unsecured Claim.

(c)     *Voting*:  Class 4 is Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

22

4.5.    *Crypto Loss Claims (Class 5)*

(a)    *Classification*:  Class 5 consists of Crypto Loss Claims against the Debtor.

(b)    *Treatment*:  Each holder of an Allowed Crypto Loss Claim will receive its share of the Crypto Loss Claim Pool according to the Crypto Loss Claim Procedures.  Except as provided for herein or in any order of the Bankruptcy Court, holders of Crypto Loss Claims must file and serve on the Wind Down Trust Proofs of Claim consistent with the procedures to be specified in the motion seeking to establish a Crypto Loss Claim Bar Date or be forever barred, estopped, and enjoined from asserting such Claims against the Wind Down Trust or their assets or properties.

(c)    *Voting*:  Class 5 is Impaired, and the holders of Crypto Loss Claims are entitled to vote to accept or reject the Plan.

4.6.    *SEC Claim (6)*

(a)    *Classification*:  Class 6 consists of the SEC Claim against the Debtors.

(b)    *Treatment*:  By consent of the SEC, pursuant to the SEC Settlements, the SEC Claim shall be treated as an Allowed general unsecured claim. Any distributions made to holders of Allowed Class 4 and Allowed Class 5 Claims shall be deemed to satisfy the SEC Claim. For the avoidance of doubt, (i) there shall be no distributions on the SEC Claim unless Allowed Claims in Class 4 and Class 5 are satisfied in full, and (ii) if the Allowed Claims in Class 4 and Class 5 are satisfied in full under the Plan, distributions shall be made on account of any remaining unsatisfied portion of the SEC Claim until paid in full before any distribution is made to holders of 510(c) Subordinated Claims or holders of TFL Equity Interests.  Nothing in this Plan shall be construed (i) to limit or modify the ability of any whistleblower to seek an award in connection with the SEC Enforcement Action under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 and all applicable SEC rules; (ii) to limit or modify the SEC's discretion in determining eligibility for and amounts or percentages of any whistleblower awards in connection with the SEC Enforcement Action pursuant to the Dodd-Frank Wall Street Reform and Consume Protection Act of 2010 and all applicable SEC rules; or (iii) to override or modify any aspects of the judgment entered in the SEC Enforcement Action, dated June 12, 2024.

(c)    *Voting*:  Class 6 is Impaired, and the holder of the SEC Claim is entitled to vote to accept or reject the Plan.

4.7.    *Intercompany Claims (Class 7).*

(a)    *Classification*:  Class 7 consists of Intercompany Claims against the Debtor.

23

(b) *Treatment*:  On or after the Effective Date, all Intercompany Claims will either be reinstated or cancelled and released at the option of the Debtor or otherwise treated as determined by the Plan Administrator; *provided* that no such distributions shall be made on account of such Intercompany Claims on the Effective Date.

(c) *Voting*: Class 7 is Impaired, and the holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

**4.8.** **_Intercompany Interests (Class 8)._**

(a) *Classification*:  Class 8 consists of Intercompany Interests in the Debtors.

(b) *Treatment*:  On the Effective Date, Intercompany Interests shall receive no recovery or distribution and be reinstated solely to maintain the Debtors' corporate structure, as necessary.

(c) *Voting*:  Allowed Intercompany Interests are Impaired, and holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Intercompany Interests are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such Allowed Intercompany Interests.

**4.9.** **_510(c) Subordinated Claims (Class 9)._**

(a) *Classification*: Class 9 consists of 510(c) Subordinated Claims.

(b) *Treatment*: Class 9 510(c) Subordinated Claims are subordinated pursuant to this Plan and section 510(c) of the Bankruptcy Code.  510(c) Subordinated Claims shall be deemed expunged, released, and extinguished without further action by or order of the Bankruptcy Court, and shall be of no further force or effect.

(c) *Voting*:  Class 9 is Impaired, and the holders of TFL Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of 510(c) Subordinated Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such 510(c) Subordinated Claims.

**4.10.** **_TFL Equity Interests (Class 10)._**

(a) *Classification*:  Class 10 consists of TFL Equity Interests.

24

(b)     *Treatment*:  On the Effective Date, the Debtors shall cause TFL to issue the TFL Additional Stock in favor of the Wind Down Trust, pursuant to Section 5.5(c) of this Plan, solely for the purposes of facilitating the orderly administration of the Wind Down and dissolution of the Debtors. Holders of TFL Equity Interest shall retain their TFL Stock, subject to dilution by the issuance of the TFL Additional Stock in favor of the Wind Down Trust, pursuant to Section 5.5(c) of this Plan.  Holders of TFL Equity Interests are not expected to receive distributions under the Plan.

(c)     *Voting*:  Class 10 is Impaired, and the holders of TFL Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of TFL Equity Interests are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to such TFL Equity Interests.

## SECTION 5.    MEANS FOR IMPLEMENTATION.

### 5.1.    *Limited Substantive Consolidation of the Debtors.*

This Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order deeming the substantive consolidation of the Debtors' Estates into a single Estate for certain limited purposes relating to the Plan, including voting, Confirmation, and Distribution.  As a result of the limited substantive consolidation of the Estates, (a) each Class of Claims and Interests shall be treated as against a single consolidated Estate without regard to the separate legal existence of the Debtors, (b) as set forth in Section 4.7 of this Plan, no Distributions under the Plan shall be made on account of Intercompany Claims, and (c) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one consolidated entity so that, subject to the other provisions of section 553, debts due to one Debtor may be set off against the debts of the other Debtor.  The limited substantive consolidation of the Debtors under the Plan shall not affect (i) the legal and organizational structure of the Debtors, including for corporate, tax or any other purpose, (ii) the ability of the Wind Down Trust and the Wind Down Trustee, as directed by the Plan Administrator, to subordinate or otherwise challenge Claims on an entity-by-entity basis, (iii) any Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the Estates, and (iv) payments from any insurance policies or the proceeds thereof.

### 5.2.    *Sources of Consideration for Plan Distribution.*

The Debtors and the Wind Down Trustee, as applicable, shall fund Distributions under this Plan as set forth herein with the (a) Effective Date Available Cash, (b) Post-Effective Date Cash, (c) the Senior Claim Pool, (d) the SEC Settlement Fund, and (e) the Surplus Reserved Cash.

### 5.3.    *Implementation.*

(a)     Prior to the Effective Date, the Debtors and, after the Effective Date, the Plan Administrator shall use commercially reasonable efforts to sell the Debtors' interest in Proximity, all related assets of Proximity, and the Venture Investments pursuant to section 363 of the Bankruptcy Code or otherwise.

(b)     On the Effective Date, the Wind Down Trust shall be established.

(c)     On the Effective Date, the Senior Claim Pool shall be established and funded pursuant to the Plan.

(d)     On the Effective Date, the SEC Settlement Fund shall be established and funded.

(e)     On the Effective Date, the GUC Pool shall be established and funded pursuant to the Plan.

(f)     Prior to the Effective Date, the Fee Escrow Account shall be established and funded with an amount of Cash sufficient to pay Fee Claims, based upon estimates provided by the Professionals, as set forth in Section 2.4 of this Plan.

(g)     On the Effective Date, the Wind Down Reserve and the Wind Down Trust shall be funded in accordance with the Wind Down Budget for the Wind Down process and be funded with the Wind Down Amount.  An initial Wind Down Budget shall be filed with the Plan Supplement and may be amended, modified, or supplemented from time to time by the Plan Administrator.

(h)     On the Effective Date, any remaining assets and any Causes of Action of the Debtors' Estates shall transfer to the Wind Down Trust automatically and without further action of the Bankruptcy Court.

(i)     On or before the Effective Date, TFL shall transfer all remaining non-Terra Crypto, if any, held in private wallets or accounts controlled or owned by the Debtors to a third party custodian wallet or account held in the name of the Wind Down Trustee.

(j)     Up to the Private Wallet Bar Date, the Debtors shall provide Private Wallet Crypto Holders access to such Private Wallet Crypto Holders' wallets or accounts for the sole purpose of allowing such Private Wallet Crypto Holder to withdraw Tokens held in such wallets or accounts, which, for the avoidance of doubt, shall be deemed property of the Estates, to the extent such Tokens have not been withdrawn by the applicable Private Wallet Crypto Holder by the Private Wallet Bar Date and are accessible to the Debtors or the Wind Down Trust after the Private Wallet Bar Date;

(k)     Up to the Bridge Wallet Bar Date, the Debtors shall provide Bridge Wallet Crypto Holders ability to redeem the Terra Crypto held in the Bridge Wallets; *provided* that, to the extent such Terra Crypto have not been redeemed by the Bridge Wallet Bar Date and are accessible to the Debtors or the Wind Down Trust after the Bridge Wallet Bar Date, the Wind Down Trust shall burn all such Terra Crypto remaining in the Bridge Wallets;

(l)     At the conclusion of the Wind Down, any residual amounts remaining in the Wind Down Reserve shall be transferred to the GUC Pool for final distribution.  Upon the General Unsecured Claims Payment Completion, any residual amounts remaining in the Wind Down Reserve shall be transferred to the Crypto Loss Claims Pool.

(m)     In accordance with Section 5.4 of this Plan, the Plan Administrator may allocate Surplus Reserved Cash pursuant to the Waterfall.

26

(n)     In accordance with <u>Section 5.4</u> of this Plan, the Plan Administrator may allocate Surplus Senior Claim Pool Cash pursuant to the Waterfall.

**5.4.    *Plan Administrator*.**

(a)     *Appointment*.  The Plan Administrator's retention shall commence on the Effective Date and shall continue until: (i) the Bankruptcy Court enters an order closing the Chapter 11 Cases, unless otherwise set forth in such order; (ii) the Bankruptcy Court enters an order removing the Plan Administrator for cause; or (iii) the Plan Administrator resigns, dies, dissolves, is incapacitated, or is removed in accordance with the Wind Down Trust Agreement, and a successor Plan Administrator is appointed in accordance with the Wind Down Trust Agreement.

(b)     *Authority*.  Subject to <u>Sections 5.4(b) and (c)</u> of this Plan and in accordance with the Wind Down Trust Agreement, the Plan Administrator shall have the authority and right on behalf of the Debtors, and the directors of TFL shall be deemed to have delegated their authority, rights, powers and discretions under the TFL constitution, Singapore Companies Act of 1967 or any applicable law, without the need for Bankruptcy Court approval (unless otherwise indicated), in furtherance of the Plan Administrator's fiduciary duties to the creditor beneficiaries of the Wind Down Trust (until all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan), and subject to any consent or consultation rights of the Wind Down Trustee and/or the Advisory Board, as set forth herein and in the Wind Down Trust Agreement, to carry out and implement all provisions of the Plan, including, without limitation, to do any of the following or, where applicable to procure or direct that the Wind Down Trustee does so:

(i)     subject to <u>Section 7</u> of this Plan, except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process in accordance with the terms of this Plan, including to Allow, object to, or seek to subordinate, compromise or settle any and all Claims against the Debtors, including indemnification claims;

(ii)     direct the Wind Down Trustee to calculate and make Distributions in accordance with this Plan;

(iii)     withhold from the amount distributable to any person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

(iv)     exercise its reasonable business judgment to direct and control the Wind Down under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims, including receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind Down Trust to abandon the Wind Down assets;

(v)     marshal, market for sale, and wind down any of the remaining assets of the Wind Down Trust;

(vi)     prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Plan Administrator as described herein;

27

(vii)    investigate any assets of the Wind Down Trust, and any other potential Causes of Action and Contributed Third-Party Claims;

(viii)    offer and provide incentives to any Contributing Claimants, including an increase of up to 10% of Allowed Claims of all Contributing Claimants;

(ix)    other than any Causes of Action released by the Debtor pursuant to the Plan or otherwise, prosecute all Causes of Action and Contributed Third-Party Claims on behalf of the Debtor, elect not to pursue any Causes of Action and Contributed Third-Party Claims, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action and Contributed Third-Party Claims, as the Plan Administrator may determine is in the best interests of the Debtors and their Estates;

(x)    acquire, including, without limitation, through purchase, settlement, or contribution, litigation and other claims, including, without limitation, Contributed Third-Party Claims related to the Debtors, and prosecuting such claims;

(xi)    develop and use creditor communication procedures, including a creditor portal (if necessary);

(xii)    review and compel turnover of the property of the Debtors or the Wind Down Trust;

(xiii)    pursuant to any investigation related to a Cause of Action, seek the examination of any person pursuant to Federal Rule of Bankruptcy Procedure 2004;

(xiv)    retain professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to the Wind Down Trust Agreement to assist in performing its duties and the duties of the Wind Down Trustee under the Plan;

(xv)    maintain the books and records and accounts of the Debtors and the Wind Down Trust;

(xvi)    incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals retained by the Wind Down Trustee or the Plan Administrator;

(xvii)    protect and enforce the rights to the assets of the Wind Down Trust (including any Causes of Action and Contributed Third-Party Claims) vested in the Wind Down Trust and the Plan Administrator by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(xviii)    open and maintain bank accounts on behalf of or in the name of the Wind Down Trust;

(xix)    purchase and carry all insurance policies that the Plan Administrator deems reasonably necessary or advisable to pay all associated insurance premiums and costs;

(xx)    take such actions as described in Section 5.4(c) of this Plan;

28

(xxi)    pay Statutory Fees in accordance with <u>Section 12.1</u> of this Plan;

(xxii)    amend, modify, or supplement the Wind Down Budget or the Wind Down Trust Agreement;

(xxiii)    to the extent not already determined and implemented, determine the procedure by which a holder of a Claim or Interest may contribute its Contributed Third-Party Claims to the Wind Down Trust;

(xxiv)    determine, from time to time, whether the amounts available in the Wind Down Reserve are in excess of the amount necessary to satisfy the purpose for which such reserve was established and amend, modify, or supplement the Wind Down Budget accordingly.  If the Plan Administrator determines that a surplus exists in the Wind Down Reserve as of the date of such determination, the Plan Administrator may allocate such Surplus Reserved Cash pursuant to the Waterfall; *provided*, that the amount reserved on account of the D&O Indemnification Obligations shall diminish only as payments are made on account of the D&O Indemnification Obligations;

(xxv)    determine, from time to time, whether the amounts available in the Senior Claim Pool are in excess of the amount necessary to pay holders of Allowed Senior Claims, plus any such Disputed Claims until final Allowance or Disallowance. If the Plan Administrator determines that a surplus exists in the Senior Claim Pool as of the date of such determination, the Wind Down Trustee may allocate the Surplus Senior Claim Pool Cash pursuant to the Waterfall;

(xxvi)    enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, the Wind Down Trust Agreement, and to perform all obligations thereunder;

(xxvii)    perform other duties and functions that are consistent with the implementation of the Plan; and

(xxviii)    close the Chapter 11 Cases.

For the avoidance of doubt, until all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan, the Plan Administrator shall owe no fiduciary duties to TFL Existing Equity Interests on account of the TFL Additional Shares maintained by the Wind Down Trustee, and shall instead owe fiduciary duties to creditor beneficiaries of the Wind Down Trust.

(c)    *Tax Power for Debtors*.  The Wind Down Trustee, in its capacity as the trustee of the Wind Down Trust and as directed by the Plan Administrator, shall have full and exclusive authority and responsibility with respect to all taxes of the Debtors (including, without limitation, as the common parent or other agent of any consolidated, combined, or unitary tax group of which the Debtors were the agent), to the same extent as if the Wind Down Trustee were the debtor-in-possession.  Without limiting the foregoing, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the Plan Administrator and/or the Wind Down Trustee, in its capacity as the trustee of

29

the Wind Down Trust, to correspond with any taxing authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer tax payments and tax returns.  In furtherance of the foregoing:

(i)     Following the Effective Date, the Plan Administrator shall (a) prepare and file (or cause to be prepared and filed), on behalf of the Debtors, all tax returns, informational returns, reports, statements, returns or disclosures relating to the Debtor that are required to be filed, by any Governmental Unit or applicable law or that the Plan Administrator otherwise deems appropriate, including the filing of amended tax returns or requests for refunds for all taxable periods; (b) request, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its Estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws; and (c) represent the interest and account of each Debtor or its Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit.

(ii)     The Wind Down Trust shall be entitled to all tax refunds of the Debtors, and the Wind Down Trust shall bear responsibility for all tax liabilities of the Debtors for all taxable years, to the extent not satisfied or otherwise released by the Plan.  For the avoidance of doubt, the Wind Down Trustee and the Plan Administrator shall not be personally liable for any tax liabilities of the Debtors.

(d)     *Boards of Directors and Officers*.  Upon the Effective Date, (i) the officers and directors of the Debtors existing prior to the Effective Date shall be relieved of any and all duties with the respect to the Debtors and shall be deemed to have resigned without the requirement of having to take any further action and (ii) the Plan Administrator shall be the sole officer, director, or manager, as applicable, of each of the Debtors without the requirement of having to take any further action; *provided, that*, TFL shall have one director who is ordinarily resident in Singapore, and who shall also be a member of the Advisory Board, for the purpose of ensuring compliance with any corporate governance and reporting requirements of TFL under Singapore law including, among other things, the holding of an annual general meeting and laying of financial statements at the annual general meeting (section 201 of the Singapore Companies Act 1967), the lodgment of annual returns (section 197 of the Singapore Companies Act 1967), any tax obligations of TFL under the Singapore Income Tax Act 1947 and the maintenance of registers of the company and lodging of documents as required under Singapore law.  The Plan Administrator shall cooperate with and assist TFL's Singapore-resident director to ensure compliance with the aforementioned Singapore law requirements.

(e)     *Wind Down*.  After the Effective Date, pursuant to the Plan, the Wind Down Trustee, and the Plan Administrator shall effectuate the Wind Down according to the Wind Down Budget without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, *provided, that*, the Wind Down Trustee and the Plan Administrator shall not effectuate the Wind Down in a manner inconsistent with any express requirements of the Wind Down Trust Agreement, including with respect to any consent or consultation rights of the Advisory Board.  The Wind Down (as determined for federal income tax purposes) shall occur in an expeditious but orderly manner after the Effective Date.

(f)     *Indemnification*.  The Wind Down Trust shall indemnify and hold harmless the Wind Down Trustee, the Plan Administrator, and the Advisory Board, each solely in its capacity as such, for any losses incurred in such capacity, except to the extent such losses were the result of the such party's bad faith, gross negligence, willful misconduct or criminal conduct.

30

(g)     *Dissolution*.  After the Effective Date, the Wind Down Trustee and the Plan Administrator shall, subject to applicable non-bankruptcy law and consistent with the implementation of this Plan, merge, dissolve, liquidate, or take such other similar action with respect to each Debtor (including the cancellation of all Interests in each Estate) and complete the winding up of such Estate as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Estate or its shareholders or members, as applicable, or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate Governmental Unit.  The Wind Down Trustee may, to the extent required by applicable non-bankruptcy law, maintain Debtor as a corporate entity in good standing until such time as such Debtor is dissolved or merged out of existence in accordance with the Plan.  After (i) all Disputed Claims have been resolved, (ii) all Assets have been liquidated, (iii) all distributions from the Wind Down Trust required to be made by the Wind Down Trustee under the Plan and the Wind Down Trust Agreement have been made, and (iv) all necessary obligations with regard to Singaporean and/or British Virgin Islands corporate and tax laws have been fulfilled, the Wind Down Trustee shall expeditiously dissolve each Debtor, which shall be no later than December 31, 2025; *provided*, that such date may be extended by order of the Bankruptcy Court.

## 5.5.   *Wind Down Trust.*

(a)     *Establishment of Wind Down Trust*.  On or before the Effective Date, the Debtors, the Plan Administrator, and/or the Wind Down Trustee shall take all necessary steps to establish the Wind Down Trust for the benefit of holders of Claims against the Debtors, including executing the Wind Down Trust Agreement and the Wind Down Transfer Agreement, and all Assets held by the Debtors shall transfer to, and vest exclusively in, the Wind Down Trust.  With respect to actions taken in this <u>Section 5.5</u>, the Wind Down Trustee is acting solely in its capacity as trustee of the Wind Down Trust.  For the avoidance of doubt, the Wind Down Trust will operate in compliance with state and federal securities laws and SEC staff guidance regarding liquidating trusts.

(b)     *Wind Down Trust Agreement*.  For the avoidance of doubt, the establishment, obligations, and governance of the Wind Down Trust, the rights, obligations, and duties of the Wind Down Trustee and the Plan Administrator, and the rights of creditors, including consent and consultation rights, shall be set forth fully in the Wind Down Trust Agreement, and the consent and consultation rights set forth in <u>Section 5.4</u> of this Plan are cumulative to those set forth in the Wind Down Trust Agreement.  In the event of a conflict between the consent rights set forth in <u>Section 5.4</u> of this Plan on the one hand, and the Wind Down Trust Agreement or any other document on the other, the document containing the broadest consent or consultation rights shall control.  For the further avoidance of doubt, and notwithstanding anything to the contrary herein, any consent or consultation rights set forth in the Wind Down Trust Agreement shall not limit, dilute, or otherwise impair those set forth in <u>Section 5.4</u> of this Plan.

(c)     *Issuance of TFL Additional Stock to Wind Down Trust*.  On the Effective Date, after the transfer of the Estates' Assets to the Wind Down Trust pursuant to <u>Section 5.5(e)</u> of this Plan, the Debtors and/or the Wind Down Trustee shall cause TFL to issue the TFL Additional Stock to the Wind Down Trust.  Upon issuance of the TFL Stock to the Wind Down Trust, the Wind Down Trust shall be the majority shareholder of TFL, from and after the Effective Date. The holders of TFL Equity Interests hereby agree to, or shall be deemed to, waive all of their pre-emption rights under the TFL constitution in respect of the issuance of the TFL Additional Stock to the Wind Down Trust. The holders of TFL Equity Interests hereby appoint, or shall be deemed to appoint, the Wind Down Trustee as their true and lawful attorney and agent and irrevocably authorize, direct, instruct and empower the Wind Down Trustee to enter

31

into, execute, and deliver (whether as a deed or otherwise) any resolution, filing, or document which is necessary or appropriate to effect the issuance of the TFL Additional Stock.

(d)        *Purpose of Wind Down Trust*.  The Wind Down Trust shall be established for the purposes described in this Plan (including, without limitation, to allow the Wind Down Trustee and the Plan Administrator to carry out the acts described in <u>Sections 5.4(b)</u> and <u>(c)</u> of this Plan) and any others more fully described in the Wind Down Trust Agreement.  The Wind Down Trust shall retain all rights to commence and pursue all Causes of Action that are not released under the Plan.  The Wind Down Trust shall have no objective to continue or engage in the conduct of a trade or business.  The Plan Administrator shall administer the Wind Down, subject to the terms of the Wind Down Trust Agreement, this Plan, and the Confirmation Order.  The Wind Down Trust shall be administered and implemented by the Plan Administrator and, where applicable, the Wind Down Trustee with the oversight of the Advisory Board, as provided in the Plan and the Wind Down Trust Agreement.

(e)        *Transfer of Estate Assets to Wind Down Trust*.  On the Effective Date, the Estate Assets will be transferred to and vest in the Wind Down Trust in accordance with the term set forth herein and the Wind Down Trust Agreement; *provided*, *however*, that to the extent certain Assets, because of their nature or because such Assets will accrue or become transferable subsequent to the Effective Date, and cannot be transferred to, vested in, and assumed by the Wind Down Trust on such date, such Assets shall be automatically, and without further act or deed, transferred to, vested  in, or assumed by the Wind Down Trust as soon as reasonably practicable after such date.  Notwithstanding anything in this Plan to the contrary, no monies, choses in action, and/or assets comprising the Estate Assets that have been transferred, granted, assigned, or otherwise delivered to the Wind Down Trust shall be used for any purpose other than in accordance with the Plan and the Wind Down Trust Agreement.  Such transfer of the Estate Assets shall be free and clear of all Claims, Interests, Liens, other encumbrances, and liabilities of any kind.

(f)        *Funding of the Wind Down Reserve, SEC Settlement Fund, Senior Claim Pool, GUC Pool, and Crypto Loss Claim Pool*.  On the Effective Date, the Debtors shall establish and fund the Wind Down Reserve with the Wind Down Amount and transfer the Wind Down Reserve to the Wind Down Trust to satisfy the Wind Down Budget.  On or prior to the Effective Date, the Debtors shall establish and fund the SEC Settlement Fund.  On the Effective Date, the Debtors shall establish and fund each of the Senior Claim Pool, GUC Pool, and Crypto Loss Claim Pool.  The Plan Administrator may, from time to time, amend, modify, or supplement the Wind Down Budget and either fund any deficit in the Wind Down Reserve with Surplus Senior Claim Pool Cash or release any Surplus Reserved Cash from the Wind Down Reserve, in each case in accordance with the Waterfall.  A separate account will be established by the Wind Down Trustee for the Wind Down Reserve.

(g)        *Wind Down Expenses*.  The Wind Down Trustee, the Plan Administrator, and any other Professionals engaged by the Wind Down Trust shall be entitled to compensation and reimbursement of costs, expenses, and fees, as provided in the Wind Down Trust Agreement and the Wind Down Budget, which may only be paid pursuant to the terms of this Plan.  The Wind Down Trust shall pay for expenses incurred, as provided in the Wind Down Budget.

(h)        *Administrative Obligations and Assumption of Liabilities*.  In furtherance of the purposes of the Wind Down Trust, and subject to the Wind Down Trust Agreement, the Wind Down Trust shall expressly (i) assume all responsibility and liability for (A) all Claims against the Debtors and (B) operating expenses of the Wind Down Trust and (ii) undertake to administer and pay the foregoing with Effective Date Available Cash, Post-Effective Date Cash, and funds in the Fee Escrow Account, Senior

32

Claim Pool, and Wind Down Reserve, each in accordance with the Plan. The Wind Down Trust shall have all defenses, cross-claims, offsets, and recoupments regarding Claims that the Debtors have, or would have had, under applicable law; *provided*, *however*, that no such claims, defenses, or rights may be asserted against the Debtors.

(i)    *Advisory Board*. The Advisory Board will be compromised of five (5) voting members and one (1) non-voting member appointed to hold the rights and powers in respect of the Wind Down Trust as set out in the Wind Down Trust Agreement, such rights and powers relating to the supervision of the Wind Down Trust and enforcement of the terms of the Wind Down Trust Agreement. The initial two (2) members shall be selected by the Creditors' Committee in consultation with the Debtors and not objectionable to the SEC. The initial composition the Advisory Board is set forth in the Plan Supplement. The initial members and the Plan Administrator will solicit resumes and materials from potential Advisory Board candidates and conduct interviews to determine the remaining three (3) Advisory Board members. The Advisory Board will be authorized to retain corporate counsel on such terms as the Advisory Board deems appropriate without Bankruptcy Court approval, subject to the provisions of the Wind Down Trust Agreement.

(j)    *Periodic Reporting.* The Plan Administrator shall provide periodic reporting to the Wind Down Trustee and the Advisory Board (which shall be filed with the Bankruptcy Court in summary form) of (i) the determination and any re-determination, as applicable, of the total amounts allocated to the Wind Down Reserve and Senior Claim Pool Reserve, (ii) the status of any ongoing sales processes or Causes of Action, and (iii) the status of the claims reconciliation process, as set forth in the Wind Down Trust Agreement..

(k)    *Institution and Maintenance of Legal and Other Proceedings.* As of the date upon which the Wind Down Trust is established, the Wind Down Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Wind Down Trust. The Wind Down Trust shall be empowered to initiate, prosecute, defend, and resolve all such actions in the name of the Debtors if deemed necessary or appropriate by the Plan Administrator. The Wind Down Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred subsequent to the date up on which the Wind Down Trust is established arising from, or associated with, any legal action or other proceeding brought pursuant to this Section of the Plan. For the avoidance of doubt, the Wind Down Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state corporate law, is appointed as the successor-in-interest to, and representative of, the Debtors and their Estates for the retention, enforcement, settlement, or adjustment of all Claims.

(l)    *Dissolution*. The Wind Down Trust shall be dissolved and the Wind Down Trustee, the Plan Administrator, and the Advisory Board shall be discharged from their duties with respect to the Wind Down Trust upon completion of their duties as set forth in the Plan and the Wind Down Trust Agreement which, for the avoidance of doubt, shall be no earlier than the date on which (i) all Disputed Claims have been resolved, (ii) all Assets have been liquidated, and (iii) all distributions from the Wind Down Trust required to be made by the Wind Down Trustee under the Plan and the Wind Down Trust Agreement have been made, unless dissolution on an earlier date is authorized pursuant to a Final Order of the Bankruptcy Court.

(m)    *Expedited Determination of Taxes*. The Wind Down Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed

33

by or on behalf of the Wind Down Trust through the date upon which the Wind Down Trust is terminated, and for all tax returns filed by or on behalf of the Debtors for al taxable period of the Debtors.

(n)    *[Reserved]*

(o)    *Transferability of Distribution Rights*.  Any beneficial interest in the Wind Down Trust (if any) or any right to receive a Distribution from the Wind Down Trust shall not be evidenced by any certificate, security, receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Wind Down Trust by the Wind Down Trustee.  Further, any beneficial interest in the Wind Down Trust (if any) or any right to receive a Distribution from the Wind Down Trust shall be nontransferable and non-assignable except by will, intestate, succession, or operation of law; *provided, however*, that holders of General Unsecured Claims shall be permitted to sell, transfer, and assign such holders' General Unsecured Claims only if authorized by the Bankruptcy Court upon a motion of the Plan Administrator; *provided*, *further*, that holders of Crypto Loss Claims shall be permitted to sell, transfer, and assign such holders' Crypto Loss Claims if authorized by the Crypto Loss Claim Procedures approved by the Bankruptcy Court.  Any beneficial interest in the Wind Down Trust (if any) or any right to receive a Distribution from the Wind Down Trust shall not constitute Securities and shall not be registered pursuant to the Securities Act of 1933, as amended.  If it is determined that such beneficial interests (if any) or rights constitute Securities, the exemption provisions of section 1145(a)(1) of the Bankruptcy Code would be satisfied and such securities would be exempt from registration.

(p)    *U.S. Federal Income Tax Treatment of the Wind Down Trust*.  For U.S. federal income tax purposes, the Wind Down Trust is intended to be treated as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code of which the holders of Allowed General Unsecured Claims and Allowed Crypto Loss Claim are treated as the deemed owners and grantors (as determined for U.S. federal income tax purposes).  Accordingly, solely for U.S. federal income tax purposes and without affecting any other provision in the Plan or the Wind Down Trust Agreement, the holders of Allowed General Unsecured Claims and Allowed Crypto Loss Claims will be treated as if they had received a distribution of a direct undivided interest in the Estate Assets and then contributed such interests to the Wind Down Trust.  However, no ruling is currently being requested from the IRS concerning the tax status of the Wind Down Trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Wind Down Trust as a grantor trust.  If the IRS were to take a contrary position, the tax treatment to U.S. holders receiving Wind Down Trust interests may be materially different from the treatment described in the Disclosure Statement.

(q)    *Valuation of Wind Down Trust Assets.*  As soon as practicable after the Effective Date, the Plan Administrator (to the extent that he or she deems it necessary or appropriate in the reasonable exercise of his or her discretion taking into account whether the value of an asset is reasonably ascertainable due to its contingent nature) shall, in good faith, value the Wind Down Trust Assets as of the Effective Date, solely for U.S. federal income tax purposes, and shall apprise the holders of Allowed General Unsecured Claims and Allowed Crypto Loss Claims of such valuation (but the Wind Down Trust is not required to engage an expert to make such a valuation).  The valuation shall be used consistently by all parties (including the Debtors, the Plan Administrator, the Wind Down Trustee, and the holders of Allowed General Unsecured Claims and Allowed Crypto Loss Claims) for all U.S. federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding the valuation of the Wind Down Trust Assets.

34

### 5.6.    *Vesting of Liabilities in the Wind Down Trust*

Except as provided in this Plan, the transfer to, vesting in, and assumption by the Wind Down Trust of the Estates Assets as contemplated by this Plan shall, as of the date of such transfer and assumption, bar recovery or any action against the Debtors and the Debtors' Estates for, or with respect to, all Claims.  The Trust shall, as of the date upon which the Wind Down Trust is established, assume sole and exclusive responsibility and liability for all Claims against the Debtors, and such Claims shall be liquidated, resolved, or paid by the Wind Down Trust.

### 5.7.    *Administration of Crypto Loss Claims.*

The General Bar Date Order did not establish any bar date with respect to Crypto Loss Claims.  Pursuant to the Plan, the Crypto Loss Claim Bar Date for Claim allowance and distribution purposes will be established by the Plan Administrator upon motion and notice, *provided that* such bar date shall be no more than one hundred twenty (120) calendar days after the Effective Date; *provided, further, however*, that such time may be extended by the Plan Administrator upon filing a notice on the docket.  In particular, the Plan Administrator, consistent with the Wind Down Trust Agreement, will file the Crypto Loss Claim Procedures Motion, which, once approved by the Bankruptcy Court after notice and hearing, will be binding on all creditors.  Notwithstanding anything in this Plan or applicable law, any statutes of limitation, statutes of repose, or other time bar limitations with respect to Crypto Loss Claims that expire during the Chapter 11 Cases shall be tolled until the Crypto Loss Claim Bar Date.

The Crypto Loss Claim Procedures Motion will provide the process and procedures that the Plan Administrator will use to determine whether a Crypto Loss Claim should be Allowed or Disallowed and, to the extent Allowed, the value of such Claim.  Moreover, the Crypto Loss Claim Procedures will explain (i) how creditors can submit a Crypto Loss Claim; (ii) the deadline to submit a Crypto Loss Claim; and (iii) what information creditors submitting Crypto Loss Claims must include with their submission. The Plan Administrator will also include a modified Proof of Claim form to be submitted by creditors asserting Crypto Loss Claims.

The Plan Administrator will publish notice of the Crypto Loss Claim Procedures and the Crypto Loss Claim Bar Date on CoinDesk, as well as any other related publications, exchanges, or through distribution lists (as necessary) in the Plan Administrator's discretion.  Moreover, any creditors that have submitted Claims in connection with the Preliminary Crypto Loss Claim Bar Date Order will receive notice of the Crypto Loss Claim Procedures via email (if an email was provided) or regular mail (if an email was not provided).  The Crypto Loss Claim Procedures will also include a notice for creditors to "opt in" to being a Contributing Claimant.

### 5.8.    *Corporate Action.*

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Wind Down Trustee, including by or at the direction of the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person.  All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect as of the Effective Date, without any requirement of further action by the Debtors or the Estates.

### 5.9. *Withholding and Reporting Requirements.*

(a) *Withholding Rights.* In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations. Additionally, in the case of a non-Cash distribution that is subject to withholding, the distributing party has the right, but not the obligation, to withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.

(b) *Forms.* Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Plan Administrator, the Wind Down Trust, or such other Person designated by the Plan Administrator or the Wind Down Trust (which entity shall subsequently deliver to the Wind Down Trustee any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or Form W-8, as applicable, unless such Person is exempt from information reporting under the Tax Code and provides to the Plan Administrator notice and evidence of such exemption. If such request is made by the Plan Administrator, the Wind Down Trust, or such other Person designated by the Plan Administrator or the Wind Down Trust and the holder fails to comply within three hundred sixty-five (365) calendar days after the request is made, the amount of such distribution shall irrevocably revert to the Wind Down Trust and any Claim in respect of such distribution shall be forever barred from assertion against any Debtor, the Wind Down Trust and their respective property.

### 5.10. *Exemption From Certain Transfer Taxes.*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

36

### 5.11.    *Effectuating Documents; Further Transactions.*

(a)     On or as soon as practicable after the Effective Date, the Plan Administrator and/or the Wind Down Trustee, as applicable, shall take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, subject to any consent or consultation rights of the Advisory Board, as set forth in the Wind Down Trust Agreement, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may determine; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule; (v) the execution, delivery, or filing of contracts, instruments, releases, and other agreements to effectuate and implement the Plan without the need for any approvals, authorizations, actions, or consents; (vi) making any required lodgements and filing with the Accounting and Corporate Regulatory Authority to effect the appropriate changes to the electronic register of members to give effect to <u>Section 4.10</u> of this Plan; and (vii) all other actions that the applicable Entities determine to be necessary or appropriate.

(b)     Each officer, manager, or member of the board of directors of the Debtors is (and each officer, manager, or member of the board of directors of the Plan Administrator and/or the Wind Down Trustee, if applicable, shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of, and on behalf of, the Wind Down Trust, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders or directors or managers of the Debtors, or the Wind Down Trust) except for those expressly required pursuant to the Plan.

(c)     All matters provided for herein involving the corporate structure of the Debtor or the Wind Down Trust, to the extent applicable, or any corporate or related action required by the Debtors or the Wind Down Trust in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or directors or managers of the Debtors and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors or the Wind Down Trust.

### 5.12.    *Preservation of Rights of Action.*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, transferred, or settled pursuant to this Plan, the Confirmation Order, or by another Bankruptcy Court order, the Debtors reserve any and all Causes of Action. On and after the Effective Date, the Wind Down Trustee, as directed by the Plan Administrator, may pursue such Causes of Action on behalf of the Wind Down Trust. No Entity may rely on the absence of a specific reference in this Plan or the

37

Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Wind Down Plan Trustee, as applicable will not pursue any and all available Causes of Action against them. Except with respect to findings in the Confirmation Order relating to <u>Section 10.9</u> of this Plan, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.  Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Wind Down Trustee shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion, subject to this Plan, to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing, as the Wind Down Trustee in consultation with the Plan Administrator may determine is in the best interest of the Estates, without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of this Plan itself shall be resolved only by Confirmation of this Plan itself.

### 5.13.    *Certificate of Incorporation and By-Laws.*

As of the Effective Date, the certificate of incorporation and by-laws, or other organizational documents, as applicable, of the Debtor shall be amended to the extent necessary to carry out the provisions of this Plan.

### 5.14.    *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, all notes, instruments, other securities, and other evidence of debt issued, and any rights of any holder in respect thereof shall be deemed cancelled and of no force or effect and the obligations of the Debtor thereunder shall be deemed fully satisfied.

### 5.15.    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Wind Down Trustee to seek to re-classify any Allowed Claim or Interest other than the SEC Claim, including indemnification claims, in accordance with any contractual, legal, or equitable subordination relating thereto.  Nothing in this Section 5.15 shall abridge in any way the Wind Down Trust's obligations to promptly satisfy the D&O Indemnification Obligations.

### 5.16.    *Equitable Subordination Under Bankruptcy Code 510(c).*

The Wind Down Trustee shall have the right to object to any Claim, including indemnification claims, on the basis that such Claim should be equitably subordinated pursuant to section 510(c) and should be classified as a Section 510(c) Subordinated Claim.  A Claim shall be deemed a Section 510(c) Subordinated Claim only upon a Final Order of the Bankruptcy Court.  Nothing in this Section 5.16

38

shall abridge in any way the Wind Down Trust's obligations to promptly satisfy the D&O Indemnification Obligations.

### 5.17.   *Election to Contribute Third-Party Claims.*

The Plan Administrator will investigate whether the Debtors hold Claims against various third parties that had relationships with the Debtors.  It may be the case that the Debtors' creditors also hold Claims against the same third parties (or others).  Such Claims may have insufficient value for creditors to pursue individually; however, such Claims in the aggregate may have sufficient value to pursue. Accordingly, creditors will have the ability, through the Crypto Loss Claim Procedures, to contribute such Claims to the Wind Down Trust.  The Contributing Claimants will not be responsible for the cost of investigation or pursuing the Contributed Third-Party Claims.  However, any recoveries on the Contributed Third-Party Claims will be transferred to the Wind Down Trust to be distributed in accordance herewith. Thus, all holders of Claims will benefit from recoveries based on Contributed Third-Party Claims regardless of whether such holders opted in to contributing their Contributed Third-Party Claims.  The procedure by which a holder of a Claim or Interest may contribute its Contributed Third-Party Claims to the Wind Down Trust shall be determined by the Plan Administrator and will be set forth in the Crypto Loss Claim Procedures.  By contributing its Claim or Interest, each Contributing Claimant agrees that it will be deemed, without further action, (i) to have irrevocably contributed its Contributed Third-Party Claims to the Wind Down Trust, and (ii) to have agreed to execute any documents reasonably requested by the Debtors or the Wind Down Trust to memorialize and effectuate such contribution.

### 5.18.   *Contribution of Contributed Third-Party Claims.*

Upon election, all Contributed Third-Party Claims will be irrevocably contributed to the Wind Down Trust and shall thereafter be assets of the Wind Down Trust for all purposes.  No Person may rely on the absence of a specific reference in the Plan, the Disclosure Statement, the Confirmation Order, the Wind Down Trust Agreement, the Plan Supplement, or any other document as any indication that the Wind Down Trust will or will not pursue any and all available Contributed Third-Party Claims against such Person.  The Wind Down Trust shall have, retain, reserve, and be entitled to assert all Contributed Third-Party Claims fully to the same extent that the Contributing Claimants could have asserted such Claims prior to the Effective Date.  For the avoidance of doubt, the Contributed Third-Party Claims shall not include the rights of any of the Contributing Claimants to receive the distributions under the Plan on account of their Claims or Interests.

### 5.19.   *Closing of Chapter 11 Cases.*

After an Estate has been fully administered, the Wind Down Trust or the Plan Administrator shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules.

### 5.20.   *Notice of Effective Date.*

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

5.21.    *Corporate Form.*

On the Effective Date, each of the Debtors shall maintain its current corporate form, which may be modified or changed at any time after the Effective Date by the Wind Down Trustee in accordance with the terms of this Plan and applicable law.

5.22.    *Separability.*

Notwithstanding the combination of the separate plans of liquidation for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtors, confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

**SECTION 6.    DISTRIBUTIONS**.

6.1.    *Distributions Generally.*

Except as otherwise provided in the Plan, one or more Disbursing Agents shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

6.2.    *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record holders or the permitted designees of any such Claims or Interests.  The Debtor, the Plan Administrator, or the Wind Down Trustee, as applicable, shall have no obligation to recognize any transfer or designation of such Claims or Interests occurring after the close of business on the Distribution Record Date.  In addition, with respect to payment of any Cure Amounts or Assumption Disputes, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

6.3.    *Distributions on the Effective Date or as Soon as Reasonably Practicable Thereafter.*

The Disbursing Agent shall make Distributions, as applicable, on the Effective Date or as soon as reasonably practicable thereafter, of Cash on the Effective Date:

(a)    of Cash in the Senior Claim Pool to holders of Allowed Senior Claims, to the extent Allowed as of the Effective Date;

(b)    of Cash in the Fee Escrow to holders of Fee Claims in accordance with Section 2.4 this Plan; and

40

(c)      of Cash in the GUC Pool to holders of Allowed General Unsecured Claims, to the extent Allowed as of the Effective Date and there are funds in the GUC Pool;

**6.4.**      *Periodic Distributions from the Senior Claim Pool, GUC Pool, and Crypto Loss Claim Pool.*

The Disbursing Agent shall make periodic Distributions, in the frequency determined by the Plan Administrator in its sole discretion, as applicable:

(a)      of Cash in the Senior Claim Pool to holders of Allowed Senior Claims, to the extent Allowed after the Effective Date;

(b)      of Cash in the GUC Pool to (i) holders of Allowed General Unsecured Claims, to the extent Allowed after the Effective Date and (ii) as Disputed General Unsecured Claims are resolved, resulting in additional funds being available in the GUC Pool for holders of Allowed General Unsecured Claims, to holders of previously Allowed General Unsecured Claims that have not been paid in full;

(c)      of Cash in the Crypto Loss Claim Pool to holders of Allowed Crypto Loss Claims, in accordance with the allocation procedures set forth in the Crypto Loss Claim Procedures, to the extent Allowed after the Effective Date and as Disputed Crypto Loss Claims are Allowed; and

(d)      of Cash in the Crypto Loss Claim Pool to the SEC, to the extent all Allowed Crypto Loss Claims have been satisfied in full and all Disputed Crypto Loss Claims have been resolved.

**6.5.**      *Date of Distributions.*

(a)      In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

(b)      (i) Except as set forth in Section 6.5(c) of this Plan, prior to any distributions by the Wind Down Trustee, as directed by the Plan Administrator, of any Surplus Senior Claim Pool Cash pursuant to the Waterfall, the Wind Down Trustee shall make distributions to holders of all Allowed Senior Claims until such Allowed Claims are indefeasibly paid in full, (ii) prior to any distributions by the Wind Down Trustee of any surplus funds in the GUC Pool to the holders of Crypto Loss Claims, the General Unsecured Claim Payment Completion shall have occurred; *provided* that the Wind Down Trustee may make distributions to holders of Allowed Crypto Loss Claims prior to the General Unsecured Claim Payment Completion, solely to the extent such distributions are funded with the SEC Settlement Fund, and (iii) prior to any distributions by the Wind Down Trustee to the SEC, the Wind Down Trustee shall make distributions to holders of Crypto Loss Claims.

(c)      After the resolution of a Disputed Senior Claim, the Wind Down Trustee, as directed by the Plan Administrator, may treat any amounts that were reserved on account of such Disputed Senior Claim that is Disallowed or does not become an Allowed Claim as Surplus Senior Claim Pool Cash and such amounts shall be allocated pursuant to the Waterfall.

41

### 6.6.    *Disbursing Agent.*

Other than as contemplated in Section 6.2 of this Plan, all distributions under this Plan shall be made by the Disbursing Agent on and after the Effective Date as provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Plan Administrator shall use all commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the books and records of the Debtors or the Wind Down Trust, as applicable.  The Plan Administrator and the Wind Down Trustee shall cooperate in good faith with the applicable Disbursing Agent to comply with the reporting and withholding requirements outlined in Section 5.12 of this Plan.

### 6.7.    *Rights and Powers of Disbursing Agent.*

(a)    From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against, and Interests in, the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.  No holder of a Claim or Interest, or other party in interest, shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.

(b)    The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all distributions contemplated hereby; and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 6.8.    *Expenses of Disbursing Agent.*

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent acting in such capacity (including reasonable documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash.

### 6.9.    *No Postpetition Interest on Claims.*

Except as otherwise provided in the Plan, the Confirmation Order, another order of the Bankruptcy Court, or the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), interest shall not accrue or be paid on any Claims on or after the Petition Date; *provided*, that if interest is payable pursuant to the preceding clause, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

### 6.10. *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder or permitted designee, as applicable, of an Allowed Claim or Interest shall be made to a Disbursing Agent, who shall transmit such distribution to the applicable holders or permitted designees of Allowed Claims or Interests on behalf of the Debtors.  In the event that any distribution to any holder or permitted designee is returned as undeliverable, no further distributions shall be made to such holder or such permitted designee unless and until such Disbursing Agent is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Nothing herein shall require the Disbursing Agent to attempt to locate holders or permitted designees, as applicable, of undeliverable distributions and, if located, assist such holders or permitted designees, as applicable, in complying with Section 5.12 of this Plan.

### 6.11. *Distributions after Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

### 6.12. *Unclaimed Property.*

Undeliverable distributions or unclaimed distributions shall remain in the possession of the Debtors or the Wind Down Trust, as applicable, until such time as a distribution becomes deliverable or the holder accepts the distribution, or such distribution reverts back to the Debtors or the Wind Down Trust, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind.  Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the date of distribution.  After such date all unclaimed property or interest in property shall revert to the Wind Down Trust and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 6.13. *Time Bar to Cash Payments.*

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Wind Down Trust, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

### 6.14. *Manner of Payment under Plan.*

Except as otherwise specifically provided in the Plan, at the option of the Debtors or the Plan Administrator, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer, or ACH transfer, or as otherwise required or provided in applicable agreements or customary practices of the Debtor.

43

### 6.15.    *Satisfaction of Claims.*

Except as otherwise specifically provided for in the Plan and to the extent permitted by law, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction of, and exchange for, such Allowed Claims.

### 6.16.    *Minimum Cash Distributions.*

The Disbursing Agent shall not be required to make any distribution in an amount less than One Hundred ($100) to any holder of an Allowed Claim; *provided*, that if any distribution is not made pursuant to this Section 6.16, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

### 6.17.    *Setoffs and Recoupments.*

The Debtors or the Wind Down Trust, as applicable, or such entity's designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or the Wind Down Trust, as applicable, may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; *provided*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or its successor of any claims, rights, or Causes of Action that a Debtor or its successor or assign may possess against the holder of such Claim.

### 6.18.    *Allocation of Distributions between Principal and Interest.*

Except as otherwise required by law (as reasonably determined by the Plan Administrator), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

### 6.19.    *No Distribution in Excess of Amount of Allowed Claim.*

Except as provided in Section 6.9 of this Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

## SECTION 7.    PROCEDURES FOR DISPUTED CLAIMS.

### 7.1.    *Objections to Claims.*

Subject to the terms of the Wind Down Trust Agreement, the Debtors or the Wind Down Trustee on behalf of the Wind Down Trust and as directed by the Plan Administrator shall be entitled to object to Claims.  After the Effective Date, the Wind Down Trustee shall have and retain any and all rights and defenses that the Debtor had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed.

44

### 7.2. *Allowance of Claims.*

Except as otherwise set forth in the Plan, after the Effective Date, the Wind Down Trustee and the Plan Administrator, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as specifically provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed in accordance with the Plan.

### 7.3. *Resolution of Disputed Claims.*

The Wind Down Trustee, on behalf of each of the Wind Down Trust as directed by the Plan Administrator and subject to the terms of the Wind Down Trust Agreement, shall have the authority to (a) file, withdraw, or litigate to judgment, objections to Claims; (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court, other than with respect to Fee Claims in all respects. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including related to Causes of Action retained pursuant to the Plan.

### 7.4. *Adjustment to Claims or Interests Without Objection.*

Any Claim or Interest that has been paid or satisfied (including pursuant to the Plan) may be adjusted or expunged on the Claims Register at the direction of the Debtors, the Wind Down Trustee, or the Plan Administrator without the Debtors, the Wind Down Trustee, or the Plan Administrator having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest so long as notice of satisfaction is filed with the Bankruptcy Court and served on the affected parties.

### 7.5. *Reservation of Rights to Object to Claims.*

The failure of the Debtors, the Wind Down Trustee, or the Plan Administrator, as applicable, to object to any Claim shall not be construed as an admission to the validity or amount of any such Claim, any portion thereof, or any other claim related thereto, whether or not such claim is asserted in any currently pending or subsequently initiated proceeding, and shall be without prejudice to the right of the Debtors, the Wind Down Trustee, or the Plan Administrator, as applicable, to contest, challenge the validity of, or otherwise defend against any such claim in the Bankruptcy Court or non-bankruptcy forum.

### 7.6. *Payments and Distributions with Respect to Disputed Claims.*

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

45

### 7.7. *Distributions after Allowance.*

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in this Plan, without interest, as provided in <u>Section 7.12</u> of this Plan.  Such distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order.

### 7.8. *Estimation of Claims.*

The Debtors or the Wind Down Trustee (on behalf of the Wind Down Trust as directed by the Plan Administrator), as applicable, shall determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims.  The Debtors or the Wind Down Trustee (on behalf of the Wind Down Trust), with respect to such Disputed Claims, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim or Class of Claims pursuant to section 502(c) of the Bankruptcy Code or otherwise, including to establish a reserve for distribution purposes, regardless of whether such, or any, Person had previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim or Class of Claims at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim or Class of Claims, the amount so estimated shall constitute either the Allowed amount of such Claim or Class of Claims, or a maximum limitation on such Claim or Class of Claims, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim or Class of Claims, the Debtors or the Wind Down Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claims; *provided*, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

For the avoidance of doubt, there shall be no estimation of the SEC Claim.

### 7.9. *[Reserved]*

### 7.10. *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

### 7.11. *Claim Resolution Procedures Cumulative.*

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

### 7.12. *Interest.*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date, except as provided in <u>Section 6.9</u> of this Plan.

## SECTION 8.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1. *Rejection of Executory Contracts and Unexpired Leases.*

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume or assume and assign filed by the Debtors on or before the Effective Date (or such later date as may be agreed to between the Debtors or the Wind Down Trust, as applicable, and the non-Debtor counterparty); (iv) is identified in <u>Sections 8.4</u> and <u>8.6</u> of this Plan; or (v) is identified on the Assumption Schedule included in the Plan Supplement for assumption, or assumption and assignment to the Wind Down Trust or another party.

(b)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Wind Down Trust or another party, as applicable, has provided adequate assurance of future performance under such assumed or assumed and assigned executory contracts and unexpired leases.  Each executory contract and unexpired lease assumed or assumed and assigned to the Wind Down Trust or another party, pursuant to the Plan shall vest in and be fully enforceable by the Wind Down Trust or such other party, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

### 8.2. *Determination of Assumption Disputes and Deemed Consent.*

(a)    Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

(b)    The Debtors shall file, as part of the Plan Supplement, the Assumption Schedule.  At least twenty-one (21) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned to the Wind Down Trust or another party, reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within fourteen (14) days of the service of the assumption notice (including any supplemental assumption notice), or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.**  Any counterparty to an executory contract or unexpired lease

47

that does not timely object to the notice of the proposed assumption or assumption and assignment of such executory contract or unexpired lease shall be deemed to have assented to the assumption or assumption and assignment of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or the Wind Down Trust, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or the Wind Down Trust, as applicable.  Each such provision shall be deemed to not apply to the assumption or assumption and assignment of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed or assumed or assigned executory contracts or unexpired leases that fail to object to the proposed assumption or assumption and assignment in accordance with the terms set forth in this Section 8.2(b), shall forever be barred and enjoined from objecting to the proposed assumption or assumption and assignment or to the validity of such assumption or assumption and assignment (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)     If there is an Assumption Dispute pertaining to assumption or assumption and assignment of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption or assumption and assignment being effective; *provided*, that the Debtors or the Wind Down Trust, as applicable, may settle any Assumption Dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)     To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtor may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of the Assumption Dispute; *provided*, that the Debtors or the Wind Down Trust, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to the extent such executory contract or unexpired lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Debtor or the Wind Down Trust, as applicable).  The Debtors or the Wind Down Trust, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(e)     Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assumed and assigned executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease.  Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired leases.

48

### 8.3. *Rejection Damages Claims.*

**In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 4 (General Unsecured Claims). A proof of such Claim must be filed with the Bankruptcy Court by the later of (i) thirty (30) days after the filing and service of the notice of occurrence of the Effective Date; (ii) the general bar date or governmental bar date, as applicable; and (iii) thirty (30) days following service of an Order approving rejection of any executory contract or unexpired lease of the Debtors if such contract or lease is the subject of a pending Assumption Dispute.**

### 8.4. *Insurance Policies.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice, or claim objection, and any other document related to any of the foregoing, and any other order of the Bankruptcy Court, on the Effective Date: (a) all insurance policies issued or providing coverage to the Debtors shall (subject to the applicable insurer's right to object to such a designation) be assumed in their entirety by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code, and coverage for defense costs and indemnification under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the D&O Policies, and the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable, shall remain liable in full for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under such insurance policies, without the need or requirement for an insurer to file a Proof of Claim, Administrative Expense Claim or objection to any cure amount; (b) nothing shall alter or modify the terms and conditions of and/or any rights, obligations, benefits, claims, rights to payments, or recoveries under the insurance policies without the express written consent of the applicable insurer; and (c) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against an insurer under applicable nonbankruptcy law to proceed with their claims; (ii) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (I) workers' compensation claims, (II) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing; (iii) the insurers to cancel any insurance policies, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the insurance policies; and (iv) holders of Allowed Claims to pursue insurance recovery.

### 8.5. *Indemnification Obligations*

Any obligations of the Debtors pursuant to a contract, instrument, agreement, certificate of incorporation, constitution, by-law, comparable organizational document or any other document or applicable law, to indemnify, reimburse, or limit the liability of any director, officer, or employee of the Debtors, pursuant to the foregoing in respect of any claims, demands, suits, causes of action, or proceedings against such director, officer, or employee based upon any act or omission related to such director or officer's service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall survive Confirmation of the Plan and except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether

49

such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; *provided*, however, that all monetary obligations under this provision shall, to the extent Allowed, except for the D&O Indemnification Obligations, be treated as General Unsecured Claims or 510(c) Subordinated Claims, as determined by the Court.  The Wind Down Trustee reserves all legal and equitable rights and defenses in respect of any claims asserted by any current or former officers, directors, or employees of the Debtors.  For the avoidance of doubt, the scope of the Debtors' indemnification obligations in this <u>Section 8.5</u> shall be conterminous with applicable non-bankruptcy law and to the extent provided by such law.  For the avoidance of doubt, any claim for indemnification for amounts payable after the Effective Date shall not constitute an Allowed Claim unless approved by the Bankruptcy Court.  Nothing in this Section 8.5 shall abridge in any way the Wind Down Trust's obligations to promptly satisfy the D&O Indemnification Obligations.

### 8.6. *Intellectual Property Licenses and Agreements.*

Notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed assumed by the Debtors and the Wind Down Trust and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors in accordance with <u>Section 8.1</u> of this Plan.  Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Wind Down Trust, and the Wind Down Trust may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

### 8.7. *Assignment.*

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned to the Wind Down Trust hereunder, if applicable, shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

### 8.8. *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease,

50

without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

### 8.9.  *Reservation of Rights.*

(a)      The Debtors may amend the Assumption Schedule, with the consent of the Creditors' Committee, not to be unreasonably withheld, and any cure notice until five (5) Business Days immediately prior to the commencement of the Confirmation Hearing in order to (i) add, delete, or reclassify any executory contract or unexpired lease or amend a proposed assumption or assumption and assignment and/or (ii) amend the proposed Cure Amount; *provided*, that if the Confirmation Hearing is adjourned for a period of more than two (2) consecutive calendar days, the Debtors' right to amend such schedules and notices shall be extended to the Business Day immediately prior to the adjourned date of the Confirmation Hearing, with such extension applying in the case of any and all subsequent adjournments of the Confirmation Hearing.  The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

(b)      Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtors, or the Wind Down Trust, or their respective affiliates have any liability thereunder.

(c)      Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors and the Wind Down Trust, under any executory or non-executory contract or any unexpired or expired lease.

(d)      Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Wind Down Trust, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

## SECTION 9.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.

### 9.1.  *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)      the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred, and no stay of the Confirmation Order shall be in effect;

(b)      all agreements necessary to implement the Plan, shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

(c)      the documents contained in the Plan Supplement will contain terms and conditions consistent in all material respects with this Plan;

51

(d)    all conditions precedent to the consummation of the Wind Down Trust Formation Transactions (other than effectiveness of the Plan) have been satisfied or waived by the party or parties entitled to waive them in accordance with the terms of the Wind Down Trust Agreement;

(e)    the Wind Down Trust shall have been established;

(f)    the Fee Escrow Account shall have been established and funded;

(g)    the Wind Down Reserve shall have been funded with the Wind Down Amount in accordance with the Wind Down Budget;

(h)    the SEC Settlement Fund shall have been established and funded;

(i)    the Senior Claim Pool shall have been established and funded; and

(j)    the GUC Pool shall have been established and funded with Effective Date Available Cash (if any).

Notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the completion of the applicable conditions precedent to the Effective Date; *provided*, that to the extent a condition precedent (a "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to a Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

### 9.2.    *Waiver of Conditions Precedent.*

(a)    Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Each of the conditions precedent in <u>Section 9.1</u> of this Plan other than the conditions set forth in <u>Section 9.1(b)</u> of this Plan may be waived in writing by the Debtors, with the consent of the Creditors' Committee, not to be unreasonably withheld, without leave of or order of the Bankruptcy Court.

(b)    The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 9.3.    *Effect of Failure of Conditions to Effective Date.*

Unless otherwise extended by the Debtors, if the Effective Date does not occur on or before the date that is one hundred and eighty (180) days after the date on which the Confirmation Order is entered or if the Confirmation Order is vacated, (a) no distributions under the Plan shall be made, (b) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (c) all the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any

52

other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtor or otherwise.

**SECTION 10.  EFFECT OF CONFIRMATION.**

      **10.1.**   *Vesting of Assets.*

         (a)     On the Effective Date pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all remaining property of the Debtors' Estates and any Estate Causes of Action, including the SEC Settlement Fund, shall vest in the Wind Down Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests, subject to treatment of Other Secured Claims under the Plan and subject to the terms herein and in the Plan. The Wind Down Trust shall own such Assets, as of the Effective Date, free and clear of all Claims, Interests, Liens, other encumbrances, and liabilities of any kind. On and after the Effective Date, the Wind Down Trust may take any action, including, without limitation, the operation of their businesses; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein.  Without limiting the foregoing, the Wind Down Trust may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court. Notwithstanding the foregoing, vesting of property in which any governmental unit holds an interest, and for which title vests in the Debtors subject to regulatory requirements under a governmental grant or award, including but not limited to, the requirements of 10 C.F.R. 600.321, shall be limited to the extent of the Debtors' interest in such property; and the Wind Down Trust may only take action, including but not limited to the use, acquisition, sale, lease, and disposition of such property, in accordance with applicable non-bankruptcy law.

      **10.2.**   *Term of Injunctions or Stays.*

         Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

      **10.3.**   *Injunction.*

      **From and after the Effective Date through and until Wind Down Completion Date:**

         **(a)**     **All Persons and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, holding Claims, Liens, Interests, charges, encumbrances, and other interests of any kind or nature whatsoever, including rights or Claims based on any successor or transferee liability, against the Debtors, the Wind Down Trust, or the assets transferred thereto (whether legal or equitable, secured or unsecured, matured or unmatured, contingent, or noncontingent, known or unknown), arising under or out of, in connection with, or in any way relating to the Debtors, the Estates' Assets, the operation**

53

of the Estates' Assets prior to the Effective Date, or the Wind Down Trust Formation Transactions, shall be forever barred, estopped, and permanently enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished or released pursuant to the Plan.

(b)    Except as expressly provided in the Plan, the Definitive Documents, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined (but, as to the Debtors, such injunction shall only last through and until the date upon which all remaining property of the Debtors' Estates has vested in the Wind Down Trust), solely with respect to any Claims, Interests, and Causes of Action that will be or are treated by the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable, or the property of any of the Estates, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable, or the property of any of the Estates, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable, or the property of any of the Estates, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable, or against property or interests in property of any of the Estates, the Wind Down Trust, the Plan Administrator, or the Wind Down Trustee, as applicable, except as contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c)    Each holder of a Claim or Interest will be bound by the Plan pursuant to section 1141(a) of the Bankruptcy Code, including, without limitation, the injunctions set forth in this <u>Section 10.3</u>.

(d)    The injunctions in this <u>Section 10.3</u> shall extend to any successors of the Debtor, or the Wind Down Trust, as applicable, and their respective property and interests in property.

(e)    Notwithstanding the foregoing, nothing in this <u>Section 10.3</u> shall enjoin the assertion of a defensive right of recoupment.

(f)    Nothing in the Plan or Confirmation Order shall (1) enjoin, release, impair or otherwise preclude the United States (i) from pursuing, commencing, continuing or

54

enforcing any criminal action or any police or regulatory action against the Debtors or any non-debtor person or entity, (ii) from pursuing any liability to the United States that is not a Claim, (iii) from exercising any rights of setoff or recoupment subsequent to confirmation of the Plan or any order granting substantive consolidation, and such rights are preserved, and (iv) from pursuing any claim of the United States arising on or after the Confirmation Date; and (2) grant the Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code.

### 10.4. *Debtors are Not Entitled to a Discharge.*

Nothing in the Plan or the Confirmation Order shall grant the Debtors a discharge pursuant to section 1141(d) of the Bankruptcy Code.

### 10.5. *Binding Effect.*

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders were (a) Impaired or Unimpaired under the Plan; (b) deemed to accept or reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any distribution under the Plan.

### 10.6. *Releases by the Debtors.*

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Case to facilitate the liquidation of the Debtors and the implementation of the Wind Down Trust Formation Transactions, to the fullest extent allowed by applicable law, as such law may be extended subsequent to the Effective Date, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, their Estates, the Wind Down Trust, the Plan Administrator, and the Wind Down Trustee, as may be applicable, and any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, as may be applicable, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons or Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, or for the foregoing Entities, from any and all Released Claims.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in any Plan Supplement) executed to implement the Plan, (b) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, criminal misconduct, or gross negligence, (c) Causes of Action against Released Parties, if any, listed on the Schedule of Retained Causes of Action; (d) rights reserved under the Dentons Retention Order; (e) any avoidance actions relating to private wallet transactions that occurred prior to the Petition Date other than payment of legal fees and related vendors who provided services and acted in good faith in receiving fees from private wallets related or relating to the Chapter 11 Cases, the defense of the SEC Enforcement Action and the investigation that preceded it, the defense of civil claims brought against TFL that have been dismissed, and the pending criminal proceedings and investigations, except for any avoidance actions subject to the reservation of rights set forth in (d) hereof which are fully preserved; (f) the SEC Settlements.

### 10.7.    *Exculpation.*

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting the Releases by the Debtors, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to, any act or omission taken on or after the Petition Date and prior to the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the preparation for, filing, negotiation, solicitation, confirmation, execution, or implementation (to the extent on or after the Petition Date and prior to the Effective Date) of, as applicable, the Plan (including, for the avoidance of doubt, any Plan Supplement), the Disclosure Statement, or any restructuring transaction, contract, instrument, release, or other agreement or document created, filed, or entered into during the Chapter 11 Cases in connection with the Chapter 11 Cases, the management of the Debtors' cash and cryptocurrency assets during the Chapter 11 Cases (including the trading and sales of cryptocurrencies and tokens in connection with the Chapter 11 Cases), the Debtors' or Wind Down Trust's receipt of assets from LFG pursuant to the SEC Settlements, the annual financial statements prepared pursuant to Singapore Companies Act requirements, the recognition application for recognition proceedings in Singapore, the Plan, the Disclosure Statement, the SEC Settlements, the Definitive Documents, the pursuit or consummation of any sale transactions during the Chapter 11 Cases, the administration and implementation of the Wind Down, the pursuit of Confirmation, the pursuit of Consummation, the Wind Down Trust Formation Transactions, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or after the Petition Date and before the Effective Date , except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted bad faith, fraud, willful misconduct, criminal misconduct, or gross negligence.

The Exculpated Parties who have participated in any conduct referenced in section 1125(e) of the Bankruptcy Code and on terms compliant therewith, are not, and on account of such conduct, shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale or purchase of a security under the Plan, to the extent permitted by section 1125(e) of the Bankruptcy Code.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above shall not be construed as exculpating any party or entity from its post-Effective Date obligations under the Plan, or any document, instrument, or agreement (including those set forth in any Plan Supplement) executed to implement the Plan.

### 10.8.    *Additional Provisions Regarding Governmental Units.*

Notwithstanding any language to the contrary contained in the Plan, and/or the Plan Confirmation Order, no provision of this Plan or the Plan Confirmation Order shall (i) preclude the SEC from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor Person or entity in any forum.

### 10.9.    *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date, to the extent they have participated in any conduct referenced in section 1125(e) of the Bankruptcy Code and on terms compliant therewith, the Debtors and each of their respective directors, who served in such capacity on or after the Petition Date, officers, employees, claims and noticing agents, financial advisors, investment bankers, professionals, accountants, and attorneys (but for the avoidance of doubt, not the Debtors' current or former shareholders) shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale or purchase of a security under the Plan, to the extent provided in Section 1125(e) of the Bankruptcy Code.

### 10.10.    *Corporate Action.*

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Wind Down Trustee and/or the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person.  All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred on the Effective Date and shall be in effect, without any requirement of further action by the Debtors or the Estates.

### 10.11.    *Ipso Facto and Similar Provisions Ineffective.*

Any term of any policy, contract, or other obligation applicable to a Debtor shall be void and of no further effect with respect to any Debtor to the extent such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any Person based on any of the following: (i) the insolvency or financial condition of a Debtor; (ii) the commencement of the Chapter 11 Cases; (iii) the confirmation or consummation of this Plan, including any change of control that shall occur as a result of such consummation; or (iv) the Wind Down Trust Formation Transactions.

### 10.12.    *No Successor Liability.*

Except as otherwise expressly provided in this Plan and the Confirmation Order, the Wind Down Trust (i) is not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the Assets of the Debtors on or prior to the Effective Date; (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

## SECTION 11.    RETENTION OF JURISDICTION.

### 11.1.    *Retention of Jurisdiction.*

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

57

(a) to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b) to hear and determine motions and/or applications for the sale, assumption and/or assumption and assignment of Estate assets, including the Debtors' or the Wind Down Trust's interest, as applicable, in Proximity, all related assets of Proximity, and the Venture Investments pursuant to, among other things, sections 363 and 365 of the Bankruptcy Code;

(c) to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(d) to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order, including to ensure that an Allowed Claim does not receive consideration in excess of the Allowed amount of such Claim, and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(e) to resolve any cases, controversies, suits, disputes, Causes of Action, Contributed Third-Party Claims, or other matters that may arise in connection with the Causes of Action or Contributed Third-Party Claims brought by the Plan Administrator or the Wind Down Trustee in the Bankruptcy Court;

(f) to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or Class of Claims;

(g) to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(h) to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(i) to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j) to hear and determine all applications and proceedings to approve Fee Claims;

(k) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l) to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(m)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)    to hear, adjudicate, decide, or resolve any and all matters related to <u>Section 10</u> of this Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(p)    to resolve disputes concerning Disputed Claims or the administration thereof;

(q)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(r)    to enter one or more final decrees closing the Chapter 11 Cases;

(s)    to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located and adjudicate any disputes with respect thereto;

(t)    to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(u)    to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code, other than defenses or limits that are asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code; and

(v)    to enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Cases.

### 11.2.    *Courts of Competent Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## SECTION 12.  MISCELLANEOUS PROVISIONS.

### 12.1.    *Payment of Statutory Fees.*

All Statutory Fees that are due and payable for each Debtor's case shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors and the Wind Down Trust shall be jointly and severally liable to pay any and all Statutory Fees when due and payable.  The Debtors shall file

59

all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Debtors and the Wind Down Trustee, on behalf of the Wind Down Trust, as directed by the Plan Administrator, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Notwithstanding anything called for in the Plan to the contrary, the Debtors and the Wind Down Trust, shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee and make such reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the cases and shall not be treated as providing any release under the Plan.  The obligations under this Section 12.1 shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

### 12.2.    *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3.    *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee, if any, shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided, however,* that after the Effective Date, the Creditors' Committee shall exist and its professionals shall continue to be retained and shall continue to be entitled to reasonable compensation by the Debtors without the need for further application to the Bankruptcy Court with respect to all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and any related hearings.

### 12.4.    *Amendments.*

(a)    *Plan Modifications*.  The Debtors reserve the right, with the consent of the Creditors' Committee, not to be unreasonably withheld, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan and the Plan Supplement (i) prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, the Debtors may, upon order of the Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(b)    *Other Amendments*.  Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

**12.5.**     *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw this Plan for any Debtor of all Debtors, prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, in each case with respect to a Debtor, then, with respect to such Debtor: (a) this Plan shall be null and void in all respects; (b) any assumption or rejection of executory contracts or unexpired leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, the Estates, or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Estates, or any other Entity.

**12.6.**     *Severability of Plan Provisions upon Confirmation.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to this Plan and may not be deleted or modified without the consent of the Debtors or the Wind Down Trust (as the case may be); and (3) nonseverable and mutually dependent.

**12.7.**     *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, that corporate or limited liability company governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

**12.8.**     *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.9.**     *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtors and all holders of Claims or Interests receiving distributions

pursuant to this Plan and all other parties in interest are authorized to prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### 12.10.   *Retention of Books and Records.*

Neither the Debtor nor the Wind Down Trust shall destroy or otherwise abandon any such books, records, electronically stored information, or other documents without authorization from the Bankruptcy Court and without providing advance notice to the SEC (c/o Therese A. Scheuer and Michael Kelly, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549, Scheuert@sec.gov; Kellymich@sec.gov  and William M Uptegrove, U.S. Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326, UptegroveW@SEC.GOV), which shall have seven (7) days to object to any proposed destruction or abandonment; provided that, nothing in the Plan or the Confirmation Order shall affect the obligations of the Debtors, the Wind Down Trust, and/or any transferee or custodian to maintain any books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency. The Wind Down Budget shall include an amount appropriate to fund this obligation.

### 12.11.   *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Wind Down Trust, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Wind Down Trustee.

### 12.12.   *Successors and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

### 12.13.   *Entire Agreement.*

On the Effective Date, this Plan, the Plan Supplement and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 12.14.   *Notices.*

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

62

(i) If to the Debtors, prior to the Effective Date:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:    Ronit Berkovich
        Jessica Liou
        Clifford W. Carlson
        F. Gavin Andrews
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

- and –

Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Attn:    Paul N. Heath
        Zachary I. Shapiro
        Matthew P. Milana
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

(ii) If to the Wind Down Trust or the Plan Administrator, after the Effective Date:

An address to be identified in the Plan Supplement.

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

63

Dated:  September 18, 2024

By:     */s/  Chris Amani*
        Chris Amani
        Head of Company Operations

**TERRAFORM LABS PTE. LTD.**

By:     */s/ Chris Amani*
        Chris Amani, as authorized signatory for and on
        behalf of TFL as sole director of TLL.

**TERRAFORM LABS LIMITED**

64