```
1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
2

3    IN RE:                      .  Chapter 11
                                 .  Case No. 24-10070 (BLS)
4    TERRAFORM LABS PTE. LTD.,   .
                                 .  (Jointly Administered)
5                                .
                                 .  Courtroom No. 1
6                                .  824 North King Street
                Debtor.          .  Wilmington, Delaware 19801
7                                .
                                 .  Thursday, September 19, 2024
8    . . . . . . . . . . . . . . .  10:00 a.m.

9                        TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE BRENDAN L. SHANNON
10                  UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtor:            Ronit Berkovich, Esquire
                                F. Gavin Andrews, Esquire
13                              Clifford Carlson, Esquire
                                Jesse Kitnick, Esquire
14                              WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
15                              New York, New York 10153

16

17

18
     (APPEARANCES CONTINUED)
19
     Audio Operator:            Mandy Bartkowski, ECRO
20

21   Transcription Company:     Reliable
                                The Nemours Building
22                              1007 N. Orange Street, Suite 110
                                Wilmington, Delaware 19801
23                              Telephone: (302)654-8080
                                Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

1  APPEARANCES CONTINUED:

2  For the U.S. Trustee:     Linda Richenderfer, Esquire
                            Jane Leamy, Esquire
3                           OFFICE OF THE UNITED STATES TRUSTEE
                            844 King Street, Suite 2207
4                           Lockbox 35
                            Wilmington, Delaware 19801
5
   For the Committee:        Darren Azman, Esquire
6                            MCDERMOTT WILL & EMERY
                             One Vanderbilt Avenue
7                            New York, New York 10017

8  For the SEC:              William Uptegrove, Esquire
                             U.S SECURITIES AND EXCHANGE
9                              COMMISSION
                             950 East Paces Ferry Road, NE
10                           Suite 900
                             Atlanta, Georgia 30326
11
                             Michael Kelly, Esquire
12                           U.S. SECURITIES AND EXCHANGE
                               COMMISSION
13                           100 F. Street, NE
                             Washington, DC 20549
14
   For Avalanche (BVI),
15 Inc.:                     Ryan Fink, Esquire
                             SIDLEY AUSTIN LLP
16                           One South Dearborn
                             Chicago, Illinois 60603
17
   For the Plan
18 Administrator:            Elizabeth Jones, Esquire
                             KIRKLAND & ELLIS LLP
19                           KIRKLAND & ELLIS INTERNATIONAL LLP
                             601 Lexington Avenue
20                           New York, New York 10022

21 Pro Se Litigants:         Raminder Singh Hora
                             Thomas Pierre Blanc
22                           Rex Wu

23

24

25

1                                  INDEX

2    MOTIONS:                                              PAGE

3    Agena
     Item 5: Second Amended Chapter 11 Plan of            4
4            Liquidation of Terraform Labs Pte.
             Ltd. and Terraform Labs Limited
5            [Docket No. 700 – filed September
             17, 2024]
6
             Court's Ruling:                              46
7

8    DECLARATIONS:                                        PAGE

9    1) Michael Leto                                      9

10   2) Emily Young                                       9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commence at 10:04 a.m.)

2          THE COURT:  Good morning, Ms. Berkovich.  Its good

3    to see you.

4          MS. BERKOVICH:  Good morning, Your Honor.  Nice to

5    see you too.  Ronit Berkovich from Weil Gotshal & Manges for

6    the debtors, Terraform Labs Pte. Ltd., and Terraform Labs

7    Ltd.

8          We filed the agenda for this mornings hearing at

9    Docket 720.

10          THE COURT:  I have it.

11          MS. BERKOVICH:  Today is the confirmation hearing

12    for the debtors second amended plan which was filed at Docket

13    717 on September 17th.  The redline was filed at 718.  Our

14    brief in support of confirmation was filed at Docket 703 and

15    our plan supplement documents were filed at No. 653, 664, 684

16    and 719.

17          I am joined in the courtroom today by my

18    colleagues, Cliff Carlson, Jared Friedman, Gavin Andrews,

19    Jesse Kitnick, Ismail Buffins, and Catherine Balido from Weil

20    as well as our co-counsel, Zach Shapiro, from the Richards

21    Layton firm. This whole team worked very hard to bring us

22    where we are today.

23          Also present in the courtroom are the debtors two

24    declarants in support of confirmation, Michael Leto who is

25    the managing the director at Alvarez & Marsal, which is the

1  debtors financial advisor, as well as Emily Young, the

2  director of corporate restructuring from Epiq, the debtors

3  claims agent.  We thank the Court for permitting Ms. Young to

4  appear via Zoom.

5           THE COURT:  Happy to oblige.

6           MS. BERKOVICH:  So first a brief overview and

7  proposed roadmap for the hearing.  We are very pleased today

8  to be before the Court with a plan that has the support of

9  the two primary constituents in this case, the SEC and the

10 creditors committee.  It has been overwhelmingly accepted by

11 all classes; all three classes entitled to vote on the plan.

12          We began these cases almost eight months ago

13 embroiled in contentious litigation with the SEC.  From the

14 beginning of the cases our goal has always been to preserve

15 and maximize value in light of the potential liability the

16 debtors faced in the SEC enforcement action.  After the jury

17 verdict in the spring the debtors entered into settlement

18 discussions with the SEC culminating in a settlement among

19 all the parties which paved the way for the plan.

20          With input and cooperations from multiple

21 stakeholders, including the SEC and the creditors committee,

22 the plan we submit today incorporates the key terms of the

23 SEC settlement including the orderly winddown of the debtors

24 business through the creation of the winddown trust, fixing

25 the SEC's claim of approximately $4.4 billion and,

1  importantly, treating the SEC's claim as deemed satisfied

2  only upon distributions -- deemed satisfied upon

3  distributions to holders of allowed general unsecured claims

4  and crypto loss claims, so, the SEC, effectively, will not be

5  taking a distribution here, and establishing a dedicated pool

6  of assets from the SEC settlement exclusively for

7  distribution to holders of crypto loss claims.

8          Its worth noting that without this SEC settlement a

9  plan would not have been achievable in this case and the

10 other creditors would have received very, very little

11 recovery due to the dilution from a multi-billion-dollar

12 claim.

13         So, we would like to thank the SEC, the creditors

14 committee, and the U.S. Trustee for working with us through

15 some lengthy negotiations to achieve this result.  We are

16 here today on a nearly consensual basis.  We have been able

17 to resolve almost all of the formal and informal objections

18 through changes to the plan which we filed last night and

19 changes to the confirmation order which we will present to

20 the Court later.

21         THE COURT:  Okay.

22         MS. BERKOVICH:  So, with that -- there are a few

23 though unresolved objections which we are ready to deal with

24 today.

25         THE COURT:  Very good.

1        MS. BERKOVICH:  So, with that overview here is how

2   I would propose to proceed if it pleases the Court: first, if

3   the Court would like a refresher on the plan I can provide a

4   short summary.

5        THE COURT:  No. I very much appreciate getting the

6   blacklines, even as late as, I think, this morning they

7   arrived and they were particularly helpful to me to track the

8   changes; many of which I certainly can tie to the objections

9   or what I could perceive would be areas of concern or

10  friction between parties.  So, I think I have a pretty good

11  handle on the plan.

12       I have been through the objections as well as your

13  memorandum.  I will grant the motion to expand the briefing

14  limits.

15       MS. BERKOVICH:  I don't know how we can ever meet

16  the limits in a confirmation brief given all the standards,

17  but because I gave you a lengthy brief, I would actually

18  propose that we don't have to give an affirmative case on the

19  legal standards for satisfying confirmation and can rely on

20  our briefs.

21       THE COURT:  That is typically my approach.  I will

22  hear any objections and issues that parties have and if we

23  need to focus on any or all of the 1129 and 1123 factors and

24  elements then we can do that; otherwise, I note that Mr.

25  Leto's declaration as well as the memorandum walk through

1  each of those and it does not seem to me, other than with

2  some of the investor objections, I don't think that we are

3  really implicating the 1129 issues as far as I can tell from

4  the objections that remain live, but I am at the parties

5  pleasure in that respect.

6      MS. BERKOVICH:  I agree, Your Honor.  So, I will

7  next introduce the evidence.  After that creditors committee

8  counsel would like to say a few words in support of the plan,

9  followed by Mr. Carlson who will speak to how we address and

10  resolve the objection of Avalanche, a potential objection of

11  Avalanche.  Next Mr. Andrews will deal with the unresolved

12  objections from the crypto loss claims.  Finally, Mr. Kitnick

13  will walk the Court through a few proposed changes to the

14  confirmation order.

15      THE COURT:  That sounds fine.

16      MS. BERKOVCH:  So, turning to the affirmative case,

17  Your Honor, I'd like to offer into evidence the two

18  declarations filed with this Court that form the basis of the

19  evidentiary record and factual record in support of today's

20  hearing.  First, I offer the declaration of Mr. Leto at

21  Docket 706 as the direct testimony Mr. Leto would give if

22  called to testify.  Mr. Leto is in the courtroom and

23  available for questions on cross-examination.

24      THE COURT:  Very good.  Are there any objections to

25  the admission of Mr. Leto's declaration as part of the

1   debtors case in chief for purposes of plan confirmation

2   subject to the opportunity to cross-examine Mr. Leto

3   regarding the contents of his declaration and his testimony?

4        (No verbal response)

5        THE COURT:  Hearing no response, Mr. Leto's

6   declaration is admitted.

7        (Leto declaration received into evidence)

8        THE COURT:  I would ask if there is any party that

9   intends or expects to cross-examine Mr. Leto regarding the

10  contents of his declaration.

11       (No verbal response)

12       THE COURT:  Very well.  Mr. Leto's declaration is

13  admitted.

14       MS. BERKOVICH:  Thank you, Your Honor.  The debtors

15  also offer the declaration of Emily Young from Epiq regarding

16  the voting and tabulation of ballots at Docket 699 to be

17  entered into evidence.  As noted, Ms. Young is available for

18  questions or cross-examination.  She is on Zoom.

19       THE COURT:  Very good. I would ask if anyone wishes

20  to -- are there any objections to the admission of Ms.

21  Young's declaration as the balloting certification for

22  purposes of the debtors case in chief with respect to plan

23  confirmation and particularly the results of the balloting

24  exercise with those classes entitled to vote?

25       (No verbal response)

1           THE COURT:  Very well.  Ms. Young's declaration is

2   admitted.

3       (Young declaration received into evidence)

4           THE COURT:  Is there any party that intends or

5   expects to cross-examine Ms. Young regarding the contents of

6   her declaration?

7       (No verbal response)

8           THE COURT:  Very well.  That declaration is

9   admitted.  The Court notes that at the request of counsel the

10  Court did permit Ms. Young to testify remotely given the

11  seemingly remote chance that she would actually be called to

12  testify.  So, happy to oblige in that respect.  Both

13  declarations are admitted.

14          MS. BERKOVICH:  Thank you, Your Honor.  With that I

15  will pass the podium to Mr. Azman from the McDermott firm.

16          THE COURT:  Very good.

17          MR. AZMAN:  Your Honor, good morning.

18          THE COURT:  Good morning.  Good to see you.

19          MR. AZMAN:  Darren Azman from McDermott for the

20  committee.

21          Your Honor, the committee fully supports this plan

22  and what it will accomplish for the victims of what we now

23  know was a massive fraud. Importantly, the plan will create a

24  trust that will be well-funded to pursue third parties for a

25  variety of claims.  And after an exhaustive process the

1  committee selected, with the consent of the debtors and the

2  SEC, Todd Synder to serve as the plan administrator.  Mr.

3  Synder will be overseen by an advisory board of five

4  individuals.  Two of those individuals are committee members

5  and the remaining three are going to be selected at a later

6  date.

7          Together with what we expect will be more then $200

8  million of proceeds from the SEC settlement we are confident

9  that this plan is going to result in meaningful recoveries to

10  creditors both general unsecured creditors and also crypto

11  loss claimants.  There is also something quite noteworthy

12  about the way this case unfolded that I want to quickly

13  highlight.  This was not a simple case.  It was and still is

14  quite complex.  Yet, as  Your Honor knows, we probably had

15  five or six hearings and the parties very rarely require you

16  to adjudicate anything in the case and that is not because

17  there weren't disputes, it's not because this was a simple

18  case, it's because we worked quite collaboratively in a

19  productive way with both the debtors, their professionals,

20  and the SEC.

21          THE COURT:  So, I owe you one.

22      (Laughter)

23          MR. AZMAN:  You owe me three.  I just want to thank

24  the debtors professionals, the SEC, and everybody that was

25  involved because I just really think this case proceeded

1  smoothly and demonstrates that even in complex cases the

2  parties can resolve things outside the purview of the Court

3  to make your job a little bit easier.

4  　　　　　THE COURT:  Very good.

5  　　　　　MR. AZMAN:  So that is all I have, Your Honor,

6  unless you have any questions.

7  　　　　　THE COURT: I do not, Mr. Azman.  Thank you.

8  　　　　　MR. AZMAN:  Thank you.

9  　　　　　THE COURT:  Counsel.

10 　　　　　MR. CARLSON:  Good morning, Your Honor.  Cliff

11 Carlson of Weil Gotshal on behalf of the debtors.

12 　　　　　So, Your Honor, my section will be brief on this.

13 There was a potential objection of the plan filed by

14 Avalanche, a creditor of LFG.  We have resolved that

15 objection and we are very close to finalizing the terms of a

16 settlement agreement that will facilitate the transfer of LFG

17 assets to the estate.  As a creditor of LFG, they had some

18 concerns and raised some issues with that, but believe that

19 the agreement we have reached, which is supported by the

20 creditors committee as well, resolves those issues for

21 purposes of today.

22 　　　　　We expect to be finalizing that settlement

23 agreement in the next day or so.  We will be filing a motion

24 with the Court to seek approval of that agreement.  So, we

25 will be back before Your Honor if there are issues with the

1  motion, but it resolves that objection.

2          Mr. Fink, who represents Avalanche, is in the

3  courtroom.  I do believe, because we haven't inked the

4  settlement agreement yet, wants to read some reservation of

5  rights into the record if it's okay with Your Honor.

6          THE COURT:  Mr. Fink, welcome sir.

7          MR. FINK:  Thank you, Your Honor.  Ryan Fink from

8  Sidley Austin on behalf of Avalanche (BVI), Inc.

9          I will keep things brief, Your Honor.  Avalanche is

10  a creditor and contract counterparty to one of the debtors as

11  well as Luna Foundation Guard or LFG.  Avalanche previously

12  expressed concerns about the combined impact of the plan and

13  the SEC settlement on LFG's creditors given that the

14  settlement provides for the transfer of LFG's assets to the

15  estates.

16          I am happy to report that after several weeks of

17  discussions amongst the debtors, Avalanche, and the UCC, as

18  debtor's counsel noted, we are preliminarily resolved subject

19  to final documentation and the Court entering an order

20  approving a settlement, which as debtors counsel noted, we

21  expect the motion will be on file in the next few days.

22  Until the final consummation of that settlement, Avalanche,

23  of course, reserves all of its rights and claims with respect

24  to the asset transfer and the distribution of those assets to

25  the debtors creditors.

1          Unless Your Honor has any questions, I will yield

2     the podium back to the debtors counsel.

3          THE COURT:  I do not have questions.  Your rights

4     are reserved and I will look for that motion to be filed and

5     the Court will be happy to accommodate scheduling as it

6     relates to that upcoming motion.

7          MR. FINK:  Thank you, Your Honor.

8          THE COURT:  Thank you, Mr. Fink.

9          Ms. Richenderfer.

10         MS. RICHENDERFER:  Your Honor, Linda Richenderfer

11     from the Office of the United States Trustee.

12         I had the benefit of being on vacation out of the

13     country while all of this was going on.  So, Ms. Leamy knows

14     the ins and the outs of the plan and the revised confirmation

15     order, and at the appropriate time will rise regarding the

16     confirmation order.

17         THE COURT:  Okay.

18         MS. RICHENDERFER:  Your Honor, I rise because I

19     thought this might be the point to talk about this and since

20     we're talking about a settlement agreement that is not yet

21     before the Court.  Through different things that we saw on

22     the docket this morning we have determined that the plan

23     administrator is retaining, has retained Kirkland & Ellis to

24     represent him.  The debtor will be working with Kirkland &

25     Ellis pre-effective date opening the kimono, I guess, and --

1        THE COURT:  I think we don't use that phrase

2 anymore.

3        MS. RICHENDERFER:  Probably not, but you know, Your

4 Honor, I'm still on Brazilian time or whatever that is, or

5 I'm on mojito time, I should say.

6        So, Your Honor, one concern I rise with respect to

7 what happens, what the trust does post-effective date, of

8 course, that is not within the purview of the United States

9 Trustees Office but what occurs before the effective date is.

10 And it is our understanding that there are potential causes

11 of action that this trust might have against Celsius.

12 Kirkland & Ellis was counsel to Celsius in their bankruptcy

13 proceeding.

14        There is nothing in this documentation, the

15 agreement by which Mr. Todd and his counsel are going to be

16 allowed to gain access prior to the effective date to the

17 debtors information is not included in the materials Your

18 Honor will be approving. I have been told that there will not

19 be an order or an agreement put before the Court.

20        So, there won't be another opportunity for the

21 United States Trustee to raise this potential issue.  There

22 will be no payments, I understand, to Mr. Todd but definitely

23 not to Kirkland prior to the effective date.  But I just

24 raise -- I couldn't let this one go by because it was just a

25 concern regarding the fact that the plan administrator has

1  retained counsel who represented Celsius through the ins and

2  outs of their entire bankruptcy proceeding and this trust

3  that is taking over the claims of the debtor may have claims

4  against Celsius and that was just something that we wanted to

5  bring to the Court's attention.

6           THE COURT:  Ms. Berkovich.

7           MS. BERKOVICH:  Yes, Your Honor.  I think Ms.

8  Richenderfer is speaking to Paragraph 148 of our confirmation

9  brief where we do note that to assist with the transition,

10  which would benefit all creditors, we have begun providing

11  information to Mr. Synder and to Piper Sandler.  We are going

12  to intend to enter into a consulting agreement with him to

13  provide -- to preserve privilege and to provide for the

14  payment of his fees and expenses because its helpful to

15  creditors to have him start it as quickly as possible if

16  there is a lot of information here to learn.

17           Paragraph 148 also says that this agreement would

18  pay the fees and expenses owed to Mr. Synder's counsel that

19  were incurred in connection with negotiating the terms of the

20  winddown agreement.  So, what I understand to be the case is

21  that Kirkland is working currently on that limited function

22  of negotiating the winddown trust agreement.  There have been

23  no --

24           THE COURT:  So, he is representing -- Kirkland is

25  representing Mr. Synder personally in terms of their counsel

1  that are assisting, at least -- I think the U.S. Trustees

2  concerns were whether Kirkland would be in a significant

3  post-effective date role for the trustee and I think what you

4  are telling me is your understanding is that Kirkland is

5  representing the trustee in terms of what -- in connection

6  with the terms of his engagement and that the debtor would be

7  reimbursing him for those expenses.  Do I have that generally

8  right?

9          MS. BERKOVICH:  At this moment, yes.  What I

10 understand to be the case from Mr. Synder is that there has

11 been no decision yet as to counsel for the trust post-

12 effective date and that it would be taking into account the

13 views of the advisory board.  They would have input into

14 that.  That is the current situation, but all we are seeking

15 to do is reimburse fees in connection with Mr. Synder's

16 transition and the cost of counsel and negotiating the

17 winddown trust agreement.

18         Mr. Synder's counsel, Ms. Jones, from Kirkland &

19 Ellis is on the line if Your Honor has any questions.

20         THE COURT:  Ms. Jones, good morning and welcome.

21         MS. JONES:  Good morning, Your Honor.  Elizabeth

22 Jones of Kirkland & Ellis on behalf of the proposed plan

23 administrator.

24         Your Honor, that is correct.  Right now, our

25 retention is only with respect to Mr. Synder's proposed

1  engagement and working with him to, basically, negotiate the

2  plan administrator agreement.  With respect to any post-

3  effective date role, that is still subject to oversight by

4  the litigation administration committee as well as our

5  conflicts process.

6         We have disclosed to Mr. Synder the Celsius

7  circumstance and it is something that we are aware and

8  keeping track of and conflicts, but we have not reached that

9  point as to whether and what role we would play with respect

10  to pursuing any claims or causes of action that the estates

11  may have.

12         THE COURT:  Thank you, Ms. Jones.

13         I think here is -- Ms. Richenderfer, did you wish

14  to weigh in?

15         MS. RICHENDERFER:  I guess, Your Honor, with the

16  representations that have been made on the record that this

17  is solely to help him negotiate an agreement by which Mr.

18  Synder and his firm, I think its Piper Sandler, are going to

19  gain access and be reimbursed that is different then what our

20  general understanding was.

21         I just wanted to put a fine point on this.  There

22  is supposed to be five people on the committee for the trust

23  and right now there is only two.  One is the Celsius

24  litigation committee, whatever that is, and an individual.

25  And so, again, concern was that counsel not be chosen for the

1   committee for the trust moving forward until they have been

2   able to get a full committee and can make those decisions.

3   The concern was that this was already chosen and it was going

4   to be Kirkland & Ellis.

5           THE COURT:  Here is where we will leave it for

6   purposes of right now. It does not appear that there is any

7   particular relief that is being sought from the Court today

8   in connection with this matter.  The United States Trustee

9   has expressed some concerns about potential conflicts and

10  issues that may manifest following the effective date.  I

11  have every confidence that productive discussions can be had

12  with the United States Trustee to address any issues.

13          I make no comment about whether or not either I or

14  the United States Trustee can or should weigh in on post-

15  effective date operations and decisions.  I will leave that

16  to the parties.  If there are issues or real concerns the

17  parties are welcome to get me on the phone promptly. I don't

18  see this as being an issue in connection with plan

19  confirmation certainly, with respect to the services that are

20  being provided for Mr. Synder, at least at this point.

21          What I did note was that it does not -- those are

22  the services that are being provided, but I think counsel was

23  careful to note that those are the services that are being

24  provided at this point and its not clear whether there may be

25  additional or other services that might occur.  That is a

1   discussion that I think you can have.  Again, I make no

2   comment on the substance of it at this point.  I appreciate

3   the United States Trustee, again, reading.  Paragraph 148 is

4   about halfway through the brief.

5           MS. RICHENDERFER:  Ms. Leamy had to point it out

6   to me, I had not gotten that far myself.  Yeah, Your Honor.

7           And to be very clear, the point in time we're

8   concerned about is between --

9           THE COURT:  The gap.

10          MS. RICHENDERFER:  -- the confirmation date and

11  the effective date, the gap, what role they would be playing,

12  but there's a limited role right now, as we understand it.

13          THE COURT:  Okay.

14          MS. RICHENDERFER:  And if it develops, we'll be in

15  front of the Court again on the 9019 motion anyway with

16  Avalanche, so --

17          THE COURT:  So noted.

18          MS. RICHENDERFER:  Thank you, Your Honor.

19          THE COURT:  Thank you.

20          MR. ANDREWS:  Your Honor, good to see you again --

21          THE COURT:  Welcome.

22          MR. ANDREWS:  -- Gavin Andrews from Weil Gotshal

23  for the debtors.

24          THE COURT:  Good to see you.

25          MR. ANDREWS:  Your Honor, as you would have seen,

1  there were six individual objections to the plan that were

2  filed, and we address these objections at pages 74 to 85 of

3  our brief.  I think, at a very high level, these objections

4  can be classified into three different categories.  Firstly,

5  the crypto loss claims are given a smaller recovery

6  percentage than general unsecured claims, and that these loss

7  claims should be at least equally -- should be treated at

8  least equally to the general unsecured claims.  Secondly,

9  that certain claims within Class 5, being crypto loss claims,

10  should recover better treatment than other claims within this

11  class, being holders of UST, should recover ahead of other

12  crypto loss claims such as LUNA holders, and the other large

13  institutional investors are being treated *pari passu* to non-

14  institutional investors within that class as well.  And then,

15  thirdly, that the Beltran allowed secured claims of Class 3

16  are prioritized over the crypto loss claims when both sets of

17  claims are based on cryptocurrency.

18          Your Honor, I can address these objections, if

19  you'd like, but if you'd prefer, you might want to see if

20  there are some objecting parties on the line.

21          THE COURT:  I think that that would make sense.

22  The Court notes that the agenda and the record before me

23  identifies a number of objections filed by holders of

24  cryptocurrency, and I agree generally with Counsel's

25  description of the buckets or categories into which the

1  objections fall.

2          There are a number of parties and I think the

3  easiest thing to do would be for the Court to ask first are

4  there any objecting creditors present in the courtroom today?

5  I'll turn to parties participating via Zoom momentarily, but

6  I would ask, any parties present in the courtroom?

7      (No verbal response)

8          THE COURT:  All right, hearing none, I note that

9  the -- hang on just a second -- I would be happy to hear at

10  this point from any of the objectors that wish to be heard in

11  connection with their filed oppositions to the plan.  I know

12  that there are a number of folks that are on, so I will hear

13  from any party and every party that wishes to be heard.

14          MR. HORA:  Okay, so I'll go first.  My name is

15  Raminder Singh B. Hora --

16          THE COURT:  I'm sorry, hang on --

17          MR. HORA:  -- and my objection is --

18          THE COURT:  -- this is -- this is Judge Shannon,

19  can you -- and I believe that this is Raminder Hora, is that

20  correct?

21          MR. HORA:  Yes.

22          THE COURT:  Okay.  I'm going to ask, Mr. Hora, if

23  you can get a little closer to your microphone, we're having

24  a little bit of difficulty hearing you.  I do see you on the

25  screen now.  Good morning, sir, and welcome.

1          MR. HORA:  Good morning, sir.

2          THE COURT:  All right, I can hear you much better

3   now.  You may proceed.

4          MR. HORA:  My objection is one that the UST claim

5   must be clarified (indiscernible) LUNA because one, UST was a

6   stablecoin and LUNA itself was (indiscernible) my second

7   objection is that Beltran secured claims must not be treated

8   as secured because they have very similar claims to ours, and

9   the other three (indiscernible) the Beltran suit allowed the

10  (indiscernible) to be part of the suit was decided based on a

11  comity which rejected many of the claims which were not big

12  in size or when they found that the claimant was not willing

13  to (indiscernible) whatever was (indiscernible).  So I

14  believe that is not as per the law and they should not have a

15  secured claim at all because they eat up a lot of the money

16  that is being offered by TFL and it will leave nothing for

17  the other creditors at all.

18         These are my four objections.

19         THE COURT:  Thank you, Mr. Hora.  I was able to

20  hear you clearly.  I appreciate your comments.

21         And I would hear at this point, I see that, I

22  believe it's Mr. Pierre Blanc, Mr. Thomas Pierre Blanc is on

23  the line.  Am I correct, sir?

24         MR. BLANC:  Yeah, that's me.  Can you hear me?

25         THE COURT:  I can hear you just fine.  Good

1  morning and welcome.

2          MR. BLANC:  Okay.  Good morning, Your Honor.

3  Thank you for having me on for Zoom meeting.

4          So, yeah, basically, I'm French, I live in France.

5  I tried to represent as a (indiscernible) I'm just a retainer

6  and a small investor, I tried to represent the voice of many

7  small investors from Terra LUNA.  My objections were related

8  to the fact that we should really prioritize as there were

9  precedents the small investors, compared to the large

10  investor, whoever (indiscernible) in respect of

11  (indiscernible) considering that UST was literally not the

12  same investment as LUNA, which was volatile.

13          So these are my objections, but I would like to

14  add something relating to the voting (indiscernible) of the

15  confirmation.  So I see everybody has appeared and all class

16  -- all Class 4, 5, and 6 voted yes for a plan, and even Class

17  5, 96 percent of people voted yes, but because literally in

18  Class 5 we have no other choice because we were told that, if

19  we were voting no (indiscernible) Chapter 11 would transform

20  in Chapter 7 with zero (indiscernible) to be convert from our

21  class.  So (indiscernible) all people from Class 5 had no

22  choice, they all vote yes; otherwise, nothing trigger, but

23  that doesn't mean that other people are in agreement with all

24  the aspect of a plan.

25          So a lot of people followed my objections, but

1  were forced to vote yes because they didn't want it to

2  (indiscernible).

3              THE COURT:  Thank you, Mr. Blanc.

4              I see Mr. Wu on the line.  Sir, do you wish to be

5  heard?

6              MR. WU:  Your Honor --

7              THE COURT:  I can hear you.  Go ahead.

8              MR. WU:  Please excuse me, I have a little bit of

9  a speech impediment.  I'll try to be as clear as possible.

10             I'm objecting to (indiscernible) on September

11 17th, the debtor presented new information after the date to

12 object to the Chapter 11 plan, filed Docket 703, debtors'

13 memorandum of law in support of confirmation of second

14 amended Chapter 11 plan of liquidation of Terraform Labs,

15 that memorandum.  In the memorandum, the debtor stated that

16 there was a total of only 306 votes of yes for the 12 votes

17 for no.  There was a total of 318 votes out of 6.8 trillion

18 (indiscernible) tokens held on five million wallets.

19             The low turnout of votes points to the debtors'

20 failure to (indiscernible) Rule 3017 (indiscernible)

21 solicitation package to all (indiscernible) holders in

22 violation of Bankruptcy Rule 3017.  Here Classes 4, 5, and 6,

23 Bankruptcy Rule 3017 was applied with prejudice against Class

24 5.  Classes are impaired, but only holders of Class 4 and 6

25 were mailed out solicitation packages (indiscernible) while

1   only the holders of Class (indiscernible) class claim were

2   mailed a solicitation package.

3           Also requiring a claim filing in order to receive

4   a solicitation package would (indiscernible) to believe that

5   the holders of Class 5 (indiscernible) the solicitation

6   package only after the voting began.

7           Docket 572, proposed disclosure statement and form

8   and manner of notice of disclosure statement hearing,

9   establishing solicitation and voting procedures, cure

10  procedures, (IV) scheduling confirmation hearing,

11  establishing notice and objection procedures for confirmation

12  of proposed plan, and (VI) granting related relief.

13          Solicitation packages were approved and Class 5

14  will not be sent any solicitation package until after voting

15  began (indiscernible) Bankruptcy Rule 3017 is attempting to

16  do.  Bankruptcy Rule 3017(d) explicitly states

17  (indiscernible) transmission and notices to the United States

18  Trustee, the creditors (indiscernible) token holders and

19  equity holders.  Bankruptcy Rule 3017 was not met to identify

20  many more holders (indiscernible) though, which can be

21  obtained by other validators plus some detective work by

22  (indiscernible) IP address and publicly available

23  information.

24          The efficient way is to simply contact the crypto

25  exchanges, their clients have to KYC, which stands for know

1  your client, in which an ID or driver's license

2  (indiscernible) information are required at signup

3  (indiscernible) 3017 is not met (indiscernible) checked it

4  and was denied approval (indiscernible) tokens and USTC

5  stablecoins do not meet the Bankruptcy Code 510(b),

6  Bankruptcy (indiscernible) 22, and Bankruptcy Code 1123(a)(1)

7  (indiscernible) 4 stated on my objection (indiscernible)

8  stablecoins listed on my objection should not be classed in

9  Class 5 (indiscernible) rulings on with cryptocurrencies or

10 securities, each case should be looked upon individually

11 (indiscernible) did not satisfy the Howey test, ruled that

12 XRP as a digital token is not in and itself a contract,

13 transaction, or a scheme that embodies the (indiscernible)

14 requirement of (indiscernible) contract.  Instead, the court

15 held it should look to the totality of the facts and

16 circumstances.

17          The court held that the anonymity between

18 (indiscernible) buyers and Ripple (indiscernible) sales did

19 not satisfy the Howey test because these transactions could

20 not lead to, you know, profits solely from the efforts of the

21 promoter or a third party.   LUNC tokens are also

22 (indiscernible) daily (indiscernible) tokens (indiscernible)

23 changes daily.  These shares of equity in the company does

24 not change every day and it would throw the corporate

25 structure and reporting (indiscernible) is also a currency

1  (indiscernible) and can be used to NFTs, equity cannot do

2  that.

3          For these reasons, tokens should not be Class 5,

4  be placed in Class 5, and I request the Honorable Court to

5  reject the liquidation plan.

6          THE COURT:  Thank you, Mr. Wu.

7          Are there other parties that wish to be heard in

8  opposition to the debtors' request for confirmation?

9      (No verbal response)

10          THE COURT:  Very good.

11          Mr. Andrews, I would appreciate your response to

12  the arguments that have been raised.

13          MR. ANDREWS:  Thank you, Your Honor, and I will --

14  there was a lot in there, but I'll take it sort of one piece

15  at a time and let me know if you have any questions.

16          I think, firstly, dealing with the points about

17  holders of UST, and also sort of the individuals verse the

18  large investors recovering and being in the same class.  So,

19  Your Honor, the plan contemplates that there will be crypto

20  loss claim procedures, these procedures will be filed by our

21  motion, and that parties that want to be heard or have some

22  input on these procedures will be able to do so at that

23  point.

24          Of course, we have sympathy -- we do have sympathy

25  for these people, including Mr. Wu and Mr. Blanc.  We

1  understand that, you know, they were -- they're smaller

2  investors, they hold UST, and that they are different to LUNA

3  holders.  And the -- you know, these considerations should be

4  passed on to the plan administrator when they're compiling

5  these procedures.  But, importantly, these procedures are

6  providing for the legitimacy of these claims, not just for

7  people on the line today, but of course all crypto loss claim

8  holders, how these claims were -- what type of claims they

9  are, and may take into account the type of holder of these

10  claims.

11          So the bottom line is, Your Honor, is that these

12  procedures may very well provide for the fact that UST

13  holders could recover on their claims at a higher proportion

14  than say certain other crypto holders such as LUNA.

15          And I think --

16          THE COURT:  Let me ask you a follow-up question.

17          MR. ANDREWS:  Sure.

18          THE COURT:  Do I have to find that that will

19  happen, or is the plan confirmable even if it provides for

20  similar treatment to large and small holders of UST and LUNA?

21          MR. ANDREWS:  There is a high degree of complexity

22  as in this business, the claim holders, where these claims

23  were -- how these claims arose.  I think there are going to

24  be lots of different facts and circumstances just within

25  people who potentially lost UST.  I mean, I think they -- the

1   objectors on the call today probably lost their claims as a

2   result of the depeg perhaps, but there might be other UST

3   holders who lost it in different circumstances.

4           The procedures will take some time to develop and

5   it is very complex, and we need to allow the plan

6   administrator to undertake that process.  And of course at

7   that time all the parties on the line today and other crypto

8   loss claims holders will be able to provide their input at

9   that time.

10          THE COURT:  Very good.

11          MR. ANDREWS:  So the next -- I think the next

12  objection was in respect to Beltran.  So --

13          THE COURT:  This relates to the litigation in

14  Singapore that we had proceedings on probably a month or so

15  -- more than a month ago.

16          MR. ANDREWS:  That's right, Your Honor.  The

17  Beltran claimants -- I mean, I take the point that it was --

18  their claims are based on cryptocurrency also.  The debtors'

19  view, and which was encompassed in the stipulation that Your

20  Honor ordered earlier this month, is that these claims do

21  have -- are secured and, therefore, should be properly

22  classed in a separate class in Class 3.  And these claims

23  will only be allowed to the extent as determined by the

24  Singapore high court and up to the amount of the Beltran

25  escrow deposit, the remainder of which would be returned to

1  the estate.

2          And I think the last point, Your Honor, was in

3  respect to solicitation that Mr. Wu raised.  So there was I

4  guess two separate processes here, Your Honor.  We wanted to

5  -- we didn't know earlier in the case the universe of crypto

6  claim holders, so we established what was called the

7  preliminary crypto loss bar date.  This was -- the bar date

8  order was served on all of the creditor matrix, it was also

9  published in the New York Times and CoinDesk, you know, what

10  we probably could consider more traditional media.  And in

11  addition to that, Your Honor, the bar date was also -- the

12  debtors took some time to consider what mediums the bar date

13  would be -- would be best to be published on in respect to

14  the Terra ecosystem, and what kind of creditors would access

15  those ecosystems.  So -- and the platforms that they did so

16  were Twitter, Mediadiscord, and Telegram.

17          Now, Your Honor, I'm not sure how big of a Twitter

18  user you are, but you can pin certain things to the Twitter

19  page and the bar date, same with the confirmation order was

20  pinned to the Twitter page.

21          THE COURT:  I understand.

22          MR. ANDREWS:  And importantly, Your Honor, the

23  crypto -- the preliminary crypto loss bar date order was done

24  in consultation with the creditors committee and with

25  comments from the U.S. Trustee.  Subsequent to that, our

1 solicitation procedures were ordered by the Court, we

2 followed those procedures and, very similar to the service of

3 the crypto loss bar date order, we proceeded to do it,

4 publish it by traditional media like the New York Times and

5 CoinDesk, and then also do the same thing in respect to the

6 social media platforms.

7          So, you know, we would contend, Your Honor, that

8 the crypto loss bar date was properly served.  So we were

9 able to establish the universe of claims at that time, and

10 then everyone had the opportunity to access at least or

11 receive the confirmation hearing notice.

12          THE COURT:  Very good.

13          Can I hear from the parties, if you wish, in brief

14 response to Mr. Andrews' comments regarding your objections?

15 And I would start with Mr. Hora, if -- I believe I had you --

16 there you go.  Good morning again, Mr. Hora.  Did you wish to

17 respond briefly to Mr. Andrews' comments?

18      (Pause)

19          THE COURT:  Can you turn your microphone on, sir,

20 please?

21          MR. HORA:  Yes.  So, basically, my objection to

22 this is that when you say that the Beltran claim is secured

23 to the extent of the escrow, however, the Beltran claim is

24 not legal and it's not on a basis -- not on a factual basis.

25 It should be actually lifted because (indiscernible) that a

1  certain set of (indiscernible) that had very similar claims

2  to other UST holders are being prioritized, and it is not --

3  it does not compliment or like the justice system or

4  (indiscernible) all of the (indiscernible) and it just

5  benefits a certain set of investors who approached the

6  (indiscernible) and got an (indiscernible) that actually

7  belongs to the investors equally.

8          Therefore, I think the Court should not put them

9  into Class 3, but they should all be into the Class 5 because

10 it is not the legal or factual basis, or it doesn't justify

11 the claimants to be secured as for the escrow amount.

12          So that's my objection to this.

13          THE COURT:  Thank you, Mr. Hora.

14          Mr. Blanc, did you wish to be heard in response as

15 well?

16          MR. BLANC:  Yes, thank you.  So just to be clear,

17 as I understand it, unfortunately, I will have no guarantee

18 that if we have a confirmation of a plan small investors will

19 be prioritized, so I plan to file again my objections in the

20 future with the plan administrator.

21          THE COURT:  Very good.  Thank you, Mr. Blanc.

22          Mr. Wu?

23      (Pause)

24          THE COURT:  Mr. Wu, you need to turn your

25 microphone on, sir.

 1          MR. WU:  Can you hear me, Your Honor?

 2          THE COURT:  Yes, I can.

 3          MR. WU:  Wasn't counsel's explanation, it's not

 4  adequate?

 5          THE COURT:  I'm sorry?

 6          MR. WU:  Rule 3017 was not met.  The more proper

 7  way to reach out to the LUNC holders would probably be

 8  through the exchanges on the information that a trader can

 9  contact (indiscernible) voting for the Class 5.  So it's

10  grossly inadequate.

11          THE COURT:  Okay.

12          MR. AZMAN:  Your Honor, could I just make a few

13  brief --

14          THE COURT:  Mr. Azman, yes.

15          MR. AZMAN:  -- comments that might help on a

16  couple of these issues?

17          Again, Your Honor, Darren Azman from McDermott for

18  the Committee.  Just briefly on the Beltran issue, one, it

19  was already essentially decided through a stipulation

20  previously, but I will -- I wanted to say on the record for

21  the investors that are on the call speaking now that the

22  Committee looked at the Beltran issue quite extensively.

23          There's actually -- unfortunately, those Beltran

24  claimants beat other crypto investors to the court and they

25  did it in Singapore, which has very different laws than the

1  U.S. does.  And there is case law in Singapore that says this

2  is secured.

3          And so we looked at other creative ways, because I

4  agree with the Objectors here, it is unfair that the Beltran

5  claimants are going to have access to a very large amount of

6  cash that's sitting in escrow there and that other creditors

7  are not going to be able to top those dollars.  But the

8  reality is that there was no creative around this and the

9  Singapore law is what it is.

10          THE COURT:  I understand.

11          MR. AZMAN:  On the small investors issue, the

12  Committee also sympathizes with the smaller investors here,

13  but there just is no legal right, as Your Honor knows, under

14  the Bankruptcy Code, for smaller investors to get more or

15  better recoveries than larger investors.

16          There is, as Your Honor knows, a mechanism the

17  debtors could have chosen to create separate classes, a

18  convenience class, but through negotiations with the

19  Committee, the plan is what the parties negotiated and what's

20  been proposed to the Court.

21          That's all I have, Your Honor.  Thank you.

22          THE COURT:  Okay.  I am going to overrule the

23  objections and I will give you my reasons.

24          First, I certainly sympathize with the losses that

25  have been suffered by all of the creditors here, retail

1   investors, and large institutional investors, or larger

2   investors, as well.  And to the extent that it is within the

3   Court's power to assist in ensuring that there is a recovery,

4   you should understand that I am, in fact, committed to that.

5          But as I look at the objections, and, again, I

6   appreciate the concerns that have been raised and, frankly, I

7   ascribe significance to the fact that the fiduciary for all

8   unsecured creditors, the Official Committee of Unsecured

9   Creditors, in large measure, agrees with some of the concerns

10  around considerations and acknowledges that some of the

11  treatment that the Objectors would wish for is, has been made

12  available in other cases, but it's not part of the plan

13  that's here.

14         I start with the concern and the objection raised

15  that the plan does not provide for a superior recovery for

16  smaller investors whose economic loss is, perhaps,

17  presumptively more significant or more painful than for

18  larger investors.  The Bankruptcy Code is built upon a

19  principle of equal treatment between creditors that are

20  similarly situated.  The Court knows that there are some

21  cases, crypto and, otherwise, where smaller creditors are

22  often treated in a particular way that is different from

23  larger or institutional creditors.  That is an exception to

24  the rule and that is not a process that this Debtor has

25  chosen to pursue.  So I don't find that there is

1   inappropriate or unfair discrimination between the creditors.

2           I would note, also, that to the extent the

3   concerns and objections are relating to the proposed plan

4   treatment, first, counsel has noted that the plan treatment

5   itself will be the subject of the development of procedures

6   that will be developed on a post-confirmation basis and there

7   may be the opportunity for a meaningful recovery through that

8   process.  But I'm not satisfied that there's inappropriate or

9   unfair discrimination as to creditors, and I would overrule

10  the objection on that respect.

11          With respect to the Beltran issue, again, the

12  Court conducted proceedings on several occasions.  There was

13  a Beltran objection that was filed early on; that matter was

14  carried and I assume -- actually, I don't assume -- I was

15  advised by parties at a further hearing that there was

16  extensive negotiation and the Committee expressed real

17  concern about, frankly, the superior treatment of creditors

18  that were beneficiaries of the litigation in Singapore, but

19  again, the Court conducted a hearing and then the parties

20  actually reached a consensual resolution, the practical

21  effect of which is to treat the Beltran creditors as secured.

22          And that is, as counsel noted, a simple function

23  of parties getting legal relief prior to the Court, prior to

24  this Court having jurisdiction or control over the matter.

25  The significant escrow was posted; it remains within the

1  Singapore Court and sophisticated parties, represented by

2  able professionals, negotiated a proposed treatment based

3  upon their own assessment of it and the Court has already

4  approved that treatment.  While I, again, sympathize that the

5  Beltran creditors are receiving a superior return, likely, on

6  what appear to be identical creditors, the circumstances have

7  afforded them superior rights.

8          And, finally with respect to the concerns

9  articulated by Mr. Wu, with respect to the sufficiency and

10  adequacy of solicitation, the Court notes that we did conduct

11  a hearing back in the beginning of August in connection with

12  the debtors' request for authority to move forward with the

13  plan.  The debtors' disclosure statement, along with its

14  proposed solicitation materials, and a description of the

15  mechanics of the proposed solicitation process was filed and

16  served, consistent with the applicable rules.

17          I've had an opportunity both, before the hearing

18  and right now, to review the Court's order, which is dated

19  August 8th, appearing at Docket 572, which lays out the

20  process for the form and manner of voting on the plan and the

21  form and manner of notice to stakeholders, and I am satisfied

22  that the record developed before me here today does reflect

23  compliance with those procedures.  Again, I understand

24  Mr. Wu's concerns, and this is not the Court's first crypto-

25  related case and these cases are often noted or associated

1  with a challenge in identifying the potential stakeholders.

2  But I'm satisfied here that the Court's order was well-

3  founded.  It is a final order and was not appealed and the

4  debtors have complied with that order.

5           And, again, I ascribe significance, once again, to

6  the role and support of the Official Committee of Unsecured

7  Creditors in that process to ensure that the solicitation and

8  notice process that the debtors embarked upon was, indeed,

9  sufficient and appropriate.  So I will overrule the

10 objections that have been identified in the agenda and we can

11 move forward.

12          Mr. Andrews?

13          MR. ANDREWS:  Thank you, Your Honor.

14          Just one other comment from me.  The United States

15 Trustee did file an objection, also, to the plan, I believe,

16 without amendments, subsequent amendments to the plan and the

17 confirmation order.  This objection has been resolved.

18          THE COURT:  Ms. Leamy, good morning.  Good to see

19 you.

20          MS. LEAMY:  Our objection is resolved.

21          THE COURT:  The United States Trustee's objection

22 is resolved.  Very good.

23          Mr. Andrews?

24          MR. ANDREWS:  Yeah, with that, Your Honor, I will

25 pass the podium on to my colleague, Mr. Kitnick, to go

1   through changes to the confirmation order.

2           MR. KITNICK:  Good morning, Your Honor.  Jesse

3   Kitnick, with Weil, Gotshal & Manges, for the debtors.

4           THE COURT:  Welcome.

5           MR. KITNICK:  At this time, I'd like to walk the

6   Court through a few changes to the proposed confirmation

7   order that we made since we filed, to the version we filed on

8   September 17th at Docket 702.  I have a redline copy with me.

9           May I approach?

10          THE COURT:  That would be great, thank you.

11          Thanks.

12          MR. KITNICK:  So a number of these changes are

13  purely technical modifications.  We can start with the first

14  substantive --

15          THE COURT:  Right.  We can skip the technical --

16          MR. KITNICK:  Yeah.

17          THE COURT:  -- and/or conforming changes, et

18  cetera.

19          MR. KITNICK:  Sure.

20          So the first one is on page 19 at paragraph 3.

21  Here, we added some language to provide that the wind-down

22  trust documents are binding only upon execution thereof.

23          THE COURT:  Okay.

24          MR. KITNICK:  The next one is on page 21,

25  paragraph 6.  We removed the reference to Bankruptcy

1  Rule 9019, which was a comment that we received from the U.S.

2  Trustee.  It looks like we missed one, which we'll have to

3  amend in the --

4              THE COURT:  Oh, yeah.  Okay.

5              MR. KITNICK:  The next change is on paragraph 8 on

6  page 22.  Here, we added certain language that provides that

7  the plan administrator may seek, either through motion or the

8  Crypto Loss Claims procedures in order permitting holders of

9  general unsecured claims or Crypto Loss Claims to sell or

10 transfer their claims.

11             The next one on paragraph 9, this was another

12 modification that provides the debtors with the right to

13 amend the plan supplement through the effective date with the

14 consent of the Creditors Committee.

15             THE COURT:  Okay.

16             MR. KITNICK:  On page 23, paragraph 11, we've

17 added some additional language related to the sale of certain

18 venture investments.  These were modifications that we agreed

19 to make with counsel to Standard Crypto, and the purpose is

20 to preserve the parties' rights while we negotiate a purchase

21 agreement.

22             Paragraph 25 or page 25, rather, on paragraph 16,

23 these changes relate to the deadline to assume or reject the

24 executory contracts and the modifications allow the debtors

25 and the contract counterparties to extend the deadline, if

1   necessary.

2           The next one is on page 29, paragraph 25.

3           THE COURT:  Let me ask you a question.

4           MR. KITNICK:  Sure.

5           THE COURT:  I don't think I've been asked this

6   question before, but as I read the change to 16, it

7   provides -- oh, okay, any extension beyond the effective date

8   would be with consent of nondebtor counterparty.

9           MR. KITNICK:  Correct.

10          THE COURT:  Okay.

11          MR. KITNICK:  Yes.

12          THE COURT:  Right.

13          MR. KITNICK:  Page 29, paragraph 25, here, we

14  clarify that the debtors will publish the notice of effective

15  date in the same manner as the confirmation notice, which my

16  colleague described earlier.

17          THE COURT:  Okay.

18          MR. KITNICK:  And the final change is on page 37,

19  paragraph 35, which relates to the Relm D&O insurance policy

20  and we just clarify that it shall be terminated retroactive,

21  effective -- with a retroactive effective date of

22  December 28th, 2023.

23          So we plan to file the notice in the version of

24  the order, the notice of effective date, rather, in the

25  version of the order that we submit under COC after the

1  hearing and that's all the changes.

2            THE COURT:  Very good.

3            Ms. Berkovich?

4            MS. BERKOVICH:  Thank you, Your Honor.

5            With the Court indicating that it will approve the

6  confirmation order, the debtors will work expeditiously --

7            THE COURT:  I don't think I said that.

8            MS. BERKOVICH:  Oh, I thought you overruled the

9  objections, excuse me.

10            So we request that the Court enter the

11  confirmation order with the modifications that Mr. Kitnick

12  put into the record.

13            THE COURT:  I'd like to hear from the SEC, please.

14            Good morning, Counsel.

15            MR. KELLY:  Good morning, Your Honor.

16            Mike Kelly for the Securities and Exchange

17  Commission.  My colleague Bill Uptegrove is on the line.

18            THE COURT:  Mr. Uptegrove, good morning.  Good to

19  see you.

20            MR. UPTEGROVE:  Good morning, Your Honor.

21            THE COURT:  I'd note that the Securities and

22  Exchange Commission has been active in this case and has come

23  up a number of times in parties' comments.  I'd just like to

24  hear from the United States -- from the Securities and

25  Exchange Commission if they have any position or comments

1  with respect to the request for confirmation.

2       MR. KELLY:  Yes, Judge.

3       The Commission supports the request for

4  confirmation.  The Commission, as you heard, we're the

5  largest creditor in this case.  The Commission's complaint is

6  based on a $4.4 billion judgment that was entered against the

7  debtor in the Southern District of New York.  That was a

8  judgment that filed a jury trial and after which the parties

9  entered into a negotiation that resulted in an entry of a

10  judgment by agreement.  The claims that were resolved by the

11  judgment had to do with violations of Section 5, as well as

12  violations of the antifraud securities statutes.

13       The consent and the judgment memorialized, it

14  established the amount of the judgment, and also memorialized

15  a number of bankruptcy-specific agreements between the

16  Commission and the debtor.  Under the agreement, the debtor

17  was obligated to quickly wind-down operations and seek

18  confirmation of a plan that included certain key-agreed

19  bankruptcy.  Under the agreement, the Commission agreed to

20  allow other claimants, including victims, to recover on their

21  claims for any distribution to be made to the Commission.

22       In the words of the judgment, the Commission's

23  claim would be deemed satisfied upon a distribution by a

24  liquidating trustee or other estate representative, to

25  creditors and investors, pursuant to a confirmed liquidating

1   Chapter 11 plan that incorporated the terms of the

2   settlement.  The settlement also required that co-Defendant

3   Do Kwon, caused his personal assets and the assets of LUNA

4   Foundation Guard to be transferred into the bankruptcy estate

5   and that those funds and those assets would be earmarked for

6   distribution to harmed investors.

7            So after a careful review, the Commission is

8   satisfied that the plan incorporates the agreed terms and,

9   otherwise, represents a good result for victims.  As a

10  result, the Commission has voted to accept the plan and it

11  supports plan confirmation.

12           If the Court does confirm the plan, the Commission

13  will remain on to monitor how the liquidation trustee

14  implements it, including by weighing in and commenting upon

15  the forthcoming Crypto Loss Claims procedures motion, which

16  will set out substantive treatment of how claims of various

17  victims will be dealt with.

18           THE COURT:  Very good.  Thank you, Mr. Kelly.

19           I would note that I very much appreciate you and

20  your colleague's engagement in these proceedings, and,

21  obviously, the settlement is a favorable one for stakeholders

22  here and certainly welcome, given the alternatives, in terms

23  of litigation or allowance of that claim for other parties.

24  So I appreciate the comments and the report.

25           MR. KELLY:  Thank you, Your Honor.

1              THE COURT:  Very good.

2              Are there any other parties that wish to be heard

3 in connection with the debtors' request for an order

4 authorizing and approving confirmation of their plan?

5         (No verbal response)

6              THE COURT:  Very well.

7              I am going to enter an order confirming the plan.

8 In so ruling, I note that the Court has admitted the

9 declaration of Mr. Leto.  That declaration identifies the

10 terms of the plan, identifies with particularity, the

11 requirements under Bankruptcy Code 1123 and 1129, and

12 identifies how the plan satisfies or meets all of those

13 requirements.

14              In addition, the Court has admitted the

15 declaration of Ms. Young; that declaration reflects

16 overwhelming creditor support through the balloting process

17 in the classes that were entitled to vote and certainly

18 satisfies the Bankruptcy Code's standards and requirements

19 for confirming a plan.

20              In addition, I note, as we've discussed, the

21 debtors have filed a comprehensive memorandum in support of

22 plan confirmation addressing both, the elements, as well as

23 the objections to the plan.  That memo is obviously not

24 evidence, but it certainly part of the record before me and,

25 again, further buttresses the debtors' case that it has,

1  indeed, satisfied the requirements of the Bankruptcy Code for

2  purposes of plan confirmation.

3          The Court has addressed the objections.  I note

4  that most objections have been resolved; to the extent not

5  resolved, those objections are overruled.

6          And, again, in ruling upon the debtors' request

7  for plan confirmation, I place significant weight in the

8  context of this case on the position of the Unsecured

9  Creditors Committee supporting the plan confirmation, as well

10  as I noted a moment ago, the position of the United States

11  Trustee Securities and Exchange Commission, again, supporting

12  the request for plan confirmation.

13          Counsel has walked the Court through the revisions

14  to the, the most recent revisions to the proposed form of

15  confirmation order.  The Court had the benefit of blacklines

16  delivered last weekend or just a few days ago that, again,

17  identified changes both, to the plan, as well as to the plan

18  supplement and the proposed form of order.

19          I'm satisfied that the form of the confirmation

20  order is appropriate.

21          I believe, Ms. Berkovich, I just want to make

22  sure, is the debtor requesting a waiver of the Rule 6004 stay

23  for purposes of allowing it to go effective sooner than 14

24  days?

25          MS. BERKOVICH:  Yes, Your Honor.

1          THE COURT:  All right.  Based upon the record

2    before me, I'm satisfied that cause, in fact, does exist and

3    that the debtors have established that cause exists for a

4    waiver of that stay in order to permit the debtor to go

5    effective with this plan.  As counsel for the Committee

6    noted, this is a complex process that involves a significant

7    number of stakeholders, so the sooner that the debtor can get

8    it over that finish line, I think the better.  The

9    requirement is waived and, again, the Court would just ask

10   you to go forth and go effective.

11         MS. BERKOVICH:  Thank you, Your Honor.

12         Hearing Mr. Kelly speak, I was really struck at

13   how effective Chapter 11, itself, is as a tool.  And we came

14   in earlier in the year really fighting with the SEC,

15   literally.  They had their issues with the U.S. Trustee and

16   then, of course, the Creditors Committee the first time they

17   appeared in the case.  And now, six months later, here we

18   are, really, holding hands with everybody and I think that's

19   the way Chapter 11 is supposed to work.

20         So, with that, we will move expeditiously to try

21   to go effective as quickly as possible.  Mr. Snyder is a

22   seasoned professional.  We've already worked with him.  We'll

23   pass on all of our good work to him to make sure that he does

24   the best for creditors in this case.

25         We thank Your Honor for working with us over the

1 | past eight months.  I know this is not good-bye, but the end
2 | of, at least, the plan process, and thank you, and that's all
3 | we have.
4 |         THE COURT:  I'm happy to oblige.
5 |         I would note that from the discussions that we've
6 | had, there are -- you know, obviously, it is not good-bye;
7 | there are, there's a motion and some other activities that
8 | will likely be coming down the pike.  To the extent that the
9 | debtors require access to the Court either for a telephonic
10 | hearing if something comes up or for further hearings to get
11 | the post-effective date case up and running, you can expect
12 | the Court will be a willing partner in that process.
13 |         But with that, we are adjourned.  Congratulations
14 | to the debtor.  We stand adjourned.
15 |         COUNSEL:  Thank you, Your Honor.
16 |     (Proceedings concluded at 11:07 a.m.)
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |

1

<u>CERTIFICATION</u>

2             I certify that the foregoing is a correct

3 transcript from the electronic sound recording of the

4 proceedings in the above-entitled matter to the best of my

5 knowledge and ability.

6

7 <u>/s/ Tracey J. Williams</u>                    <u>August 14, 2024</u>

8 Tracey J. Williams, CET-914

9 Certified Court Transcriptionist

10 For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25