**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| TERRAFORM LABS PTE. LTD., *et al.*, | Case No.  24-10070 (BLS) |
| Debtors.[1] | **Objection Deadline: January 29, 2025**<br>**Hearing Date: TBD** |

**COVER SHEET FOR APPLICATION OF**
**WHITE & CASE LLP FOR PAYMENT OF FEES AND EXPENSES**
**AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

| | |
|---|---|
| Name of Applicant: | White & Case LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors of Terraform Labs Pte. Ltd., *et al.* |
| Date of Retention: | February 29, 2024 |
| Period for which final compensation and reimbursement is sought: | February 29, 2024 – March 12, 2024 |
| Amount of compensation sought as actual, reasonable, and necessary: | $428,881.00 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $2,092.52 |

This is a <u>final</u> application.

---

[1]    The Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited.  The Debtors' principal offices are located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

**Summary of Fees and Hours by Timekeeper**

| Name | Title | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| J. Shore | Partner | $2,300.00 | 29.10 | $66,930.00 |
| G. Pesce | Partner | $1,720.00 | 28.70 | $49,364.00 |
| R. Rodman | Partner | $1,720.00 | 8.50 | $14,620.00 |
| A. Colodny | Partner | $1,600.00 | 60.00 | $96,000.00 |
| P. Vallabhaneni | Partner | $1,600.00 | 2.20 | $3,520.00 |
| C. West | Partner | $1,600.00 | 23.50 | $37,600.00 |
| E. Smith | Level 10+ | $1,430.00 | 7.10 | $10,153.00 |
| S. Ludovici | Level 9 | $1,380.00 | 3.00 | $4,140.00 |
| B. Lingle | Level 5 | $1,160.00 | 53.00 | $61,480.00 |
| R. Beil | Level 4 | $1,110.00 | 21.60 | $23,976.00 |
| D. Kumar | Level 1 | $795.00 | 35.80 | $28,461.00 |
| G. Zahiremami | Level 1 | $795.00 | 37.60 | $29,892.00 |
| D. Hirshorn | Legal Assistant | $450.00 | 6.10 | $2,745.00 |
| **Grand Total** | | | **316.20** | **428,881.00** |
| **Blended Rate** | | **$1,356.00** | | |

**Expense Summary**

| Description | Bill Amount |
|---|---:|
| Airfare | $1,110.20 |
| Computer Services | $29.00 |
| Hotel Expense | $613.82 |
| Parking | $142.99 |
| Taxi - Business | $196.51 |
| **Grand Total** | **$2,092.52** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| TERRAFORM LABS PTE. LTD. *et al.*, | Case No.  24-10070 (BLS) |
| Debtors.[1] | **Objection Deadline: January 29, 2025**<br>**Hearing Date: TBD** |

## APPLICATION OF WHITE & CASE LLP FOR PAYMENT OF FEES AND EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

White & Case LLP ("**White & Case**") states as follows in support of this application (the "**Application**") requesting entry of an order authorizing, approving, and requiring the payment of the fees, costs, and expenses of White & Case as former counsel to the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned chapter 11 cases of Terraform Labs Pte. Ltd. ("**TFL**") and Terraform Labs Limited ("**TLL**," together with TFL, the "**Debtors**") under title 11 of the United States Code (the "**Bankruptcy Code**"):

### Jurisdiction, Venue, and Predicates for Relief

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for the relief requested by this Application are sections 503(b)(3)(D)

---

[1]    The Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited.  The Debtors' principal offices are located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

and 503(b)(4) of the Bankruptcy Code, rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.      Pursuant to Local Rule 9013-1(f), White & Case consents to the entry of a final judgment or order with respect to this Application if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**Relief Requested**

4.      By this Application, White & Case seeks entry of an order, substantially in the form attached as **Exhibit A** (the "**Order**"), requiring the payment to White & Case of professional fees of $428,881.00 and expenses of $2,092.52.

5.      As further described herein, White & Case was retained as counsel to the Committee on February 29, 2024 in conjunction with McDermott Will & Emery LLP ("**MWE**"), which was to serve as co-counsel and Delaware counsel.  On March 8, 2024, White & Case withdrew as counsel to the Committee.  MWE remained as the Committee's primary counsel and Delaware Counsel.  At the time of withdrawal, White & Case had not filed a retention application in the chapter 11 cases.  By this Application, White & Case seeks the payment of its fees and expenses as a substantial contribution under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.

**Background**

**A.      SEC Enforcement Action and Chapter 11 Filing**

6.      As disclosed in the *Declaration of Chris Amani in Support of the Debtor's Chapter 11 Petition and First Day Relief* [Docket No. 18] (the "**Amani Declaration**"), the collapse of LUNC tokens ("**Luna Classic**") and TerraUSD "stablecoin" ("**UST**") initiated a chain reaction that deeply effected over half a million stakeholders (measured by wallets) and 37,000

monthly active users (measured by unique wallets) who participate in the Terra blockchain network ("**Terra**").  Amani Decl. ¶¶ 42, 71.

7.      On February 16, 2023, shortly after Luna Classic and UST collapsed, the Securities and Exchange Commission ("**SEC**") filed a complaint in the District Court for the Southern District of New York (the "**District Court**") naming TFL and its founder, Kwon Do Hyeong, as defendants, and alleging six claims for violations of the Securities Act of 1933 (the "**Securities Act**") and the Exchange Act of 1934 (the "**Exchange Act**" and together with the Securities Act, the "**Acts**").  *Id.* ¶¶ 10, 72.  The crux of the SEC complaint (the "**SEC Enforcement Action**") is that, prior to May 2022, TFL unlawfully offered and sold unregistered securities and securities-based swaps, as well as engaged in securities fraud.  *Id.*

8.      On December 28, 2023, the District Court partially granted the SEC's motion for summary judgment and found that TFL and Mr. Kwon "offered and sold unregistered securities, in violation of Sections 5(a) and 5(c) of the Securities Act" when they "offered and sold LUNA and MIR in unregistered transactions" and when TFL offered UST together with the Anchor protocol.  *Id.* ¶¶ 11, 75.

9.      On January 21, 2024 (the "**Petition Date**"), TFL filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  According to the Amani Declaration, TFL filed for chapter 11 protection to avoid the execution of a judgment in connection with the SEC Enforcement Action and the requirement to post a bond to appeal the District Court's final order. *Id.* ¶ 14.

**B.      Denton US Retention Application**

10.      On February 13, 2024, TFL filed an application, pursuant to section 327(e) of the Bankruptcy Code, seeking an order from this Court authorizing TFL to retain and employ Dentons US LLP ("**Dentons US**") as special counsel to TFL effective as of November 27, 2023 [Docket

No. 60] (the "**Dentons Application**"). Specifically, through the Dentons Application, TFL sought to retain Dentons US as special counsel to represent TFL in litigation and investigations in multiple fora, including the appeal of the SEC Enforcement Action, on the terms and conditions of the engagement agreement, dated November 27, 2023 (the "**Engagement Letter**"). Dentons Application ¶¶ 5-6.

11.     Prior to the Petition Date, TFL made several transfers of cryptocurrency to Dentons US, which upon receipt, in accordance with the terms of the Engagement Letter, were converted to fiat currency (USD) and were held in a Dentons US savings account as an advance payment retainer (collectively, the "**Advance Payment Retainer**"). *Id.*, Ex. B at ¶ 18. Dentons US made payments from the Advance Payment Retainer for legal fees and costs expended by Dentons US and Contractors (as defined in the Dentons Application) on behalf of TFL. *Id.*

12.     During the year prior to the Petition Date, Dentons US received $165,996,818.87 (total cash including retainers) from TFL and billed $86,143,605.29 in connection with prepetition fees and costs for representation of TFL. *Id.* at ¶ 21. On the Petition Date, the opening balance in the Advance Payment Retainer totaled $62,954,002.44, and Dentons US held $7,742,492.37 separately in its operating account to pay outstanding costs to the Contractors. *Id.* at ¶ 19.

**C.     Litigation Payment Motion**

13.     On February 14, 2024, TFL filed the *Motion of Debtor for Entry of Orders Pursuant to Section 363, 503(b), and 105(a) of the Bankruptcy Code Authorizing Debtor to Pay Certain Amounts in Furtherance of Litigation and Granting Related Relief* [Docket No. 61] (the "**Litigation Payment Motion**"), pursuant to which TFL sought court authorization to pay three primary buckets of prepetition claims, which consisted of:

     i.   approximately $3.3 million for the legal bills of TFL's current and former employees which TFL purportedly is obligated to pay

under prepetition indemnity agreements (and unknown amounts
thereafter subject to a cap);

    ii.   an amount not to exceed $1.3 million to critical litigation vendors;
and

    iii.  approximately $1.5 million in costs owed to opponents in foreign
jurisdictions where TFL lost discovery disputes or settled with the
counterparty.

Litigation Payment Motion ¶ 76.

    **D.**    **Actions Taken by White & Case as Committee Counsel**

14.    On February 29, 2024, the Office of the United States Trustee for the District of
Delaware (the "**U.S. Trustee**") appointed the Committee under section 1102(a)(1) of the
Bankruptcy Code. *See* Docket No. 101. On that same day the Committee retained White & Case
to serve as the Committee's bankruptcy counsel.

15.    Upon being retained, White & Case immediately recognized that the Dentons
Application and the Litigation Payment Motion were to be heard on March 5, 2024 (the '**Second
Day Hearing**")—just three business days after the Committee's appointment and White & Case's
retention—and had the potential of being a critical inflection point in the case with potentially
huge ramifications for unsecured creditors' recoveries. White & Case had serious concerns about
TFL's determination to retain Dentons US, TFL's prepetition transfers to Dentons US, and the use
of estate funds to pay insiders' prepetition indemnification claims. As such, White & Case
developed a list of questions that needed to be answered for the Committee to assess the
reasonableness of the Dentons Application and its potential impact on unsecured creditors:

    i.    What is the enterprise value of TFL's ongoing business and does
that enterprise value support the "bet the company" approach TFL
has taken with respect to the myriad of litigation against it?

    ii.   What is the impact, including on unsecured creditors' recoveries,
of an adverse ruling in the SEC Enforcement Action?

    iii.  What is the SEC's goal in the SEC Enforcement Action, and does
it intend to create a victims' restitution fund?

iv. Why did TFL transfer more than $165 million to Dentons US prior to the Petition Date to be held as an advance payment retainer that is purportedly Dentons US's property upon receipt?

v. Was TFL solvent when it transferred such funds and what value, if any, did it receive?

vi. Who directed the transfer of such funds to Dentons US and what was their intent in doing so?

vii. How exactly did Dentons US spend over $86 million defending litigation in one year?

viii. Would Dentons US and the other "Vendors" stop performing if the Court granted a short adjournment of the litigation motions, especially in light of the $86 million that has already been paid to them and the impending start of the jury trial on the SEC Enforcement Action on March 25, 2024?

ix. Why did Dentons US withdraw as counsel for Kwon, TFL's majority shareholder, in the SEC Enforcement Action and what is the status of its current representation and relationship with Kwon in the various other matters where it is counsel for TFL?

16.     Those questions remained unanswered prior to the Second Day Hearing, and certain of those questions required the Committee to receive advice from a yet-to-be-retained financial advisor.  As such, on Saturday, March 2, 2024, and several times thereafter, White & Case requested that TFL agree to a brief adjournment of the Second Day Hearing to allow the Committee to gather additional information and answers to its questions.  TFL repeatedly refused.

17.     Accordingly, on March 4, 2024, White & Case filed the *Official Committee of Unsecured Creditors' (I) Preliminary Objection to the Dentons US Retention Application and Litigation Payment Motion and (II) Request for Limited Adjournment of Hearing* [Docket No. 140] (the "**Preliminary Objection**").

### E.     W&C's Withdrawal as Committee Counsel

18.     On March 7, 2024, following a meeting of the Committee, the then-chairman of the Committee informed White & Case that the Committee desired MWE to serve as sole counsel to the Committee going forward at the then-chairman's objection.  White & Case understands that

the then-chairman resigned that position and requested that the entity for which he was serving as corporate representative identify an alternative corporate representative to represent that entity's interests on the Committee.

19.     On March 8, 2024, MWE filed, on behalf of White & Case, the *Notice of Withdrawal of Appearance of White & Case LLP* [Docket No. 159].

### F.     Settlement of the Dentons Application and the Litigation Payment Motion

20.     Following White & Case's withdrawal as counsel to the Committee, the fruits of White & Case's efforts became clear.  TFL, the Committee, the SEC, and the U.S. Trustee reached a settlement, pursuant to which Dentons US would return $48 million of the approximately $81 million of the Advance Payment Retainer to TFL.  *See* Docket No. 168-2 at ¶ 3.

21.     On March 12, 2024, the Court entered a revised order authorizing TFL to retain and employ Dentons US on the condition that Dentons US wire $48 million to TFL and retain the remainder of the Advance Payment Retainer to (i) pay prepetition invoices of Dentons US and certain Contractors and (ii) pay certain fees and expenses related to the appeal in the SEC Enforcement Action.  Docket No. 179 (the "**Dentons Retention Order**") at ¶ 3.  The Dentons Retention Order also provided that a status conference would be held on or about May 9, 2024, whereby TFL was to inform the Court and all stakeholders of its plans in connection with the SEC Enforcement Action and any future work contemplated to be performed by Dentons US.  Dentons Retention Order at ¶ 5.  The Committee also reserved the right to object to Denton US' continued services.  *Id.*

22.     With respect to the Litigation Payment Motion, the parties agreed to reduce the amount of prepetition critical vendor claims to be paid from $1.3 million to $1.065 million.  *See* Docket No. 178 at ¶ 2.

23.     The overall benefit to the Debtors' estates resulting from the settlement of the

Dentons Application and the Litigation Payment Motion was approximately $48.3 million.

**Basis for Relief**

24.     White & Case is entitled to reasonable fees and expenses for professional services provided to the Committee that led to the settlement of the Litigation Payment Motion and the Dentons Application.  Pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code, these fees and expenses are justified as a substantial contribution to the Debtors' chapter 11 cases. Additionally, White & Case's fees and expenses qualify as actual, necessary, and reasonable fees and expenses under the circumstances of these chapter 11 cases.

**A.     White & Case Is Entitled to an Administrative Claim Pursuant to Sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code for Its Substantial Contribution to the Debtors' Chapter 11 Cases**

25.     Section 503(b)(3)(D) of the Bankruptcy Code grants administrative expense status to claims for the "actual, necessary expenses" incurred by "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors . . . other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title."[2]  11 U.S.C. § 503(b)(3)(D).  In addition, section 503(b)(4) of the Bankruptcy Code allows administrative expenses for "reasonable compensation for professional services rendered by an attorney . . . of an entity whose expense is allowable" under section 503(b)(3)(D) of the Bankruptcy Code and reimbursement for "actual, necessary expenses incurred by such attorney." 11 U.S.C. § 503(b)(4).

26.     The term "substantial contribution" is not defined in the Bankruptcy Code.  In *Lebron v. Mecham Financial Inc*., the Third Circuit adopted the substantial contribution test

---

[2]     While White & Case was retained and directed by the Committee to take actions in opposition of the Dentons Application and Litigation Payment Motion, it was never formally retained by the Committee through a Court-approved retention application.  White & Case withdrew as counsel to the Committee shortly after it was directed to take actions that would eventually facilitate a valuable settlement for the benefit of all creditors.

articulated by the Tenth Circuit: "In determining whether there has been a 'substantial contribution' pursuant to section 503(b)(3)(D), the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." 27 F.3d 937, 944 (3d. Cir. 1994) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). Under this test, "the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interest." *Id.* In determining whether a creditor's efforts amount to a substantial contribution, this Court has considered the following factors: "whether the services were provided to benefit the estate itself or all the parties in the bankruptcy case; whether the services conferred a direct benefit upon the estate; and whether [the] services were duplicative of services performed by others." *In re Summit Metals*, 379 B.R. 40, 51 (Bankr. D. Del. 2007) (quoting *In re Gurley*, 235 B.R. 626, 636 (Bankr. W.D. Tenn. 1999) (citing *In re Best Products Co., Inc.*, 174 B.R. 862, 865-866 (Bankr. S.D.N.Y. 1994)); *In re FRG, Inc.*, 124 B.R. 653, 658 (Bankr. E.D. Pa. 1991); *In re Alert Holdings Inc.*, 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993)).

27.    Courts have recognized a substantial contribution in various contexts, including situations where creditors have stepped in to perform the duties of an official committee before its appointment. *See In re Bayou Group, LLC*, 431 B.R. 549, 562 (Bankr. S.D.N.Y. 2010) (citing *In re Granite Partners*, 213 B.R. 440, 446-47 (Bankr. S.D.N.Y. 1997)). For example, in *Bayou Group*, the court found that an unofficial creditors' committee made a substantial contribution by, among other things, identifying suitable candidates for a receiver, researching potential claims, and sharing that research with creditors and the receiver. *Id*. at 563-66. Similarly, services rendered by attorneys on behalf of creditors before the formation of an official committee may also qualify for reimbursement if those services confer a substantial benefit on the estate. *See*

*In re Worldwide Direct, Inc.*, 259 B.R. 56, 61-62 (Bankr. D. Del. 2001).  For instance, actions such as raising issues protective of unsecured creditors' rights at a hearing on interim financing before the formation of a committee may constitute a substantial contribution.  *Id*. at 62.

28.    Further, in *General Electrodynamics Corp.*, the court determined that a creditor acting as a surrogate creditors' committee—monitoring debtor activities and identifying potentially voidable transfers—provided a substantial contribution to the estate.  *In re General Electrodynamics Corp.*, 368 B.R. 543, 554-56 (Bankr. N.D. Tex. 2007).  Likewise, in *Service Merchandise*, the court concluded that professionals initially retained by a group of creditors who later became members of the official committee were entitled to compensation for their pre-committee services under sections 503(b)(3) and 503(b)(4) because those efforts provided critical benefits to the estate.  *In re Service Merchandise Co., Inc.*, 256 B.R. 738, 741-43 (Bankr. M.D. Tenn. 1999).  These cases demonstrate that substantial contributions are measured not by official designations but by the measurable and material benefits conferred on the estate.

29.    Here, White & Case's involvement in the Dentons Application and Litigation Payment Motion clearly satisfies the *Lebron* test for substantial contribution, as its actions resulted in an actual, demonstrable benefit to the estate and creditors.

30.    *First*, the Preliminary Objection filed by White & Case raised critical questions regarding the propriety of TFL's prepetition transfers to Dentons US and the reasonableness of the proposed payments under the Litigation Payment Motion.  By identifying and presenting these issues, White & Case catalyzed substantive discussions among stakeholders, including the Debtors, the Committee, the SEC, and the U.S. Trustee, which ultimately led to the return of $48 million to the estate.  Without White & Case's intervention, these concerns may not have been appropriately addressed to the detriment of the Debtors' estates and creditors.

31.     *Second*, White & Case's efforts conferred a direct and quantifiable benefit upon the estates.  The settlement achieved through its Preliminary Objection provided a $48.3 million recovery, which increased the funds available for distribution to creditors and reduced unnecessary litigation costs.  This outcome demonstrates that White & Case's work transcended mere advocacy for the Committee and provided tangible value to all stakeholders.

32.     *Third*, White & Case's services were not duplicative of efforts by other professionals.  At the time White & Case was engaged, the Committee was newly formed, and no other professional had yet addressed the critical issues raised in the Preliminary Objection.  White & Case acted promptly to assess the situation and formulate and file the Preliminary Objection within an extraordinarily compressed timeframe.  The firm's immediate and comprehensive response filled a gap in representation that would have otherwise left these critical matters unaddressed.

33.     White & Case's role was pivotal in shaping the terms of the settlement, which ensured that estate funds would be preserved for legitimate purposes rather than being exhausted by potentially questionable prepetition transfers and indemnification claims.  This directly aligns with the goals of chapter 11, which prioritize maximizing value for the benefit of creditors.

34.     Overall, White & Case's work in connection with the Dentons Application and Litigation Payment Motion demonstrates the hallmarks of substantial contribution: its efforts were necessary, conferred a significant benefit to the estate and all parties, and were neither incidental nor self-serving.  Accordingly, White & Case is entitled to the requested administrative claim under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.

**B.     The Amounts Requested Represent the Actual and Necessary Expenses and Reasonable Compensation for Professional Fees of the Committee's Counsel**

35.     White & Case's fees and expenses are not only actual and necessary but also

reasonable given the substantial benefit conferred upon the estate.  Section 503(b)(3) provides for

an administrative expense claim for "the actual, necessary expenses, other than compensation and

reimbursement specified in paragraph (4) of this subsection."   11 U.S.C. § 503(b)(3)(D).

Section 503(b)(4), in turn, states that services rendered by an attorney or accountant are

compensable under section 503(b)(3) when they are:

> reasonable . . . based on the time, the nature, the extent, and the value of such
> services, and the cost of comparable services other than in a case under this title,
> and reimbursement for actual, necessary expenses incurred by such attorney or
> accountant.

*Id*. § 503(b)(4).  To the extent this Court finds that White & Case made a substantial contribution

to the Debtors' chapter 11 cases, the firm's fees and expenses meet the requirements of these

provisions.  White & Case's fees were incurred in connection with its critical efforts to achieve

the favorable settlement of the Litigation Payment Motion and Dentons Application—efforts that

provided a demonstrable and direct benefit to the estate.  Likewise, the expenses incurred in the

course of these efforts were reasonable, necessary, and aligned with the requirements of

section 503(b)(3)(D).

36.     In providing legal services to the Committee, White & Case adhered to standard

practices to ensure transparency and reasonableness in billing.  The firm maintained detailed and

contemporaneous records of time expended by its professionals and paraprofessionals, along with

itemized documentation of expenses incurred.   An invoice reflecting the fees and expenses

incurred by White & Case is attached hereto as **Exhibit B**.  White & Case submits that this invoice

provides sufficient detail for the Court to evaluate whether the hourly rates, time expended, and

nature of the services rendered were reasonable under the circumstances.   These records

demonstrate that White & Case's fees and expenses are justified and meet the standards for

allowance as an administrative claim under sections 503(b)(3) and 503(b)(4) of the Bankruptcy

Code.[3]

### Notice

37.     Notice of the Application will be provided to: (a) the U.S. Trustee; (b) counsel to

the Debtors; (c) counsel to the Committee; and (d) all parties entitled to notice under Local Rule

2002-1(b).  White & Case respectfully submits that no other or further notice is required.

### No Previous Request

38.     No previous request for the relief sought herein has been made by White & Case to

this or any other Court.

---

[3]     As stated above, because of certain dynamics among the members of the Committee, White & Case's time serving
as Committee counsel ended prior to White & Case having the opportunity to file a retention application.
Nevertheless, White & Case submits that the requirements for awarding compensation to a professional employed
under section 327 of the Bankruptcy Code are satisfied.  Specifically, White & Case meets the standards of
section 330 and applicable case law.  The professional services for which White & Case seeks compensation in
this Application were, at the time rendered, reasonable, necessary for, beneficial to, and appropriate to the
Committee.  White & Case further believes that it performed the services for the Committee economically,
effectively, and efficiently, and the results obtained benefited not only the Committee, but also the Debtors'
estates and the Debtors' constituents.  White & Case further submits that the compensation requested herein is
reasonable in light of the nature, extent, and value of such services to the Committee and all parties in interest.

**WHEREFORE**, White & Case respectfully requests that the Court enter the Order, substantially in the form attached as **Exhibit A**, (i) requiring the payment to White & Case of professional fees of $428,881.00 and expenses of $2,092.52 and (ii) granting such other and further relief as the Court deems just and proper.

Dated:    December 2, 2024          Respectfully submitted,
          Chicago, Illinois

                                   /s/ *Gregory F. Pesce*
                                   **WHITE & CASE LLP**
                                   J. Christopher Shore (admitted *pro hac vice*)
                                   Colin T. West (admitted *pro hac vice*)
                                   1221 Avenue of the Americas
                                   New York, New York 10020
                                   Telephone: (212) 819-8200
                                   cshore@whitecase.com
                                   cwest@whitecase.com

                                   – and –

                                   **WHITE & CASE LLP**
                                   Gregory F. Pesce (admitted *pro hac vice*)
                                   111 South Wacker Drive, Suite 5100
                                   Chicago, Illinois 60606
                                   Telephone: (312) 881-5400
                                   gregory.pesce@whitecase.com

                                   – and –

                                   **WHITE & CASE LLP**
                                   Aaron E. Colodny (admitted *pro hac vice*)
                                   555 South Flower Street, Suite 2700
                                   Los Angeles, California 90071
                                   Telephone: (213) 620-7700
                                   aaron.colodny@whitecase.com