**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TERRAFORM LABS PTE. LTD., *et al.*,[1] | ) Case No. 24-10070 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**MOTION OF THE
PLAN ADMINISTRATOR SEEKING ENTRY
OF AN ORDER (I) SETTING THE BAR DATE FOR
FILING PROOFS OF CLAIM ON ACCOUNT OF CRYPTO
LOSS CLAIMS, (II) APPROVING THE FORM OF AND MANNER FOR
FILING PROOFS OF CLAIM, (III) APPROVING FORM AND MANNER
OF NOTICE THEREOF, AND (IV) APPROVING RELATED PROCEDURES**

The Terraform Plan Administrator (the "Plan Administrator") of the jointly–administered estates of Terraform Labs Pte. Ltd., *et al.* (collectively, the "Post-Effective Date Debtors" and, prior to the Effective Date, the "Debtors"), and the Wind Down Trust (the "Wind Down Trust") states as follows in support of this motion (this "Motion"): [2]

**Relief Requested**

1.    The Plan Administrator seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "CLC Bar Date Order"):  (a) establishing April 30, 2025, at 11:59 p.m. (prevailing Eastern Time), as the deadline for each entity[3] (including, without limitation,

---

[1]    The Post-Effective Date Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited.  The Post-Effective Date Debtors' principal offices are located at 10 Anson Road, #10-10 International Plaza, Singapore 079903.  The Plan Administrator of the Post-Effective Date Debtors is Todd R. Snyder.  The Plan Administrator's principal office is located at 1251 Avenue of the Americas, New York, New York 10020.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (as defined below).

[3]    Except as otherwise defined herein, all terms specifically defined in the Bankruptcy Code shall have those meanings ascribed to them by the Bankruptcy Code.  In particular, as used herein, the term "claim" has the meaning given to it in section 101(5) of the Bankruptcy Code and the term "entity" has the same meaning given to it in section 101(15) of the Bankruptcy Code.

individuals, partnerships, corporations, joint ventures, and trusts) to file proofs of claim on account of Crypto Loss Claims (as defined below) relating to or against the Debtors (the "CLC Bar Date"); (b) approving the related procedures, substantially in the form attached to the CLC Bar Date Order as Exhibit 1 (the "CLC Procedures"); (c) approving the proposed proof of claim form for Eligible Crypto Loss Claims, substantially in the form attached to the CLC Bar Date Order as Exhibit 2 (the "CLC Form"); (d) approving the proposed form and manner of notice of the CLC Bar Date, substantially in the form attached to the CLC Bar Date Order as Exhibit 3 (the "CLC Bar Date Notice"); and (e) approving the proposed form and manner of publication notice of the CLC Bar Date, substantially in the form attached to the CLC Bar Date Order as Exhibit 4 (the "Publication Notice").

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Plan Administrator confirms his consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory bases for the relief requested herein are sections 105(a), 501, and 502 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules

2002(a)(7), (f), (1), 3002, 3003(c), and 5005(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 3003-1(a).

### Background

### I.      The Filing of the Chapter 11 Cases and Plan Confirmation.

5.      On January 21, 2024, Terraform Labs Pte. Ltd. ("Terraform" or "TFL") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the "Petition Date").  Terraform Labs Limited ("TLL") subsequently filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 1, 2024 (the "TLL Petition Date").[4]  On September 18, 2024, the Debtors filed the *Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 717] (the "Plan"), and the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 734] (the "Confirmation Order") approving the Plan on September 20, 2024. The effective date of the Plan occurred on October 1, 2024 (the "Effective Date").[5]  The history leading up to the Debtors' chapter 11 cases is set forth in more detail in the *Declaration of Chris Amani in Support of the Debtor's Chapter 11 Petition and First Day Relief* [Docket No. 18] (the "First Day Declaration") and the *Disclosure Statement for Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 569] (the "Disclosure Statement").

---

[4]      Following the TLL Petition Date, on July 17, 2024, the Bankruptcy Court entered the *Order Directing Joint Administration of Related Chapter 11 Cases* [Docket No. 476].  Additionally, the Plan contemplated the limited substantive consolidation of the estates of TFL and TLL for the purposes of Plan confirmation, voting, and distributions.  *See* Plan, Section 5.1.

[5]      *See Notice of (I) Entry of Order Confirming the Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited and (II) Effective Date* [Docket No. 765].

6.      As described therein, prior to the Petition Date, Terraform's founder, former director, and former Chief Executive Officer Do Hyeong Kwon ("Mr. Kwon") marketed Terra USD ("UST") as an "algorithmic stablecoin."   An algorithmic stablecoin is a type of cryptocurrency designed to maintain a stable price over time by "pegging" its value to the value of referenced assets, such as the U.S. Dollar, where such peg is maintained by an algorithm that controls the supply of tokens by impacting the willingness of market participants to exchange the tokens for a given amount of fiat currency.[6]   However, in May of 2022, a massive tidal wave of selling caused the UST to de-peg from the currency to which it was pegged, and the UST price collapsed to nearly zero.   Once the stablecoin failed, as a result of Mr. Kwon's and the Debtors' misrepresentations regarding the stability of the stablecoin and the algorithm underlying the Terra Crypto stablecoin, Mr. Kwon was found civilly liable by the Securities Exchange Commission (the "SEC") for recklessly violating (a) Section 17 of the Securities Act, and (b) Rule 10b-5 of the Exchange Act.[7]  TFL and Mr. Kwon both reached settlements with the SEC[8] to compensate harmed investors.   The terms of the settlements were incorporated into the Plan, which created a class of "Crypto Loss Claims" to compensate creditors harmed by the misrepresentations.

7.      The Plan did not establish any procedures for filing Crypto Loss Claims or set any bar date by which claimants must file Crypto Loss Claims.[9]  Instead, pursuant to Section 5.7 of the

---

[6]   In this case, UST was algorithmically tied to the Luna Classic coin ("LUNC"), such that if, for example, UST fell below its intended $1 peg, the market would sell LUNC in exchange for UST at below-market value, thus increasing demand for UST and restoring the $1 value of UST.

[7]   17 C.F.R. § 240.10b-5.

[8]   *See Consent of Defendant Terraform Labs Ptd. Ltd.* [Docket No. 271-1] and *Consent of Defendant Do Kwon* [Docket No. 271-2] filed in the litigation captioned S*EC v. Terraform Labs Pte. Ltd., et al., Case No. 1:23-cv-013460-JSR* (the "SEC Enforcement Action").

[9]   The Court entered the *Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim by Governmental Units, (III) Establishing an Amended Schedules Bar Date, (IV) Establishing a Rejection Damages Bar Date, (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Form and Manner of Proposed Notice of Bar Dates, and (VII) Granting Related*

Plan, the Plan Administrator is required to file a motion seeking approval of the CLC Bar Date and CLC Procedures governing the submission, allowance, and distribution of Crypto Loss Claims. The Plan requires that the CLC Procedures include (a) how creditors can submit a Crypto Loss Claim, (b) the deadline to submit a Crypto Loss Claim, and (c) what information creditors submitting Crypto Loss Claims must include with their submission. The Plan also requires that the Plan Administrator develop a modified Proof of Claim form to be submitted by creditors asserting Crypto Loss Claims.

8. The Plan Administrator spent several months developing procedures to best streamline the process for submitting and verifying Crypto Loss Claims. Given the nature of the Terra Ecosystem, the Debtors do not possess records of the holders of Crypto Loss Claims—the cryptocurrency tokens on the Terra Ecosystem were traded without creating any records of the identity of the new holders of the token—and the Plan Administrator must rely on the information provided to him by claimants to verify such claims. Accordingly, the Plan Administrator developed a process for submitting Crypto Loss Claims in a way that requires claimants to provide the Plan Administrator with all of the necessary information to verify claims, while also ensuring that the process for submitting claims is as efficient and easily understandable for claimants as possible.

9. Due to the large amounts of materials that will be submitted by the claimants, the Plan Administrator has engaged Kroll Restructuring Administration LLC ("Kroll") to assist with

---

*Relief* [Docket No. 437] (the "General Bar Date Order"). However, the General Bar Date Order did not establish any bar date with respect to Crypto Loss Claims. The Debtors also established a preliminary crypto loss claims bar date solely for the purposes of voting on the Plan, pursuant to the *Order (I) Establishing a Bar Date to File Preliminary Crypto Loss Proofs of Claim Solely for Voting Purposes, (II) Approving the Form and Manner of Notice for Filing Preliminary Crypto Loss Proofs of Claim, (III) Approving the Form and Manner of Proposed Notice of Preliminary Crypto Loss Claims Bar Date, and (IV) Granting Related Relief* [Docket No. 491] (the "Preliminary CLC Bar Date").

the administration of the Crypto Loss Claims.  For the avoidance of doubt, Epiq Corporate Restructuring LLC will continue to maintain the official register for filings and other claims in these chapter 11 cases.

10.    In light of the unique circumstances underlying the Crypto Loss Claims, the Plan Administrator seeks approval of the procedures described herein and attached as <u>Exhibit 1</u> to the CLC Bar Date Order (the "<u>CLC Procedures</u>"), which establish the process for the submission, evaluation, and allowance of Crypto Loss Claims and the distributions on account thereof.  For claims that are ultimately Allowed pursuant to the CLC Procedures, distributions will be made from the "<u>CLC Pool</u>" as set forth in Section 1.40 of the Plan, including (i) the SEC Settlement Fund and (ii) any remaining funds in the General Unsecured Creditors Pool upon the General Unsecured Payment Completion (as defined in the Plan).

## II.    Eligible Crypto Loss Claims

11.    Crypto Loss Claims are intended to serve as a remedy for investors harmed as a result of the Debtors' representations regarding the Terra Ecosystem, akin to the damages awarded in a securities fraud action.  Thus, while the Plan included a broad definition of Crypto Loss Claims, the CLC Procedures provide an in-depth process for determining the validity and amount of each Crypto Loss Claim.  This process is designed to allow claimants to submit the necessary evidence to demonstrate their losses, while also providing sufficient limitations such that most claimants do not need to individually prove reliance on the Debtors' representations in order to recover on account of their alleged Crypto Loss Claims.

12.    First, in order for a claimant to recover for an alleged Crypto Loss Claim, they must demonstrate that their Crypto Loss Claim is related to losses suffered as a result of purchases or investments made prior to May 13, 2022 at 6:15 p.m., prevailing Eastern Time (the "<u>Second De-Peg</u>") of either (i) cryptocurrency created by the Debtors ("<u>Terra Crypto</u>") and/or (ii) other

cryptocurrency held on the Terra Ecosystem (collectively, the "Eligible Loss Cryptocurrency"). This definition of Eligible Loss Cryptocurrency serves to limit recovery on account of Crypto Loss Claims to coins that were actually locked on the Terra Ecosystem or otherwise became worthless as a result of the Second De-Peg.[10]

13.    Additionally, claimants can only recover on account of losses suffered as a result of the Second De-Peg and the Debtors' misrepresentations related thereto.  Analogous to securities fraud damages, the Crypto Loss Claims are contemplated to provide recovery only for claimants that reasonably relied upon misrepresentations of the Debtors.[11]  In order to evaluate alleged Crypto Loss Claims, the Plan Administrator therefore had to determine a standard "cutoff" time after which claimants knew or should have known of the failure of the Terra Ecosystem.

14.    The Plan Administrator has determined in his business judgment that May 13, 2022 at 6:15 p.m. (prevailing Eastern Time) is the appropriate "cutoff" date and time for claimants to recover on account of purchases or investments of Eligible Loss Cryptocurrency.  When the Second De-Peg began on or about May 6, 2022, there was still a realistic possibility that the algorithm underlying UST's pegging could work to restore UST to its $1 pegged value.  Indeed, UST suffered a de-peg in May of 2021, and was re-pegged in a few days.  However, on May 13, 2022, prices of UST and other Terra Crypto continued to fall drastically, and at 6:15 p.m. (prevailing Eastern Time), Mr. Kwon tweeted that "I still believe that decentralized economies deserve decentralized money – but it is clear that $UST in its current form will not be that

---

[10]   All Eligible Loss Cryptocurrency is presumed to be worthless as of the Petition Date.

[11]   To establish a claim for securities fraud under Sections 10(b) and Rule 10b-5 of the Exchange Act, the plaintiff must show that it "reasonably relied on the alleged misrepresentation or omissions that form the basis of its claim." *In re DaimlerChrysler AG Secs. Litig.*, 294 F.Supp.2d 616, 620 (D. Del. 2003).  In the Third Circuit, the determination of reasonableness is made on a case-by-case basis, considering all of the circumstances.  *See id.* (quoting *AES Corp. v. The Dow Chemical Co.*, 325 F.3d 174, 179 (3d Cir.2003)).

money."[12]  Additionally, during this time, holders of Terra Crypto would have been aware of the volatile nature of the Terra Ecosystem, as the price of UST and other Terra Crypto began to fall, and by May 13, 2022, its price had decreased from approximately $1.00 to $0.13.[13]

15.    At this point, investors knew or should have known of the collapse of UST and the Terra Ecosystem, and those who continued to purchase Eligible Loss Cryptocurrency did so "on notice" of the failed algorithm.[14]  Given that, prior to May 13, 2022, the public at large reasonably relied on the Debtors' misrepresentations regarding the algorithm when purchasing cryptocurrency on the Terra Ecosystem, [the Plan Administrator will presume claimants holding Eligible Loss Cryptocurrency satisfy the requirements for reasonable reliance, since Eligible Loss Cryptocurrency excludes any cryptocurrency purchased after the Second De-Peg.  However, the Plan Administrator reserves the right to review and inquire as to any claimant's reasonable reliance on representations by the Debtors, regardless of whether such claimant held cryptocurrency tokens created by Terraform or tokens created by third parties, including requesting specific evidence demonstrating the statements on which such claimants specifically relied when purchasing Eligible Loss Cryptocurrency, in his discretion and based solely on his business judgment.  The Plan Administrator may request any supporting documentation as he determines, in his discretion, is necessary for determining such reasonableness.  Individual claimants may have knowledge or transaction history that calls into question whether they reasonably relied on Terraform's

---

[12]   Tim Hakki, *This Week on Crypto Twitter: Do Kwon Takes Heat for UST Failure*, Decrypt, https://decrypt.co/100423/this-week-on-crypto-twitter-do-kwon-takes-heat-for-ust-failure (May 15, 2022) (referring to Mr. Kwon's tweet as "personally hammer[ing] the last nail in UST's coffin").

[13]   Price fluctuations leading up to the Second De-Peg are included as **Annex 1** to this Motion.

[14]   *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 176 (3d Cir. 2000) (discussing the requirement that the statements which the plaintiff reasonably relied must be "in connection with" the purchase or sale of a security, and stating that the element is established by "[s]howing that the misrepresentations in question were disseminated to the public in a medium upon which a reasonable investor would rely, and that they were material when disseminated").

statements, and the Plan Administrator must be able to inquire if he believes the presumption of reasonable reliance should be rebutted in a particular case.][15]

16.    In addition to establishing the Eligible Loss Cryptocurrency that underlies Crypto Loss Claims and the appropriate cutoff date for such claims, the CLC Procedures also define the additional requirements that a claimant must demonstrate for their claim to be considered eligible for recovery (such claim, an "Eligible Crypto Loss Claim").  An Eligible Crypto Loss Claim is a Crypto Loss Claim that:

    a.    stemmed from the purchase of or investment in Eligible Loss Cryptocurrency that (i) was purchased or otherwise acquired before the Second De-Peg and (ii) was rendered worthless or inaccessible as a result of the Second De-Peg and subsequent events leading up to the Petition Date;

    b.    resulted in the loss of the claimant's own funds (*i.e.*, the claimant suffered a financial loss);

    c.    is reduced for the value received after the claimant's Eligible Loss Cryptocurrency was acquired and prior to the Petition Date; and

    d.    is not subject to any of the exclusions included in the CLC Procedures.

17.    An Eligible Crypto Loss Claim does **not** include:

    a.    claims for Eligible Loss Cryptocurrency that was purchased on or transferred to the Terra Ecosystem after the Second De-Peg;

    b.    all holdings on Terra 2.0 which were created following the Second De-Peg, including all cryptocurrency airdropped to Terra 2.0 (including, for the avoidance of doubt, Luna 2.0);

    c.    tokens on the Terra Ecosystem that were recoverable in-kind; or

    d.    any losses on account of coins borrowed from the Debtors or losses on assets provided to the claimants from the community pool or from a grant or investment from the Debtors.

---

[15]    The presumption of reasonable reliance on the Debtors' representations remains subject to ongoing negotiation between the Plan Administrator and the SEC, and both the Plan Administrator's and the SEC's rights with respect to such presumption are reserved.  The Plan Administrator will file revised procedures prior to the hearing on these CLC Procedures.

18.     Additionally, for the avoidance of doubt, whether a Crypto Loss Claim satisfies the requirements to be considered an Eligible Crypto Loss Claim will be determined in the Plan Administrator's business judgment according to the above definition and limitations.  The Plan Administrator also reserves the right to perform a basic identity verification process for each claimant prior to determining whether a Crypto Loss Claim is an Eligible Crypto Loss Claim.

19.     These guardrails, along with the other requirements set forth in the CLC Procedures, will allow for a streamlined administration of claims while providing claimants with a fair opportunity to recover on account of their losses.  The rest of this Motion discusses the CLC Bar Date, procedures for filing CLC Forms and the information requested therein, the claims reconciliation and disputed claims process, the consequences of failing to file a CLC Form, and the proposed noticing procedures.

## The CLC Bar Date

20.     Bankruptcy Rule 3003(c)(3) provides that the bankruptcy court shall fix the time within which proofs of claim must be filed in a chapter 11 case pursuant to section 501 of the Bankruptcy Code.  Moreover, Bankruptcy Rule 3003(e)(2) provides that any creditor who has a claim against the Debtors that arose before the petition date and whose claim is not scheduled in the Debtors' schedules of assets and liabilities, schedules of executory contracts, or statements of financial affairs must file a proof of claim.  As set forth below, the Plan Administrator proposes that the bar date to file any such claims will be approximately sixty (60) days following the service of the CLC Bar Date Notice.  The proposed timeline and accompanying noticing plan will give all parties in interest adequate notice of the CLC Bar Date and an opportunity to respond.

21.     Each entity that asserts a Crypto Loss Claim against the Debtors that arose before the Petition Date shall be required to submit a CLC Form through the Online Portal.[16]   More specifically, the Plan Administrator proposes the following deadline:

a.     ***CLC Bar Date***.  The Plan Administrator requests that the Bankruptcy Court establish **April 30, 2025, at 11:59 p.m.**, prevailing Eastern Time, as the CLC Bar Date.  The CLC Bar Date would be the deadline by which all entities holding Crypto Loss Claims must submit CLC Forms, so that such CLC Forms are actually received by the Plan Administrator's notice and claims agent, Kroll, by the CLC Bar Date.  The CLC Bar Date would apply to all Crypto Loss Claims against the Debtors that arose or are deemed to have arisen before the Petition Date.

## Procedures for Filing Proofs of Claim

### I.     Parties Required to File Proofs of Claim

22.     Except as otherwise set forth herein, any entity holding a Crypto Loss Claim against the Debtors as of the Petition Date is required to submit a Crypto Loss Claim.  Unlike other bankruptcy proceedings in the cryptocurrency sector, the Debtors did not require users to create a customer account or otherwise "register" to use the Terra Ecosystem.  As a result, the Plan Administrator does not have books and records for potential holders of Crypto Loss Claims, and must instead rely on claimants to submit Crypto Loss Claims to recover on account of their purchases or investments.

### II.     The Proof of Claim Form

23.     The Plan Administrator has prepared and requests that the Bankruptcy Court approve the CLC Form substantially in the form attached to the CLC Bar Date Order as <u>Exhibit 2</u>.

---

[16]   Kroll, as the Plan Administrator's claims and noticing agent for Crypto Loss Claims, maintains an Online Portal (as defined below) allowing potential claimants to submit a proof of claim (in substantially the same form as any hard copy version) and electronically sign and submit such proof of claim.  The Online Portal provides a secure, simple portal for creditors to participate in the chapter 11 cases while tracking original e-signatures.  This also eases the administrative burden on and costs to Wind Down Trust associated with processing hard-copy proofs of claim.  The Plan Administrator intends to accept proofs of claim through the Online Portal as further described below and subject to the same limitations and requirements as all other proofs of claim.

While the CLC Form attached to the CLC Bar Date Order as <u>Exhibit 2</u> will not be available to claimants in hard copy format, it has been designed to provide the Bankruptcy Court and potential Crypto Loss Claim holders with the fields they will be asked to complete via the Online Portal (as defined below).   The CLC Form has been designed to allow claimants to provide the Plan Administrator with all necessary information to validate and calculate the amount of each claimant's Crypto Loss Claim in a succinct and effective fashion.   It allows claimants to submit evidence of losses they suffered as a result of the Second De-Peg and subsequent events leading up to the Petition Date, as well as to provide all information regarding any transactions or other activity that occurred during that time frame.

24.     Given that the Debtors do not have any record of who owned the cryptocurrency that was traded on the Terra Ecosystem, it is important that claimants provide sufficient evidence for the Plan Administrator to verify claims according to the above criteria.   Further, the initial claims received by the Preliminary CLC Bar Date contained indications of a high level of fraudulent and inflated claims, such as instances where the asserted claims included coins that were in wallets that were objectively owned by third parties unconnected to the claimant, including in some cases coins held in omnibus wallets in which no one claimant holds the entire wallet. Accordingly, the Plan Administrator has designed the CLC Form to allow claimants to provide the factual support needed for an appropriate level of verification.

A.     **The Online Portal**

25.     Claimants must submit the CLC Form and the supporting evidence electronically through the Plan Administrator's online claim portal at claims.terra.money (the "<u>Online Portal</u>").[17] The Plan Administrator will not accept proofs of claims submitted via hard copy, and all supporting

---

[17]   The Online Portal will go live closer to the commencement of the claims process.

documentation must be provided through the Online Portal. As described more fully below and in the CLC Procedures, there are two potential types of evidence that claimants may provide to support their Crypto Loss Claim. "Preferred Evidence" allows claimants to demonstrate proof of their ownership of Eligible Loss Cryptocurrency (a) on the Terra Ecosystem, by providing their blockchain or wallet addresses and proving their ownership by signing a transaction with their wallet through the Online Portal, or (b) on other platforms or exchanges by providing read-only API Keys (the blockchain addresses, wallet addresses, and read-only API Keys, collectively, the "Preferred Evidence"). If a claimant held Eligible Loss Cryptocurrency on an exchange or platform that does not support API Keys, such claimant must provide screenshots, excel logs, or PDFs generated by the applicable exchange showing account balances, transaction logs, and deposit logs ("Manual Evidence"). If claimants submit Manual Evidence, their Crypto Loss Claim will be subject to Individualized Review (as defined below) due to the additional resources and time needed to verify the accuracy of Manual Evidence.

26.     Additionally, due to the unique assets underlying the Crypto Loss Claims, the Plan Administrator is requiring that the CLC Form and the supporting documents be submitted exclusively through the Online Portal. The Online Portal will allow claimants to more easily provide the required information directly to the Plan Administrator, including evidentiary support and proof of ownership that would be impracticable to verify if submitted via hard copy.

**B.     Requirements for Preparing and Filing Proofs of Claim**

27.     The Plan Administrator requests that the Bankruptcy Court approve the proposed procedures for submitting a Crypto Loss Claim, substantially in the form attached to the CLC Bar Date Order as Exhibit 1. With respect to preparing and submitting a CLC Form, the Plan Administrator proposes that each CLC Form be required to be consistent with the following:

a.    **Part I: Identifying Information**:  To complete Part I of the CLC Form, claimants must provide all requested claimant details and contact information.  Claimants holding Multisig Wallets must submit a list of signatories (with each signatory's wallet address and contact email) and the wallet address of the Multisig Wallet.  Please note that all correspondence will be sent to such claimant's provided email address.

b.    **Part II: Crypto Holdings and Evidentiary Support**:  The CLC Form allows claimants to submit two types of evidence:  (i) Preferred Evidence and (ii) Manual Evidence.  Preferred Evidence includes (a) the claimant's blockchain and/or wallet addresses, for Eligible Loss Cryptocurrency held on Verifiable Blockchains, and (b) read-only API Keys, for Eligible Loss Cryptocurrency held on other platforms or exchanges.  Manual Evidence includes screenshots, excel logs, or PDFs generated by the applicable exchange showing account balances, transaction logs, and deposit logs.  For the avoidance of doubt, Manual Evidence will not be accepted (i) for Eligible Loss Cryptocurrency held on Verifiable Blockchains or (ii) for exchanges that support read-only API Keys.

To complete Part II, claimants must provide evidentiary support for all Eligible Loss Cryptocurrency underlying such claimant's Crypto Loss Claim, across all exchanges and wallets on which they hold Eligible Loss Cryptocurrency.

<u>Evidentiary Support:</u>

i.    For any Eligible Loss Cryptocurrency held on a Verifiable Blockchain, claimants must provide the applicable blockchain(s) and wallet address(es).  Manual Evidence will not be accepted to support claims for Eligible Loss Cryptocurrency held on Verifiable Blockchains.

ii.    For any Eligible Loss Cryptocurrency held on a non-Verifiable Blockchain, or on other platforms or exchanges, claimants must provide:

(A)    Preferred Evidence:  To the extent an exchange supports read only API Keys, claimants must provide the read-only API Key for each exchange on which such claimant holds Eligible Loss Cryptocurrency.

Please refer to **<u>Schedule 2</u>** to the CLC Procedures for links to several exchange's instructions on how to access and retrieve read-only API Keys.

(B)    Manual Evidence:  If a claimant's Eligible Loss Cryptocurrency is held on a blockchain that is not a Verifiable Blockchain, or if an exchange does not

14

support read-only API Keys, claimants must provide Manual Evidence to support their Crypto Loss Claim. For the avoidance of doubt, if all of a claimant's Eligible Loss Cryptocurrency is supported by Preferred Evidence in subsections (i) and (ii)(A) above, such claimant does not need to submit any of the Manual Evidence requested in this subsection (ii)(B).

(C) Claimants must also provide documentation for any contracts (including insurance contracts), trade agreements, or other documents governing ownership or transfers of the Eligible Loss Cryptocurrency underlying their Eligible Crypto Loss Claim.

If claimants are unable to submit the Preferred Evidence in subsections (i) or (ii)(A) above, (e.g., the only evidence submitted is in accordance with section (ii)(B) above), their Crypto Loss Claim will be subject to additional review (an "Individualized Review") (as defined below).

**The Plan Administrator reserves the right to coordinate directly with exchanges and other platforms to confirm the accuracy of the evidence provided by claimants. If any claimant fails to comply with these CLC Procedures, including (a) failure to provide all staking information and wallet addresses, (b) failure to disclose information that would reduce their claim, or (c) providing unverifiable data, the Plan Administrator will seek to disallow such claimant's claim in its entirety for insufficient documentation. Further, if it is discovered that any claimant had advance knowledge of the Debtors' actions giving rise to the judgment against the Debtors in the Final Judgment Against Defendants Terraform Labs Pte. Ltd. and Do Hyeong Kwon in the SEC Enforcement Action, the Plan Administrator will seek to subordinate or disallow such claimant's Crypto Loss Claim.**

c. **Part III: Supporting Documents for Claim**: To complete Part III, claimants must include all applicable supporting documentation and check the applicable boxes for the documents they are enclosing. Failure to provide supporting documentation may lead to their claim being disallowed. All applicable supporting documentation, including but not limited to any blockchain or wallet addresses, any read-only API Keys, and any account balance statements, transaction logs, and contracts or trade agreements governing ownership or transfer of the tokens must be attached to claimants' CLC Forms unless it is included in the CLC Form itself.

d. **Part IV: Contributed Claims**: If claimants purchased their Eligible Loss Cryptocurrency and believe that they may have a claim against third parties

(i.e., any persons or entities other than the Debtors), then they have the option to irrevocably contribute such claims to the Wind Down Trust ("Contributed Claims").  In accordance with the Plan and the Wind Down Trust Agreement, the Plan Administrator will review their Contributed Claims and exercise his business judgment in determining whether to pursue such claim.  Such claims may be adjudicated in litigation, binding arbitration, or another forum provided by law.  If the Plan Administrator pursues their third-party claim, such claimants may be asked to provide additional information and documents.  A claimant's decision on whether to contribute any third-party claims to the Wind Down Trust will not affect the Plan Administrator's valuation or adjudication of their Crypto Loss Claim.  Any proceeds of contributed claims that are included in distributions under the Plan will be distributed pro rata to all holders of Allowed Crypto Loss Claims and will not be made only to creditors who elected to contribute claims to the Wind Down Trust.

e.    **Part V: Certification**: To complete Part V and submit the CLC Form, each claimant must certify under penalty of perjury that all statements they gave in the CLC Form were true and correct to the best of their knowledge.  The claimant's digital date stamped signature will be deemed an original signature.

f.    Miscellaneous Provisions.

i.    Contents.  Each CLC Form must:  (i) be submitted in English; (ii) be fully complete using the CLC Form provided by the Wind Down Trust; (iii) include the supporting documentation requested by the CLC Form; and (iv) be digitally signed by the claimant or by an authorized agent or legal representative of the claimant.

ii.    Online Portal Notifications.  By registering to submit an Eligible Crypto Loss Claim via the Online Portal, the Wind Down Trust can track claimants' progress and notify them of the status of their claim and/or request additional information.

iii.    Timely Service.  Each CLC Form must be filed, including supporting documentation, so as to be ***actually*** ***received*** through the Online Portal on or before the CLC Bar Date.

> **PROOFS OF CLAIM SUBMITTED BY PHYSICAL MAIL, FACSIMILE, OR ELECTRONIC MAIL WILL NOT BE ACCEPTED.**

## Claims Reconciliation and Initial Disbursements Process

28.     The Plan Administrator has prepared a comprehensive review process for evaluating claimants' Crypto Loss Claims.  Given the nature of the Terra Ecosystem, and the lack of information the Plan Administrator possesses regarding claimants' Crypto Loss Claims, the Plan Administrator must have access to all the information requested in the CLC Form to verify claims.  In order to recover on account of a Crypto Loss Claim, claimants must submit a fully completed CLC Form, including either Preferred Evidence or Manual Evidence supporting their claim.  If the claimant fails to provide the information requested by the CLC Form, the Plan Administrator will be unable to process the Crypto Loss Claim.  Holders of an Eligible Crypto Loss Claim must fill out the CLC Form in its entirety, and the failure of a claimant to do so will be grounds for the Plan Administrator to disallow the Crypto Loss Claim in its entirety without further order of the Bankruptcy Court.  The Plan Administrator will send out a single notice to claimants who provide an incomplete CLC Form so that such claimants may attempt to complete their CLC Form.

29.     Once a claimant's CLC Form is submitted containing the requisite information, the Plan Administrator will review and verify the claim.  To calculate the claim amount (the "Crypto Loss Amount"), the Plan Administrator will determine the amount of funds the claimant used to acquire Eligible Loss Cryptocurrency.  If a foreign currency or other cryptocurrency tokens were used to acquire Eligible Loss Cryptocurrency, they will be converted into U.S. Dollars using exchange rates as of the Petition Date.  Because of the Second De-Peg, and the subsequent events leading up to the Petition Date, Eligible Loss Cryptocurrency will be presumed to be worthless as of the Petition Date.  Accordingly, if a claimant purchased Eligible Loss Cryptocurrency prior to the Second De-Peg and continued to hold it through the Petition Date, without entering into any other transactions, the Crypto Loss Amount will be the amount the claimant purchased or invested

to acquire the Eligible Loss Cryptocurrency, *less* any value received on account of Luna 2.0 holdings airdropped to claimants following the Second De-Peg and monetized prior to the Petition Date.[18]  For example, if claimants sold any Luna 2.0 for a monetary gain at any point between purchasing their Eligible Loss Cryptocurrency and the Petition Date, the Crypto Loss Amount will be reduced by that monetary gain.  However, the Crypto Loss Amount will not be affected if holders of Luna 2.0 did not engage in any transactions as of the Petition Date, as Luna 2.0 will be deemed worthless as of the Petition Date.  Further, if a claimant sold their Eligible Loss Cryptocurrency at any point between purchasing their Eligible Loss Cryptocurrency and the Petition Date, or engaged in other transactions that returned value to such claimant, the Crypto Loss Amount will be reduced by any portion of that previously received value.

30.    Following the CLC Bar Date, the Plan Administrator will take ninety (90) days to perform a review of submitted Crypto Loss Claims.  Claims will be eligible for two types of review—expedited review and individualized review.  If a claimant submits Preferred Evidence in accordance with the CLC Procedures and the Plan Administrator is able, in his business judgment, to verify the Crypto Loss Claim, the claimant will not need to provide any additional information and will receive an Initial Determination (as defined below).  If a claimant is unable to submit Preferred Evidence to support the entirety of their claim, or if the Plan Administrator is unable to verify the Crypto Loss Claim in his business judgment based on the provided evidentiary support, such claimant's Crypto Loss Claim will be subject to individualized review ("Individualized

---

[18]    As is more fully described in the First Day Declaration, Luna 2.0 was "airdropped" to holders of LUNC and UST when the Terra 2.0 blockchain was created after the Second De-Peg.  This "airdrop" did not involve any sales of Luna 2.0—the new coin was transferred as a gift to anyone holding LUNC when it collapsed.  To the extent such Luna 2.0 was monetized by holders prior to the Petition Date, such Luna 2.0 profits mitigate the losses suffered on account of the losses they suffered as a result of purchasing LUNC prior to the Second De-Peg.  If holders of Luna 2.0 engaged in no transactions as of the Petition Date, Luna 2.0 will be deemed worthless as of the Petition Date.

Review"). Additionally, if the Plan Administrator determines in his business judgment that the Plan Administrator requires evidence of reasonable reliance before allowing the potential claim as an Eligible Crypto Loss Claim, such claim will be subject to Individualized Review. Further, the Plan Administrator may, in his own discretion, determine any claim requires an Individualized Review.

31.    To notify claimants of their Crypto Loss Amount, at the end of the Plan Administrator's ninety (90) day review period following the CLC Bar Date, each claimant will receive either (a) a notification that the Plan Administrator has made an initial determination of their Crypto Loss Amount (an "Initial Determination"), which will be sent to each claimant through a personalized email, or (b) a notification that their Initial Determination is not yet ready because the Plan Administrator is conducting an Individualized Review of their Crypto Loss Claim.

32.    Once claimants receive an Initial Determination, they will have thirty (30) days from the date the Plan Administrator sends the Initial Determination to dispute such determination. If a claimant disputes their Initial Determination, such claimant must provide any additional evidence requested by the Plan Administrator in order to verify their Crypto Loss Claim. If the Plan Administrator continues to disagree with the claimant's asserted Crypto Loss Amount, the Plan Administrator will file an objection to the claimant's asserted Crypto Loss Amount; *provided* that the Plan Administrator has the authority to negotiate and settle any Crypto Loss Amount without further order of the Bankruptcy Court.

33.    If a claimant fails to notify the Plan Administrator within the thirty (30) day window that they dispute the Initial Determination, the Initial Determination of the claimant's Crypto Loss Amount will be deemed accepted. Once the Initial Determination is accepted, it will be fully

binding and irrevocable, the claimant will have an Allowed Crypto Loss Claim for their Crypto Loss Amount, and the claimant will be eligible for distributions on account of their Allowed claim. As soon as reasonably practicable after the end of the thirty-day window, the Plan Administrator expects to make an initial distribution to claimants who have accepted their Initial Determinations (such distribution, the "Initial Distribution").  For the avoidance of doubt, all claimants will recover *pro rata* on account of their Allowed Crypto Loss Claim.  The Plan Administrator will exercise his business judgment to maintain sufficient reserves to make subsequent distributions to holders of disputed Crypto Loss Claims in order to ensure that each claimant recovers the same percentage of their Crypto Loss Amount.

34.     In order for claimants to receive distributions on account of their Crypto Loss Claim, they must provide the Plan Administrator with the any requested wiring information, disbursement details, and Know Your Customer ("KYC") information.  The Plan Administrator will make reasonable best efforts to facilitate the distribution to all claimants; however, should certain insurmountable barriers arise, such as regulatory requirements (*e.g.*, sanctions) or an inability of any claimant to receive distributions in U.S. Dollars, distributions to certain claimants may be impossible.

35.     The Plan Administrator will review incomplete CLC Forms on a case by case basis. Specifically, claimants that submit incomplete CLC Forms will not receive an Initial Determination, and their claim will undergo Individualized Review.  To the extent that it appears, based on the CLC Form, that a claimant may hold an Eligible Crypto Loss Claim, but that additional information is needed, the Plan Administrator will, in his discretion, discuss with such claimant to determine whether the deficiencies can be cured.  To the extent a Crypto Loss Claim is not eligible because a claimant failed to provide the information required by the CLC Form and

the deficiencies cannot be cured within thirty (30) days, such Crypto Loss Claim shall be deemed automatically expunged without further court order.  The Plan Administrator will provide notice of such expungement to the claimant, and such expungement will also be published on Kroll's website.

36.    The Plan Administrator seeks the authority to exclude certain personal information on the claims register to protect the safety of the claimants.  Specifically, for each Crypto Loss Claim, the Plan Administrator proposes to publish the claimant's name and the status of their claim.  The claimants' personal privacy and safety requires the exclusion of other information, especially as debtors in other large cryptocurrency related bankruptcy proceedings have been the target of sophisticated phishing attacks in the past.  For example, the debtors in *Celsius Network LLC* have filed over a dozen notices in response to attempted phishing attacks, which are available on the website maintained by their notice and claims agent.[19]

### Consequences of Failure to File a Proof of Claim

37.    Pursuant to Bankruptcy Rule 3003(c)(2), the Plan Administrator proposes that any entity who is required, but fails, to file a CLC Form pursuant to the CLC Bar Date Order on or before the CLC Bar Date shall be prohibited from participating in any distribution in these chapter 11 cases on account of such claim.  If the claimant does not provide the requisite information to qualify as an Eligible Crypto Loss Claim, the Plan Administrator will notify the claimant of the deficiencies, and if such deficiencies are not cured, the claim will be automatically disallowed without further notice or court order.

---

[19]    *See Celsius Network LLC, et al.*, No. 22-10964 (MG) (Bankr. S.D.N.Y. 2022) [Docket Nos. 1527, 1681, 1904, 1992, 2082, 2896, 3121, 3251, 3422, 3722, 3932, and 4070], https://cases.stretto.com/celsius/content/1804-phishing-attempts/.

### Consequences of Failure to Deliver or Accept Distributions

38.    The Plan Administrator will make a good faith effort to make all distributions to holders of Allowed Crypto Loss Claimants.  However, the Plan Administrator cannot guarantee successful delivery of all distributions.  Delivery of distributions may fail, for example, due to (a) regulatory requirements that prevent distribution to specific locations or claimants, (b) insufficient information provided by claimants to complete distributions, and (c) the failure of claimants to "accept" the distribution, to the extent necessary.  The Plan Administrator will provide claimants with ninety (90) days from the date of the initial attempted distribution to provide any additional information needed to complete distributions and to accept distributions, in accordance with the Section 6.12 of the Plan and Sections 5.8, 5.10, and 5.11 of the Wind Down Trust Agreement.[20]  If, after ninety (90) days from the date of initial attempted distribution, the claimant cannot or does not receive and accept their distribution, such distribution will be deemed unclaimed property and all title to and beneficial interest in such undeliverable distribution and all future distributions shall revert to or remain in the Wind Down Trust for pro rata distribution among holders of Allowed Crypto Loss Claims.

### Procedures for Providing Notice of the Bar Date

39.    The Plan Administrator proposes the following procedures for providing mailing and publication notice of the CLC Bar Date.

**I.    Mailing of CLC Bar Date Notices.**

40.    Pursuant to Bankruptcy Rule 2002(a)(7), no later than three (3) business days after the entry of the CLC Bar Date Order, the Plan Administrator proposes to cause the CLC Bar Date

---

[20]    *See* Plan; *see also Notice of Filing of Fourth Plan Supplement In Connection with Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 719], which includes the amended wind down trust agreement (the "Wind Down Trust Agreement") as Exhibit A.

Notice containing instructions to access the Online Portal to be emailed, or mailed via first class mail if no email is available, to the following entities:

<ol type="a">
<li>The United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>");</li>

<li>all creditors and other known holders of claims against the Debtors as of the date of entry of the CLC Bar Date Order, including all entities listed in the Schedules as holding claims against the Debtors;</li>

<li>all entities that have requested notice of the proceedings in these chapter 11 cases pursuant to Bankruptcy Rule 2002 as of the date of entry of the CLC Bar Date Order;</li>

<li>all entities that have filed proofs of claim in these chapter 11 cases as of the date of entry of the CLC Bar Date Order;</li>

<li>all entities that are party to litigation with the Debtors;</li>

<li>all current employees and former employees of the Debtors who were employed by the Debtors in the 24 months prior to the Petition Date (to the extent that contact information for such former employees is available in the Debtors' records after reasonable inquiry);</li>

<li>all known non-Debtor equity and interest holders of the Debtors (as of the Petition Date);</li>

<li>the SEC; and</li>

<li>such additional persons and entities deemed appropriate by the Plan Administrator.</li>
</ol>

41.     The proposed CLC Bar Date Notice notifies the parties of the CLC Bar Date and contains information regarding who must file a CLC Form, the procedures for filing a CLC Form, and the consequences of failure to timely file a CLC Form.  The Plan Administrator requests that the Bankruptcy Court approve the use of the CLC Bar Date Notice.

## II.     Publication Notice.

42.     Due to the nature of the Terra Ecosystem, holders of Crypto Loss Claims do not have a registered account with the Debtors, so almost all of these claimants are unknown creditors. In the interest of ensuring that all potential claimants receive adequate notice of the CLC Bar Date,

in addition to providing the CLC Bar Date Notice to known creditors, the Plan Administrator proposes to provide notice of the CLC Bar Date by publication. Pursuant to Bankruptcy Rule 2002(*l*) and in satisfaction of the requirements of Bankruptcy Rule 2002(a)(7), the Plan Administrator proposes to publish the Publication Notice on CoinDesk, a popular online media publication for news and events for the global crypto, blockchain, and Web3 communities, as well as any other related publications, exchanges, or through distributions lists (as necessary) in the Plan Administrator's discretion. Additionally, the Plan Administrator will publish notice of the CLC Procedures and the CLC Bar Date on the Debtors' accounts with popular social media and messaging platforms X (formerly Twitter), Discord, Medium, and Telegram. Moreover, any creditors that have submitted claims in connection with the Preliminary CLC Bar Date Order pursuant to the Plan will receive notice of the CLC Procedures via email (if an email was provided) or regular mail (if an email was not provided). The Publication Notice includes the URL that creditors may visit to obtain access to the Online Portal, and information concerning the procedures and appropriate deadlines for filing the CLC Form.

### Basis for Relief

I.     **The Court Should Approve the CLC Bar Date and the Proposed Procedures for Filing Proofs of Claim in These Chapter 11 Cases.**

     A.     **The CLC Procedures Are Appropriately Tailored to Provide Claimants with Ample Notice to File their Crypto Loss Claim and the Opportunity to Dispute their Crypto Loss Amount.**

43.     Bankruptcy Rule 3003(c)(3) generally governs the filing of proofs of claim in a chapter 11 case and provides, in relevant part, that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Fed. R. Bankr. P. 3003(c)(3). Although Bankruptcy Rule 2002(a)(7) generally provides that the clerk must give all parties in interest a minimum of 21 days' notice of the time fixed for filing proofs of claim

pursuant to Bankruptcy Rule 3003(c), neither the Bankruptcy Code, the Bankruptcy Rules, nor the Local Rules specify a time by which proofs of claim must be filed in chapter 11 cases (other than section 502(b)(9) of the Bankruptcy Code relating to governmental units).

44.     It is well recognized that a claims bar date plays an essential role in the twin goals of bankruptcy—preserving a debtor's going-concern value and maximizing property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).   A claims bar date allows the Plan Administrator and parties in interest to expeditiously determine and evaluate the liabilities of the estates.  The absence of such a deadline, in contrast, would prolong creditor uncertainty, increase the costs and expenses incurred by the Plan Administrator and Wind Down Trust in connection with the claims reconciliation process, and delay or even derail the claims process, thus undercutting one of the principal purposes of bankruptcy law—"secur[ing] within a limited period the prompt and effectual administration and settlement of the debtor's estate." *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

45.     The procedures described herein provide creditors with ample notice and opportunity, a clear process for filing proofs of claim with the aim of achieving administrative and judicial efficiency, and a thorough valuation process that allows the Plan Administrator to verify claims and efficiently distribute value to claimants.   Additionally, the method for notifying claimants of the Plan Administrator's Initial Determination of their Crypto Loss Amount provides a straightforward and transparent process for claimants.   Once claimants receive their Initial Determination, claimants are then given a sufficient period to review their Crypto Loss Amount and dispute the Initial Determination, should they disagree with their Crypto Loss Amount.   Indeed, the proposed procedures will provide comprehensive notice and clear instructions to

creditors, on the one hand, and allow the Plan Administrator to minimize administrative expense and delay, on the other hand.

**B.      The Proposed Valuation Method Is Appropriate and Should Be Approved.**

46.      Under Section 5.7 of the Plan, as discussed above, the CLC Motion must provide the process and procedures that the Plan Administrator will use to determine whether a Crypto Loss Claim should be allowed or disallowed, and, to the extent allowed, the value of such claim. The Plan Administrator's method for calculating the Crypto Loss Claims is tailored to provide the most complete and fair recovery to claimants.  The Plan Administrator's valuation takes into account all of the actions taken by claimants from the time they bought or acquired the Eligible Loss Cryptocurrency through the Petition Date, thereby ensuring that claimants are entitled to the appropriate Crypto Loss Amount.  Specifically, the proposed CLC Procedures aim to allow claimants to recover on all value actually lost as a result of the Second De-Peg through the Petition Date by asking claimants to provide evidence showing (i) the amount that they spent or invested to acquire Eligible Loss Cryptocurrency, (ii) all transactions or transfers that occurred using the Eligible Loss Cryptocurrency through the Petition Date, and (iii) the amount of Eligible Loss Cryptocurrency they continued to hold as of the Petition Date.  Additionally, the list of Eligible Loss Cryptocurrency also limits such Eligible Loss Cryptocurrency to coins for which the total on-chain liquidity on the Terra Ecosystem is under $100.00.[21]

47.      As discussed above, claimants are only eligible to recover for losses on account of Eligible Loss Cryptocurrency purchased or invested in prior to the Second De-Peg, because after the Second De-Peg, claimants were on notice of the misrepresentations regarding the Terra

---

[21]    Section 6.10 of the Plan states that the Disbursing Agent shall not be required to make any distribution in an amount less than $100.00 to any holder of an Allowed claim.

Ecosystem's stability.  Similarly, losses suffered after purchasing Eligible Loss Cryptocurrency but prior to the Second De-Peg will not count towards claimants' Crypto Loss Claims, because such losses were not on account of the Debtors' misrepresentations, which were not public until the Second De-Peg.  Additionally, if claimants sold any of their Eligible Loss Cryptocurrency between purchasing their Eligible Loss Cryptocurrency and the Petition Date, or engaged in other transactions that returned value to them, any earnings on account of those transaction will reduce such claimant's Crypto Loss Amount.[22]  The inclusion of transactions resulting in value earned by claimants appropriately allows recoveries on account of Crypto Loss Claims while mitigating those recoveries to the actual loss suffered by each claimant so that one claimant does not recover above the amount they actually lost to the detriment of another.

48.    Additionally, the definition of Eligible Loss Cryptocurrency in the CLC Procedures is tailored to allow claimants to claim losses for cryptocurrency for which claimants are unable to access on the Terra Ecosystem, while also preventing claimants from claiming losses on coins which were capable of being bridged to other platforms or which were acquired after claimants were on notice of the failure of the Terra Ecosystem.  This is an additional element of the CLC Procedures that serves to protect claimants' losses while allowing the Plan Administrator to appropriately mitigate claimants' alleged Crypto Loss Claims.

**C.    The Petition Date is the Correct Date for Measuring Crypto Loss Claims Against the Debtors.**

49.    The Plan Administrator's proposal to cut off claims as of the Petition Date, rather than having two separate cutoff dates for both the Petition Date and the TLL Petition Date, will

---

[22] For the avoidance of doubt, the Plan Administrator will not consider any losses on account of transactions using potential Eligible Loss Cryptocurrency that were completed prior to the Second De-Peg when calculating claimants' Crypto Loss Amounts.

also allow the Plan Administrator to more efficiently administer the Crypto Loss Claims without prejudicing claimants.  TFL and TLL's operations are closely intertwined, especially with respect to operations involving cryptocurrency.  TLL is a wholly-owned affiliate of TFL, and as part of their regular operations, TFL and TLL entered into "subscription agreements" with each other that permitted TFL to accept payments for certain tokens from third parties that otherwise would have been payable to TLL pursuant to token sale agreements and other agreements.  Additionally, for token sales, third parties paid TFL, not TLL, for certain token sales, and TFL was permitted to collect and use these funds.  In return, TLL was granted a "perpetual security" under the subscription agreements.[23]

50.     Due to the intertwined nature of the TFL and TLL operations and the nature of the claimants' Crypto Loss Claims, it is possible that some claimants will not know against which entity their Crypto Loss Claim is held.  Accordingly, the Petition Date is the correct cut off for claims.  Furthermore, claimants' Crypto Loss Amount will not be affected by the use of the earlier Petition Date.  All claimants will be able to assert Crypto Loss Claims on the basis of the Eligible Loss Cryptocurrency purchased prior to the Second De-Peg in May 2022.  Additionally, the Eligible Loss Cryptocurrency is presumed worthless as of the Petition Date due to the Second De-Peg and subsequent events leading to the chapter 11 filing—meaning it is also worthless five months later, on the TLL Petition Date.  By cutting off all claims as of the Petition Date, the Plan Administrator avoids the hefty administrative burden of factoring in different time frames into his calculations of Crypto Loss Amounts without impacting the potential loss suffered by each claimant.  Ultimately, the Petition Date is not only an appropriate cutoff for valuing Crypto Loss

---

[23]    For a more in-depth discussion of the Debtors' business operations, see the *First Day Declaration*.

Claims, but also provides for a more straightforward process for claimants and the Plan Administrator than if two petition dates were being used in the valuation process.

## II.    The Claims Submission Process and the CLC Form are Necessary Elements of the CLC Procedures.

### A.    The CLC Form is Appropriate and Necessary for Administration of Crypto Loss Claims.

51.    The Plan Administrator's primary goal in these procedures is to establish an efficient, fair, and clear process for claimants to recover on account of their Crypto Loss Claims. The CLC Form is necessary to achieve that goal because the Plan Administrator will expend the Wind Down Trust's limited and valuable resources on a lengthy, inefficient, and complicated process unless claimants are required to provide the requested information.  Given that the Crypto Loss Claims are based on cryptocurrency coins held by claimants, the data surrounding each claimant's potential loss is based on potentially hundreds or thousands of electronic transactions. The proposed CLC Form aids in accelerating the process of reviewing the large amount of data for each claimant by requiring that the information be submitted in a form that is more easily reviewed and from which losses can be more readily calculated.  The CLC Form therefore seeks to obtain key information regarding the details of the coins purchased by claimants and the transactions or transfers such claimants completed with the Eligible Loss Cryptocurrency they held prior to the Petition Date.

52.    Additionally, the information requested in the CLC Form is limited to the information needed to calculate claimants' Crypto Loss Amounts.  It is designed to collect the most complete information possible, in a manner that minimizes the burden on each claimant and protects each claimant's confidential information to the maximum extent possible.  The CLC Form is also designed to collect information that no entity, including the Debtors, has readily available except for the claimant, such as coins being held across wallets and across exchanges.

Furthermore, because the Debtors possess no records of the claimants' transaction history, the CLC Form is designed to ensure that claimants provide the Plan Administrator with sufficient information to verify transactions. The collection of this data will also assist the Plan Administrator in limiting the potential for fraudulent submissions, which are common in the cryptocurrency sector, particularly in this case where the Debtors must rely solely on the evidence submitted by the claimants themselves to verify their Crypto Loss Claim.

**B.      The Online Portal is Tailored to Account for the Cryptocurrency Sector and is Vital to the Efficiency of the Crypto Loss Claims Process.**

53.      The Plan Administrator requests the Bankruptcy Court to require the submission of proofs of claim via the Online Portal to ensure an accessible, simple, and efficient process. Courts in this district routinely allow electronic submission of proofs of claim. *See, e.g.*, *In re Tupperware Brand Corp.*, No. 24-12156 (BLS) (Bankr. D. Del. Nov. 12, 2024); *In re SunPower*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 23, 2024); *In re Vyaire Med. Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 9, 2024); *In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. May 20, 2024); *In re Sientra, Inc.*, No. 24-10245 (JTD) (Bankr. D. Del. Mar. 26, 2024); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Nov. 15, 2023). Additionally, a similar electronic interface has been utilized in other large bankruptcy cases. *See, e.g.*, *In re Blockfi Inc.*, No. 22-19361 (MBK) (Bankr. D. N.J. Jan. 30, 2023); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. May 19, 2023); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 3, 2022); *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Nov. 11, 2022).

54.      The use of the Online Portal will help to streamline the process for claimants, and provides a less burdensome, costly, and time-consuming process for the Plan Administrator. Moreover, the Plan Administrator's proposed procedures provide clear instructions that will help

avoid confusion or uncertainty among creditors that might lead them to file unnecessary protective proofs of claim or multiple proofs of claim that would cause expense and delay in the claims process for all parties.

55.     Furthermore, the technical nature of the transactions underlying Crypto Loss Claims, and the data the Plan Administrator will need to determine claimants' Crypto Loss Amounts, is impracticable absent an online claims submission process.  All the evidence and supporting documentation required for the Plan Administrator to verify claims is in the form of electronic data, making the Online Portal the most efficient and well-suited process for claimants to submit the required documentation.  The proposed use of the Online Portal is designed to facilitate claimants' submissions of evidence in a format that will expedite the Plan Administrator's review of Crypto Loss Claims.  Additionally, the claims distribution process requires that claimants submit electronic information.  For example, to receive distributions on account of their Eligible Crypto Loss Claim, claimants must provide KYC information, which requires that the claimants provide specific information electronically.

56.     Finally, given the nature of Crypto Loss Claims, it is reasonable to presume that claimants will be able to access the Online Portal.  First, all of the transactions entered into by claimants giving rise to their ability to recover for Crypto Loss Claims occurred online on either the Terra Ecosystem or other cryptocurrency platforms and exchanges.  Second, all of the claimants' interactions with the Debtors occurred online, and the Online Portal allows the Plan Administrator to continue to communicate with claimants in the same format.  Third, in preparation for the claims reconciliation process, the Plan Administrator has spent time and resources ensuring the Online Portal is easily accessible and understandable for claimants, and does not believe that any alternative method would be conducive to the submission and assessment

of Crypto Loss Claims.  If any issues with the Online Portal should arise, the Plan Administrator

has developed protective measures with Kroll to assist claimants with any difficulties that may

arise when submitting CLC Forms via the Online Portal.

### III.   The Proposed Notice Procedures Are Reasonable and Appropriate.

57.     Bankruptcy Rule 2002(a)(7) requires that the Plan Administrator provide claimants

at least 21 days' notice by mail of the CLC Bar Date pursuant to Bankruptcy Rule 3003(c).

Additionally, Bankruptcy Rule 2002(l) provides that the Bankruptcy Court may order notice by

publication if it finds that notice by mail is impractical or it is desirable to supplement other notice.

Bankruptcy Rule 9008 also provides that the Bankruptcy Court shall determine the form and

manner of publication notice, the newspapers used, and the frequency of publication.

58.     In conjunction with setting deadlines to file proofs of claim, the Plan Administrator

must give appropriate notice to interested parties.  The Plan Administrator proposes to mail the

CLC Bar Date Notice to the Debtors' known creditors and, thus, must rely on publication to give

notice to its unknown creditors.  This procedure is consistent with applicable case law and practice

in this district.  *See Chemetron*, 72 F.3d at 346.  To determine the adequacy of notice given to a

creditor, bankruptcy law distinguishes between "known" and "unknown" creditors.  *See id*.  As

the Third Circuit explained in *Chemetron*, "[k]nown creditors must be provided with actual written

notice of a debtor's bankruptcy filing and bar claims date.  For unknown creditors, notification by

publication will generally suffice."  *Id.* (citations omitted).  A "known" creditor is one whose

identity is either known or is "reasonably ascertainable by the debtor."  *Id*. (citing *Tulsa Prof'l*

*Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)).  An "unknown" creditor is one whose

"interests are either conjectural or future or, although they could be discovered upon investigation,

do not in due course of business come to knowledge [of the debtor]."  *Id*. (citing *Mullane v. Central*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)).

59.     Where a creditor is known to the debtor, due process requires that the debtor must take reasonable steps, such as direct mailing, to provide actual notice of the deadline for filing proofs of claim.  A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts."  *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983).  But this does not require the debtor to engage in "impracticable and extended searches . . .  in the name of due process."  *See Mullane*, 339 U.S. at 317–18.  Rather, the required search is limited to a debtor's "books and records."  *See, e.g.*, *Chemetron*, 72 F.3d at 347.

60.     The Plan Administrator submits that the relief requested herein provides clear notice of the CLC Bar Date as set forth herein in satisfaction of the requirements of the Bankruptcy Rules and consistent with the underlying policies of the Bankruptcy Code.  Specifically, to the extent the CLC Bar Date is established as proposed, the Plan Administrator intends to cause the CLC Bar Date Notice to be emailed, or mailed via first class mail if email is not possible, no later than three (3) business days after the entry of the CLC Bar Date Order.  Additionally, the Plan Administrator will cause the Publication Notice to be published by a date that is at least sixty (60) days before the CLC Bar Date.  Thus, by establishing the CLC Bar Date pursuant to the provisions hereof, all claimants will have approximately sixty (60) days' actual or constructive notice of the CLC Bar Date for filing their proof of claim, thereby satisfying Bankruptcy Rule 2002(a)(7).

61.     The procedures and notice periods described herein afford creditors ample opportunity to file a CLC Form while, at the same time, ensuring that the Plan Administrator can achieve certainty with respect to the Debtors' liabilities in a timely manner.  In fact, the entry of orders granting noticing relief similar to that requested herein is routinely approved in large chapter 11 cases in this district.  *See*, *e.g.*, *In re SunPower*, No. 24-11659 (CTG) (Bankr. D. Del. Aug 23, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. July 9, 2024); *In re Express,*

*Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. May 20, 2024); *In re Sientra, Inc.*, No. 24-10245 (JTD) (Bankr. D. Del. Mar. 26, 2024); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Nov. 15, 2023); *In re Yellow Corp.*, No. 23-11069 (CTG) (Bankr. D. Del. Sept. 13, 2023).

62.    Accordingly, the Plan Administrator submits that the CLC Bar Date and the form and manner of providing notice thereof are appropriate in light of the circumstances, inure to the benefit of all parties in interest, and should be approved.  The Plan Administrator shared an advance draft of the Motion and its exhibits with the SEC, and incorporated certain feedback from the SEC prior to filing with the Court.  For the avoidance of doubt, the Plan Administrator understands that the Motion and its exhibits remain subject to review by the SEC, and the Plan Administrator will continue to consult with the SEC on any additional comments they have regarding the Motion and its exhibits.

## Notice

63.    The Plan Administrator will provide notice of this motion to:  (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the SEC; (f) any claimant who filed a Preliminary Crypto Loss Proof of Claim; and (g) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The Plan Administrator respectfully submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Plan Administrator requests entry of the CLC Bar Date Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated:  January 31, 2025
Wilmington, Delaware

/s/ Zachary I. Shapiro
**RICHARDS, LAYTON & FINGER, P.A.**
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Email:      shapiro@rlf.com

*Co-Counsel for the Plan Administrator*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Elizabeth Helen Jones (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
                christopher.greco@kirkland.com
                elizabeth.jones@kirkland.com

-and-

Michael F. Williams, P.C. (*pro hac vice* pending)
1301 Pennsylvania Ave., NW
Washington, DC 20004
Telephone:      (202) 389-5000
Facsimile:      (202) 389-5200
Email:          michael.williams@kirkland.com

-and-

Christopher S. Koenig (*pro hac vice* pending)
Casey McGushin (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email           chris.koenig@kirkland.com
                casey.mcgushin@kirkland.com

*Co-Counsel for the Plan Administrator*

**<u>Annex A</u>**

