IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | x | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TERRAFORM LABS PTE. LTD., *et al.*,[1] | : | Case No. 24-10070 (BLS) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Objection Deadline: Feb. 18, 2025 at 4:00 PM ET**[2] |
| | : | **Hearing Date: Mar. 5, 2025 at 11:30 AM ET** |
| | : | |
| | : | **Re: D.I. 838** |
| | x | |

---

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE THIRD INTERIM AND FINAL FEE APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF GENESIS CREDIT PARTNERS LLC, AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**[D.I. 838]**

Andrew R. Vara, United States Trustee for Region 3 ("U.S. Trustee"), by and through his counsel, hereby files this objection ("Objection") to the *Third Interim and Final Application for Compensation and Reimbursement of Expenses of Genesis Credit Partners LLC* ("GCP" or "Genesis"), *as Financial Advisor to the Official Committee of Unsecured Creditors for (1) the Interim Period From July 1, 2024 Through October 1, 2024; (II) the Case Period From March 29, 2024 Through October 1, 2024; and (III) the Post-Effective Date Period From October 2, 2024 Through November 18, 2024)*[3] [D.I. 838] (the "Final Fee Application"). In support of his Objection, the U.S. Trustee states:

---

[1] The Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited. The Debtors' principal offices are located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.

[2] The objection deadline was extended by agreement of the parties.

[3] Given that the Committee (defined below) was dissolved as of the Effective Date [Plan § 12.3 (Ex. A to Confirmation Order) -- D.I. 734], the office of the U.S. Trustee does not expect that the Final Fee

## PRELIMINARY STATEMENT

1. The U.S. Trustee objects to the Final Fee Application because GCP's time entries do not reflect reasonable compensation for actual, necessary services rendered. During these cases, GCP billed an unrealistic number of hours in light of its billings in other bankruptcy cases. Additionally, GCP's time entries contain specific deficiencies: (i) duplicate billing with other professionals, (ii) overstaffing, and (iii) excessive meal expenses and unjustified technology expenses.

## JURISDICTION AND STANDING

2. This Court has jurisdiction to hear the Final Fee Application and this Objection under 28 U.S.C. § 1134 and applicable orders of the United States District Court for the District of Delaware issued under §§ 157(a) and 157(b)(2)(A).

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to the Final Fee Application. *See United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

---

Application contains a request for compensation or reimbursement for the "Post-Effective Date Period" that is unrelated to the preparation of GCP's fee application. If it does, the U.S. Trustee objects to same.

5.      The U.S. Trustee is specifically authorized to review applications for compensation and reimbursement pursuant to 28 U.S.C. § 586(a)(3).

## FACTUAL BACKGROUND

6.      Since September 19, 2023, GCP has been employed by Unsecured Creditor Committees in at least 12 bankruptcy cases, 7 of which were filed in the District of Delaware. An employment and compensation history for GCP in those 12 cases, excluding the monthly fee application detail for the above-captioned cases, is attached as **Exhibit A**[4] and incorporated by reference:

| **Debtor** | **Lead Case Number** | **District** |
|---|---|---|
| Aerotech Miami Inc. | 23-17503 (RAM) | S.D. Fla. |
| Unconditional Love. Inc. | 23-11759 (MFW) | Del. |
| Cano Health Inc. | 24-10164 (KBO) | Del. |
| Eye Care Leaders Portfolio Holdings, LLC | 24-80001 (MVL) | N.D. Tex. |
| HDC Holdings II, LLC | 24-12307 (TMH) | Del. |
| Jordan Health Products I, Inc. | 24-12271 (TMH) | Del. |
| LL Flooring Holdings, Inc. | 24-11680 (BLS) | Del. |
| Mr. Tortilla, Inc. | 24-bk-10228 (VK) | C.D. Cal. |
| Number Holdings, Inc. | 24-10709 (JKS) | Del. |
| Red Lobster Management LLC | 24-bk-02486 (GER) | M.D. Fla. |
| Rhodium Encore LLC | 24-90448 (ARP) | S.D. Tex. |
| Terraform Labs Pte., Ltd. | 24-10070 (BLS) | Del. |

7.      On March 28, 2024, the Official Committee of Unsecured Creditors (the "Committee") filed its application to employ GCP as its financial advisor ("Employment Application") [D.I. 192] in the bankruptcy case of Terraform Labs Pte., Ltd. (together with Terraform Labs Limited, the "Debtors").

---

[4] For concluded matters listed on Exhibit A, only GCP's final fee application is listed; the monthly/interim fee application detail is omitted.

8.  On April 19, 2024, the Bankruptcy Court entered an order approving the Employment Application, effective as of March 29, 2024 [D.I. 239]. That same day, the Court also entered an order approving Committee's application to employ Stout Risius Ross, LLC ("Stout") as cryptocurrency tracing consultant [D.I. 241].

9.  On May 15, 2024, Genesis filed its first monthly application for allowance of compensation in the amount of $30,804.00 (80% of $38,505.00) and reimbursement in the amount of $43.00 for the period from March 29, 2024 through March 31, 2024 [D.I. 314].

10. On June 18, 2024, Genesis filed a certificate of no objection to its first monthly fee application [D.I. 390]. Under the interim compensation procedures order entered in the cases [D.I. 99], the Debtors were authorized to pay Genesis 80% of the fees ($30,804.00) and 100% of the expenses ($43.00) requested in the application upon the filing of the certification.

11. On May 15, 2024, Genesis filed its first interim fee application for allowance of compensation in the amount of $38,505.00 and reimbursement in the amount of $43.00 for the period from March 29, 2024 through March 31, 2024 [D.I. 315].

12. On August 12, 2024, this Court entered an order approving Genesis' first interim fee application [D.I. 582]. Under the interim compensation procedures order entered in the cases [D.I. 99], the Debtors were authorized to pay Genesis $5,201.00 (20% of the requested compensation allowance ($7,701.00) minus a voluntary reduction per agreement with the office of the U.S. Trustee ($2,500.00)) upon entry of the order.

13. On June 28, 2024, Genesis filed its second monthly application for allowance of compensation in the amount of $544,544.00 (80% of $680,000.00) and reimbursement in the amount of $2,815.55 for the period from April 1, 2024 through April 30, 2024 [D.I. 415].

14. On July 22, 2024, Genesis filed a certificate of no objection to its second monthly fee application [D.I. 493]. Under the interim compensation procedures order entered in the cases [D.I. 99], the Debtors were authorized to pay Genesis 80% of the fees ($544,544.00) and 100% of the expenses ($2,815.55) requested in the application upon the filing of the certification.

15. On August 13, 2024, Genesis filed its third monthly combined application for allowance of compensation in the amount of $987,092.00 (80% of $1,233,865.00) and reimbursement in the amount of $5,652.21 for the period from May 1, 2024 through June 30, 2024 [D.I. 590].

16. On September 4, 2024, Genesis filed a certificate of no objection to its third monthly fee application [D.I. 662]. Under the interim compensation procedures order entered in the cases [D.I. 99], the Debtors were authorized to pay Genesis 80% of the fees ($987,092.00) and 100% of the expenses ($5,652.21) requested in the application upon the filing of the certification.

17. On August 13, 2024, Genesis filed its second interim fee application for allowance of compensation in the amount of $1,914,545.00 and reimbursement in the amount of $7,963.11 for the period from April 1, 2024 through June 30, 2024 [D.I. 591].

18. On October 30, 2024, this Court entered an order approving Genesis' second interim fee application [D.I. 815]. Under the interim compensation procedures order entered in the cases [D.I. 99], the Debtors were authorized to pay Genesis $272,909.00 (20% of the requested compensation allowance ($382,909.00) minus a voluntary reduction per agreements with the fee examiner and the office of the U.S. Trustee ($110,000.00)) upon entry of the order.

19. On October 11, 2024, Genesis filed its fourth combined monthly application for allowance of compensation in the amount of $1,164,000.00 (80% of $1,455,200.00) and

reimbursement in the amount of $6,473.33 for the period from July 1, 2024 through August 31, 2024 [D.I. 775].

20.     On November 4, 2024, Genesis filed a certificate of no objection to its fourth combined monthly fee application [D.I. 823]. Under the interim compensation procedures order entered in the cases [D.I. 99], the Debtors were authorized to pay Genesis 80% of the fees ($1,164,160.00) and 100% of the expenses ($6,473.33) requested in the application upon the filing of the certification.

21.     On October 24, 2024, Genesis filed its fifth combined monthly application for allowance of compensation in the amount of $541,180.00 (80% of $676,475.00) and reimbursement in the amount of $10,309.96 for the period from September 1, 2024 through October 31, 2024 [D.I. 796].

22.     On November 15, 2024, Genesis filed a certificate of no objection to its fifth combined monthly fee application [D.I. 835]. Under the interim compensation procedures order entered in the cases [D.I. 99], the Debtors were authorized to pay Genesis 80% of the fees ($541,180.00) and 100% of the expenses ($10,309.96) requested in the application upon the filing of the certification.

23.     On November 19, 2024, GCP filed its application (i) for allowance of interim compensation in the amount of $2,131,675.00 ($2,137,525.00 minus a 50% discount on travel time ($5,850.00)) and reimbursement in the amount of $16,372.51 for the period from July 1, 2024 through October 1, 2024 ("Third Interim Billing Period") and (ii) for allowance of final compensation in the amount of $4,017,225.00 and reimbursement in the amount of $24,378.62 (the "Final Fee Application") [D.I. 838].

24. By signing the Final Fee Application submitted to the Court, Mr. Edward Kim of GCP certified that the firm's statements in the Final Fee Application, including those regarding hours worked by GCP timekeepers, were factually supported by evidence, to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. *See* Fed. R. Bankr. P. 9011(b)(3).

25. Many significant case events occurred during the Third Interim Billing Period:

| Date | Docket Entry | Event |
|---|---|---|
| June 30, 2024 | 416 | Initial Plan filed |
| July 3, 2024 | 423 | Disclosure Statement for Initial Plan filed |
| July 9, 2024 | 435 | Motion to Approve Settlement with SEC |
| July 17, 2024 | 479 | Order Implementing SEC Consent Judgment entered |
| July 17, 2024 | 480 | Solicitation Procedures Motion filed |
| August 7, 2024 | 563 | Disclosure Statement Hearing |
| September 19, 2024 | 725 | Confirmation Hearing |

26. At the beginning of the Third Interim Billing Period, the Debtors filed a plan and were negotiating a settlement that would bring funds into the estates. As such, GCP was on notice that a plan administrator, who had not yet been appointed, would be pursuing potential causes of action and that there was no need for GCP to do that investigation.

27. During the Third Interim Billing Period, GCP generally held at least one group meeting each workday that lasted about an hour and for which 5 to 7 professionals billed their time.

28. Despite Stout being employed as a cryptocurrency tracing consultant for the Committee and GCP's lack of expertise in cryptocurrency tracing, GCP charged at least 100 hours to tracing cryptocurrency.

29. During the Third Interim Billing Period, GCP charged excessive hours for background, administrative or clerical work like (i) claims reconciliation, (ii) preparing Committee meeting presentations for its 3-person committee, and (iii) reviewing court filings.

30. During the Third Interim Billing Period, GCP charged the estates for 42 meals. Of those, Mr. Kim charged 11 meals in July, 14 meals in August and 17 meals in September, 9 of which were charged after the Debtors' plan was confirmed.

31. On August 7, 2024, the Court held a hearing to approve Debtor's Disclosure Statement. GCP charged for 6 different professionals attending the hearing. None of the professionals of GCP testified at the hearing.

32. On September 19, 2024, the Court held a hearing on confirmation of Debtor's plan. GCP charged for 7 different professionals attending the hearing. None of GCP's professionals testified at the hearing. During the ten-day period between September 10 and September 20, 2024, GCP charged approximately $6,500 in travel expenses.

33. In late December 2024, the office of the U.S. Trustee noted that the time billed in the Final Fee Application was unusually high and began an investigation to determine the amount of time GCP billed in other cases in Delaware and nationwide.

34. When including the time billed by GCP in six other chapter 11 bankruptcy cases,[5] GCP professionals had over 27 days in which they billed 19 or more hours per day in May through September 2024. For example, over a three-day period, Mr. Artidiello billed 18.8 hours on June

---

[5] GCP's billing records were reviewed in the following cases: Cano Health Inc. (Lead Case No. 24-10164) (Del.); Eye Care Leaders Portfolio Holdings, LLC (Lead Case No. 24-80001) (N.D. Tex.); LL Flooring Holdings, Inc. (Lead Case No. 24-11680) (Del.); Number Holdings, Inc. (Lead Case No. 24-10709) (Del.); Red Lobster Management LLC (Lead Case No. 24-bk-02486) (M.D. Fla.); the above-captioned cases; and Unconditional Love. Inc. (Lead Case No. 23-11759) (Del.). The billing records of GCP still need to be reviewed in the bankruptcy cases of Aerotech Miami Inc. (Case No. 23-17503) (S.D. Fla.); HDC Holdings II, LLC (Case No. 24-12307 (Del.); Jordan Health Products I, Inc., Case No. 24-12271 (Del.); Mr. Tortilla, Inc. (Case No. 24-bk-10228) (C.D. Cal.); and Rhodium Encore LLC, Case No. 24-90448 (S.D. Tex.).

11, 23.2 hours on June 12 and 18.2 hours on June 13. As indicated by the chart below, GCP professionals regularly billed over 400 hours a month:

| Timekeeper | May 2024 | June 2024 | July 2024 | August 2024 | September 2024 |
|---|---|---|---|---|---|
| E Kim | 489.4 | 443.5 | 437.8 | 347.5 | 358.7 |
| J Gonzalez | 331.2 | 163.1 | 146.0 | 122.9 | 187.9 |
| A Artidiello | 485.4 | 512.9 | 493.6 | 341.8 | 384.8 |
| I Radi | 502.1 | 506.8 | 498.9 | 348.0 | 365.7 |
| V Sewaliah | 440.9 | 447.4 | 425.2 | 300.2 | 268.0 |
| E Mendez | 246.0 | 282.4 | 334.6 | 197.5 | 216.5 |

## **LEGAL AUTHORITY**

### A. **Overbilling**

35. Section 330(a)(1) of the Bankruptcy Code states that, after notice and a hearing, the court may award to a professional person employed under § 327 or § 1103 "reasonable compensation for actual, necessary services rendered" by such a professional. 11 U.S.C. § 330(a)(1).

36. Code section 330(a)(3) provides:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

37. "The [bankruptcy] court may award 'reasonable compensation for actual, necessary services rendered' by . . . professionals 'based on (i) nature of the services, (ii) extent of the services, (iii) value of the services, (iv) time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases.'" *In re Channel Master Holdings, Inc.*, 309 B.R. 855, 861 (Bankr. D. Del. 2004) (quoting *In re Busy Beaver Bldg Centers, Inc.*, 19 F.3d 833, 840 (3d Cir. 1994) (bracketed word added)); *see also In re Fleming Cos.*, 304 B.R. 85, 89 (Bankr. D. Del. 2003) (quoting same). The bankruptcy court, however, "'should not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case.'" *In re Fleming Cos.*, 304 B.R. at 89 (quoting 11 U.S.C. § 330(a)(4)(A)).

38. Section 331 authorizes the bankruptcy court, in its discretion, to award interim compensation to debtor or committee professionals. *See In re Am. Int'l Airways, Inc.*, 47 B.R. 716, 722 (Bankr. E.D. Pa. 1985). However, any compensation received in the interim is subject to adjustment (including disgorgement) at any time during the pendency of the case. *See, e.g.*, *In re Taxman Clothing Co.*, 49 F.3d 310, 312, 314 (7th Cir. 1995); *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooton, Ltd. (In re Evangeline Ref. Co.)*, 890 F.2d 1312, 1321 (5th Cir. 1989).

39. The fee applicant has the burden of proving it has earned the fees it requests, and that the fees are reasonable. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3rd Cir. 1995).

40. Bankruptcy courts also have an independent duty to review fee applications. *Busy Beaver*, 19 F.3d at 841. "[T]he bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *Id*. at 844; *see also In re GSC Group, Inc.*, 502 B.R. 673, 749 (Bankr. S.D.N.Y. 2013) ("Professionals who decline to consider that their fees and expenses will be paid from a *bankruptcy estate* and who refuse to exercise any billing discretion in that regard may drain the estate of wealth which by right should inure to the benefit of unsecured creditors.") (internal quotations and citations omitted)).  In practical terms, the Court reviews fee applications "much as a sophisticated non-bankruptcy client would review a legal bill." *Busy Beaver*, 19 F.3d at 848.

41. As explained by Judge Dorsey in the *In re SC SJ Holdings LLC* case:

> In employing the fee setting criteria of Section 330(a), the bankruptcy judge is accorded wide discretion. At least in part, the bankruptcy court's broad discretion is due to the fact that no matter how close the court comes to an objective determination of a reasonable fee, the fee determination is still, in the final analysis, a substantially subjective exercise. On its own initiative, the court may award compensation that is less than the amount of compensation that is requested.

*In re SC SJ Holdings. LLC*, No. 21-10549 (JTD), 2023 Bankr. LEXIS 1729, at *10-11 (Bankr. D. Del. July 11, 2023) (internal quotations and citations omitted)); *see also In re Channel Master Holdings, Inc.*, 309 B.R. 855, 864 (reducing financial advisor's fees by a flat $10,000 for spending excessive time on tasks that did not benefit the estate).  After taking into account proposed reductions of 15% of counsel's fees in *SC SJ Holdings*, Judge Dorsey exercised discretion to

reduce fees by an additional 10%. *Id.* at *26. The Court's ability to exercise discretion applies with equal force to the issues identified here.

42. "Accountants and attorneys are human beings, and not every moment of the working day is productive and billable." *In re Maruko Inc.*, 160 B.R. 633, 640 (Bankr. S.D. Cal. 1993). Applying that sentiment, the bankruptcy court in *In re GSC Group, Inc.*, 502 B.R. 673, 748 (Bankr. S.D.N.Y. 2013), reduced the financial advisor's fees by 20% due to their unreliable time billing, including that that they averaged 14 billable hours a day for one month. *Id*. at 748 n.284. The court specifically noted that it would have been well within its discretion to disallow the financial advisor firm's fee request in its entirety. *Id*. With other professionals, courts have noted that billing more than eight hours a day is not realistic, except in unusual circumstances. *See, e.g., In re New Boston Coke Corp.,* 299 B.R. 432, 448 (Bankr. E.D. Mich. 2003) ("While it is certainly possible that an attorney could bill ten-, nineteen- or twenty-hour days, it is unlikely that all of that billed time is compensable."); *In re Recycling Indus.*, 243 B.R. 396, 407 (Bankr. Colo. 2000) ((quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983) ("'Except in unusual circumstances it is not realistic for an attorney to bill in excess of six to seven hours per day.'")); *In re Napoleon*, 1999 Bankr. LEXIS 816, *7 (Bankr. D. N.J. 1999) (unpublished) (finding expert's time for legal research egregious where billings averaged almost eight hours a day over a 17-day period). Where the record reflects that the fee applicant systematically overbilled, denial of all compensation is appropriate. *See In re Evangeline Refining Co.*, 890 F.2d 1312, 1324-25 (5th Cir. 1989) (vacating the district court fee award and remanding to determine whether fees should disallowed in their entirety when the record reflected consistent and systematic overbilling, raising the possibility of fraud).

43. "The submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation. The prejudiced party is forced either to attempt independent corroboration of each submission, at substantial expense of time and money, or to accept the real possibility that . . . documents submitted by the opposing party are inaccurate." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009). Fabrication of declarations creates prejudice because of "significant costs that would be required to litigate against parties who exhibit little, if any, regard for the integrity of the judicial process." *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 2015 WL 12732433, at *30, 2015 U.S. Dist. LEXIS 189271 (C.D. Cal. Dec. 14, 2015) (unpublished). As fabrication is often difficult and costly to detect, the "wrongdoer has no right to simply abandon the false evidence and to promise to be honest going forward[; . . . s]uch a course would simply place the offending party back in the same position he was in, without the false declaration." *Id*. ((internal quotations and citations omitted)). In civil litigation cases, federal courts have found plaintiffs' fabricated evidence to be sufficient grounds to dismiss their complaint with prejudice. *See e.g.*, *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1122 (1st Cir. 1989) (affirming district court's dismissal with prejudice where the plaintiff attached a fabricated document to his complaint); *Plastech Holding Corp. v. WM GreenTech Auto. Corp.*, 257 F. Supp. 3d 867, 878-79 (E.D. Mich. 2017) (dismissing case with prejudice after the plaintiff attached a fabricated exhibit to its first and second amended complaint).

44. GCP has been employed in many bankruptcy cases in Delaware and throughout the country. When evaluating GCP's billing records during the May through September 2024 time period, GCP professionals had over 27 days in which they billed 19 or more hours. Charts demonstrating the scope of GCP's billing are attached as **Exhibit B** and incorporated by reference.

13

As there are at least four other cases in which the office of the U.S. Trustee has not evaluated GCP's fee applications, it is possible that GCP may have billed additional time during the aforementioned timeframe in those cases. Courts have skeptically viewed billed fees for more than 8 hours a day, but here GCP more than doubles those billing amounts routinely. GCP's time records are not credible, and the U.S. Trustee requests that this Court deny the Final Fee Application in its entirety with prejudice on that basis or, in the alternative, reduce GCP's fees in these cases by 50% due to the unreliable nature of the fee records.

### B.   Other Requested Reductions

45.   In the event the Final Fee Application is not denied in its entirety, any fees granted after accounting for incredible time entries should be further reduced for overstaffing, duplicate billing, and excessive expenses.

46.   Bankruptcy Rule 2014 has specific requirements for the content of the employment application. The Application must include the reasons for the selection of the professional, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the other parties in the case. *See* Fed. R. Bankr. P. 2014(a). Engagement of counsel is limited to that purpose for which the professional has been retained. *See In re ACT Mfg., Inc.*, 281 B.R. 468, 484 (Bankr. D. Mass. 2002); *see also In re Malden Mills Indus., Inc.,* 281 B.R. 493 (Bankr. D. Mass. 2002) ("Just as [general counsel] is admonished not to perform tasks within the scope of special counsel's services, special counsel are cautioned to ensure that they are not rendering services duplicative of those rendered by the general bankruptcy firm.").

47.   In these cases, GCP was employed as a financial advisor to the Committee and Stout was hired as a cryptocurrency consultant to the Committee. While GCP's described duties

were broad [D.I. 192, at 3-4], there is no mention of any work related to cryptocurrency. The omission of cryptocurrency from the scope of GCP's duties makes sense, since Stout was hired as the cryptocurrency consultant and it would be a wasteful duplication of effort if GCP was doing the same work with less expertise. Similarly, GCP knew that the Debtors' plan gave the yet-to-be-appointed plan administrator the power to investigate potential causes of action. As such, GCP had no reasonable basis for charging additional time to investigate causes of action.

48. Proper staffing of a case is a key component of having reasonable and necessary fees and expenses. When determining if a professional overstaffed a case, the Court "considers whether more than one attorney from the firm attended a meeting or court hearing." *In re 14605, Inc.*, 2007 WL 2745709 at *11 (Bankr. D. Del. Sept. 19, 2007) (Walrath, J.) (citing *In re Kennedy Mfg.*, 331 B.R. 744, 750 (Bankr. N.D. Ohio 2005) (overstaffing is presumed to exist when more than one attorney charges estate for court appearances, absent adequate explanation)). Overstaffing "necessarily contributes to duplication of effort" and is a basis to reduce fees and associated expenses. *See In re Keene Corp.*, 205 B.R. at 708-09.

49. Here, GCP's timekeepers overstaffed the hearings they attended. Each hearing concerned a limited set of issues which, at most, justified the attendance of one GCP professional because GCP is a committee financial advisor with a limited role in the cases. GCP did not exercise billing discretion; instead, it staffed a minimum of 6 timekeepers on hearings that did not require their services. GCP counsel was present at hearings as well. GCP's overstaffed attendance at these hearings was not a necessary expense or service to the estate. GCP's overstaffed hearings are equally objectionable as are GCP's hour-long, all-timekeeper meetings almost every day.

50. Expenses are reimbursable if they are actual and necessary. *See In re Fleming Cos., Inc.*, 304 B.R. 85, 99 (Bankr. D. Del. 2003). Bankruptcy is not intended to be a "feast" for


professionals. *Matter of Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995). Being retained as an estate professional "is not a license to eat lavish dinners at the expense of creditors. Professionals who decline to consider that their fees and expenses will be paid from a *bankruptcy estate* and who refuse to exercise any billing discretion in that regard may drain the estate of wealth which by right should inure to the benefit of unsecured creditors." *In re GSC Group, Inc.*, 502 B.R. 673, 749 (Bankr. S.D.N.Y. 2013) (internal quotations and citations omitted).

51. GCP seeks reimbursement for an excessive number of meals during the Third Interim Billing Period. Unless there is an emergency in the case that requires an estate professional to work more than normal hours, the estate should not be charged. In these cases, GCP was regularly charging its meals, with 42 meals in a three-month period.

52. Local Rule of Bankruptcy Procedure 2016-1, which applies to all professionals employed under, *inter alia*, section 1103 of the Code, provides that a fee application must state the rate for computer-assisted legal research charges (not to exceed the actual cost). LR 2016-1(e)(iii); *see also In re Ginji Corp.*, 117 B.R. 983, 995 (Bankr. D. Nev. 1990) ("Expenses which are compensable are those fronted by the attorney or law firm on behalf of a particular client. These expenses can only be charged to the bankruptcy estate at the cost to the attorney or law firm. The court will not allow law firms to use such items as a profit-making center. Examples of such expenses are: computer research, long distance telephone calls, fax machine charges, postage, federal express, photocopying charges, secretarial overtime.").

53. Here, GCP has billed the estate for an unsubstantiated $7,858 in "Information Technology" expense(s). It is GCP's burden to establish that the Information Technology expense(s) was/were an actual and necessary expense; however, based on the information provided, it is impossible to determine whether such expense(s) was/were actual and necessary.

Moreover, it is incumbent on Genesis to establish that such expense(s) are billed "at cost" and that GCP is not profiting from same.

## RESERVATION OF RIGHTS

54. The U.S. Trustee reserves all discovery rights in connection with the Final Fee Application and, as well, reserves the right to amend and/or supplement this Objection.

## CONCLUSION

**WHEREFORE** the U.S. Trustee requests that this Court issue an order denying the Final Fee Application and/or granting such other relief as this Court deems appropriate, fair and just.

Dated: February 18, 2025
     Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**FOR REGIONS 3 & 9**

By: */s/ Jane M. Leamy*
Linda Richenderfer (#4138)
Jane M. Leamy (#4113)
Megan Seliber
Trial Attorneys
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, Delaware 19801
(302) 573-6491
linda.richenderfer@usdoj.gov
jane.m.leamy@usdoj.gov
megan.seliber@usdoj.gov