IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| TERRAFORM LABS PTE LTD., *et al.*, | : | Case Number: 24-10070 (BLS) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |
| | : | Hearing: February 26, 2025 at 11:00 A.M. (ET) |
| | : | |
| | : | Re: Docket No. 904 |

**OBJECTION OF THE FOREIGN REPRESENTATIVES OF THREE ARROWS CAPITAL LTD. (IN LIQUIDATION) TO THE MOTION OF THE PLAN ADMINISTRATOR SEEKING ENTRY OF AN ORDER (I) SETTING THE BAR DATE FOR FILING PROOFS OF CLAIM ON ACCOUNT OF CRYPTO LOSS CLAIMS, (II) APPROVING THE FORM AND MANNER FOR FILING PROOFS OF CLAIM, (III) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (IV) APPROVING RELATED PROCEDURES [ECF NO. 904]**

Russell Crumpler and Christopher Farmer, in their capacities as the duly appointed foreign representatives ("**Foreign Representatives**") of Three Arrows Capital, Ltd. (in Liquidation) ("**3AC**"), by and through their undersigned counsel, file this objection (the "**Objection**") to the *Motion of the Plan Administrator Seeking Entry of an Order (I) Setting the Bar Date for Filing Proofs of Claim on Account of Crypto Loss Claims, (II) Approving the Form and Manner for Filling Proofs of Claim, (III) Approving Form and Manner of Notice Thereof, and (IV) Approving Related Procedures* (the "**CLC Motion**") [ECF No. 904], and, in support of their Objection, state:

**PRELIMINARY STATEMENT**

1. The CLC Motion filed by the Plan Administrator,[2] billed as a motion to establish "procedures" for the filing of Crypto Loss Claims in the above-captioned cases, is an attempt by

---

[1] The Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd and Terraform Labs Limited. The Debtors' principal offices are located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881.
[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the CLC Motion.

the Plan Administrator to substantively limit what constitutes a "Crypto Loss Claim" (as defined under the confirmed Plan) and the recovery to which holders of Crypto Loss Claims are entitled. Despite the definition of Crypto Loss Claim under the Plan – broadly defined as **any claim** against the Debtors relating to the purchase of Cryptocurrency – the CLC motion seeks to limit the recovery to Crypto Loss creditors to "Eligible Loss Cryptocurrency," based off an arbitrary set of factors and conditions set forth by the Plan Administrator.

2.     The Plan Administrator has no authority under the Plan to request these substantive modifications.  While the Plan and Confirmation Order permits – and indeed anticipates – the Plan Administrator filing a motion setting forth "procedures" and "deadlines" for the submission of Crypto Loss Claims, there is nothing in the applicable Plan documents that permit the Plan Administrator to seek a *de facto* modification of what constitutes a Crypto Loss Claim under the confirmed Plan.

3.     The Foreign Representatives have no objection to the CLC Motion to the extent it seeks to provide appropriate deadlines and evidentiary procedures for the submission of Crypto Loss Claims.  Such procedures were anticipated by the Plan and are appropriate under the circumstances.  But the Plan Administrator simply has no authority to substantively modify the Plan and its treatment of "Crypto Loss Claims" absent a modified plan, re-solicitation and re-voting.  *See* 11 U.S.C. §1127(b).

**BACKGROUND**

4.     On January 21, 2024, and July 1, 2024, respectively, the above-captioned cases were commenced by the filing of voluntary petitions in this Court.

5.     On September 17, 2024, Debtors filed their *Second Amended Chapter 11 Plan of Liquidation* ("**Amended Plan**") [ECF No. 717].

#517049912_v1

6. In the Amended Plan, Crypto Loss Claims were defined as:

**any Claim** asserted against the Debtors **arising from (a) the purchase**, sale, or rescission of the purchase or sale **of Cryptocurrency, including (i) Terra Crypto**, (ii) any wrapped or bridged version on any blockchain of any Terra Crypto, (iii) any staked or bonded Terra Crypto on any blockchain, (iv) any Terra Crypto on any centralized or decentralized liquidity, lending, or borrowing application or protocol on any blockchain, (v) any receipt or derivative of any Terra Crypto on any blockchain, (vi) any derivatives trading or perpetual swaps of Terra Crypto, or any other Cryptocurrency that derives a value from Terra Crypto, and (vii) any other Cryptocurrency that was transacted or made available on the TerraLunaClassic and TerraLuna blockchains, and (b) any reimbursement or contribution claims allowed under section 502 of the Bankruptcy Code on account of such claims.

Amended Plan ¶ 1.38 (emphasis added).

7. Holders of Crypto Loss Claims were assigned the designation of "Class 5" and were proposed to be treated as follows:

Each holder of an Allowed Crypto Loss Claim will receive its share of the Crypto Loss Claim Pool according to the Crypto Loss Claim Procedures. Except as provided for herein or in any order of the Bankruptcy Court, holders of Crypto Loss Claims must file and serve on the Wind Down Trust Proofs of Claim consistent with the procedures to be specified in the motion seeking to establish a Crypto Loss Claim Bar Date or be forever barred, estopped, and enjoined from asserting such Claims against the Wind Down Trust or their assets or properties.

Amended Plan ¶ 4.5.

8. Holders of General Unsecured Claims were assigned the designation of "Class 4" and were proposed to be treated as follows:

Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, each holder of an Allowed General Unsecured Claim will receive its Pro Rata share of the GUC Pool up to the full amount of such Allowed General Unsecured Claim.

Amended Plan ¶ 4.4.

9. The GUC Pool refers to:

The Cash pool established pursuant to this Plan for distribution to holders of Allowed General Unsecured Claims, which shall be funded, (i) on the Effective Date, with Effective Date Available Cash and, (ii) after the Effective Date, with (a) Post-Effective Date Cash, (b) any Surplus Reserved Cash, and (c) any Surplus

3

> Senior Claim Pool cash, in each case in accordance with the Waterfall. Upon the General Unsecured Claim Payment Completion, the funds in the GUC Pool shall be released to the Crypto Loss Claim Pool.

Amended Plan ¶ 1.70.

10. The Crypto Loss Claim Pool refers to any remaining funds in the GUC Pool upon the General Unsecured Claim Payment Completion, plus the SEC Settlement Fund. Amended Plan ¶ 1.40. The SEC Settlement Fund was formed

> pursuant to the terms of the SEC Settlement and the Final Judgment Against Defendants Terraform Labs Pte. Ltd. and Do Hyeong Kwon in the SEC Enforcement Action, filed at Docket No. 273, (a) as of the Effective Date, $7,000,000 in Cash transferred to the Wind Down Trust by Do Hyeong Kwon, plus such other funds, Cash, cash equivalents, Tokens, or other Assets, including any LFG Assets or Cash that Do Hyeong Kwon transfers to the Wind Down Trust, plus the LFG Amount, and (b) after the Effective Date, such other funds, Cash, cash equivalents, or other Assets, that Mr. Kwon transfers to the Wind Down Trust, comprising the balance outstanding of the $204,320,196 monetary judgment against Mr. Kwon. After the Effective Date, the SEC Settlement Fund shall be converted to Cash, to the extent applicable, and reserved for distribution solely to harmed investors holding Allowed Crypto Loss Claims.

Amended Plan ¶ 1.107.

11. Thus, the classification of a claim as a Class 4 General Unsecured Claim versus a Class 5 Crypto Loss Claim is a material distinction as the claims will be paid, *pro rata*, from separate pools of funds.

12. On August 9, 2024, the Foreign Representatives filed their timely Preliminary Crypto Loss Proof of Claim and Unsecured Proof of Claim. While the Foreign Representatives investigation is ongoing, it anticipates asserting a Crypto Loss Claim of not less than $1,322,303,330.08, which included the direct loss 3AC suffered vis-à-vis the amount it had paid for LUNA (and subject to ongoing investigation, Terra), as well as direct and foreseeable consequential damages from the LUNA/UST collapse.

#517049912_v1

13. On September 20, 2024, following a vote of creditors—of which the Foreign Representatives participated, voting in favor of the Amended Plan—the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Chapter 11 Plan of Liquidation* [ECF No. 734] (the "**Confirmation Order**").

14. The creditors of the Debtors' estates voted in favor of the Amended Plan with the understanding that they would be permitted to assert Crypto Loss Claims as that term is defined in the Amended Plan. To wit, the Confirmation Order provides the Plan Administrator with the following limited rights to propose <u>procedures</u> in connection with the Crypto Loss Claims, but does not grant him the authority to seek a substantive modification of what constitutes an allowable Crypto Loss Claim:

> The Plan Administrator is authorized to propose and implement, upon approval by this Court, the procedures pursuant to which holders of Crypto Loss Claims may assert such Claims and the process and timeline for administering and determining the Allowed Claim for each holder of a Crypto Loss Claim (the "Crypto Loss Claim Procedures"). The Plan Administrator shall seek approval of the Crypto Loss Claim Bar Date and the Crypto Loss Claim Procedures in a motion filed with the Bankruptcy Court, which shall include: (A) notice of the Crypto Loss Claim Procedures and an opportunity to object thereto; (B) notice of the hearing to consider approval of the Crypto Loss Claim Procedures, if necessary; (C) the deadline to file Crypto Loss Claims; (D) instructions for submitting a Crypto Loss Claim; (E) a modified Proof of Claim form specifically as to Crypto Loss Claims; and (F) a notice for holders of Crypto Loss Claims to "opt in" to being a Contributing Claimant.

Confirmation Order ¶ 28.

15. On January 31, 2025, the Plan Administrator filed his CLC Motion [ECF No. 904]. Therein, rather than simply seeking establishment of a bar date and procedures for submission of Crypto Loss Claims, the Plan Administrator seeks to substantively limit the types of damages recoverable for a Crypto Loss Claim. As admitted by the Plan Administrator:

> Thus, <u>while the Plan included a broad definition of Crypto Loss Claims</u>, the CLC Procedures provide an in-depth process for determining the <u>validity and amount</u> of each Crypto Loss Claim. This process is designed to allow claimants to submit the necessary

5

#517049912_v1

evidence to demonstrate their losses, <u>while also providing sufficient limitations</u> such that most claimants do not need to individually prove reliance on the Debtors' representations in order to recover on account of their alleged Crypto Loss Claims.

CLC Motion ¶ 11 (emphasis added).

16.     The Plan Administrator then sets forth the conditions that must be met for a Crypto Loss Claim to be "Eligible" for recovery, substantially deviating from the definition of Crypto Loss Claim under the Plan:

- Losses suffered must be as a result of purchases or investment made prior to May 13, 2022 at 6:15 p.m. (the "**Second De-Peg**") (CLC Motion ¶ 12);

- The purchases and investment must be either cryptocurrency created by the Debtors or cryptocurrency held on the Terra Ecosystem (*Id.*);

- claimants can only recover on account of losses suffered as a result of the Second De-Peg and the Debtors' misrepresentations related thereto (CLC Motion ¶ 13);

- Crypto Loss Claims will not be eligible for recovery to the extent they relate to holdings in Terra 2.0 and Luna 2.0 following the Second De-Peg (CLC Motion ¶ 17); and

- Eligible Crypto Loss Claims will be determined by "the amount the claimant purchased or invested to acquire the Eligible Loss Cryptocurrency", less the value received for any of the claimant's purchased or invested Eligible Loss Cryptocurrency if the claimant sold the Eligible Loss Cryptocurrency prior to the Petition Date. Otherwise, an Eligible Crypto Loss Claim will be limited in amount to a "cost basis" determination, with the presumption that Terra cryptocurrency had zero value as of the Petition date.  (CLC Motion ¶ 29).

17.     As set forth above, nothing in the Plan or the definition of a Crypto Loss Claim – entitled to recovery under Class 5 for any cryptocurrency-related claim – provided such limitation on recovery.  There is absolutely nothing in the Amended Plan that limits Crypto Loss Claims to purchases before the Second De-Peg, or limits recovery to direct damages on account of only a specific type of cryptocurrency purchase. The substantive modifications as to what constitutes a Crypto Loss Claim is an impermissible modification of the Amended Plan.

**ARGUMENT**

18. A confirmed plan may be modified "only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified." 11 U.S.C. § 1127(b); *see also In re Innovative Clinical Sols., Ltd.*, 302 B.R. 136, 144 (Bankr. D. Del. 2003) ("Section 1127(b) provides the sole means for modifying a confirmed plan.").

19. While a plan may be modified post-confirmation, any modification is required to comply with section 1125 of the Bankruptcy Code. *See* 11 U.S.C. § 1126(c).

20. Re-solicitation of a plan under section 1125 is necessary where a modification "materially changes the treatment of creditors under the plan." *In re Rental Car Intermediate Holdings LLC*, No. 20-11247 (MFW), 2025 WL 25389, at *5 n.24 (Bankr. D. Del. Jan. 2, 2025) (noting that a modified plan must comply with sections 1122, 1123, and 1129 and that creditors must be permitted to change their votes); *In re Aleris Intern., Inc.*, No. 09-10478 (BLS), 2010 WL 3492664, at *32 (Bankr. D. Del. May 13, 2010) (further disclosure and re-solicitation of votes on a modified plan is required when the modification materially and adversely affects parties who previously voted on the plan).

21. Bankruptcy courts routinely refuse to modify confirmed plans through motion practice where the proposed modifications are material and adverse to a subset of creditors. *See In re SCH Corp.*, 597 Fed. App'x 143, 148 (3d Cir. 2015) (modification was impermissible because it materially and adversely altered substantive rights under the plan by extending the life of the plan for three years); *In re U.S. Brass Corp.*, 301 F.3d 296, 308 (5th Cir. 2002) (holding that proposed settlement requiring arbitration rather than litigation was impermissible under § 1127(b) because it would materially alter the bargain the insurers secured in exchange for their approval of the plan); *Joint E. & S. Dist. Asbestos Litig. (In re Johns-Manville Corp.)*, 982 F.2d 721, 748 (2d

#517049912_v1

Cir. 1992) (holding that a settlement resulted in a material and adverse alteration to a creditor's right to payment under the plan, and was impermissible under § 1127(b)); *In re El Comandante Mgmt. Co. LLC*, No. 07-1501, 2008 WL 11504100, at *4 (D.P.R. Mar. 31, 2008) (reversing order allowing payment of attorneys' fees from funds reserved under plan for creditors because it materially and adversely altered creditors' rights); *In re Vencor, Inc.*, 284 B.R. 79, 85 (Bankr. D. Del. 2002) (refusing to remove an injunction in a consummated plan because it was "material and would require that the entire Plan be revisited").

22. Here, the CLC Motion constitutes a plan modification because it materially and adversely affects the Foreign Representatives and other holders of Crypto Loss Claims. Specifically, the CLC Motion seeks to limit the scope of damages the Foreign Representatives may assert with respect to their Crypto Loss Claim to damages measured by the purchase price of the "Eligible Loss Cryptocurrency", as opposed to any claim arising from the purchase of cryptocurrency.

23. Such a request is improper. Pursuant to section 1126(c) of the Bankruptcy Code, the Plan Administrator's attempt to materially amend the Amended Plan should be denied, absent proper notice and disclosure to affected creditors, and re-solicitation of a further amended Plan.

## CONCLUSION

Based upon the foregoing, the Foreign Representatives respectfully request entry of an order sustaining their objection to the CLC Motion and granting such further and additional relief as may be just and proper, including requiring the Plan Administrator to comply with Sections 1125 to 1127 of the Bankruptcy Code to the extent it seeks to substantively modify recovery entitled to Crypto Loss Claims under the Amended Plan.

| | |
|---|---|
| Dated: February 19, 2025<br>Wilmington, Delaware | **PASHMAN STEIN WALDER HAYDEN, P.C.**<br><br>*/s/ John W. Weiss*<br>John W. Weiss (No. 4160)<br>Richard W. Riley (No. 4052)<br>824 North Market Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 592-6496<br>Facsimile: (732) 852-2482<br>Email: jweiss@pashmanstein.com<br>       rriley@pashmanstein.com<br><br>– and –<br><br>Richard A. Bixter (*pro hac vice* forthcoming)<br>**HOLLAND & KNIGHT LLP**<br>150 North Riverside Plaza, Suite 2700<br>Chicago, IL 60606<br>Telephone: (312) 422-9032<br>Facsimile:  (312) 578-6666<br>Email: richard.bixter@hklaw.com<br><br>*Counsel to the Foreign Representatives of Three Arrows Capital, Ltd. (in Liquidation)* |