## **EXHIBIT A**

**Revised CLC Bar Date Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TERRAFORM LABS PTE. LTD., *et al.*,[1] | ) Case No. 24-10070 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. 904** |
| | ) |

**ORDER (I) SETTING THE
BAR DATE FOR FILING PROOFS OF
CLAIM ON ACCOUNT OF CRYPTO LOSS
CLAIMS, (II) APPROVING THE FORM OF AND MANNER FOR
FILING PROOFS OF CLAIM, (III) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, AND (IV) APPROVING RELATED PROCEDURES**

Upon the motion (the "Motion")[2] of the Plan Administrator of the above-captioned debtors and debtors in possession (collectively, the "Post-Effective Date Debtors" and, prior to the Effective Date, the "Debtors") of the jointly–administered estates of Terraform Labs Pte. Ltd., *et al*. (the "Plan Administrator") for the entry of an order (this "CLC Bar Date Order"), (a) establishing April 30, 2025 at 11:59 p.m. (prevailing Eastern Time), as the deadline for each entity[3] (including without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file proofs of claim on account of Crypto Loss Claims relating to or against the Debtors (the "CLC Bar Date"), (b) approving the related procedures, substantially in the form attached to

---

1    The Post-Effective Date Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited.  The Post-Effective Date Debtors' principal offices are located at 10 Anson Road, #10-10 International Plaza, Singapore 079903.  The Plan Administrator of the Post-Effective Date Debtors is Todd R. Snyder.  The Plan Administrator's principal office is located at 1251 Avenue of the Americas, New York, New York 10020.

2    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

3    Except as otherwise defined herein and in the Motion, all terms specifically defined in the Bankruptcy Code shall have those meanings ascribed to them by the Bankruptcy Code.  In particular, as used herein the term "claim" has the meaning given to it in section 101(5) of the Bankruptcy Code, and the term "entity" has the meaning given to it in section 101(15) of the Bankruptcy Code.

the CLC Bar Date Order as **Exhibit 1** (the "CLC Procedures"), (c) approving the proposed proof of claim form for Eligible Crypto Loss Claims, substantially in the form attached to the CLC Bar Date Order as **Exhibit 2** (the "CLC Form"), (d) approving the proposed form and manner of notice of the CLC Bar Date, substantially in the form attached to the CLC Bar Date Order as **Exhibit 3** (the "CLC Bar Date Notice"), and (e) approving the proposed form and manner of publication notice of the CLC Bar Date, substantially in the form attached to the CLC Bar Date Order as **Exhibit 4** (the "CLC Publication Notice"), all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § § 157 and1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Plan Administrator's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if necessary; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

I.      **The CLC Bar Date.**

2.      Each entity that asserts a Crypto Loss Claim against the Debtors that arose before the Petition Date shall be required to submit an original proof of claim, in the form of the CLC Form attached hereto as **Exhibit 2**.[4]  Specifically, the following bar date ("CLC Bar Date") is established:

    a.      All proofs of claim on account of Crypto Loss Claims must be filed so that they are *actually received* **on or before April 30, 2025, at 11:59 p.m.** (prevailing Eastern Time) (the "CLC Bar Date") by the Plan Administrator's notice and claims agent, Kroll through the Online Portal.  The CLC Bar Date applies to Crypto Loss Claims against the Debtors that arose or are deemed to have arisen before the Petition Date.

3.      All proofs of claim must be submitted so as to be actually received through the Online Portal before the CLC Bar Date.  If proofs of claim are not received on or before the CLC Bar Date, the holders of the underlying claims will be barred from asserting such claims against the Debtors and receiving distributions from the Wind Down Trust on account of such claims in these chapter 11 cases.

II.     **The CLC Procedures.**

4.      The CLC Procedures attached hereto as **Exhibit 1** are approved.  Claimants will be required to prepare and submit the CLC Form consistent with the CLC Procedures.

    A.      **The Calculation Methodology.**

5.      The proposed method for calculating Crypto Loss Claims, as set forth in the CLC Procedures, is approved.  To calculate Crypto Loss Amount, the Plan Administrator will determine the amount of funds the claimant used to acquire Eligible Loss Cryptocurrency.  If foreign currency or other cryptocurrency tokens were used to acquire Eligible Loss Cryptocurrency, they will be converted into U.S. Dollars using exchange rates as of the Petition Date.  Because of the Second

---

[4]    The CLC Form may be accessed by visiting the Plan Administrator's Online Portal at claims.terra.money.

De-Peg and subsequent events leading up to the Petition Date, Eligible Loss Cryptocurrency is presumed to be worthless as of the Petition Date.

### B.    The Initial Determination and Dispute Process

6.      The proposed process for notifying claimants of the Plan Administrator's Initial Determination, as set forth in the CLC Procedures, is approved.  Within ninety (90) days following the CLC Bar Date, each claimant will receive either (a) a notification via email that the Plan Administrator has made an Initial Determination, or (b) a notification that the claimant's Initial Determination is not yet ready because the Plan Administrator is conducting an Individualized Review.  The Plan Administrator may, in his discretion, determine that any claim requires an Individualized Review.  Any claimants whose Crypto Loss Claim is subject to Individualized Review will receive an Initial Determination at the conclusion of their Individualized Review.

7.      The proposed timelines for disputing and resolving Crypto Loss Amounts is approved as set forth in the CLC Procedures.  Claimants will have thirty (30) days from the date the Plan Administrator sends the Initial Determination to notify the Plan Administrator that they dispute their Crypto Loss Amount.  If any claimant fails to notify the Plan Administrator within that thirty (30) day window, the Initial Determination of such claimant's Crypto Loss Amount will be deemed accepted.  Claimants who timely dispute their Crypto Loss Amount will have thirty (30) days from the expiration of the Initial Objection Period to provide Supplemental Evidence.

8.      For claimants who timely disputed their Initial Determination, following the Initial Objection Period and the Supplemental Evidence Deadline, the Plan Administrator will provide each applicable claimant with a Final Determination.  Claimants will have thirty (30) days from the date the Plan Administrator sends the Final Determination to notify the Plan Administrator that the claimant intends to object to the Final Determination.  Claimants must then file their objection to the Final Determination with the court within ninety (90) days from receiving the Final

Determination.  If any claimant fails to notify the Plan Administrator within the thirty (30) day window that they intend to object to the Final Determination *or* fails to actually object within the ninety (90) day window, their claim will be deemed accepted and allowed in the claimant's Final Determination amount.

9.      The Plan Administrator shall have thirty (30) days to reply after any Final Determination Objection is filed, and shall be entitled to seek recovery of attorneys' fees and costs associated with filing and defending any such reply in the event the Bankruptcy Court denies the Final Determination Objection and reaffirms the Final Determination or issues an order awarding the claimant with an amount less than the amount set forth in the Final Determination.  Such attorneys' fees and costs, if approved by the Court, may be deducted from the distribution owed to the claimant under the Plan.

10.     Any disputed Final Determination will be presumed valid and the Plan Administrator shall be entitled to deference to his judgment in determining Crypto Loss Amounts. The burden of proof shall be on the party filing the Final Determination Objection to demonstrate why the Asserted Crypto Loss Amount should overturn the Final Determination.  Claimants may only provide (a) evidence submitted with their Crypto Loss Claim and (b) Supplemental Evidence.

11.     Once the Initial Determination or the Final Determination is accepted as set forth above, it will be fully binding and irrevocable, the claimant will have an Allowed Crypto Loss Claim for their Crypto Loss Amount, and the claimant will be eligible for the distribution of its allowed claim.  In order for claimants to receive distributions on account of their Crypto Loss Claim, they must provide the Plan Administrator with the requested information.

## C.      Distributions.

12.     The Plan Administrator will make reasonable best efforts to facilitate the distribution to all claimants; however, should certain insurmountable barriers arise, such as

5

regulatory requirements (*e.g.*, sanctions) or an inability of any claimant to receive distributions in U.S. Dollars, distributions to claimants may be impossible.  Any distributions or future distributions that cannot be made or are not accepted within ninety (90) days from the initial attempted distribution date shall become unclaimed property in accordance with the Plan and the Wind Down Trust Agreement.

### III.   The CLC Form.

13.    The CLC Form, substantially in the form attached hereto as __Exhibit 2__, is approved. The Plan Administrator may update the form and schedules, as well as other related materials periodically with additional suggestions and tips for completing the form or improving the user experience.  The Plan Administrator may require creditors to complete the CLC Form exclusively via the Online Portal.  Additionally, the proposed procedures for resolving incomplete CLC Forms are approved.  Claimants are required to complete the CLC Form in its entirety, and provide all required supporting documentation.  To the extent a Crypto Loss Claim is not eligible because a claimant failed to provide the information required by the CLC Form and the deficiencies cannot be cured within thirty (30) days, such Crypto Loss Claim shall be deemed automatically expunged without further court order.  Notice of such expungement to the claimant, and such expungement will also be published on Kroll's website.

14.    The Plan Administrator is authorized to exclude certain personal information on the claims register.  Specifically, the Plan Administrator is permitted to publish only the claimant's names and the status of the claims.

### IV.   Procedures for Providing Notice of the Bar Date.

#### A.   Mailing of Bar Date Notices.

8.    The CLC Bar Date Notice, substantially in the form attached hereto as __Exhibit 3__ is approved.

9.    No later than three (3) business days after the entry of the CLC Bar Date Order, the Plan Administrator shall cause the CLC Bar Date Notice to be emailed, or mailed via first class mail if no email is available, to the following entities:

a.    the U.S. Trustee;

b.    all creditors and other known holders of claims against the Debtors as of the date of entry of the CLC Bar Date Order, including all entities listed in the Schedules as holding claims against the Debtors;

c.    all entities that have requested notice of the proceedings in these chapter 11 cases pursuant to Bankruptcy Rule 2002 as of the date of entry of the CLC Bar Date Order;

d.    all entities that have filed proofs of claim in these chapter 11 cases as of the date of entry of the CLC Bar Date Order;

e.    all entities that are party to litigation with the Debtors;

f.    all current employees and former employees of the Debtors who were employed by the Debtors in the 24 months prior to the Petition Date (to the extent that contact information for such former employees is available in the Debtors' records after reasonable inquiry);

g.    all known non-Debtor equity and interest holders of the Debtors (as of the Petition Date);

h.    the SEC; and

i.    such additional persons and entities deemed appropriate by the Plan Administrator.

**B.    Publication of Bar Date Notice.**

10.    The Publication Notice, substantially in the form attached hereto as **Exhibit 4**, is approved.

11.    The Plan Administrator shall cause the Publication Notice to be published on one occasion on CoinDesk approximately sixty (60) days before the CLC Bar Date.  The Plan Administrator is also authorized, but not directed, to publish the CLC Bar Date Notice at such times and in such local publications of general circulation in certain areas where the Debtors have conducted operations, as the Plan Administrator shall determine in his sole discretion.  For the

avoidance of doubt, the Plan Administrator is authorized, but not directed, to post the Publication Notice to their official company websites, social media platforms, and messaging platforms, X (formerly Twitter), Discord, Medium, and Telegram, as the Plan Administrator shall determine in his sole discretion. Moreover, any creditors that have submitted claims in connection with the Preliminary CLC Bar Date Order pursuant to the Plan will receive notice of the CLC Procedures via email (if an email was provided) or regular mail (if an email was not provided).

12. The Publication Notice shall satisfy the notice requirements for creditors to whom notice by email or regular mail is impracticable, including creditors who are unknown or not reasonably ascertainable by the Plan Administrator and creditors whose identities are known but whose addresses are unknown by the Plan Administrator.

**V.    Consequences of Failure to File a Proof of Claim.**

13. Any entity who is required, but fails, to file a CLC Form pursuant to the CLC Bar Date Order on or before the applicable CLC Bar Date may be prohibited from participating in any distribution in these chapter 11 cases on account of such claim.

14. Notice of the CLC Bar Date as set forth in this order and in the manner set forth herein (including, but not limited to, the CLC Bar Date Notice, the Publication Notice, the Individualized Review, and any supplemental notices that the Plan Administrator may send from time to time) constitutes adequate and sufficient notice to known and unknown creditors of each of the CLC Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**VI.    Miscellaneous.**

15. The Plan Administrator may, in his business judgment, extend any deadlines set forth in the CLC Procedures in order to fully carry out the CLC Procedures. The Plan Administrator may also seek to make immaterial changes to the CLC Procedures. For any material

8

change to the CLC Procedures, the Plan Administrator may file a motion at any time seeking to modify the CLC Procedures.  Parties shall have seven (7) calendar days to file an objection to any motion by the Plan Administrator seeking to modify the CLC Procedures.  If a timely objection to such motion is filed, the Court will hold a hearing to consider such motion.  If no objection is timely filed, the Court may approve the motion without a hearing or further notice.

16.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

17.    The Plan Administrator is authorized to take all actions necessary to effectuate the relief granted in this CLC Bar Date Order in accordance with the Motion.

18.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this CLC Bar Date Order are immediately effective and enforceable upon its entry.

19.    This Court retains jurisdiction with respect to all matters or other proceedings arising from or relating to the implementation, interpretation, and enforcement of this CLC Bar Date Order.

# <u>EXHIBIT 1</u>

**CLC Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TERRAFORM LABS PTE. LTD., *et al.*,[1] | ) | Case No. 24-10070 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

**CRYPTO LOSS CLAIM PROCEDURES**

---

| TO: | **ALL PERSONS AND ENTITIES WHO MAY HAVE CLAIMS AGAINST ANY OF THE FOLLOWING DEBTOR ENTITIES ARISING OUT OF A LOSS OF CRYPTOCURRENCY:** |
|---|---|

| DEBTOR | CASE NO. |
|---|---|
| **Terraform Labs Pte. Ltd.** | 24-10070 |
| **Terraform Labs Limited** | 24-11481 |

## I.    GENERAL INFORMATION.[2]

As set forth below and in accordance with the *Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 717] (the "Plan"),[3] the Plan Administrator has established the following procedures (the "CLC Procedures"), which have been approved by the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), for claimants to file claims related to *losses suffered as a result of purchases or investments made prior to May 13, 2022 at 6:15 p.m., prevailing Eastern Time (the "Second De-Peg") of either (i) cryptocurrency created by the Debtors and/or (ii) other cryptocurrency held on the Terra Ecosystem (collectively, the "Eligible Loss Cryptocurrency")*.[4] Eligible Loss Cryptocurrency does not include any cryptocurrency with an on-chain liquidity of less than $100 as of the Second De-Peg.[5] A full list of Eligible Loss Cryptocurrency is attached hereto as **Schedule 1**. For the avoidance of doubt, the Eligible Loss Cryptocurrency excludes any Third Party Crypto that is able to be bridged back to other blockchains, platforms, or exchanges. Additionally, the fact that a cryptocurrency token qualifies as an Eligible Loss

---

[1]    The Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited. The Debtors' principal offices are located at 10 Anson Road, #10-10 International Plaza, Singapore 079903.

[2]    For information regarding the terms used herein, please refer to **Schedule 4** for a list of key terms.

[3]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

[4]    As used in these CLC Procedures, "Eligible Loss Cryptocurrency" includes both Terra-Created Crypto and other cryptocurrency that was rendered worthless or inaccessible as a result of the Second De-Peg and subsequent events leading up to these chapter 11 cases. A complete list of Eligible Loss Cryptocurrency is attached hereto as **Schedule 1**. Please note that wrapped versions of Eligible Loss Cryptocurrency are **not** listed as separate coins in Schedule 1, but for any Eligible Loss Cryptocurrency that has a wrapped version of the same token, such wrapped token is also Eligible Loss Cryptocurrency.

[5]    Section 6.10 of the Plan states that the Disbursing Agent shall not be required to make any distribution in an amount less than $100 to any holder of an Allowed claim.

Cryptocurrency token does not mean that the related Crypto Loss Claim will be allowed—each Crypto Loss Claim will be evaluated on the criteria set forth below.

*Please read these CLC Procedures carefully.* These CLC Procedures set forth the requirements that you must follow to establish an Eligible Crypto Loss Claim. *You must follow these CLC Procedures in order to have an opportunity to receive any recovery on account of your Crypto Loss Claim.* For assistance completing or submitting the crypto loss claim form (the "CLC Form") via the Online Portal (as defined below), please contact the Wind Down Trust's claims and noticing agent for Crypto Loss Claims, Kroll Restructuring Administration LLC ("Kroll"), at Terraforminfo@ra.kroll.com. If you have questions about the CLC Procedures themselves, please contact the advisors to the Terraform Wind Down Trust (the "Wind Down Trust") by contacting Kroll at Terraforminfo@ra.kroll.com.

As a general matter, these CLC Procedures are meant to allow you to file claims for the loss of value of your Eligible Loss Cryptocurrency following the Second De-Peg and subsequent events leading up to the chapter 11 filing of Terraform Labs Pte. Ltd. ("TFL," and together with Terraform Labs Limited, the "Debtors") on January 21, 2024 (the "TFL Petition Date"). The information requested in these CLC Procedures and the accompanying CLC Form will be used to calculate the value you lost. These CLC Procedures are designed to account for all of the actions that you took from the time you bought or acquired Eligible Loss Cryptocurrency through the TFL Petition Date and to confirm that the details you have provided us are true and correct. A high-level overview of the Wind Down Trust's method for calculating your Crypto Loss Claim is as follows (and more detailed explanations and instructions are contained herein):

- As a result of the Second De-Peg and subsequent events leading up to the TFL Petition Date, Eligible Loss Cryptocurrency is presumed to be worthless (*i.e.*, valued at $0) as of the TFL Petition Date.

  - As such, if you purchased Eligible Loss Cryptocurrency prior to the Second De-Peg and continued to hold it all the way through the TFL Petition Date without performing any additional actions, the amount of your Eligible Crypto Loss Claim is the price you paid to purchase the Eligible Loss Cryptocurrency *less* any value you realized on account of any airdropped coins listed in **Schedule 2** attached hereto (the "Airdropped Coins") airdropped on Terra 2.0 that were Monetized as of the TFL Petition Date (such value, the "Airdrop Earnings").

  - For the avoidance of doubt, any Airdropped Coins on account of which you did not transact or receive value as of the TFL Petition Date are presumed to be worthless and will not be included as Airdrop Earnings in calculating your Crypto Loss Amount.

- In accordance with these procedures, the Plan Administrator will be deducting certain amounts received by you for transactions involving any Eligible Loss Cryptocurrency, including Eligible Loss Cryptocurrencies that you did not lose value on, from the starting value of your Crypto Loss Amount. In order to accurately offset your Crypto Loss Claim so that it only reflects amounts actually lost by you, the Plan Administrator will calculate your Crypto Earnings (as defined below) depending on when your transactions involving Eligible Loss Cryptocurrency occurred. The Plan Administrator will use *May 6, 2022* (the "**Monetization Date**")[6] to distinguish between transactions that occurred before UST began to de-peg from transactions that occurred after the de-peg had begun.

---

[6] For the avoidance of doubt, the Second De-Peg is defined herein as May 13, 2022, and is the cutoff after which newly acquired cryptocurrency is no longer Eligible Loss Cryptocurrency, because by that time claimants knew or should have known of the Debtors' misrepresentations. However, in order to fairly compensate claimants for losses suffered as a result

- If such transactions occurred before or on the Monetization Date, your Crypto Loss Amount will be offset by any **profits** that you received. However, because you bought and sold your cryptocurrency prior to the Monetization Date, you did not hold your Eligible Loss Cryptocurrency as of the Monetization Date and there is no underlying Crypto Loss Claim. For this reason, only profits above the amount you paid or invested to acquire the cryptocurrency will offset your Crypto Loss Amount.

- If such transactions occurred after the Monetization Date, **any value** you received on account of such transactions will offset your Crypto Loss Amount. This is because the full amount you spent to acquire your Eligible Loss Cryptocurrency is included in the starting value of your Crypto Loss Amount, so any value you receive on account of such transactions offsets your Crypto Loss Amount because you recovered that portion of your investment, even if it was below the price at which you purchased your Eligible Loss Cryptocurrency.

- Examples of these two scenarios are set forth below.

  - If you Monetized or realized any benefit on account of any of your Eligible Loss Cryptocurrency, or engaged in other transactions that may have returned value to you, ***up to and including the Monetization Date***, any Crypto Earnings (which, as defined below, only includes profits if the transactions were before or on the Monetization Date) on account of those transactions will reduce the amount of your Eligible Crypto Loss Claim. For example, if you purchased $1,000 worth of UST and $1,000 worth of Luna on January 1, 2022, sold $1,000 of your LUNA for $2,000 on March 30, 2022, and held the remaining $1,000 worth of UST until the TFL Petition Date, your Crypto Loss Amount (as defined above) would be $0, because the remaining $1,000 of UST you held as of the Monetization Date is offset by the total $1,000 Crypto Earnings you acquired when you sold your LUNA prior to the Monetization Date.

  - If you Monetized or realized any value on account of any of your Eligible Loss Cryptocurrency, or engaged in other transactions that may have returned value to you, ***after the Monetization Date*** but prior to the TFL Petition Date, any Crypto Earnings (which, as defined below, include any value received, not just profits, if the transaction was after the Monetization Date) received on account of those transactions will reduce the amount of your Eligible Crypto Loss Claim. For example, if you purchased $1,000 worth of UST and $1,000 worth of Luna on January 1, 2022, sold all of your UST for $200 on May 30, 2022, and held the remaining $1,000 worth of Luna until the TFL Petition Date, your Crypto Loss Amount (as defined below) would be $1,800, because your total loss of your investment is $1,800—you spent $2,000 and Monetized $200 after the Monetization Date.

- For the avoidance of doubt, your Eligible Crypto Loss Claim cannot be reduced below zero. You will not owe the Wind Down Trust because you had net profits. The Wind Down Trust will consider transactions holistically across all Eligible Loss Cryptocurrency held in all wallets and accounts held by each individual potential claimant when calculating such individual's Eligible Crypto Loss Claim.

---

of the Second De-Peg, the Wind Down Trust will consider losses and gains for all Eligible Loss Cryptocurrency purchased or Monetized after the Monetization Date, in order to capture the full losses that claimants potentially suffered as a result of the Second De-Peg.

- This means that if you have taken any actions since initially purchasing your Eligible Loss Cryptocurrency (including, but not limited to, any selling, staking, lending, swapping, earning rewards, or entering into contracts with third parties), there are additional requirements in the CLC Form for you to disclose all actions you took with your Eligible Loss Cryptocurrency between the date you purchased it and the TFL Petition Date.  Any actions taken by you after the TFL Petition Date will not be included in the Wind Down Trust's calculation of your Crypto Loss Claim.

- The Wind Down Trust will then calculate any value you received on account of your Eligible Loss Cryptocurrency using the information you provide regarding the actions you have taken with your Eligible Loss Cryptocurrency.

- Such value will be deducted from the purchase price of your Eligible Loss Cryptocurrency.

- ***<u>Failure to make full disclosure could lead to disallowance of your claim.  If the Wind Down Trust determines in its business judgment that you failed to disclose information that would reduce your Eligible Crypto Loss Claim, including all transactions involving Eligible Loss Cryptocurrency, the Plan Administrator shall seek to disallow your claim for insufficient information</u>***.

Finally, these CLC Procedures are intended to compensate you for value ***<u>actually lost</u>*** as a result of your reliance on the Debtors' representations regarding the Terra Ecosystem and the algorithm underlying UST as a stablecoin.  These CLC Procedures do not require you to submit evidence to demonstrate your reasonable reliance on any of the Debtors' representations during the initial claims submission process.  However, the Plan Administrator may inquire as to **any claimant's** reasonable reliance on the Debtors' representations, whether holding cryptocurrency tokens created by Terraform ("<u>Terra-Created Crypto</u>") or created by third parties ("<u>Third Party Crypto</u>"), including requesting specific evidence demonstrating the statements on which you specifically relied when purchasing Eligible Loss Cryptocurrency, in his discretion and based solely on his business judgment.  This inquiry may request additional information regarding, among other things, what information you had about the Debtors and any of the Eligible Loss Cryptocurrency and your communications or affiliations with the Debtors or any related parties.

Please note that the Plan Administrator is likely to request additional information supporting claimants' reasonable reliance for Third Party Crypto.  This is because UST, Luna, and other Terra-Created Crypto have been subject to litigation, including the SEC Enforcement Action, which has established that the Debtors' representations regarding UST and Luna fraudulently induced the purchase of those coins.  However, claimants who purchased Third Party Crypto did not necessarily rely on the same representations of the Debtors when choosing to purchase such Third Party Crypto, so the Plan Administrator may require evidence of reasonable reliance for such coins in order for any related losses to qualify as part of an Allowed Crypto Loss Claim.

After the Crypto Loss Claim Bar Date, the Plan Administrator will make a final determination in his business judgment on whether to apply the presumption of reasonable reliance to any or all Third Party Crypto based on the facts and circumstances of the Crypto Loss Claims that are filed.  Prior to making any final determination on applying the presumption of reasonable reliance to any Third Party Crypto, the Plan Administrator will provide data to the SEC regarding filed Eligible Crypto Loss Claims and consult with the SEC regarding the applicability of such presumption.  Following such consultation, the Plan Administrator will make a final determination regarding whether to apply the presumption to any or all of the Third Party Crypto and provide written notice to the SEC, who will have fourteen (14) days to object

thereto, and to the extent an objection is filed and unresolved, the Court will resolve any dispute.  Once a determination is final, the Plan Administrator will provide notice on the docket and to affected claimants.

As further described in Section V below, the CLC Form can be accessed and filed on the Debtors' Online Portal.  All claims must be filed so that they are ***actually received*** through the Online Portal by ***April 30, 2025 at 11:59 p.m., prevailing Eastern Time*** (the "Crypto Loss Claim Bar Date").

These CLC Procedures include the following sections:

II.     What is an Eligible Crypto Loss Claim?

III.    Calculating Your Crypto Loss Amount.

IV.    Instructions for Filing Your Crypto Loss Claim.

V.     What Happens After You Submit the CLC Form?

VI.    Miscellaneous Provisions.

VII.   Consequences of Failing to Timely File Your Eligible Crypto Loss Claim.

VIII.  Reservation of Rights.

IX.    Additional Information.

## II.     WHAT IS AN ELIGIBLE CRYPTO LOSS CLAIM?

An eligible Crypto Loss Claim (an "Eligible Crypto Loss Claim") is a Crypto Loss Claim that:

a.      stemmed from the purchase of or investment in Eligible Loss Cryptocurrency that (i) was purchased or otherwise acquired before the Second De-Peg and (ii) was rendered worthless or inaccessible as a result of the Second De-Peg and subsequent events leading up to the TFL Petition Date;

b.      resulted in the loss of your own funds (*i.e.*, you suffered a financial loss);

c.      is reduced for value received after your Eligible Loss Cryptocurrency was acquired and prior to the TFL Petition Date; and

d.      is not subject to any of the exclusions included herein.

An Eligible Crypto Loss Claim ***does not include***:

a.      claims for Eligible Loss Cryptocurrency that was purchased or transferred to the Terra Ecosystem after the Second De-Peg;

b.      all holdings on Terra 2.0 following the Second De-Peg, including all Airdropped Coins;

c.      tokens on the Terra Ecosystem that were recoverable in-kind; or

d.      any losses on account of coins borrowed from the Debtors or losses on assets provided to claimants from the community pool or from a grant or investment from the Debtors.

For the avoidance of doubt, whether a Crypto Loss Claim satisfies the requirements to be considered an Eligible Crypto Loss Claim will be determined in the Plan Administrator's business judgment according to the above definition and limitations. Additionally, the Plan Administrator reserves the right to perform a basic identity verification process for each claimant prior to determining whether a Crypto Loss Claim is an Eligible Crypto Loss Claim.

For the purposes of these procedures, "Monetized" Eligible Loss Cryptocurrency means the disposition of such Eligible Loss Cryptocurrency, whether sold for fiat currency or swapped for (a) cryptocurrency other than Eligible Loss Cryptocurrency or (b) other assets.

## III.    CALCULATING YOUR CRYPTO LOSS AMOUNT.

To calculate your claim amount (your "Crypto Loss Amount"), the Wind Down Trust will begin with the amount of your funds that you used to acquire Eligible Loss Cryptocurrency, which will be converted into U.S. Dollars.[7] Due to the Second De-Peg, and subsequent events leading up to the TFL Petition Date, Eligible Loss Cryptocurrency is presumed to be worthless as of the TFL Petition Date. This means that the Wind Down Trust will begin with the value of your Eligible Loss Cryptocurrency at the time you acquired it to calculate your Crypto Loss Amount. The Wind Down Trust will then subtract (a) any profits realized from transactions on account of Eligible Loss Cryptocurrency before the Monetization Date, such as transfers, swaps, trades, staking, rewards, and other transactions, and including any value received on account of hedging and contracts with third parties, and (b) any value received after the Monetization Date, ((a) and (b) together, the "Crypto Earnings") from the total purchase price that you paid or invested for your Eligible Loss Cryptocurrency that you still held as of the Second De-Peg. For the avoidance of doubt, any losses incurred on or before May 6, 2022 will not be included in calculating your Crypto Loss Amount.

Crypto Earnings are limited to the value you received on account of Eligible Loss Cryptocurrency as well as any Airdrop Earnings. Value received from coins that were purchased (a) prior to the Second De-Peg but are **not** Eligible Loss Cryptocurrency or (b) after the Second De-Peg will not be used to reduce your Crypto Loss Amount. Likewise, any Airdropped Coins that you did not Monetize or otherwise receive value for prior to the TFL Petition Date are presumed to be worthless and will not be used to reduce your Crypto Loss Amount.

If you purchased your Eligible Loss Cryptocurrency and did not take any additional actions, but simply held your Eligible Loss Cryptocurrency until the TFL Petition Date, then your Crypto Loss Amount is the amount you purchased or invested to acquire your Eligible Loss Cryptocurrency *less* any Airdrop Earnings.

If you purchased your Eligible Loss Cryptocurrency and then took additional actions that resulted in Crypto Earnings, your Crypto Loss Amount will be the amount you paid or invested to acquire the

---

[7]    If your Preferred Evidence does not reflect the price you paid for your Eligible Loss Cryptocurrency, whether for the initial acquisition of your Eligible Loss Cryptocurrency or for the swap of non-Eligible Loss Cryptocurrency for Eligible Loss Cryptocurrency, the Wind Down Trust will determine the starting value of your relevant Eligible Loss Cryptocurrency based off of prevailing market pricing of the relevant cryptocurrency coins *at the time and date you purchased it* (i.e., if you purchased the relevant cryptocurrency coin at 9:42 a.m. prevailing Eastern Time on January 26, 2022, then the starting value of your Eligible Loss Cryptocurrency will be the market price of that cryptocurrency coin at 9:42 a.m. prevailing Eastern Time on January 26, 2022). All conversions of fiat currency or other cryptocurrency used to purchase Eligible Loss Cryptocurrency will be calculated using the conversion rates as of the date of purchase of the Eligible Loss Cryptocurrency as they are listed on Coingecko, Flipside Crypto, and xe.com, as applicable.

Eligible Loss Cryptocurrency *less* your Airdrop Earnings and other Crypto Earnings.  If the value of your Airdrop Earnings and your Crypto Earnings exceeds the amount you purchased or invested to acquire the Eligible Loss Cryptocurrency, then your Crypto Loss Amount will be zero.

The Plan Administrator may, in his business judgment, extend any of the deadlines set forth herein in order to fully carry out these CLC Procedures.  The Plan Administrator may also make immaterial changes to these CLC Procedures.  For any material change to these CLC Procedures, the Plan Administrator may file a motion at any time seeking to modify the CLC Procedures.  Parties shall have seven (7) calendar days to file an objection to any motion by the Plan Administrator seeking to modify the CLC Procedures.  If a timely objection to such motion is filed, the Court will hold a hearing to consider such motion.  If no objection is timely filed, the Court may approve the motion without a hearing or further notice.

## IV.    INSTRUCTIONS FOR FILING CRYPTO LOSS CLAIMS.

Claimants submitting a CLC Form must submit **one single CLC Form for the entirety of their Crypto Loss Claim, encompassing all individually owned wallets and exchange accounts, *except* to the extent any portion of your Crypto Loss Claim is for a wallet requiring multiple signatures (a "<u>Multisig Wallet</u>")**.  Claimants holding Multisig Wallets must submit a single, joint claim for their Crypto Loss Claim on account of the Eligible Loss Cryptocurrency held in the joint wallet.

Any Crypto Loss Claim that is submitted using multiple CLC Forms will be limited to the information included in the last timely submitted CLC Form.  Claimants submitting a CLC Form must comply with the following instructions to successfully submit an Eligible Crypto Loss Claim:

a.   <u>Registration and Eligible Crypto Loss Claim Submission</u>.

     i.   To submit an Eligible Crypto Loss Claim, visit the Wind Down Trust's online claim portal at claims.terra.money (the "<u>Online Portal</u>") and complete the steps for registration.  Upon registering, you must complete and submit the CLC Form located on the Online Portal.  All claimants must submit the CLC Form electronically through the Online Portal.  If you have any trouble accessing the Online Portal or require assistance completing the CLC Form via the Online Portal, please contact Kroll by calling Kroll's toll-free helpline: ((888) 341- 7383 (US/Canada Toll Free) / +1 (646) 876-2651 (International)), or emailing Terraforminfo@ra.kroll.com.

     ii.   As part of the registration and claim submission process, you must provide proof of ownership for any cryptocurrency underlying any Eligible Crypto Loss Claim.

          A.   To prove ownership of Eligible Loss Cryptocurrency held on a verifiable blockchain (a "<u>Verifiable Blockchain</u>"),[8] you will need to sign a transaction with your wallet through the Online Portal.  No fees will be charged as a result of this transaction.

---

[8]   As used in these CLC Procedures, "Verifiable Blockchains" include:  Terra (Classic), Ethereum, Avalanche, Binance Smart Chain, Polygon, Fantom, Moonbeam, Arbitrium, Solana, Osmosis, and Cronos.

B. To prove ownership of Eligible Loss Cryptocurrency held on other platforms, you will need to provide a read-only API key.  Please refer to **Schedule 3** attached hereto for instructions on how to access and retrieve read-only API keys on each platform.

   1. If you can provide an API Key(s) and you do not do so, the Plan Administrator, in his business judgment, may seek to disallow your claim in its entirety.

b. <u>Completing the CLC Form</u>.

   i. **Part I: Identifying Information**:  To complete Part I of the CLC Form, please provide all requested claimant details and contact information.  Claimants holding Multisig Wallets must submit a list of signatories (with each signatory's wallet address and contact email) and the wallet address of the Multisig Wallet.  Please note that all correspondence will be sent to your provided email address.

   ii. **Part II: Crypto Holdings and Evidentiary Support**:  The CLC Form allows you to submit two types of evidence:  (i) preferred evidence ("<u>Preferred Evidence</u>") and (ii) manual evidence ("<u>Manual Evidence</u>").  Preferred Evidence includes (a) your blockchain and/or wallet addresses, for Eligible Loss Cryptocurrency held on Verifiable Blockchains, and (b) read-only API Keys, for Eligible Loss Cryptocurrency held on other platforms or exchanges.  Manual Evidence includes screenshots, excel logs, or PDFs generated by the applicable exchange showing account balances, transaction logs, and deposit logs.  For the avoidance of doubt, Manual Evidence will not be accepted (i) for Eligible Loss Cryptocurrency held on Verifiable Blockchains or (ii) for exchanges that support read-only API Keys.

   To complete Part II, you must provide evidentiary support for all Eligible Loss Cryptocurrency underlying your Crypto Loss Claim, across all exchanges and wallets on which you hold Eligible Loss Cryptocurrency.

   <u>Evidentiary Support</u>:

   A. For any Eligible Loss Cryptocurrency you held on a Verifiable Blockchain, you must provide the applicable blockchain(s) and wallet address(es).  Manual Evidence will not be accepted to support claims for Eligible Loss Cryptocurrency held on Verifiable Blockchains.

   B. For any Eligible Loss Cryptocurrency held on a non-Verifiable Blockchain, or on other platforms or exchanges, you must provide:

      i. Preferred Evidence:  To the extent an exchange supports read-only API Keys, you ***must*** provide the read-only API Key for each exchange on which you hold Eligible Loss Cryptocurrency.

        i.    Please refer to **Schedule 3** attached hereto for instructions on how to access and retrieve read-only API Keys on each eligible platform.

      ii.    Manual Evidence: If your Eligible Loss Cryptocurrency is held on a blockchain that is not a Verifiable Blockchain, or if an exchange does not support read-only API Keys, you must provide Manual Evidence to support your Crypto Loss Claim. For the avoidance of doubt, if all of your Eligible Loss Cryptocurrency is supported by Preferred Evidence in subsections (A) and (B)(i) above, you do not need to submit any of the Manual Evidence requested in this subsection (B)(ii).

  C.  You must also provide documentation for any contracts (including insurance contracts), trade agreements, or other documents governing ownership or transfers of the Eligible Loss Cryptocurrency underlying your Eligible Crypto Loss Claim.

If you are unable to submit the Preferred Evidence in subsections A or B above, your Crypto Loss Claim will be subject to additional review (an "Individualized Review") (as defined in Section V.b below).

iii.    **Part III: Supporting Documents for Claim:**  To complete Part III, you must include all applicable supporting documentation and check the applicable boxes for the documents you are enclosing.  Failure to provide supporting documentation may lead to your claim being disallowed.  All applicable supporting documentation, including but not limited to any blockchain or wallet addresses, any read-only API keys, and any account balance statements, transaction logs, and contracts or trade agreements governing ownership or transfer of the tokens ***must*** be attached to your CLC Form unless it is included in the CLC Form itself.

iv.    **Part IV: Contributed Claims:**  If you purchased your Eligible Loss Cryptocurrency and believe that you may have a claim against third parties (i.e., any persons or entities other than the Debtors), then you have the option to irrevocably contribute such claims to the Wind Down Trust ("Contributed Claims").  In accordance with the Plan and the Wind Down Trust Agreement, the Plan Administrator will review your Contributed Claims and exercise his business judgment in determining whether to pursue such claim.  Such claim may be adjudicated in litigation, binding arbitration, or another forum provided by law.  If the Plan Administrator pursues your third-party claim, you may be asked to provide additional information and documents.  Your decision on whether to contribute any third-party claims to the Wind Down Trust will not affect the Plan Administrator's valuation or adjudication of your Crypto Loss Claim.  Any proceeds of Contributed Claims that are included in distributions under the Plan will be distributed pro rata to all holders of Allowed Crypto Loss Claims and will not be made only to creditors who elected to contribute claims to the Wind Down Trust.

v. **Part V: Certification:** To complete Part V and submit your CLC Form, you must certify under penalty of perjury that all statements you gave in the CLC Form were true and correct to the best of your knowledge. Your digital date stamped signature will be deemed an original signature.

*If you do not complete the CLC Form in its entirety according to these instructions prior to the Crypto Loss Claim Bar Date, the Plan Administrator may, in his discretion based on his business judgment, seek to disallow your Crypto Loss Claim in part or in full.*

*The Wind Down Trust reserves the right to coordinate directly with exchanges and other platforms to confirm the accuracy of the evidence provided by you. If you fail to comply with these CLC Procedures, including (a) failure to provide all accurate staking information and wallet addresses, (b) failure to disclose all information that would reduce your claim, or (c) providing unverifiable data, the Plan Administrator will seek to disallow your claim in its entirety for insufficient documentation. Further, if it is discovered that you had advance knowledge of the Debtors' actions giving rise to the judgment against the Debtors in the Final Judgment Against Defendants Terraform Labs Pte. Ltd. and Do Hyeong Kwon in the SEC Enforcement Action, the Plan Administrator will seek to subordinate or disallow your Crypto Loss Claim.*

## V. WHAT HAPPENS AFTER I SUBMIT MY CLC FORM?

a. <u>The Claim Verification Process</u>.

After you submit your CLC Form and supporting documentation, the Wind Down Trust will review and verify your claim. Within ninety (90) days following the Crypto Loss Claim Bar Date, you will receive a notification by email that either (a) the Wind Down Trust has made an initial determination of your Crypto Loss Claim (an "<u>Initial Determination</u>"), or (b) your Initial Determination is not yet ready because the Wind Down Trust is doing an Individualized Review of your Crypto Loss Amount. As part of the Individualized Review, the Wind Down Trust may request additional documentation or evidence (i.e., specific contracts or agreements) to verify your Crypto Loss Amount. **Please note that Individualized Review may take additional time beyond the Wind Down Trust's ninety (90) day review period**. At the conclusion of your Individualized Review, if applicable, the Plan Administrator will issue you an Initial Determination, at which time you will be subject to the remaining dates and deadlines set forth herein. The Plan Administrator's Initial Determination, whether subject to Individualized Review or not, may be based on lack of information if the Wind Down Trust does not receive verifiable data.

Any Initial Determination you receive will include your claim number and the Wind Down Trust's determination of your Crypto Loss Amount. To view your results, simply access the email you receive from the Wind Down Trust (please note that only the registered user that submits the CLC Form will be able to login and utilize the Online Portal to view these results). Upon review, you will have the option to either accept or dispute the results. To accept your Crypto Loss Amount, follow the instructions in your email to confirm your Crypto Loss Amount. To dispute your Crypto Loss Amount, you will need to identify what you think your Crypto Loss Amount is and provide all evidence or documentation required to support your asserted Crypto Loss Amount (your "<u>Asserted Crypto Loss Amount</u>"). *You will have thirty (30) days from the date the Wind Down Trust issues a notification of your Crypto Loss Amount via the Online Portal to dispute the Initial Determination of your Crypto Loss Amount (the "Initial Objection Period"). If you do not dispute the Initial Determination before the end of the Initial Objection Period, the Initial Determination of your Crypto Loss Amount will be deemed accepted by*

*__you__. __If you accept the Initial Determination or fail to dispute via the Online Portal before the end of the Initial Objection Period, the Initial Determination of your Crypto Loss Amount will be fully binding and irrevocable.__ If you dispute your Initial Determination of your Crypto Loss Amount, your Crypto Loss Claim will be resolved as described in Section V.c below.*

The SEC may provide to the Plan Administrator a list of any claimants for whom the SEC does not believe reasonable reliance is appropriate.  To the extent the SEC provides such a list, the Plan Administrator shall, after the Crypto Loss Claim Bar Date and prior to making determinations as to Crypto Loss Amounts, consult with the SEC on such matters, and may provide information regarding individual Crypto Loss Claims to the SEC as part of such consultation.  The ultimate decision as to whether to Allow a Crypto Loss Claim or object to such Crypto Loss Claim shall be the Plan Administrator's decision in his business judgment.

  b. <u>Disbursement and Claim Payment for Undisputed Crypto Loss Amounts</u>.

If you accept the Wind Down Trust's Initial Determination of your Crypto Loss Amount, or otherwise do not dispute the Crypto Loss Amount during the Initial Objection Period, you will have an Allowed Crypto Loss Claim and you will be eligible for initial disbursements ("<u>Initial Disbursements</u>") on account of your Crypto Loss Amount.  Please note that your Crypto Loss Amount is the amount of your Crypto Loss Claim, but it is ***not*** the amount of your recovery—your pro rata share of amounts that are approved for distributions to holders of Allowed Crypto Loss Claims by the Plan Administrator may be materially less than your Crypto Loss Amount.  Initial Disbursements to claimants who accept or do not object to their Crypto Loss Amount will occur as soon as reasonably practicable following the end of the Initial Objection Period.  Each claimant will recover pro rata on account of their Crypto Loss Claim.  Following the Initial Disbursements, there will be subsequent distributions over time.  All distributions will be pro rata (and late-allowed Crypto Loss Claims will receive larger distributions upon the allowance of such claims to ensure equal recoveries among all holders of Allowed Crypto Loss Claims).

  c. <u>Disputed Crypto Loss Amounts.</u>

If you dispute the Initial Determination of your Crypto Loss Amount, you will be required to explain why you dispute the Initial Determination and provide evidence supporting your Asserted Crypto Loss Amount (any such additional explanation and evidence provided, the "<u>Supplemental Evidence</u>") within thirty (30) days after the expiration of the Initial Objection Period (the "<u>Supplemental Evidence Deadline</u>").  After you dispute your Crypto Loss Amount in the Online Portal, the Wind Down Trust will review the Supplemental Evidence and will notify you of whether it agrees with and accepts your Asserted Crypto Loss Amount, disagrees with your Asserted Crypto Loss Amount and reiterates the Initial Determination, or makes a counteroffer (any such agreement, acceptance, reiteration, or offer, the "<u>Final Determination</u>").  Upon review, you will again have the option to either accept or dispute the results of the Final Determination.  To accept the Final Determination of your Crypto Loss Amount, follow the instructions in your email to confirm your Crypto Loss Amount.  To dispute the Final Determination of your Crypto Loss Amount, you will need to (a) indicate, within thirty (30) days of receiving the Final Determination, that you will be filing an objection to the Final Determination and (b) actually file an objection to the Final Determination with the Bankruptcy Court within ninety (90) days of receiving the Final Determination, as further set forth below.  ***__You will have thirty (30) days from the date the Wind Down Trust issues a notification of your Crypto Loss Amount via the Online Portal to dispute the Final Determination of your Crypto Loss Amount (the "Final Objection Period"), and you must file an objection with the Bankruptcy Court to the Final Determination within ninety (90) days of receiving the Final Determination via the Online Portal (the "Objection Filing Deadline").  If you do not dispute__***

11

***the Final Determination before the end of the Final Objection Period and timely file a Final Determination Objection (as defined below) by the Objection Filing Deadline, the Final Determination of your Crypto Loss Amount will be deemed accepted by you. If you accept the Final Determination or fail to dispute via the Online Portal before the end of the Final Objection Period or file an objection by the Objection Filing Deadline, the Final Determination of your Crypto Loss Amount will be fully binding and irrevocable. If you timely dispute your Final Determination of your Crypto Loss Amount, your Crypto Loss Claim will be resolved as described below.***

If you timely dispute the Final Determination of your Crypto Loss Amount, you will be required to file an objection to the Final Determination with the Bankruptcy Court prior to the Objection Filing Deadline that: (a) identifies your Asserted Crypto Loss Amount; (b) provides the evidence set forth in your Crypto Loss Claim and your Supplemental Evidence; and (c) sets forth the reasons why you believe the Plan Administrator failed to comply with the CLC Procedures and/or why your unique circumstances should be an exception to the CLC Procedures (any such objection, a "Final Determination Objection"). At the hearing to adjudicate the Final Determination Objection, the burden of proof shall be on the party filing the Final Determination Objection to demonstrate why the Asserted Crypto Loss Amount should overturn the Final Determination, which Final Determination shall be entitled to deference on a business judgment standard. ***You will not be able to provide any evidence other than what is attached to your Crypto Loss Claim and the Supplemental Evidence in connection with your Final Determination Objection, as such, be sure to provide all evidence of your Asserted Crypto Loss Amount to the Plan Administrator by the Supplemental Evidence Deadline. If you fail to file a Final Determination Objection within ninety (90) days after the Final Objection Period (prior to the Objection Filing Deadline), the Final Determination of your Crypto Loss Amount will be fully binding and irrevocable.***

The Plan Administrator shall have thirty (30) days after any Final Determination Objection is filed to file a reply with the Bankruptcy Court. The reply shall set forth the Plan Administrator's views on the applicable Crypto Loss Claim and the Final Determination. In such reply, the Plan Administrator also shall be entitled to seek recovery of attorneys' fees and costs associated with filing and defending any such reply in the event the Bankruptcy Court denies the Final Determination Objection and reaffirms the Final Determination or issues an order awarding you an amount less than the amount set forth in the Final Determination. For the avoidance of doubt, if the Bankruptcy Court issues an order awarding you an amount greater than the amount set forth in the Final Determination, then the Plan Administrator shall not be entitled to recover attorneys' fees and costs associated with litigating your Final Determination Objection. If approved by the Bankruptcy Court, such attorneys' fees and costs may be deducted from any distribution owed to you under the Plan and the CLC Procedures.

After a Final Determination Objection and reply is on file, the Plan Administrator shall schedule a hearing with the Bankruptcy Court. The Plan Administrator may seek to schedule hearings on Final Determination Objections with other claims that have overlapping issues of fact or law for efficiency. At the hearing, the Bankruptcy Court shall issue a final adjudication on your Crypto Loss Amount.

To the extent an agreement is reached between you and the Wind Down Trust on your Asserted Crypto Loss Amount, you will have an Allowed Crypto Loss Claim without any further order of the Bankruptcy Court. Initial Disbursements will be calculated such that all claimants will receive the same pro rata portion of their Crypto Loss Amount. The Wind Down Trust will exercise its business judgment in maintaining reserves sufficient to make subsequent distributions to holders of disputed Crypto Loss Claims.

d.      Limitations on Disbursements.

i.    Transfers and Assignments of Claims.

All Eligible Crypto Loss Claim distributions will be issued to the holder of such claim (the "Record Claim Holder") as of the Distribution Record Date set forth in the Plan (the "Distribution Record Date").  The Wind Down Trust shall have no obligation to recognize any transfer or designation of such claim occurring after the Distribution Record Date.  In the event a claim was transferred and/or assigned to a third-party after the Distribution Record Date, the Record Claim Holder shall be solely liable for forwarding any such distribution it receives on behalf of its Eligible Crypto Loss Claim to the third party.  Under no circumstances shall the Wind Down Trust be liable for issuing any distribution to anyone other than the Record Claim Holder.

ii.    Sanctions.

If the Wind Down Trust determines in its sole discretion that regulatory restrictions prohibit distributions to a creditor or such creditor's location (*e.g.*, due to sanctions), and/or no Disbursement Agent is able to make distributions to a creditor or such creditor's location, such creditor will not receive their distribution.  To the extent a claimant is unable to receive a distribution, such distribution will revert back to the Wind Down Trust Assets in accordance with *Section V.f* below.

e.    Requirements to Receive Disbursements.

To receive distributions on account of your Eligible Crypto Loss Claim, you must provide all requested disbursement details, including any requested wiring information, address, and Know Your Customer ("KYC") information.  KYC will take additional time for legal entities.  The Plan Administrator may select a Disbursement Agent(s) in his sole discretion to assist with making distributions, and such Disbursement Agents may conduct their own KYC process prior to awarding distributions.   All distributions will be made in U.S. Dollars.

f.    Consequences of Failure to Deliver or Accept Disbursements.

The Plan Administrator will make a good faith effort to make all distributions to holders of Allowed Crypto Loss Claims.  However, the Plan Administrator cannot guarantee successful delivery of all distributions.  Delivery of distributions may fail, for example, due to any of the reasons listed in Section V.d above.  If the Plan Administrator fails to deliver any distribution, the Plan Administrator will provide notice of such failed distribution to the claimant for whom the failed distribution was intended.  The Plan Administrator will provide claimants with ninety (90) days from the date of the notice of failed distribution to provide any additional information needed to complete the distributions and to accept distributions, in accordance with Section 6.12 of the Plan and Sections 5.8, 5.10, and 5.1 of the Wind Down Trust Agreement.[9]  If after ninety (90) days from the date of the notice, the claimant cannot or does not receive or accept their distribution, such distribution will be deemed unclaimed property and all title to and beneficial interest in such undeliverable distribution shall revert to or remain in the Wind Down Trust for pro rata distribution among holders of Allowed Crypto Loss Claims.

---

[9]    *See* Plan*; Notice of Filing of Fourth Plan Supplement in Connection with the Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. And Terraform Labs Limited* [Docket No. 719], which includes the amended wind down trust agreement as Exhibit A.

## VI.    MISCELLANEOUS PROVISIONS.

a.    <u>Contents</u>.  Each CLC Form must:  (i) be submitted in English; (ii) be fully complete using the CLC Form provided by the Wind Down Trust; (iii) include the supporting documentation requested by the CLC Form; and (iv) be digitally signed by the claimant or by an authorized agent or legal representative of the claimant.

b.    <u>Online Portal Notifications</u>.  By registering to submit an Eligible Crypto Loss Claim via the Online Portal, the Wind Down Trust can track your progress and notify you of the status of your claim and/or request additional information.

c.    <u>Timely Service.</u>    Each CLC Form must be filed, including supporting documentation, so as to be ***actually*** ***<u>received</u>*** through the Online Portal on or before the Crypto Loss Claim Bar Date.

## VII.    CONSEQUENCES OF FAILING TO TIMELY FILE YOUR ELIGIBLE CRYPTO LOSS CLAIM.

Pursuant to the *Order (I) Setting The Bar Date for Filing Crypto Loss Claims, (II) Approving the Crypto Loss Claim Procedures, (III) Approving the Form and Manner of the Crypto Loss Claim Form, and (IV) Approving the Form and Manner of Notice Thereof* [Docket No. _____] (the "<u>Crypto Loss Claim Bar Date Order</u>"), if you or any party or entity who is required, but fails, to timely file a Crypto Loss Claim in accordance with the Crypto Loss Claim Bar Date Order on or before the Crypto Loss Claim Bar Date, please be advised that **YOU WILL NOT RECEIVE ANY DISTRIBUTION IN THESE CHAPTER 11 CASES ON ACCOUNT OF YOUR ASSERTED ELIGIBLE CRYPTO LOSS CLAIM**.

## VIII.    RESERVATION OF RIGHTS.

Nothing contained in these CLC Procedures is intended to or should be construed as a waiver of the Wind Down Trust and/or the Plan Administrator's right to dispute, or assert offsets or defenses against, any filed claim as to the nature, amount, liability, or classification thereof.  Nothing herein guarantees you a recovery on account of your asserted Crypto Loss Claim.

## IX.    PHISHING ATTEMPTS

**PLEASE TAKE NOTICE** that, if you see any suspicious website domains or receive any uncorroborated email, text message, or telephone calls purporting to be from the Plan Administrator or the Wind Down Trust or their advisors claiming that withdrawals are available or requesting account information, personal information, or payment, we request that you please immediately contact the Wind Down Trust's advisors by contacting Kroll at Terraforminfo@ra.kroll.com.  All submissions of personal information and evidentiary support requested in the CLC Form will occur via the Online Portal.

## X.    ADDITIONAL INFORMATION.

Copies of the Crypto Loss Claim Bar Date Order, and other information regarding these chapter 11 cases are available for inspection free of charge on Epiq Corporate Restructuring's website at https://dm.epiqll.com/case/terraform.  The Schedules and other filings in these chapter 11 cases also are available for a fee at the Bankruptcy Court for the District of Delaware's website at http://www.deb.uscourts.gov.  A login identification and password to the Court's Public Access to Court

Electronic Records ("<u>PACER</u>") are required to access this information and can be obtained through the PACER Service Center at <u>http://www.pacer.psc.uscourts.gov</u>.  Copies of the Schedules and other documents filed in these cases also may be examined between the hours of 9:00 a.m. and 4:30 p.m., prevailing Eastern Time, Monday through Friday, at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

If you require additional information regarding the filing of an Eligible Crypto Loss Claim, you may contact Kroll by calling Kroll's toll-free helpline: ((888) 341-7383 (US/Canada Toll Free) / +1 (646) 876-2651 (International)), or emailing Terraforminfo@ra.kroll.com.  **Kroll cannot provide legal advice.**

| |
|---|
| **A HOLDER OF A POSSIBLE CLAIM AGAINST THE WIND DOWN TRUST SHOULD CONSULT AN ATTORNEY REGARDING ANY MATTERS NOT COVERED BY THESE CLC PROCEDURES, SUCH AS WHETHER THE HOLDER SHOULD FILE A CRYPTO LOSS CLAIM.** |

## Schedule I

**List of Eligible Loss Cryptocurrencies**

**Eligible Loss Cryptocurrency Tokens**

|  | Token Address | Token Name | Token Symbol |
|---|---|---|---|
| 1 | terra1kc87mu460fwkqte29rquh4hc20m54fxwtsx7gp | Bonded Luna | BLUNA |
| 2 | uusd | Terra USD | UST |
| 3 | uluna | LUNA | LUNA |
| 4 | terra1yg3j2s986nyp5z7r2lvt0hx3r0lnd7kwvwwtsc | Staked Luna | stLuna |
| 5 | terra14z56l0fp2lsf86zy3hty2z47ezkhnthtr9yq76 | Anchor Token | ANC |
| 6 | terra17y9qkl8dfkeg4py7n0g5407emqnemc3yqk5rup | Stader LunaX Token | LunaX |
| 7 | terra1xj49zyqrwpv5k928jwfpfy2ha668nwdgkwlrg3 | Astroport | ASTRO |
| 8 | terra1g53pyke8jtmt4lwvk4yl0xaqc4u0qlsl8dz3ex | Synthetic UST token, kUST | kUST |
| 9 | terra1kcthelkax4j9x8d3ny6sdag0qmxxynl3qtcrpy | Pylon MINE Token | MINE |
| 0 | terra15gwkyepfc6xgca5t5zefzwy42uts8l2m4g40k6 | Mirror | MIR |
| 11 | terra12hgwnpupflfpuual532wgrxu2gjp0tcagzgx4n | MARS | MARS |
| 12 | terra13xujxcrc9dqft4p9a8ls0w3j0xnzm6y2uvve8n | StarTerra Token | STT |
| 13 | terra12897djskt9rge8dtmm86w654g7kzckkd698608 | Nexus Governance Token | Psi |
| 14 | terra1qsnj5gvq8rgs7yws8x5u02gwd5wvtu4tks0hjm | Coca-Cola | mKO |
| 15 | terra100yeqvww74h4yaejj6h733thgcafdaukjtw397 | Apollo DAO Token | APOLLO |
| 16 | terra1dy9kmlm4anr92e42mrkjwzyvfqwz66un00rwr5 | Valkyrie Token | VKR |
| 17 | terra1mpq5zkkm39nmjrjg9raknpfrfmcfwv0nh0whvn | Nebula Token | NEB |
| 18 | terra1hzh9vpxhsk8253se0vv5jj6etdvxu3nv8z07zu | Anchor Terra USD | aUST |
| 19 | terra1rl20t79ffsrqfa29rke48tj05gj9jxumm92vg8 | C2X | CTX |
| 20 | terra1hnezwjqlhzawcrfysczcxs6xqxu2jawn729kkf | Orne | ORNE |
| 21 | terra1xfsdgcemqwxp4hhnyk4rle6wr22sseq7j07dnn | Kuji | KUJI |
| 22 | terra1yeyr6taynkwdl85ppaggr3zr8txhf66cny2ang | Kinetic Token | KNTC |
| 23 | terra1ptdxmj3xmmljzx02nr4auwfuelmj0cnkh8egs2 | Johnson & Johnson | mJNJ |
| 24 | terra149755r3y0rve30e209awkhn5cxgkn5c8ju9pm5 | The Walt Disney Company | mDIS |
| 25 | terra13zaagrrrxj47qjwczsczujlvnnntde7fdt0mau | Prism cLuna Token | cLuna |
| 26 | terra14v9wrjs55qsn9lkvylsqela3w2ytwxzkycqzcr | SAYVE Token | SAYVE |

| | Token Address | Token Name | Token Symbol |
|---|---|---|---|
| 27 | terra13zx49nk8wjavedjzu8xkk95r3t0ta43c9ptul7 | Glow Token | GLOW |
| 28 | terra14vz4v8adanzph278xyeggll4tfww7teh0xtw2y | Terra Name Service | TNS |
| 29 | terra1drsjzvzej4h4qlehcfwclxg4w5l3h5tuvd3jd8 | NVIDIA Corporation | mNVDA |
| 30 | terra1rh2907984nudl7vh56qjdtvv7947z4dujj92sx | PayPal Holdings Inc | mPYPL |
| 31 | terra17ana8hvzea0q7w367dm0dw48sxwql39qekpt7g | NIKE, Inc. | mNKE |
| 32 | terra1246zy658dfgtausf0c4a6ly8sc2e285q4kxqga | Starbucks Corporation | mSBUX |
| 33 | terra1nef5jf6c7js9x6gkntlehgywvjlpytm7pcgkn4 | LOOPC Token | LOOPC |
| 34 | terra1w8kvd6cqpsthupsk4l0clwnmek4l3zr7c84kwq | Angel Protocol | HALO |
| 35 | terra1dj2cj02zak0nvwy3uj9r9dhhxhdwxnw6psse6p | NIO Inc. | mNIO |
| 36 | terra15k5r9r8dl8r7xlr29pry8a9w7sghehcnv5mgp6 | LUNAVERSE | LUV |
| 37 | terra1zd6let0zg0xjn2sestagxv4ax24a4ml6j40qdr | MintDAO | MINT |
| 38 | terra1mt2ytlrxhvd5c4d4fshxxs3zcus3fkdmuv4mk2 | Bro | BRO |
| 39 | terra13awdgcx40tz5uygkgm79dytez3x87rpg4uhnvu | PlayNity token | PLY |
| 40 | terra1r5506ckw5tfr3z52jwlek8vg9sn3yflrqrzfsc | TerraLand token | TLAND |
| 41 | terra1php5m8a6qd68z02t3zpw4jv2pj4vgw4wz0t8mz | White Whale | WHALE |
| 42 | terra1vwz7t30q76s7xx6qgtxdqnu6vpr3ak3vw62ygk | LUART token | LUART |
| 43 | terra1cl7whtrqmz5ldr553q69qahck8xvk80fm33qjx | Atlo | ATLO |
| 44 | terra17n223dxpkypc5c48la7aqjvverczg82ga3cr93 | Reactor Token | RCT |
| 45 | terra1f62tqesptvmhtzr8sudru00gsdtdz24srgm7wp | RoboHero | ROBO |
| 46 | terra1cdc6nlsx0l6jmt3nnx7gxjggf902wge3n2z76k | Fury | FURY |
| 47 | terra1w0p5zre38ecdy3ez8efd5h9fvgum5s206xknrg | Vault UST | vUST |
| 48 | terra1ng9dsq2m5mw993s0uljj06scrj5g07sq36lq8t | Dogballoon | DOGB |
| 49 | terra1g0pm8xm5c2dq4qtv8j9a80hg4mhe5ndy8qad07 | Lunart | ARTS |
| 50 | terra1m3tdguf59xq3pa2twk5fjte5g6szj5y9x5npy7 | LUNI | LUNI |
| 51 | terra193c42lfwmlkasvcw22l9qqzc5q2dx208tkd7wl | Bitlocus Token | BTL |
| 52 | terra1tlgelulz9pdkhls6uglfn5lmxarx7f2gxtdzh2 | Prism pLuna Token | pLuna |
| 53 | terra1dzhzukyezv0etz22ud940z7adyv7xgcjkahuun | Bonded ETH | BETH |
| 54 | terra1td743l5k5cmfy7tqq202g7vkmdvq35q48u2jfm | Thorstarter Token | XRUNE |

| | Token Address | Token Name | Token Symbol |
|---|---|---|---|
| 55 | terra16wggm67a34msdxasg2vergm2pt289y7930wv7d | TERRNADO TOKEN | TND |
| 56 | terra1kvjscdgwuvwc6uzm4rqfjl6nlmuhj28tequlnc | xterra | XTRA |
| 57 | terra1hmxxq0y8h79f3228vs0czc4uz5jdgjt0appp26 | Terra Moon | MOON |
| 58 | terra1vchw83qt25j89zqwdpmdzj722sqxthnckqzxxp | Local Terra Token | LOCAL |
| 59 | terra1dh9478k2qvqhqeajhn75a2a7dsnf74y5ukregw | Prism Protocol Token | PRISM |
| 60 | terra1rz964297kvt86rteajhtp4hsffhcum0ye8eljh | RESToad Token | TOAD |
| 61 | terra18zqcnl83z98tf6lly37gghm7238k7lh79u4z9a | Bonded ATOM | bATOM |
| 62 | terra1a7ye2splpfzyenu0yrdu8t83uzgusx2malkc7u | Allbridge | ABR |
| 63 | terra1nl9dx4pkat90gzw2j99n338n984e4cw7nxq65w | Terra Reflection - Hold2Earn | H2E |
| 64 | terra16xtp5rmhx4agcas4cyg3srp6m6gauqagh02v9z | DogeKwon | DKWON |
| 65 | terra17wkadg0tah554r35x6wvff0y5s7ve8npcjfuhz | Prism yLuna Token | yLuna |
| 66 | terra1jx4lmmke2srcvpjeereetc9hgegp4g5j0p9r2q | LOOPRC Token | LOOPRC |
| 67 | terra1u2k0nkenw0p25ljsr4ksh7rxm65y466vkdewwj | TerraFloki | TFLOKI |
| 68 | terra14f7u8z4eqpxcrp4xr6knhgfp5n4h68nwy3yzg5 | DogeKwon Terra | DKWON |
| 69 | terra140k6k2pmh2lmy4q4wyz5znqmtgwvs3gkgfeevq | Terra Shiba | tSHIBA |
| 70 | terra1rl4zyexjphwgx6v3ytyljkkc4mrje2pyznaclv | Steak Token | STEAK |
| 71 | terra17jnhankdfl8vyzj6vejt7ag8uz0cjc9crkl2h7 | Digipharm | DPH |
| 72 | terra1a8k3jyv3wf6k3zngza5h6srrxcckdf7zv90p6u | TFLOKI NFT TICKET D1 | TFTIC |
| 73 | terra17qkws34rpkzp5clc86xkyal8235lugj38dhk5v | Terraformer | TFM |
| 74 | terra1l95pyqf2ahqy7c53pejt8v7nnlg060fghs2499 | Dogballoon | DOGB |
| 75 | terra1tgfw423t34rwaezm4u4vwy5d80tfgzuyx2s6x0 | TerraMoonDoge | TMoonDoge |
| 76 | terra19djkaepjjswucys4npd5ltaxgsntl7jf0xz7w6 | Terra World Token | TWD |
| 77 | terra1s5eczhe0h0jutf46re52x5z4r03c8hupacxmdr | Spectrum token | SPEC |
| 78 | terra1aaqzva7adgwtzfkt9nmrmuvkg9s6lmsgtkg3jd | EXP | EXPEDITION |
| 79 | terra1xt9fgu7965kgvunnjts9zkprd8986kcc444q86 | TFLOKI NFT TICKET D2 | TFTICII |

|  | Token Address | Token Name | Token Symbol |
|---|---|---|---|
| 80 | terra1ez46kxtulsdv07538fh5ra5xj8l68mu8eg24vr | loterra | LOTA |
| 81 | terra19mcqz609t5vcudfatwexuhta0mrs49fu9dqj2s | Kingsman DAO | KINGS |
| 82 | terra1l0y8yg0s86x299nqw0p6fhh7ngex3r4phtjeuq | Space Dollars | SDOLLAR |
| 83 | terra15dcd0j3tqtefj96nhqryt59qyr820tyxq3l0dr | Terra Squid | TSquid |
| 84 | terra15tztd7v9cmv0rhyh37g843j8vfuzp8kw0k5lqv | altered | ALTE |
| 85 | terra1a8an0aqzjghcukqrdgnkt3ygzhmaaqza03mc3h | Kernel Token | KVT |
| 86 | terra1zn26hzdegq2c9qa0etqcthk2kjcr6cqeaud7q9 | Apollo DAO | APOLLO |
| 87 | terra14vw4sfqwe7jw8ppcc7u44vq7hy9qa2nlstnxmu | Vitamin Coin | VITC |
| 88 | terra1vte2xv7dr8sfnrnwdf9arcyprqgr0hty5ads28 | TFLOKI NFT TICKET D3 | TFTICIII |
| 89 | terra1u72jtyujxu8dmpxedrrtmt5tekn0usf09r2a9h | Terra META | TMeta |
| 90 | terra1pmf2x6gp8u979q672lkkkruuhe9zarxyu5w7t2 | TFLOKI NFT TICKET D4 | TFTICIV |
| 91 | terra14lmsae6e4d5lu74yt67pkfsdaut4csjtq32a7x | Terra Shiba | tSHIBA |
| 92 | terra1mzxr59qj8qr5plgd8kmqx9vn937qr5vzjd055w | TFLOKI NFT TICKET D5 | TFTICV |
| 93 | terra1lrdzs5tgllwqgawtq2emuzn7snpxq87fzzl44y | DragonSB | SB |
| 94 | terra1jm9jv95f0w3e0kk3kxxvtqg50456mf2c92xd7f | xyz Bonus Token | xyzBONUS |
| 95 | terra1z09gnzufuflz6ckd9k0u456l9dnpgsynu0yyhe | curio | SITY |
| 96 | terra1yzj58vsvryarrasx6rkf9deyn5h60zlm7lzv8r | TFLOKI NFT TICKET D6 | TFTICVI |
| 97 | terra1j7ft2ze4phmcj4x2mnr7cfcns5x5hqjnnt8myj | TALIS | TALIS |
| 98 | terra15uc875u7uu8xyqf833nxwh5x4dm2kmu29u04vl | SDOLLAR NFT TICKET SPACEPETS | SDTICI |
| 99 | terra1sn208s2cmya87707w4r9hf36znv8ml8dcnhr2d | TerraKub | TKUB |
| 100 | terra1aft2zjfhmetslqvy0jg6d0ywhf9r5zf5zqratc | 2 Girls 1 Dkwon | GIDK |
| 101 | terra1f9h22l730vxxj5jmrakuwh3neuhdynwy42ezvv | BURNED TERRA | FIRE |
| 102 | terra17yjdhu7pk865t0jeswtpecukg0uw8xelzvfmdq | hello | HELLO |
| 103 | terra1dameg63csxum2hspscam9h6d33chnqa4wsn3sp | Astroport Finance | ASTRO |
| 104 | terra1vpehfldr2u2m2gw38zaryp4tfw7fe2kw2lryjf | Bitcoin | BTC |

| | Token Address | Token Name | Token Symbol |
|---|---|---|---|
| 105 | terra1em52fj74ezgeqp5s6mp96y494s2gkjmtqy46sq | Terra SpaceX | tSPACEX |
| 106 | terra1twcwynuvhs778m8x46n7e6gyvu7srtkjcaufxd | Terra Pepe | PEPE |
| 107 | terra14mvkydkwm2pzz62cgrkpeusphm4trrqrzd88ju | dosh | DOSH |
| 108 | terra1cvdaetw5ljrtkxax8z0pgpdyhhhln3saxl8xsg | Elon Tweets on Terra | tELONTWEETS |
| 109 | terra1t0csdwp5u9592522n35ededwt2e46sur5u4mkg | META | MVRS |
| 110 | terra1z2u9p4x9cnp7c44rnntxzhgqlnepv8elmde43d | SDOLLAR LOOTOPIANS TICKET | SDLTIC |
| 111 | terra1c5fr3wdf2trj3dkxcckhmzzxlnnpepqn8cu8f8 | Kishu Inu Need | KINU |
| 112 | terra1f3gyvkfwy6lvst5c63gx7alp6547clceaamyyp | Terra Doge | tDOGE |
| 113 | terra1a07n2cp4wd49ezxdgm9xgtfrnpmxfcdp4yrdnv | BORG Token | BORG |
| 114 | terra1y0spkg2up7ddqd98f9d45wacfwjmdvpq702y72 | Terra World Token | TWD |
| 115 | terra158y6aypem94yj34ycvgdm3py23afhnu2dj24ak | TXXC Token | TXXC |
| 116 | terra17raumdxxxlm8smtx2pcxmqpz7qq9am4zfxzl8d | Astroport | ASTRO |
| 117 | terra1677xekxjqc4f3jqut8yr6p29e8h5zfay37et58 | Terra CAT | CAT |
| 118 | terra1dk3g53js3034x4v5c3vavhj2738une880yu6kx | Ethereum | mETH |
| 119 | terra1rhhvx8nzfrx5fufkuft06q5marfkucdqwq5sjw | Bitcoin | mBTC |
| 120 | terra1vxtwu4ehgzz77mnfwrntyrmgl64qjs75mpwqaz | Apple | mAAPL |
| 121 | terra1h8arz2k547uvmpxctuwush3jzc8fun4s96qgwt | Google | mGOOGL |
| 122 | terra14y5affaarufk3uscy2vr6pe6w6zqf2wpjzn5sh | Tesla | mTSLA |
| 123 | terra1jsxngqasf2zynj5kyh0tgq9mj3zksa5gk35j4k | Netflix | mNFLX |
| 124 | terra1csk6tc7pdmpr782w527hwhez6gfv632tyf72cp | QQQ | mQQQ |
| 125 | terra1cc3enj9qgchlrj34cnzhwuclc4vl2z3jl7tkqg | Twitter | mTWTR |
| 126 | terra1227ppwxxj3jxz8cfgq00jgnxqcny7ryenvkwj6 | Microsoft | mMSFT |
| 127 | terra165nd2qmrtszehcfrntlplzern7zl4ahtlhd5t2 | Amazon | mAMZN |
| 128 | terra1w7zgkcyt7y4zpct9dw8mw362ywvdlydnum2awa | Alibaba | mBABA |
| 129 | terra15hp9pr8y4qsvqvxf3m4xeptlk7l8h60634gqec | iShares Gold Trust | mIAU |

| | Token Address | Token Name | Token Symbol |
|---|---|---|---|
| 130 | terra1kscs6uhrqwy6rx5kuw5lwpuqvm3t6j2d6uf2lp | iShares Silver Trust | mSLV |
| 131 | terra1lvmx8fsagy70tv0fhmfzdw9h6s3sy4prz38ugf | United States Oil Fund LP | mUSO |
| 132 | terra1zp3a6q6q4953cz376906g5qfmxnlg77hx3te45 | ProShares VIX Short-Term Futures ETF (Delisted) | mVIXY |
| 133 | terra1mqsjugsugfprn3cvgxsrr8akkvdxv2pzc74us7 | Facebook | mFB |
| 134 | terra18wayjpyq28gd970qzgjfmsjj7dmgdk039duhph | Coinbase | mCOIN |
| 135 | terra18yqdfzfhnguerz9du5mnvxsh5kxlknqhcxzjfr | Robinhood | mHOOD |
| 136 | terra1qqfx5jph0rsmkur2zgzyqnfucra45rtjae5vh6 | ARK Innovation ETF | mARKK |
| 137 | terra1l5lrxtwd98ylfy09fn866au6dp76gu8ywnudls | Galaxy Digital Holdings | mGLXY |
| 138 | terra1u43zu5amjlsgty5j64445fr9yglhm53m576ugh | Square | mSQ |
| 139 | terra1g4x2pzmkc9z3mseewxf758rllg08z3797xly0n | Airbnb | mABNB |
| 140 | terra1aa00lpfexyycedfg5k2p60l9djcmw0ue5l8fhc | SPDR S&P 500 ETF Trust | mSPY |
| 141 | terra19ya4jpvjvvtggepvmmj6ftmwly3p7way0tt08r | Polkadot | mDOT |
| 142 | terra18ej5nsuu867fkx4tuy2aglpvqjrkcrjjslap3z | AMD | mAMD |
| 143 | terra1m6j6j9gw728n82k78s0j9kq8l5p6ne0xcc820p | Gamestop | mGME |
| 144 | terra1qelfthdanju7wavc5tq0k5r0rhsyzyyrsn09qy | AMC Entertainment Holdings | mAMC |
| 145 | terra137drsu8gce5thf6jr5mxlfghw36rpljt3zj73v | Goldman Sachs Group | mGS |
| 146 | terra19cmt6vzvhnnnfsmccaaxzy2uaj06zjktu6yzjx | ProShares VIX Short-Term Futures ETF | mVIXY |
| 147 | terra10h7ry7apm55h4ez502dqdv9gr53juu85nkd4aq | iShares Gold Trust | mIAU |
| 148 | terra1ysx2yfxn7uk6s8ujmnamrv7h6s3egxazt2j69c | solUST | solUST |
| 149 | uaud | Terra AUD | AUT |
| 150 | ucad | Terra CAD | CAT |
| 151 | uchf | Terra CHF | CHT |
| 152 | ucny | Terra CNY | CNT |
| 153 | udkk | Terra DKK | DKT |
| 154 | ueur | Terra EUR | EUT |

| | Token Address | Token Name | Token Symbol |
|---|---|---|---|
| 155 | ugbp | Terra GBP | GBT |
| 156 | uhkd | Terra HKD | HKT |
| 157 | uidr | Terra IDR | IDT |
| 158 | uinr | Terra INR | INT |
| 159 | ujpy | Terra JPY | JPT |
| 160 | ukrw | Terra KRW | KRT |
| 161 | umnt | Terra MNT | MNT |
| 162 | umyr | Terra MYR | MYT |
| 163 | unok | Terra NOK | NOT |
| 164 | uphp | Terra PHP | PHT |
| 165 | usdr | Terra SDR | SDT |
| 166 | usek | Terra SEK | SET |
| 167 | usgd | Terra SGD | SGT |
| 168 | uthb | Terra THB | THT |
| 169 | utwd | Terra TWD | TWT |

**<u>Schedule II</u>**

**List of Airdropped Coins**

**Airdropped Coins**

|   | Token Symbol | Eligibility | Destination Chain |
|---|---|---|---|
| 1 | LUNA2 | LUNC and USTC Holders | Terra2 |
| 2 | ASTRO | ASTRO Holders | Terra2 |
| 3 | VKR | VKR Holders | Terra2 |
| 4 | ORNE | ORNE Holders | Terra2 |
| 5 | GSWIFT | STT Holders | Arbitrum |
| 6 | MARS | MARS Holders | Mars |
| 7 | WHALE | WHALE Holders | Migaloo |
| 8 | APOLLO | APOLLO Holders | Neutron |

## <u>Schedule III</u>

**Read-Only API Key Retrieval Guide**

## <u>Read-Only API Key Retrieval Guide</u>[1]

### Important Please Read First

- You are creating a **read-only API key**, which allows others to view your account activity but not make any changes or withdrawals.
- **NEVER SHARE write-access API keys.** These can allow someone to control your funds. Always double-check the permissions while creating the key.
- Follow these steps carefully for each exchange.
- Please check all exchanges on which you hold Eligible Loss Cryptocurrency for instructions on accessing a read-only API Key on each chain

---

A. Binance

1. **Log In**: Access your Binance account on the official website or app.
2. **Navigate to API Management**:
    ○ Click your profile icon and select **API Management**.
3. **Enable 2FA (if not already enabled)**:
    ○ Set up either **Google Authenticator** or **SMS authentication** in the **Security** settings.
4. **Select 'System-generated API keys'**
5. **Create API Key**:
    ○ Enter a name for the key (e.g., "Read-Only Key").
    ○ Click **Create API** and complete the **2FA verification** (e.g., Google Authenticator and email confirmation).
6. **Set Permissions**:
    ○ Allow access to:
        ■ **Balances and Account Info**: To view holdings and transaction history.
        ■ **Trade History**: To see completed trades.
        ■ **Deposit and Withdrawal History**: To check deposits and withdrawals.
    ○ **Do not enable permissions** for trading or withdrawals.
7. **Save the API Key**:
    ○ Copy and store the API key and **secret key** securely.
8. **Share Safely**: Provide only the API key and secret key. Never share permissions for trading or withdrawals.

**Source**: Binance API Documentation

---

B. KuCoin

1. **Log In**: Access your KuCoin account.

---

[1]   The Plan Administrator will periodically update this Schedule II in the Online Portal to ensure the best available information for accessing API Keys.

2. **Navigate to API Management**: Click your profile icon and select **API Management**.
3. **Create API Key**:
   ○ Click **Create API** and name the key (e.g., "Read-Only Key").
   ○ Set a passphrase as required.
4. **Set Permissions**:
   ○ Allow access to:
      ■ **'Spot Trading'** only
      ■ **Balances and Account Info**: To see your holdings and transaction details.
      ■ **Trade History**: To view all completed trades.
      ■ **Deposit and Withdrawal History**: To check your deposits and withdrawals.
   ○ **Do not enable permissions for trading or withdrawals.**
5. **Input your Trading Password and 2FA code**
6. **Save the API Key**: Store the API key, secret, and passphrase securely.
7. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

**Source**: [KuCoin API Documentation](#)

---

## C.  Bybit

1. **Log In**: Access your Bybit account.
2. **Navigate to API Management**: Click on the 'Profile' icon > **API**.
3. **Create API Key**:
   ○ Click **Create New Key** on the API management page and name it (e.g., "Read-Only Key").
   ○ **Select 'System-generated API keys'**
4. **Set Permissions**:
   ○ Set permissions to 'Read' only and NOT 'Read-Write'
   ○ Allow access to:
      ■ **'Unified Trading'** and **'Spot'**
      ■ **Balances and Account Info**: To view your holdings and transaction history.
      ■ **Trade History**: To see all your completed trades.
      ■ **Deposit and Withdrawal History**: To view deposits and withdrawals.
   ○ **Do not enable permissions for trading or withdrawals.**
5. **Save the API Key**: Store the API key and secret key securely.
6. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

**Source**: [Bybit API Documentation](#)

---

## D.  OKX

1. **Log In**: Access your OKX account.
2. **Navigate to API Management**: Click your profile icon and select **API Keys**.

3

3. **Create API Key**:
   ○ Click **Create New API Key**, set a name (e.g., "Read-Only Key"), and create a passphrase.
4. **Set Permissions**:
   ○ Allow access to:
      ■ **Balances and Account Info**: To view holdings and transaction history.
      ■ **Trade History**: To view completed trades.
      ■ **Deposit and Withdrawal History**: To see deposits and withdrawals.
   ○ **Do not enable permissions for trading or withdrawals.**
5. **Save the API Key**: Store the API key, secret key, and passphrase securely.
6. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

**Source**: OKX API Documentation

---

E.    Gate.io

1. **Log In**: Access your Gate.io account.
2. **Navigate to API Management**: Go to **Security Settings** > **API Keys**.
3. **Create API Key**:
   ○ Click **Create API Key** and name it (e.g., "Read-Only Key").
4. **Set Permissions**:
   ○ Allow access to:
      ■ **Balances and Account Info**: To view holdings and transaction history.
      ■ **Trade History**: To see completed trades.
      ■ **Deposit and Withdrawal History**: To check deposits and withdrawals.
   ○ **Do not enable permissions for trading or withdrawals.**
5. **Save the API Key**: Store the API key and secret key securely.
6. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

**Source**: Gate.io API Documentation

---

F.    Bitfinex

1. **Log In**: Access your Bitfinex account.
2. **Navigate to API Management**: Go to **API Keys** under **Account Settings**.
3. **Create API Key**:
   ○ Click **Create New API Key** and name it (e.g., "Read-Only Key").
4. **Set Permissions**:
   ○ Allow access to:
      ■ **Balances and Account Info**: To view holdings and transaction details.
      ■ **Trade History**: To check completed trades.
      ■ **Deposit and Withdrawal History**: To see deposits and withdrawals.

    ○   **Do not enable permissions for trading or withdrawals.**
5. **Save the API Key**: Store the API key and secret key securely.
6. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

**Source**: [Bitfinex API Documentation](#)

---

## G.  Crypto.com

1. **Log In**: Access your Crypto.com Exchange account.
2. **Navigate to API Management**: Go to **Settings** > **API Keys**.
3. **Create API Key**:
   - Click **Create New API Key** and name it (e.g., "Read-Only Key").
4. **Set Permissions**:
   - Allow access to:
     - **Balances and Account Info**: To view your holdings and transaction details.
     - **Trade History**: To see all completed trades.
     - **Deposit and Withdrawal History**: To check deposits and withdrawals.
   - **Do not enable permissions for trading or withdrawals.**
5. **Save the API Key**: Store the API key and secret key securely.
6. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

**Source**: [Crypto.com API Documentation](#)

---

## H.  MEXC

1. **Log In**: Access your MEXC account.
2. **Navigate to API Management**: Go to **Account Settings** > **API Keys**.
3. **Create API Key**:
   - Click **Create New API Key** and name it (e.g., "Read-Only Key").
4. **Set Permissions**:
   - Allow access to:
     - **Balances and Account Info**: To view your holdings and transaction details.
     - **Trade History**: To see all completed trades.
     - **Deposit and Withdrawal History**: To check deposits and withdrawals.
   - **Do not enable permissions for trading or withdrawals.**
5. **Save the API Key**: Store the API key and secret key securely.
6. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

---

I.    Bitget

1. **Log In**: Access your Bitget account.
2. **Navigate to API Management**: Go to **Settings** > **API Keys**.
3. **Create API Key**:
   - Click **Create API Key** and name it (e.g., "Read-Only Key").
4. **Set Permissions**:
   - Allow access to:
     - **Balances and Account Info**: To view your holdings and transaction details.
     - **Trade History**: To see all completed trades.
     - **Deposit and Withdrawal History**: To check deposits and withdrawals.
   - **Do not enable permissions for trading or withdrawals.**
5. **Save the API Key**: Store the API key and secret key securely.
6. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

J.    Huobi

1. **Log In**: Access your Huobi account.
2. **Navigate to API Management**: Go to **Account Settings** > **API Keys**.
3. **Create API Key**:
   - Click **Create New API Key** and name it (e.g., "Read-Only Key").
4. **Set Permissions**:
   - Allow access to:
     - **Balances and Account Info**: To view your holdings and transaction details.
     - **Trade History**: To see all completed trades.
     - **Deposit and Withdrawal History**: To check deposits and withdrawals.
   - **Do not enable permissions for trading or withdrawals.**
5. **Save the API Key**: Store the API key and secret key securely.
6. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

K.    OKCoin

1. **Log In**: Access your OKCoin account.
2. **Navigate to API Management**: Go to **Settings** > **API Keys**.
3. **Create API Key**:
   - Click **Create New API Key** and name it (e.g., "Read-Only Key").
4. **Set Permissions**:
   - Allow access to:
     - **Balances and Account Info**: To view your holdings and transaction details.
     - **Trade History**: To see all completed trades.
     - **Deposit and Withdrawal History**: To check deposits and withdrawals.

          ○  **Do not enable permissions for trading or withdrawals.**
5. **Save the API Key**: Store the API key and secret key securely.
6. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

---

L.   Bithumb

1. **Log In**: Access your Bithumb account.
2. **Navigate to API Management**: Go to **Account Settings** > **API Keys**.
3. **Create API Key**:
   ○ Click **Create New API Key** and name it (e.g., "Read-Only Key").
4. **Set Permissions**:
   ○ Allow access to:
      ■ **Balances and Account Info**: To view your holdings and transaction details.
      ■ **Trade History**: To see all completed trades.
      ■ **Deposit and Withdrawal History**: To check deposits and withdrawals.
   ○ **Do not enable permissions for trading or withdrawals.**
5. **Save the API Key**: Store the API key and secret key securely.
6. **Share Safely**: Provide only the API key and secret key. Do not share permissions for trading or withdrawals.

---

## What if my Exchange is not found on this list?

Please reach out to the support team of your centralized exchange for detailed instructions on how to generate a read-only API Key.

## Schedule IV

**Glossary of Frequently Used Terms**

1. "Advisory Board" means the body of persons with the rights and powers to enforce the Wind Down Trust and supervise its administration, as set forth in the Wind Down Trust Agreement.

2. "Airdropped" means a gift transfer, such as the gift transfer of Luna 2.0 tokens by the Debtors following the collapse of Luna Classic.

3. "Blockchain Address" means a unique identifier for cryptocurrency wallets and smart contracts.

4. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended from time to time, as applicable to the Chapter 11 Cases.

5. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

6. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

7. "Bridge Protocols" means the protocols operated by TFL that allowed users of Terra Crypto to deposit such Terra Crypto in a Bridge Wallet in exchange for wrapped Tokens for use on the Harmony One Network, the Binance Smart Chain Network, or the Ethereum Network.

8. "Bridge Wallet" means a wallet associated with the Bridge Protocols, which users interact with to obtain wrapped assets on a destination chain and redeem the tokens automatically upon request.

9. "Bridge Wallet Crypto Holder" means a Token Holder entitled to redeem Terra Crypto held in the Bridge Wallets.

10. "Crypto Earnings" means any value you received from all actions you took with Eligible Loss Cryptocurrency, including any gains from transactions before the Second De-Peg that resulted in value received by you on account of your Eligible Loss Cryptocurrency, such as transfers, swaps, trades, staking, rewards, and other transactions, and including any value received on account of hedging and contracts with third parties.

11. "Crypto Loss Amount" means your claim amount, calculated as the value of your Eligible Loss Cryptocurrency at the time you acquired it minus any Crypto Earnings. For the avoidance of doubt, your Crypto Loss Amount is not necessarily the amount of your pro rata distribution from the Wind Down Trust, rather it is the total amount of your Crypto Loss Claim against the Debtors.

12. "Crypto Loss Claim" means any Claim asserted against the Debtors arising from (a) the purchase, sale, or rescission of the purchase or sale of Cryptocurrency, including (i) Terra Crypto, (ii) any wrapped or bridged version on any blockchain of any Terra Crypto, (iii) any

staked or bonded Terra Crypto on any blockchain, (iv) any Terra Crypto on any centralized or decentralized liquidity, lending, or borrowing application or protocol on any blockchain, (v) any receipt or derivative of any Terra Crypto on any blockchain, (vi) any derivatives trading or perpetual swaps of terra Crypto, or any Cryptocurrency that derives a value from Terra Crypto, and (viii) any other Cryptocurrency that was transacted or made available on the TerraLunaClassic and TerraLuna blockchains, and (b) any reimbursement or contribution claims allowed under section 502 of the Bankruptcy Code on account of such claims.

13. "Crypto Loss Claim Bar Date" means April 30, 2025 at 11:59 p.m., prevailing Eastern Time.

14. "Crypto Loss Claim Pool" means any remaining funds in the GUC Pool upon the General Unsecured Claim Payment Completion, plus the SEC Settlement Fund.

15. "Crypto Loss Claim Procedures" means the procedures pursuant to which (i) holders of Crypto Loss Claims may assert such Claims, and (ii) the Plan Administrator will establish a general process and timeline, in accordance with the Wind Down Trust Agreement, for administering and determining the Allowed Claim for each holder of a Crypto Loss Claim, through the filing of the Crypto Loss Claim Procedures Motion and subject to Bankruptcy Court approval, which procedures shall include: (A) notice of the Crypto Loss Claim Procedures and an opportunity to object thereto; (B) notice of the hearing to consider approval of the Crypto Loss Claim Procedures, if necessary; (C) the deadline to file Crypto Loss Claims; (D) instructions for submitting a Crypto Loss Claim; (E) a modified Proof of Claim form specifically as to Crypto Loss Claims; and (F) a notice for holders of Crypto Loss Claims to "opt in" to being a Contributing Claimant.

16. "Crypto Loss Claim Procedures Motion" means the motion seeking approval of the Crypto Loss Claim Procedures, filed in the Bankruptcy Court by the Plan Administrator.

17. "Cryptocurrency" means all digital assets that are traded on a blockchain, broadly defined to include all types of digital assets, including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets. This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum (ETH), USD Coin, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, PYTH, Luna (LUNA), Luna Classic (LUNC), Terra USD (UST), Avalanche (AVAX), Convex (CVX), OHM, Governance OHM, and any other digital asset.

18. "Debtors" means Terraform Labe Pte. Ltd. and Terraform Labs Limited, in each case, solely in its capacity as a debtor in possession under the Bankruptcy Code.

19. "Eligible Loss Cryptocurrency" means Terra Crypto and/or other Cryptocurrency held on the Terra Ecosystem.

20. "GUC Pool" means the Cash pool established pursuant to the Plan for distribution to holders of Allowed General Unsecured Claims, which shall be funded, (i) on the Effective Date, with Effective Date Available Cash and, (ii) after the Effective Date, with (a) Post-Effective Date Cash, (b) any Surplus Reserved Cash, and (c) any Surplus Senior Claim Pool cash, in each

case in accordance with the Waterfall. Upon the General Unsecured Claim Payment Completion, the funds in the GUC Pool shall be released to the Crypto Loss Claim Pool.

21. "Luna 2.0" means the native token on the Terra 2.0 Blockchain that was developed as a response to the Second De-Peg and the collapse of Luna Classic.

22. "Luna 2.0 Earnings" means any value you received on account of airdropped Luna 2.0 on Terra 2.0 as of the Petition Date.

23. "Petition Date" means, for the purposes of the CLC Procedures, January 21, 2024.

24. "Plan" means that certain *Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 416] including any amendments or modifications from time to time in accordance with Section 12.4 of the Plan.

25. "Plan Administrator" means Todd R. Snyder, who has the rights, powers and duties set out in the Wind Down Trust Agreement and is charged with overseeing the tasks outlined in Section 5.4 of the Plan. Where the context allows, references to the Plan Administrator may refer to the Plan Administrator directing or procuring an action of the Wind Down Trustee in its capacity as trustee of the Wind Down Trust in which capacity the Wind Down Trustee is legal owner of the assets comprised in the Wind Down Trust.  The Plan Administrator is Todd R. Snyder.

26. "Preliminary Crypto Loss Claim Bar Date Order" means that certain *Order (I) Establishing a Bar Date to File Preliminary Crypto Loss Proofs of Claim Solely for Voting Purpose, (II) Approving the Form and Manner of Notice for Filing Preliminary Crypto Loss Proofs of Claim, (III) Approving the Form and Manner of Proposed Notice of Preliminary Crypto Loss Claims Bar Date, and (IV) Granting Related Relief* [Docket No. 491].

27. "Preliminary Crypto Loss Proof of Claim Form" means that form which potential claimants were to use to submit a proof of claim for voting purposes only on account of their asserted Crypto Loss Claim.

28. "Private Wallet Crypto Holder" means a Token Holder with Tokens held in wallets or accounts owned or controlled by such Token Holder which are no longer readily accessible through the Debtors' applications or protocols as a result of the Debtors' Wind Down. For the avoidance of doubt, to the extent such Tokens have not been withdrawn by the applicable Private Wallet Crypto Holder by the Private Wallet Bar Date and are accessible to the Debtors after the Private Wallet Bar Date, such Tokens shall be deemed property of the Estates.

29. "Second De-Peg" means the events of May 2022 in which the price of UST became de-pegged from the USD and, along with the price of Luna Classic, began to decline steeply.  For the avoidance of doubt, the Wind Down Trust has defined the Second De-Peg as May 13, 2022, at 6:15 p.m. Eastern Prevailing Time because that is the point at which the Debtors' founder, Do Kwon, notified the public that UST as an algorithmic stablecoin had failed.

30. "Terra-Created Crypto" means any Cryptocurrency created by Terraform.

31. "Terra Ecosystem" is defined as including, but not limited, to the projects, applications, and protocols listed on Debtors' website (https://www.terra.money/ecosystem) as of June 30, 2024 and the projects, applications, and protocols listed on Debtors' website as of May 2022 from the Wayback Machine (https://web.archive.org/web/20220510182304/https://www.terra.money/ecosystem).

32. "Third Party Crypto" means any Cryptocurrency created by a third party (i.e., any Cryptocurrency that is not Terra-Created Crypto).

33. "TFL" means Terraform Labs Pte. Ltd.

34. "TLL" means Terraform Labs Limited, a British Virgin Islands entity.

35. "Token" means a unit of Cryptocurrency.

36. "Token Holder" means a holder of Tokens.

37. "Unclaimed Property" means unclaimed or undeliverable distributions which remain in the possession of the Debtors or the Wind Down Trust, until such time as a distribution becomes deliverable or the holder accepts the distribution, or such distribution reverts back to the Debtors or the Wind Down Trust. Such distributions will be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety days from the date of distribution, and all title to and beneficial interest in such unclaimed or undeliverable distributions shall revert to or remain in the Wind Down Trust automatically and without any need for further order by the Bankruptcy Court.

38. "US Trustee" means the United States Trustee for the District of Delaware.

39. "Verifiable Blockchain" means any of the following: Terra (Classic), Ethereum, Avalanche, Binance Smart Chain, Polygon, Fantom, Moonbeam, Arbitrium, Solana, Osmosis, and Cronos.

40. "Wallet Address" means a unique identifier made up of a string of numbers and letters which is used to send and receive funds on a blockchain.

41. "Wind Down Trust" means the Terraform Wind Down Trust, which is the STAR trust established under Part VIII of the Trusts Act of the Cayman Islands to effectuate the Wind Down, as described in Section 5.5 of the Plan and, where applicable, refers to the Wind Down Trustee acting in its capacity as trustee of the Wind Down Trust.

42. "Wind Down Trustee" means JTC (Cayman) Limited, solely in its capacity as the trustee of the Wind Down Trust, who was appointed pursuant to the Wind Down Trust Agreement, the Plan, and the Confirmation Order.

**EXHIBIT 2**

**Proof of Claim Form**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**
*In re Terraform Labs Pte. Ltd., Inc.*, No. 24-10070

**Crypto Loss Claim Form**

**PLEASE NOTE THAT THIS CLC FORM IS ONLY INTENDED TO PROVIDE CLAMAINTS WITH AN UNDERSTANDING OF WHAT FIELDS WILL BE INCLUDED IN THE CLC FORM ON THE ONLINE PORTAL. CLAIMANTS MAY _NOT_ SUBMIT THIS PAPER COPY OF THE CLC FORM ON ACCOUNT OF THEIR CRYPTO LOSS CLAIM. ALL CLC FORMS MUST BE SUBMITTED THROUGH THE ONLINE PORTAL.**

      **You must complete and submit this crypto loss claim form on the Online Portal (this "<u>CLC Form</u>")** if you hold an Eligible Crypto Loss Claim against the Debtors. Your completed CLC Form will be used to help determine if you qualify for compensation from the Terraform Wind Down Trust (the "<u>Wind Down Trust</u>") on account of your Crypto Loss Claim and the amount of compensation, if any. Please read this CLC Form carefully, as it may affect your rights against the Debtors in these Chapter 11 Cases. You are permitted to consult with or engage an attorney prior to submitting your CLC Form. You must fill out this entire CLC Form on the Online Portal, or your claim may be disallowed unless you remedy the defect.

      Eligible Crypto Loss Claims, as defined in the crypto loss claim procedures (the "<u>CLC Procedures</u>"), must be based on losses stemming from Terra-Created Crypto or other cryptocurrency held on the Terra Ecosystem ("<u>Eligible Loss Cryptocurrency</u>"). A list of cryptocurrencies qualifying as Eligible Loss Cryptocurrencies is attached to the CLC Procedures as <u>Schedule I</u>.

---

**PLEASE FILL OUT AS MUCH INFORMATION IN THIS CLC FORM ON THE ONLINE PORTAL AS YOU CAN. FAILURE TO FILL OUT ANY REQUIRED INFORMATION COULD LEAD TO YOUR CLAIM BEING DISALLOWED.**

**FAILURE TO COMPLETE AND SUBMIT THIS CLC FORM ON THE ONLINE PORTAL BY THE DEADLINE WILL RESULT IN YOU RECEIVING NO DISTRIBUTION ON ACCOUNT OF YOUR CRYPTO LOSS CLAIM.**

---

      This CLC Form and the supporting documents requested below **must be submitted on the Online Portal by April 30, 2025 at 11:59 p.m., prevailing Eastern Time** at the following URL: **claims.terra.money**

      Completing and submitting this CLC Form does **not** mean that your claim will be paid. Your claim will be reviewed by the Plan Administrator, who may request additional information from you.

      If you have questions about this CLC Form, you may call Kroll's toll-free helpline ((888) 341-7383 (US/Canada Toll Free) / +1 (646) 876-2651 (International)). **Kroll cannot provide legal advice.**

PLEASE TAKE NOTICE that the Wind Down Trust will only communicate with you via an email address with the following domain: @ra.kroll.com or @kroll.com.  Please note that if you receive any communication purporting to be from the Wind Down Trust that is not from this email address, these messages **are not authorized messages** from the Wind Down Trust and are **strongly suspected to be phishing scams leading to a phishing site or malware designed to obtain account holders' personally identifiable information, account information, or financial assets.** If you see any suspicious website domains or receive any uncorroborated email, text message, or telephone calls purporting to be from the Plan Administrator or the Wind Down Trust or their advisors claiming that withdrawals are available or requesting account information, personal information, or payment, we request that you please immediately contact the Wind Down Trust's advisors by contacting Kroll at Terraforminfo@ra.kroll.com.

PLEASE TAKE FURTHER NOTICE that the Wind Down Trust will **never** (i) **request that you connect your wallet to receive your distribution** or (ii) contact you by email, telephone call, text message, or otherwise to request account information or other personal information absent an (a) order by the Court or (b) on-the-record instruction from the Court. All submissions of personal information and evidentiary support requested in the CLC Form will occur via the Online Portal.

**Complete this CLC Form as thoroughly and accurately as possible.**

## PART I:  IDENTIFYING INFORMATION

**Claimant Details:**

If natural person (please make sure that this information matches the Claimant's government issued ID):
First Name: _____ Last Name: _____
Middle Initial: _____ Suffix: _____
Date of Birth:  Month: _____Year: _____
Country of Residence: _____
Country of Citizenship:  _____

If entity:
Entity Name: _____
Country of Incorporation (include state if U.S.): _____
Name of Person Completing Form for Entity: _____

Have you ever worked for, been employed by, or been affiliated with any of the following entities: Terraform Labs, Jump Crypto Holdings LLC, Tai Mo Shan Limited, Prairie Operations LLC.

Yes ____ No ____
Which entity or entities? _____

For each listed above:
Start Date of Employment: _____
End Date of Employment: _____

Position(s) held: _____
Job Duties: _____

**Claimant, Entity Representative, or Legal Representative Contact Information:**

**If Claimant is incapacitated, is a minor, or is deceased, please provide the contact information of the Legal Representative submitting the claim.**

**The Wind Down Trust will use the email address provided below for all correspondence, including notice and payment.**

Claimant, Entity Representative, or Legal Representative Email Address:
_____
Claimant, Entity Representative, or Legal Representative Phone Number:
_____

Legal Representative Name (if Claimant is incapacitated, a minor, or deceased):
_____

3

Please also attach documentation demonstrating your authority to serve as a legal representative of the Claimant.

**Attorney or Authorized Agent Contact Information:**

If the Claimant or Entity is represented by an attorney or authorized agent in this matter and you wish for them to receive copies of all notices and other correspondence in this matter, please provide their contact information below.  If you do not want an attorney or authorized agent to receive copies of correspondence, you do not need to list them here.

**Attorney or Authorized Agent:** _____
**Law Firm of Attorney:** _____
**Attorney Email Address:** _____
**Attorney Phone Number:** _____

**Multi-Signature Wallets:**

If your Crypto Loss Claim is based on cryptocurrency held on a "Multisig Wallet" (a single wallet held by multiple users), please check this box: ☐

If you checked the box directly above, please provide the wallet address of the Multisig Wallet as well as each signatory's wallet address and contact email. (You may provide as many corresponding Multisig Wallet signatories as needed on the Online Portal for the below referenced Multisig Wallet address.)

Multisig Wallet address: _____

Signatory wallet address: _____
Signatory email: _____

Signatory wallet address: _____
Signatory email: _____

Signatory wallet address: _____
Signatory email: _____

Signatory wallet address: _____
Signatory email: _____

Signatory wallet address: _____
Signatory email: _____

Signatory wallet address: _____
Signatory email: _____

**If you hold more than one Multisig Wallet or both a Multisig Wallet and at least one Single Signature Wallet, you must submit separate CLC Forms for each Wallet type.  For the avoidance of doubt, if you hold multiple Single Signature Wallets, you must fill out a single**

**CLC Form for ALL of your Single Signature Wallets, in addition to a separate CLC Form(s) for each of your Multisig Wallet(s).**

## PART II: EVIDENTIARY SUPPORT

Failure to fill in this section will result in no compensation from the Wind Down Trust. If you are submitting Preferred Evidence, you do not need to fill out the section under "Manual Evidence." If you are submitting Manual Evidence, you must fill out the section under "Manual Evidence."

**Please submit all Preferred Evidence and Manual Evidence required to support your Eligible Crypto Loss Claim across all platforms and wallets. Preferred Evidence can be submitted directly below, and information about the claims for which you are providing Manual Evidence can be provided in the next section. You will also be required to complete Part III of this CLC Form by indicating what supporting documentation you are attaching to this CLC Form.**

**Preferred Evidence**

**Please provide the blockchain(s) and wallet address(es) for all holdings of Eligible Loss Cryptocurrency (whether you lost or gained with respect to that cryptocurrency) on <u>Verifiable Blockchains</u> (as defined in the CLC Procedures)**. Please note you will need to sign a transaction to verify your ownership of Eligible Loss Cryptocurrency held on Verifiable Blockchains. This transaction will be completed as part of your registration on the Online Portal used to submit your claim. This transaction will not require any payment, but will prove your ownership of the wallet that held the assets underlying your Crypto Loss Claim. (You may provide as many Verifiable Blockchains and Single Signature Wallet Addresses as needed on the Online Portal.)

Verifiable Blockchain:_____
Single Signature Wallet Address: _____

Verifiable Blockchain:_____
Single Signature Wallet Address: _____

Verifiable Blockchain:_____
Single Signature Wallet Address: _____

Verifiable Blockchain:_____
Single Signature Wallet Address: _____

Verifiable Blockchain:_____
Single Signature Wallet Address: _____

**Evidentiary Support for Eligible Loss Cryptocurrency holdings on <u>any other platforms</u>**:  To prove ownership of Eligible Loss Cryptocurrency held on other platforms, please provide your **account ID / user ID** as well as a read-only API Key for all exchanges that support a read-only API Key. Please refer to <u>Schedule II</u> to the CLC Procedures for instructions on how to access and retrieve read-only API keys on several platforms. (You may provide details for as many holdings held on other platforms for all exchanges that support a read-only API Key as needed on the Online Portal.)

Other Platform Name:  _____
Account ID/User ID:  _____
Read-Only API Key:  _____

Other Platform Name:  _____
Account ID/User ID:  _____
Read-Only API Key:  _____

Other Platform Name:  _____
Account ID/User ID:  _____
Read-Only API Key:  _____

Other Platform Name:  _____
Account ID/User ID:  _____
Read-Only API Key:  _____

Other Platform Name:  _____
Account ID/User ID:  _____
Read-Only API Key:  _____

**Please also complete the checklist in Part III of this CLC Form to indicate the supporting documentation you intend to include with this CLC Form.**

**Manual Evidence**

If you held your Eligible Loss Cryptocurrency assets on a blockchain **other than a Verifiable Blockchain** or on an exchange or platform that **does not support a read-only API key**, please attach to this CLC Form: all account balance statements, transaction logs, and deposit logs for all transactions to acquire your Eligible Loss Cryptocurrency as well as all transactions since acquiring your Eligible Loss Cryptocurrency up to the Petition Date.  Please also provide your Account ID/user ID for any account for which you have one.

Please also provide documentation for any contracts, trade agreements, or other documents governing ownership or transfers of the coins underlying your Crypto Loss Claim.

Please also provide documentation for any rewards you earned from liquidity mining, staking, or other rewards programs relevant to your Eligible Crypto Loss Claim.

**In addition to providing the below information, please complete the checklist in Part III of this CLC Form to indicate the supporting documentation you intend to include with this CLC Form.**

List the asserted quantity of Eligible Loss Cryptocurrency purchased **prior to** May 13, 2022 at 6:15 p.m. (prevailing Eastern Time).

| Eligible Loss Crypto Coin | Date of Purchase | Total Asserted Quantity of Eligible Loss Crypto Coin | Loaned Quantity of Eligible Loss Crypto Coin | Purchase Platform/Chain | Wallet Address (if on chain) | Local Time Zone of Transaction |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

List all sales, loans, swaps, rewards sold, staking, and other transactions completed with the assets underlying your Crypto Loss Claim from the time you initially purchased it to the Petition Date (January 21, 2024).  Do not include transactions completed using Eligible Loss Cryptocurrency **purchased** after May 13, 2022.  Do not include losses stemming from transactions completed using (a) borrowed Eligible Loss Cryptocurrency, (b) Eligible Loss Cryptocurrency from the community pool, or (c) a grant or investment from the Debtors.

| Total Eligible Loss Crypto Held Prior to Transaction (list by coin) | Date of Transaction | Type of Transaction | Total Eligible Loss Crypto Coin held following transaction | Transaction Platform/ Chain | Wallet Address (if on chain) | Local Time Zone of Transaction | Transaction Hash (if on-chain) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

List the number of each type of Eligible Loss Cryptocurrency asset held as of the Petition Date (January 21, 2024).

| Eligible Loss Crypto Coin | Total Asserted Quantity of Eligible Loss Crypto Coin | Loaned Quantity of Eligible Loss Crypto Coin | Transaction Platform/Chain | Wallet Address (if on chain) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Do the above quantities held as of the Petition Date include rewards or loans?  Please only include rewards on account of which you have recovered earnings as of the Petition Date.

☐ No

☐ Yes. Attach statement itemizing rewards, loan documents, and any other relevant information, including whether such rewards were sold.

*Please use additional pages as needed.*

**PART III:  SUPPORTING DOCUMENTS FOR CLAIM**

Please ensure the following are attached, if applicable.   A failure to provide supporting documentation, may lead to reduced or no payment from the Wind Down Trust even if it does not render this CLC Form invalid or incomplete.  Please check all that apply:

☐   Claims for Eligible Loss Cryptocurrency held on Verifiable Blockchains:
    ☐   Wallet address(es)
    ☐   Blockchain(s)

☐ Claims for Eligible Loss Cryptocurrency held on other platforms and exchanges where read-only API Keys are available:
    ☐   Other Platform Names
    ☐   User ID / Account ID
    ☐   Read-Only API Key

☐ Claims for Eligible Loss Cryptocurrency held on other platforms and exchanges where read-only API Keys are available:
    ☐   Other Platform Names
    ☐   User ID / Account ID
    ☐   Account balance statements
    ☐   Transaction logs
    ☐   Deposit logs

☐   Documentation for any contracts, trade agreements, or other documents governing ownership or transfers of the coins underlying your Eligible Crypto Loss Claim.

☐   Documentation of any rewards (for which you have recovered earnings) or loans

☐ Other records evidencing ownership of your Eligible Loss Cryptocurrency.  If so, please specify the type of record:

_____

**PART IV:  CONTRIBUTED CLAIMS**

If you purchased your Eligible Loss Cryptocurrency and believe that you may have a claim against third parties (i.e., any persons or entities other than the Debtors), then you have the option to irrevocably contribute such claims to the Wind Down Trust ("Contributed Claims").   In accordance with the Plan and the Wind Down Trust Agreement, the Plan Administrator will review your Contributed Claims and exercise his business judgment in determining whether to pursue such claim.  Such claim may be adjudicated in litigation, binding arbitration, or another forum provided by law.  If the Plan Administrator pursues your third-party claim, you may be asked to provide additional information and documents.  Your decision on whether to contribute any third-party claims to the Wind Down Trust will not affect the Plan Administrator's valuation or adjudication of your Crypto Loss Claim.  Any proceeds of contributed claims that are included in distributions under the Plan will be distributed pro rata to all holders of Allowed Crypto Loss Claims and will not be made only to creditors who elected to contribute claims to the Wind Down Trust.

**By checking this box, you are agreeing to irrevocably contribute to the Wind Down Trust any and all claims you may hold against third parties (*i.e.*, parties other than the Debtors) arising from or related to your purchase of your Eligible Loss Cryptocurrency, *except* to the extent you carve out such claims in the below.  Such claims will include, but not be limited to, any claims arising under federal securities laws or other federal statutes, federal common law, or any applicable state or foreign law.  ☐**

If you have checked the box to contribute your claims, please describe any third party claims you hold that you would ___not___ like to contribute:

_____
_____
_____
_____
_____
_____
_____
_____

**PART V:  CERTIFICATION**

By checking this box, I certify under penalty of perjury that I (or the Claimant) reasonably relied on the Debtors' representations regarding the Terra Ecosystem and I (or the Claimant) did not have advance knowledge of the Debtors' fraud, nor did I (or the Claimant) have access to information that did or should have informed me (or the Claimant) of the Debtors' fraud.  Specifically, I did not know of the misconduct described in the below-listed SEC actions prior to May 13, 2022 at 6:30 p.m., prevailing Eastern Time, nor did I participate in the misconduct described in the below-listed SEC actions: ☐

-   Amended Complaint, *SEC v. Terraform Labs Pte. Ltd., et al.*, 23-cv-1346 (JSR) (S.D.N.Y. Apr. 3, 2023), available here: https://www.sec.gov/files/terraform-labs-pte-ltd-amended-complaint.pdf
-   In the Matter of Tai Mo Shan Ltd. Respondent., SEC Release No. 11349 (Dec. 20, 2024), available here: https://www.sec.gov/files/terraform-labs-pte-ltd-amended-complaint.pdf

By checking this box, I hereby authorize the Plan Administrator to share the information provided in this CLC Form with: (a) the Wind Down Trust, (b) the Advisory Board to the Wind Down Trust, and (c) the respective employees, agents, attorneys, and other advisors to the Wind Down Trust and the Advisory Board.  The Plan Administrator may also share the information in this CLC Form with the SEC and any other government agency and may cite this information in proceedings related to my claim: ☐

By checking this box, I hereby certify under penalty of perjury that my CLC Form includes all information about my gains earned and losses suffered based on my underlying Eligible Loss Cryptocurrency, including all transactions involving Eligible Loss Cryptocurrency.  I am aware that the failure to provide all information regarding my gains and losses across all crypto assets held by me could result in my claim being disqualified: ☐

By checking this box, I agree that the Plan Administrator may coordinate directly with the exchanges included in my CLC Form to verify evidence provided by claimants and, to the extent necessary, direct such exchanges to provide the relevant data to the Plan Administrator: ☐

Under penalty of perjury, I declare the foregoing statements to be true and correct to the best of my knowledge. (**Warning: A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**)

Print Name: _____

Sign Name: _____

Relationship to Claimant:

☐ Self ☐ Entity Representative ☐ Legal Representative ☐ Attorney ☐ Authorized Agent

Date: _____

## **EXHIBIT 3**

**Bar Date Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TERRAFORM LABS PTE. LTD., *et al.*,[1] | ) | Case No. 24-10070 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF DEADLINE FOR THE FILING OF CRYPTO LOSS CLAIMS**

| TO: | **ALL PERSONS AND ENTITIES WHO MAY HAVE CLAIMS AGAINST ANY OF THE FOLLOWING DEBTOR ENTITIES:** |
|---|---|

| DEBTOR | CASE NO. |
|---|---|
| **Terraform Labs Pte. Ltd.** | 24-10070 |
| **Terraform Labs Limited** | 24-11481 |

**PLEASE TAKE NOTICE THAT:**

On January 21, 2024 (the "Petition Date"), Terraform Labs Pte. Ltd. ("TFL"), filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  On July 1, 2024, (the "TLL Petition Date" and together with the Petition Date, the "Petition Dates"), Terraform Labs Limited ("TLL" and together with TFL, the "Post-Effective Date Debtors" and, prior to the Effective Date, the "Debtors") also filed a voluntary petition for relief under the Bankruptcy Code in the Bankruptcy Court.

On May 23, 2024, the Debtors filed the *Motion of Debtor for Entry of an Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim by Governmental Units, (III) Establishing an Amended Schedules Bar Date, (VI) Establishing a Rejection Damages Bar Date, (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Form and Manner of Proposed Notice of Bar Dates, and (VII) Granting Related Relief* [Docket No. 349] (the "General Bar Date Motion") with the Bankruptcy Court.  The General Bar Date Motion did not establish any bar date with respect to Crypto Loss Claims.

On September 20, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 734] (the "Confirmation Order"), confirming the *Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs*

---

[1]    The Post-Effective Date Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited.  The Post-Effective Date Debtors' principal offices are located at 10 Anson Road, #10-10 International Plaza, Singapore 079903.  The Plan Administrator of the Post-Effective Date Debtors is Todd R. Snyder.  The Plan Administrator's principal office is located at 1251 Avenue of the Americas, New York, New York 10020.

*Limited* [Docket No. 717] (the "Plan").[2]  The Plan, among other things, required that the Terraform Plan Administrator (the "Plan Administrator") establish procedures by which holders of Crypto Loss Claims may assert such claims.

On October 1, 2024, the Plan became effective (the "Effective Date") and, in accordance with its terms, all assets of the Debtors were transferred to the Terraform Wind Down Trust (the "Wind Down Trust").

On [_____], 2025 the Plan Administrator filed the *Motion of the Plan Administrator Seeking Entry of an Order (I) Setting the Bar Date for Filing Proofs of Claim on Account of Crypto Loss Claims, (II) Approving the Form of and Manner for Filing Proofs of Claim, (III) Approving Form and Manner of Notice Thereof, and (IV) Approving Related Procedures* [Docket No. 904], seeking approval of the Crypto Loss Claim Procedures (the "CLC Procedures").  On [_____], 2025 the Court entered an order [Docket No. ____] (the "CLC Bar Date Order") approving the CLC Procedures and establishing **April 30, 2025 at 11:59 p.m.** (prevailing Eastern Time) (the "CLC Bar Date") as the deadline by which parties holding Crypto Loss Claims against the Debtors must file proofs of claim.

As used in this Notice, the terms "entity," "persons," and "governmental units" are defined in sections 101(15), 101(41), and 101(27) of the Bankruptcy Code, respectively.

As used in this Notice, the term "claim" means, as to or against the Debtors and pursuant to section 101(5) of the Bankruptcy Code:  (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

## I.    THE CLC BAR DATE

The CLC Bar Date Order establishes the following bar date for filing proofs of claim on account of Crypto Loss Claims in these chapter 11 cases.

*a.*    ***CLC Bar Date***.  **April 30 at 11:59 p.m.** (prevailing Eastern Time), as the CLC Bar Date.  The CLC Bar Date would be the date and time by which all holders of Crypto Loss Claims must submit Crypto Loss Claim Forms (the "CLC Form"), so that such CLC Forms are actually received by the Wind Down Trust's notice and claims agent, Kroll Restructuring Administration LLC ("Kroll") by the CLC Bar Date.  The CLC Bar Date applies to all Crypto Loss Claims against the Debtors that arose or are deemed to have arisen before the Petition Date.

---

[2]    Capitalized terms used but not defined herein have the meaning ascribed to them in the Plan or the CLC Procedures.

## II.    WHO MUST FILE A PROOF OF CLAIM

Except as otherwise set forth herein, any entity holding an Eligible Crypto Loss Claim (as defined below) against the Debtors as of the Petition Date is required to file a Crypto Loss Claim.

An Eligible Crypto Loss Claim is a Crypto Loss Claim that:

a.    stemmed from the purchase of or investment in Eligible Loss Cryptocurrency that (i) was purchased or otherwise acquired before the Second De-Peg and (ii) was rendered worthless or inaccessible as a result of the Second De-Peg and subsequent events leading up to the Petition Date;

b.    resulted in the loss of the claimant's own funds (*i.e.*, you suffered a financial loss);

c.    is reduced for the value received after the claimant's Eligible Loss Cryptocurrency was acquired and prior to the Petition Date; and

d.    is not subject to any of the exclusions included in the CLC Procedures.

An Eligible Crypto Loss Claim does **not** include:

a.    claims for Eligible Loss Cryptocurrency that was purchased on or transferred to the Terra Ecosystem after the Second De-Peg;

b.    all holdings on Terra 2.0 following the Second De-Peg, including all Airdropped Coins;

c.    tokens on the Terra Ecosystem that were recoverable in-kind; or

d.    any losses on account of coins borrowed from the Debtors or losses on assets provided to the claimants from the community pool or from a grant or investment from the Debtors.

## II.    INSTRUCTIONS FOR FILING CRYPTO LOSS CLAIMS

The following requirements shall apply with respect to filing and preparing each proof of claim:

a.    **Part I: Identifying Information**:  To complete Part I of the CLC Form, you must provide all requested claimant details and contact information. Claimants holding Multisig Wallets must submit a list of signatories (with each signatory's wallet address and contact email) and the wallet address of the Multisig Wallet.  Please note that all correspondence will be sent to your provided email address.

3

b.      **Part II: Crypto Holdings and Evidentiary Support**:  The CLC Form allows you to submit two types of evidence:  (i) preferred evidence ("Preferred Evidence") and (ii) manual evidence ("Manual Evidence"). Preferred Evidence includes (a) your blockchain and/or wallet addresses, for Eligible Loss Cryptocurrency held on Verifiable Blockchains, and (b) read-only API Keys, for Eligible Loss Cryptocurrency held on other platforms or exchanges.  Manual Evidence includes screenshots, excel logs, or PDFs generated by the applicable exchange showing account balances, transaction logs, and deposit logs.  For the avoidance of doubt, Manual Evidence will not be accepted (i) for Eligible Loss Cryptocurrency held on Verifiable Blockchains or (ii) for exchanges that support read-only API Keys.

To complete Part II, you must provide evidentiary support for all Eligible Loss Cryptocurrency underlying your Crypto Loss Claim, across all exchanges and wallets on which you hold Eligible Loss Cryptocurrency.

Evidentiary Support:

      i.      For any Eligible Loss Cryptocurrency held on a Verifiable Blockchain, you must provide the applicable blockchain(s) and wallet address(es).  Manual Evidence will not be accepted to support claims for Eligible Loss Cryptocurrency held on Verifiable Blockchains.

      ii.      For any Eligible Loss Cryptocurrency held on a non-Verifiable Blockchain, or on other platforms or exchanges, you must provide:

         (A)      Preferred Evidence:  To the extent an exchange supports read-only API Keys, you must provide the read-only API Key for each exchange on which you hold Eligible Loss Cryptocurrency.

               Please refer to **Schedule 3** to the CLC Procedures for links to several exchange's instructions on how to access and retrieve read-only API Keys.

         (B)      Manual Evidence:  If your Eligible Loss Cryptocurrency is held on a blockchain that is not a Verifiable Blockchain, or if an exchange does not support read-only API Keys, you must provide Manual Evidence to support your Crypto Loss Claim.  For the avoidance of doubt, if all of your Eligible Loss Cryptocurrency is supported by Preferred Evidence in subsections (i) and (ii)(A)

4

above, you do not need to submit any of the Manual Evidence requested in this subsection (ii)(B).

(C)     You must also provide documentation for any contracts (including insurance contracts), trade agreements, or other documents governing ownership or transfers of the Eligible Loss Cryptocurrency underlying your Eligible Crypto Loss Claim.

If you are unable to submit the Preferred Evidence in subsections (i) or (ii)(A) above, (*e.g.*, the only evidence submitted is in accordance with section (ii)(B) above), your Crypto Loss Claim will be subject to additional review (an "Individualized Review").

**The Plan Administrator reserves the right to coordinate directly with exchanges and other platforms to confirm the accuracy of the evidence provided by claimants.  If any claimant fails to comply with these CLC Procedures, including (a) failure to provide all staking information and wallet addresses, (b) failure to disclose information that would reduce their claim, or (c) providing unverifiable data, the Plan Administrator will seek to disallow such claimant's claim in its entirety for insufficient documentation.  Further, if it is discovered that any claimant had advance knowledge of the Debtors' actions giving rise to the judgment against the Debtors in the Final Judgment Against Defendants Terraform Labs Pte. Ltd. and Do Hyeong Kwon in the SEC Enforcement Action, the Plan Administrator will seek to subordinate or disallow such claimant's Crypto Loss Claim.**

c.     **Part III: Supporting Documents for Claim**:  To complete Part III, you must include all applicable supporting documentation and check the applicable boxes for the documents you are enclosing.  Failure to provide supporting documentation may lead to your claim being disallowed.  All applicable supporting documentation, including but not limited to any blockchain or wallet addresses, any read-only API Keys, and any account balance statements, transaction logs, and contracts or trade agreements governing ownership or transfer of the tokens must be attached to your CLC Form unless it is included in the CLC Form itself.

d.     **Part IV: Contributed Claims**: If you purchased your Eligible Loss Cryptocurrency and believe that you may have a claim against third parties (*i.e.*, any persons or entities other than the Debtors), then you have the option to irrevocably contribute such claims to the Wind Down Trust ("Contributed Claims").  In accordance with the Plan and the Wind Down Trust Agreement, the Plan Administrator will review your Contributed Claims and exercise his business judgment in determining whether to pursue such claim.  Such claims may be adjudicated in litigation, binding

arbitration, or another forum provided by law.  If the Plan Administrator pursues your third-party claim, you may be asked to provide additional information and documents.  A claimant's decision on whether to contribute any third-party claims to the Wind Down Trust will not affect the Plan Administrator's valuation or adjudication of their Crypto Loss Claim.  Any proceeds of contributed claims that are included in distributions under the Plan will be distributed pro rata to all holders of Allowed Crypto Loss Claims and will not be made only to creditors who elected to contribute claims to the Wind Down Trust.

e.    **Part V: Certification**: To complete Part V and submit the CLC Form, you must certify under penalty of perjury that all statements you gave in the CLC Form were true and correct to the best of your knowledge.  Your digital date stamped signature will be deemed an original signature.

f.    Miscellaneous Provisions.

i.    <u>Contents</u>.  Each CLC Form must:  (i) be submitted in English; (ii) be fully complete using the CLC Form provided by the Wind Down Trust; (iii) include the supporting documentation requested by the CLC Form; and (iv) be digitally signed by the claimant or by an authorized agent or legal representative of the claimant.

ii.    <u>Online Portal Notifications</u>.  By registering to submit an Eligible Crypto Loss Claim via the Online Portal, the Wind Down Trust can track claimants' progress and notify them of the status of their claim and/or request additional information.

iii.    <u>Timely Service.</u>  Each CLC Form must be filed, including supporting documentation, so as to be actually received through the Online Portal on or before the CLC Bar Date.

---

**PROOFS OF CLAIM SUBMITTED BY PHYSICAL MAIL, FACSIMILE, OR ELECTRONIC MAIL WILL NOT BE ACCEPTED.**

---

**CONSEQUENCES OF FAILING TO TIMELY FILE YOUR PROOF OF CLAIM**

Pursuant to the CLC Bar Date Order and pursuant to Bankruptcy Rule 3003(c)(2), if you or any party or entity who is required, but fails, to file an Eligible Crypto Loss Claim in accordance with the CLC Bar Date Order on or before the CLC Bar Date, please be advised that:

YOU WILL NOT RECEIVE ANY DISTRIBUTION IN THESE CHAPTER 11 CASES ON ACCOUNT OF THAT CLAIM.

**RESERVATION OF RIGHTS**

Nothing contained in this Notice is intended to or should be construed as a waiver of the Plan Administrator's right to: (a) dispute, or assert offsets or defenses against, any filed claim or any claim listed or reflected in the Schedules as to the nature, amount, liability, or classification thereof; (b) subsequently designate any scheduled claim as disputed, contingent, or unliquidated; and (c) otherwise amend or supplement the Schedules.

The Plan Administrator reserves the right to coordinate directly with exchanges and other platforms to verify the evidence provided by you. If you fail to comply with the CLC Procedures, including (a) failure to provide all staking information and wallet addresses or (b) failure to disclose information that would mitigate your claim, the Plan Administrator will disallow your claim in its entirety for insufficient documentation. Further, if it is discovered that you had advance knowledge of the Debtors' actions giving rise to the judgment against the Debtors in the Final Judgment Against Defendants Terraform Labs Pte. Ltd. and Do Hyeong Kwon in the SEC Enforcement Action, the Plan Administrator will seek to subordinate or disallow your Crypto Loss Claim.

**PHISHING ATTEMPTS**

**PLEASE TAKE NOTICE** that, if you see any suspicious website domains or receive any uncorroborated email, text message, or telephone calls purporting to be from the Plan Administrator or the Wind Down Trust or their advisors claiming that withdrawals are available or requesting account information, personal information, or payment, we request that you please immediately contact the Wind Down Trust's advisors by contacting Kroll at Terraforminfo@ra.kroll.com.

**ADDITIONAL INFORMATION**

Copies of the Crypto Loss Claim Bar Date Order, and other information regarding these chapter 11 cases are available for inspection free of charge on Epiq's website at https://dm.epiq11.com/case/terraform. Other filings in these chapter 11 cases also are available for a fee at the Court's website at http://www.deb.uscourts.gov. A login identification and password to the Court's Public Access to Court Electronic Records ("PACER") are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov. Copies of other documents filed in these cases also may be examined between the hours of 9:00 a.m. and 4:30 p.m., prevailing Eastern Time, Monday through Friday, at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

If you require additional information regarding the filing of a proof of claim, you may call Kroll's toll-free helpline ((888) 341-7383 (US/Canada Toll Free) / +1 (646) 876-2651 (International)).

**A HOLDER OF A POSSIBLE CRYPTO LOSS CLAIM AGAINST THE DEBTORS SHOULD CONSULT AN ATTORNEY REGARDING ANY MATTERS NOT COVERED BY THIS NOTICE, SUCH AS WHETHER THE HOLDER SHOULD FILE A CLC FORM.**

[*Remainder of page intentionally left blank*]

## **EXHIBIT 4**

**Publication Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TERRAFORM LABS PTE. LTD., *et al.*,[1] | ) Case No. 24-10070 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF DEADLINE FOR THE FILING OF CRYPTO LOSS CLAIMS**

---

**THE CRYPTO LOSS CLAIM BAR DATE IS APRIL 30, 2025 AT 11:59 P.M.
(PREVAILING EASTERN TIME)**

---

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

**Deadline for Filing Crypto Loss Claims**. On [_____] 2025, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No. [____]] (the "CLC Bar Date Order") establishing a deadline for the filing of proofs of claim on account of Crypto Loss Claims in the chapter 11 cases of the Terraform Wind Down Trust on behalf of the jointly–administered estates of Terraform Labs Pte. Ltd., *et al*. (collectively, the "Post-Effective Date Debtors," and, prior to the Effective Date, the "Debtors").

| **TO:** | **ALL PERSONS AND ENTITIES WHO MAY HAVE CLAIMS AGAINST ANY OF THE FOLLOWING DEBTOR ENTITIES:** | |
|---|---|---|
| | **DEBTOR** | **CASE NO.** |
| | **Terraform Labs Pte. Ltd. ("TFL")** | 24-10070 |
| | **Terraform Labs Limited ("TLL")** | 24-11481 |

**The CLC Bar Date**. Pursuant to the CLC Bar Date Order, *all* entities, including individuals, partnerships, estates, and trusts, who have a Crypto Loss Claim against the Debtors that arose before January 21, 2024 (the "Petition Date"), no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A CLC FORM on or before ***April 30, 2025 at 11:59 p.m.*** (prevailing Eastern Time) (the "CLC Bar Date").

**Filing a CLC Form**. Each CLC Form must be filed, including supporting documentation, so as to be ***actually*** ***received*** by the Wind Down Trust's notice and claims agent, Kroll Restructuring Administration ("Kroll"), on or before the CLC Bar Date electronically through the Online Portal available at claims.terra.money.

---

[1]   The Post-Effective Date Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited. The Post-Effective Date Debtors' principal offices are located at 10 Anson Road, #10-10 International Plaza, Singapore 079903. The Plan Administrator of the Post-Effective Date Debtors is Todd R. Snyder. The Plan Administrator's principal office is located at 1251 Avenue of the Americas, New York, New York 10020.

**Contents of CLC Form**.  Each CLC Form must be completed in its entirety in accordance with the CLC Procedures, including as follows:

**Part I: Identifying Information**:  To complete Part I of the CLC Form, you must provide all requested claimant details and contact information.  Claimants holding Multisig Wallets must submit a list of signatories (with each signatory's wallet address and contact email) and the wallet address of the Multisig Wallet.  Please note that all correspondence will be sent to your provided email address.

**Part II: Crypto Holdings and Evidentiary Support**:  The CLC Form allows you to submit two types of evidence:  (i) preferred evidence ("Preferred Evidence") and (ii) manual evidence ("Manual Evidence").  Preferred Evidence includes (a) your blockchain and/or wallet addresses, for Eligible Loss Cryptocurrency held on Verifiable Blockchains, and (b) read-only API Keys, for Eligible Loss Cryptocurrency held on other platforms or exchanges.  Manual Evidence includes screenshots, excel logs, or PDFs generated by the applicable exchange showing account balances, transaction logs, and deposit logs.  For the avoidance of doubt, Manual Evidence will not be accepted (i) for Eligible Loss Cryptocurrency held on Verifiable Blockchains or (ii) for exchanges that support read-only API Keys.

To complete Part II, you must provide evidentiary support for all Eligible Loss Cryptocurrency underlying your Crypto Loss Claim, across all exchanges and wallets on which you hold Eligible Loss Cryptocurrency, in accordance with the CLC Procedures.

**Part III: Supporting Documents for Claim**:  To complete Part III, you must include all applicable supporting documentation and check the applicable boxes for the documents you are enclosing.  Failure to provide supporting documentation may lead to your claim being disallowed.  All applicable supporting documentation, including but not limited to any blockchain or wallet addresses, any read-only API Keys, and any account balance statements, transaction logs, and contracts or trade agreements governing ownership or transfer of the tokens must be attached to your CLC Form unless it is included in the CLC Form itself.

**Part IV: Contributed Claims**:  If you purchased your Eligible Loss Cryptocurrency and believe that you may have a claim against third parties (*i.e.*, any persons or entities other than the Debtors), then you have the option to irrevocably contribute such claims to the Wind Down Trust ("Contributed Claims").  In accordance with the Plan and the Wind Down Trust Agreement, the Plan Administrator will review your Contributed Claims and exercise his business judgment in determining whether to pursue such claim.  Such claims may be adjudicated in litigation, binding arbitration, or another forum provided by law.  If the Plan Administrator pursues your third-party claim, you may be asked to provide additional information and documents.  A claimant's decision on whether to contribute any third-party claims to the Wind Down Trust will not affect the Plan Administrator's valuation or adjudication of their Crypto Loss Claim.  Any proceeds of contributed claims that are included in distributions under the Plan will be distributed pro rata to all holders of Allowed Crypto Loss Claims and will not be made only to creditors who elected to contribute claims to the Wind Down Trust.

**Part V: Certification**:  To complete Part V and submit the CLC Form, you must certify under penalty of perjury that all statements you gave in the CLC Form were true and correct to the best of your knowledge.  Your digital date stamped signature will be deemed an original signature.

**Miscellaneous Provisions:**

Contents.  Each CLC Form must:  (i) be submitted in English; (ii) be fully complete using the CLC Form provided by the Wind Down Trust; (iii) include the supporting documentation requested by the CLC Form; and (iv) be digitally signed by the claimant or by an authorized agent or legal representative of the claimant.

Online Portal Notifications.  By registering to submit an Eligible Crypto Loss Claim via the Online Portal, the Wind Down Trust can track claimants' progress and notify them of the status of their claim and/or request additional information.

Timely Service.  Each CLC Form must be filed, including supporting documentation, so as to be ***actually*** ***received*** through the Online Portal on or before the CLC Bar Date.

**Phishing Attempts**.  If you see any suspicious website domains or receive any uncorroborated email, text message, or telephone calls purporting to be from the Plan Administrator or the Wind Down Trust or their advisors claiming that withdrawals are available or requesting account information, personal information, or payment, we request that you please immediately contact the Wind Down Trust's advisors by contacting Kroll at Terraforminfo@ra.kroll.com.

**Additional Information**.  If you require additional information regarding the filing of a CLC Form, you may contact the Wind Down Trust's claims agent for Crypto Loss Claims, Kroll, by calling Kroll's toll-free helpline at:  (888) 341-7383 (U.S. & Canada) or +1 (646) 876-2651 (International), or via email at Terraforminfo@ra.kroll.com.  ***Please note*** that Kroll ***cannot*** offer legal advice or advise whether you should file a proof of claim.

If you require additional information regarding the filing of an Eligible Crypto Loss Claim, you may call Kroll's toll-free helpline (888) 341-7383 (US/Canada Toll Free) / +1 (646) 876-2651 (International).

---

**A HOLDER OF A POSSIBLE CRYPTO LOSS CLAIM AGAINST THE DEBTORS SHOULD CONSULT AN ATTORNEY REGARDING ANY MATTERS NOT COVERED BY THIS NOTICE, SUCH AS WHETHER THE HOLDER SHOULD FILE A CLC FORM.**

---

*[Remainder of page intentionally left blank]*