UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | . Chapter 11 |
| | . Case No. 24-10070 (BLS) |
| TERRAFORM LABS PTE. | . |
| LTD., *et al.*, | . (Jointly Administered) |
| | . |
| | . Courtroom No. 1 |
| | . 824 Market Street |
| Debtor. | . Wilmington, Delaware 19801 |
| | . |
| | . Monday, March 10, 2025 |
| . . . . . . . . . . . . . . . | 11:01 a.m. |

TRANSCRIPT OF ZOOM HEARING
BEFORE THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Plan
Administrator:        Christopher S. Koenig, Esquire
                      KIRKLAND & ELLIS, LLP
                      KIRKLAND & ELLIS INTERNATIONAL, LLP
                      333 West Wolf Point Plaza
                      Chicago, Illinois 60654

For the Beltran
Claimants:            Erin E. Diers, Esquire
                      HUGHES HUBBARD & REED, LLP
                      One Battery Park Plaza
                      New York, New York 10004

(APPEARANCES CONTINUED)

Audio Operator:       Shaheed Austin, Jr., ECRO

Transcription Company: Reliable
                       The Nemours Building
                       1007 N. Orange Street, Suite 110
                       Wilmington, Delaware 19801
                       Telephone: (302)654-8080
                       Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1  APPEARANCES (CONTINUED):

2  For the Foreign
   Representative of
3  Three Arrows
   Capital, Ltd.:            Richard A. Bixter, Jr., Esquire
4                            HOLLAND & KNIGHT, LLP
                             1501 North Riverside Plaza
5                            Suite 2700
                             Chicago, Illinois 60606
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

INDEX

| MOTIONS: | | PAGE |
|---|---|---|
| Agenda Item 1: | Status Conference regarding the Motion of the Plan Administrator Seeking Entry of an Order (I) Setting the Bar Date for Filing Proofs of Claim on Account of Crypto Loss Claims, (II) Approving the Form of and Manner for Filing Proofs of Claim, (III) Approving Form and Manner of Notice Thereof, and (IV) Approving Related Procedures filed January 31, 2025 [Docket No. 904] | 5 |
| | Court's Ruling: | 10 |
| Transcriptionist's Certificate | | 13 |

1       (Proceedings commenced at 11:01 a.m.)

2               THE COURT:  Good afternoon, all.

3               This is Judge Shannon.  I understand from the

4  court reporter that necessary parties have joined.

5               This is a hearing in the matter of Terraform Labs

6  Case Number 24-10070, and this is a hearing that's been

7  requested by counsel, following up on our hearing a week or

8  more ago, in which the Court ruled on a motion that was

9  brought by the trustee and there is a dispute between the

10 parties, as I understand it, with respect to the Court's

11 ruling and memorializing that in a form of order.

12              I will hear first from counsel for the debtor, and

13 a couple of things that I would mention before I do that,

14 and, again, I appreciate the parties getting on the phone.

15 It is, I assume, no secret, this is my preferred way of

16 dealing with these kinds of things; it's just faster than a

17 bunch of long letters going back and forth.  And I think I

18 understood at the conclusion of the hearing that it might be

19 a little tricky to memorialize the form of order and then

20 there was some colloquy at the end of the hearing, with

21 respect to additions to be made to it, and I think that's

22 where the real rub has been.

23              I see Mr. Koenig on the line.  I also see other

24 folks.

25              So, Mr. Koenig, good morning; it's good to see

1  you.  And you may proceed.
2              MR. KOENIG:  Good morning, Judge Shannon.
3              Chris Koenig from Kirkland & Ellis, on behalf of
4  the Terraform plan administrator.
5              Can you hear me okay?
6              THE COURT:  I sure can, yeah.
7              MR. KOENIG:  Great.  Thank you, Your Honor.
8              So, following the hearing, we came up with
9  language, which we had on February 28th, that we believe
10 implemented the Court's oral ruling.  We made revisions to
11 our draft, reflecting comments from the foreign
12 representative to Three Arrows and we also received a sign-
13 off on our revised order from the Securities and Exchange
14 Commission.
15             We have not been able to reach a meeting of the
16 minds with the Beltran Claimants.  The disagreement that we
17 have, Your Honor, is pretty straightforward.  The plan
18 administrator believes it is appropriate to include language
19 in the procedures that I'll call the "warning language."
20 That warning language just tells claimants that if they
21 submit manual evidence when preferred evidence is available,
22 the plan administrator intends to seek to disallow their
23 claim and that that determination will be subject to the
24 dispute-resolution procedures that are in the CLC procedures
25 that Your Honor approved.

1           But we believe that that warning is appropriate,
2  just so that claimants are on full notice of the consequences
3  of their actions.  It is --
4           THE COURT:  So, I want to make sure I understand
5  the context.
6           MR. KOENIG:  Uh-huh.
7           THE COURT:  We had a lengthy discussion, I think,
8  in our hearing about the difference between preferred and
9  manual evidence.  One of the issues that was, I think,
10 candidly disclosed or discussed by the parties, was the
11 prospect that preferred evidence might actually, for lack of
12 a more elegant term, preferred evidence might include a
13 greater risk of hacking or disclosure of information.  And so
14 I think part of the discussion was whether you'd anticipate
15 that parties might prefer to go the manual route rather than
16 leaving themselves at risk.
17           Is that a fair -- I'm just trying to make sure my
18 notes were correct from the discussion that we had a couple
19 of weeks ago.
20           MR. KOENIG:  Your Honor, you're right; the manual
21 evidence, the concern the Beltran Claimants had was one of
22 hack or inadvertent disclosure or phishing or whatever the
23 right way to describe it is.
24           The concern that the plan administrator had was,
25 as I think we also discussed at the hearing, the manual

1 evidence is more subject to manipulation and, you know, if
2 somebody just sends, say in a PDF or an Excel spreadsheet,
3 and we have no way of verifying that evidence, it's going to
4 be difficult for the plan administrator to determine whether
5 what the claimant is telling them is the truth.
6      And that's pretty different from a typical
7 Chapter 11 case where the debtor has books and records and
8 some sort of a business relationship, contracts, invoices,
9 all those sorts of things.  As we discussed at the last
10 hearing, we don't have any such records, and so we're really
11 relying on what the claimants tell us.
12      And, again, the claimant can submit whatever
13 evidence they want, it is their claim, but there might be
14 consequences to that, including that the plan administrator
15 may choose to object on the basis that the manual evidence of
16 the thing submitted is not verifiable.  But the claimants
17 will have their rights to pursue their claim in front of the
18 Court if they don't agree with that.
19      But we think that this warning language is
20 appropriate to make sure that claimants are on notice of what
21 the plan administrator intends to do.  And, again, the
22 language includes a *caveat* that they, that this determination
23 will be subject to the dispute resolution process and doesn't
24 preclude their claim from being allowed if Your Honor hears
25 the claim and determines that the manual evidence is

1 sufficient to support their claim.
2         THE COURT:  Okay.  I think I understand.  And,
3 again, I saw in your email, the highlighted language that is
4 the subject of dispute.
5         Miss -- is it Diers or Diers; I want to make sure
6 I get it right.
7         MS. DIERS:  It's Diers, but I'll take either.
8     (Laughter)
9         MS. DIERS:  Erin Diers from Hughes Hubbard --
10         THE COURT:  Thank you.
11         MS. DIERS:  -- for the Beltran Claimants.
12         THE COURT:  Good morning.  Good to see you.
13         MS. DIERS:  Good to see you, as well.  Thank you
14 for taking the time to speak with us.  I agree that this is a
15 more productive way to resolve our dispute, which I think I
16 agree with Mr. Koenig, it's quite narrow.
17         I think when we were here on February 26th, we
18 discussed two issues.  One was that the claimants' concerns
19 about these data leaks or hacks, of their API keys are
20 legitimate and real, and the other is that crypto claimants,
21 while sophisticated in many areas, are generally not very
22 sophisticated in bankruptcy matters and that claim procedures
23 shouldn't be used to intimidate those claimants.
24         Our concern with the proposed language is it will
25 do exactly that.  The language that we take issue with is the

1  language that the plan administrator is very likely to seek
2  to disallow your crypto loss claim, in whole or in part, if
3  you provide manual evidence.
4           Our understanding of the ruling from two weeks ago
5  was there would be -- they would be taken off the fast-track;
6  it would be -- they wouldn't be part of a convenience class,
7  I think, was the analogy that was used, but not that there
8  would be an automatic, presumed disallowance of the claim.
9           And our concern is that anyone who is not immersed
10 in bankruptcy procedural rules on claim objections sees "very
11 likely to seek to disallow your crypto loss claim," as you
12 have to provide preferred evidence, which was, I think, from
13 my understanding of the ruling, not what the Court was
14 requiring.  So I think it's a sort of semantics issue that
15 we're taking issue with, and we just think that that
16 particular legal language that was highlighted in the plan
17 administrator's counsel's email to you is what's problematic
18 in our view.
19          THE COURT:  Okay.  I understand.
20          Mr. Bixter, I believe you represent Three Arrows.
21 Did you have anything you wish to add to the discussion this
22 morning?
23          MR. BIXTER:  Not on these points.  We've been able
24 to resolve all our issues with the plan administrator.
25          THE COURT:  Very good.

1            All right.  Well, again, I appreciate the parties
2  raising this to me; again, I think this is the most
3  productive way to deal with it.
4            I am very sensitive to the concern that Ms. Diers
5  identified about intimidating or appearing to bully claimants
6  that may not be sophisticated, but I actually believe that
7  the language largely represents the Court's ruling.
8            In light of the concern, the one change that I
9  would make would be to remove the word "very" from in front
10 of "likely."
11           MR. KOENIG:  Okay.
12           THE COURT:  Because -- and it seems -- they seem
13 like a ticky-tack thing, but, actually, I think that there's
14 a difference between "likely" and "very likely."  And it may
15 be that your assessment is you're going to be very likely,
16 but if you haven't seen the manual evidence yet and you're
17 not necessarily certain of what the project will be, and I
18 don't think we need to necessarily define the path that we're
19 going.
20           But the way that I recall the discussion was that
21 I think it actually is important, because I think claimants
22 should know that the plan trustee will not be neutral as to
23 the evidence, you know, you can send in a picture of this or
24 you can send in something more robust.  Normally, if you have
25 that kind of a situation, that's like being asked for one of

1   three different kinds of identification and the recipient is
2   indifferent about that.
3          And, really, the facts are that the recipient of
4   the information, which is the plan trustee, is not
5   indifferent about the nature or the quality of the stuff and
6   I think it does need to be communicated.
7          Ms. Diers' concern about intimidating folks is
8   well-founded, but I think it's equally important that parties
9   be actually notified that there may be hard consequences to
10  the decision.  And, again, from Mr. Koenig's comments, my
11  expectation would be not that the process will conclude with
12  a lack of satisfaction with the manual evidence, but at that
13  point, they will have an opportunity to -- they'll,
14  presumably, get objected to -- and, Mr. Koenig, confirm if
15  I'm right -- they would presumably get objected to.  They
16  would say, We're not impressed with your evidence; you need
17  to give us something better.  And they will either have an
18  opportunity to give you more screenshots or more
19  correspondence or an opportunity to respond with, you know,
20  the preferred evidence.
21         But, clearly, you know, if somebody contacted me
22  and said, you know, you can, you know, fulfill this function
23  by sending me a picture or by putting into this email your
24  name, Social Security number, bank account information, and
25  credit card number, I'm going to go with the picture.  And

1  it's important to know that, to communicate that, again.
2              This is sort of an unusual situation; I think it's
3  kind of bespoke, but I think it is responsive to the peculiar
4  circumstances of this case.  So with that one modification, I
5  would be prepared to enter the proposed form of order.
6              Are there any questions?
7              MR. KOENIG:  Not from the plan administrator, Your
8  Honor.  Thank you for the time this morning.
9              THE COURT:  Sure.
10             Ms. Diers?
11             MS. DIERS:  No questions, thank you.
12             THE COURT:  Do we have anything else this morning?
13             MR. KOENIG:  No, thank you, Judge.
14             THE COURT:  Very good.
15             All right.  Well, thank you very much.  I
16 appreciate your time this morning.
17             We are adjourned.
18             MR. KOENIG:  Bye-bye.
19         (Proceedings concluded at 11:11 a.m.)
20
21
22
23
24
25

1 CERTIFICATION

2 I certify that the foregoing is a correct
3 transcript from the electronic sound recording of the
4 proceedings in the above-entitled matter to the best of my
5 knowledge and ability.

7 /s/ William J. Garling                 March 17, 2025
8 William J. Garling, CET-543
9 Certified Court Transcriptionist
10 For Reliable