UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 11 |
|  | . |  |
|  | . | Case No. 24-10070(BLS) |
| TERRAFORM LABS PTE., LTD, | . |  |
| et al, | . | 824 Market Street |
|  | . | Wilmington, Delaware 19801 |
| Post-Effective Date Debtors. | . |  |
| . . . . . . . . . . . . . . . . . | . | Wednesday, February 18, 2026 |

TRANSCRIPT OF VIDEO HEARING
BEFORE THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA ZOOM:   (On the Record)

For the Plan
Administrator:                 Christopher S. Koenig, Esq.
                               KIRKLAND & ELLIS, LLP
                               333 West Wolf Point Plaza
                               Chicago, Illinois 60654

Audio Operator:                Electronically Recorded
                               by Dana L. Moore, ECRO

Transcription Company:         Reliable
                               1007 N. Orange Street
                               Wilmington, Delaware 19801
                               (302)654-8080
                               Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

INDEX

PAGE

Motion to Allow Late-Filed Crypto Loss Claim (filed by
Daniel Finkelstein) [Docket No. 1147 - filed December
17, 2025]
-and-
Motion to Allow Late-Filed Crypto Loss Claim (filed by
Ashishbhai Prameshkumar Gandhi) [Docket No. 1148 -
filed December 17, 2025]
-and-
Motion to Allow Late-Filed Crypto Loss Claim (filed by
David Anthony Alexander Parkinson) [Docket No. 1155 -
filed January 8, 2026]
-and-
Motion to Allow Late-Filed Crypto Loss Claim (filed by
Fiona Carlin) [Docket No. 1158 - filed January 16, 2026]

    Argument by Mr. Koenig                              6

    Court Decision                                     12

(Proceedings commence at 11:32 a.m.)

THE COURT:  Good afternoon, all.  This is Judge Shannon.  I understand from the court reporter that all necessary parties have joined.

This is a hearing in the matter of Terraform Labs, which is Case Number 24-10070.  And this is the time the Court has set for a hearing in connection with certain matters relating to late-filed claims.

Before we begin, I'd apologize for -- or ask your pardon.  I had a minor derma procedures earlier, just a few days ago, so that explains the bandage.

But with that, I do have the agenda in hand, and I would hear first from counsel for the debtor.  Mr. Koenig, good afternoon.  Welcome.

MR. KOENIG:  Good afternoon, Judge.  Can you hear me okay and see me?

THE COURT:  I can.  Thank you.

MR. KOENIG:  And I hope you're recovering well. And thank you for letting us appear remotely today.

THE COURT:  Sure.

MR. KOENIG:  Again, Chris Koenig from Kirkland & Ellis for the plan administrator.  I don't know if you were going to take other appearances me first or wanted me to launch into it.

THE COURT:  No.  I think we'll work our way through

the agenda.  I'll take appearances as appropriate.

MR. KOENIG:  Okay.  Very good.

Your Honor, as you mentioned, we're here today on four motions to allow late-filed crypto loss claims.  Those were filed at Docket Numbers 1147, 1148, 1155, and 1158.

The plan administrator filed an omnibus response to these motions at Docket Number 1159.

While it is not the plan administrator's motion, given that the claimants are pro se, I'd propose that we proceed the way that we did the last time, which I would present the plan administrator's position; that way, the claimants have the benefit of hearing that, and then they can respond and present their own position.

THE COURT:  I think that that actually makes sense, given that the plan administrator's response is identical to all four of them, so you can proceed.

And I would provide assurances to the claimants that I believe are participating today by Zoom, that I certainly will hear their argument and statements.

Before we get going, I would ask -- I just want to make sure that we do have the claimants participating.

Is Mr. Finkelstein on the line?

(No verbal response)

THE COURT:  This is Judge Shannon, and I'm asking with respect to Mr. Finkelstein's claim, which is appearing

at Docket Number 1147.

(No verbal response)

THE COURT: Okay. I would ask is Mr. Gandhi on the line with respect to Docket Number 1148?

(No verbal response)

THE COURT: Then I would ask is Mr. Alexander -- I'm sorry -- Mr. Parkinson on the line with respect to Docket 1155?

(No verbal response)

THE COURT: And finally, I would ask do we have Ms. Carlin on the line with respect to Docket Number 1158?

(No verbal response)

THE COURT: Ms. Carlin, this is Judge Shannon. Our records would reflect that you did sign in. Is Ms. Carlin present or participating on the call today?

(No verbal response)

THE COURT: All right. Mr. Koenig, you may proceed.

This is the time and date that the Court has set.

Mr. Koenig, it might be -- if you have it handy, it might be helpful or appropriate for you, at some point in your presentation, to confirm that appropriate service was made on the claimants. But the Court is still intending to go forward, notwithstanding, at least so far, having polled the remote participants, there do not seem to be the

claimants participating in today's hearing.

With that, Mr. Koenig, you may proceed.

MR. KOENIG:  Thanks, Your Honor.

And I'll certainly get to the service issue, it will probably be at the end of my prepared remarks, just so that we can pull it up while I'm speaking, but --

THE COURT:  That would --

MR. KOENIG:  -- I certainly --

THE COURT:  -- be fine.

MR. KOENIG:  -- intend to address that.

Your Honor, this is the second time that we've been here on the issue of late-filed crypto loss claims.  As Your Honor probably recalls, this issue was first addressed at a hearing in September 2025, where similar motions were filed. The plan administrator opposed those motions, as well, but candidly, we thought it was a close call at the time, under the circumstances.

Our main concern, as you may recall, was a floodgates arguments, that crypto loss claimants would repeatedly seek extensions of the bar date because our notices did not reach them, which would -- ultimately, the reopening of the bar date would ultimately delay the process and delay distributions to creditors who did file on time.

Ultimately, Your Honor granted those motions and allowed the late claims.  But you were clear at the time that

you were only ruling on the facts presented on the motions in front of you, and that your decision might be different as time went on, as the claims process progressed.

The plan administrator took your order in the spirit that I believe it was intended, in trying to allow as many claimants as possible, who may have simply been unaware of the bar date, a new chance to file crypto loss claims.

So, following your ruling at the hearing in September 2025, the plan administrator reopened the online portal for the filing of crypto loss claims on October 1st, 2025, for any claimant who did not file a claim prior to the bar date.  We did not make people reach out to us and explain their circumstances and sort of get a thumbs-up from us to proceed.  So long as they showed up and they had not previously filed a claim, we let them in the door.

We kept the online portal opened from October 1st, 2025 through November 24th, 2025.  That's nearly two months that creditors had the option to file a late claim.

Given that we were reopening the portal and trying to allow folks another chance who may not have received notice, we were focused on providing notice as broadly as possible to those creditors who had told us they had missed the bar date.  So the plan administrator searched through our email records and we compiled a list of approximately 250 potential claimants who reached out to the plan administrator

after the bar date had requested to file a late claim; that is, everybody that contacted us that we had in our records and said boy, I missed the bar date, is there any way that I can file a late claim, after Your Honor's ruling, we affirmatively went out to all those folks via email and let them know how to file a new claim.

As Your Honor may recall, given the nature of the debtors' business, we simply did not have direct contact information for creditors who purchased our crypto tokens, so we had relied extensively on publication notice.  Unless somebody had affirmatively reached out to us, we did not know who they were as creditors of the debtors.  But as I just explained, we went out of our way to provide direct notice to anyone that we were aware of that had contacted us at any point after the bar date initially passed.

So reopening the portal allowed hundreds of claimants to file late claims; specifically, 660 additional claimants filed claims between October 1st and November 24th. Speaking candidly, this greatly exceeded our expectation for the volume of late-filed claims, but it brought the total number of crypto loss claims filed to 16,640.

As detailed in the status update that we filed last night at Docket Number 1177 --

THE COURT:  I have that --

MR. KOENIG:  -- the plan administrator --

THE COURT:  I have that update, I appreciate getting it.

MR. KOENIG:  Thank you, Your Honor.

We've made substantial progress in the crypto loss claims reconciliation process since September.  Over half of claimants have now received an initial determination, and the overwhelming majority, nearly 90 percent, have accepted their initial determination and now have allowed claims.

We are now nine months past the original bar date. The plan administrator needs finality to the claims submission process, so that we can, likewise, continue to complete the claims reconciliation process and, ultimately, move towards commencing distributions in these Chapter 11 cases.

I'll pause there on what I'll call the "factual update," in case Your Honor has any general questions there. And if you don't have anything, I'll turn to the substance of my argument.

THE COURT:  I do not have questions.  Again, I appreciate getting the status report just because, as I'm sure you're aware, as a practical matter, the Court doesn't have a lot of visibility into the process that the post-confirmation debtors are engaged in, so I appreciate getting that status report.  And I do not have questions at this point.

MR. KOENIG: Understood, Your Honor.

The plan administrator respectfully submits that the movants have not met the standard for excusable neglect. As the Court knows, Bankruptcy Rule 9006(b) permits the Court to extend a deadline if the failure to act within a certain time period resulted from excusable neglect. Courts evaluate this issue using the four factors set out by the Supreme Court in Pioneer:

Danger of prejudice to the debtor;

The length of the delay and its potential impact on judicial proceedings;

The reason for the delay, including whether it was in the reasonable control of the movant;

And whether the movant acted in good faith.

The real focus here for us is on the first factor, which is the danger of prejudice to the debtor and, really, ultimately, to the other creditors, who did timely file. We already opened the bar date once; it resulted in hundreds of additional claims. If we were to open it again, I expect that we would, likewise, see a number, you know, perhaps hundreds of additional claims again.

And frankly, we are in the homestretch of this process. We have worked our way through over half of the claims already. We are continuing to do so at a rapid pace. And we would like to get a point where we can commence

distributions at some point in the near term.  If the bar date isn't even closed, clearly, we will be -- we will be unable to do so.

Candidly, turning to the other factors, the reasons for the delay, including whether it was in the reasonable control of the movant, the motions speak sort of generically about -- the motions speak sort of generically about the fact that the creditors lived overseas, did not receive direct mail.  But of course, that was impossible under the circumstances.

We, you know, distributed publication notices far and wide and, of course, went out again and opened the bar date for nearly two months.  It is unfortunate that our notices did not reach them.  But at this point in time, it is simply necessary for the bar date to be a bar date, and for no new claims to be allowed, absent very unusual circumstances.

We haven't seen that in any of these motions. Nobody is saying that they were in a coma, that they were in prison, that they were, you know, on a science mission to Antarctica or anything like that.  These folks just say oh, I missed the bar date and I read about it in the paper and, you know, I'd like to file a claim, please.  We respectfully submit that these generic allegations of insufficient notice fall short of the high standard of excusable neglect.

And Your Honor, I believe I have the affidavit of service. We served them via email. There are two affidavits of service:

One is for the response that we filed, and that's at Docket 1171.

And then we filed a notice of adjournment of the hearing, which had the new hearing date on it, on 1173.

And I believe that those affidavits of service reflect that we served these claimants via electronic mail.

THE COURT: Very good. Thank you, Mr. Koenig. I don't have any questions.

I would, again, poll the claimants. Are any or all of Mr. Finkelstein, Mr. Gandhi, Mr. Parkinson, or Ms. Carlin participating today on the virtual hearing, or is anyone participating on their behalf?

(No verbal response)

THE COURT: Very well. Hearing no response, I will sustain the plan administrator's objection and I will deny each of the four motions.

Given that we have dealt with them collectively, I will rule as to them collectively.

I note, as a threshold matter, that I am proceeding on the merits. I am not defaulting the claimants for failure to appear. The Court is considering the motions and has scheduled this hearing to give an opportunity to the plan

administrator to respond to the motions and for the Court to make an informed decision.

I note further that the record developed in this Court does indicate that proper and sufficient service was made upon the four claimants, and they have not appeared today.  When I look at the four applications, each of them identifies reasons for failing to comply with the bar date that do not meet the standard that has been developed by case law construing the Pioneer decision from the United States Supreme Court.

I specifically note, as counsel has observed, that I think case law teaches that the primary consideration for a court to consider is the effect of prejudice.  And as I noted at a prior hearing, where I did permit certain late-filed claims, I observed that I was concerned with respect to the risk of prejudice to the debtor.  And again, particularly given the maturity of the process that is in front of me and the potential harm or consequence to other stakeholders from delay and perhaps diminution in value, to the extent that the bar date were reopened.

This debtor went to extraordinary lengths to provide notice of the bar date to potential claimants.  The Court recalls that there were unusual circumstances, common, I think, in the crypto cases, but unusual circumstances in bankruptcy generally, that required a more non-traditional

format of communication that was both broader and more focused than what might typically be available in a case.

But again, the record reflects scrupulous compliance by the debtor in connection with the notice requirements that were set for the bar date itself, for the supplemental bar date or the secondary bar date that was directed by the Court at a prior hearing, then with respect to the hearing on today's motions.

I am not satisfied that the movants have established, again, cause. They certainly have not indicated the -- that the standard set forth by the United States Supreme Court in the Pioneer case have been met. And I would note, as reflected in the debtors' papers, those factors are:

The risk of prejudice to the debtor, which I've covered;

The length of the delay. And here, I do find that the length of the delay and its potential impact are significant. We are well past the original bar date and now past a further bar date that the Court has set.

There is no meaningful or legitimate reason for the delay that would warrant reopening the bar date.

And with respect to whether the movant is acting in good faith, I find that that record is neutral. I certainly don't see bad behavior or gamesmanship, but I simply don't believe that that weighs here significantly. They have

missed the bar date and there are consequences to that fact.

Based upon the record before me, each of the motions will be denied.

Are there any questions?

MR. KOENIG:  None here, Your Honor.  Thank you.

THE COURT:  All right.  Mr. Koenig, are there any other matters that we need to address before we adjourn?

MR. KOENIG:  No, sir.

THE COURT:  All right.  Well, again, I appreciate your time.  And with that, we are adjourned.  Thank you, Counsel.

MR. KOENIG:  Thank you, Judge.

(Proceedings concluded at 1:48 p.m.)

*****

16

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

_____          February 21, 2026

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable