# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TODD R. SNYDER, AS PLAN            )   Case No. 25 C 15414
ADMINISTRATOR FOR THE TERRAFORM    )
LABS PTE. LTD., et al., EACH       )
POST-EFFECTIVE DATE DEBTOR, and    )
THE WIND DOWN TRUST,               )
                                   )
                    Plaintiff,     )
                                   )
          v.                       )
                                   )
JUMP TRADING, LLC, et al.,         )   Chicago, Illinois
                                   )   May 20, 2026
                    Defendants.    )   9:31 a.m.


                    TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE JOAN H. LEFKOW

APPEARANCES:

For the Plaintiff:     KIRKLAND & ELLIS LLP
                       BY:  MR. JUDSON BROWN
                       1301 Pennsylvania Avenue, N.W.
                       Washington, D.C. 20004

                       KIRKLAND & ELLIS LLP
                       BY:  MR. CASEY J. McGUSHIN
                       333 West Wolf Point Plaza
                       Chicago, Illinois 60654


For Defendant Jump:    LATHAM & WATKINS LLP
                       BY:  MR. JACK M. McNEILY
                            MR. GARY FEINERMAN
                       330 North Wabash Avenue, Suite 2800
                       Chicago, Illinois 60611


For Defendant          KKL LLP
DiSomma:               BY:  MR. JONATHAN F. BOLZ
                            MS. REBECCA SOL TINIO
                       350 Fifth Avenue, Suite 7710
                       New York, New York 10118

Court Reporter:          NANCY L. BISTANY, CSR, RPR, FCRR
                         Official Court Reporter
                         219 South Dearborn Street, Room 1706
                         Chicago, Illinois 60604
                         (312) 435-7626
                         bistanyofficialtranscripts@gmail.com

*   *   *   *   *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK:  25 C 15414, Snyder versus Jump Trading.

Please step forward to the podium and state your appearances.

MR. McNEILY:  Good morning, Your Honor.

Jack McNeily for the Jump defendants.

THE COURT:  Good morning.

MR. FEINERMAN:  Gary Feinerman for the Jump defendants.

THE COURT:  Good morning.

MR. BROWN:  Good morning, Your Honor.

Judson Brown from Kirkland & Ellis on behalf of Todd Snyder, the plan administrator and plaintiff in this case.

THE COURT:  Okay.

MR. McGUSHIN:  Your Honor, Casey McGushin also from Kirkland, also on behalf of Mr. Snyder.

THE COURT:  Okay.

MR. BOLZ:  Good morning, Your Honor.

Jonathan Bolz from KKL LLP on behalf of defendant William DiSomma.

THE COURT:  All right.

MS. TINIO:  Good afternoon.  Rebecca Tinio, also from KKL, also on behalf of defendant DiSomma.

THE COURT:  All right.  So I wondered -- I thought that this whole dispute might go away before it was called

today, but it hasn't.

So let's hear from the movant.  That would be, I guess, the defense, right?

MR. McNEILY:  That's right, Your Honor.

THE COURT REPORTER:  Can you state your name again, please?

MR. McNEILY:  Sure.  Jack McNeily from Latham & Watkins.

THE COURT REPORTER:  Thank you.

MR. McNEILY:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. McNEILY:  This is a straightforward request for a temporary stay to allow the Court to address a fundamental issue that defendants have identified with the amended complaint.  That fundamental issue is the fact that plaintiff has used the documents for his amended complaint in violation of the protective order that was entered in the Terraform Labs Chapter 11 bankruptcy action.

That violation is clear.  Plaintiff readily admits that he used documents subject to the protective order for purposes of his amended complaint.  And the protective order itself is clear.  It says both that documents subject to the protective order shall only be used in the Chapter 11 case and also expressly that they shall not be used for purposes of any other proceeding or purpose.

Now, we tried to resolve this issue without the Court's intervention. We notified plaintiff that he was in violation of the protective order, and we demanded that he withdraw his amended complaint. He refused that demand.

And he also rejected the concept of extending the deadline for the motion to continue the seal of the amended complaint so that this Court may first rule on the motion to strike.

The stay we seek now is both targeted and practical. We're only asking the Court to stay the case deadlines until it has a chance to rule on our forthcoming motion for relief. And we think, you know, that would avoid the unnecessary motion practice of having defendants brief a sealing issue and a dismissal issue against an amended complaint at the same time that the Court is deciding whether that amended complaint can remain the operative pleading.

THE COURT: Okay. Wasn't -- as I recall reading this, that plaintiff was saying if you tell us what we put in the complaint that shouldn't be there, we'll take it out.

MR. McNEILY: I don't know that they went quite that far to say that they would take that out. They have -- they have made the argument that we have some obligation to identify the specific allegations.

I think that's wrong for a couple of reasons. First of all, they drafted the -- they drafted the amended complaint

with knowledge of what documents they reviewed from the bankruptcy order.  So there's no surprise to them of what allegations are tainted.

They've specifically identified a number of those already.  That's why they filed their motion to seal.  They specifically redacted allegations that they themselves acknowledge are based on those tainted documents, but there's also a broader issue.

We don't know exactly, you know, what they used and relied on for their amended complaint.  They've explicitly quoted somewhere around 20 documents that are governed by the protective order, but they had access to tens, if not hundreds of thousands of documents from the -- from the defendants' production in the bankruptcy action.  And, you know, there's good reason to think that they relied on those documents in reshaping their pleading.

You know, their original complaint compared to their amended complaint -- their amended complaint is twice as long, and the theories and claims have shifted.  And what we know is that part of what informed those changes were their reliance on these -- on these documents.

THE COURT:  So Kirkland represented the debtor in the bankruptcy?

MR. McNEILY:  They represent the plan administrator in the bankruptcy.  I don't know if they -- I don't know the exact

contours of their representation.  But they got access to these documents through the course of the bankruptcy proceeding.

THE COURT:  They may be a creditor then.  Okay.

All right.  Let's see if I have some more questions for you.  I don't know what -- the bankruptcy proceeding is still pending?

MR. McNEILY:  Correct.

THE COURT:  Okay.  And it's in what, Delaware, New York?

MR. McNEILY:  Delaware, that's correct, yes.

THE COURT:  All right.  Well, let me hear the response, and we may talk again.

MR. BROWN:  Good morning, Your Honor.

Again, for the record, Judson Brown from Kirkland & Ellis on behalf of plaintiff plan administrator Todd Snyder.

Your Honor, we're here on defendants' motion to stay all pending deadlines, not just the deadline for their motion to seal the information that's redacted in the amended complaint, all deadlines.

Plaintiff plan administrator opposes that requested relief.  We think and we've actually proposed both to defendants and in our papers filed in this matter, Your Honor -- we think there's a better way to proceed.  But before we get to that better way to proceed, let me just level set here.

The basis for defendants' motion to stay all pending deadlines is a forthcoming and anticipated motion to strike that defendants said they will file this Friday, May 22.

Courts -- as I'm sure you're aware, Your Honor, courts in this circuit disfavor motions to strike. As *Wright & Miller* put it, that's both because striking a portion of a pleading is a drastic remedy and because it is often sought as a dilatory or harassing tactic. So too here, Your Honor.

Any forthcoming motion to strike is both procedurally premature and substantively misguided. Let me start with the procedure, Your Honor.

The dispute is not even ripe for a motion. Your Honor alluded to it already. The defendants' motion in their papers, they misleadingly suggest that they came to plaintiff and proposed striking either or withdrawing either the entire amended complaint or certain allegations within that amended complaint. Not so.

Defendants came to plaintiff on 48 hours' notice, demanded that plaintiff withdraw the entire complaint, nothing less, no lesser remedy whatsoever.

When plaintiff responded and said not withdrawing the entire amended complaint, but if you want to identify for us the allegations that you believe were based on improperly used documents, we're willing to consider those. And if there's a dispute about the plan administrator's ability to use those

documents, we're willing to take that up -- issue up with the bankruptcy court that actually entered the protective order, the bankruptcy court that actually established, created the plan administrator.

The defendants refused that proposal, outright rejected both the plaintiff's request to meet and confer and the plaintiff's request that the defendants identify allegations, paragraphs in the complaint that the defendants believe were off limits. And they also rejected plaintiff's request to take the issue to the bankruptcy court for resolution of whether this is a violation of the protective order.

Indeed, still to this day the defendants have never once identified a single allegation that they believe was off limits in the amended complaint. And in the reply that they filed last night, the defendants, excuse me, made clear they have no intention of actually identifying the allegations that they believe should be stricken from the amended complaint until they file their motion to strike, presumably this Friday.

In other words, Your Honor, we don't even know if fundamentally there's a dispute between the parties over what should be in the complaint or what should be stricken. We don't even know if there's a dispute fundamentally that warrants this Court's involvement or resolution.

Now, as a substantive matter, the motion to strike

also not well taken.  For one, as the defendants know, the overwhelming bulk of the amended complaint comes from publicly available information.  It is information that was either utilized in the SEC enforcement actions; first, the SEC civil enforcement action and nine-day trial against Terraform Labs and its founder, Do Kwon, or the SEC consent agreement with defendant Tai Mo Shan, wherein the defendant in this action, defendant Tai Mo Shan, literally admitted to market manipulation.

Lots of information was made public as a result of those pleadings.  Much of that information is the basis for the bulk of the plaintiff's allegations in the amended complaint or information that was made public from the Department of Justice's criminal proceedings against the founder of Terraform.  And in those proceedings, everyone -- the U.S. Attorney's Office for the Southern District of New York, the judge in the Southern District of New York -- they all acknowledged that Jump, the defendants here, were at the center of the fraud that Terraform and their founder perpetrated.  All of that information is public, rightfully used in the amended complaint.

To the extent that the amended complaint utilizes some limited information from Jump's internal documents, even the defendants agree that the plaintiff, the plan administrator, could have used that information and included it in a complaint

filed in the bankruptcy court.

This is important.  I want to pause here for a moment.

In the reply last night, the defendants conceded that plaintiff plan administrator could have filed this exact complaint in the bankruptcy court in Delaware with all of the allegations it currently contains.  Thus, the only real question that they're raising is whether the plaintiff could file this amended complaint with all of its allegations, none stricken, in this court or first needed to go to the bankruptcy court in Delaware to seek permission or clarification under the protective order.

Now, of course, that necessarily raises, Your Honor, the question of what prejudice defendants have suffered at all if the plaintiff could have filed precisely this complaint in the bankruptcy court.  And prejudice, of course, is an element that defendants must show when they file a motion to strike.

Now, the plaintiff will address all of this in fully briefing a motion to strike if it's filed, but it underscores the narrow issue.  Here it calls into question whether a motion to strike is, frankly, a good use of anyone's time or resources.

Now, Your Honor, I want to be clear.  The plaintiff and his counsel, we take defendants' accusations very seriously, and we want to address them directly.

The plaintiff strongly believes that he did not

violate the bankruptcy court's protective order at all.

Now, defendants quote in isolation two quips from the bankruptcy court protective order.  They use those quips to assert a sweeping argument -- at least originally in their original letter to plaintiff, a sweeping argument that plaintiff and his counsel couldn't even look at, much less review the documents that the defendants had produced in the bankruptcy case.

It appears maybe, perhaps, they have abandoned that argument for good reason.  There is no doubt that the plan administrator has access to, can review and utilize those documents in investigating and pursuing causes of action.

The plaintiff strongly disagrees with the assertion that the use of those documents in the amended complaint filed in this case was in any way a violation of the protective order.  The context for that protective order is clear.  You don't just look at the words in isolation.

Here, viewing that language in context, as courts do when they determine whether a protective order has been violated, confirms the defendants cannot be right.  The plan administrator, the plaintiff here, was literally created by the Chapter 11 case, by the bankruptcy court in the Chapter 11 liquidation plan that the bankruptcy court signed.

The plan administrator was given access to, control of the debtor's documents, including all of the documents produced

in the bankruptcy case.  That is literally detailed in the Chapter 11 liquidation plan signed by the bankruptcy court.

The plan administrator here took control of the assets, the documents, and the privileges of the debtor pursuant to the Chapter 11 case.

Now, the plan administrator, just so we're clear, is specifically tasked under the liquidation plan in the Chapter 11 case that was confirmed by the bankruptcy court with using the assets, the documents, the resources of the debtor that the plan administrator inherited when he stepped into the debtor's shoes to investigate, pursue, and prosecute all claims and causes of action.  That is set forth explicitly clear in the liquidation plan signed by the bankruptcy court.

So this lawsuit only exists because the plan administrator has been tasked with being -- bringing it by the Chapter 11 case.

So contrary to what was at least defendants' original position, there is no doubt that the plan administrator rightfully has access to and the ability to review and rely upon the documents that the Jump defendants reproduced in the Terraform bankruptcy case.

The defendants effectively have conceded as much in their reply where they say this exact complaint could have been filed in the bankruptcy case.

So their argument effectively boils down to a claim

that the plan administrator could review and use the documents in a case filed in the bankruptcy court but not one filed in this court.  But that also cannot be right.

THE COURT:  Let me ask you a couple questions.

MR. BROWN:  Yeah.

THE COURT:  Just give me a little more context about the bankruptcy case.

MR. BROWN:  For sure.

THE COURT:  You say it's Terraform?

MR. BROWN:  Yeah.

THE COURT:  And Terraform -- how is Terraform -- oh, you're representing the Estate of Terraform or the --

MR. BROWN:  In a sense.  So Terraform Labs is a cryptocurrency-related entity that filed for bankruptcy in 2024.

THE COURT:  Okay.

MR. BROWN:  The result of that bankruptcy -- some bankruptcies, as I'm sure you know, Your Honor, end in a plan of reorganization.  Other bankruptcies end in a liquidation plan.

THE COURT:  Right.

MR. BROWN:  The Terraform Labs bankruptcy ended in a liquidation plan that was confirmed, executed, signed by the bankruptcy court in the fall of 2024.  Pursuant to that liquidation plan, the upshot, the result of that liquidation

plan was the establishment of what's called The Wind Down Trust. That Wind Down Trust took possession, ownership of all of the debtor's assets, their documents, their claims, their causes of action. And pursuant to the plan of reorganization, a plan administrator was created to literally manage all of those assets and tasked under the bankruptcy plan with maximizing recoveries for the creditors of the Chapter 11 estate.

And the way that the plan administrator is tasked with maximizing recoveries includes specifically investigating, pursuing, and prosecuting causes of action, included the cause --

THE COURT: So this is one of them?

MR. BROWN: Absolutely, Your Honor, 100 percent. The plan administrator was literally created to maximize the recoveries for the Chapter 11 estate, and one of his specific tasks in seeking to maximize those recoveries is to investigate and bring the causes of action, including this very lawsuit, Your Honor.

THE COURT: Okay. So review for me -- I know you covered this. But "this shall not be used in any other litigation," what was that intended for, from your point of view?

MR. BROWN: Yeah. So when you look at the bankruptcy court protective order in context, there is no way to read that

language to limit -- sorry -- there's no way that the context of that language was intended to hamstring the plan administrator and limit his ability to bring lawsuits, causes of action, to maximize the recoveries for the estate.

The plan administrator -- go ahead.

THE COURT:  What was it for?  Not what it was not for.

MR. BROWN:  Well, the purpose, of course, of a protective order, as courts in this circuit and elsewhere have made clear -- the purpose of a protective order, Your Honor, is to protect the disclosure of sensitive proprietary information.

It is not -- and we will get into this on a motion to strike, I am sure -- but the purpose of a protective order is not to shield a defendant from a lawsuit.  It is not to limit the use of documents in pursuing claims, valid claims, against a defendant.

And here, the language was not intended to limit it -- limit the plan administrator's ability to use documents specifically obtained in the bankruptcy court for the estate to investigate, pursue, and bring causes of action to maximize recoveries for the creditors of that estate.

THE COURT:  All right.  So my thinking here -- and this is probably a better question for your opposition -- but can't you just go to the bankruptcy court and say, "Would you interpret this for me so we know how to go forward here"?

MR. BROWN:  Your Honor, that's a hundred percent what

we proposed to the defendants.  We asked them first:  Hey, identify for us what -- what allegations you think are off limits, and we can talk about it.  And to the extent we have a dispute, let's take it to the bankruptcy court, and let the bankruptcy court decide whether the language in this protective order is as limiting as they suggest or the context necessarily includes the plan administrator using those documents to discharge his duties and obligations and pursue causes of action, including causes of action that might have to be filed outside of the bankruptcy court, because, of course, upon an effective date of a plan, as I'm sure Your Honor knows, the bankruptcy court's jurisdiction becomes more limited.  And the bankruptcy court just simply doesn't have the jurisdiction to hear all of the same matters that it had to hear before the effective date.

We are happy to take this issue to Judge Shannon in the bankruptcy court in Delaware for resolution, Your Honor.

THE COURT:  Okay.  I had one more question if I can remember.

MR. BROWN:  For sure.

THE COURT:  Oh, the defendants said that you know what material you used that came solely from the bankruptcy protective order -- materials.  So they don't need to identify it for you.

MR. BROWN:  That's, frankly, a coy response, Your

Honor.  The information that we used from Jump documents that was -- that were reproduced in the bankruptcy court is exactly the information that we redacted when we filed the amended complaint, information that no one argues has once been made public.  It's been redacted.  It is not available publicly. There's been no disclosure of that information.

If those redactions are literally the extent of the allegations that defendants believe are the allegations that are -- that are off limits, if you will, based on documents that are off limits, then we're happy to have that conversation.

But what defendants have never told us and what they didn't tell you this morning, Your Honor, is those allegations that are redacted, that is the sum and substance, the totality of the allegations that they believe should be stricken, withdrawn from the amended complaint.

If they actually identify it, we're happy to have that conversation, and then we'll gladly take any dispute to Judge Shannon for resolution.

THE COURT:  All right.  Thank you.

MR. BROWN:  Thank you.

MR. McNEILY:  I'd like to address just a few points that opposing counsel raised.

First, they dispute the conclusion of a violation of the protective order, but they don't dispute the underlying

facts.   They acknowledge that they used documents subject to the protective order.   And, of course, the protective order says what it says.

Section 2 of the protective order, which has been submitted to this Court as Exhibit A, I believe, to plaintiff's response motion that was filed Monday, says:   In connection with this Chapter 11 case, confidential information "shall be used solely in this Chapter 11 case" and "shall not be used or disclosed in any other proceeding or for any other purpose."

Now, Your Honor asked a question about what is the purpose of this protective order?   What is the purpose of that provision?

The purpose of that provision is to protect a producing party, like my clients, from producing material and then having a receiving party turn around and use those documents against them in some other context in some other case.

That's exactly what's happening here.   And I think the context of the procedural history of this case only amplifies that concern.   Plaintiff filed an original complaint that was facially deficient.   Defendants identified those deficiencies in their motion to dismiss.   And rather than defend the complaint that they filed, plaintiff turned around and filed an amended complaint using protected documents to try to fill the holes in his allegations.

That is the harm to my client, and that's what needs to be prevented here.

Now, plaintiff makes noise about sort of being caught off guard that we only gave them 48 hours' notice of this violation. They know the violation. They filed a motion to seal concurrently with their amended complaint specifically identifying that material in their amended complaint is subject to the protective order. This was not -- this was not news to them.

THE COURT: Is that it? That's all of it.

MR. McNEILY: I'm sorry?

THE COURT: From your point of view, that is a complete redaction of the material taken from the bankruptcy trove?

MR. McNEILY: No, Your Honor. That -- the redacted material in the amended complaint is what they specifically quote from protected documents. But it's clear if you look at the allegations, including the allegations where there are redactions, there are summaries of these documents, paraphrasing of these documents.

The theories that they are presenting in their amended complaint are plainly driven from protected information. If you look at the specific allegation -- you know, the allegation paragraphs, you'll oftentimes see lead-ins to the quoted material that summarize and give context to these protected

documents.  So it goes far beyond just the redactions themselves as we've indicated.

I want to address the issue about what plaintiff could have filed in the Chapter 11 proceeding.

We agree that plaintiff has a duty to discharge, you know, his obligations under the Chapter 11 plan.  He could have done so by filing an adversary proceeding under the caption of the Chapter 11 case, but he could not have filed this identical case that he has -- he has filed in the Northern District of Illinois.

They made a strategic decision to file a standalone action here as opposed to an adversary proceeding in the bankruptcy case.  And the result of that is they can't use material from the bankruptcy case in this standalone action.

What they're really doing is trying to have their cake and eat it, too.  They wanted the strategic advantage of filing a standalone case, because it may have afforded them ability to bring claims, for example, that they couldn't have brought in the adversary proceeding.  And then they want to use the benefit of what they've learned in the bankruptcy case.

And that's expressly what the protective order prohibits them from doing.

THE COURT:  Okay. A couple of questions.

One is it seems as though -- I mean, it's kind of a trick bag, I think, because if the plaintiff filed the

complaint without any of this information, then you move to dismiss because it doesn't state a claim upon which relief can be granted.

But because they know the facts, you know, from their point of view -- if there were no protective order, they didn't have the information, they could file a complaint, get discovery, and get the same information, right?

MR. McNEILY:  If they survived a motion to dismiss.  I think -- I think the dynamic you were describing is exactly the harm to my client.

They're trying to do an end-run around the pleading standards and the PSLRA -- because, remember, this is a securities case -- by using documents and information that they shouldn't be able to use here to survive dismissal.  That's improper.

Now, again, if they wanted to file an adversary proceeding and be in bankruptcy court with the limitations that would come with that, they could have done that.  But they're trying to take the advantage here and sort of, you know, use this as a benefit to get past the dismissal hurdle so that this case can -- so that this case can continue, and that's what's improper.

THE COURT:  Okay.  So what about going to see the bankruptcy judge about this?

MR. McNEILY:  So a couple -- a couple reactions to

23

that.

First, they don't dispute that you have authority to address this issue, right?  They say in their response you have undisputed authority.  We agree with that, certainly.

The violation occurred here.  The complaint that's tainted is filed here.  And there are deadlines pending -- both a motion to continue the seal, and we're on the clock for our motion to dismiss the amended complaint -- that are impacted by this tainted complaint.

We think Your Honor should address this.  There are a number of cases in this district making clear that courts have the power to address violations of protective order even where those protective orders were issued by other courts in other contexts.  *Whitehead vs. Gateway Chevrolet*, which is 2004 Westlaw 316413, and *DEV Industries, Inc. versus Rockwell Graphic Systems, Inc.*, which is 1992, Westlaw 100908.

And I think ultimately the point is, Your Honor, that this is not some, you know, unique feature or creature of the bankruptcy action.  This is a protective order with a straightforward use restriction that I'm sure you have seen many, many times.  And the violation is clear.  We think that your Court can easily dispense with this issue.

THE COURT:  All right.

MR. McNEILY:  And I would just add, Your Honor, if in any event you rule that plaintiffs should go seek relief in the

bankruptcy court, we nonetheless believe that a stay should be ordered so that we're not in limbo while we're trying to address the amended complaint that we don't know will stand. And, of course, we'll oppose the relief that they seek in the bankruptcy court.

THE COURT:  Well, I can extend the stay until I rule on this motion, at least.

I think there's a lot here that I need to kind of ponder, so I'll take the motion under advisement, as we say, and try to get you a ruling right away.

MR. BROWN:  Your Honor, if I may.

THE COURT:  Yes.  Hold on just a minute, though.

Do you have any questions for me?  No, okay.

MR. BROWN:  Your Honor, I just want to be clear that the plaintiff firmly believes under the context, the purpose of the protective order, he did not violate it.  And under case law throughout the country, the plaintiff did not violate the protective order.

We are absolutely happy to take that issue to the bankruptcy court for resolution.  We are also -- if the defendants want to file their motion to strike by this Friday and actually brief these issues and discuss the context and the purpose of the protective order and the related case law, we're happy to brief that with Your Honor.

We think that the sensible approach here is first to

meet and confer to figure out exactly what allegations are at issue; then if there's a dispute, to go to Judge Shannon to -- the bankruptcy court in Delaware, to address his issue.  And then if there's a dispute that remains, we can come back, and the defendants can file a motion to strike.

If, alternatively, we proceed immediately to defendants' motion to strike where they're actually going to have to substantiate their accusations here and establish that this is a violation of the protective order, that plaintiff acted willfully and the defendants have suffered some prejudice -- they can establish all that, the end result of that is a complaint in which certain allegations are stricken. But the plaintiff, of course, can always go back at that point to the bankruptcy court, seek relief from the bankruptcy court's protective order, clarification from that protective order to make clear that the plaintiff is authorized and entitled to use these documents to pursue causes of action actually not filed within the bankruptcy court and then simply move for leave to file an amended complaint in this case.

We're just proposing what we think is a sensible approach here rather than that rather elongated path, Your Honor.

THE COURT:  There's nothing stopping you from doing that anyway.

MR. BROWN:  Agreed.  And to be honest, we have -- have

thought about that, and that's exactly why we proposed it to defendants, going to the bankruptcy court to go ahead and seek relief.  But you are correct, Your Honor.

THE COURT:  All right.  Do you have anything more to say?  You have the last word.

MR. McNEILY:  I would just add that your last response is entirely right.  They can go to the bankruptcy court and parallel if they would like to.

I think the reality is the violation is here, and Your Honor should address it.  And, you know, all deadlines should be stayed while that occurs.  And if they ultimately want to replead with some -- you know, some relief that the bankruptcy court may theoretically grant, they can do that in the future; but that's no reason to deviate from the requested relief that defendants seek here.

THE COURT:  All right.  Well, thank you all for your very able presentation.

THE CLERK:  All rise.  Court is adjourned.

(Proceedings concluded.)

*   *   *   *   *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/S/Nancy L. Bistany                    *May 21, 2026*
_____        _____
Nancy L. Bistany                       Date
Official Court Reporter