**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| TERRAFORM LABS PTE LTD., *et al.*,[1] | ) | Case No. 24-10070 (BLS) |
| | ) | |
| Post-Effective Date Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Re: Docket Nos. 1206, 1207, 1218 & 1219 |

**PLAN ADMINISTRATOR'S OMNIBUS OBJECTION**
**TO MOTIONS FOR LEAVE TO FILE LATE CRYPTO LOSS CLAIMS**

By this objection (this "Objection"), Todd R. Snyder, in his capacity as the Plan

Administrator (the "Plan Administrator") for the above-captioned debtors (the "Post-Effective

Date Debtors," and prior to the Effective Date,[2] the "Debtors") in the above-captioned chapter 11

cases (the "Chapter 11 Cases") objects to the Motions (as defined below) seeking leave to file late

Crypto Loss Claims.  In further support of this Objection, the Plan Administrator respectfully

states as follows:

**Relief Requested**

1.      The Plan Administrator seeks entry of an order, substantially in the form attached

hereto as **Exhibit A**, denying the relief requested in the following motions for leave to file a late

---

[1]     The Post-Effective Date Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited.  The Post-Effective Date Debtors' principal offices are located at 10 Anson Road, #10-10 International Plaza, Singapore 079903.  The Plan Administrator of the Post-Effective Date Debtors is Todd R. Snyder. The Plan Administrator's principal office is located at 1251 Avenue of the Americas, New York, New York 10020.

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the *Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 717] (the "Plan") or the *Motion of the Plan Administrator Seeking Entry of an Order (I) Setting the Bar Date for Filing Proofs of Claim on Account of Crypto Loss Claims, (II) Approving the Form of and Manner for Filing Proofs of Claim, (III) Approving Form and Manner of Notice Thereof, and (IV) Approving Related Procedures* [Docket No. 904] (the "CLC Bar Date Motion").

Crypto Loss Claim, as each of the Movants (as defined below) has not met their burden under the excusable neglect standard:

- Motion for Leave to File Late Claim (*filed by Ooi Swee Cheng*) [Docket No. 1206 – filed April 14, 2026] (the "Cheng Motion");

- Motion for Entry of an Order Permitting Late Filing of Proof of Claim (*filed by Lim Sau Fan*) [Docket No. 1207 – filed April 14, 2026] (the "Fan Motion");

- Motion for Leave to File a Late Crypto Loss Claim Pursuant to the Doctrine of Excusable Neglect (*filed by Daniel Dubec*) [Docket No. 1218 – filed April 29, 2026] (the "Dubec Motion"); and

- Motion to Allow Late-Filed Crypto Loss Claim (*filed by Christopher Moulton*) [Docket No. 1219 – filed May 8, 2026] (the "Moulton Motion," together with the Cheng Motion, the Fan Motion, and the Dubec Motion, the "Motion" and Cheng, Fan, Dubec, and Moulton collectively, the "Movants").

**Background**

2.      On January 21, 2024 (the "Petition Date"), Terraform Labs Pte. Ltd. ("Terraform") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Terraform Labs Limited ("TLL") subsequently filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 1, 2024 (the "TLL Petition Date").  On September 18, 2024, the Debtors filed the Plan, and on September 20, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* confirming the Plan [Docket No. 734] (the "Confirmation Order").  The effective date of the Plan occurred on October 1, 2024 (the "Effective Date").[3]  The history leading up to the Debtors' chapter 11 cases is set forth in more detail in the *Declaration of Chris Amani in Support of the Debtor's Chapter 11 Petition and First Day Relief* [Docket No. 18] (the "First Day Declaration") and the *Disclosure Statement for Amended Chapter 11 Plan of*

---

[3]     *See Notice of (I) Entry of Order Confirming the Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited and (II) Effective Date* [Docket No. 765].

*Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* [Docket No. 569] (the "Disclosure Statement").

**The Crypto Loss Claims Process**

3.      Pursuant to section 5.7 of the Plan, the Plan Administrator was charged with developing a process for allowing and valuing Crypto Loss Claims (as defined in the Plan).  On January 31, 2025, the Plan Administrator filed the CLC Bar Date Motion, which sought Court approval of detailed CLC Procedures.  On March 19, 2025, the Court entered the *Order (I) Setting the Bar Date for Filing Proofs of Claim on Account of Crypto Loss Claims, (II) Approving the Form of and Manner for Filing Proofs of Claim, (III) Approving Form and Manner of Notice Thereof, and (IV) Approving Related Procedures* [Docket No. 965] (the "CLC Bar Date Order").

4.      The CLC Bar Date Order established April 30, 2025 (the "CLC Bar Date") as the final date and time for all persons and entities to file Proofs of Claim on account of Crypto Loss Claims relating to or against the Debtors.  Thereafter, the Plan Administrator extended the CLC Bar Date through and including May 16, 2025.  *See Notice of Extension of Crypto Loss Claims Bar Date Until May 16, 2025* [Docket No. 986].[4]

5.      Pursuant to the CLC Bar Date Order, the Plan Administrator provided specific notice of the CLC Bar Date to anyone in the Debtors' books and records, including anyone who submitted any other claim (including a Preliminary Crypto Loss Claim, filed solely for purposes of voting on the Plan) and provided notice of the CLC Bar Date through social media on X (formerly, Twitter), Discord, and Telegram on March 28, 2025, posted a banner advertising the

---

[4]    The Plan Administrator extended the CLC Bar Date in light of the fact that the Online Portal for the submission of Crypto Loss Claims, previously communicated to be available on March 19, 2025, became available to claimants on March 31, 2025.  *See Notice of Anticipated Opening of the Online Portal to Submit Proofs of Claim on Account of Crypto Loss Claims on March 31, 2025* [Docket No. 967].

3

CLC Bar Date on Coindesk and CoinTelegraph which appeared on those sites during the two months leading up to the CLC Bar Date, and posted a public Medium article on the Crypto Loss Claims process.[5]  The Plan Administrator also posted periodic reminders of the upcoming CLC Bar Date through social media on April 10, 2025, April 14, 2025, April 28, 2025, and May 9, 2025.

6.    Although 15,980 Crypto Loss Claims were filed prior to the CLC Bar Date, the Plan Administrator received many requests, both informally and by formal motions to the Court, to file a Crypto Loss Claim after the CLC Bar Date.  There were five such motions that were set for hearing on September 24, 2025, and the Plan Administrator filed the *Plan Administrator's Omnibus Response to Motions for Leave to File Late Crypto Loss Claims* [Docket No. 1080].  At the hearing, the Court granted these motions and allowed claimants a short 30-day window to submit late-filed claims, but indicated that "the prejudice to the estate is on an upward track if we were looking at a graph, and [the Court] believe[s] in very, very short order, the likely prejudice to the estate and other stakeholders in this process would outweigh any other satisfied considerations" to the extent any subsequent requests to file a Crypto Loss Claim after that 30-day window were filed because "as [the Court] said, prejudice to the Debtor is the core consideration." *See Omnibus Hearing Tr.,* 40–41:21–3 September 24, 2025.  Following the September 24, 2025 hearing, the Court entered the *Order Allowing Certain Claimants to File a Crypto Loss Claim After the Crypto Loss Claim Bar Date* [Docket No. 1112] (the "Post-CLC Bar Date Claim Submission Order") which provided that the Plan Administrator would provide claimants with electronic access to file a late Crypto Loss Claim on the Online Portal for Crypto Loss Claims for

---

[5]    *See e.g.*, @terra_money, X (Mar. 31, 2025, at 9:06 a.m. (prevailing Eastern Time)), https://x.com/terra_money/status/1906694568848015871; Terra – Announcements, *Terraform Labs Crypto Loss Portal Now Live* (Mar. 31, 2025 at 9:06 p.m. (prevailing Eastern Time)), https://t.me/terra_announcements/892 (last visited Mar. 30, 2026); Terra, *Terraform Labs Crypto Loss Claims Portal Launch.* Medium  (Mar. 28, 2025) https://medium.com/terra-money/terraform-labs-crypto-loss-claims-portal-launch-7e85e3222db7  (last visited Mar. 30, 2026).

30 days after being provided with such access.  Further, the Post-CLC Bar Date Claim Submission Order provided that if an agreement could not be reached with the Plan Administrator, any claimant may file a motion on the docket to file a late Crypto Loss Claim, which will be resolved by the Court.

7.    In accordance with the Post-CLC Bar Date Claim Submission Order, on October 1, 2025, the Plan Administrator reopened the Online Portal for Crypto Loss Claim form submissions.  On October 1, 2025, the Plan Administrator also emailed approximately 250 claimants who had requested to file a Crypto Loss Claim after the CLC Bar Date, provided such claimants the link to the Online Portal, and informed such claimants that the Online Portal would close for submissions at 11:59 p.m. (prevailing Eastern Time) on November 24, 2025.

8.    On November 25, 2025, the Plan Administrator closed the Online Portal.  A total of 660 Crypto Loss Claim forms were filed between October 1, 2025 and November 24, 2025.  Currently, 16,661 total Crypto Loss Claims have been timely submitted.

9.    Following the November 24, 2025 extended deadline to file Crypto Loss Claims, certain additional claimants filed motions seeking relief to file a late Crypto Loss Claim.  *See Motion to Allow Late Filed Claim Filed by Daniel Finkelstein* [Docket No. 1147]; *Motion to Allow Late Filed Claim Filed by Ashishbhai Prameshkumar Gandhi* [Docket No. 1148]; *Motion to Allow Late-Filed Crypto Loss Claim Filed by David Anthony Alexander Parkinson* [Docket No. 1155]; *and Motion for Leave to File Lake Crypto Loss Claim Filed by Fiona Carlin* [Docket No. 1158] (collectively, the "January 2026 Late CLC Motions").  The Plan Administrator filed *The Plan Administrator's Omnibus Response to Additional Motions for Leave to File Late Crypto Loss Claims* [Docket No. 1159] (the "January 2026 Late CLC Response"), objecting to the relief sought in the January 2026 Late CLC Motions, arguing that the excusable neglect standard was not met.

At a hearing on the January 2026 Late CLC Motions on February 18, 2026, the Court ruled that the January 2026 Late CLC Motions "each identif[y] reasons for failing to comply with the bar date that do not meet the standard that has been developed by case law construing the *Pioneer* decision from the United States Supreme Court," and sustained the Plan Administrator's objection. *See Omnibus Hearing Tr.,* 13:6–10 February 18, 2026.  The Court went on to reiterate, as it did at the September 24, 2025 hearing, its concern for risk of prejudice to the Plan Administrator and the Crypto Loss Claim reconciliation process.  *See Omnibus Hearing Tr.,* 13:13–20 February 18, 2026 ("[A]s I noted at a prior hearing, where I did permit certain late-filed claims, I observed that I was concerned with respect to the risk of prejudice to the debtor.  And again, particularly given the maturity of the process that is in front of me and the potential harm or consequence to other stakeholders from delay and perhaps diminution in value, to the extent that the bar date were reopened.").

10.     Following the February 18, 2026 omnibus hearing, certain additional claimants filed requests to file late Crypto Loss Claims, which the Plan Administrator objected to.  *See Plan Administrator's Omnibus Objection to Motion to File Late Crypto Loss Claims* [Docket No. 1202]. At the April 15, 2026 omnibus hearing, the Court sustained the Plan Administrator's objection to each of the motions to file a late Crypto Loss Claim, including as to a movant who asserted that his participation in the Beltran Action (as discussed below) contributed to his excusable neglect of the CLC Bar Date.  *See Order Denying Certain Additional Requests for Leave to File Late Crypto Loss Claims* [Docket No. 1211].

11.     The Plan Administrator, together with his advisors, are in the process of reviewing all Crypto Loss Claim forms as detailed in the *Notice of Commencement of Notification of Initial Determinations and Individualized Review for Crypto Loss Claims* [Docket No. 1051].  To date,

the Plan Administrator has provided Initial Determinations on approximately 11,044 Crypto Loss Claims, of which approximately 9,577 have been accepted and are now Allowed Crypto Loss Claims.

**Beltran Action**

12.     Prior to the Petition Date, certain potential claimants initiated the Beltran Action—a representative action pending in the International Commercial Court of Singapore (the "Singapore Court").  In connection with the Beltran Action, prior to the Petition Date, Terraform deposited funds into an account maintained by the Singapore Court (the "Beltran Escrow Deposit").  Under the Plan, Beltran Allowed Secured Claims, recover first against the Beltran Escrow Deposit.  To the extent any Beltran Allowed Secured Claim is not fully satisfied by the Beltran Escrow Deposit, such amount may be recovered as a Crypto Loss Claim.  *See* Plan, section 1.16.  As initially constituted, the Beltran Action involved ten "Representative Claimants," and approximately 360 "Represented Claimants."  Mr. Fan was one of the Represented Claimants.

13.     The Plan Administrator has been actively involved in litigating the claims in the Beltran Action over the past eighteen months.  This includes, as explained in the *Plan Administrator's Second Status Update* [Docket No. 1086], overseeing the initial phase of trial with respect to the claims of the ten Representative Claimants, which occurred in May 2025.  The second phase of trial occurred in March of 2026 with respect to the claims of certain Represented Claimants, and additional phases of trial are currently set to occur throughout 2026 and 2027.

14.     Throughout the Beltran proceedings, the Plan Administrator has consistently taken the position that Beltran Claims could (and should) be pursued as Crypto Loss Claims.  As early as January 2025, in a letter that was submitted to the Singapore Court as an attachment to a witness

statement,[6] the Plan Administrator specifically identified the forthcoming Crypto Loss Claims Procedures as a mechanism for recovery so long as a claimant's Beltran Claim had not been definitively resolved by the Singapore Court.  *See* **Exhibit B**, section 7(a) ("I note that so long as this Represented Claimant's claim for damages has not been determined by the Singapore Courts, that Represented Claimant has the right to participate in the Crypto Loss Claims procedure on an equal footing with other creditors of [Terraform].").

**Objection**

### I.      The Movants Have Not Met the Standard for Excusable Neglect.

15.      Courts may allow a filing after a deadline set by the court or the Bankruptcy Rules if "the failure to act within that period resulted from excusable neglect."  Bankruptcy Rule 9006(b); *see also Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1992).  In *Pioneer Investment Services*, the Supreme Court determined that a balancing test was appropriate for determining whether neglect, including inadvertent failure to meet a deadline, was "excusable" under Bankruptcy Rule 9006(b).  These factors include the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay (including whether it was within the reasonable control of the movant), and whether the movant acted in good faith.  *Id.* at 395.  Courts in this district have applied these factors to determine whether to allow late-filed claims.  *See, e.g., In re FTX Trading*, 669 B.R. 298, 307 (Bankr. D. Del. 2025); *In re Bluestem Brands, Inc.*, No. 20-10566, 2021 WL 3174911 (Bankr. D. Del. July 27, 2021); *In re W.R. Grace & Co.*, 626 B.R. 217, 234 (Bankr. D. Del. 2021).

16.      Just as with the January and April 2026 Late CLC Motions, the factors of the danger of prejudice to the Post-Effective Date Debtors and the potential impact on the proceedings

---

[6]      A copy of the January 2025 letter submitted to the Singapore Court is appended to this Objection as **Exhibit B**.

strongly favor denial of the Motions. Indeed, "[a] bar date serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate, and the general amount of the claims, a necessary step in achieving the goal of successful reorganization, . . . is akin to a statute of limitations, and must be strictly observed." *In re Energy Future Holdings Corp.*, 522 B.R. 520, 527–28 (Bankr. D. Del. 2015). The Plan Administrator has conducted a fair claims process in order to provide all claimants ample opportunity to assert their Crypto Loss Claims; however, once the submission deadline passes, that deadline must hold in order to provide finality and structure the claim reconciliation process. Here, at the direction of the Court, the Plan Administrator has reopened the Online Portal after the CLC Bar Date once already for almost two months, and provided notice thereof to all potential claimants who had at that time submitted a request to file a claim after the CLC Bar Date. The result of that reopening of the bar date was an additional 660 additional Crypto Loss Claims being submitted.

17.    The Plan Administrator and his advisors have also made substantial additional progress on the processing of Crypto Loss Claims since this issue was initially raised in September 2025 and again in February and April 2026. The number of Allowed Claims has skyrocketed to approximately 9,577, and Initial Determinations have now been issued to approximately two-thirds of the claims pool. Reopening the CLC Bar Date again and allowing additional claims to be filed now will significantly delay the process of finalizing the claim reconciliation process and ultimately commencing distributions.

18.    Courts in this district have denied requests for late-filed claims where allowing them would imperil efforts to make distributions to creditors who submitted timely claims. *See In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 56 (Bankr. D. Del. 2012) (denying a

claimant's request to allow late-filed claim because allowing claim would jeopardize trustee's efforts to liquidate assets for distribution to creditors with timely-filed claims and open floodgate to similar claims by other claimants).

19.     As to the factors assessing the Movants' requests, the standard for excusable neglect is a high bar, particularly on the actions of the Movants.  In *Pioneer*, the seminal case on excusable neglect under Bankruptcy Rule 9006(b), the Supreme Court affirmed an appellate court ruling finding excusable neglect where a claimant failed to file a claim by the bar date because their attorney specifically mistakenly assured them that there was, in fact, no bar date established and no need to file a proof of claim.  *See Pioneer Inv. Servs.*, 507 U.S. at 384.  *Pioneer* set the standard for the kind of facts that underpin a plausible excusable neglect argument and demonstrates that simple lack of knowledge of a bar date will not suffice—adequate diligence is required.  *See id.* Courts have commented on the harsh reality that would occur if creditors could circumvent a bar date simply by claiming they did not know about it despite the debtor's efforts to provide notice, including via publication:

> There is 'no cause whatsoever' for the extension of the claims bar deadline when unknown claimants received adequate notice of the bar date by publication . . . A finding to the contrary would in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice.  Hence, notice of a bar date by publication would be rendered a useless means of establishing a date by which all claims must be filed or forever barred.

*In re Best Prods. Co.*, 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992) (internal citations omitted).

20.     The excusable neglect standard is "intended to be a 'strict one' . . . [and] the party requesting the extension must make a clear showing that the circumstances causing the delay were unique."  *In re Sutton*, 43 B.R. 250, 251 (Bankr. D. Conn. 1984) (internal citation omitted) (analyzing the excusable neglect standard under Bankruptcy Rule 9006(b)).  Bare claims of

hardship, while sympathetic, are not specific or heightened enough to meet the excusable neglect standard. *See W.R. Grace & Co.*, 626 B.R. at 234 (explaining that a claimant had not demonstrated excusable neglect despite alleging health and age-related factors because, among other things, "he [did] not explain *how they so interfered*" with his ability to file a timely response) (emphasis added). Under Bankruptcy Rule 9006, excusable neglect exists where failure to perform a timely duty was due to circumstances which were beyond reasonable control of the person whose duty it was to perform. In finding excusable neglect under this rule, courts have opined that "lack of control over events is essential." *See Vaccariello v. Lagrotteria*, 43 B.R. 1007, 1014 (N.D. Ill. 1984) (quoting *In re Griffis*, 31 B.R. 279, 282 (Bankr. D. Vt. 1983)); *see also In re Lopez*, 39 B.R. 433, 437 (Bankr. D.R.I. 1984) (highlighting that excusable neglect is a "term of art" meaning "failure to timely perform duty due to circumstances that were *beyond reasonable control of person whose duty it was to perform*") (emphasis added). Each of the Motions fails for these same reasons—none of the Movants have demonstrated why circumstances beyond their control should excuse compliance with the deadline, particularly given the robust online noticing protocol that the Plan Administrator undertook with the approval of this Court and the additional submission window provided to claimants who missed the CLC Bar Date.

A.   **Movants Cheng, Dubec, and Moulton Do Not Meet the Excusable Neglect Standard.**

21.   Here, the Motions simply state that Movants Cheng, Dubec, and Moulton missed the CLC Bar Date and request relief to file a Crypto Loss Claim form after the deadline. First, Cheng asserts that their status as a pro se international creditor and good faith effort to move for relief to file a late claim upon becoming aware of the "formal claim requirements" 11 months after the original CLC Bar Date is sufficient to prove excusable neglect. *See* Cheng Motion at ¶ 3. Residing internationally does not rise to the level of excusable neglect, especially because the Plan

11

Administrator's vast noticing campaign was tailored to reach international creditors, and in fact did reach tens of thousands of international creditors.  Moulton similarly asserts that their status as an international creditor that did not receive direct notice of the CLC Bar Date suffices as excusable neglect of the CLC Bar Date.  As explained above, the Debtors' records did not include customer contact information for parties who purchased cryptocurrency on the Terra Ecosystem, making direct noticing of the CLC Bar Date impossible.  *See infra* ¶ 5.  Lastly, Dubec asserts that their failure to timely file a Crypto Loss Claim was due to "extraordinary personal circumstances and severe hardship" explaining only that they "suffered from clinical depression and persistent suicidal ideation" and that they were "psychologically incapacitated and physically unable to attend to legal or financial matters" during the submission periods.  Dubec Motion at ¶¶ 5–6.  However, the Dubec Motion does not contain any supporting records to substantiate this assertion.  Moreover, these generic assertions do not rise to the standard of excusable neglect.

22.     These Motions do not meet the applicable standard of excusable neglect—especially in light of the fact that the Plan Administrator had already reopened the Online Portal for submissions after the CLC Bar Date.  The claim reconciliation and distribution processes would face significant delay if the Plan Administrator were required to reopen the Online Portal for Crypto Loss Claim form submissions again.

### B.     Movant Fan Does Not Meet the Excusable Neglect Standard.

23.     Fan's conscious choice to participate in the Beltran Action in Singapore, and not file a Crypto Loss Claim, is not excusable neglect.  The Crypto Loss Claim Procedures approved by the Court make no mention of or exception for claimants involved in the pending Beltran Action with respect to the CLC Bar Date.  Rather, the Crypto Loss Claim Procedures make clear in bold and italicized font that claimants "must follow the[] CLC Procedures in order to have an opportunity to receive any recovery on account of [a] Crypto Loss Claim."  Crypto Loss Claim

Procedures, [Docket No. 965, Exhibit 1] Art. I.  If Fan wanted to ensure their right to recover on account of their crypto loss was preserved, they could and should have filed a Crypto Loss Claim. Indeed, hundreds of similarly situated claimants involved in the Beltran Action did file Crypto Loss Claims—with over 80% of claimants involved in the Beltran Action filing Crypto Loss Claims.  Moreover, counsel for a group of claimants in the Beltran Action actively participated in the Crypto Loss Claims Procedures Motion, objected to the motion and argued at the hearing on that motion.  *See Singapore Action Claimants' Limited Objection to the Motion of the Plan Administrator Seeking Entry of an Order (I) Setting the Bar Date for Filing Proofs of Claim on Account of Crypto Loss Claims, (II) Approving the Form and Manner for Filing Proofs of Claim, (III) Approving the Form and Manner of Notice Thereof, and (IV) Approving Related Procedures* [Docket No. 931] (the "Beltran CLC Bar Date Objection").

24.    Fan claims that they did not file a Crypto Loss Claim because they did not understand that a separate Crypto Loss Claim was required in order to recover under the Crypto Loss Claim Procedures and that "submitting claims in two different jurisdictions for the same loss could be viewed as an attempt to recover twice."  *See* Fan Motion, ¶ 6.  This is simply not the case—there is no suggestion that claimants in the Beltran Action were somehow exempted from the requirement to file a Crypto Loss Claim in the Plan, the Disclosure Statement, the Confirmation Order, or the CLC Bar Date Order.  The Fan Motion also does not mention that U.S. counsel to a large group of claimants in the Beltran Action participated extensively in the Crypto Loss Claim Procedures.  *See* Beltran CLC Bar Date Objection.  It cannot be that that the Crypto Loss Claim Procedures were irrelevant for claimants participating in the Beltran Action.  Even the slightest bit of diligence into the Crypto Loss Claim Process would have revealed the participation of these Beltran claimants—if Beltran claimants did not need to file a Crypto Loss Claim to potentially

13

recover under the Crypto Loss Claim Procedures, then no Beltran claimants would have responded to the Crypto Loss Claim Motion.

25. Lastly, the Court has previously ruled that a claimant's "belie[f] that participation in the [Beltran] Singapore proceeding was sufficient to cover [their] interests . . . doesn't change the Court's analysis of whether or not a bar date or deadline would apply . . . and whether or not . . . failure to file by the deadline would be excusable." *Omnibus Hearing Tr.,* 51:10–15 April 15, 2026. Accordingly, the Plan Administrator respectfully submits that the Motions should be denied because they have not established excusable neglect under the circumstances.

## II. The Plan Administrator Complied with Post-CLC Bar Date Claim Submission Order.

26. The nature of the Terra Ecosystem is such that the Plan Administrator cannot know the identities of each potential Crypto Loss Claimant, and, even if he did, the Plan Administrator had no means of contacting such potential claimants. "It is well established that, in providing notice to unknown creditors, constructive notice of the bar claims date by publication satisfies the requirements of due process" where that notice is "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Chemetron Corp. v. Jones*, 72 F.3d 341, 348 (3d Cir. 1995) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

27. Consistent with the Court's comments at the September 24, 2025 hearing, the Plan Administrator reviewed its records and compiled a list of claimants that requested to file a Crypto Loss Claim after the CLC Bar Date, which totaled approximately 250 individuals. The Plan Administrator provided the link to each claimant via email and explained that Online Portal would close on November 25, 2025, and that all Crypto Loss Claim forms must be submitted by 11:59 p.m. (prevailing Eastern Time) on November 24, 2025. In addition, the Plan Administrator's

advisors provided technical assistance and answered questions about the submission process during the submission period.  The 660 claims that were submitted in accordance with the process are evidence that the Plan Administrator's efforts were effective to provide notice of the extended submission period to potential claimants that missed the CLC Bar Date.

### Notice

28.    Notice of this Objection has been provided to the following parties, or their counsel, if known:  (a) the Office of the United States Trustee; (b) each of the Movants whose Motion is subject to this Objection; and (c) all parties who have requested service of notices in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Plan Administrator respectfully submits that such notice is sufficient under the circumstances.

WHEREFORE, for the reasons set forth herein, the Plan Administrator requests entry of the Order, substantially in the form attached hereto as **Exhibit A**, denying relief requested in the Motions and such other and further relief as the Court may deem just and appropriate.

Dated: June 3, 2026
Wilmington, Delaware

/s/ Zachary I. Shapiro

| | |
|---|---|
| **RICHARDS, LAYTON & FINGER, P.A.** | **KIRKLAND & ELLIS LLP** |
| Zachary I. Shapiro (No. 5103) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| One Rodney Square | Christopher T. Greco, P.C. (admitted *pro hac vice*) |
| 920 North King Street | Elizabeth Helen Jones (admitted *pro hac vice*) |
| Wilmington, Delaware 19801 | 601 Lexington Avenue |
| Telephone:     (302) 651-7700 | New York, New York 10022 |
| Email:          shapiro@rlf.com | Telephone:     (212) 446-4800 |
| | Facsimile:     (212) 446-4900 |
| *Co-Counsel for the Plan Administrator* | Email          christopher.greco@kirkland.com |
| | elizabeth.jones@kirkland.com |

-and-

Michael F. Williams, P.C. (admitted *pro hac vice*)
1301 Pennsylvania Ave., NW
Washington, DC 20004
Telephone:     (202) 389-5000
Facsimile:     (202) 389-5200
Email:          michael.williams@kirkland.com

-and-

Christopher S. Koenig (admitted *pro hac vice*)
Casey McGushin (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email          chris.koenig@kirkland.com
                    casey.mcgushin@kirkland.com
*Co-Counsel for the Plan Administrator*